**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

_____
                                                              )
Kilmar Armando Abrego Garcia,                  )
                                                              )
      c/o Murray Osorio PLLC                   )
      4103 Chain Bridge Road, Suite 300   )
      Fairfax, Virginia 22030                      )
                                                              )
      *Petitioner*,                                     )
                                                              )      Civil Action No.:
v.                                                            )
                                                              )
Kristi Noem, *Secretary of Homeland Security*,  )
                                                              )
      245 Murray Lane, SW                       )
      Washington, DC 20528                     )
                                                              )
Todd Lyons, *Acting Director, U.S. Immigration*  )
      *and Customs Enforcement*,            )
                                                              )
      500 12th Street, SW                         )
      Washington, DC 20536                     )
                                                              )
Nikita Baker, *ICE Baltimore Field Office*       )
*Director*,                                                )
                                                              )
      500 12th Street, SW                         )
      Washington, D.C. 20536                   )
                                                              )
Pamela Bondi, *Attorney General*,               )
                                                              )
      950 Pennsylvania Avenue, NW          )
      Washington, DC 20530                     )
                                                              )
      *Respondents.*                                  )
_____)

## PETITION FOR WRIT OF HABEAS CORPUS

      1.     In March 2025, the United States government unlawfully arrested Petitioner Kilmar

Armando Abrego Garcia and illegally removed him to El Salvador in violation of a withholding

of removal to that country and without due process. Petitioner was detained at a notoriously dangerous Salvadoran prison, the Terrorism Confinement Center ("CECOT"), where he was tortured.

2.     The Government admitted it removed Petitioner in error but nevertheless sought to keep him illegally confined in El Salvador, "working to fix it so [Petitioner] doesn't need to be returned to the U.S." Hamed Aleaziz & Alan Feuer, *How Trump Officials Debated Handling of the Abrego Garcia Case: 'Keep Him Where He Is,'* N.Y. Times (May 21, 2025), https://www.nytimes.com/2025/05/21/us/politics/trump-abrego-garcia-el-salvador-deportation.html.

3.     This Court promptly granted preliminary injunctive relief and ordered the Government to "facilitate and effectuate" Petitioner's return to the United States to "restore the status quo and to preserve [his] access to due process in accordance with the Constitution and governing immigration statutes." *Abrego Garcia v. Noem*, No. 25-cv-00951 (D. Md. Apr. 4, 2025), ECF No. 21 at 2. The Fourth Circuit denied the Government's emergency stay motion, characterizing its opposition as "unconscionable." *Abrego Garcia v. Noem*, 2025 WL 1021113, at *1 (4th Cir. Apr. 7, 2025) (Thacker, J., with King, J., concurring). Days later, the United States Supreme Court unanimously held that this Court's injunction "properly requires the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025). That same day, this Court amended its preliminary injunction to direct the Government to "take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible." No. 25-cv-00951 (D. Md. Apr. 10, 2025), ECF No. 51 at 1.

2

4.     The Government did not do so. Instead, for months, it openly flouted this Court's orders and feigned powerlessness to bring Petitioner back. But on June 6, 2025, with no advance notice, the Government announced it abruptly returned Petitioner—not to comply with the Court's order to do so, but to charge him for crimes developed under the threat of sanctions and based on alleged conduct that occurred years earlier and during a traffic stop that resulted in neither a ticket nor even a warning. *See* Indictment, *United States v. Abrego Garcia*, No. 25-cr-00115 (M.D. Tenn. May 21, 2025), ECF No. 3.

5.     Meanwhile, the Government represented that should Petitioner be released on pre-trial conditions in Tennessee, it would swiftly take him into custody and seek to remove him either to El Salvador or to a third country. This Court, appropriately concerned that the Government would again remove Petitioner without due process, held an evidentiary hearing, after which it ordered the Government: (1) upon Petitioner's release from custody in Tennessee, to restore Petitioner to his immigration status in Maryland; and (2) in the event the Government sought to remove Petitioner to a third country, provide "written notice to Abrego Garcia and all counsel of record in this case of the intended third country at least seventy-two hours prior to commencing removal so that Abrego Garcia may assert claims of credible fear or seek any other relief available to him under the law and the Constitution." No. 25-cv-00951 (D. Md. July 23, 2025), ECF No. 238 at 17.

