```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND
 2                         GREENBELT DIVISION

 3   _____)
                                         )
     KILMAR ARMANDO ABREGO GARCIA,        )
 4   et al.,                             )
                                         )
 5        Plaintiffs,                    )
                                         )Docket Number
 6             vs.                       )8:25-cv-02780-PX
                                         )
 7   KRISTI NOEM, et al.,                )
                                         )
 8        Defendants.                    )
     _____)
 9
                     TRANSCRIPT OF STATUS CONFERENCE
10                      VIA ZOOM TELECONFERENCE
                    BEFORE THE HONORABLE PAULA XINIS
11                  UNITED STATES DISTRICT COURT JUDGE
                  WEDNESDAY, AUGUST 27, 2025, AT 9:19 A.M.
12
     APPEARANCES:
13
     On Behalf of the Plaintiffs:
14
          BY:  ANDREW ROSSMAN, ESQUIRE
15               SASCHA RAND, ESQUIRE
          QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
16        295 5th Avenue
          New York, NY  10016
17        (212)849-7000

18        BY:  JONATHAN COOPER, ESQUIRE
               OLIVIA HORTON, ESQUIRE
19        QUINN, EMANUEL, URQUHART & SULLIVAN, LLC
          1300 I Street NW
20        Suite 900
          Washington, DC  20005
21        (617)712-7165

22        BY:  SIMON SANDOVAL-MOSHENBERG, ESQUIRE
          MURRAY OSORIO
23        4103 Chain Bridge Road, Suite 300
          Fairfax, VA  22030
24        (434)218-9376

25        ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***
```

```
 1  APPEARANCES CONTINUED:

 2  On Behalf of the Defendants:

 3       BY:  DREW ENSIGN, ESQUIRE
              BRIDGET O'HICKEY, ESQUIRE
 4       DEPUTY ASSISTANT ATTORNEY GENERAL
         CIVIL DIVISION, DEPARTMENT OF JUSTICE
 5       950 Pennsylvania Avenue NW
         Washington, DC  20530
 6       (202)353-0261

 7       BY:  ERNESTO H. MOLINA, JR., ESQUIRE
         OFFICE OF IMMIGRATION LITIGATION
 8       P.O. Box 878
         Ben Franklin Station
 9       Washington, DC  20044
         (202)616-9344

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2        (Court called to order.)

 3        DEPUTY CLERK:  May I have your attention, please.

 4   The United States District Court for the District of Maryland

 5   is now in session.  The Honorable Paula Xinis presiding.

 6        The matter now pending before the Court is Civil Case

 7   Number PX-2780, Kilmar Armando Abrego Garcia v. Kristi Noem, et

 8   al.  The matter now comes before the Court for a virtual

 9   scheduling conference.

10        Counsel, please identify yourselves for the record,

11   beginning with counsel for the petitioner.

12        MR. SANDOVAL-MOSHENBERG:  Good morning, Your Honor,

13   Simon Sandoval-Moshenberg for petitioner.

14        MR. ROSSMAN:  Good morning, Your Honor, Andrew

15   Rossman, Sascha Rand, Jonathan Cooper, and Olivia Horton also

16   for petitioner.

17        MR. ENSIGN:  Good morning, Your Honor, Drew Ensign

18   for the governmental respondents.  With me is Bridget O'Hickey

19   and Ernesto Molina.

20        THE COURT:  All right.  Are we ready to go on our

21   end?

22        DEPUTY CLERK:  Yes, Your Honor.

23        THE COURT:  Okay.  Can you hear me, counsel?

24        They cannot hear me, I don't think.

25        Can you hear me, counsel?
```

1          **MR. SANDOVAL-MOSHENBERG:**  Yes, Your Honor.  We

2   couldn't at first but we can now.

3          **THE COURT:**  Okay.  Can you see me, counsel?

4          **MR. SANDOVAL-MOSHENBERG:**  Well enough, Your Honor.

5          **THE COURT:**  Because I can't see myself, so I don't

6   know if you have all of me, some of me, none of me.  But if you

7   can hear me, we're probably in good shape.  Okay.  Very good.

