**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

---

KILMAR ARMANDO ABREGO GARCIA,
*et al.*,

                              *Plaintiffs*,

           v.

KRISTI NOEM, Secretary of the Department of
Homeland Security, *et al.*,

                              *Defendants*.

Case No. 8:25-cv-02780 (PX)

---

**DEFENDANTS' RETURN TO**
**THE PETITION FOR WRIT OF HABEAS CORPUS**

**TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................................... 1

**BACKGROUND** ...................................................................................................... 2

**ARGUMENT** ........................................................................................................... 5

   **I.**   **Petitioner's challenges to his removal are not justiciable and fail on the merits.**........ 6

      **a.**   **Petitioner is a member of the non-opt-out class certified in *D.V.D.*, which precludes him from bringing Counts 1 and 4.** ........................................................ 6

      **b.**   **The same reasons underlying the Supreme Court's decision to grant a stay in *D.V.D.* prevent the Court from granting relief as to Petitioner's Counts 1 and 4.. 10**

      **c.**   **Count 1 fails substantively and is not justiciable.** ..................................... 12

      **d.**   **Count 4 fails substantively and procedurally.** .......................................... 14

      **e.**   **Count 5 fails substantively.** ..................................................................... 17

   **II.**   **Petitioner's challenges to his detention also are not justiciable and fail on the merits.** ...................................................................................................... 18

      **a.**   **Count 2 fails substantively.** ..................................................................... 18

      **b.**   **Count 3 is barred.** ................................................................................... 22

      **c.**   **Count 3 fails substantively.** ..................................................................... 24

**CONCLUSION** ....................................................................................................... 26

## INTRODUCTION

Petitioner Kilmar Armando Abrego Garcia surreptitiously and unlawfully entered the United States and has no right to remain here. Indeed, he had the benefit of full removal proceedings under the Immigration and Nationality Act ("INA"), which culminated in a final order of removal in 2019.

The government first attempted to execute the removal order in March 2025. Petitioner is now back in the United States and circumstances have been returned to the status quo, as they existed prior to his removal. The government now seeks to lawfully remove Petitioner to a third country because he remains subject to an order granting him statutory withholding of removal from El Salvador—and El Salvador only. In response, Petitioner instituted this action, challenging both his potential removal to Uganda as well as his detention.

Petitioner's claims are both procedurally barred and meritless—even unserious. As an initial matter, the INA provides a process for Petitioner to seek relief from a third-country removal by filing a motion to reopen and seeking a stay of removal from an immigration judge. Petitioner has done so and those motions are currently pending. In addition, DHS has processes that Petitioner could invoke, which are also currently playing out. But the INA does not permit—and indeed affirmatively bars—this collateral challenge to removal and detention. This Court should therefore permit those administrative procedures to play out while respecting Congress's prohibition on interference in those procedures by federal district courts.

As to his challenges to removal, Petitioner is part of the mandatory class in *D.V.D. v. DHS*, 778 F. Supp. 3d 355 (D. Mass 2025), and thus cannot assert parallel claims here.  Even if he could, those claims are both jurisdictionally barred and substantively meritless—as the Supreme Court has already recognized in staying an injunction raising equivalent claims. *DHS v. D.V.D.*, 145 S.

1

Ct. 2153, 2153 (2025). And Petitioner's challenge to removal to Uganda no longer presents a live controversy, as DHS is no longer seeking to remove him to that nation following Petitioner's claim that he fears persecution or torture if sent there. Petitioner's challenges to his detention are likewise impermissible collateral challenges and premature, since the Supreme Court permits detention pending removal for a presumptively reasonable period of six months before any additional procedures are potentially triggered. *Zadvydas v. Davis*, 533 U.S. 678 (2001).

Petitioner's actions also betray a level of gamesmanship to remain in the United States that this Court should not indulge. For example, while Petitioner claims that Costa Rica is his preferred country of removal, he simultaneously is expressing a "fear of persecution and torture" if removed to "Costa Rica." Ex. A at 11, 61 (Petitioner's Emergency Mot. Reopen, A# 201-577-119 (Aug. 5, 2025) and exhibits). Petitioner is thus claiming that his *preferred destination country* is somehow likely to persecute or torture him if he were sent there—a claim that, if he actually believed it, would presumably motivate him to choose a different destination. Indeed, Petitioner has already expressed putative fear of persecution or torture from *more than twenty nations* and has made clear that he may assert such fears for *any* country that he does not prefer—and indeed has even done so for the country that he putatively does prefer. *Id.*

Ultimately, this suit impermissibly seeks to delay the too-long-delayed execution of Petitioner's 2019 final order of removal, "the consequence [of which] is to permit and prolong a continuing violation of United States law." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999) ("*AADC*"). This Court should deny the Petition.

## BACKGROUND

Petitioner Kilmar Abrego Garcia filed the instant habeas petition challenging the lawfulness of his ongoing immigration custody. ECF No. 1. Petitioner is subject to a valid final

removal order issued in 2019. ECF No. 1-1. As part of that proceeding, he was granted withholding of removal to El Salvador. *Id.*

On March 12, 2025, U.S. Immigration and Customs Enforcement ("ICE") officers detained Petitioner to execute his valid removal order. As the Court knows, the government removed him to El Salvador. ECF No. 211-3 ¶¶ 80-82, 96 & n.1. On March 24, 2025, Petitioner sought relief from this Court and on April 4, 2025, this Court ordered the government to "facilitate and effectuate the return of . . . Abrego Garcia to the United States" "to restore the status quo and to preserve Abrego Garcia's access to due process in accordance with the Constitution and governing immigration statutes[.]" *Abrego Garcia v. Noem*, No. 8:25-cv-00951-PX, 2025 WL 1024654, at *1 (D. Md. Apr. 4, 2025), *amended by* 2025 WL 1085601 (D. Md. Apr. 10, 2025). The Supreme Court affirmed that order to the extent it required Defendants to "'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025).

