# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### Greenbelt Division

| | |
|---|---|
| Kilmar Armando Abrego Garcia, | |
|     Petitioner, | |
| v. | Case No. 8:25-cv-02780 (PX) |
| Kristi Noem, *et al.*, | |
|     Respondents. | |

**Petitioner's Reply In Support Of Petition
For Writ Of Habeas Corpus**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 2

I.     Petitioner's Challenges To His Removal Are Justiciable And Meritorious. ......................... 2

     A.     The *D.V.D.* class action does not preclude this Court from hearing Petitioner's claims. ............................................................................................................ 2

          1.     The Government has not shown that Petitioner is a *D.V.D.* class member with claims identical to the *D.V.D.* class. ......................................... 2

          2.     The Supreme Court's unexplained stay of the *D.V.D.* injunction does not support the Government's expansive reading. .................................. 5

     B.     Even if Petitioner were a member of the *D.V.D.* class, the Court would have jurisdiction to hear Petitioner's claims and need not abstain. .................................. 6

     C.     8 U.S.C. § 1252 does not bar an exercise of jurisdiction over the petition. ............. 8

     D.     The Government's attempts to remove Petitioner to Uganda, and then Eswatini, are not supported by the necessary assurances (Count 4). ...................... 10

     E.     The Government is ignoring Petitioner's designation of Costa Rica (Count 1). .... 14

II.     Petitioner's Challenges To Detention Are Justiciable And Meritorious. ........................... 18

     A.     Petitioner's detention violates 8 U.S.C. § 1231(a)(6) (Count 2). .......................... 18

     B.     Petitioner's due process challenge to his detention is not statutorily barred (Count 3). ........................................................................................................... 24

          1.     Petitioner's detention violates due process (Count 3). ............................... 24

          2.     8 U.S.C. § 1252 does not bar this court from exercising jurisdiction over Petitioner's detention. ......................................................................... 26

Conclusion ........................................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Abimbola v. Ridge*,
    181 F. App'x 97 (2d Cir. 2006) ................................................................................................23

*Abrego Garcia v. Noem*,
    2025 WL 1021113 (4th Cir. Apr. 7, 2025) ...............................................................9, 17

*Abrego Garcia v. Noem*,
    2025 WL 2062203 (D. Md. July 23, 2025) ........................................4, 8, 12, 13, 15

*Abrego Garcia v. Noem*,
    777 F. Supp. 3d 501 (D. Md. 2025) .................................................. 3, 8, 9, 25

*Ahmed v. Freden*,
    744 F. Supp. 3d 259 (W.D.N.Y. 2024) ......................................................................22

*Al-Sadoon v. Lynch*,
    586 F. Supp. 3d 713 (E.D. Mich. 2022) .....................................................................21

*Andreasyan v. Gonzales*,
    446 F. Supp. 2d 1186 (W.D. Wash. 2006) ..................................................................22

*Ashe v. Swenson*,
    397 U.S. 436 (1970) ...........................................................................................................6

*Banda v. McAleenan*,
    385 F. Supp. 3d 1099 (W.D. Wash. 2019) .................................................................21

*Bowrin v. U.S. INS*,
    1494 F.3d 483 (4th Cir. 1999) ............................................................................................9

*Bufkin v. Collins*,
    604 U.S. 369 (2025) .........................................................................................................14

*Castaneda v. Perry*,
    95 F.4th 750 (4th Cir. 2024) .............................................................................................19

*D.A. v. Noem*,
    --- F. Supp. 3d ----, 2025 WL 2646888 (D.D.C. Sept. 15, 2025) ......................6, 8, 12

*D.V.D. v. DHS*,
    778 F. Supp. 3d 355 (D. Mass. 2025) ...............................................................2, 3, 8

*Demore v. Kim*,
538 U.S. 510 (2003) ........................................................................................24

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 19 (2020) ..........................................................................................9

*Doe v. Becerra*,
732 F. Supp. 3d 1071 (N.D. Cal. 2024) .........................................................24

*Farez-Espinoza v. Chertoff*,
600 F. Supp. 2d 488, 500 (S.D.N.Y. 2009) ...................................................20

*Fed. Dep't Stores, Inc. v. Moitie*,
452 U.S. 394 (1981) ..........................................................................................6

*Garcia v. DHS*,
422 F. App'x 7 (2d Cir. 2011) ........................................................................23

*Ghamelian v. Baker*,
2025 WL 2049981 (D. Md. July 22, 2025) .......................................................4

*Guzman Chavez v. Hott*,
940 F.3d 867 (4th Cir. 2019) ....................................................................11, 25

*Hoang Trinh v. Homan*,
333 F. Supp. 3d 984 (C.D. Cal. 2018) ............................................................21

*I.N.S. v. Lopez-Mendoza*,
468 U.S. 1032 (1984) ......................................................................................16

*I.V.I. v. Baker*,
2025 WL 1519449 (D. Md. May 27, 2025) ...................................................4, 7

*Ibarra-Perez v. United States*,
--- F.4th ---, 2025 WL 2461663 (9th Cir. Aug. 27, 2025) .........................9, 10

*Jama v. I.N.S.*,
329 F.3d 633 (8th Cir. 2003) ..........................................................................15

*Jama v. ICE*,
543 U.S. 335 (2005) ........................................................................................15

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ....................................................................................9, 26

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
342 U.S. 180 (1952) ..........................................................................................7

*Labrador v. Poe ex rel. Poe*,
    144 S. Ct. 921 (2024) ................................................................................. 6

*Lawrence v. Gonzales*,
    446 F.3d 221 (1st Cir. 2006) ...................................................................... 23

*Mahdejian v. Bradford*,
    2025 WL 2269796(E.D. Tex. July 3, 2025) ................................................ 9

*Mahmood v. Sessions*,
    849 F.3d 187 (4th Cir. 2017) ..................................................................... 11

*Medina v. Noem*,
    --- F. Supp. 3d ----, 2025 WL 2306274 (D. Md. Aug. 11, 2025) ........... 19, 20, 21, 23

*Munaf v. Geren*,
    553 U.S. 674 (2008) ................................................................................. 14

*Nat'l TPS All. v. Noem*,
    2025 WL 2661556 (9th Cir. Sept. 17, 2025) .............................................. 5

*New York v. Kennedy*,
    2025 WL 2658233 (1st Cir. Sept. 17, 2025)............................................... 5

*Nguyen v. Scott*,
    2025 WL 2419288 (W.D. Wash. Aug. 21, 2025).................................. 3, 4, 5

*Ortega v. Kaiser*,
    2025 WL 2243616 (N.D. Cal. Aug. 6, 2025) ............................................. 9

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) ........................................................................ 7

*Phetsadakone v. Scott,*
    2025 WL 2579569 (W.D. Wash. Sept. 5, 2025) ......................................... 9

*Pueschel v. United States*,
    369 F.3d 345 (4th Cir. 2004) ...................................................................... 6

*Reno v. American-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ................................................................................... 9

*Riley v. Bondi*,
    145 S. Ct. 2190 (2025) .............................................................................. 10

*Sanchez v. Bondi*,
    2025 WL 2550646 (D. Colo. Aug. 20, 2025) ............................................. 4

