UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, ET AL.,<br><br>Respondents. | Case No. 8:25-CV-02780-PX<br><br>**RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR LEAVE TO SERVE DOCUMENT REQUESTS** |

## INTRODUCTION

Habeas petitioners are not ordinarily entitled to discovery; they can seek it only if they demonstrate good cause and even then only if the Court exercises its discretion to allow it. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Petitioner Abrego Garcia cannot demonstrate good cause for discovery here. Most generally, all his claims fail as a matter of law, mostly on jurisdictional grounds, such that the discovery he seeks would be irrelevant. Those threshold legal issues should be resolved before discovery is even contemplated. Even beyond that, he seeks documents concerning information that he already has and into matters that neither he nor the Court is permitted to probe. In any event, this Court should decline to exercise its discretion to grant Petitioner's motion because his pending immigration proceedings may moot the relief he requests in this case and obviate any need for discovery. And Petitioner's delay in moving for leave to conduct discovery indicates that he has no imminent need for the documents he requests, nor does he require them to meaningfully participate in this case. For all these reasons, this Court should deny his motion.

## PROCEDURAL BACKGROUND

On August 22, 2025, Petitioner Kilmar Abrego Garcia was released from criminal custody in Tennessee and, consistent with this Court's orders in Case No. 8:25-cv-951, returned to Maryland subject to his Order of Supervision from the ICE Baltimore Field Office. ECF No. 112, *United States v. Abrego Garcia*, No. 3:25-cr-115 (M.D. Tenn. Aug. 22, 2025).

1

On August 25, 2025, pursuant to that Order of Supervision, Petitioner reported to the Baltimore Field Office and was taken into custody to effectuate removal pursuant to the 2019 final removal order. *See* ECF No. 1 ¶ 43. As required by this Court's order in Case No. 8:25-cv-951, he was notified that Uganda was the intended country of removal. *Id*. ¶ 39; ECF No. 27-3. Petitioner subsequently expressed fear of persecution or torture if removed to Uganda, ECF No. 1-6, in addition to 22 other countries. ECF No. 27-3. As a result, on September 5, 2025, ICE notified Petitioner that he would be removed to Eswatini—a country not on his list of countries to which he feared removal—rather than Uganda. *Id*.; *see* ECF No. 28-2 (DHS's third-country-removal procedure allows for removal to another country if the alien expresses a threat of fear or persecution).

The same day Petitioner was taken into custody to effectuate his removal, he filed the underlying habeas petition, leading to a telephonic conference with this Court that day. ECF No. 1. This Court, upon hearing from both parties, scheduled an evidentiary hearing for October 6, 2025. *See* ECF 14 at 5-7 (Aug. 25, 2025, Hearing Transcript). That hearing has since been postponed in light of other developments in both this litigation and Petitioner's immigration proceedings.

On September 18, 2025, Petitioner filed this motion for leave to serve document requests. ECF No. 27. Petitioner's motion requests documents, communications, and analysis related to Petitioner's country of removal and third-country-removal procedures. ECF No. 27-1. Four days later, Respondents filed their return to the petition for writ of habeas corpus. ECF No. 28.

## LEGAL STANDARD

As Petitioner concedes, ECF No. 27 at 2, the Supreme Court has made clear that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy*, 520 U.S. at 904; *see also Potarazu v. Warden,* No. 22-1334, 2023 WL 614290 at *7 (D. Md. Sept. 20, 2023) (denying habeas petitioner's request for discovery because "the vast amount of information [he] requested . . . amount[ed] to a fishing

2

expedition"); *Brooks v. Bivens,* No. 21-221, 2022 WL 4104180, at *6 (D. Md. Sept. 8, 2022) (denying request for discovery where petitioner "failed to provide any facts in support of his request for discovery" and "the information he [sought] concern[ed] the plea negations between his defense attorney and the State").

Rather, pursuant to Rule (6)(a) of the Rules Governing § 2254 Cases in the United States District Courts, a party may conduct discovery in a habeas proceeding only if he shows good cause and a judge exercises his discretion to grant the party leave to do so. *Bracy*, 520 U.S. at 904; *Potarazu*, 2023 WL 614290 at *7. Good cause exists when "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09.