6.     On August 22, 2025, the Government noticed Petitioner's counsel that it intended to remove Petitioner to Uganda, though it provided no such notice—as required—to Petitioner. *See id.*

7. And now, the Government has, without forewarning, taken Petitioner into ICE detention based on the notice of removal to Uganda, without providing him an opportunity to be heard on his expressed fears of persecution and torture in that country.

## JURISDICTION AND VENUE

8. This Court has jurisdiction to hear this case under 28 U.S.C. § 2241; 28 U.S.C. § 2201, the Declaratory Judgment Act; and 28 U.S.C. § 1331, Federal Question Jurisdiction. In addition, the individual Respondents are United States officials. 28 U.S.C. § 1346(a)(2).

9. The Court has authority to enter a declaratory judgment and to provide temporary, preliminary, and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure; 28 U.S.C. §§ 2201-2202; the All Writs Act, 28 U.S.C. § 1651; and the Court's inherent equitable powers, as well as to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

10. Venue lies in this District because Petitioner is detained in the custody of U.S. Immigration and Customs Enforcement in the Baltimore Field Office Hold Room, located within this division of this judicial district. Each Respondent is an officer of the United States sued in his or her official capacity. 28 U.S.C. § 2241; 28 U.S.C. § 1391(e)(1). In addition, Respondent Nikita Baker, ICE Baltimore Field Office Director, maintains her principal place of business in Baltimore, Maryland.

## THE PARTIES

11. Petitioner Kilmar Armando Abrego Garcia is a citizen and native of El Salvador who resides in Maryland. He is married to a U.S. citizen wife and has a minor U.S. citizen child.

12. Respondent Kristi Noem is the Secretary of the Department of Homeland Security ("DHS"). She is the cabinet-level secretary responsible for all immigration enforcement in the United States.

13.     Respondent Todd Lyons is the Acting Director of U.S. Immigration and Customs Enforcement ("ICE"). He is the head of the federal agency responsible for all immigration enforcement in the United States.

14.     Respondent Nikita Baker is the ICE Baltimore Field Office Director. She is the head of the ICE office that arrested Petitioner, and such arrest took place under her direction and supervision. She is the immediate legal and physical custodian of Petitioner.

15.     Respondent Pamela Bondi is the Attorney General of the United States. The Immigration Judges who decide removal cases and applications for relief from removal do so as her designees.

16.     All government Respondents are sued in their official capacities.

## LEGAL BACKGROUND

17.     "A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry[.]" *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). "[I]mmigration proceedings are 'civil, not criminal, and . . . nonpunitive in purpose and effect.'" *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 713 (D. Md. 2016) (alteration in original) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

18.     As the Supreme Court held in *Kansas v. Crane*, civil detention may not "become a 'mechanism for retribution or general deterrence'—functions properly those of criminal law, not civil commitment." 534 U.S. 407, 412 (2002) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 372–74 (1997) (Kennedy, J., concurring)); *see also Hendricks*, 521 U.S. at 373 (Kennedy, J., concurring) ("[W]hile incapacitation is a goal common to both the criminal and civil systems of confinement, retribution and general deterrence are reserved for the criminal system alone."); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 189–90 (D.D.C. 2015).

19.     Once a noncitizen is given a final removal order, 8 U.S.C. §1231(b)(2) governs the country to which that individual may be removed. The statute allows the noncitizen to "designate one country to which the alien wants to be removed," and requires that "the Attorney General shall remove the alien to the country the alien so designates." 8 U.S.C. § 1231(b)(2)(A)(i), (ii). The Attorney General may disregard the noncitizen's designation only under certain enumerated conditions. 8 U.S.C. § 1231(b)(2)(C). If the noncitizen cannot be removed to that country, then 8 U.S.C. § 1231(b)(2)(E) provides a list of other countries to which the noncitizen may be removed. The very last country of removal on the list is "[a] country with a government that will accept the alien into the country's territory if removal to each country described in a previous clause of this subparagraph is impracticable, inadvisable, or impossible." 8 U.S.C. § 1231(b)(2)(E)(vii).

20.     As the Supreme Court has explained, "[t]he statute thus provides four *consecutive* removal commands[.]" *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) (emphasis added). "With respect to the third step, however, the Attorney General is directed to move on to the fourth step only if it is 'impracticable, inadvisable, or impossible to remove the alien to each country described in' the third step." *Id.* at 342.