8       So, counsel, I did receive, and I appreciate it, ECF 15

9   and 16, your proposed schedules, and I've had a chance to study

10  them.  And I want to confirm a couple of things first and then

11  we'll go from there.

12      So the first is that petitioner has sought to reopen the

13  immigration proceedings and seek asylum; is that correct?

14          **MR. SANDOVAL-MOSHENBERG:**  Yes, Your Honor.  We hadn't

15  made a final decision on that and certainly hadn't filed as of

16  the last hearing at 2:00 on Monday.  But at the end of the day

17  on Monday, Mr. Abrego Garcia did file a motion to reopen and

18  set aside his deportation order with the Baltimore Immigration

19  Court.

20          **THE COURT:**  Okay.  And in that respect, I have zero

21  to do with it.  It is -- I don't have jurisdiction over that

22  petition.  That petition will take its own independent course,

23  and I would imagine it could result in additional appeals

24  thereafter.

25      So I just want to note for the record that that process is

1  in many -- in all ways, as it stands, an independent track.  So

2  that's number one.

3              **MR. SANDOVAL-MOSHENBERG:**  Yes, Your Honor.

4         **THE COURT:**  I understand, though, at least reading

5  between the lines as to both 15 and 16, that the parties do

6  have some appetite for delaying response, reply, and hearing in

7  this case to at least allow that immigration process to be

8  underway.

9       And am I getting that right from your perspective,

10  Mr. Moshenberg?

11              **MR. SANDOVAL-MOSHENBERG:**  Yes, Your Honor.  If the

12  motion is -- unless and until a motion is granted, we are where

13  we are.  The filing of the motion doesn't change his legal

14  status in any way.

15       But if the motion is granted, we're certainly -- it would

16  be a sea change and we would be in a very, very different

17  factual position from where we are now.

18       So we did agree with the government.  The government

19  requested, and we did agree, just to preserve judicial

20  resources here, it's appropriate to let the immigration judge

21  take a crack at that.  We just didn't want that amount of time

22  to be indefinite, Your Honor.

23              **THE COURT:**  Sure.  And that's why -- with respect to

24  how this case will proceed, my intention today is to set a

25  response date for the respondents, where you'll either -- you

1   can move and/or respond to the petition, a reply date, and an

2   evidentiary hearing.  And we can talk about when those things

3   will be to hopefully accommodate what the parties do agree on,

4   which is some wisdom in conserving resources.  But, like you, I

5   don't see the point in delaying this indefinitely, especially

6   because they are, in all material respects, parallel.  So

7   that's number one.

8        Number two, with respect to this other avenue, as I

9   understand it, what you all are calling step two, and I see

10  that -- let me make sure I'm correct about this, that's a

11  different process that Mr. Abrego Garcia may avail himself of,

12  and that is the credible fear presentation.

13       Am I right about that?

14            **MR. SANDOVAL-MOSHENBERG:**  Your Honor, I would refer

15  you to Mr. Ensign for that question, because sort of part of

16  our issue here is we're not actually fully clear on exactly

17  what even the government thinks the process is for challenging

18  removal to Uganda or any other particular third country that's

19  named.

20            **THE COURT:**  Can I ask you -- Mr. Moshenberg, can I

21  just ask you, though, you see that -- regardless of whether

22  you're completely clear as to what the process is, would you

23  agree with the fundamental principle that it is a different

24  process?  It's a separate track that you all have talked about;

25  is that right?

7

1              **MR. SANDOVAL-MOSHENBERG:**  Yes, Your Honor.

2              **THE COURT:**  Okay.

3              **MR. SANDOVAL-MOSHENBERG:**  Separate from the motion to

4    reopen and step one that we discussed, yes, completely

5    separate, Your Honor, that's correct.