Defendants complied, facilitated, and were successful in effectuating Petitioner's return on June 6, 2025. Petitioner was thereafter indicted for federal alien smuggling offenses in Tennessee and taken into criminal custody in connection with those charges.[1] ECF No. 3, *United States v. Abrego Garcia*, No. 3:25-cr-115 (M.D. Tenn. May 21, 2025); *id.* at ECF No. 9 (warrant return executed). The criminal court ordered his release on conditions. *Id.* at ECF Nos. 95–96, 112. Although Petitioner argues that the criminal charges against him are selective and vindictive, his own attorney has indicated that Petitioner's "entire defense team, as well as [his] immigration

---

[1] *See* U.S. Dep't of Just., *Attorney General Bondi Announces Charges Against Abrego Garcia* (June 6, 2025), https://www.justice.gov/opa/video/attorney-general-bondi-announces-charges-against-abrego-garcia.

3

attorneys, were recommending that the defendant accept the government's plea offer." *Id.* at ECF No. 121-1 ¶ 42.

In the meantime, this Court ordered Defendants "to not take Abrego Garcia into ICE custody in Tennessee" and "restore him to his ICE Order of Supervision out of the Baltimore Field Office." ECF No. 238 at 17, *Abrego Garcia v. Noem*, 8:25-cv-951 (D. Md. July 23, 2025). This Court also ordered that "should Defendants commence third-country removal proceedings against Abrego Garcia, Defendants must transmit immediate written notice to Abrego Garcia and all counsel of record in this case of the intended third country at least seventy-two hours prior to commencing removal." *Id.* In conformance with those orders, once Petitioner was released from criminal custody under conditions on August 22, 2025, he returned to Maryland subject to his Order of Supervision from the ICE Baltimore Field Office. ECF No. 112, *United States v. Abrego Garcia*, No. 3:25-cr-115 (M.D. Tenn. Aug. 22, 2025).

On August 25, 2025, pursuant to that Order of Supervision, Abrego Garcia reported to the Baltimore Field Office and was taken into custody to effectuate removal pursuant to the 2019 final removal order. *See* ECF No. 1 ¶ 43. As required by this Court's order, he was notified that Uganda was the intended country of removal. *Id*. ¶ 39; ECF No. 1-5. Petitioner expressed that he feared persecution or torture if removed to Uganda, ECF No. 1-6, in addition to 22 other countries, including Costa Rica, ECF No. 27-3. As a result, on September 5, 2025, ICE notified Petitioner that he would be removed to Eswatini, rather than Uganda. *Id*. DHS's third-country-removal procedure, as set forth in its March 30, 2025, guidance document, allows for removal to another country if the alien expresses a threat of fear or persecution. Ex. B (March 30, 2025: Guidance Regarding Third Country Removals).

In his immigration proceedings, Petitioner has filed a motion to reopen requesting asylum, statutory withholding of removal, and Convention Against Torture ("CAT") protection from El Salvador based on his detention by the Salvadoran government, as well as protection from removal to Uganda. Ex. A. He also sought reopening for the purpose of seeking discretionary cancellation of removal. He has filed with the immigration court a motion for a stay of his removal pending the determination of his motion to reopen.

As part of his motion to reopen, Petitioner sought to have Costa Rica designated as his preferred country of removal. Ex. A at 11 ("Reopening is also warranted so that Respondent may designate Costa Rica as the country of removal pursuant to 8 U.S.C. § 1231(b)(2)(A)[.]"). At the same time, however, Petitioner attached a letter in which he specifically expressed his "fear of persecution and torture" if he were removed to Costa Rica or other listed countries. *Id*. at 61 ("I am articulating a fear of persecution and torture on behalf of Mr. Abrego Garcia to be removed to: Uganda, Mexico, Belize, *Costa Rica*, Guatemala, Honduras, Nicaragua, Panama, Argentina, Bolivia, Brazil, Chile, Colombia, Ecuador. Paraguay, Peru, Uruguay, Venezuela, Cuba, Dominican Republic, and Haiti." (emphasis added)). Petitioner's counsel further signaled that Petitioner was prepared to articulate a fear of persecution or torture from any country the government might designate as a country of removal. *Id.* ("Mr. Abrego Garcia reserves the right to claim fear toward any other country where DHS may attempt to deport him if the Department attempts to remove him elsewhere.").

Those motions remain pending in immigration court.

## ARGUMENT

Petitioner challenges both his removal and his detention pending removal. His challenges to his removal were raised by the class in *D.V.D. v. DHS*, 778 F. Supp. 3d 355 (D. Mass. 2025),

of which he is a member, and therefore he cannot raise them here. Those claims are also barred by the INA and fail on the merits. Petitioner's challenges to his detention fail substantively as well, as the Supreme Court has long recognized the constitutionality of immigration detention pending removal. Respondents address these challenges in turn.

## I.  Petitioner's challenges to his removal are not justiciable and fail on the merits.

### a.  Petitioner is a member of the non-opt-out class certified in *D.V.D.*, which precludes him from bringing Counts 1 and 4.

Petitioner brings claims, alleging that "ignoring [his] designation of Costa Rica" as his country of removal violates 8 U.S.C. § 1231(b)(2) and that the government's third-country-removal procedures "violate his rights under 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 1208.16, and due process" in part because of the "risk of refoulement to El Salvador." *See* ECF No. 1 ¶¶ 48–50, 60–67. But Plaintiff is a member of the non-opt-out class certified in *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025), and his claims raise the same arguments the class made in *D.V.D.*, where the Supreme Court stayed injunctive relief. *DHS v. D.V.D.*, 145 S. Ct. at 2153. He is therefore precluded from bringing Counts 1 and 4 here.