*U.S. ex rel. Scala Di Felice v. Shaughnessy*,
   114 F. Supp. 791 (S.D.N.Y. 1953) ...................................................................15

*Shamburg v. Ayvaz Pizza, LLC*,
   2025 WL 2431652 (W.D. Va. Aug. 22, 2025) ...................................................8

*Shantu v. Lynch*,
   654 F. App'x 608 (4th Cir. 2016) .....................................................................14

*Smiley v. Ariz. Beverages,LLC*,
   2024 WL 327044 (D. Md. Jan. 29, 2024) ..........................................................7

*Tadros v. Noem*,
   2025 WL 1678501 (D.N.J. June 13, 2025) .......................................................19

*Tanha v. Warden, Balt. Det. Facility*,
   2025 WL 2062181 (D. Md. July 22, 2025) .........................................................4

*Tomas-Ramos v. Garland*,
   24 F.4th 973 (4th Cir. 2022) ............................................................................11

*Trump v. Boyle*,
   145 S. Ct. 2653 (2025) .......................................................................................5

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ...........................................................................................6

*Wong Wing v. United States*,
   163 U.S. 228 (1896) .........................................................................................24

*Wye Oak Tech., Inc. v. Republic of Iraq*,
   666 F.3d 205 (4th Cir. 2011) .............................................................................7

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) .......................................... 1, 17, 18, 19, 21, 23, 26

*Zavvar v. Scott*,
   2025 WL 2592543 (D. Md. Sept. 8, 2025) ..................................................19, 20

## <u>Statutes</u>

8 U.S.C. § 1231(a)(6) ............................................................................ 17, 18, 23

8 U.S.C. § 1231(b)(2) ............................................................................ 14, 15, 17

8 U.S.C. § 1231(b)(2)(A) .................................................................................14

8 U.S.C. § 1231(b)(2)(C) .............................................................................15, 17

8 U.S.C. § 1231(b)(3) ........................................................................................... 10, 14

8 U.S.C. § 1252 .............................................................................................. 8, 10, 26

8 U.S.C. § 1252(a)(5) ................................................................................................ 10

8 U.S.C. § 1252(b)(4) ............................................................................................... 10

8 U.S.C. § 1252(b)(9) ..................................................................................... 10, 25, 26

8 U.S.C.§ 1252(f)(1) ................................................................................................... 4

8 U.S.C. § 1252(g) ......................................................................................... 8, 9, 25, 26

## **Regulations**

8 C.F.R. § 1208.16 ..................................................................................................... 10

8 C.F.R. § 1208.16(c) ................................................................................................. 11

## Introduction

The Government's attempts to shield its actions from judicial review reveal a troubling pattern that permeates the litigation surrounding Petitioner Kilmar Armando Abrego Garcia: the Government tries to deploy procedural hurdles to evade accountability for substantive violations of law. It is clear that the Government has violated statutory requirements governing removal, ignored Petitioner's designation of Costa Rica as his removal destination, and transformed both third-country removal and civil immigration detention into a punitive mechanism, all while engaging in gamesmanship to delay resolution of Petitioner's claims.

If the Government wished to remove Petitioner, it could do so immediately to Costa Rica. Yet without any legitimate explanation, the Government has disregarded Petitioner's lawful designation of Costa Rica—a country that has provided explicit assurances that it will accept Petitioner and prevent his re-deportation to El Salvador. Instead, the Government says that it seeks to remove Petitioner to other countries (first Uganda, now Eswatini) that have publicly indicated they would not accept Petitioner and that otherwise flunk the legal test to serve as viable removal destinations for Petitioner.

Meanwhile, the Government confines Petitioner in civil detention pending his removal. The Supreme Court held in *Zadvydas v. Davis*, 533 U.S. 678 (2001), that it is unlawful to detain an individual for removal for an extended period when there is no significant likelihood of removal in the reasonably foreseeable future. That is the exact situation here. The Government's opposition brief does not identify *any* legally viable removal destination, let alone argue that Petitioner will be removed reasonably soon. Nor does the Government identify *any* concrete steps it has taken to advance its administrative proceedings for Petitioner's removal. Instead, the Government is content to let Petitioner languish in civil detention indefinitely, both as a punishment to Petitioner, and as a warning to others, for having the temerity to seek to vindicate his rights in court.

The Government also ignores that Petitioner's valid parole status extends through mid-2026, *see* ECF No. 1-2, rendering him presently neither removable nor subject to detention. When forced to move beyond procedural red herrings and address the substance of Petitioner's claims, the Government cannot justify its actions in light of the law and the unique history of this case.

## Argument

### I.      Petitioner's Challenges To His Removal Are Justiciable And Meritorious.

Petitioner is not being treated as merely another immigration detainee. He is someone whom the Government: deported unlawfully; held in a maximum security prison in El Salvador (despite a withholding of removal order) without reason or justification where he was beaten and tortured; refused to bring back after numerous orders from this Court, the Fourth Circuit, and the Supreme Court to do so; criminally indicted under suspicious circumstances; offered to deport to Costa Rica (with written assurances of legal status and against refoulement) if, and only if, he pleaded guilty to those charges; then designated Uganda, and subsequently Eswatini, as the third country removal destination only after Petitioner exercised his constitutional right to trial; and now holds in detention without any evidence of ongoing administrative proceedings. In light of this history, the Government's procedural and substantive arguments collapse.

#### A.      The *D.V.D.* class action does not preclude this Court from hearing Petitioner's claims.

##### 1.      The Government has not shown that Petitioner is a *D.V.D.* class member with claims identical to the *D.V.D.* class.

The Government's lead argument is that Petitioner is "precluded from bringing Counts 1 and 4" because he "is a member of the non-opt-out class certified in *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025)." *See* ECF No. 28, *Response to Petition for Writ of Habeas Corpus* ("Opp.") (Sept. 22, 2025) at 6. The *D.V.D.* class is defined as individuals "who have a final removal order under Section 240, 241(a)(5), or 238(b) of the [Immigration and Nationality Act,] INA . . .

whom DHS has deported or will deport on or after February 18, 2025, to a country" "not previously designated" or "identified in writing in the prior proceedings." Opp. at 7 (quoting *D.V.D.*, 778 F. Supp. 3d at 378). The Government contends that Petitioner's claims should be dismissed because they are "nearly identical to those brought [by the class] in *D.V.D.*" Opp. at 9.

This argument fails for several reasons. ***First***, as a threshold step, the Government has failed to prove that Petitioner falls within the *D.V.D.* class definition, which requires a "final removal order." *D.V.D.*, 778 F. Supp. 3d at 378. As this Court recognized months ago in Petitioner's prior civil case, the Government has "not produced *any* order of removal as to Abrego Garcia, executed or otherwise." *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 514 (D. Md. 2025) ("*Abrego Garcia I*"). To this day, the Government has never produced a final order of removal. Indeed, the ICE detainer the Government relied on at the evidentiary hearing on July 11, 2025, conspicuously left *unchecked* the box stating that probable cause exists to remove Petitioner based on "[a] final order of removal against the individual." *See DHS Immigration Detainer – Notice of Action* (June 6, 2025) (Ex. A). The Government therefore has not shown that Petitioner falls within the *D.V.D.* class definition.