## ARGUMENT

Petitioner argues that good cause exists to grant his motion for leave to serve document requests because: (1) "the Court has already scheduled an evidentiary hearing for which [those] documents are directly relevant and necessary;" (2) "there is a severe information asymmetry between the parties;" and (3) "there are legitimate concerns about the knowledgeableness and preparation of the witnesses to be presented by the Government at the October 6 hearing and the accuracy of government representations regarding Petitioner's case." ECF No. 27 at 3. None of these reasons provides good cause for granting Petitioner's motion. This Court has continued the October 6, 2025 evidentiary hearing, ECF No. 31—thus he no longer imminently needs the documents to prepare for that hearing or to assess whether the government's witness (who has not yet even been identified) is testifying accurately. And any information asymmetry between the parties is baked into the Immigration and Nationality Act ("INA"), which authorizes the Executive branch to take certain actions and renders them unreviewable.

More fundamentally, Petitioner cannot demonstrate good cause because all his claims fail for purely legal reasons that will not be affected by any discovery, for the reasons explained in Respondents' return to the habeas petition. ECF No. 28. Plus, he is not entitled to discovery into any of the five categories he proposes. In all events, this Court should exercise its discretion

3

to deny the motion and should instead let Petitioner's immigration proceedings unfold before the Board of Immigration Appeals because they may obviate the need for any discovery (or judicial relief by this Court). Indeed, Petitioner has no imminent need for discovery, as evidenced by his delay in bringing his motion for leave to serve document requests.

### I.  No good cause supports permitting discovery because all of Petitioner's claims fail as a matter of law.

Petitioner cannot demonstrate good cause for discovery because even "if the facts are fully developed," he would not be "entitled to relief." *Bracy*, 520 U.S. at 908–09. As set forth in Respondents' return to the habeas petition, ECF No. 28, Petitioner's claims fail as a matter of law because he is a member of the non-opt-out class certified in *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025), which precludes him from bringing certain of his claims separately in this proceeding, ECF No. 28 at 6–9; *see also Spencer v. Gasper*, 2021 WL 5346665, at *2 (6th Cir. June 16, 2021) ("Individual class members may not bring separate lawsuits seeking injunctions similar to the relief sought by the class."); *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988) ("To allow individual suits would interfere with the orderly administration of the class action and risk inconsistent adjudications."); *Rivarde by Rivarde v. Missouri*, 930 F.2d 641, 643 (8th Cir. 1991) ("[A] class member should not be able to prosecute a separate equitable action once his or her class has been certified."). Multiple courts in this district and elsewhere have denied relief on this basis. *See, e.g., Ghamelian v. Baker*, 2025 WL 2049981, at *3 (D. Md. July 22, 2025) (denying relief because of petitioner's status as a *D.V.D.* class member); *I.V.I. v. Baker*, 2025 WL 1519449, at *2 (D. Md. May 27, 2025) ("Even stripped of any reference to the District of Massachusetts' order, these claims are the same as (or substantially related to) the class claims being litigated in that district." (citation omitted)); *Tanha v. Warden, Baltimore Det. Facility*, 2025 WL 2062181, at *5 (D. Md. July 22, 2025)

("The court finds that Petitioner is a member of the *D.V.D.* Class."); *Sanchez v. Bondi*, 2025 WL 2550646, at *3 (D. Colo. Aug. 20, 2025) ("[B]ecause Mr. Sanchez is a member of *D.V.D.*'s Rule 23(b)(2) class, he has failed to show a likelihood of success on the merits of his claim."); *see also Phan v. DHS*, 1:25-cv-2147 (D.D.C. July 4, 2025) (transferring case to the District of Massachusetts as related to *D.V.D.*). None of the discovery that Petitioner seeks would bear on that procedural requirement.