21.     Notwithstanding the above, a noncitizen may not be removed to a country where they will suffer persecution on account of a protected ground, 8 U.S.C. § 1231(b)(3), or where they will be tortured by or at the acquiescence of a government official, 8 C.F.R. § 1208.16. This form of protection is called withholding of removal.

22.     A grant of withholding of removal is specific to one country only. Should the government wish to remove an individual with a grant of withholding of removal to some *other* country, it must first provide that individual with notice and an opportunity to apply for withholding of removal as to *that* country as well, if appropriate. "[T]he prohibition on removal to

a country where a noncitizen would face persecution or torture remains absolute. And precisely because withholding of removal is country-specific, as the government says, if a noncitizen who has been granted withholding as to one country faces removal to an alternative country, then she must be given notice and an opportunity to request withholding of removal to *that* particular country." *Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019) (citing *Kossov v. INS*, 132 F.3d 405, 409 (7th Cir. 1998)), *rev'd on other grounds*, *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021).

23.    For noncitizens ordered removed, 8 U.S.C. §1231(a) permits the government to detain noncitizens during the "removal period," which is defined as the 90-day period during which "the Attorney General shall remove the alien from the United States." 8 U.S.C. §1231(a)(1)(A).

24.    After the expiration of the removal period, 8 U.S.C. § 1231(a)(3) provides that the government shall release unremovable noncitizens on an order of supervision (the immigration equivalent of supervised release, with strict reporting and other requirements). Pursuant to 8 U.S.C. § 1231(a)(6), even noncitizens with aggravated felony convictions may be "released" if "subject to the terms of supervision" set forth in 8 U.S.C. § 1231(a)(3).

25.    Constitutional limits on detention beyond the removal period are well established. Government detention violates due process unless it is reasonably related to a legitimate government purpose. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). "[W]here detention's goal is no longer practically attainable, detention no longer 'bear[s] [a] reasonable relation to the purpose for which the individual [was] committed.'" *Id.* at 690 (alterations in original) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Additionally, cursory or pro forma findings of dangerousness do not suffice to justify prolonged or indefinite detention. *Zadvydas*, 533 U.S. at 690–91 ("But we have upheld preventive detention based on dangerousness only when limited to specially

dangerous individuals [like suspected terrorists] and subject to strong procedural protections.").

26.     The purpose of detention during and beyond the removal period is to "secure[] the alien's removal." *Zadvydas*, 533 U.S. at 682. In *Zadvydas*, the Supreme Court "read § 1231 to authorize continued detention of an alien following the 90-day removal period for only such time as is reasonably necessary to secure the alien's removal." *Demore v. Kim*, 538 U.S. 510, 527 (2003) (citing *Zadvydas*, 533 U.S. at 699).

27.     As the Supreme Court has explained, where there is no possibility of removal, immigration detention presents substantive due process concerns because the need to detain the noncitizen to ensure the noncitizen's availability for future removal proceedings is "weak or nonexistent." *Zadvydas*, 533 U.S. at 690–92. Detention is lawful only when "necessary to bring about that alien's removal." *See id.* at 689.

28.     To balance these competing interests, the *Zadvydas* Court established a rebuttable presumption regarding what constitutes a "reasonable period of detention" for noncitizens after a removal order. *Id.* at 700–01. The Court determined that six months detention could be deemed a "presumptively reasonable period of detention," after which the burden shifts to the government to justify continued detention if the noncitizen provides a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

29.     Finally, after a removal order is executed, it can be reinstated from its original date under 8 U.S.C. § 1231(a)(5) only if "the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal[.]"

## FACTS

30.     Related cases involving Petitioner have been extensively litigated before, now, five

8

tribunals: an immigration court in Baltimore, Maryland; this Court; the U.S. Court of Appeals for the Fourth Circuit (twice); the Supreme Court of the United States; and the federal district court for the Middle District of Tennessee. *See* Ex. A (withholding of removal order from Baltimore Immigration Court); *Abrego Garcia v. Noem*, No. 25-cv-00951 (D. Md.); *Abrego Garcia v. Noem*, No. 25-1345 (4th Cir.); *Abrego Garcia v. Noem*, No. 25-1404 (4th Cir.); *Noem v. Abrego Garcia*, No. 24A949 (U.S.); *United States v. Abrego Garcia*, No. 25-cr-00115 (M.D. Tenn.).