6              **THE COURT:**  Okay.  And I don't know if I yet need to

7    hear from Mr. Ensign because, again, going back to fundamental

8    principles, if it's before the immigration officer, asylum

9    officer, immigration judge, as a matter of first principle, I

10   don't have jurisdiction over that except if Mr. Abrego's

11   constitutional rights, according to the petitioner, are being

12   impinged on.  And one sort of obvious way, in my view, might be

13   if there is no process, right?  That's the -- that's the --

14   that's the obvious one.  But there could be shades of that.

15        For purposes of scheduling, though, again, I put it in the

16   same bucket as asylum.  I have no say over it, and I have no

17   jurisdiction over it.  It seems like whatever that process is,

18   the petitioners are asking for it to be reduced to writing,

19   whatever the decision is, and the government resists my

20   intervention in that respect.

21        Am I getting that right, Mr. Ensign?

22             **MR. ENSIGN:**  Well, actually, Your Honor, I do think

23   it bears on the rightness of the issues presented here that

24   that policy, DHS is the policy by which it would execute a

25   third-country removal.  And that is what is challenged here.

8

```
1   And so until that process reaches a conclusion --

2              THE COURT:  Yep.

3              MR. ENSIGN:  -- it would need to be right.  Nor --

4   that is the process that would also potentially generate a

5   record for appeal -- or sorry, a record for this court and

6   these proceedings.

7              THE COURT:  For this court, yes.  Okay.

8              MR. ENSIGN:  We agree that there would not be

9   jurisdiction over that, and we think that's something the

10  Supreme Court has acknowledged through its stay in the D.V.D.

11  case.  But that -- to the extent that jurisdiction does exist

12  in this court, it presents both rightness issues, and that

13  would essentially generate the record by which, you know, an

14  evidentiary hearing, to the extent that that was available, and

15  there was jurisdiction would test that.

16     So we do think that unlike the proceedings before the IJ

17  and the motion to reopen the DHS processes here are an

18  antecedent to the sort of factual testing to the extent

19  jurisdiction is available to do that.  And we -- and for that

20  reason, also bears on ripeness.

21             THE COURT:  Okay.  Do you have any timing of when

22  that DHS process will take place, the second one?  Step two.

23             MR. ENSIGN:  Yes, Your Honor.  I've spoken to DHS,

24  and they believe that they can complete that process for any

25  particular country within two weeks.  Under that process, if
```

1  Mr. Abrego Garcia convinces DHS that he has a meritorious CAT

2  claim or that removal to that country is otherwise inadvisable,

3  they can designate a different country.  And so to the extent

4  there was a different country designation, they would want two

5  weeks to adjudicate that.  But they can commit to

6  adjudicating -- or, you know, resolving the process for any

7  particular country within two weeks.

8          **THE COURT:**  Okay.  All right.

9      And with respect to the reduction of writing, I'll just

10  say this, I'm not going to order it one way or the other, but

11  Mr. Ensign, I think you're acutely aware, because you just

12  mentioned it, of the fact that this step-two process may end up

13  being relevant to this court's proceedings.  And I leave it to

14  DHS as to whether they wish to memorialize in writing in

15  advance what happens or wait for an evidentiary hearing.

16      But in any event, there are going to be people with

17  firsthand knowledge about what, if anything, happens in that

18  process that may end up in my court.

19      So as of today, I certainly will not dictate how DHS runs

20  that process, and you're very aware of how it may end up in

21  court here.

22      Am I right about that?

23          **MR. ENSIGN:**  I am aware of that -- of that potential

24  eventuality.  We obviously contest the jurisdiction exists, but

25  we are certainly very aware of that possibility.

1          **THE COURT:**  Okay.  All right.  And so you proceed

2    accordingly and will -- will now -- unless, Mr. Moshenberg, you

3    have any comment on that, what I intend to do now is talk

4    scheduling.  Knowing that at least the step-two process, the

5    government expects, or the respondents expect, will be complete

6    within two weeks, my thought is to set out a briefing schedule

7    that's longer than two weeks but not much so that at least we

8    can get this process under way with the caveat that if at any

9    point either side believes further time is necessary, you just

10   put that -- you know, move for additional time, and I'll

11   adjudicate it.