Federal Rule of Civil Procedure 23(b)(2) provides for class actions where Rule 23(a)'s requirements are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) neither requires that absent class members be given notice of class certification nor allows class members the opportunity to opt-out of the class action." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 330 n.25 (4th Cir. 2006). And "[i]ndividual class members may not bring separate lawsuits seeking injunctions similar to the relief sought by the class." *Spencer v. Gasper*, 2021 WL 5346665, at *2 (6th Cir. June 16, 2021); *see also Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988) ("To

allow individual suits would interfere with the orderly administration of the class action and risk inconsistent adjudications."); *Rivarde by Rivarde v. Missouri*, 930 F.2d 641, 643 (8th Cir. 1991) ("[A] class member should not be able to prosecute a separate equitable action once his or her class has been certified."). That is because the relief afforded to a Rule 23(b)(2) class "benefits class representatives and class members alike," *CASA, Inc. v. Trump*, 2025 WL 2263001, at *12 (D. Md. Aug. 7, 2025); *Thorn*, 445 F.3d at 330 ("[T]he underlying premise of the [Rule 23(b)(2)] class [is] that its members suffer from a common injury properly addressed by class-wide relief . . . ."), and  allowing individual class members to bring separate lawsuits seeking similar injunctive relief would risk "prejudic[ing] other class members or caus[ing] inconsistencies and compromises in future litigation," *Borcherding-Dittloff v. Transworld Sys., Inc.*, 185 F.R.D. 558, 562 (W.D. Wis. 1999).

Here, the district court in *D.V.D.* certified a class under Rule 23(b)(2), defined as:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*D.V.D.*, 778 F. Supp. 3d at 378.

The class brought claims for violations of the APA, the Fifth Amendment's Due Process Clause, and 8 U.S.C. § 1231(a), alleging that "Defendants have a policy or practice"—as set forth in DHS's March 30, 2025, guidance on third-country removals—"of failing to provide noncitizens who have final removal orders with meaningful notice and opportunity to present a fear-based claim prior to deportation to a third country." Compl. ¶¶ 102–17, 123–30, *D.V.D. v. DHS*, 2025 WL 897107 (D. Mass. Mar. 23, 2025); *D.V.D.*, 778 F. Supp. 3d at 368. The class asserted that Defendants' third-country-removal policy "violates the INA, [Foreign Affairs Reform and

Restructuring Act of 1998 ("FARRA")], and implementing regulations all of which mandate that Defendants refrain from removing Plaintiffs to a third country where they will likely be persecuted or tortured." Compl. ¶ 105, *D.V.D.*, 2025 WL 897107.

The class requested that the court "[p]reliminarily and permanently enjoin Defendants from failing to provide class members with written notice and a meaningful opportunity to present a fear-based claim under the Convention Against Torture to an immigration judge prior to deportation to a third country." *Id.* (prayer). The district court held that the plaintiffs were "likely to succeed in showing that Defendants have a policy or practice of executing third-country removals without providing notice and a meaningful opportunity to present fear-based claims, and that such policy or practice constitutes a deprivation of procedural due process," *D.V.D.*, 778 F. Supp. 3d at 387, and ordered the government to take the following actions prior to any third-country removal: "(1) provide written notice to the alien—and the alien's immigration counsel, if any—of the third country to which the alien may be removed, in a language the alien can understand; (2) provide meaningful opportunity for the alien to raise a fear of return for eligibility for CAT protections; (3) move to reopen the proceedings if the alien demonstrates 'reasonable fear'; and (4) if the alien is not found to have demonstrated 'reasonable fear,' provide meaningful opportunity, and a minimum of 15 days, for that alien to seek to move to reopen immigration proceedings to challenge the potential third-country removal," *id.* at 392–93. The Supreme Court, however, stayed that injunction pending appeal, *DHS v. D.V.D.*, 145 S. Ct. at 2153, and merits proceedings are ongoing in the District of Massachusetts.

Here, Petitioner is part of the Rule 23(b)(2) class certified in *D.V.D.* He was ordered removed under INA Section 240, and the government seeks to remove him to a third country, not previously designated as the country of removal and not identified in the prior proceeding as a

country to which he might be removed, after February 18, 2025. ECF No. 1-1; 1-5. Petitioner cannot opt out of the class and may not individually bring claims for injunctive relief brought in *D.V.D.*

His Petition, however, seeks to do just that. He brings claims alleging that Respondents' third-country-removal policy, as set forth in the March 30, 2025, guidance document, violates the INA and due process and will result in his removal to a country where he is likely to be persecuted, tortured, or refouled. ECF No. 1 ¶¶ 48–50, 60–67. And he requests that this Court enjoin Respondents from "removing [him] to Uganda without first concluding [his] reasonable-fear and withholding-only proceedings." *Id.* at 15. This Court should dismiss Petitioner's claims because they are nearly identical to those brought in *D.V.D.* Separately adjudicating them would risk prejudicing other class members and could cause inconsistencies in future litigation.

Multiple courts in this district and elsewhere have denied relief on this basis. *See, e.g., Ghamelian v. Baker*, 2025 WL 2049981, at *3 (D. Md. July 22, 2025) (denying relief because of petitioner's status as a *D.V.D.* class member); *I.V.I. v. Baker*, 2025 WL 1519449, at *2 (D. Md. May 27, 2025) ("Even stripped of any reference to the District of Massachusetts' order, these claims are the same as (or substantially related to) the class claims being litigated in that district." (citation omitted)); *Tanha v. Warden, Baltimore Det. Facility*, 2025 WL 2062181, at *5 (D. Md. July 22, 2025) ("The court finds that Petitioner is a member of the *D.V.D.* Class."); *Sanchez v. Bondi*, 2025 WL 2550646, at *3 (D. Colo. Aug. 20, 2025) ("[B]ecause Mr. Sanchez is a member of *D.V.D.*'s Rule 23(b)(2) class, he has failed to show a likelihood of success on the merits of his claim."); *see also Phan v. DHS*, 1:25-cv-2147 (D.D.C. July 4, 2025) (transferring case to the District of Massachusetts as related to *D.V.D.*). This Court should do the same.