***Second***, Petitioner's claims are not like those at issue in *D.V.D*, and where claims are "not at issue in *D.V.D.*," they can be brought independently. *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *20 (W.D. Wash. Aug. 21, 2025). In *Nguyen*, the court determined that where the petitioner argued that "due process requires he have a meaningful opportunity to seek withholding of removal, a claim not at issue in *D.V.D.*," his claims were "not identical to the claims at issue in the *D.V.D.* class action." *Id.* Thus, the "class certification order in *D.V.D.* [did] not prevent [the] Court from adjudicating Petitioner's claims regarding third-country removal." *Id.* at *21. Just so here. Petitioner raises distinct claims related to his designation of Costa Rica as a removal

destination, a country that has offered him resettlement and assurances. Pet. ¶ 45. And instead of accepting Petitioner's designated country, the Government is using threats of third-country deportation in an attempt extract a guilty plea, about which this Court voiced concerns. Transcript of Telephonic Proceedings at 7:3–17, *Garcia v. Noem*, No. PX-25-2780 (D. Md. Aug. 25, 2025) ("Aug. 25 Tr."). Petitioner also raises claims related to his detention, which do not fall within the *D.V.D.* class claims. *See Tanha,* 2025 WL 2062181, at *5 ("[T]he [ ] habeas issues presented for the court's consideration that do not fall within the ambit of his membership in the *D.V.D.* class are the revocation of his OSUP and his detention following same."). By contrast, the cases the Government cites where claims were foreclosed by *D.V.D.* all involved petitioners who either agreed they were members of the *D.V.D.* class or brought claims materially identical to those by the *D.V.D.* class.[1]

**Third**, Also distinct is the posture and history of Petitioner's case: Petitioner has a history of wrongful removal and torture in El Salvador, facilitated by the Government. *See generally Abrego Garcia I*; *Abrego Garcia v. Noem*, 2025 WL 2062203 (D. Md. July 23, 2025) ("*Abrego Garcia II*"). Courts have previously recognized that removing withholding claims merit independent adjudication outside of class proceedings—precisely what Petitioner's arguments command here. *See Nguyen,* 2025 WL 2419288, at *20. Convenience cannot justify forcing Petitioner into the *D.V.D.* class when his distinct, non-duplicative claims demand the individualized treatment precedent clearly supports.

---

[1] *See Ghamelian v. Baker*, 2025 WL 2049981, at *3 (D. Md. July 22, 2025); *I.V.I. v. Baker*, 2025 WL 1519449, at *2 (D. Md. May 27, 2025); *Sanchez v. Bondi*, 2025 WL 2550646, at *3 (D. Colo. Aug. 20, 2025) (citations omitted); *Tanha v. Warden, Baltimore Detention Facility*, 2025 WL 2062181, at *5 (D. Md. July 22, 2025).

*Fourth*, the Government itself has repeatedly argued in the Supreme Court and First Circuit that 8 U.S.C.§ 1252(f)(1) "forbids" the type of "class-wide" relief sought in *D.V.D.* Application for Stay (May 27, 2025), *DHS v. D.V.D.*, No. 24A1153, 2025 WL 1542411, at *5–6, 19–22, *granted* 145 S. Ct. 2153 (2025); *DVD v. DHS*, Nos. 25-1393, 25-1631 (1st Cir. Sept. 23, 2025), Doc. 00118343928. "In other words, the government is arguing in *D.V.D.* that injunctive relief cannot be granted to the class, and may only be pursued (if at all) through individual cases, while arguing here that Petitioner's individual claim should be barred because his injunctive claims should be adjudicated as part of the *D.V.D.* class." *Nguyen*, 2025 WL 2419288, at * 21. The Government cannot have it both ways. Basic due process requires that Petitioner have an opportunity to be heard on his claims.

> ### 2. The Supreme Court's unexplained stay of the *D.V.D.* injunction does not support the Government's expansive reading.

This Court can consider the Petition on the merits because the stay on the *D.V.D.* action is not a silent blessing of the merits of the Government's substantive arguments. Courts have found that "[t]he emergency docket order in *D.V.D.* does not preclude the Court from granting a preliminary injunction" because the court "cannot ascertain from the Supreme Court's emergency order whether it found the government likely to succeed on its jurisdictional or substantive claims." *Nguyen,* 2025 WL 2419288, at *23. "[T]hat the *D.V.D.* court had no power to enter *classwide* injunctive relief—would have no bearing on the merits of individual habeas petitions." *Id.* (emphasis in original); *see Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) ("[I]nterim orders are not conclusive as to the merits.").

Both the Ninth and First Circuits recently confronted similarly unreasoned stays of injunctions, and both concluded that those orders could not "squarely control" other "distinct" cases "presented in a different procedural posture and on a different record." *Nat'l TPS All. v.*

*Noem*, 2025 WL 2661556, at *3 (9th Cir. Sept. 17, 2025) ("[T]he unreasoned stay order in this case provides no analysis to inform our view of the equities in this posture and on this record. We can only guess as to the Court's rationale when it provides none."); *New York v. Kennedy*, 2025 WL 2658233, at *2, 4 (1st Cir. Sept. 17, 2025) (not attributing the Supreme Court's stay to the government's preferred argument without explanation).

Sometimes the Court is silent when issuing a stay precisely to *avoid* creating new law on an emergency basis. *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 933-34 (2024) (Kavanaugh, J., in the grant of stay). Perhaps the Justices wish to reserve their ability "to think and decide differently when [they] know[] more." *Trump v. CASA, Inc.*, 606 U.S. 831, 877 (2025) (Kavanaugh, J., concurring). Indeed, every day more evidence comes out that the Government is using third-country removals "to evade the government's legal obligations by doing indirectly what it cannot do directly." *D.A. v. Noem*, --- F. Supp. 3d ----, 2025 WL 2646888, at *2 (D.D.C. Sept. 15, 2025).

Thus, the Supreme Court's unexplained stay of the *D.V.D.* injunction does not support the Government's expansive reading.

### B.    Even if Petitioner were a member of the *D.V.D.* class, the Court would have jurisdiction to hear Petitioner's claims and need not abstain.

Even if Petitioner were a member of the *D.V.D.* class, this Court would still have jurisdiction to hear Petitioner's claims and may review the claims on the merits. Since there is no "final judgment on the merits of [the *D.V.D.*] action," there is no preclusive effect as a matter of res judicata to bind the litigants in this case. "Under the doctrine of res judicata . . . '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004) (quoting *Fed. Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). Res judicata

requires, among other things, "a final judgment on the merits in a prior suit," *id.*, which a preliminary injunction is not. Likewise, collateral estoppel requires "an issue of ultimate fact [to be] determined by a valid and final judgment." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). For this reason, the *D.V.D.* preliminary injunction, which is not a final judgment on the merits, does not bar this Court from hearing Petitioner's claims as a matter of law.