Further, most of his claims are jurisdictionally barred by 8 U.S.C. § 1252(a)(5), (b)(9) and (g), which prohibit district courts from exercising jurisdiction over suits challenging actions taken to execute removal orders, ECF No. 28 at 10–12, 22–24, or 8 U.S.C. § 1252(a)(2)(B)(ii), which bars review of decisions "specified to be in the discretion of the Attorney General or the Secretary of Homeland Security," ECF No. 28 at 12–14. The jurisdictional bars do not depend on the facts that Petitioner seeks to develop; there is therefore no good cause for discovery.

And Petitioner's remaining claims that are not subject to 8 U.S.C. § 1252's jurisdictional bars fail as a matter of law because Petitioner is subject to a final order of removal, and Respondents may detain him pending his removal for at least the "presumptively reasonable period" of six months. *Id.* at 17–22. No discovery is necessary to establish that Petitioner is subject to a final order of removal or the length of his detention. Therefore, no good cause supports permitting discovery on those claims either.

Because all Petitioner's claims must be dismissed on legal grounds, he cannot demonstrate that good cause supports granting his motion for leave to conduct discovery.

II. **No good cause supports granting Petitioner's specific discovery requests.**

Even looking past the big picture and taking Petitioner's discovery requests on their own terms, he cannot demonstrate good cause for serving document requests "focused on [the] five targeted categories" that he identifies:

> (1) the procedures utilized to implement the March 30, 2025 DHS Guidance, or any subsequently issued guidance, concerning third-country deportations, including any exceptions thereto; (2) the selection and designation of Uganda and Eswatini, or any newly disclosed additional country, as the designated third-party country to which Petitioner may be deported; (3) the agreements, understandings, assurances, and relevant communications with the governments of each of the countries regarding Petitioner's treatment, including assurances against torture and refoulement, and financial arrangements; (4) how the credibility of any such assurances have been assessed by the Government; and (5) the specific procedures utilized to evaluate Petitioner's reasonable fear claims related to these countries.

ECF No. 27 at 2.

Concerning the first category—information related to implementing the March 30, 2025 DHS guidance, which sets forth the procedures for third-country removals—Petitioner does not explain what relevant details are missing from the March 30, 2025 guidance or what additional questions he is seeking to answer. Nor does he explain how the requested information would impact his habeas claims. Thus, Petitioner has not demonstrated good cause supporting his request for documents regarding the "procedures utilized to implement the March 30, 2025 DHS Guidance," as is his burden. *See Bracy*, 520 U.S. at 904.

The second category—the selection and designation of a third country for removal—involves discretionary decisions that are not subject to judicial review, and thus no discovery could be relevant or appropriate. The INA expressly grants DHS the authority to remove individuals to "another country whose government will accept the alien into that country," under certain circumstances. 8 U.S.C. § 1231(b)(2)(E)(vii); *Jama v. Immigr. & Customs Enf't*,

543 U.S. 335, 341 (2005).[1] "[S]electing a destination country," pursuant to that statutory authority, is an "exercise of executive judgment," or discretion, which requires the government to "take both practical and geopolitical concerns into account." *Jama*, 543 U.S. at 344.

That exercise of discretion is unreviewable under 8 U.S.C. § 1252(a)(2)(B)(ii), which provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory), including . . . any . . . habeas corpus provision . . . , no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authorization for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." *See also Polfliet v. Cuccinelli*, 955 F.3d 377, 381 (4th Cir. 2020) ("On its face, § 1252(a)(2)(B)(ii) bars judicial review of decisions 'specified' to be in the 'discretion' of the Secretary."). That bar extends to discretionary decisions made pursuant to a statute even when that statute does not "literally contain the word 'discretion'" and to constitutional questions arising from that discretionary decision. *Id.* at 381, 383–84. Section 1231(b)(2)(E)(vii) grants DHS the authority to remove aliens to third countries. That authority requires DHS to select a third country, the selection of which is discretionary. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 14 (2024) (finding that a discretionary decision was subject to 8 U.S.C. § 1252(a)(2)(B)(ii)'s bar where "Congress has in no way prescribed how that discretion must be exercised"). Because this Court lacks authority to review those discretionary selection decisions, Petitioner is not entitled to discovery into them—nor would such discovery serve any purpose.