31.    The facts of this case are set forth in the following decisions, the contents of which are incorporated herein by reference:

a.    Withholding of removal decision, Ex. A;

b.    *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501 (D. Md. Apr. 6, 2025).

c.    *Abrego Garcia v. Noem*, 2025 WL 1021113 (4th Cir. Apr. 7, 2025);

d.    *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (U.S. Apr. 10, 2025);

e.    *Abrego Garcia v. Noem*, 2025 WL 1113440 (D. Md. Apr. 15, 2025);

f.    *Abrego Garcia v. Noem*, 2025 WL 1135112 (4th Cir. Apr. 17, 2025); and

g.    *Abrego Garcia v. Noem*, 2025 WL 2062203 (D. Md. July 23, 2025).

32.    The facts of this case are also set forth in the following pleadings, the contents of which are incorporated herein by reference:

a.    [Proposed] Amended Complaint, *Abrego Garcia v. Noem*, No. 25-cv-00951 (D. Md.), ECF No. 211-3 (filed July 2, 2025);

b.    Memorandum in Support of Motion to Dismiss for Vindictive and Selective Prosecution, *United States v. Abrego Garcia*, No. 25-cr-00115 (M.D. Tenn.), ECF No. 105 (filed Aug. 19, 2025); and

c.    Notice of Supplemental Information Relevant to Motion to Dismiss for Vindictive

and Selective Prosecution, *United States v. Abrego Garcia*, No. 25-cr-00115 (M.D. Tenn.), ECF No. 113 (filed Aug. 23, 2025).

33.    Petitioner was removed from the United States to El Salvador on March 15, 2025.

34.    On June 6, 2025, Petitioner was paroled into the United States, under significant public benefit parole, 8 C.F.R. § 212.5, valid through June 4, 2026. *See* Ex. B (I-94 document).

35.    At a hearing on July 10, 2025 in the *Abrego Garcia v. Noem* matter before the District of Maryland, a high-ranking ICE officer testified under oath that ICE does not begin working on determining a country for third-country removal—or, indeed, even *whether* ICE would try to effectuate third-country removal—until a noncitizen is detained by ICE. *Abrego Garcia v. Noem*, No. 25-cv-00951 (D. Md.), July 10 Tr. at 26:14–27:1.

36.    This testimony has now proven to be entirely false. On or before August 21, 2025, Respondents provided Petitioner's counsel with a letter from the government of Costa Rica stating its willingness to accept Petitioner for resettlement. A copy of the letter is attached as Ex. C, and its contents are incorporated herein by reference.

37.    Pursuant to an order of the Middle District of Tennessee, Petitioner was released from U.S. Marshals custody in Tennessee on the afternoon of August 22, 2025. Although ICE had previously issued a detainer requiring the U.S. Marshals to hold Petitioner for detention by ICE, this Court ordered that ICE may not take Petitioner into custody on the detainer, and must instead let him return to Maryland. *Abrego Garcia v. Noem*, No. 25-cv-00951, 2025 WL 2062203, at *7–9 (D. Md., July 23, 2025), ECF No. 238 at 12-14, 17-18. Accordingly, Petitioner was allowed to leave the jail in Tennessee and return to his home state of Maryland.

38.    Prior to leaving the jail, Petitioner was served with a notice requiring him to present himself to the ICE Baltimore Field Office on Monday, August 25, 2025, at 8:00 a.m. *See* Ex. D

(ICE call-in letter). The stated reason was for "Interview."

39.     Shortly after Petitioner's release from jail in Tennessee, Petitioner's counsel was served with a notice designating Uganda as a country of removal for Petitioner. *See* Ex. E (Uganda designation e-mail).

40.     The Government, however, failed to serve Petitioner, as required by this Court's July 23 order, and so the seventy-two hour period before the Government can commence removal has not started to run. *Abrego Garcia v. Noem*, No. 25-cv-00951, 2025 WL 2062203, at *8–9 (D. Md.), ECF No. 238 at 15–17.

41.     On Saturday, August 23, 2025, Petitioner expressed fear of persecution and torture in Uganda and requested a reasonable fear interview. *See* Ex. F (Reasonable Fear Interview request).