12        Does that make sense to both sides?

13         **MR. SANDOVAL-MOSHENBERG:**  Yes, Your Honor.

14         **THE COURT:**  Okay.  All right.  So let me -- let me

15   run by you a current potential schedule and get your comments

16   on it.

17        So given the timeline that we've talked about from the

18   immigration side, for me, what I would expect is respondents'

19   response should be filed by September 17, 2025.  So that's

20   three weeks from now.  Petitioner's reply would be a week

21   later.

22        A witness list would be provided to me 48 hours before the

23   evidentiary hearing.  And I would conduct the evidentiary

24   hearing some time after the 1st of October.  And you sort of

25   tell me when would be best.  And that's -- that's the rough

1  contours of it.

2      Any issue with the rough contours?  And then we can pick a

3  hearing date.

4          **MR. SANDOVAL-MOSHENBERG:**  That's acceptable for

5  petitioners, Your Honor.  Thank you.

6          **MR. ENSIGN:**  Your Honor, we -- we do think there's a

7  possibility that the record may not be fully developed given

8  how proceedings may develop.  Certainly, proceedings before

9  either the immigration judge or DHS could change those

10  contours.  If so, we would ask --

11          **THE COURT:**  Well, what are you asking for?

12          **MR. ENSIGN:**  I think we can meet that schedule, but

13  certainly recognize that there are contingencies that would

14  warrant, you know, extending that or doing supplemental

15  briefing in order to account for circumstances that may arise.

16  I mean, certainly premature review of a record that isn't

17  developed doesn't -- it's both suboptimal and, you know, not

18  appropriate in our view.

19          **THE COURT:**  Right.  Understood.

20      But you proffered to me, at least with respect to the

21  step-two process, that's going to happen within two weeks.  We

22  have the understanding that the asylum process is of no moment

23  to me.  I don't have jurisdiction over that.

24      So absent any other cause, it seems to me like we are best

25  to put in a hearing and everybody move toward that hearing,

especially since those agency heads and all the way up to the
president have been very comfortable telling the world that
their intention is to deport Mr. Abrego to Uganda, and they
seem pretty firm on that, that seems to me to indicate you all
wish to proceed with great speed.  If there is a change of
heart in that regard and you talk to the petitioners about it,
you can let me know.

     But all -- all indications point to we have to get this --
this part of Mr. Abrego's case moving.  And again, if at any
point, Mr. Ensign, you want to give me some good cause as to
why we should relax these deadlines, I'll certainly hear you on
it.  Because I want what's most efficient as well, so I
understand that.  Okay?

          **MR. ENSIGN:**  Understood, Your Honor.

          **THE COURT:**  Okay.  So with that, why do not we work
backwards.

     Let's find a date in early October that makes sense for a
hearing.  I would propose, to give you all a little time to
digest what happens in the next couple weeks, October 6th,
which is a Monday.  I have it -- it's wide open right now.

     How does that work for both sides?

          **MR. SANDOVAL-MOSHENBERG:**  That's acceptable for
petitioner.  Thank you, Your Honor.

          **MR. ENSIGN:**  Your Honor, I believe that should be
acceptable for the respondents.

1       **THE COURT:**  Okay.  So we will begin our hearing, and

2  it will be an evidentiary hearing if necessary, if you need

3  witness testimony, at 10:00 a.m.

4       And there was some conversation in the filings, to me,

5  about how quickly after that hearing I will adjudicate the

6  petition.  And, you know, my good-faith promise to you is, you

7  know, within 30 days.  Absent, you know, heaven forbid, getting

8  hit by a bus, I'm going to do it within 30 days, so you're not

9  going to have any delay on my end.  That's -- we've tried to

10  commit to that throughout this case, and so you -- you have

11  that now going in.

12       So October 6th at 10:00 a.m. is when we'll begin.

13       What I would like, then, and what I'm going to set is by

14  close of business, October 2nd, the parties provide a

15  witness -- witness list to me so I know what's coming.