**b. The same reasons underlying the Supreme Court's decision to grant a stay in *D.V.D.* prevent the Court from granting relief as to Petitioner's Counts 1 and 4.**

The Supreme Court granted a stay of the injunction in *D.V.D.* pending appeal and disposition of any petition for certiorari. *DHS v. D.V.D.*, 145 S. Ct. at 2153. To be entitled to a stay, the Supreme Court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). In granting the stay, therefore, the Supreme Court concluded that the government had made a strong showing that it would likely succeed on the merits. *See id.*

Here, the government is likely to prevail on Petitioner's challenges for the same reasons presented to the Supreme Court when it concluded that the government was likely to prevail in *D.V.D.*: 8 U.S.C. § 1252(a)(5), (b)(9), and (g) bar district courts from exercising jurisdiction over suits challenging actions taken to execute removal orders.[2] *See* Pet'rs' Stay Application, *DHS v. D.V.D.*, 2025 WL 1542411, at *18–28 (U.S. May 27, 2025). Congress has explicitly and unambiguously stripped district courts of jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders" "notwithstanding any other provision of law (statutory or nonstatutory), including . . . any . . . habeas corpus provision," 8 U.S.C § 1252(g), and the All Writs Act, which

---

[2] To the extent Petitioner attempts to make a CAT claim by asserting that removing him to Uganda would violate his rights under 8 C.F.R. § 1208.16 because he "would face persecution and torture" there, ECF No. 1 ¶ 61, such a claim is also barred under 8 U.S.C. § 1252(a)(4) and Section 2242(d) of FARRA, Pub. L. No. 105-277, Div. G, § 2242(d), 112 Stat. 2681-822. The "sole and exclusive means for judicial review of any cause or claim under [CAT]" must be "a petition for review filed with an appropriate court of appeals in accordance with [Section 1252]." 8 U.S.C. 1252(a)(4); *see* FARRA § 2242(d) (same for "any other determination made with respect to the application of [CAT]").

may authorize a court to employ extraordinary writs "in aid of its existing jurisdiction" but does not "enlarge that jurisdiction," *Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28, 33 (2002) (citation modified). To the extent claims arising from these distinct actions are reviewable at all, they are only reviewable along with any other "questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien"—in a petition for review of a "final order" of removal. 8 U.S.C. § 1252(b)(9). And that petition, "filed with an appropriate court of appeals," is the "sole and exclusive means for judicial review" of such claims. 8 U.S.C § 1252(a)(5). Together, these provisions strictly limit judicial review over certain "stages in the deportation process." *AADC*, 525 U.S. at 483–84.

One such stage is the execution of a removal order. *Id*. If an alien wishes to challenge that discrete act in court, his sole and exclusive means of doing so is a "petition for review filed with [the] court of appeals" for the circuit where immigration proceedings were completed. 8 U.S.C. § 1252(a)(5), (b)(2), not a habeas petition, *id*. (a)(5) (explicitly precluding review via "section 2241 of title 28, or any other habeas corpus provision").[3] If that means is unavailable, then nothing in the INA "provides for jurisdiction" for the federal courts to intervene. *AADC*, 525 U.S. at 487; *Mapoy v. Carroll*, 185 F.3d 224, 229–30 (4th Cir. 1999) (holding that Section 1252(g) has "a singular exception to the general rule in § 1252(g) that jurisdiction is stripped from the enumerated claims" and that is for claims "specifically provided for by § 1252.").

---

[3] Petitioner contends that under *Jama v. ICE*, 543 U.S. 335 (2005), "federal habeas courts may review claims by noncitizens alleging violations of 8 U.S.C. § 1231(b)(2)," as evidenced by the Supreme Court's decision to reverse on the merits rather than hold it lacked jurisdiction. ECF No. 1 ¶ 50. But *Jama* predated the enactment of the REAL ID Act of 2005 through which Congress sought to "expressly eliminate habeas review over all final orders of removal." *A. Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007).

Because Counts 1 and 4 arise from the manner in which Respondents intend to "execute [Petitioner's] removal order[]," 8 U.S.C. § 1252(g)—by removing him to a third country other than his designated country or a country where he "would face persecution and torture" or refoulement, ECF No. 1 ¶¶50, 61–62—those claims "fall[] squarely within" the INA's jurisdictional bar, *AADC*, 525 U.S. at 487. And this Court lacks the authority to adjudicate them. *See Camarena v. ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order."); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (observing that "the discretion to decide whether to execute a removal order includes the discretion to decide when to do it" and that "[b]oth are covered by the statute"); *Hamama v. Adducci*, 912 F.3d 869, 874-77 (6th Cir. 2018); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (Section 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring "any cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim"); *Foroglou v. Reno*, 241 F.3d 111 (1st Cir. 2001). To raise any claims related to executing his removal order, Petitioner must move to reopen his removal proceedings and seek review before an immigration judge. *See* 8 U.S.C. § 1229a(c)(7). Recognizing that, Petitioner filed such a motion on August 5, 2025. Ex. A.

Even if judicial review of Counts 1 and 4 were appropriate, however, *district*-court review of those claims would not be. Section 1252(b)(9)'s "unmistakable 'zipper' clause," "channels judicial review of *all* [claims arising from removal proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483. Accordingly, the Court should dismiss Counts 1 and 4.

### c.  Count 1 fails substantively and is not justiciable.

Petitioner asserts that "specifically ignoring Petitioner's designation of Costa Rica to attempt to remove him to Uganda, violate[s] 8 U.S.C. § 1231(b)(2)" and injures Petitioner. ECF

No. 1 ¶ 50. But Petitioner's designation of any particular country is not controlling under the statute and judicial review of the government's discretionary decision to disregard the designated country is barred by 8 U.S.C. § 1252(a)(2)(B)(ii).