Since the *D.V.D.* case remains pending and has not resulted in a final judgment, there is no formal bar to this Court adjudicating Petitioner's claims. Instead, the Government essentially is arguing for abstention based on the notion that "[b]asic principles of comity and judicial economy" militate against courts reviewing identical claims. *I.V.I.*, 2025 WL 1519449, at *2 (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982)). But as the Ninth Circuit explained in *Pacesetter Systems*, "this 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." 678 F.2d at 95; *see also Smiley v. Ariz. Beverages, LLC*, 2024 WL 327044, at *2 (D. Md. Jan. 29, 2024) ("the first-to-file rule 'is not inflexible[,]' but rather 'yields to the interests of justice, and will not be applied when a court finds compelling circumstances supporting its abrogation'") (citations omitted). Indeed, "[t]he Supreme Court has emphasized that the solution of these problems involves determinations concerning wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, and that an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Id.* (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)) (cleaned up). The Fourth Circuit has also recognized that as a prudential concern, "Comity—like other considerations underlying the discretionary declination of jurisdiction—operates in a very limited set of circumstances, and [courts] are reluctant to expand its operation." *Wye Oak Tech.,*

*Inc. v. Republic of Iraq*, 666 F.3d 205, 211 n.7 (4th Cir. 2011). Accordingly, the "first-to-file" rule "should not be mechanically applied." *Shamburg v. Ayvaz Pizza, LLC*, 2025 WL 2431652, at *10 (W.D. Va. Aug. 22, 2025).

Petitioner's complaint in the related civil case before this Court was filed well before the class was certified in the *D.V.D.* action. *Compare D.V.D.*, 778 F. Supp. 3d at 367, *with Abrego Garcia I*, 777 F. Supp. 3d at 510. His claims in the related civil action revolve around third-country removal procedures and proceedings. *See Abrego Garcia II*, 2025 WL 2062203, at *8. The issues and claims involved in this case are different from *D.V.D.*—as far as Petitioner is aware, no *D.V.D.* class member has lawfully designated a third country as a removal destination and has written assurances from that third country (here, Costa Rica) to which the Government is *not* seeking to deport them. *See* supra §§ I.D. & I.E. The unique history of this case also counsels towards independent consideration.

Moreover, allowing the Government's gamesmanship to delay relief in this case creates "substantial risk that Abrego Garcia could once again be removed without due process and in a manner that would evade this Court's jurisdiction and the attendant protection against further constitutional violation." *Abrego Garcia II*, 2025 WL 2062203, at *5; *see also D.A.*, 2025 WL 2646888, at *2, 8. The Court should not reward the Government's efforts to once again evade judicial scrutiny.

**C.      8 U.S.C. § 1252 does not bar an exercise of jurisdiction over the petition.**

The Government once again attempts to argue that the Court lacks jurisdiction under 8 U.S.C. § 1252, repeating the same arguments that this Court has rejected many times over.

The Government casts its actions as unreviewable "discrete act[s]" to execute a removal order. Opp. at 10. Yet, as noted above, and as this Court has previously observed, the Government has "not produced *any* order of removal as to Abrego Garcia." *Abrego Garcia I* at 514. Section

1252(g) "does not apply to all claims arising from deportation proceedings, because § 1252(g) stripped the federal courts of jurisdiction only to review challenges to the Attorney General's decision to *exercise her discretion* to initiate or prosecute these specific stages in the deportation process." *Id.* at 515 (quoting *Bowrin v. U.S. INS*, 1494 F.3d 483, 488 (4th Cir. 1999)); *see also Abrego Garcia v. Noem*, 2025 WL 1021113, at *3 (4th Cir. Apr. 7, 2025) (Thacker, J., with King, J., concurring). Indeed, the Government's arguments ignore the Supreme Court's admonition that § 1252(g) is "much narrower," and "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceeding[s]." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).

The Government contends that the Court lacks jurisdiction over Counts 1 and 4 because they challenge "the manner in which Respondents intend to" execute Petitioner's removal order. Opp. at 12. This is yet another argument that has been consistently rejected by the courts around the nation because § 1252(g) should be read "narrowly." *Ibarra-Perez v. United States*, --- F.4th ---, 2025 WL 2461663, at *7–8 (9th Cir. Aug. 27, 2025) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020)); *see Phetsadakone v. Scott*, 2025 WL 2579569, at *2 (W.D. Wash. Sept. 5, 2025); *Ortega v. Kaiser*, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025); *Mahdejian v. Bradford*, 2025 WL 2269796, at *3–4 (E.D. Tex. July 3, 2025). The provision applies "only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Ibarra-Perez*, 2025 WL 2461663, at *6 (citing *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 487 (1999)). "[S]weep[ing] in any claim that can technically be said to 'arise from' the three listed actions,'" is disallowed, as the provision "refer[s] to just those three specific actions themselves."

*Id.* (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality opinion). Specifically, this jurisdictional argument fails where, as here, Petitioner objects to his removal to a specific country and "raises purely legal argument in challenging his removal" and "contends that he had a right to meaningful notice and an opportunity to present a fear-based claim before he was removed." *Ibarra-Perez*, 2025 WL 2461663, at *7.

For similar reasons, the Government's arguments (at 11) under 8 U.S.C. §§ 1252(a)(5), (b)(4), and (b)(9) fail as well. *See Ibarra-Perez*, 2025 WL 2461663, at *9 (rejecting the argument that Section 1252 divests jurisdiction because that would mean "ICE can send *anyone* to *any* country without *any* review") (emphasis in original). The Government erroneously conflates challenges to a removal order itself with challenges to the procedures for obtaining withholding of removal to a third country. *See Riley v. Bondi,* 145 S. Ct. 2190, 2199 (2025) ("The finality of the order of removal . . . does not depend in any way on the outcome of the withholding-only proceedings.") (citations and quotations omitted). Put differently, if Petitioner prevails on his claim of withholding of removal to Eswatini, it does not affect the validity of any removal order.

### D. The Government's attempts to remove Petitioner to Uganda, and then Eswatini, are not supported by the necessary assurances (Count 4).

Petitioner challenges deportation to Uganda, and now Eswatini, as a direct violation of federal protections under 8 U.S.C. § 1231(b)(3) and 8 C.F.R. § 1208.16, which prohibit removal to countries where (among other things) there is a substantial risk of persecution or torture.

Section 1231(b)(3) bars removal to countries where persecution is more likely to occur than not. It provides that, "[n]otwithstanding paragraphs (1) and (2)"—*i.e.*, notwithstanding paragraphs governing third-country removal—"the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of [a protected ground]." Regulations implementing the Convention Against

Torture add that removal is barred if "torture in the county of removal is 'more likely than not.'" *Mahmood v. Sessions*, 849 F.3d 187, 193 (4th Cir. 2017) (quoting 8 C.F.R. § 1208.16(c)). That is why "withholding relief [is] mandatory" when the burden of proof is met. *Tomas-Ramos v. Garland*, 24 F.4th 973, 979 (4th Cir. 2022) ("The government may not remove a noncitizen to a country in which there are substantial grounds for believing he would be tortured, or in which he faces a clear probability of persecution on account of a protected ground. And if the noncitizen meets the relevant burden of proof, then both CAT relief and withholding relief are mandatory.") (citations omitted); *see also Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019) ("[P]recisely because withholding of removal is country-specific, as the government says, if a noncitizen who has been granted withholding as to one country faces removal to an alternative country, then she must be given notice and an opportunity to request withholding of removal to *that* particular country."), *rev'd on other grounds*, 594 U.S. 523 (2021).