---

[1] An individual granted withholding of removal may still be removed to a third country, *see* 8 U.S.C. § 1231(b)(2), and an individual granted protection under the Convention Against Torture ("CAT") may still be removed "at any time to another country where he or she is not likely to be tortured," 8 C.F.R. § 1208.17(b)(2).

7

The third and fourth categories—documents related to assurances from foreign governments and how the credibility of those assurances has been assessed—concern matters that courts may not second guess. The Supreme Court has already held that when the Executive determines a country will not torture a person on his removal, that determination is conclusive. *Munaf v. Geren*, 553 U.S. 674, 702-03 (2008). "Under *Munaf* . . . the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee." *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009). When the Executive determines an alien will not be tortured abroad given the assurances of a foreign nation, courts may not "second-guess [that] assessment," at least unless Congress has specifically authorized judicial review of that decision. *Id*. at 517 (citation omitted); *see Munaf*, 553 U.S. at 703 n.6. The decision that a foreign government's categorical assurance against torture is sufficient to be accepted for all aliens is itself a "foreign policy" judgment the judiciary "is not suited" to question. *Munaf*, 553 U.S. at 702. Similar to DHS's removal-country selection decisions, because the government's determination that assurances that a foreign country will not torture an alien are unreviewable, Petitioner is not entitled to discovery to look behind those assurances.

Finally, the fifth category—the specific procedures used to evaluate reasonable-fear claims related to selected countries for removal—are dictated by the INA and CAT, and applicable regulations, as set forth in the March 30, 2025 guidance. ECF No. 28-2 at 2 ("Immigration officers will refer any alien who affirmatively states a fear of removal to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal."). Section 241(b)(3), or 8 U.S.C. § 1231(b)(3)(C), provides that to evaluate an alien's

credible fear, "the trier of fact . . . shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 1158(b)(1)(B)." Section 1158(b)(1)(B)(ii) sets forth what is necessary for an alien to sustain his burden of proof, and 1158(b)(1)(B)(iii) details what "a trier of fact may base a credibility determination on." The regulations for withholding of removal under CAT explain that "the burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal," 8 C.F.R. § 208.16(c)(2), and what may be considered to "assess[] whether it is more likely than not that an applicant would be tortured in the proposed country of removal," *id*. § 208.16(c)(3). No documents are necessary to further detail these considerations. Nor does Petitioner ever explain what more he is looking for, or why he thinks anything more exists.

Petitioner cannot demonstrate good cause supports allowing him to serve document requests related to any of these five categories.

**III.    Even if Petitioner could demonstrate good cause entitling him to discovery, the Court should not grant Petitioner's motion now.**

All of the above aside, this Court should not exercise its discretion to grant leave to conduct discovery here—and certainly not at this juncture.

First, as prior experience in the related civil case has demonstrated, any discovery in this matter is likely to implicate a wide array of privileges touching almost every responsive document. Petitioner requests documents related to: the selection of third countries for removal; assurances from foreign governments against torture and refoulement; and the process for assessing the credibility of those assurances. ECF No. 27 at 2. These categories of documents are likely to implicate the deliberative-process, state secrets, and attorney-client privileges. *See City of Virginia Beach v. U.S. Dep't of Com.*, 995 F.2d 1247, 1253 (4th Cir. 1993); *Sterling v. Tenet*, 416 F.3d 338, 346 (4th Cir. 2005); *Mathews v. Diaz*, 426 U.S. 67, 82 n.17 (1976).

Litigating and adjudicating those privilege issues will be burdensome for Respondents and for the Court. And doing so would be a poor use of resources because, as explained above, none of Petitioner's requested discovery is reasonably likely to impact the outcome of this case.