42.     Also on Saturday, August 23, 2025, Petitioner designated Costa Rica as his preferred country of removal. *See* Ex. G (Costa Rica designation).

43.     On Monday, August 25, 2025, Petitioner presented himself to the ICE Baltimore Field Office before 8:00 a.m., as required. At that time, without forewarning, he was taken into custody. The officer who took Petitioner into custody did not respond to counsel for Petitioner's request for a stated reason for the detention.

44.     Upon information and belief, Respondents detained Petitioner in order to punish him for his constitutionally protected activity: specifically, filing the above-mentioned lawsuit challenging his earlier illegal deportation to El Salvador; seeking pretrial release in his above-mentioned criminal proceedings; refusing to stay his pretrial release in his above-mentioned criminal proceedings; and refusing to plead guilty in his above-mentioned criminal proceedings.

45.     Upon information and belief, Respondents are seeking to remove Petitioner to

Uganda—a process which they know will trigger lengthy legal proceedings—rather than Costa Rica—the country for removal designated by Petitioner that offered him resettlement—in order to punish him for his constitutionally protected activity: specifically, filing the above-mentioned lawsuit challenging his earlier erroneous deportation to El Salvador; seeking pretrial release in his above-mentioned criminal proceedings; refusing to stay his pretrial release in his above-mentioned criminal proceedings; and refusing to plead guilty in his above-mentioned criminal proceedings. In so doing, Respondents know and intend for Petitioner to be detained by ICE for a lengthy period of time, even though a removal to Costa Rica could be effectuated with little or no ICE detention time at all, and Respondents seek to use ICE detention to punish Petitioner for the above-mentioned constitutionally protected activities.

46.    As of the time of filing this habeas corpus petition, Petitioner is still detained in the ICE Baltimore Hold Room.

47.    Petitioner has exhausted all administrative remedies.

## CAUSES OF ACTION

### First Cause of Action: Violation of 8 U.S.C. § 1231(b)(2)

48.    Petitioner re-alleges and incorporates by reference the preceding paragraphs 1–47.

49.    Under *Jama*, 543 U.S. 335, federal habeas courts may review claims by noncitizens alleging violations of 8 U.S.C. § 1231(b)(2). *See also* 543 U.S. at 338 (petitioner filed a habeas corpus petition to challenge his country of removal; the Supreme Court reversed on the merits, but did not find any lack of jurisdiction); *see also Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash. 2019); *J.R. v. Bostock*, 2025 WL 1810210 (W.D. Wash. June 30, 2025).

50.    Respondents' actions as set forth herein, specifically ignoring Petitioner's designation of Costa Rica to attempt to remove him to Uganda, violate 8 U.S.C. § 1231(b)(2), to

Petitioner's injury.

### Second Cause of Action: Violation of 8 U.S.C. § 1231(a)(6)/*Zadvydas*

51.     Petitioner re-alleges and incorporates by reference the preceding paragraphs 1–50.

52.     Over half a decade after Petitioner's removal period expired, Respondents are detaining Petitioner for removal to Uganda, without a significant likelihood of removal to Uganda in the reasonably foreseeable future.

53.     Petitioner's continued detention by Respondents violates 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas*.

54.     To the extent the Government relies on a purported final order of removal from 2019, Abrego Garcia's 90-day removal period and 180-day *Zadvydas* presumptively reasonable period would have expired no later than 2020.

55.     Petitioner's 90-day statutory removal period and six-month presumptively reasonable period for continued removal efforts have long since passed.

56.     No significant likelihood of removal in the reasonably foreseeable future exists.

57.     Under *Zadvydas*, the continued detention of someone like Petitioner is unreasonable and not authorized by 8 U.S.C. § 1231.

### Third Cause of Action: Violation of due process

58.     Petitioner re-alleges and incorporates by reference the preceding paragraphs 1–57.

59.     Respondents' civil detention of Petitioner does not bear any reasonable relation to a legitimate government purpose and is punitive in purpose and effect, and thus violates the Due Process Clause.

### Fourth Cause of Action: Violation of 8 U.S.C. § 1231(b)(3)/8 C.F.R. § 1208.16

60.     Petitioner re-alleges and incorporates by reference the preceding paragraphs 1–59.

61.    Respondents seek to remove Petitioner to Uganda, a country where he would face persecution and torture, without observance of required procedure, thus violating his rights under 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 1208.16, and due process.