16       If, when you exchange witness lists on the 2nd -- between

17  the 2nd and the 3rd, someone decides that someone else needs to

18  be called, I'll give you a little bit of grace to tell me that

19  by 9:00 a.m. on the 3rd.  But the goal is, and what will be in

20  the order, is October 2nd, close of business.  Okay?

21       Then we have the filing deadlines.

22       I would like to keep -- well, let's do it this way, that

23  way you all have a little more time.

24       Let's make -- where in the -- let me just look at this

25  real quick.

1       If -- let's have the respondents' motions and/or response

2  due October -- wait a minute.  Not October.  Sorry.

3  September 15th.  That will give you -- no, I'm sorry.  I don't

4  want to do that.

5       This is why I went to law school, my math is terrible.

6       September 22nd.  Okay?  For the respondents' response or

7  other motions.  Petitioner's reply by September 29.  And that

8  gives everyone a full week to -- to digest everything that is

9  going on, and then we have the hearing on the 6th.

10      Any questions about that schedule?  Well, obviously we'll

11 reduce it to writing.

12          **MR. SANDOVAL-MOSHENBERG:**  No questions about that,

13 Your Honor.  I have one other very brief matter to bring up,

14 but no questions about the schedule.  Thank you.

15          **THE COURT:**  Mr. Ensign, any questions?

16          **MR. ENSIGN:**  Just to confirm, Your Honor, so that

17 would be September 22nd as a response to the habeas petition,

18 and any other sort of motions we make attending to that?

19          **THE COURT:**  Correct.  And then the reply and

20 response, if you have any other motions, the 29th, with the

21 hearing on the 6th.

22          **MR. ENSIGN:**  Understood, Your Honor.

23          **THE COURT:**  Okay.  Now, between now and then, and I'm

24 going to say between now and my adjudication of the petition,

25 the final sort of resolution which I have promised to you all,

will be done within 30 days of that hearing, I'm going to

extend the two restraining -- the two -- the two main pillars

of my TRO, which is, one, that Mr. Abrego not be removed from

the continental United States pending the resolution of this

petition; and two, that he not be -- that he -- his detention

in ICE custody remain within 200 miles of this courthouse.

If anything changes in that regard, in other words, if you

want to move for me to reconsider, for whatever reason, you do

it by separate motion.

I know the respondents had a concern about the petitioners

raising a *Zadvydas* claim to me now, in other words, petitioning

for me to somehow direct Mr. Abrego Garcia's release. I'm not

going to endorse or prohibit one way or another. There's a

*Zadvydas* claim in the petition. Although, I don't know if it's

necessary, frankly. Maybe, Mr. Moshenberg, if you want to

comment, you can, but necessary if you're before an immigration

judge in a parallel proceeding where, it's my understanding,

you have that right before the immigration court as well.

But in terms of my getting involved in this, there are the

allegations in the petition, there are the causes of action in

the petition, and I am taking no position on any of that until

we fully brief and we have a hearing.

Does that make sense to both sides?

**MR. SANDOVAL-MOSHENBERG:** Yes, Your Honor. Thank

you.

1      **MR. ENSIGN:**  Yes, Your Honor.  Although just a couple

2  of quick comments on that.

3      The first is that we certainly appreciate this Court's

4  willingness to decide this matter quickly.  The government's

5  concern is under *Zadvydas*, there is a presumptive six-month

6  limit to detention, and so because we've committed not to

7  removing him during adjudication, assuming an acceptable

8  schedule, which would be in district court proceedings, we

9  would ask -- you know, our concern is we don't want proceedings

10 to drag on in a way that could create a *Zadvydas* problem, and

11 we certainly appreciate this Court's ruling to move quickly.

12 But we would certainly ask that that not be used against us for

13 *Zadvydas* purposes, that, you know, we're not removing during

14 these district court proceedings.

15      **THE COURT:**  Okay.  So what I'll say about this is you

16 seem sensitized to the *Zadvydas* time frame than what the Court

17 has said and how lower courts have treated it.  And with that

18 in mind, you have also proffered that at least as to one of the

19 two avenues, you'll move quite quickly.