During removal proceedings, aliens may "designate one country to which the alien wants to be removed." 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. 1240.10(f). But that designation does not control because the "Attorney General may disregard a designation . . . if the alien fails to designate a country promptly," 8 U.S.C. § 1231(b)(2)(C)(i); *see also* 8 C.F.R. § 1240.10(f) (allowing for an Immigration Judge to designate a country of removal when an alien fails to do so), or "the Attorney General decides that removing the alien to the [designated] country is prejudicial to the United States," 8 U.S.C. § 1231 (b)(2)(C)(iv). Here, Petitioner did not designate a country promptly. Instead, he sought to designate Costa Rica as his country of removal on August 23, 2025, nearly six years after removal proceedings concluded. ECF No. 1-7; ECF No. 1-1. Therefore, even assuming Petitioner may designate a country of removal after entry of a final order of removal—which he may not—the government may "disregard [Petitioner's] designation." 8 U.S.C. § 1231(b)(2)(C)(i). Similarly, if DHS concludes that removal to Petitioner's designated country would be "prejudicial to the United States," then it may disregard Petitioner's designation. 8 U.S.C. § 1231 (b)(2)(C)(iv).

Moreover, the decision to disregard Petitioner's designated country is discretionary and therefore unreviewable under 8 U.S.C. § 1252(a)(2)(B). Section 1252(a)(2)(B)(ii) provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory), including . . . any . . . habeas corpus provision . . . , no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authorization for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary

13

of Homeland Security . . . ." *See also Polfliet v. Cuccinelli*, 955 F.3d 377, 381 (4th Cir. 2020) ("On its face, § 1252(a)(2)(B)(ii) bars judicial review of decisions 'specified' to be in the 'discretion' of the Secretary."). Section 1252(a)(2)(B)(ii)'s bar extends to discretionary decisions made pursuant to a statute even when that statute does not "literally contain the word 'discretion'" and to constitutional questions arising from that discretionary decision. *Id.* at 381, 383–84. Challenges to discretionary determinations may not be repackaged as "legal and constitutional" challenges to circumvent § 1252(a)(2)(B)(ii)'s jurisdictional bar. *Roland v. USCIS*, 850 F.3d 625, 628–29 (4th Cir. 2017).

Section 1231(b)(2)(C) provides that the "Attorney General may disregard" an alien's country designation if "the alien fails to designate a country promptly" and if "removing the alien to the country is prejudicial to the United States." 8 U.S.C. § 1231(b)(2)(C)(i), (iv). "The word 'may' *clearly* connotes discretion" and therefore subjects decisions made pursuant to such statutory language to § 1252(a)(2)(B)(ii)'s review bar. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14, 19 (2024). And much like *Bouarfa*, "Congress has in no way prescribed how that discretion must be exercised"—not providing any criteria for how DHS must assess whether removal to a particular country would be prejudicial to the interests of the United States. *Id.* at 14.

Because the statute instructs that the Attorney General "may" disregard the designation, the decision to do so is discretionary and within § 1252(a)(2)(B)(ii)'s jurisdictional bar. Petitioner's attempt to challenge that discretionary decision in Count 1 is therefore barred and should be dismissed.

### d.  Count 4 fails substantively and procedurally.

Petitioner asserts that "Respondents seek to remove Petitioner to Uganda, a country where he would face persecution and torture, without observance of required procedure, thus violating his rights under 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 1208.16, and due process," and "risk[ing] . . .

refoulement to El Salvador." ECF No. 1 ¶¶ 60–67. But Petitioner's challenge to Respondents' third-country-removal procedure is unripe and that procedure violates neither the constitution nor any federal statute.

At the outset, Petitioner's claim is moot as to Uganda and unripe as to any other country. "A party . . . may allege a claim neither too early nor too late." *Bell Atl. Cash Balance Plan v. E.E.O.C.*, 182 F.3d 906 (4th Cir. 1999). Ripeness and mootness "originate in Article III's 'case' or 'controversy' language," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and federal courts lack jurisdiction to consider moot and unripe claims. A claim is moot "when the issues presented are no longer 'live.'" *Powell v. McCormack*, 395 U.S. 486, 496 (1969). And "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

Petitioner's allegations in Count 4 are specific to Uganda. ECF No. 1 ¶¶ 60–67. However, "Petitioner expressed fear of persecution and torture in Uganda," *id*. ¶ 41, and DHS therefore selected a new country as the country of proposed removal, ECF No. 27-3. Accordingly, Count 4, as currently pleaded, is moot because the issues related to Uganda are "no longer live."

To the extent Petitioner intends to challenge Respondents' third-country-removal procedure with respect to any other country, he would need to amend his petition. He has not done so. In any event, such a claim would be unripe as to any other country because DHS has not yet completed its process under the procedures set forth in *D.V.D.* for adjudicating any objection Petitioner might raise to a new country of removal. Any alleged injury at this stage is purely speculative. *See Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 294 (4th Cir. 2022) ("A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." (quotation omitted)).

But even if that defect did not doom Petitioner's Count 4, Respondents' third-country-removal procedure as set forth in *D.V.D.* and DHS's March 30, 2025, guidance, Ex. B, is consistent with due process and the INA. DHS's March guidance provides that an alien may be removed to a "country [that] has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." Ex. B. If the State Department finds that country's assurances credible, "the alien may be removed without the need for further procedures." *Id*. For aliens being removed to a third country not covered by an adequate assurance, the March 30, 2025 guidance document states that DHS will first inform the alien of removal to that country, and then the alien has the opportunity to affirmatively state that he fears removal there. Ex. B. If the alien does so, USCIS will generally screen the alien within 24 hours of referral from the immigration officer to determine whether he "would more likely than not" be persecuted or tortured if sent to that country. *Id*. If not, the alien will be removed; if so, the alien will be placed in further administrative proceedings—or, if appropriate, the government "may choose to designate another country for removal." *Id*.