In response, The Government makes three arguments.

***First***, the Government argues that "Petitioner's claim is moot as to Uganda and unripe as to any other country." Opp. at 15. As to Uganda, Petitioner accepts the Government's new representation—made for the first time in the weeks after this Petition was filed—that it will not remove him to Uganda. But the Government replaced Uganda with Eswatini as a potential removal destination. Petitioner's claims against removal to Uganda apply equally to Eswatini, so the claims are neither moot nor unripe. The Government cannot evade judicial review by designating a new third country of removal every time Petitioner challenges the prior third country that the Government had designated.

Contrary to the Government's suggestion, Petitioner's fear of removal to Eswatini is not "speculative." Opp. at 15. If removed to Eswatini, Petitioner would face a substantial risk of

persecution, torture, and re-deportation to El Salvador that equals or exceeds the risk in Uganda. On July 16, 2025, the Eswatini Government announced that it had received five third-country deportees from the United States. Eswatini Government, X (July 16, 2025, 6:55 am), https://x.com/EswatiniGovern1/status/1945482348125978735 (Ex. B). The Eswatini Government added that "these deportees . . . will be repatriated to their respective countries" and "are housed in Correctional facilities within isolated units." *Id.* The Eswatini Government even labeled the third-country deportees as "prisoners" and "inmates." *Id.* Media reporting confirms that the five third-country deportees "are being held in solitary confinement in various prisons for an undetermined time" and plans to "ultimately repatriate the five to their home countries."[2] Recent updates indicate that the five men have not had access to their lawyers and have not had explanations for why they have been held in maximum-security prisons for two months without charges.[3] The same fate has befallen third-country deportees to other countries. *See e.g.*, *D.A.*, 2025 WL 2646888, at *2 (finding that, despite Ghana's assurances, "one Plaintiff was almost immediately" re-deported to the country from which he was granted fear-based immigration relief); *Abrego Garcia II*, 2025 WL 2062203, at *9 n.15 (discussing case of O.C.G.). Petitioner thus has substantial grounds to fear that if he were removed to Eswatini, he—like other third-country deportees—would be locked up without reason for months and then sent to El Salvador to face persecution and torture.

---

[2] Gerald Imray, *Men Deported By U.S. To Eswatini in Africa Will Be Held In Solitary Confinement For Undetermined Time*, PBS (July 18, 2025), https://tinyurl.com/2t4euvsv (Ex. C); *see also* Rachel Sacage, *Lawyers Say Men Deported By US to Eswatini Are Being Imprisoned Illegally*, Guardian (Sept. 3, 2025), https://tinyurl.com/2xkxwypn (Ex. D).
[3] Gerald Imray, *Rights Group Calls For Urgent Action for 5 Men Deported By US and Held In Eswatini Without Charges*, AP (Sept. 19, 2025), https://tinyurl.com/2j59f5sy (Ex. E).

*Second*, the Government argues that its removal procedure, "as set forth in *D.V.D.* and DHS's March 30, 2025, guidance . . . is consistent with due process and the INA." Opp. at 16. Not so. This Court has already held that "[a]dherence to the [DHS March 30] Memorandum . . . raised a substantial risk that Abrego Garcia could once again be removed without due process and in a manner that would evade this Court's jurisdiction and the attendant protection against further constitutional violation." *Abrego Garcia II*, 2025 WL 2062203, at *5. In fact, the Court held an entire hearing on the March 30 Memorandum, yet over the course of a full day of testimony the Government did "little to assure the Court that absent intervention, Abrego Garcia's due process rights will be protected." *Id.* at 8. The March 30 Memorandum offers no further protections for Petitioner now than it did a few months ago.

Even if the March 30 procedures were adequate (they are not), the Government is not complying with those procedures. The March 30 Memorandum requires a third country to provide "diplomatic assurances" that the removed individuals "will not be persecuted or tortured." ECF No. 28-2. Eswatini has offered no such assurances—indeed, it has not even agreed to accept Petitioner, let alone assured his protection from persecution, torture, and re-deportation to El Salvador. On September 11, 2025, Eswatini publicly announced that it "has not received [from the U.S. Government] any communication regarding [Petitioner]," it "did not have any agreement with the United States to receive Kilmar Abrego," and "[a]ny proposal to send more deportees to Eswatini will be discussed between the governments of Eswatini and the United States of America prior to initiating processes." *Eswatini Says US Never Asked Them To Take Kilmar Abrego As Deportee*, Reuters (Sept. 11, 2025), https://tinyurl.com/muv6wy36 (Ex. F). The U.S. Government's opposition brief—filed on September 22—provides neither evidence nor even unsubstantiated assertion that Eswatini is willing to accept Petitioner, let alone that it has provided

any assurances to safeguard Petitioner from persecution, torture, or re-deportation to El Salvador, even though the U.S. Government first designated Eswatini as a removal destination on September 5 (and likely started the designation process before then). It is clear that the Government is *first* designating a third country *and only then* checking with the country to see if removal to that country is viable.

**Third**, the Government cites *Munaf v. Geren*, 553 U.S. 674, 702–03 (2008), to argue that "when the Executive determines a country will not torture a person on his removal, that is conclusive." Opp. at 16. But this argument is a red herring as the Government has not submitted *any* evidence that it has made any determination that Petitioner would not face persecution, torture, or re-deportation to El Salvador if he were removed to Eswatini. Even if it had, this argument ignores Petitioner's right to statutory withholding of removal under 8 U.S.C. § 1231(b)(3), under which "the government must withhold deportation" if the applicant shows "that his life or freedom would be threatened on account of a protected characteristic if he were deported to his home country . . . the government must withhold deportation." *See Shantu v. Lynch,* 654 F. App'x 608, 611 (4th Cir. 2016) (citations omitted). Whether or not Executive Branch officials have made a contrary determination cannot override the statutory prohibition on removal enforceable by the Judicial Branch.

### E.     The Government is ignoring Petitioner's designation of Costa Rica (Count 1).

The Government's attempt to remove Petitioner to Eswatini, while ignoring his lawful designation of Costa Rica, violates 8 U.S.C. § 1231(b)(2). Although the Government argues that Petitioner's country designation is not binding, Opp. at 13, its unsupported decision to disregard this designation and instead offer arbitrary alternatives is contrary to the statutory language.

Section 1231(b)(2)(A) provides that "any alien" may "designate one country to which the alien wants to be removed, and," when such a designation is made, "the Attorney General *shall*

remove the alien" there (emphasis added). Thus, removal to the designated country is mandatory. *See Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("It is undisputed that the word 'shall' imposes a mandatory command. 'Shall' means 'must.'") (citations omitted).

The Attorney General, however, "may disregard [a] designation . . . under four specified circumstances." *Jama v. I.N.S.*, 329 F.3d 630, 633 (8th Cir. 2003), *aff'd sub nom. Jama v. ICE,* 543 U.S. 335 (2005). The Attorney General may disregard Petitioner's designated country only if (1) he "fail[ed] to designate a country promptly," (2) the government of Costa Rica does not inform the Attorney General that it will accept Petitioner within 30 days, (3) the Government of Costa Rica refuses to accept Petitioner, or (4) "the Attorney General decides that removing the alien to the country is prejudicial to the United States." 8 U.S.C. § 1231(b)(2)(C). Thus, "the Attorney General may not completely ignore a properly made choice merely as a matter of whim or caprice." *U.S. ex rel Scala Di Felice v. Shaughnessy*, 114 F. Supp. 791, 794 (S.D.N.Y. 1953).