Second, at minimum, the Court should wait to authorize any discovery until Petitioner's immigration proceedings conclude. As Respondents stated in their motion to continue the evidentiary hearing, ECF No. 30 at 1–2, and this Court recognized in its order granting that motion, Petitioner has ongoing proceedings in immigration court, ECF No. 31. Petitioner filed a motion to reopen requesting asylum, statutory withholding of removal, and CAT protection from El Salvador based on his detention by the Salvadoran government, as well as protection from removal to Uganda. He also sought reopening for the purpose of seeking discretionary cancellation of removal, and he has filed with the immigration court a motion for a stay of his removal pending the determination of his motion to reopen. ECF No. 28-1; *see also* Ex. A (Emergency Motion for Stay of Removal). Though Petitioner's motion to reopen and motion seeking a stay were denied, ECF No. 39; *see also* Ex. B, he may appeal those decisions to the Board of Immigration Appeals by October 31, 2025. If Petitioner's immigration proceedings are reopened, it would moot the relief he seeks before this Court. The Court should therefore deny Petitioner's motion and allow his immigration proceedings to conclude before authorizing any burdensome and fraught discovery because they may obviate any need for discovery.

Indeed, for similar reasons, two of the three reasons that Petitioner claims support granting his motion no longer apply. Because the Court continued the evidentiary hearing, Petitioner has no arguable, imminent need of the documents to prepare for that hearing or to determine whether the government's witness is prepared and testifying accurately. ECF No. 27 at 3.

Finally, Petitioner seeks discovery related to "the selection and designation of Uganda and Eswatini, or any newly disclosed additional country," and assurances from those countries against torture and refoulement. ECF No. 27 at 2. But any claim regarding Uganda is moot, and Petitioner has not asserted a claim regarding Eswatini or any other third country. ECF No. 1; ECF No. 28 at 15. The Court should decline to exercise its discretion to grant Petitioner's motion because he would need to amend his Petition to bring claims concerning Eswatini or another country, and he is not entitled to discovery into matters related to claims he has not brought.

Petitioner's failure to amend his petition when he learned the selected country had changed highlights his gamesmanship—it does not matter which country Respondents select, he will assert that he has a credible fear. Petitioner has already asserted putative fear of torture or prosecution from more than 20 nations—and made clear that he is prepared to allege many more. Indeed, Petitioner's machinations are so comprehensive that he even brazenly claims that he is likely to be tortured or persecuted if removed to his *desired country of removal*, Costa Rica.

The immigration judge correctly saw through this cynical exploitation of procedural rules to avoid removal. *See* ECF No. 39 at 11–12 ("If Respondent fears persecution and torture in Costa Rica and objects to his removal there, the Court does not understand why he would want to designate it as a country of removal. The Court is troubled by this contradiction, particularly as Respondent's arguments on this point in his reply brief appear disingenuous."); *id.* at 12 ("Respondent's claim that he fears Costa Rica will do otherwise appears frivolous."). This Court should too.

11

**IV.    Petitioner's delay in seeking discovery undercuts his representation that he needs it.**

Petitioner's delay in moving for leave to conduct discovery undermines any claim that he requires discovery, especially on an expedited basis. Petitioner was first informed of his potential removal to Uganda on August 22, 2025. ECF No. 1 ¶ 39. When the Court held a status conference on August 25, 2025, Petitioner did not raise any need for discovery to present his claims. ECF No. 14 at 3–7, 10–14. Instead, Petitioner waited nearly four weeks after knowing Uganda was a potential removal destination before seeking expedited discovery. Similarly, despite being aware on September 5, 2025, that Eswatini was a potential removal destination, he waited nearly two weeks before moving for leave to conduct discovery. Petitioner's delay in moving for discovery suggests that the information he seeks was not "essential for his participation in the upcoming evidentiary hearing," which has been postponed in any event, and is not essential for his participation in the case more generally. And his delay certainly indicates that he does not require the requested discovery on an expedited basis.

**CONCLUSION**

The Court should deny Petitioner's motion for leave to serve document requests.

Dated: October 2, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General
Civil Division, Office of Immigration Litigation

*/s/ Bridget K. O'Hickey*
BRIDGET K. O'HICKEY
U.S. Department of Justice, Civil Division
Counsel to the Assistant Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 353-8679
bridget.k.o'hickey@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on October 2, 2025, I caused to be filed the foregoing document via CM/ECF, which caused a copy to be served on all parties.

*/s/ Bridget K. O'Hickey*
BRIDGET K. O'HICKEY
Counsel to the Assistant Attorney General