62.    Petitioner also remains at risk of refoulement to El Salvador.

63.    The Government has provided no assurances that Uganda would not refoul Petitioner to El Salvador.

64.    Moreover, Uganda's Ministry of Foreign Affairs has publicly stated that it will not accept "individuals with criminal records." Uganda Ministry of Foreign Affairs, X (Aug. 21, 2025, 2:04 a.m.), https://x.com/UgandaMFA/status/1958409947495969199.

65.    Petitioner has been indicted by the United States for conspiracy to transport aliens and unlawful transportation of undocumented aliens in a vindictive and selective prosecution.

66.    Uganda has also stated it "prefers that individuals from African countries shall be the ones transferred to Uganda," *id.*, while Petitioner is Salvadoran residing in the United States.

67.    Notably, at least one country that has agreed to accept deportees with withholdings of removal has "promptly" refouled a deportee despite a withholding of removal.  *See, e.g.*, *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153, 2154–55 (2025) (Sotomayor, J., dissenting) (O.C.G. was granted "withholding of removal to Guatemala," was deported to Mexico, and "Mexican authorities promptly deported O.C.G. back to Guatemala.").

**Fifth Cause of Action (In the Alternative): Deportation without deportation order**

68.    Petitioner re-alleges and incorporates by reference the preceding paragraphs 1–67.

69.    Petitioner's 2019 removal order was executed in March 2025. Petitioner was paroled into the United States on June 6, 2025. Respondents cannot execute a removal order a second time. Nor can Respondents reinstate Petitioner's removal order, since he has not illegally

14

reentered the United States, 8 U.S.C. § 1231(a)(5). Accordingly, Petitioner has no executable removal order, and Respondents cannot remove Petitioner from the United States, nor may they detain Petitioner pursuant to any subsection of 8 U.S.C. § 1231(a).

## REQUEST FOR RELIEF

Petitioner prays for judgment against Respondents and respectfully requests that this Court enter an order:

a) Issuing an Order to Show Cause, ordering Respondents to justify the basis of Petitioner's detention in fact and in law, forthwith;

b) Preliminarily enjoining Respondents from detaining Petitioner more than 200 miles from this courthouse;

c) Enjoining Respondents from removing Petitioner to Uganda without first concluding Petitioner's reasonable-fear and withholding-only proceedings, including all appeals;

d) Enjoining Respondents from removing Petitioner to Uganda without first attempting to remove Petitioner to Costa Rica;

e) Finding that Respondents' present detention of Petitioner violates due process and 8 U.S.C. § 1231(a)(6);

f) Issuing a writ of habeas corpus, and ordering that Petitioner be released from physical custody; and

g) Granting such other relief at law and in equity as justice may require.

Respectfully submitted,

Date: August 25, 2025

/s/ Jonathan G. Cooper

**MURRAY OSORIO PLLC**
Simon Sandoval-Moshenberg, Esq.
Rina Gandhi
4103 Chain Bridge Road, Suite 300
Fairfax, Virginia 22030
(703) 352-2399
Facsimile: 703-763-2304
ssandoval@murrayosorio.com

**QUINN EMANUEL URQUHART &**
  **SULLIVAN, LLP**
Stephen E. Frank (*pro hac* forthcoming)
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
stephenfrank@quinnemanuel.com

**QUINN EMANUEL URQUHART &**
  **SULLIVAN, LLP**
Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton* (*pro hac* forthcoming)
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
*admitted in Texas; not admitted in D.C.*
*Supervised by attorney admitted in D.C.*

Andrew J. Rossman (*pro hac* forthcoming)
Sascha N. Rand (*pro hac* forthcoming)
K. McKenzie Anderson (*pro hac* forthcoming)
Samuel P. Nitze (*pro hac* forthcoming)
Courtney C. Whang (*pro hac* forthcoming)
Roey Goldstein (*pro hac* forthcoming)
Sam Heavenrich  (*pro hac* forthcoming)
Morgan L. Anastasio (*pro hac* forthcoming)
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
mckenzieanderson@quinnemanuel.com
samuelnitze@quinnemanuel.com
courtneywhang@quinnemanuel.com
roeygoldstein@quinnemanuel.com
samheavenrich@quinnemanuel.com
morgananastasio@quinnemanuel.com

*Counsel for Petitioner*