20      I, too, tend -- will move quickly, and it sounds like the

21 petitioner will as well.

22      So I put this back on the parties, I suppose, to discuss

23 whether there really is a *Zadvydas* problem at this juncture or

24 when it might be ripe.  I -- I am not adjudicating anything in

25 the petition right now, nor do I feel equipped to do so until

1  we have our hearing.  And so to the extent the *Zadvydas* issue

2  has been raised in the petition, I'm not doing anything with it

3  at this point.

4      Mr. Moshenberg, is there -- is there any intention on the

5  part of the petitioner to ask me for relief with regard to

6  release, knowing that at least at this point, I -- I think that

7  you all have a lot of work to do on the immigration side, we

8  have a very quick hearing date coming up.  Is there an intent,

9  just so that we can put it out there?

10             **MR. SANDOVAL-MOSHENBERG:**  Your Honor, we're certainly

11 not asking the Court to enter any sort of release order today.

12 We don't presently intend to file any sort of motion seeking

13 release prior to the hearing that the Court has just set on

14 October 6th.  I certainly don't want to prejudge what arguments

15 we're going to be making in our briefing, and at the hearing,

16 what arguments we are going to not stand on, what argument we

17 are going to stand on.  I can definitely represent to the Court

18 that we're not seeking release -- we're not seeking that this

19 Court order release from custody between now and October 6th.

20             **THE COURT:**  Okay.  Well, that's very helpful,

21 Mr. Moshenberg, because I think, Mr. Ensign, that handles your

22 concern, at least until we're back together on the 6th.

23      Is that fair?

24             **MR. ENSIGN:**  I believe so, Your Honor.

25             **THE COURT:**  Okay.  All right.  So with that, I will

18

 1    enter an order.  It will be brief.  It will set out this

 2    briefing schedule.  It will confirm that until further court

 3    order, Mr. Abrego won't be removed from the continental United

 4    States.  He will remain in custody within a 200-mile radius of

 5    the Court.  And you have my good-faith promise that we go

 6    forward on the 6th.  You'll have a decision within 30 days.

 7         I'm not going to put that in the order.  You're just going

 8    to have to trust me on that.  Okay?

 9         All right.  Very good.

10         Anything else that we have to talk about today?

11              MR. SANDOVAL-MOSHENBERG:  One very brief matter, Your

12    Honor.

13              THE COURT:  Okay.

14              MR. SANDOVAL-MOSHENBERG:  At the time of

15    Mr. Abrego Garcia's detention, and then again that evening, by

16    means of e-mail to the Department of Justice, we requested a

17    copy of any documents that were served on him, you know, at --

18    at the time of his detention, and we have not been given any

19    documents, now two days later.

20         We think those documents are necessary to understand the

21    basis of his detention and to understand whether this Court's

22    order of July 23rd is or is not being complied with.

23         And so what we ask the Court is to -- I don't know if the

24    word is order or request, but we'd ask that any documents

25    served on Mr. Abrego Garcia also be served on us on a -- both

1  the documents that he's been served so far, since Monday, and

2  also on a going-forward basis.

3        **THE COURT:**  So Mr. Moshenberg, let me ask, have you

4  been served any documents even in advance of his going into

5  custody?

6        **MR. SANDOVAL-MOSHENBERG:**  Prior to Monday morning, we

7  were served with two documents:  The check-in notice for Monday

8  morning, and then an e-mail designating Uganda as the country

9  of removal.

10     So we didn't even know, for example, if they -- you know,

11  this Court, for example, ordered that defendant shall provide

12  written notice to Abrego Garcia and all counsel of record.  We

13  don't know if they complied with that or not, because we don't

14  know if they provided written notice to him.

15     And this Court ordered that defendant shall restore Abrego

16  Garcia to his ICE order of supervision out of the Baltimore

17  field office.  We don't know if they essentially restored it

18  and revoked it on a kind of, you know, same-day basis, or

19  whether they just never restored it at all and, therefore,

20  didn't comply with this Court's order.