The Constitution requires nothing further. The Supreme Court has already held that when the Executive determines a country will not torture a person on his removal, that is conclusive. *Munaf v. Geren*, 553 U.S. 674, 702-03 (2008). Indeed, "[u]nder *Munaf* . . . the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee." *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009). "*Munaf* . . . applies here a fortiori: That case involved transfer of American citizens, whereas this case involves [an] alien detainee[] with no constitutional or statutory right to [remain in] the United States." *Id*. at 517–18 (Kavanaugh, J., concurring). When the Executive determines an alien will not be tortured abroad given the assurances of a foreign nation, courts may not "second-guess [that] assessment,"

16

at least unless Congress has specifically authorized judicial review of that decision. *Id.* at 517 (citation omitted); *see Munaf*, 553 U.S. at 703 n.6. The decision that a foreign government's categorical assurance against torture is sufficient to be accepted for all aliens is itself a "foreign policy" judgment the Judiciary "is not suited" to question. *Munaf*, 553 U.S. at 702. Thus, DHS's third-country-removal procedure presents no constitutional issue.

Nor does that procedure violate 8 U.S.C. § 1231(b)(3)(A) or implementing regulations. Section 1231(b)(3)(A) provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." The statute leaves the determination of whether the country poses a threat to the alien to the government. For the same reason that DHS's third-country-removal procedure does not pose a constitutional problem—this Court may not second guess the government's determination that an alien will not face a threat—it also does not offend § 1231(b)(3)(A).

**e.  Count 5 fails substantively.**

Petitioner alleges that he "has no executable removal order" because his "2019 removal order was executed in March 2025," when he was removed to El Salvador, and cannot be executed "a second time." ECF No. 1 ¶¶ 68–69. But that is wrong and inconsistent with this Court and the Supreme Court's orders.

In prior proceedings, this Court ordered the government to facilitate Abrego Garcia's return to the United States for the purpose of "restor[ing] the status quo and to preserv[ing] Abrego Garcia's access to due process." *Abrego Garcia v. Noem*, No. 8:25-CV-00951-PX, 2025 WL 1024654, at *1 (D. Md. Apr. 4, 2025), *amended by* 2025 WL 1085601 (D. Md. Apr. 10, 2025). The Supreme Court affirmed that order to the extent it required the government to "'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it

would have been had he not been improperly sent to El Salvador." *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025). In other words, the Supreme Court affirmed this Court's order to facilitate the return to the status quo. *See id.*

Prior to his removal to El Salvador on March 15, 2025, Petitioner was subject to a final order of removal with a withholding of removal to El Salvador. ECF No. 1-1. On June 6, 2025, Respondents fulfilled those orders and returned Abrego Garcia to the United States. ECF No. 1 ¶ 69. Because Petitioner is to be treated upon return as if "he had not been improperly sent to El Salvador," he is once again subject to the 2019 final order of removal with withholding to El Salvador, which Respondents may execute. For that reason, Respondents need not take any action to "reinstate Petitioner's removal order," pursuant to 8 U.S.C. § 1231(a)(5) or otherwise, and may detain him pending his removal. *See* 8 U.S.C. § 1231(a)(2)(A), (a)(6); *infra* II.a.; ECF No. 1 ¶ 69. The Court should dismiss Petitioner's Count 5.

## II.    Petitioner's challenges to his detention also are not justiciable and fail on the merits.

### a.    Count 2 fails substantively.[4]

Petitioner's second cause of action fails because he alleges he has been detained only since August 25, 2025—less than one month. ECF No. 1 ¶ 43. In *Zadvydas v. Davis*, the Supreme Court recognized "six months" as a "presumptively reasonable period" under 8 U.S.C. § 1231(a)(6) for detention beyond the statutory 90-day removal period. 533 U.S. 678, 701 (2001). Because Petitioner has been detained for nowhere close to six months, his argument that his detention is unreasonable under § 1231(a)(6) fails. Although Petitioner argues that the "presumptively reasonable period would have expired no later than 2020" based on the date of his final order of

---

[4] The class in *D.V.D.*, 778 F. Supp. 3d 355, also brought a claim challenging their detention pending removal under *Zadvydas*, 533 U.S. at 699. Compl. ¶¶ 123–30, *D.V.D. v. DHS*, 2025 WL 897107 (D. Mass. Mar. 23, 2025). For the reasons explained above, Petitioner is also precluded from bringing this claim. *See supra* I.a.

removal, ECF No. 1 ¶ 54, *Zadvydas* links the six-month timeline to the start of the detention, not the date of a removal order. 533 U.S. at 701 (identifying "reason to believe" that "Congress previously doubted the constitutionality of *detention* for more than six months" and "recogniz[ing] that period" as a "presumption" for "reasonable . . . confinement" (emphasis added)); *see Callender v. Shanahan*, 281 F. Supp. 3d 428, 435 (S.D.N.Y. 2017) ("It is the prospect of indefinite 'detention' that led the Supreme Court to create the six-month presumption." (citation omitted)). Unlike the 90-day "removal period," which under § 1231(a)(1)(B) starts to run after "the latest of" three specific events, the starting point for detention "beyond the removal period" is not so defined.

That he has been detained only a few weeks is not the only problem with Petitioner's claim. Under *Zadvydas*, even if six months elapse with no removal, the "alien" has the burden to show "no significant likelihood" that he will be removed "in the reasonably foreseeable future." 533 U.S. at 701; *see Callender*, 281 F. Supp. 3d at 436 (holding that the petitioner has the "burden" of proof on that issue (citation omitted)). Only after the alien makes that showing must the government provide evidence to the contrary. *Zadvydas*, 533 U.S. at 701. And Petitioner has not made the required showing—or even attempted to do so. Under *Zadvydas* and § 1231(a)(6), detention beyond six months is constitutionally unreasonable only in "the context of the indefinite and potentially permanent detention involved" in that case. *Castaneda v. Perry*, 95 F.4th 750, 757 (4th Cir. 2024); *accord Miranda v. Garland*, 34 F.4th 358, 360-61 (4th Cir. 2022). This case is worlds apart. The government is not "hold[ing]" Petitioner "in detention, with no plans to release" him. *See Castaneda*, 95 F.4th at 757. Instead, he acknowledges that "Respondents are seeking to remove [him]," ECF No. 1 ¶ 45, and those efforts are active and ongoing. Petitioner's arguments for why he nonetheless is not likely to be removed in the reasonably foreseeable future fail for several reasons.