None of those four specified circumstances applies here. The first circumstance is inapplicable because Petitioner promptly designated Costa Rica on August 23, 2025. *See* ECF No. 1-7. When the Government first detained Petitioner for removal in 2019, Petitioner was granted withholding of removal to El Salvador (which was not appealed by the Government) and given permission to live in Maryland under ICE supervision, so there was no reason to designate any country for removal. *Abrego Garcia II*, 2025 WL 2062203, at *3. When the Government next detained Petitioner for removal in March 2025, he had no opportunity to designate a country for removal because the Government did not follow any legal process whatsoever in removing him to El Salvador. *See Abrego Garcia I*, 777 F. Supp. 3d at 516–17. Petitioner's first meaningful opportunity to designate a third country for removal came in August 2025. On August 21, 2025, Costa Rica provided a letter assuring Petitioner that it would accept him, grant him legal refugee

status, and not remove him to El Salvador, *see* ECF No. 1-3, and the very next day the U.S. Government first notified Petitioner that it planned to remove him to a third country (Uganda), *see* ECF No. 1-5. Petitioner designated Costa Rica the very next day. Thus, within 48 hours of Petitioner receiving the requisite assurances from Costa Rica and notice from the Government that it planned to remove him, Petitioner designated Costa Rica under § 1231(b)(2).

The second and third circumstances are inapplicable because the August 21 letter informs the United States that Costa Rica will accept Petitioner. *See* ECF No. 1-3.

Finally, the fourth circumstance is inapplicable because the Government does not claim that removing Petitioner to Costa Rica is "prejudicial to the United States." Opp. at 13. Nor could it. The Government has removed hundreds of third-country nationals to Costa Rica this year alone.[4] And the government was perfectly willing to send Petitioner to Costa Rica if he pleaded guilty to the pending criminal charges. Aug. 25 Tr. 5:8–18, 7:3–17; *see also* Notice of Supplemental Information, *United States v. Abrego Garcia*, No. 25-cr-115 (M.D. Tenn. Aug. 23, 2025), ECF No. 113.

The Government therefore cannot show any cognizable prejudice to the United States from removal to Costa Rica. Conditioning removal to Costa Rico on a guilty plea is not a legitimate use of removal proceedings. Removal decisions cannot serve punitive ends: "[a] deportation proceeding is a purely civil action . . . not to punish an unlawful entry" and "looks prospectively

---

[4] *See* Annie Correal, *Costa Rica Will Take Central Asian and Indian Migrants Deported by U.S.*, N.Y. Times (Feb. 17, 2025), https://www.nytimes.com/2025/02/17/world/americas/costa-rica-deportation-flights.html (Ex. G) ("Costa Rica announced on [February 17, 2025] that it would receive a flight this week from the United States carrying 200 migrants from Central Asia and India"); Vanessa Buschschluter, *Costa Rican court orders release of migrants deported from US*, BBC (June 25, 2025), https://www.bbc.com/news/articles/cwyrn42kp7no (Ex. H) ("The deportees, among them more than 80 children, arrived on flights from the US shortly after the deal between the two governments was struck in February.").

to the respondent's right to remain in this country." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). In *Lopez-Mendoza*, the Supreme Court explicitly held that immigration judges "cannot adjudicate guilt or punish the respondent for any crime." *Id.* The Government seeks to skirt that principle and weaponize third-country removal to punish Petitioner if he will not plead guilty.

By disregarding Petitioner's valid designation and offering only non-viable alternatives as a punishment for refusing to plead guilty, the Government violates the explicit requirements of 8 U.S.C. § 1231(b)(2)(C). The Government argues that such a decision is discretionary and "unreviewable," Opp. at 13, but that is not the case since none of the four statutory circumstances are present that might authorize the exercise of discretion. *Abrego Garcia v. Noem*, 2025 WL 1021113, at *2–3 (4th Cir. Apr. 7, 2025) (Thacker, J., with King, J., concurring).

The Government also argues that Petitioner's "fear of persecution and torture if he were removed to Costa Rica" somehow impacts his designation. Opp. at 5, 20 (citing Opp. Ex. A) (cleaned up). But the Government fails to acknowledge the additional context. Petitioner expressed fear of removal to Costa Rica, as well as certain other countries, based solely on a single, unified concern: the risk of chain refoulement ultimately resulting in his return to El Salvador and detention in CECOT. Petitioner's counsel expressly confirmed to the Government on September 17, 2025, that Petitioner "does not fear Costa Rica itself, but rather fears any country that lacks adequate safeguards against his ultimate return to El Salvador." *Email from S. Sandoval-Moshenberg to Respondents,* September 17, 2025 (Ex. I). Because Costa Rica has provided assurances against re-deportation to El Salvador, the Government has no basis to disregard Petitioner's designation of Costa Rica under § 1231(b)(2).

## II.    Petitioner's Challenges To Detention Are Justiciable And Meritorious.

### A.    Petitioner's detention violates 8 U.S.C. § 1231(a)(6) (Count 2).

The Government mischaracterizes both the applicable legal standard under 8 U.S.C. § 1231(a)(6), as interpreted in *Zadvydas*, and the facts regarding Petitioner's detention. Its narrow reading of this statutory provision, which limits post-removal-period detention to what is reasonably necessary to secure removal, misrepresents the law and dismisses critical facts.

As the Supreme Court explained in *Zadvydas*, immigration detention must be "nonpunitive in purpose and effect." 533 U.S. at 690. The only permissible purposes for immigration detention under 8 U.S.C. § 1231(a)(6) are to carry out the removal order and to prevent danger to the community. *Id.* The former reason evaporates where removal "is no longer practically attainable," *id.*; and the Government, for all its rhetoric, is not relying on the latter reason to justify Petitioner's detention here (nor could it, especially given the release order in the criminal case).

The Supreme Court's interpretation of 8 U.S.C. § 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas,* 533 U.S. at 689. *Zadvydas* directs the habeas court to "ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699. Because it "is unlikely that Congress believed that all reasonably foreseeable removals could be accomplished in 90 days," the Supreme Court ruled that a "presumptively reasonable period of detention" is six months. *Id.* at 680. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. And "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

Petitioner has met his burden under the statute, demonstrating that his removal is not reasonably foreseeable in the future. The Government has not taken any steps to effectuate Petitioner's removal to any country since his detention on August 25, 2025: as explained above, the evidence shows that the Government has not obtained agreement from Eswatini (or any other third country) to accept Petitioner's removal, let alone assurances from Eswatini (or any other third country) that Petitioner will not be persecuted, tortured, or re-deported to El Salvador. Nor has the Government conducted *any* administrative proceedings in support of removal of Petitioner to Eswatini (or any other third country). At minimum, the Government should have conducted a credible fear interview of Petitioner, *see* ECF No. 28-2 at 2, as he promptly and affirmatively stated a fear of removal to Eswatini after the Government first notified him of Eswatini as a potential removal destination. But, as of the filing of this brief, the Government has still not conducted a credible fear interview or undertaken any other administrative proceedings. There simply are no signs of a "definite termination point" as required by *Castaneda v. Perry*, 95 F.4th 750, 757 (4th Cir. 2024) (citation omitted). In fact, the Government, during the August 25, 2025, hearing even admitted that Petitioner's "removal is not imminent." Aug. 25 Tr. 8:4–5. It is now the Government's turn to "respond with *evidence* sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701 (emphasis added). Yet it offers zero evidence on that front.