21     So we just need to -- you know, whatever documents he's

22  been given should be given to his counsel as well.

23        **THE COURT:**  Okay.  I do think that's a reasonable

24  request.  But Mr. Ensign, can you first confirm whether any

25  documents were given to Mr. Abrego Garcia when he went into ICE

1  custody?

2          **MR. ENSIGN:**  Your Honor, my understanding is that any

3  documents provided to him have also been provided to counsel

4  and there are not additional documents.  I'll certainly check

5  with DHS, and anything that was served on him, we will also

6  serve on his counsel to the extent it hasn't been done already.

7  I believe it has been, but to the extent it hasn't, we'll make

8  sure that happens.

9          **THE COURT:**  And can we put a timeline on that?  It's

10 Wednesday today.  Can that be accomplished by Friday?

11         **MR. ENSIGN:**  Yes, Your Honor, we'll be able to do

12 that.

13         **THE COURT:**  Okay.  Well, that should give you,

14 Mr. Moshenberg, either confirmation that there have been no

15 documents or your documents, and we can go from there by

16 Friday.

17         **MR. SANDOVAL-MOSHENBERG:**  Thank you.  Thank you, Your

18 Honor.

19         **THE COURT:**  Okay.  Very good.  Thank you to both of

20 you.

21     Anything else?

22         **MR. SANDOVAL-MOSHENBERG:**  Nothing further from

23 petitioner.  Thank you.

24         **MR. ENSIGN:**  Your Honor, we would object to the

25 extension of the TROs, but we -- DHS is committed not to remove

1   pending this process, so that -- that is likely not a live

2   issue, but we certainly would preserve our objection for the

3   record.

4            **THE COURT:**  Okay.  Understood.  But given that you're

5   also agreeing to do what the TRO orders, it doesn't sound as if

6   it's going anywhere.  To the extent you think it is going

7   somewhere, certainly put it in writing to me, because I'm

8   accepting your representation now as confirmation that, if I'm

9   getting it right, voluntarily, the respondents will not remove

10  Mr. Abrego during the pendency of this matter, at least through

11  the hearing, if not through my decision.  And that's a

12  voluntary decision you're making; is that right?

13           **MR. ENSIGN:**  That's correct, Your Honor.

14           **THE COURT:**  Okay.  Very good.

15       Does the same apply to his detention within a 200-mile

16  radius, that you're agreeing to it?

17           **MR. ENSIGN:**  Yes, Your Honor.

18           **THE COURT:**  So while you may be preserving your

19  objection for the record, you're also consenting to this

20  conduct yourselves identically to what's in the order so that

21  it's not a live issue at this point?

22           **MR. ENSIGN:**  I believe so, Your Honor.  And if that's

23  not the case, we will promptly inform the Court, if that is an

24  issue.  But that is my understanding.

25           **THE COURT:**  Okay.  All right.  Very good.

1          Is there anything else, then, that we need to discuss?

2               **MR. ENSIGN:**  Not from respondents, Your Honor.

3               **THE COURT:**  Mr. Moshenberg?

4               **MR. SANDOVAL-MOSHENBERG:**  Nothing for petitioner.

5     Thank you, Your Honor.

6               **THE COURT:**  All right.  Thank you all.  We'll get

7     this scheduling order and other order out very soon.  Thanks so

8     much.

9               **MR. SANDOVAL-MOSHENBERG:**  Thank you, Your Honor.

10              **MR. ENSIGN:**  Thank you.

11              **DEPUTY CLERK:**  This Honorable Court stands in recess.

12         (Proceedings were concluded at 9:47 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Paula J. Leeper, Federal Official Court Reporter, in

5   and for the United States District Court for the District of

6   Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that

7   the foregoing is a true and correct transcript of the

8   stenographically-reported proceedings held in the

9   above-entitled matter and the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12                              Dated this 1st day of September 2025.

13

14

15                        /S/ Paula J. Leeper
                          _____
16
                          Paula J. Leeper, RPR, CRR
17                        Federal Official Reporter

18

19

20

21

22

23

24

25