19

First, as mentioned above, Petitioner's claims specific to Uganda are moot because that is no longer the designated country of removal. *See supra* I.d.; ECF No. 27-3. But setting that aside, his claim fails. Although Petitioner argues that Uganda does not want to accept him because it "prefers" receiving "individuals from African countries," *id*. ¶ 66, and does not accept people with criminal records, *id*. ¶ 64, he cites no evidence that a "prefer[ence]" would prevent them from receiving him or that criminal charges—without a conviction—would be viewed by Uganda as a criminal record. Moreover, Petitioner asserts that there is at least one country to which he could be removed: Costa Rica. *Id*. ¶¶ 42 (asserting that he "designated Costa Rica as his preferred country of removal"), 45 (asserting that "removal to Costa Rica could be effectuated with little or no ICE detention time"). That assertion alone defeats his argument. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (noting that in *Zadvydas*, the Supreme Court "recognized that the government's purported interest in detaining an alien was severely diminished when there was no significant likelihood that the alien could be removed"). Thus, assuming his pending legal challenges fail, Petitioner could potentially be removed to Costa Rica—though he has expressed an apparently disingenuous fear of persecution or torture if removed there, even though he has explicitly stated that is his removal country of preference. *See supra* at 2; *Castaneda*, 95 F.4th at 758 (rejecting *Zadvydas* claim where, if petitioner did "not prevail in his withholding-only proceedings, then nothing [would stand] in the way of his prompt removal to El Salvador," and "if he [did] succeed, nothing would prevent ICE from removing him to another country").

Second, Petitioner alleges that he "expressed fear of persecution and torture in Uganda and requested a reasonable fear interview" and that removal to Uganda would require "lengthy legal proceedings." ECF No. 1 ¶¶ 41, 45. Again, removal at all is the relevant benchmark for determining the lawfulness of detention—not removal to a particular country. *See Castaneda*, 95 F.4th at 758.

20

And Petitioner may not rely here on anticipated protracted "legal proceedings" of his own making. "It is well-settled . . . that an alien cannot, through unilateral action, create the very circumstance that he relies on for relief under *Zadvydas*." *Callender*, 281 F. Supp. 3d at 437; *see also, e.g.*, *Castaneda*, 95 F.4th at 757 (rejecting *Zadvydas* claim where petitioner was "being detained pending the completion of withholding-only proceedings that he voluntarily initiated"); *Lawrence v. Gonzales*, 446 F.3d 221, 227 (1st Cir. 2006) (holding that, under *Zadvydas*, claim based on length of detention would fail because detention "occurred pursuant to [petitioner's] own procuring of stays incident to his legal challenges to the removal order"); *Garcia v. DHS*, 422 F. App'x 7, 8 (2d Cir. 2011) (order) (rejecting *Zadvydas* claim in part because petitioner's "removal ha[d] been stayed at his own request"); *Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) (order) (rejecting *Zadvydas* claim in part because "the real reason for [petitioner's] lengthy detention" was his "consistent pattern of seeking and/or receiving numerous judicial stays and filing his numerous petitions for reconsideration and appeals").

Third, even accounting for possible lengthy litigation over the designated country of removal, Petitioner does not show that removal in the reasonably foreseeable future is not a significant likelihood. As the Fourth Circuit held, "ongoing withholding-only proceedings, even lengthy ones, simply do not present the same risk of 'indefinite and potentially permanent' detention at issue in *Zadvydas*." *Castaneda*, 95 F.4th at 757-58. "The absence of a date certain—imminent or not—for the conclusion of those proceedings is of no moment." *Id*. at 758. Instead, "[w]hat matters . . . is that" Petitioner's "detention has a definite termination point: the conclusion of" pending "proceedings." *Id*. (citation modified).

Similarly, the Ninth Circuit held that although a "more than three-year detention" was "prolonged," it was not "indefinite" because "the government [could] repatriate [the petitioner] to

21

Mexico if his pending bid for judicial relief from his administratively final removal order prove[d] unsuccessful." *Prieto-Romero*, 534 F.3d at 1062; *see also, e.g.*, *Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020); *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004). Likewise here: Petitioner "foreseeably remains capable of being removed" after his withholding-only and reasonable-fear proceedings conclude, "and so the government retains an interest in assuring his presence at removal." *See Prieto- Romero*, 534 F.3d at 1065 (citation modified); *see also, e.g.*, *Callender*, 281 F. Supp. 3d at 436 (holding that "there is substantial evidence that petitioner can and will be removed as soon as his pending immigration proceedings—all of them filed by petitioner himself—are resolved"); *Khemlal v. Shanahan*, 2014 WL 5020596, at *5 (S.D.N.Y. Oct. 8, 2014) (holding that, "[a]lthough [petitioner's] detention has been lengthy, it is not indefinite in the sense that concerned the Supreme Court in *Zadvydas*, as he will ultimately be removed to Guyana if his application for withholding is denied, or removed elsewhere if he prevails").

Finally, even if Petitioner had "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"—and he has not—the record contains "evidence sufficient to rebut that showing." *See Zadvydas*, 533 U.S. at 701. As noted, based on Petitioner's own allegations, the government is actively "seeking to remove Petitioner." ECF No. 1 ¶ 45. Other than his pending legal proceedings—which do not support his argument—Petitioner has identified nothing standing in the way of his removal in the reasonably foreseeable future. His claim under § 1231(a)(6) and *Zadvydas* fails.

**b. Count 3 is barred.**

The Court lacks jurisdiction over Petitioner's challenges to the purpose and effect of his detention under 8 U.S.C. § 1252(b)(9) and 1252(g). As noted, § 1252(b)(9) channels all review of "any action taken or proceeding brought to remove an alien from the United States" under the INA

into a petition for review of a final order of removal. And § 1252(g) strips federal courts of jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General[5] to commence proceedings, adjudicate cases, or execute removal orders against any alien" under the INA, other than in a petition for review under § 1252, "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28." The act of arresting—and in turn, detaining—an alien to facilitate removing him is an "action . . . to . . . execute removal orders" that this Court lacks jurisdiction to review. *See, e.g.*, *Tazu v. Att'y Gen.*, 975 F.3d 292, 298-99 (3d Cir. 2020) (rejecting challenge to petitioner's re-detention for removal as an action taken to execute his removal order under Sections 1252(g) and (b)(9)).