Instead of evidence, the Government presses arguments—and those arguments are incorrect. The Government contends that "*Zadvydas* links the six-month timeline to the start of detention." Opp. at 19. While *Zadvydas* does not explicitly answer the question of when the six-month period begins or if it only includes the "period of detention," several courts in this district and others have found that "the six-month period runs continuously from the *beginning of the removal period*, even if the noncitizen is not detained throughout that period." *Zavvar v. Scott,*

2025 WL 2592543, at *4 (D. Md. Sept. 8, 2025) (emphasis added); *see also, e.g.*, *Medina v. Noem*, --- F. Supp. 3d ----, 2025 WL 2306274, at *8 (D. Md. Aug. 11, 2025) ("[T]here are good reasons to believe that the Supreme Court understood the presumption it was adopting to apply only during the first six months after an order of removal becomes administratively final."); *Tadros v. Noem*, 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) (finding that the removal period began upon the affirmance of the removal order even though the petitioner was immediately released, rather than when he was detained 16 years later, and rejecting the argument that the petitioner could not obtain habeas relief because he had not yet been in detention for six months); *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 500 (S.D.N.Y. 2009) (concluding that, where the Government was aware of a noncitizen's address but failed to pursue removal until 15 months after the removal order was entered, "the removal period, as well as any presumptively reasonabl[e] six-month period of removal to which the Government may have been entitled" had expired six months after the entry of the removal order). For individuals such as Petitioner—who was ostensibly issued a final removal order in 2019, granted withholding of removal and the ability to live and work in Maryland, *see* Ex. J, under an Order of Supervision, and was only removed and detained almost six years after the original removal order—habeas relief is still possible, *see* Ex. K. Thus, insofar as the Government maintains that a final removal order was entered against Petitioner in 2019, the six-month period expired many years ago.

Even if the Government were correct that the six-month period begins to run only with detention, that period would still have expired here because the Government began detaining Petitioner over six months ago on March 12, 2025, on which date the Government unlawfully arrested Petitioner and then incarcerated him in the notoriously dangerous CECOT prison in El

Salvador. *See* ECF No. 1 ¶ 1.[5] The Government brought Petitioner back to the United States in June, and since August 25, 2025, has kept Petitioner in ICE custody. *Id.* ¶¶ 34–43.

Fundamentally, whether or not Petitioner is within the six-month period, the dispositive question remains whether Petitioner's removal is reasonably foreseeable. *See Medina*, 2025 WL 2306274, at *7. The Supreme Court did not establish a "bright-line rule" requiring six months of detention before relief through release becomes available. *Zavvar*, 2025 WL 2592543, at *5; *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1114 (W.D. Wash. 2019). *Zadvydas* neither establishes a bright-line rule that detention beyond six months is automatically unreasonable, nor renders shorter detention periods automatically reasonable—detention may still be challenged when it fails to facilitate removal in the reasonably foreseeable future. *See Medina*, 2025 WL 2306274, at *6 ("[W]hat *Zadvydas* did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed."); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in *Zadvydas* outlined a guide for approaching these detention challenges . . . not a prohibition on claims challenging detention less than six months.") (internal citations omitted). For detention to remain reasonable, "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink," *Zadvydas*, 533 U.S. at 701, and courts have recognized that "the Government's burden gradually increases after the sixth-month mark," *Al-Sadoon v. Lynch*, 586 F. Supp. 3d 713, 726 (E.D. Mich. 2022). "After the six-month period ends, that presumption goes away, and the petitioner is entitled to release if he provides

---

[5] The Supreme Court has not addressed whether this "presumptively reasonable period" changes when the detainee is subject to torture, as Petitioner was here. *See* ECF 28-1 at 39–48.

good reason to believe that removal is not reasonably foreseeable, and the government is unable to rebut that showing." *Medina*, 2025 WL 2306274, at *6 (cleaned up).

The Government attempts to argue that Petitioner's removal is still reasonably foreseeable, but it has not provided evidence of any realistic path for Petitioner's removal. Opp. at 19, 22. The Government has designated Eswatini as the removal country, but a spokesperson for Eswatini has publicly stated that it "has not received any communication regarding Petitioner and that there is no live deportation proposal to initiate any further processes."[6] The best the Government can point to is *Petitioner's* statement that "Respondents are seeking to remove [him]," but that is not *evidence* of any actual removal proceedings. Opp. at 19, 22 (citing ECF 1 ¶ 45). The Government quoting Petitioner quoting the Government's statement that it *desires* to send Petitioner abroad neither establishes concrete progress toward removal, nor renders removal reasonably foreseeable.

This situation is analogous to others where courts found no significant likelihood of removal in the reasonably foreseeable future. For example, in *Andreasyan v. Gonzales*, the court found that "the Government has not responded with enough evidence to rebut Petitioner's claim that removal is not likely in the reasonably foreseeable future" after the Petitioner had been detained for more than eight months and the "Uzbekistani Consular officer had stated . . . that Petitioner's case was still under review and pending a decision." 446 F. Supp. 2d 1186, 1189–90 (W.D. Wash. 2006). Similarly, in *Ahmed v. Freden*, the court found that "there does not appear to be any information before the Court at this time demonstrating that ICE has made progress in repatriating Petitioner" since "[t]he reasons for the lack of any such progress are unexplained, particularly since Respondent asserts, [that t]here are no institutional barriers to Petitioner's

---

[6] *Eswatini says US never asked them to take Kilmar Abrego as deportee,* Reuters (Sept. 11, 2025 11:35 am), https://tinyurl.com/muv6wy36 (Ex. F).

removal, as evidenced by ICE's removal of hundreds of noncitizens to Pakistan in the recent past."
744 F. Supp. 3d 259, 266 (W.D.N.Y. 2024). There is likewise no reasonable removal prospect here.

The Government contends that Petitioner's designation of Costa Rica as his preferred country of removal "defeats his argument." Opp. at 20. To be clear: Petitioner agrees the Government could deport him to Costa Rica today. Yet the Government refuses to do so. The Government cannot use *its own refusal* to remove Petitioner to Costa Rica as both a sword to punish Petitioner and simultaneously a shield against his *Zadvydas* claim. "'[I]f removal is not reasonably foreseeable,' based on delays or uncertainties associated with, for example, diplomatic negotiations that are ongoing and must conclude before the government may actually remove him, the court should 'hold continued detention unreasonable and no longer authorized by statute.'" *Medina,* 2025 WL 2306274, at *4 (quoting *Zadvydas,* 533 U.S. at 699–70).