Indeed, in *AADC*, 525 U.S. at 488, the Supreme Court held that a prior version of § 1252(g) barred claims similar to Petitioner's challenge to the purpose and effect of his detention. *See* 525 U.S. at 487-92. There, the respondents alleged that the government "was selectively enforcing immigration laws against them in violation of their First and Fifth Amendment rights." *Id.* at 474. The Supreme Court held that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g)." *Id.* at 487. Similarly, Petitioner here argues that his detention "does not bear any reasonable relation to a legitimate government purpose and is punitive in purpose and effect" because, he alleges, his detention is designed to punish him. ECF No. 1 ¶ 59. That challenge to the basis for his detention is barred by § 1252(g).

---

[5] Much of the authority once exercised by the Attorney General has been transferred to the Secretary of Homeland Security. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

Similarly, § 1252(b)(9) applies because through that provision, Congress "specifically prohibited the use of habeas corpus petitions as a way of obtaining review of questions arising in removal proceedings." *Johnson v. Whitehead*, 647 F.3d 120, 124 (4th Cir. 2011); *accord AADC*, 525 U.S. at 483. Whether Petitioner's detention pending removal was improperly motivated is a "question[] arising in removal proceedings." Thus, this Court may not exercise habeas jurisdiction over it.

### c. Count 3 fails substantively.

Petitioner's third cause of action also fails on the merits because he was detained for the legitimate and discretionary purpose of holding him pending his removal. It has been well-established for decades that "detention during deportation proceedings *[is] a constitutionally valid aspect of the deportation process*." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (emphasis added); *accord Miranda*, 34 F.4th at 366 (holding that "detention is necessarily a part of the removal procedure"). And Petitioner himself alleges that the government detained him "for removal." ECF No. 1 ¶ 52. His detention plainly bears a reasonable relationship to that purpose. *Contra id.* ¶ 59. Petitioner lacks lawful status; he has previously been ordered removed; the government intends to remove him from the United States; and it has detained him while it starts the process of executing his final order of removal. That should be the end of the matter.

Because he ascribes a "punitive" motive and effect to the government's actions, Petitioner makes a single-paragraph claim that his detention violates due process. ECF No. 1 ¶ 59. Yet he undisputedly received ample process prior to receiving a final order of removal. *See generally DHS v. Thuraissigiam*, 591 U.S. 103 (2020) (describing the process). Now that the government seeks to execute that order of removal, Petitioner may not rely on alleged (and unsupported) perceived motives to challenge his detention incident to its planned execution. "As

24

a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *AADC*, 525 U.S. at 488. The logic of that principle applies to detention pending removal as it applies to the commencement of removal proceedings.

Even if Petitioner could rely on alleged improper purposes to attack the validity of his detention under the Due Process Clause, his claim would fail because he cites no facts supporting his speculation that he was detained for the purpose of punishing him—or that his detention has the "effect" of punishing him. All he cites are "information and belief"—*i.e.*, evidence-free speculation—that he is being targeted for taking or refusing various actions in his other cases, including his pending criminal case. ECF No. 1 ¶ 45. But his petition contains no factual basis for that assertion. In any event, the criminal charges enhance, rather than diminish, the legitimate reasons for Petitioner's detention. Mitigating flight risk and preventing danger to the community are both bases for non-punitive detention. *See Zadvydas*, 533 U.S. at 690–91. And both provide reasons for detention here, where the alien is charged with serious crimes that provide incentives for him to flee and raise public-safety concerns.

To the extent that Petitioner is insinuating that the criminal charges against him are frivolous, that is both incorrect and irrelevant here. Those charges were accepted by a grand jury. And Petitioner's "entire defense team, as well as [his] immigration attorneys, were recommending that the defendant accept the government's plea offer." ECF No. 121-1 ¶ 42, *United States v. Abrego Garcia*, No. 3:25-cr-115 (M.D. Tenn. Sept. 15, 2025). Surely, they would not be recommending a guilty plea if those criminal charges had no basis. In any event, the detention here is not premised on those criminal charges at all, but rather Petitioner's final order of removal. *Demore* and *Zadvydas* make plain that civil detention pending removal is constitutional.

On its own terms, Petitioner's third cause of action challenges only his "detention." ECF No. 1 ¶ 59. To the extent any part of his petition might be interpreted as challenging his anticipated *removal* as punitive, such an argument would be equally meritless. That is true both for the reasons explained above with respect to his detention and because any link between his criminal charges and his removal only supports removal. "When an alien's continuing presence in this country is in violation of the immigration laws, the Government does not offend the Constitution by deporting him for the additional reason that it believes him to be a member of an organization that supports terrorist activity." *AADC*, 525 U.S. at 491–92. The same holds true for Petitioner's alleged crimes involving alien smuggling. In sum, Petitioner's claim that his detention pending removal is invalid because of his speculation about the purpose behind it fails.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the petition.

Dated: September 22, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General
Civil Division, Office of Immigration Litigation

*/s/ Bridget K. O'Hickey*
BRIDGET K. O'HICKEY
ELIZABETH HEDGES
U.S. Department of Justice, Civil Division
Counsel to the Assistant Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 353-8679
bridget.k.o'hickey@usdoj.gov

*Attorneys for Defendants*

26

## CERTIFICATE OF SERVICE

I certify that on September 22, 2025, I caused to be filed the foregoing document via

CM/ECF, which caused a copy to be served on all parties.

/s/ *Bridget K. O'Hickey*
BRIDGET K. O'HICKEY
Counsel to the Assistant Attorney General