The Government further incorrectly characterizes Petitioner's situation as resulting from "legal proceedings of his own making." Opp. at 21. The legal obstacles to Petitioner's removal are directly attributable to the Government's actions, not Petitioner's. The Government unlawfully and improperly removed Petitioner to El Salvador initially. The Government then repeatedly changed the designated removal country—first El Salvador, then Uganda, now Eswatini. Yet the Government failed to obtain the requisite legal permissions for removal to any of those countries. The Government has also taken no steps to conduct a credible fear interview. And the Government has elected to not remove Petitioner to Costa Rica even though it could do so. These dilatory tactics distinguish this case fundamentally from cases cited by the Government such as *Lawrence v. Gonzales*, 446 F.3d 221, 227 (1st Cir. 2006), and *Garcia v. DHS*, 422 F. App'x 7, 8 (2d Cir. 2011), where it was petitioners, rather than the Government, that "procured stays incident to [their] legal

challenges," and from *Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006), where the petitioner's "lengthy detention" resulted from filing "numerous petitions for reconsideration and appeals."

The evidence establishes that there is no significant likelihood of Petitioner's removal to Eswatini in the reasonably foreseeable future, and the Government refuses to honor Petitioner's designation of Costa Rica as a removal destination. Under these circumstances, Petitioner's continued detention is unreasonable and unauthorized under 8 U.S.C. § 1231(a)(6).

**B.    Petitioner's due process challenge to his detention is not statutorily barred (Count 3).**

**1.    Petitioner's detention violates due process (Count 3).**

While detention during deportation and removal proceedings is a valid aspect of the deportation process, *see Demore v. Kim*, 538 U.S. 510, 523 (2003), such "civil detention of a removeable noncitizen violates the Constitution if it is punitive." *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1078 (N.D. Cal. 2024) (citing *Wong Wing v. United States*, 163 U.S. 228, 237-38 (1896)).

The Government's motive for detaining Petitioner is transparently punitive and violates his fundamental due process rights. The Government explicitly linked Petitioner's continued detention to his ongoing criminal proceedings, transforming civil immigration detention into a mechanism for criminal leverage. *See* Notice of Supplemental Information, *United States v. Abrego Garcia*, No. 25-cr-115 (M.D. Tenn. Aug. 23, 2025), ECF No. 113. The Government refused to remove Petitioner to Costa Rica unless he accepted a plea deal in the criminal case. *Id.* The District of Maryland has been flooded with cases of Central Americans seeking to prevent third-country removal to Mexico; in not one other case has the government threatened to send a Central American across the Atlantic Ocean. Nor has the Government taken any concrete steps toward effectuating removal to Eswatini or commenced any administrative proceedings for removal there, such as a credible fear interview.

Instead of actually conducting removal procedures, the purpose of Petitioner's continued detention appears to be to make good on the Government's pronouncements that Petitioner would "never go free on American soil."[7] Indeed, Respondent Noem attacked this Court directly (albeit erroneously) when Petitioner was released from custody in Tennessee.[8] Rather than holding Petitioner to deport him, it has become increasingly clear that the true purpose of his detention is to coerce Petitioner in his criminal proceedings and to continue the Government's media campaign against him.

The Government's pattern of misconduct toward Petitioner reveals detention maintained for purposes wholly divorced from legitimate administrative function. As the Court previously observed, the Government "ha[s] taken the presumption of regularity and [they've] destroyed . . . because [the Court] can't presume anything to be regular in this highly irregular case." *Abrego Garcia v. Noem*, No. 25-cv-00951 (D. Md.), Tr. of July 11, 2025 Hearing at 11:7–10. The Court should reject any attempt to characterize this detention as occurring within the ordinary course of removal proceedings.

The Government also argues that Petitioner "received ample process prior to receiving a final order of removal." Opp. at 24. But, as noted above, the Government has not put into evidence any final order of removal, let alone one that postdates the designation of Uganda or Eswatini as a third country removal destination. Petitioner has a due process right to notice and an opportunity to challenge any third country to which the Government seeks to remove Petitioner. *See Guzman*

---

[7] Alan Feuer et al., *Abrego Garcia Detained Again After Government Signaled It Would Re-Deport Him*, N.Y. Times (Aug. 25, 2025), https://tinyurl.com/2dycmb46 (Ex. L).

[8] Press Release, *Secretary Noem Condemns the Release of Kilmar Abrego Garcia, a MS-13 Gang Member, Human Trafficker, Wife Beater, and Child Predator*, DHS (Aug. 22, 2025), https://tinyurl.com/5fyeftb7 (Ex. M); *see also* Press Release, *Secretary Noem Announces ICE Arrest of Kilmar Abrego Garcia, an MS-13 Gang Member, Human Trafficker, Wife Beater, Child Predator and Criminal Illegal Alien*, DHS (Aug. 25, 2025), https://tinyurl.com/5f5an62a (Ex. N).

*Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019) ("[P]recisely because withholding of removal is country-specific, as the government says, if a noncitizen who has been granted withholding as to one country faces removal to an alternative country, then she must be given notice and an opportunity to request withholding of removal to *that* particular country."), *rev'd on other grounds*, 594 U.S. 523 (2021).

### 2.    8 U.S.C. § 1252 does not bar this court from exercising jurisdiction over Petitioner's detention.

The Government once again attempts to expand 8 U.S.C. §§ 1252(b)(9) and (g) beyond their narrow scope, arguing these provisions strip this Court of jurisdiction over Petitioner's detention claims. This argument, like those above, *see supra* § I.C., fails for the simple reason that Petitioner is not challenging anything that Sections 1252(b)(9) and (g) cover. For Section 1252(b)(9), Petitioner is "not asking for review of an order of removal; [he is] not challenging the decision to detain [him] in the first place or to seek removal; and [he is] not even challenging any part of the process by which [his] removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar." *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018). With respect to Section 1252(g), the Supreme Court expressly held that "habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688. The Court need only follow clear Supreme Court precedent to dismiss the Government's jurisdictional arguments on Count 3.

### Conclusion

The Court should grant Petitioner's Petition for Writ of Habeas Corpus.

Respectfully Submitted,

Dated: September 29, 2025

| | |
|---|---|
| | */s/ Jonathan G. Cooper* |
| **MURRAY OSORIO PLLC** | **QUINN EMANUEL URQUHART &** |
| Simon Y. Sandoval-Moshenberg | **SULLIVAN, LLP** |
| Rina Gandhi | Jonathan G. Cooper (D. Md. Bar No. 21345) |
| 4103 Chain Bridge Road, Suite 300 | Olivia Horton* (*pro hac vice*) |
| Fairfax, VA 22030 | 1300 I St. NW, Suite 900 |
| (703) 352-2399 | Washington, DC 20005 |
| ssandoval@murrayosorio.com | (202) 538-8000 |
| | jonathancooper@quinnemanuel.com |
| | oliviahorton@quinnemanuel.com |
| | *admitted in Texas; not admitted in D.C.* |
| | *Supervised by attorney admitted in D.C.* |

Andrew J. Rossman (*pro hac vice*)
Sascha N. Rand (*pro hac vice*)
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com

*Counsel for Petitioner*

27