IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

KILMAR ARMANDO ABREGO GARCIA,

Petitioner,

vs.

KRISTI NOEM, et al.,

Respondents.

Civil Case Number 8:25-cv-02780-PX

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE PAULA XINIS
UNITED STATES DISTRICT COURT JUDGE
MONDAY, OCTOBER 6, 2025, AT 10:11 A.M.

APPEARANCES:

On Behalf of the Petitioner:

BY: ANDREW ROSSMAN, ESQUIRE
SASCHA RAND, ESQUIRE
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
(212)849-7000

BY: JONATHAN COOPER, ESQUIRE
OLIVIA HORTON, ESQUIRE
NITHYA PATHALAM, ESQUIRE
QUINN, EMANUEL, URQUHART & SULLIVAN, LLC
1300 I Street NW
Suite 900
Washington, DC 20005
(617)712-7165

BY: SIMON SANDOVAL-MOSHENBERG, ESQUIRE
MURRAY OSORIO
4103 Chain Bridge Road, Suite 300
Fairfax, VA 22030
(434)218-9376

***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***

APPEARANCES CONTINUED:

On Behalf of the Respondents:

BY: JONATHAN GUYNN, ESQUIRE
BRIDGET O'HICKEY, ESQUIRE
DEPUTY ASSISTANT ATTORNEY GENERAL
CIVIL DIVISION, DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
(202)353-0261

BY: ERNESTO H. MOLINA, JR., ESQUIRE
OFFICE OF IMMIGRATION LITIGATION
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
(202)616-9344

P R O C E E D I N G S

(Court called to order.)

**DEPUTY CLERK:** All rise. The United States District Court for the District of Maryland is now in session. The Honorable Paula Xinis presiding.

**THE COURT:** Good morning, everyone. You all can have a seat.

Mr. Ulander?

**DEPUTY CLERK:** The matter now pending before the Court is Civil Action Number PX25-2780, Kilmar Armando Abrego Garcia v. Secretary Kristi Noem, et al. The matter comes before this Court for a status conference.

Counsel, please identify yourselves for the record.

**MR. ROSSMAN:** Good morning, Your Honor. Andrew Rossman for petitioner.

**MR. SANDOVAL-MOSHENBERG:** Simon Sandoval-Moshenberg for petitioner.

**MR. COOPER:** Jonathan Cooper for petitioner.

**MR. RAND:** Sascha Rand for petitioner.

**MS. PATHALAM:** Nithya Pathalam for petitioner.

**THE COURT:** All right. Anyone else on the petitioner side?

**MS. HORTON:** Olivia Horton.

**MS. RAMOS:** Karina Ramos.

**THE COURT:** Okay. Good morning.

For respondent?

**MR. GUYNN:** Jonathan Guynn for the respondent.

**MS. O'HICKEY:** Bridget O'Hickey for respondents.

**MR. MOLINA:** Ernesto Molina for the respondent.

**THE COURT:** All right. Thank you all.

We're here today -- I called it a status, but we do have a couple of motions that we can resolve even if we can't get to the ultimate question of my ruling on the petition, although I do think that there are some claims which are more pressing than others, and we'll talk about that today.

The order I would like to take this in is respondents' motion to stay all deadlines, at ECF 36, first; and then I want to discuss ECF 27, which is petitioner's motion for additional discovery; and then finally, where do we go from here.

Part of the reason why today is not the evidentiary hearing on the habeas petition is because things have been quite fluid in this case, and I wanted to make sure we handled some of these important preliminary issues, but I have a feeling that much of what we talk about today will intersect with the merits of at least some of the claims.

Okay. With that, the motion to stay all deadlines, do you wish to be heard on that, respondents?

**MS. O'HICKEY:** Your Honor, I don't think we have anything to stay beyond what's in the motion on the particular --

**THE COURT:** And just so I'm clear, you're asking for a stay but you're not agreeing to Mr. Abrego Garcia's release; is that right?

**MS. O'HICKEY:** We're asking to stay in light of the lapse in appropriations, yes, Your Honor, but not agreeing that he should --

**THE COURT:** To any release, even though we don't have any sense of when this -- the appropriations will issue? We don't know when the government will be funded again, but the respondents' position is that we should just press pause on all of this?

**MS. O'HICKEY:** Yes. The stay motion is completely separate from any of the relief he requested in the petition.

**THE COURT:** Okay. All right.

Do you wish to be heard on this issue?

**MR. SANDOVAL-MOSHENBERG:** Your Honor, we oppose the stay motion. I think courts in this district and elsewhere have generally agreed that a habeas corpus petition is certainly an exception to the general policy. Otherwise, we rest on our papers.

Thank you.

**THE COURT:** Okay. All right. And I do find, because you've cited it to me, that the Department of Justice's own contingency plan notes that due to the constitutional prohibitions against the suspension of the writ of habeas

corpus, this litigation, meaning litigation concerning habeas corpus, has continued and is expected to continue in all judicial districts. And that's citing FY 2026 contingency plan at Page 11 dated September 29, 2025.

So I'm going to deny this motion despite the Anti-Deficiency Act claims that the respondents raise.

It is clear through our -- through the act and the interplay between the act and the local rule, that if I order the case to proceed, then you become bound to follow that order and to actually litigate this case. And it is of such importance, not only to Mr. Abrego, but in my view, to the larger -- to some very important fundamental questions, that everyone has been watching so carefully, that I'm just duty bound to continue it.

And so with that, I'm going to deny the motion.

And I will be mindful of the constraints that are imposed on counsel by the shutdown, and I'm not -- you know, that's why today we're going to try to be surgical in what comes next, but it will not be at the expense of the petitioner.

Okay. So ECF 36 is denied.

Let's move on to the discovery request.

Petitioner, do you wish to be heard?

**MR. SANDOVAL-MOSHENBERG:** Briefly, Your Honor. Thank you.

Your Honor, when we were last before this court on a

scheduling hearing, Mr. Ensign represented to this court that, quote, I've spoken to DHS and they believe that they can complete that process for any particular country within two weeks. He then said, they can commit to adjudicating or, you know, resolving the process for any particular country within two weeks.

That was five and a half weeks ago.

We waited two weeks. We received no documentation from the government.

As you'll recall, the government wouldn't even commit to sort of producing a writing at the end of that. We waited one more week, and still nothing. And so --

**THE COURT:** So you're saying no -- no documents whatsoever about the respondents' intended removal of Mr. Abrego to another -- to a third country other than El Salvador, is that what you're saying --

**MR. SANDOVAL-MOSHENBERG:** We received an e-mail to counsel, which has been provided to the Court, designating Eswatini in lieu of Uganda, but there's been no documentation with regards to the procedure, you know, set forth in the memorandum with regards to his claim of fear of removal as to that country.

**THE COURT:** But even no formal -- so there are a number of cases in this district and elsewhere where the documentary evidence is more robust.

**MR. SANDOVAL-MOSHENBERG:** Yes, Your Honor. The notice of removal that has been provided in pretty much every other case in this district has not been provided.

**THE COURT:** Okay.

**MR. SANDOVAL-MOSHENBERG:** In fact, Mr. Abrego Garcia himself has not been notified either of Uganda or Eswatini. It's only been by means of e-mails to counsel contrary to this Court's order in the prior litigation.

But, yeah, our basic concern was that things were happening; we didn't know what they were. That the government has concluded -- perhaps concluded its process. We didn't know what the conclusion of the process was. And so we served what we thought was a very limited and targeted discovery request.

Now, if the government is going to sort of represent that, in fact, no process has taken place, right? Because we got their brief after we -- we --

**THE COURT:** Right.

**MR. SANDOVAL-MOSHENBERG:** -- filed our discovery motion, and the brief was sort of conspicuously absent of any facts whatsoever. It's purely legal and jurisdictional arguments, right?

**THE COURT:** Right.

**MR. SANDOVAL-MOSHENBERG:** So there's no -- one of two things has happened, either a bunch of stuff has happened and none of us know what it is or nothing at all has happened.

If it's the latter, we can proceed to go to an evidentiary hearing immediately -- obviously not today, Your Honor, but we can proceed to go to an evidentiary hearing as quickly as possible. We don't -- we don't -- we can withdraw our discovery request.

But if it's the former, a bunch of stuff has happened and none of us know what it is, we know what's going on so we have a fixed target.

**THE COURT:** So you're saying as to all claims you'd proceed, or as to the *Zadvydas* claims, that those would be ripe but the other ones -- I mean, I'm not sure -- the *Zadvydas* claim is, in my view, more ripe than anything, if it's nothing, right? And even if it's something, I need to know what the something is to know whether its removal is -- it's reasonably likely that removal is imminent.

So to me, like, we can fight all day long about other jurisdictional questions, but I have jurisdiction over the *Zadvydas* question.

**MR. SANDOVAL-MOSHENBERG:** Right. I agree with that, Your Honor.

If, in fact, nothing has happened over the past five and a half weeks since we were last before this Court, what we have is a record where, you know, Eswatini has been designated, we've provided information that the government of Eswatini was never even consulted, much less agreed. We think that is

sufficient to meet our initial burden to show no significant likelihood of removal.

I think the government's main response to that -- I don't know if I'm getting too deep into the merits here, but I think the government's main response to that is you can't bring a *Zadvydas* claim if there's a possibility of removal to Costa Rica.

**THE COURT:** But many, many courts have said a possibility is not a reasonable likelihood, and it's not imminent, and you've offered Costa Rica and you've heard nothing. So I'm not sure how that really moves the needle if you've heard nothing like, okay, Costa Rica it is, right?

**MR. SANDOVAL-MOSHENBERG:** Agreed, Your Honor. They can't use Costa Rica in their refusal to allow him to designate Costa Rica as an alternative country of removal, they can't use that as both a sword and a shield.

**THE COURT:** Especially since Costa Rica has said we will accept Mr. Abrego under conditions that reasonably assure non-refoulement and not -- no persecution.

**MR. SANDOVAL-MOSHENBERG:** That's --

**THE COURT:** Am I right about that?

**MR. SANDOVAL-MOSHENBERG:** Yes, Your Honor, that's exactly right.

I mean, the issue of non-refoulement is really the main issue for Mr. Abrego. Obviously, you know, he's concerned

about what we've shared with him, news articles about the condition of individuals who have been sent to Eswatini, how they are, you know, being held in very bad conditions and in prison.

But the main issue is the fact that the Eswatini government sort of has a full understanding -- their purpose, their mission, as it were, is to just repatriate people to their countries of origin, and that's the main concern here.

**THE COURT:** But we don't know if it's even on the books, because at least according to the public representation from the spokesperson from Eswatini, they haven't been approached about Mr. Abrego? That's how I read --

**MR. SANDOVAL-MOSHENBERG:** That's right, Your Honor. I mean, when we last had an evidentiary hearing before this Court, the witness from DHS made very clear that their practice in these cases is to lock them up first and figure it out later. First with Uganda, now with Eswatini, it really does appear that there are practices to designate first and then figure it out later.

Thank you.

**THE COURT:** Okay. Let's see what the government has to say about where we are with all of this.

Who is up?

**MS. O'HICKEY:** Briefly, just to address the *Zadvydas* point, Your Honor.

**THE COURT:** Do you wish to -- I feel badly, you're kind of hunched over. Do you want to stand at the podium or sit? Either one. It looks like you might be uncomfortable there.

**MS. O'HICKEY:** Okay. Thank you, Your Honor.

**THE COURT:** No problem.

**MS. O'HICKEY:** With respect to the *Zadvydas* point, that's a merits issue somewhat separate from the motion for leave, or -- yeah.

**THE COURT:** Wait a minute. But -- yeah. But if it's ripe, then why are we waiting? Because what I need to know from -- from you, very specifically, is have the respondents reached out to Eswatini, whether it be by formal request, an I-241.

Am I right, Mr. Molina, is that the document?

**MR. MOLINA:** That's correct, yes.

**THE COURT:** Have you issued an I-241 to Eswatini?

**MS. O'HICKEY:** Your Honor, we --

**THE COURT:** No? Is that a no? How can you -- what's -- it's either a yes or no. Have you issued a 241 or haven't you?

**MS. O'HICKEY:** Your Honor, respondents haven't formalized a particular plan for removal yet, and under *Zadvydas*, the government's position is that we have six months of a presumptively reasonable period to --

**THE COURT:** Okay. If I disagree with you on that, I would like just an answer to my question.

The answer is no, you have not issued an I-241 to Eswatini, correct?

**MS. O'HICKEY:** I can't make that representation, Your Honor. The answer is that we don't know.

**THE COURT:** Okay. Well, if you don't know, then the answer is no, there's no evidence you've issued an I-241. Okay. That's number one.

Have you made any contact with the government of Eswatini about Mr. Abrego Garcia's removal to that country? Any contact whatsoever?

This is not a hard question, guys.

**MS. O'HICKEY:** Your Honor, we have been waiting for the conclusion of his immigration proceedings before formalizing any particular plan with respect to a third-country removal.

**THE COURT:** Okay.

**MS. O'HICKEY:** So --

**THE COURT:** No.

**MS. O'HICKEY:** -- we're not prepared to make any representation about discussions we have or had not with the foreign governments.

**THE COURT:** Well, if you're not prepared, then the evidence is none. And we also have an immigration judge who

has found, and you can comment on this, because now it's out there, that removal to either Uganda or Eswatini, and I understand Uganda is off the table, is not imminent. "May" does not signal imminence. And that's critical under *Zadvydas*, is it not?

**MS. O'HICKEY:** *Zadvydas* does provide that we have a six-month presumptively reasonable period to --

**THE COURT:** You're not answering my question. I asked whether the finding of lack of imminence is important under *Zadvydas*.

I hear your position on the presumptive six months. We can talk about that. But I would first just want to get your view on whether the immigration judge's finding of lack of imminence matters under *Zadvydas*.

**MS. O'HICKEY:** Your Honor, I don't think so because of the six-month presumptively reasonable period.

**THE COURT:** Okay. Assume I reject your argument, like many judges have. Many judges have found there's no bright line.

Have you all read Judge Chuang's opinion, September 8th? *Zavvar v. Scott*? Very thorough analysis of this very question as to whether this six months is a bright line or a rebuttable presumption. Okay?

And that there are cases, not just his, in which fewer than six months still triggers release under *Zadvydas*.

A case very similar to this one, petitioner was on -- subject to withholding of removal from his country of origin, he actually had 17 years in the community where Mr. Abrego had six, he was walking his dog, he was arrested because the government had decided they would re-remove him to their country.

There were discovery requests and an evidentiary hearing, and at the end of that, Judge Chuang found that that six months was not a bright line. In fact, the petitioner had rebutted the six-month presumption in part because Judge Chuang found material that the government had 17 years to find a third country and didn't.

So if I follow Judge Chuang, what's the response? Why am I not releasing Mr. Abrego today if I follow Judge Chuang?

**MS. O'HICKEY:** Well, 17 years, Your Honor, is very different than what we have in this case. But, also, the government had been waiting for these immigration proceedings to conclude. Petitioner still has the opportunity to appeal the immigration judge's decision to the BIA. So --

**THE COURT:** And if he does, why should he be detained during that process? I mean, if he does, why should he be detained, under -- under *Zavvar*? Is it just because *Zavvar* had sixteen years or seventeen years in the community, and Abrego only had six, is that the line? And if so, where does that show up in *Zadvydas*?

**MR. GUYNN:** Your Honor, if I may?

**THE COURT:** Sure.

**MR. GUYNN:** The government feels like it's in a damned-if-it-does-damned-if-it-doesn't situation.

The government has been trying to respond and allay the concerns that this Court has articulated about concerns that Mr. Abrego Garcia will be rapidly removed from the United States notwithstanding this habeas case, the ongoing immigration proceedings. And so in an abundance of caution, and in a desire to signal to the Court the United States' good faith and desire to comply with the orders that this Court has entered, the United States has -- has -- is not imminently planning to remove Mr. Abrego Garcia next week or, you know, as soon as this immigration judge's decision was issued.

**THE COURT:** And I appreciate that. You've conceded that since June. So why am I not, under *Zadvydas*, getting very close, if not there, to making the proper findings that he at least should be on the same stringent release conditions as was set by the court in Tennessee?

**MR. GUYNN:** What I would say, Your Honor, is that he is in removal proceedings right now. He -- during those removal proceedings, he has moved to reopen his prior withholding of -- the prior order, final order of removal.

We --

**THE COURT:** And that was denied. That was denied,

right?

**MR. GUYNN:** That's right.

**THE COURT:** And then separately he's in removal proceedings why? I mean, because of the third -- the notice of the third-country removal?

**MR. GUYNN:** Right, Your Honor.

**THE COURT:** Okay. So you're in those proceedings. Why is it so difficult, then, to answer these basic questions about which third country you have, if any, begun those third-country removal proceedings? If you say he's in removal proceedings, what have you done?

**MR. GUYNN:** Your Honor, what I would just say is we have currently selected Eswatini for Mr. Abrego Garcia's removal.

**THE COURT:** When? I mean, when do you plan to actually start that process?

**MR. GUYNN:** What I can say is, if -- if Mr. Abrego Garcia will commit or if he does, in a reasonably expeditious manner, move for a stay of removal from the BIA, we won't remove him during that -- during that time.

**THE COURT:** I don't understand. What are you saying? If he commits to what?

**MR. GUYNN:** To move for a stay of removal from the BIA. If he will do that in a reasonably expeditious matter, we will --

**THE COURT:** Tell me what that is. What are you saying you -- a stay of removal? From where?

**MR. MOLINA:** What's being suggested, Your Honor, is that right now, Mr. Abrego Garcia has an option, after the immigration judge's decision, to take an appeal to the Board of Immigration Appeals where he might seek a stay of removal.

**THE COURT:** Right. Okay.

**MR. MOLINA:** So he may request the board for a stay. That's what my colleague is referring to.

**THE COURT:** Okay. Understood. While his appeal --

**MR. MOLINA:** While his appeal is pending.

**THE COURT:** Okay. And if he does that, then the argument I will hear is, see, he's the one causing the delay, so he should still be detained, which puts Mr. Abrego in an untenable position. Unless there's -- again -- see, I see this as a separate issue than the merits of the habeas or even the merits of the IJ decision. Where should Mr. Abrego be while he awaits these decisions? And that's where *Zadvydas* comes in.

So you ask for Mr. Abrego's concession, but we've read about those cases where, okay, Mr. Abrego concedes -- he goes up on appeal, he concedes, I'll ask for that stay of removal, and then he's told he's causing the delay.

So part -- we're here -- we're here because Mr. Abrego came back and we started with the status quo ante. And he showed up for his appearance in the Baltimore field office and

he was detained. And he was detained presumably because respondents were seeking to remove him to a third country. That sounds like that's still the case, but nothing has been done.

And so what you're asking for, I mean, I'll hear the petitioners as to whether they have any appetite for it, but it seems to me that it's just a trick bag with regard to *Zadvydas*.

**MR. MOLINA:** Well, Your Honor, a few notes on that.

First is that under INA Section 241, which is 1231 of the 8 U.S.C. code, the statute actually does anticipate that certain stays of removal will delay the count of certain clocks running. If, for example, the first 90 days that an alien is detained after getting picked up, after getting a final order, the government is given 90 days --

**THE COURT:** Right.

**MR. MOLINA:** -- to absolutely hold that individual. And the statute then expresses that that time will be tolled or will start again if, for example, the alien gets a stay from a court.

**THE COURT:** Right. So -- and Mr. Abrego had that proceeding back in 2019, right? When he had his first order of removal?

**MR. MOLINA:** Yes, Your Honor.

**THE COURT:** Okay.

**MR. MOLINA:** But under the statute, however -- the

government's position with regard to the statute is that the *Zadvydas* period, that statute really begins not on the date the order is issued, but when the alien is finally in the government's custody. Because, of course, not every alien is in custody at the time an order becomes final, so --

**THE COURT:** But Mr. Abrego was.

**MR. MOLINA:** He was, but he was released, of course, because he had gotten his grant of withholding and was not being processed at that juncture.

**THE COURT:** Right. So we're in the same procedural posture as many cases in which judges have found they disagree with your legal argument. There's a growing chorus of judges who say, no, that that time frame doesn't -- that time period doesn't just keep starting over when a new administration decides that it wishes to pursue a third-country removal, that it either couldn't before or chose not to.

**MR. MOLINA:** The government is aware of those decisions.

**THE COURT:** Right. So say I -- I agree with those judges, right? What's -- what do you have right now to demonstrate that Mr. Abrego's removal to a third country, it's a reasonable likelihood that it's imminent? It seems to me like all the weight of the evidence is going the other direction. It's not imminent, especially because you've told me you want Mr. Abrego here for his criminal trial in January.

**MR. MOLINA:** Right, the government's primary evidence that it's taking action has been the notifications to Mr. Abrego.

**THE COURT:** The what?

**MR. MOLINA:** I'm sorry, the e-mails to Mr. Abrego's counsel have been one form of demonstration that the government is trying to proceed with removal to those countries.

**THE COURT:** Is there any other evidence that I'm missing?

**MR. MOLINA:** I am not aware of any other evidence at this juncture.

**THE COURT:** Well, that's important. I'm not going to go through an empty exercise if you're representing to me, as an officer of the court, that there aren't any other documents or communications, that's it, the e-mail is it, then I can move to the *Zadvydas* question pretty quickly.

But if there is additional information, evidence, I certainly want to consider it.

**MR. MOLINA:** And the government appreciates that, Your Honor.

One other point that I should raise to the Court's attention, just by way of letting the Court know, is that aliens in detention do get automatic custody reviews, and that custody review has not taken place in the case of Mr. Abrego Garcia. That's something done by the agency on its

own accord.

**THE COURT:** Well, it was going to be one of my questions, is, I did see that in other cases, there is that informal review. There's a notice of revocation of release, and then there's an informal -- a notice of an informal interview where the alien is given an opportunity to say "why I should be on release."

**MR. MOLINA:** That is correct.

**THE COURT:** Okay. And there have been some judges in this district who have actually ordered that that take place, when it hasn't for many, many weeks.

**MR. MOLINA:** Sure.

**THE COURT:** Are you saying in Mr. Abrego's case, he is not going to be given that opportunity?

**MR. MOLINA:** I am not suggesting that at all, Your Honor. It's an automatic custody review. It's, by regulation, supposed to take place if the alien is in custody for X amount of time.

**THE COURT:** Okay. And in other cases, it's been -- the notice has gone out very quickly.

Has Mr. Abrego gotten that notice?

**MR. MOLINA:** I have not heard of that notice being delivered to Mr. Abrego. So far as I'm aware, he's not yet in the time period where they would send that. Because I believe that custody review begins at day 180. I could be wrong. But

I think that is 180 days in. It could be 90 days. It has been -- I'll admit, it's been a while since I've looked at the regulation.

**THE COURT:** Okay. Well -- so you have no evidence that he's been given the notice, no evidence that he's had that review? And you say it's because there's a time frame on it, although I seem to recall that's not -- that's not the case, at least in other cases that I've read. And I'm trying to put my hands on the one that I think, Mr. Sandoval-Moshenberg, you may have been involved in. Am I misremembering?

**MR. SANDOVAL-MOSHENBERG:** Your Honor, if I may, the Court and respondents' counsel may be talking across each other.

I think Mr. Molina is referring to the 90-day periodic reviews that obviously haven't taken place yet --

**THE COURT:** Oh, right.

**MR. SANDOVAL-MOSHENBERG:** -- because he hasn't been in custody for 90 days, he's only been in custody for six weeks today. And I think the Court is referring to the informal interview --

**THE COURT:** I am.

**MR. SANDOVAL-MOSHENBERG:** -- pursuant to 8 C.F.R. 241.4 (l)(1) or (l)(2). I can't remember which one it is.

Your Honor, we -- we did waive that informal interview in this case on the advice of criminal defense counsel who didn't

want him answering questions about the substance of the pending criminal charges.

**THE COURT:** That's helpful. We are talking past each other. Sorry about that, Mr. Molina. Now I understand. You and I had a misunderstanding. I thought we were talking about the informal interview, you were talking about the periodic interview.

**MR. MOLINA:** That is correct, Your Honor.

**THE COURT:** And he hasn't had that yet because he hasn't been in this newest period of detention for 90 days.

**MR. MOLINA:** Correct, if 90 days is the regulatory period. Again, I will admit, I haven't looked at the regulation for a while, but it is a period-based review.

**THE COURT:** Okay. Just to sort of button this up, is there any other -- if -- I don't want to order -- unless the plaintiffs say to me, the petitioner says -- and it may be -- it may be advantageous for the Court to do this, too, so that the record is absolutely crystal clear, I could order very limited discovery on this, because many judges have, so that it is just 100 percent you have an opportunity to tell the Court all removal efforts that you have made and detail such removal efforts, documents that include any information or documents related to any efforts taken to effectuate petitioner's removal.

I'm reading from other cases in which other judges have

ordered this discovery.

The benefit to it is, the record is crystal clear.

On the other hand, the representations I've got from officers of the court today is nothing has been done apart from the e-mails.

So Mr. Molina, let me just give you -- your respondents one more opportunity. If we missed anything, let me know, and then I'm going to turn to the petitioner as to whether they are going to withdraw this discovery question and we can just talk *Zadvydas*, based on the record now.

Mr. Molina?

**MR. MOLINA:** I'm sorry, what is the question, Your Honor?

**THE COURT:** Is there any other evidence of efforts to remove Mr. Abrego to a third country? Any communications? Any formal or informal notices? Any requests for travel documents?

**MR. MOLINA:** Your Honor, at this juncture, I'm unable to say that there is. However, we're not conceding that the government has not taken those efforts that that evidence is not in existence.

**THE COURT:** I don't know what that is. That's not -- that's not -- I'm sorry. Please.

That -- that's just not a tenable position. I mean, either you have done it or you haven't. And if you're not in a position to tell me, we've been here before and you know what

my position is, if I ask you a direct question and you can't give me a direct answer, then the evidence is there is none.

And I understand -- you know, you've been here a while, Mr. Molina. You know where I come from on that. And that's -- that is -- that is how court works.

But with that in mind, if that's your final answer, let me turn to the petitioners and find out what their position is on the question of the need for discovery.

**MR. SANDOVAL-MOSHENBERG:** Your Honor, our position is that the matter is fully briefed and it is apparent that there exists no evidence in the universe other than what's been filed on the ECF docket. Our position is that we can proceed to decide the claim.

**THE COURT:** Okay. Well, and if I say to you, Mr. Sandoval-Moshenberg, the only claim that I'm really prepared to address in the short term would be the *Zadvydas* claim, I'm not yet prepared to dive into the merits on the other claims for lots of reasons, including that -- you know, I'm still digesting what's happening, and I want you to explain it a little bit more what's happening with the immigration piece.

**MR. SANDOVAL-MOSHENBERG:** That makes a lot of sense, Your Honor.

The -- representations of counsel for the petitioner -- for the respondents has been that the evidence is now complete

on the *Zadvydas* claim, whereas with regards to the removal-related claims, you know, since no procedure has taken place yet, there sort of still is an absence of evidence. Whereas with regards to the detention related claims, the evidence is now fully in the record.

I do -- I do want to add one more log to the fire, though, which is Count Five, regards to detention. As we've provided to the Court, he's got a grant of parole that expires in 2026.

**THE COURT:** I was going to ask about that.

Can you explain that to me? Because, again, I'm the -- I'm the last one in the room who understands immigration, so when you say he's been paroled, what's the significance of that?

**MR. SANDOVAL-MOSHENBERG:** Yeah. We provided that to the Court. It's at -- it's in the record.

He's got valid parole through June 4th, 2026.

**THE COURT:** Right.

**MR. SANDOVAL-MOSHENBERG:** Candidly, we didn't lean too hard on that because the government can always revoke that, but they haven't as we stand here today. So, therefore, he's lawfully present in the United States pursuant to granted parole.

**THE COURT:** And customarily, if a person is paroled to the United States, and there's a parole period, what customarily happens with that person? They are on release

because there is -- I mean, what does it do, for example, to the order of removal from 2019 to be removed, albeit mistakenly, and then paroled back with this parole being open for a year, what does it do legally to the removal order?

**MR. SANDOVAL-MOSHENBERG:** Your Honor, parole is a form of lawful presence, right? So were this parole allowed to sort of run its course, then, you know, he's lawfully present in the United States and allowed to remain in the United States through the 4th of June of next year, and then they could remove him as of the 5th of June of next year.

**THE COURT:** But they have not.

**MR. SANDOVAL-MOSHENBERG:** They have not. And, I mean, I'm candidly surprised, coming into court today, that it already hasn't been revoked, but it hasn't, and here we are.

**THE COURT:** And at a minimum, you asked me to consider that as part of the *Zadvydas* claim but also as an independent ground for habeas relief in terms of what? Like, what are you asking me for on that?

**MR. SANDOVAL-MOSHENBERG:** Your Honor, if we're going to sort of decide the detention-related claims, that's a second reason why we contend that he's not presently subject to detention, because he's lawfully present in the United States pursuant to his grant of parole.

**THE COURT:** Okay. All right. Now --

**MR. SANDOVAL-MOSHENBERG:** With regards to the

*Zadvydas* claim, Your Honor, *Zadvydas* does create a six-month presumption, but sort of reading further up the page, taking a step back, the constitutional principle that *Zadvydas* sets forth is that the only permissible purpose for immigration detention after a removal order is to carry out that removal order, right? It can't be used as a punitive measure. It certainly can't be used as a -- you know, back-end means to hold someone in custody pending a criminal trial when a criminal judge has already ordered their release. It's to effectuate the removal.

If the government's goal is to effectuate the removal, he would be in Costa Rica right now as we speak. Right? So it's very clear --

**THE COURT:** Have you gotten any information as to why --

**MR. SANDOVAL-MOSHENBERG:** No, Your Honor.

**THE COURT:** -- the preferred country, which has already gone on record as saying they will take Mr. Abrego, has been denied? Why can't he just go there?

**MR. SANDOVAL-MOSHENBERG:** He can't go there because he's currently in custody.

**THE COURT:** I understand that. But I'm saying -- thank you, Mr. Sandoval-Moshenberg, for explaining the obvious to me.

No, I mean, what, if any, communications have you had with

DHS about if you really want to remove him, let's get this done? Let him go to Costa Rica?

**MR. SANDOVAL-MOSHENBERG:** We've received no communications, and I -- I can't even rack my brain to think of a constitutionally permissible reason why they would be fighting over whether to send him across the Atlantic Ocean, when they can, you know, this afternoon send him to Costa Rica.

**THE COURT:** Okay.

**MR. SANDOVAL-MOSHENBERG:** Thank you, Your Honor.

**THE COURT:** Okay. It looks like we're -- if the discovery request has been withdrawn, then there really isn't anything on -- you know, that's stopping me from getting to the merits of at least the *Zadvydas* claim.

**MR. MOLINA:** Well, Your Honor, I would urge the Court that, of course, you know, this was just a status conference, not the evidentiary hearing. And while the government did not bring any evidence of the efforts to remove Mr. Abrego, we can certainly make efforts to produce what there is so that the Court isn't deciding on an empty record at this juncture.

**THE COURT:** Well, but you've told me there isn't anything else.

**MR. MOLINA:** No, Your Honor, what I told you was that I'm unaware of anything else.

**THE COURT:** Okay. Do you want to take a break, make some phone calls, let me know what there is? I'm just not -- I

don't want to waste your time or the petitioner's time. If there's a need for an evidentiary hearing, I'll certainly give it to you, but there's been -- you know, as part of what was a little bit frustrating about the response to the discovery request is that we don't even get into some of these jurisdictional issues if you haven't made the call to the third country to even find out whether this third country is willing to accept Mr. Abrego.

You see what I'm saying?

Like, it's just a lot of these issues of be mindful of not interfering with diplomatic relations, those sort of prognostications don't come up if there is no diplomatic interaction. And right now, I don't have anything.

So I'm happy to give you a break to make sure you've made your record and then we can decide where we go.

Would you like to do that?

**MR. MOLINA:** May I consult?

**THE COURT:** Sure.

**MR. MOLINA:** Let me consult.

Your Honor, if the Court would afford us a small break, we'll make efforts to find out what we can and provide the Court with further information.

**THE COURT:** Okay. How much time do you need?

**MR. MOLINA:** Would 30 minutes be inconvenient, Your Honor?

**THE COURT:** Yeah, we can come back in 30 minutes.

**MR. MOLINA:** Great.

**THE COURT:** And at that point, I will consider the record closed on this subject, but sure, yeah.

Any issue?

**MR. SANDOVAL-MOSHENBERG:** No, Your Honor, we're amenable to 30 minutes.

**THE COURT:** All right. So let's take a 30-minute break.

When you're ready, Mr. Molina, just let Mr. Ulander know and I'll come back out.

**MR. MOLINA:** Thank you very much, Your Honor.

**THE COURT:** Thank you.

**DEPUTY CLERK:** All rise. This Honorable Court now stands in recess.

(Recess taken from 10:42 a.m. to 11:17 a.m.)

(Attorney Jonathan Guynn did not return to the courtroom.)

**DEPUTY CLERK:** All rise. This Honorable Court now resumes in session.

**THE COURT:** All right. Everyone, you can have a seat.

Okay. Respondents, where are we?

**MR. MOLINA:** Your Honor, during the break, I did reach out to my clients and try to find evidence of ongoing removal efforts. I was unable to reach anyone that could

provide an answer. Of course, I do not know whether that is because of the government's furlough or other reasons. But in any event, 30 minutes was not enough for us to be able to do that.

In light of that, you know, I would just urge the Court that -- when the Court began today's hearing, you know, the Court outlined three things that would be the topic of today. The first would be dealing with the stay pending the furlough, which, of course, is decided; the second was going to be the request for discovery; and the third was that the -- we would start to plan next steps in the case. Those were the three points outlined by the Court.

**THE COURT:** Right. But your arguments on discovery were very substantive. They were telling me why I had no jurisdiction, and clearly I do with *Zadvydas*. And they were responsive to this very question in terms of petitioners don't need it, they don't need this discovery because there's no real issue looming.

I mean, it was like the respondents have really studiously avoided *Zadvydas*, so you've got to imagine that I'm going to ask some really basic questions today, like what have you done?

And it just is remarkable to me that you're saying you can't find a soul who can give you, in this case, any additional information. That suggests there is none.

And this is just really basic, that's why I'm not sure

what the heartburn is about just answering the basic question today, what's been done?

**MR. MOLINA:** And, Your Honor, the government is trying to -- to obtain that answer, as we've said.

**THE COURT:** But I guess the problem I'm having is, you had to have known that we were going to talk about this today, because it's directly relevant to the discovery request. It's like you can't come prepared unless you know the answer. Because -- because if you -- if the answer is nothing, then they don't need any discovery. If the answer is we have done things, then you tell me why -- I mean, you've raised in your papers, for example, there will be privilege questions, and there will be attorney-client privilege, and there will be diplomatic privileges. How can you know that if you don't know whether there's any information to be had?

**MR. MOLINA:** I think that's part of the point the government was trying to make, Your Honor. You see, we appreciate, as part of the discovery motion, that these issues were being discussed and were pertinent. But remember, that all goes to the discovery that will go to evidence to be put forward in an evidentiary hearing in the future.

That was not -- that was not an insistence of the Court that the government present the evidence here today.

**THE COURT:** No, no, no, but it was your response as to why the petitioner should not get any discovery.

**MR. MOLINA:** Certainly, Your Honor.

**THE COURT:** Okay.

**MR. MOLINA:** But a consequence --

**THE COURT:** If now the petitioner is saying, listen, if they don't have anything, we don't need any discovery, we don't need an evidentiary hearing, the record is clear, are you saying you need one? I mean, this is a real sort of topsyturvy; it's like sort of inside-out day. If you say you need it --

**MR. MOLINA:** I agree, Your Honor, but I'll let my colleague speak up for a moment.

**MS. O'HICKEY:** Your Honor, the government wasn't prepared to put on any evidence today because the evidentiary hearing had been continued.

We are aware that efforts are ongoing, but 30 minutes was not enough to be able to discuss with our colleagues to determine --

**THE COURT:** I understand that. I understand.

But, Ms. O'Hickey, you come to court prepared, and the only way you could answer questions about the relevance and the probity of discovery in a habeas case where the petitioner is saying we have good cause is to say, no, you don't. And part of your argument was, you don't have good cause because there are privilege issues, and you don't know what -- what the underlying information is.

I mean, I'm asking you really basic questions. This isn't -- this isn't like, what have you said?

Have you had any conversations? You're -- you're the lawyer for the clients. I'm finding it very hard to believe that there's some magical information that you're going to get if I give you another 30 minutes or if we hold a hearing.

I mean, petitioner, am I hearing you right, that you're saying right now, forget about the hearing, Judge, just decide it the way it is, we don't need to come back, you've got *Zadvydas*, go ahead?

**MR. SANDOVAL-MOSHENBERG:** Yes, Your Honor, if -- our contention is that the matter is fully briefed and ripe for decision.

**THE COURT:** Okay. And they have the burden. The petitioner has the burden, is the way that I see it. But --

**MS. O'HICKEY:** If I may, Your Honor.

The government's position is that we have the -- the right to have an opportunity to present evidence, if the Court is going to decide that issue on the merits. And we have not -- because the evidentiary hearing was continued --

**THE COURT:** So tell me a little bit about who you called. Because the last time I had an evidentiary hearing, I had a witness who knew nothing, who you intentionally did not prepare to answer the questions that I had put in an order in advance, he had no knowledge of Abrego's case. And I've

written on it, so you know my position on that.

So who would you call, or what would we do at this evidentiary hearing, exactly?

**MS. O'HICKEY:** I would have to confer with my client, Your Honor. We haven't identified what witness we would call, but we would request an opportunity to present evidence to the Court, if the Court wishes to decide that issue on the merits.

**MR. MOLINA:** Your Honor, if I may add to that.

In this case, this is a case where the Court might hear testimony from either the field office director, from a deputy in the ERO, the local removal office, the group that's making the actual contact efforts to try to reach out and find a location for Mr. Abrego Garcia.

**THE COURT:** Find a location, what does that mean?

**MR. MOLINA:** Contact a country, the country of removal, and --

**THE COURT:** But you said it's Eswatini.

**MR. MOLINA:** Right now, the current selection, or the current country named, is Eswatini, Your Honor.

**THE COURT:** Okay.

**MR. MOLINA:** But things happen, and if Eswatini doesn't move fast enough, for example, the government may need to try to move on to another country.

**THE COURT:** And how about Costa Rica?

**MR. MOLINA:** Well, first of all, Your Honor, Costa

Rica is on Mr. Abrego Garcia's countries -- list of countries that he fears being sent to.

**THE COURT:** And he explained why he no longer fears it because Costa Rica has said they will not refoul him and they will give him status. That seems to be, again, pretty basic. Like, no one would want to go to a third country if they are just going to get removed expeditiously to the very country for which they have protection. So it makes sense, I think it's that -- that you fear it until you get the reassurance that you're not going to be refouled to your country of origin, right?

So maybe at first he did, but now he's explained why he doesn't.

So with that, why isn't -- have there been any efforts to button that up and have Mr. Abrego go to Costa Rica?

**MR. MOLINA:** We have not been informed of any effort on that regard, Your Honor.

**THE COURT:** And your proposed evidentiary hearing would cover that?

**MR. MOLINA:** Well, that's what -- that's what an individual from the ICE ERO might be able to discuss.

Alternatively, if the Court prefers, the government -- it can set a deadline for the government to present whatever, you know, documentary evidence it wants to put up in response to the Court's question in lieu of an evidentiary hearing.

**THE COURT:** Like, that it has as of today, you just need the time to get it?

**MR. MOLINA:** We need the time to get it, Your Honor.

**THE COURT:** Petitioner?

**MR. ROSSMAN:** One moment, Your Honor.

**MR. SANDOVAL-MOSHENBERG:** Court's indulgence's, Your Honor.

**THE COURT:** Sure.

**MR. SANDOVAL-MOSHENBERG:** Your Honor, if the government is representing that there's more evidence to be had, you know, in fairness, today was not marked as an evidentiary hearing, we would request that the Court put a very, very tight leash on it. We think 48 hours is appropriate for them to file all the evidence that they have got. They can file under seal what needs to be filed under seal.

And we're able to return to court on Friday, if the Court is available, for a follow-up hearing.

**THE COURT:** That's -- that's the timeline I was thinking of as well, is 48 hours, with a hearing on Friday, to give you the opportunity to bring -- and I will -- I'll draft a short order, which basically says all documents and communications relevant to this question. And I'm putting an oversimplification on it. I'll put some meat on the bones of that.

And then an evidentiary hearing where the government or

the respondent is to call witnesses with knowledge who bind the respondent. So it's going to look very similar to the last one.

**MR. MOLINA:** Yes, Your Honor.

**THE COURT:** And that you give petitioners notice, 24-hours' notice of who that person is going to be.

And I -- let me make sure, now that I've said it, that we actually have Friday, but I'm pretty sure that we do.

**DEPUTY CLERK:** Nothing is on our public calendar.

**THE COURT:** Nothing? All right.

Hold on one second.

**DEPUTY CLERK:** Tasha is also checking.

**THE COURT:** Okay. So I can't promise you word for word what the final order will say. We'll get it out today. But it will be something to the effect of that the government, by Wednesday, shall produce to petitioner any information or documents, any evidence related to any efforts taken to remove petitioner to a third country, including what steps had been taken since the filing of the petition, including the dates, the times of such steps, and any information that may bear on whether there's a significant likelihood of petitioner's removal to Eswatini in the reasonable future. So -- reasonably foreseeable future, so it's going to be geared towards *Zadvydas*, the *Zadvydas* question.

And you've only given notice -- I mean, you gave notice of

Uganda. Now Uganda has changed, now it's Eswatini. Eswatini is the only country on -- on the table right now, am I right about that, Mr. Molina?

**MR. MOLINA:** That is my understanding, Your Honor.

**THE COURT:** Okay. And I'm not going to make the petitioner amend simply because it's a moving target, okay? But we're going to have this hearing on Eswatini, and we'll see what we have.

And so then the order will also be to have a person or persons with knowledge who will bind the respondent who can testify about efforts regarding Mr. Abrego, okay?

**MR. MOLINA:** Absolutely, Your Honor.

**THE COURT:** Okay. Anything from the petitioners that you request?

**MR. SANDOVAL-MOSHENBERG:** Well, just, Your Honor, if we could request that the deadline be 5:00 p.m. just so that we're not up waiting past midnight to receive the documents.

Thank you, Your Honor.

**THE COURT:** Oh, 5:00 p.m. on Wednesday?

**MR. SANDOVAL-MOSHENBERG:** Yes, Your Honor.

**THE COURT:** Yes. And 24 hours in advance of the hearing for the witness or witnesses.

**MR. SANDOVAL-MOSHENBERG:** Thank you, Your Honor.

**THE COURT:** Okay. All right. Will do.

Anything else?

**MR. ROSSMAN:** Just the time for Friday, Your Honor.

**THE COURT:** That will help. Can we say 11:00 a.m.?

**MR. MOLINA:** Yes, Your Honor.

**THE COURT:** All right. 11:00 a.m. it is.

Anything else?

**MR. SANDOVAL-MOSHENBERG:** Nothing for petitioner, Your Honor. Thank you.

**MR. MOLINA:** Nothing for the defendants, Your Honor.

**THE COURT:** Okay. See you all on Friday. Thank you all.

**DEPUTY CLERK:** All rise. This Honorable Court now stands adjourned.

(Proceedings were concluded at 11:32 a.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Paula J. Leeper, Federal Official Court Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 8th day of October 2025.

*/S/ Paula J. Leeper*

_____________________

Paula J. Leeper, RPR, CRR
Federal Official Reporter

**DEPUTY CLERK: [7]** 3/3 3/9 32/14 32/18 40/9 40/12 42/11
**MR. COOPER: [1]** 3/18
**MR. GUYNN: [9]** 4/2 16/1 16/3 16/20 17/2 17/6 17/12 17/17 17/23
**MR. MOLINA: [49]**
**MR. RAND: [1]** 3/19
**MR. ROSSMAN: [3]** 3/14 39/5 42/1
**MR. SANDOVAL-MOSHENBERG: [36]** 3/16 5/16 6/23 7/17 8/1 8/5 8/18 8/23 9/19 10/13 10/20 10/22 11/13 23/11 23/17 23/22 26/9 26/22 27/14 27/18 28/5 28/12 28/19 28/25 29/16 29/20 30/3 30/9 32/6 36/11 39/6 39/9 41/15 41/20 41/23 42/6
**MS. HORTON: [1]** 3/23
**MS. O'HICKEY: [19]** 4/3 4/23 5/4 5/12 11/24 12/5 12/7 12/18 12/22 13/5 13/14 13/19 13/21 14/6 14/15 15/15 35/12 36/16 37/4
**MS. PATHALAM: [1]** 3/20
**MS. RAMOS: [1]** 3/24
**THE COURT: [114]**

**/**

**/s [1]** 43/15

**0**

**0261 [1]** 2/6

**1**

**100 percent [1]** 24/20
**10016 [1]** 1/15
**10:11 [1]** 1/10
**10:42 [1]** 32/16
**11 [1]** 6/4
**11:00 a.m [2]** 42/2 42/4
**11:17 [1]** 32/16
**11:32 [1]** 42/13
**1231 [1]** 19/9
**1300 [1]** 1/19
**17 [3]** 15/3 15/11 15/15
**180 [2]** 22/25 23/1

**2**

**20005 [1]** 1/20
**20044 [1]** 2/9
**2019 [2]** 19/21 28/2
**202 [2]** 2/6 2/9
**2025 [3]** 1/10 6/4 43/12
**2026 [3]** 6/3 27/8 27/16
**20530 [1]** 2/5
**212 [1]** 1/16
**218-9376 [1]** 1/23
**22030 [1]** 1/23
**24 [1]** 41/21
**24-hours' [1]** 40/6
**241 [6]** 12/14 12/17 12/20 13/3 13/8 19/9
**241.4 [1]** 23/23
**27 [1]** 4/13
**2780 [1]** 3/10
**28 [1]** 43/6
**29 [1]** 6/4
**295 [1]** 1/15

**3**

**30 [6]** 31/24 32/1 32/7 33/3 35/15 36/6
**30-minute [1]** 32/8
**300 [1]** 1/22
**353-0261 [1]** 2/6
**36 [2]** 4/12 6/20

**4**

**4103 [1]** 1/22
**434 [1]** 1/23
**48 [2]** 39/13 39/19
**4th [2]** 27/16 28/9

**5**

**5:00 p.m [2]** 41/16 41/19
**5th [1]** 1/15
**5th of [1]** 28/10

**6**

**616-9344 [1]** 2/9
**617 [1]** 1/20

**7**

**7000 [1]** 1/16
**712-7165 [1]** 1/20
**7165 [1]** 1/20
**753 [1]** 43/6

**8**

**849-7000 [1]** 1/16
**878 [1]** 2/8
**8:25-cv-02780-PX [1]** 1/5
**8th [2]** 14/20 43/12

**9**

**90 [6]** 19/12 19/14 23/1 23/18 24/10 24/11
**90-day [1]** 23/14
**900 [1]** 1/19
**9344 [1]** 2/9
**9376 [1]** 1/23
**950 [1]** 2/5

**A**

**a.m [6]** 1/10 32/16 32/16 42/2 42/4 42/13
**able [4]** 33/3 35/16 38/21 39/16
**above [1]** 43/9
**above-entitled [1]** 43/9
**ABREGO [37]** 1/3 3/10 5/2 6/11 7/15 8/5 10/18 10/25 11/12 13/11 15/3 15/14 15/23 16/7 16/13 17/13 17/17 18/4 18/14 18/17 18/20 18/23 19/20 20/6 20/25 21/3 21/25 22/21 22/23 25/15 29/18 30/17 31/8 37/13 38/1 38/15 41/11
**Abrego's [5]** 18/19 20/21 21/5 22/13 36/25
**absence [1]** 27/3
**absent [1]** 8/19
**absolutely [3]** 19/16 24/18 41/12
**abundance [1]** 16/9
**accept [2]** 10/18 31/8
**accord [1]** 22/1
**according [1]** 11/10
**across [2]** 23/12 30/6
**act [3]** 6/6 6/7 6/8
**action [2]** 3/10 21/2
**actual [1]** 37/12
**actually [6]** 6/10 15/3 17/16 19/10 22/10 40/8
**add [2]** 27/6 37/8
**additional [3]** 4/13 21/17 33/24
**address [2]** 11/24 26/16
**adjourned [1]** 42/12
**adjudicating [1]** 7/4
**administration [1]** 20/14
**admit [2]** 23/2 24/12
**advance [2]** 36/25 41/21
**advantageous [1]** 24/17
**advice [1]** 23/25
**afford [1]** 31/20
**after [5]** 8/16 18/4 19/13 19/13 29/5
**afternoon [1]** 30/7
**again [6]** 5/9 18/15 19/18 24/12 27/10 38/5
**against [1]** 5/25
**agency [1]** 21/25
**ago [1]** 7/7
**agree [3]** 9/19 20/19 35/10
**agreed [3]** 5/18 9/25 10/13
**agreeing [2]** 5/2 5/5
**ahead [1]** 36/10
**AIDED [1]** 1/25
**al [2]** 1/6 3/11
**albeit [1]** 28/2
**alien [6]** 19/12 19/18 20/3 20/4 22/6 22/17
**aliens [1]** 21/23
**all [34]** 3/3 3/6 3/21 4/5 4/5 4/12 4/21 5/10 5/14 5/22 6/2 8/25 9/9 9/16 11/22 14/20 20/23 22/15 24/21 28/24 32/8 32/14 32/18 32/20 34/20 37/25 39/14 39/21 40/10 41/24 42/4 42/9 42/10 42/11
**allay [1]** 16/5
**allow [1]** 10/14
**allowed [2]** 28/6 28/8
**already [3]** 28/14 29/9 29/18
**also [5]** 13/25 15/16 28/16 40/12 41/9
**alternative [1]** 10/15
**Alternatively [1]** 38/22
**although [2]** 4/8 23/7
**always [1]** 27/19
**am [10]** 10/21 12/15 15/13 16/16 21/10 22/15 23/10 23/21 36/7 41/2
**amenable [1]** 32/7
**amend [1]** 41/6
**amount [1]** 22/17
**analysis [1]** 14/21
**ANDREW [2]** 1/13 3/14
**another [3]** 7/15 36/6 37/23
**answer [14]** 13/2 13/3 13/6 13/8 17/8 26/2 26/6 33/1 34/4 34/8 34/9 34/10 35/20 36/24
**answering [3]** 14/8 24/1 34/1
**ante [1]** 18/24
**Anti [1]** 6/6
**Anti-Deficiency [1]** 6/6
**anticipate [1]** 19/10
**anyone [2]** 3/21 32/25
**anything [11]** 4/24 9/12 25/7 30/12 30/21 30/23 31/13 35/5 41/13 41/25 42/5
**apart [1]** 25/4
**apparent [1]** 26/10
**appeal [5]** 15/18 18/5 18/10 18/11 18/21
**Appeals [1]** 18/6
**appear [1]** 11/18
**appearance [1]** 18/25
**APPEARANCES [2]** 1/11 2/1
**appetite [1]** 19/6
**appreciate [2]** 16/15 34/18
**appreciates [1]** 21/19
**approached [1]** 11/12
**appropriate [1]** 39/13
**appropriations [2]** 5/5 5/8
**aren't [1]** 21/14
**argument [4]** 14/17 18/13 20/12 35/23
**arguments [2]** 8/21 33/13
**ARMANDO [2]** 1/3 3/10
**arrested [1]** 15/4
**articles [1]** 11/1
**articulated [1]** 16/6
**ask [5]** 18/19 18/21 26/1 27/9 33/21
**asked [2]** 14/9 28/15
**asking [5]** 5/1 5/4 19/5 28/18 36/1
**ASSISTANT [1]** 2/4
**Assume [1]** 14/17
**assure [1]** 10/18
**Atlantic [1]** 30/6
**attention [1]** 21/22
**attorney [3]** 2/4 32/17 34/13
**attorney-client [1]** 34/13
**automatic [2]** 21/23 22/16
**available [1]** 39/17
**Avenue [2]** 1/15 2/5
**avoided [1]** 33/20
**awaits [1]** 18/18
**aware [4]** 20/17 21/10 22/23 35/15

**B**

**back [8]** 18/24 19/21 28/3 29/3 29/7 32/1 32/11 36/9
**back-end [1]** 29/7
**bad [1]** 11/3
**badly [1]** 12/1
**bag [1]** 19/7
**Baltimore [1]** 18/25
**based [2]** 24/13 25/10
**basic [7]** 8/9 17/8 33/21 33/25 34/1 36/1 38/6
**basically [1]** 39/21
**bear [1]** 40/20
**because [37]** 4/16 5/22 8/15 11/10 12/11 14/1 14/15 15/4 15/10 15/22 17/4 18/23 19/1 20/4 20/8 20/24 22/24 23/6 23/17 24/9 24/19 27/10 27/19 28/1 28/22 29/20 33/2 33/17 34/7 34/9 34/9 35/13 35/23 36/20 36/22 38/4 41/6
**become [1]** 6/9
**becomes [1]** 20/5
**before [9]** 1/9 3/9 3/12 6/25 9/22 11/14 13/15 20/16 25/25
**began [1]** 33/6
**begins [2]** 20/2 22/25
**begun [1]** 17/9
**Behalf [2]** 1/12 2/2
**being [7]** 11/3 18/3 20/9 22/22 28/3 34/19 38/2
**believe [3]** 7/2 22/24 36/4
**Ben [1]** 2/8
**benefit [1]** 25/2
**between [1]** 6/8
**beyond [1]** 4/24
**BIA [3]** 15/19 17/19 17/24
**bind [2]** 40/1 41/10
**bit [3]** 26/20 31/4 36/21
**board [2]** 18/5 18/8
**bones [1]** 39/23
**books [1]** 11/10
**both [1]** 10/16
**bound [2]** 6/9 6/14
**Box [1]** 2/8
**brain [1]** 30/4
**break [5]** 30/24 31/14 31/20 32/9 32/23
**Bridge [1]** 1/22
**BRIDGET [2]** 2/3 4/3
**brief [2]** 8/16 8/19
**briefed [2]** 26/10 36/12
**Briefly [2]** 6/23 11/24
**bright [3]** 14/19 14/22 15/9
**bring [3]** 10/5 30/17 39/20
**bunch [2]** 8/24 9/6
**burden [3]** 10/1 36/14 36/15
**button [2]** 24/14 38/15

**C**

**C.F.R [1]** 23/22
**calendar [1]** 40/9
**call [4]** 31/6 37/2 37/5 40/1
**called [3]** 3/2 4/6 36/22
**calls [1]** 30/25
**came [1]** 18/24
**can't [15]** 4/7 10/5 10/14 10/15 13/5 23/23 26/1 29/6 29/7 29/19 29/20 30/4 33/23 34/8 40/13
**candidly [2]** 27/18 28/13
**carefully [1]** 6/13
**carry [1]** 29/5
**case [19]** 1/5 4/17 6/9 6/10 8/3 15/1 15/16 16/8 19/3 21/24 22/13 23/7 23/25 33/11 33/23 35/21 36/25 37/9 37/9
**cases [9]** 7/24 11/16 14/24 18/20 20/11 22/3 22/19 23/8 24/25
**cause [2]** 35/22 35/23
**causing [2]** 18/13 18/22
**caution [1]** 16/9
**certain [2]** 19/11 19/11
**certainly [6]** 5/19 21/18 29/7 30/18 31/2 35/1
**CERTIFICATE [1]** 42/14
**certify [1]** 43/6
**Chain [1]** 1/22
**changed [1]** 41/1
**charges [1]** 24/2
**checking [1]** 40/12
**chorus [1]** 20/12
**chose [1]** 20/16
**Chuang [4]** 15/8 15/10 15/13 15/14
**Chuang's [1]** 14/20
**cited [1]** 5/23
**citing [1]** 6/3
**Civil [3]** 1/5 2/4 3/10
**claim [10]** 7/21 9/12 10/6 26/13 26/15 26/17 27/1 28/16 29/1 30/13
**claims [9]** 4/9 4/20 6/6 9/9 9/10 26/18 27/2 27/4 28/20
**clear [7]** 5/1 6/7 11/15 24/18 25/2 29/13 35/6
**clearly [1]** 33/15
**client [2]** 34/13 37/4
**clients [2]** 32/24 36/4
**clocks [1]** 19/11
**close [1]** 16/17
**closed [1]** 32/4
**code [1]** 19/10
**colleague [2]** 18/9 35/11
**colleagues [1]** 35/16
**come [7]** 26/4 31/12 32/1 32/11 34/8 35/19 36/9
**comes [3]** 3/11 6/18 18/18
**coming [1]** 28/13
**comment [1]** 14/1
**commit [3]** 7/4 7/10 17/18
**commits [1]** 17/22
**communications [5]** 21/15 25/15 29/25 30/4 39/22
**community [2]** 15/3 15/23
**complete [2]** 7/3 26/25
**completely [1]** 5/12

## C

**comply [1]** 16/11
**COMPUTER [1]** 1/25
**COMPUTER-AIDED [1]** 1/25
**conceded [1]** 16/15
**concedes [2]** 18/20 18/21
**conceding [1]** 25/18
**concern [2]** 8/9 11/8
**concerned [1]** 10/25
**concerning [1]** 6/1
**concerns [2]** 16/6 16/6
**concession [1]** 18/19
**conclude [1]** 15/18
**concluded [3]** 8/11 8/11 42/13
**conclusion [2]** 8/12 13/15
**condition [1]** 11/2
**conditions [3]** 10/18 11/3 16/18
**confer [1]** 37/4
**conference [4]** 1/9 3/12 30/15 43/10
**conformance [1]** 43/10
**consequence [1]** 35/3
**consider [3]** 21/18 28/16 32/3
**conspicuously [1]** 8/19
**constitutional [2]** 5/24 29/3
**constitutionally [1]** 30/5
**constraints [1]** 6/16
**consult [2]** 31/17 31/19
**consulted [1]** 9/25
**contact [4]** 13/10 13/11 37/12 37/15
**contend [1]** 28/21
**contention [1]** 36/12
**contingency [2]** 5/24 6/3
**continue [2]** 6/2 6/14
**continued [4]** 2/1 6/2 35/14 36/20
**contrary [1]** 8/7
**conversations [1]** 36/3
**COOPER [2]** 1/17 3/18
**corpus [3]** 5/18 6/1 6/2
**correct [6]** 12/16 13/4 22/8 24/8 24/11 43/7
**Costa [13]** 10/6 10/10 10/12 10/14 10/15 10/17 29/12 30/2 30/7 37/24 37/25 38/4 38/15
**couldn't [1]** 20/16
**counsel [8]** 3/13 6/17 7/18 8/7 21/6 23/12 23/25 26/24
**count [2]** 19/11 27/7
**countries [4]** 11/8 21/7 38/1 38/1
**country [29]** 7/3 7/5 7/15 7/22 10/15 13/11 13/16 15/2 15/6 15/12 17/5 17/9 17/10 19/2 20/15 20/21 25/15 29/17 31/7 31/7 37/15 37/15 37/19 37/23 38/6 38/8 38/11 40/18 41/2
**couple [1]** 4/7
**course [6]** 20/4 20/7 28/7 30/15 33/1 33/9
**court [50]**
**Court that [1]** 33/6
**Court's [4]** 8/8 21/21 38/25 39/6
**courtroom [1]** 32/17
**courts [2]** 5/17 10/8
**cover [1]** 38/19
**create [1]** 29/1
**criminal [5]** 20/25 23/25 24/2 29/8 29/9
**critical [1]** 14/4
**CRR [1]** 43/16
**crystal [2]** 24/18 25/2
**current [2]** 37/18 37/19
**currently [2]** 17/13 29/21
**custody [11]** 20/4 20/5 21/23 21/24 22/16 22/17 22/25 23/18 23/18 29/8 29/21
**customarily [2]** 27/23 27/25
**cv [1]** 1/5

## D

**damned [2]** 16/4 16/4
**damned-if-it-does-damned-if-it-doesn't [1]** 16/4
**date [1]** 20/2
**dated [2]** 6/4 43/12
**dates [1]** 40/19
**day [5]** 9/16 22/25 23/14 35/8 43/12
**days [7]** 19/12 19/14 23/1 23/1 23/18 24/10 24/11
**DC [3]** 1/20 2/5 2/9
**deadline [2]** 38/23 41/16
**deadlines [2]** 4/12 4/21
**dealing [1]** 33/8
**decide [6]** 26/13 28/20 31/15 36/8 36/19 37/7
**decided [2]** 15/5 33/9
**decides [1]** 20/15
**deciding [1]** 30/19
**decision [5]** 15/19 16/14 18/5 18/17 36/13
**decisions [2]** 18/18 20/18
**deep [1]** 10/4
**defendants [1]** 42/8
**defense [1]** 23/25
**Deficiency [1]** 6/6
**delay [3]** 18/13 18/22 19/11
**delivered [1]** 22/23
**demonstrate [1]** 20/21
**demonstration [1]** 21/6
**denied [4]** 6/20 16/25 16/25 29/19
**deny [2]** 6/5 6/15
**DEPARTMENT [2]** 2/4 5/23
**deputy [2]** 2/4 37/10
**designate [2]** 10/14 11/18
**designated [1]** 9/23
**designating [1]** 7/18
**desire [2]** 16/10 16/11
**despite [1]** 6/5
**detail [1]** 24/21
**detained [6]** 15/20 15/22 18/14 19/1 19/1 19/13
**detention [7]** 21/23 24/10 27/4 27/7 28/20 28/22 29/5
**detention-related [1]** 28/20
**determine [1]** 35/17
**DHS [3]** 7/2 11/15 30/1
**different [1]** 15/16
**difficult [1]** 17/8
**digesting [1]** 26/19
**diplomatic [3]** 31/11 31/12 34/14
**direct [2]** 26/1 26/2
**direction [1]** 20/24
**directly [1]** 34/7
**director [1]** 37/10
**disagree [2]** 13/1 20/11
**discovery [22]** 4/14 6/21 8/13 8/18 9/5 15/7 24/19 25/1 25/9 26/8 30/11 31/4 33/10 33/13 33/17 34/7 34/10 34/18 34/20 34/25 35/5 35/21
**discuss [3]** 4/13 35/16 38/21
**discussed [1]** 34/19
**discussions [1]** 13/22
**district [11]** 1/1 1/1 1/10 3/3 3/4 5/17 7/24 8/3 22/10 43/5 43/5
**districts [1]** 6/3
**dive [1]** 26/17
**DIVISION [2]** 1/2 2/4
**do [28]** 4/6 4/9 4/14 4/21 5/15 5/22 6/22 12/1 12/2 17/15 17/24 20/20 21/23 24/17 27/6 27/6 28/1 28/4 30/24 31/16 31/23 33/1 33/3 33/15 37/2 40/8 41/24 43/6
**docket [1]** 26/12
**document [1]** 12/15
**documentary [2]** 7/25 38/24
**documentation [2]** 7/8 7/19
**documents [8]** 7/13 21/14 24/22 24/22 25/16 39/21 40/17 41/17
**dog [1]** 15/4
**draft [1]** 39/20
**due [1]** 5/24
**during [5]** 15/21 16/21 17/20 17/20 32/23
**duty [1]** 6/13

## E

**e-mail [2]** 7/17 21/15
**e-mails [3]** 8/7 21/5 25/5
**each [2]** 23/12 24/3
**ECF [4]** 4/12 4/13 6/20 26/12
**effect [1]** 40/15
**effectuate [3]** 24/23 29/10 29/11
**effort [1]** 38/16
**efforts [14]** 24/21 24/22 24/23 25/14 25/19 30/17 30/18 31/21 32/25 35/15 37/12 38/14 40/17 41/11
**either [8]** 8/6 8/24 12/3 12/20 14/2 20/16 25/24 37/10
**El [1]** 7/16
**El Salvador [1]** 7/16
**else [5]** 3/21 30/21 30/23 41/25 42/5
**elsewhere [2]** 5/17 7/24
**EMANUEL [2]** 1/14 1/18
**empty [2]** 21/13 30/19
**end [3]** 7/11 15/8 29/7
**enough [3]** 33/3 35/16 37/22
**Ensign [1]** 7/1
**entered [1]** 16/12
**entitled [1]** 43/9
**ERNESTO [2]** 2/7 4/4
**ERO [2]** 37/11 38/21
**especially [2]** 10/17 20/24
**ESQUIRE [9]** 1/13 1/14 1/17 1/17 1/18 1/21 2/3 2/3 2/7
**Eswatini [21]** 7/19 8/6 9/23 9/24 11/2 11/5 11/11 11/17 12/13 12/17 13/4 13/10 14/2 17/13 37/17 37/19 37/21 40/22 41/1 41/1 41/7
**et [2]** 1/6 3/11
**even [11]** 4/7 5/7 7/10 7/23 9/13 9/25 11/9 18/16 30/4 31/5 31/7
**event [1]** 33/3
**every [2]** 8/2 20/4
**everyone [3]** 3/6 6/13 32/20
**evidence [28]** 7/25 13/8 13/25 20/23 21/1 21/8 21/10 21/17 23/4 23/5 25/14 25/19 26/2 26/11 26/25 27/3 27/5 30/17 32/24 34/20 34/23 35/13 36/18 37/6 38/24 39/10 39/14 40/17
**evidentiary [17]** 4/15 9/1 9/3 11/14 15/7 30/16 31/2 34/21 35/6 35/13 36/20 36/22 37/3 38/18 38/25 39/12 39/25
**exactly [2]** 10/23 37/3
**example [5]** 19/12 19/18 28/1 34/12 37/22
**exception [1]** 5/19
**exercise [1]** 21/13
**existence [1]** 25/20
**exists [1]** 26/11
**expected [1]** 6/2
**expeditious [2]** 17/18 17/24
**expeditiously [1]** 38/7
**expense [1]** 6/19
**expires [1]** 27/8
**explain [2]** 26/19 27/10
**explained [2]** 38/3 38/12
**explaining [1]** 29/23
**expresses [1]** 19/17

## F

**fact [5]** 8/5 8/15 9/21 11/5 15/9
**facts [1]** 8/20
**Fairfax [1]** 1/23
**fairness [1]** 39/11
**faith [1]** 16/11
**far [1]** 22/23
**fast [1]** 37/22
**fear [2]** 7/21 38/9
**fears [2]** 38/2 38/3
**Federal [2]** 43/4 43/17
**feel [1]** 12/1
**feeling [1]** 4/19
**feels [1]** 16/3
**few [1]** 19/8
**fewer [1]** 14/24
**field [2]** 18/25 37/10
**fight [1]** 9/16
**fighting [1]** 30/6
**figure [2]** 11/16 11/19
**file [2]** 39/14 39/15
**filed [3]** 8/18 26/11 39/15
**filing [1]** 40/19
**final [5]** 16/23 19/13 20/5 26/6 40/14
**finally [2]** 4/14 20/3
**find [9]** 5/22 15/11 26/7 31/7 31/21 32/24 33/23 37/12 37/14
**finding [3]** 14/9 14/13 36/4
**findings [1]** 16/17
**fire [1]** 27/6
**first [11]** 4/12 11/16 11/17 11/18 14/12 19/9 19/12 19/21 33/8 37/25 38/12
**five [3]** 7/7 9/21 27/7
**fixed [1]** 9/8
**fluid [1]** 4/17
**follow [4]** 6/9 15/13 15/14 39/17
**follow-up [1]** 39/17
**foregoing [1]** 43/7
**foreign [1]** 13/23
**foreseeable [1]** 40/23
**forget [1]** 36/8
**form [2]** 21/6 28/6
**formal [3]** 7/23 12/13 25/16
**formalized [1]** 12/23
**formalizing [1]** 13/16
**format [1]** 43/9
**former [1]** 9/6
**forth [2]** 7/20 29/4
**forward [1]** 34/21
**found [5]** 14/1 14/18 15/8 15/10 20/11
**frame [2]** 20/13 23/6
**Franklin [1]** 2/8
**Friday [5]** 39/16 39/19 40/8 42/1 42/9
**frustrating [1]** 31/4
**full [1]** 11/6
**fully [3]** 26/10 27/5 36/12
**fundamental [1]** 6/12
**funded [1]** 5/9
**furlough [2]** 33/2 33/9
**further [2]** 29/2 31/22
**future [3]** 34/21 40/22 40/23
**FY [1]** 6/3

## G

**GARCIA [9]** 1/3 3/11 8/5 16/7 16/13 17/18 18/4 21/25 37/13
**Garcia's [4]** 5/2 13/11 17/13 38/1
**gave [1]** 40/25
**geared [1]** 40/23
**general [2]** 2/4 5/19
**generally [1]** 5/18
**getting [5]** 10/4 16/16 19/13 19/13 30/12
**give [9]** 25/6 26/2 31/2 31/14 33/23 36/6 38/5 39/20 40/5
**given [5]** 19/14 22/6 22/14 23/5 40/25
**go [12]** 4/14 9/1 9/3 21/13 29/19 29/20 30/2 31/15 34/20 36/10 38/6 38/15
**goal [1]** 29/11
**goes [2]** 18/20 34/20
**going [25]** 6/5 6/15 6/18 8/14 9/7 20/23 21/12 22/2 22/14 25/8 25/9 27/9 28/19 33/9 33/20 34/6 36/5 36/19 37/22 38/7 38/10 40/2 40/6 40/23 41/5 41/7
**gone [2]** 22/20 29/18
**good [6]** 3/6 3/14 3/25 16/10 35/22 35/23
**got [7]** 8/15 25/3 27/8 27/16 33/20 36/9 39/14
**gotten [3]** 20/8 22/21 29/14
**government [31]** 5/9 7/9 7/10 8/10 8/14 9/24 11/6 11/21 13/10 15/5 15/11 15/17 16/3 16/5 19/14 20/17 21/6 21/19 25/19 27/19 30/16 34/3 34/17 34/23 35/12 37/22 38/22 38/23 39/10 39/25 40/15
**government's [9]** 10/3 10/5 12/24 20/1 20/4 21/1 29/11 33/2 36/17
**governments [1]** 13/23
**grant [3]** 20/8 27/8 28/23
**granted [1]** 27/21
**Great [1]** 32/2
**GREENBELT [1]** 1/2
**ground [1]** 28/17
**group [1]** 37/11
**growing [1]** 20/12
**guess [1]** 34/5
**GUYNN [3]** 2/3 4/2 32/17
**guys [1]** 13/13

## H

**habeas [8]** 4/16 5/18 5/25 6/1 16/8 18/16 28/17 35/21
**half [2]** 7/7 9/22
**hand [1]** 25/3
**handled [1]** 4/17
**hands [1]** 23/9
**happen [1]** 37/21
**happened [5]** 8/24 8/24 8/25 9/6 9/21
**happening [3]** 8/10 26/19 26/20
**happens [1]** 27/25
**happy [1]** 31/14
**hard [3]** 13/13 27/19 36/4
**hasn't [6]** 22/11 23/17 24/9 24/10 28/14 28/14
**having [1]** 34/5
**hear [4]** 14/11 18/13 19/5 37/9
**heard [6]** 4/22 5/15 6/22 10/10 10/12 22/22
**hearing [26]** 4/16 7/1 9/2 9/3 11/14 15/7 30/16 31/2 33/6 34/21 35/6 35/14 36/6 36/7 36/8 36/20 36/22 37/3 38/18 38/25 39/12 39/17 39/19 39/25 41/7 41/22
**heartburn [1]** 34/1
**held [2]** 11/3 43/8
**help [1]** 42/2
**helpful [1]** 24/3
**hereby [1]** 43/6

**H**


**him [13]** 10/14 11/1 15/5 17/20 19/2 24/1 28/10 30/1 30/2 30/6 30/7 38/4 38/5
**himself [1]** 8/6
**his [13]** 7/21 13/15 14/24 15/2 15/4 16/22 18/10 18/11 18/25 19/21 20/8 20/25 28/23
**hold [4]** 19/16 29/8 36/6 40/11
**Honor [75]**
**HONORABLE [5]** 1/9 3/5 32/14 32/18 42/11
**HORTON [2]** 1/17 3/23
**hours [3]** 39/13 39/19 41/21
**hours' [1]** 40/6
**however [2]** 19/25 25/18
**hunched [1]** 12/2


**I**


**I'll [8]** 18/21 19/5 23/2 31/2 32/11 35/10 39/20 39/23
**I'm [37]** 5/1 6/5 6/13 6/15 6/17 9/11 10/4 10/11 21/5 21/8 21/12 22/23 23/8 24/25 25/8 25/12 25/17 25/22 26/15 26/17 26/19 27/10 27/11 28/13 29/22 30/23 30/25 31/9 31/14 33/20 33/25 34/5 36/1 36/4 39/22 40/8 41/5
**I'm saying [1]** 29/22
**I've [6]** 7/2 23/2 23/8 25/3 36/25 40/7
**I-241 [4]** 12/14 12/17 13/3 13/8
**ICE [1]** 38/21
**identified [1]** 37/5
**identify [1]** 3/13
**IJ [1]** 18/17
**imagine [1]** 33/20
**immediately [1]** 9/2
**immigration [13]** 2/7 13/15 13/25 14/13 15/17 15/19 16/9 16/14 18/5 18/6 26/20 27/11 29/4
**imminence [3]** 14/4 14/9 14/14
**imminent [5]** 9/15 10/10 14/3 20/22 20/24
**imminently [1]** 16/12
**importance [1]** 6/11
**important [4]** 4/18 6/12 14/9 21/12
**imposed [1]** 6/16
**INA [1]** 19/9
**include [1]** 24/22
**including [3]** 26/18 40/18 40/19
**inconvenient [1]** 31/24
**independent [1]** 28/17
**individual [2]** 19/16 38/21
**individuals [1]** 11/2
**indulgence's [1]** 39/6
**informal [7]** 22/4 22/5 22/5 23/19 23/24 24/6 25/16
**information [11]** 9/24 21/17 24/22 29/14 31/22 33/24 34/15 35/25 36/5 40/16 40/20
**informed [1]** 38/16
**initial [1]** 10/1
**inside [1]** 35/8
**inside-out [1]** 35/8
**insistence [1]** 34/22
**intended [1]** 7/14
**intentionally [1]** 36/23
**interaction [1]** 31/13
**interfering [1]** 31/11
**interplay [1]** 6/8
**intersect [1]** 4/19
**interview [5]** 22/6 23/20 23/24 24/6 24/7
**involved [1]** 23/10
**is [163]**
**isn't [6]** 30/11 30/19 30/20 36/2 36/2 38/14
**issue [11]** 5/8 5/15 10/24 10/25 11/5 12/8 18/16 32/5 33/18 36/19 37/7
**issued [6]** 12/17 12/20 13/3 13/8 16/14 20/3
**issues [5]** 4/18 31/6 31/10 34/18 35/24


**J**


**January [1]** 20/25
**JONATHAN [5]** 1/17 2/3 3/18 4/2 32/17
**JR [1]** 2/7
**judge [9]** 1/10 13/25 14/20 15/8 15/10 15/13 15/14 29/9 36/8
**judge's [4]** 14/13 15/19 16/14 18/5
**judges [8]** 14/18 14/18 20/11 20/12 20/20 22/9 24/19 24/25
**judicial [2]** 6/3 43/10
**juncture [4]** 20/9 21/11 25/17 30/19
**June [4]** 16/16 27/16 28/9 28/10
**jurisdiction [2]** 9/17 33/15
**jurisdictional [3]** 8/20 9/17 31/6
**JUSTICE [1]** 2/4
**Justice's [1]** 5/23


**K**


**Karina [1]** 3/24
**keep [1]** 20/14
**KILMAR [2]** 1/3 3/10
**kind [1]** 12/2
**knew [1]** 36/23
**knowledge [3]** 36/25 40/1 41/10
**known [1]** 34/6
**KRISTI [2]** 1/6 3/11


**L**


**lack [2]** 14/9 14/13
**lapse [1]** 5/5
**larger [1]** 6/12
**last [6]** 6/25 9/22 11/14 27/11 36/22 40/2
**later [2]** 11/17 11/19
**latter [1]** 9/1
**lawful [1]** 28/6
**lawfully [3]** 27/21 28/7 28/22
**lawyer [1]** 36/4
**lean [1]** 27/18
**leash [1]** 39/13
**least [5]** 4/20 11/10 16/18 23/8 30/13
**leave [1]** 12/9
**Leeper [3]** 43/4 43/15 43/16
**legal [2]** 8/20 20/12
**legally [1]** 28/4
**less [1]** 9/25
**letting [1]** 21/22
**lieu [2]** 7/19 38/25
**light [2]** 5/4 33/5
**likelihood [4]** 10/2 10/9 20/22 40/21
**likely [1]** 9/15
**limited [2]** 8/13 24/19
**line [4]** 14/19 14/22 15/9 15/24
**list [1]** 38/1
**listen [1]** 35/4
**litigate [1]** 6/10
**litigation [4]** 2/7 6/1 6/1 8/8
**little [3]** 26/20 31/4 36/21
**LLC [1]** 1/18
**LLP [1]** 1/14
**local [2]** 6/8 37/11
**location [2]** 37/13 37/14
**lock [1]** 11/16
**log [1]** 27/6
**long [1]** 9/16
**longer [1]** 38/3
**look [1]** 40/2
**looked [2]** 23/2 24/12
**looks [2]** 12/3 30/10
**looming [1]** 33/18
**lot [2]** 26/22 31/10
**lots [1]** 26/18


**M**


**made [5]** 11/15 13/10 24/21 31/6 31/14
**magical [1]** 36/5
**mail [2]** 7/17 21/15
**mails [3]** 8/7 21/5 25/5
**main [5]** 10/3 10/5 10/24 11/5 11/8
**make [10]** 4/17 13/5 13/21 30/18 30/24 31/14 31/21 34/17 40/7 41/5
**makes [2]** 26/22 38/8
**making [2]** 16/17 37/11
**manner [1]** 17/19
**many [8]** 10/8 10/8 14/18 14/18 20/11 22/11 22/11 24/19
**marked [1]** 39/11
**MARYLAND [3]** 1/1 3/4 43/6
**material [1]** 15/11
**matter [6]** 3/9 3/11 17/24 26/10 36/12 43/9
**matters [1]** 14/14
**may [13]** 14/3 16/1 18/8 23/9 23/11 23/12 24/16 24/17 31/17 36/16 37/8 37/22 40/20
**maybe [1]** 38/12
**mean [18]** 9/11 10/24 11/14 15/21 17/4 17/15 19/5 25/23 28/1 28/13 29/25 33/19 34/11 35/7 36/1 36/7 37/14 40/25
**meaning [1]** 6/1
**means [2]** 8/7 29/7
**measure [1]** 29/6
**meat [1]** 39/23
**meet [1]** 10/1
**memorandum [1]** 7/21
**merits [9]** 4/20 10/4 12/8 18/16 18/17 26/17 30/13 36/19 37/7
**midnight [1]** 41/17
**might [4]** 12/3 18/6 37/9 38/21
**mind [1]** 26/6
**mindful [2]** 6/16 31/10
**minimum [1]** 28/15
**minute [2]** 12/10 32/8
**minutes [6]** 31/24 32/1 32/7 33/3 35/15 36/6
**misremembering [1]** 23/10
**missed [1]** 25/7
**missing [1]** 21/9
**mission [1]** 11/7
**mistakenly [1]** 28/3
**misunderstanding [1]** 24/5
**MOLINA [10]** 2/7 4/4 12/15 23/14 24/4 25/6 25/11 26/4 32/10 41/3
**moment [2]** 35/11 39/5
**MONDAY [1]** 1/10
**month [4]** 14/7 14/16 15/10 29/1
**months [5]** 12/24 14/11 14/22 14/25 15/8
**more [8]** 4/9 7/12 7/25 9/12 25/7 26/20 27/6 39/10
**morning [3]** 3/6 3/14 3/25
**MOSHENBERG [5]** 1/21 3/16 23/9 26/15 29/23
**motion [11]** 4/12 4/13 4/21 4/24 5/12 5/17 6/5 6/15 8/19 12/8 34/18
**motions [1]** 4/7
**move [6]** 6/21 17/19 17/23 21/15 37/22 37/23
**moved [1]** 16/22
**moves [1]** 10/11
**moving [1]** 41/6
**Mr. [52]**
**Mr. Abrego [33]** 5/2 6/11 7/15 8/5 10/18 10/25 11/12 13/11 15/3 15/14 16/7 16/13 17/13 17/17 18/4 18/14 18/17 18/20 18/23 19/20 20/6 20/25 21/3 22/21 22/23 25/15 29/18 30/17 31/8 37/13 38/1 38/15 41/11
**Mr. Abrego Garcia [1]** 21/25
**Mr. Abrego's [4]** 18/19 20/21 21/5 22/13
**Mr. Ensign [1]** 7/1
**Mr. Molina [8]** 12/15 23/14 24/4 25/6 25/11 26/4 32/10 41/3
**Mr. Sandoval-Moshenberg [3]** 23/9 26/15 29/23
**Mr. Ulander [2]** 3/8 32/10
**Ms. [1]** 35/19
**Ms. O'Hickey [1]** 35/19
**much [5]** 4/19 8/2 9/25 31/23 32/12
**MURRAY [1]** 1/22


**N**


**named [1]** 37/19
**need [16]** 9/13 12/11 26/8 31/2 31/23 33/17 33/17 34/10 35/5 35/6 35/7 35/9 36/9 37/22 39/2 39/3
**needle [1]** 10/11
**needs [1]** 39/15
**never [1]** 9/25
**new [2]** 1/15 20/14
**newest [1]** 24/10
**news [1]** 11/1
**next [5]** 6/18 16/13 28/9 28/10 33/11
**NITHYA [2]** 1/18 3/20
**no [38]** 7/8 7/13 7/13 7/19 7/23 8/15 8/23 10/1 10/19 12/6 12/19 12/19 12/20 13/3 13/8 13/8 13/20 14/18 20/13 23/4 23/5 26/11 27/2 29/16 29/25 30/3 30/22 31/12 32/6 33/14 33/17 34/24 34/24 34/24 35/22 36/25 38/3 38/6
**NOEM [2]** 1/6 3/11
**non [2]** 10/19 10/24
**non-refoulement [2]** 10/19 10/24
**none [5]** 8/25 9/7 13/25 26/2 33/24
**not [74]**
**notes [3]** 1/25 5/24 19/8
**nothing [14]** 7/12 8/25 9/12 9/21 10/11 10/12 19/3 25/4 34/9 36/23 40/9 40/10 42/6 42/8
**notice [12]** 8/2 17/4 22/4 22/5 22/20 22/21 22/22 23/5 40/5 40/6 40/25 40/25
**notices [1]** 25/16
**notifications [1]** 21/2
**notified [1]** 8/6
**notwithstanding [1]** 16/8
**number [4]** 1/5 3/10 7/24 13/9
**NW [2]** 1/19 2/5
**NY [1]** 1/15


**O**


**O'HICKEY [3]** 2/3 4/3 35/19
**obtain [1]** 34/4
**obvious [1]** 29/23
**obviously [3]** 9/2 10/25 23/15
**Ocean [1]** 30/6
**OCTOBER [2]** 1/10 43/12
**off [1]** 14/3
**offered [1]** 10/10
**office [4]** 2/7 18/25 37/10 37/11
**officer [1]** 21/14
**officers [1]** 25/4
**OFFICIAL [3]** 43/1 43/4 43/17
**Oh [2]** 23/16 41/19
**okay [42]** 3/25 4/21 5/14 5/22 6/20 8/4 10/12 11/21 12/5 13/1 13/7 13/9 13/18 14/17 14/23 17/7 18/7 18/10 18/12 18/20 19/24 22/9 22/19 23/4 24/14 26/14 28/24 30/8 30/10 30/24 31/23 32/22 35/2 36/14 37/20 40/13 41/5 41/6 41/11 41/13 41/24 42/9
**OLIVIA [2]** 1/17 3/23
**one [19]** 7/11 8/23 12/3 13/9 15/1 18/13 21/6 21/21 22/2 23/9 23/23 25/7 27/6 27/11 35/7 38/6 39/5 40/3 40/11
**ones [1]** 9/11
**ongoing [3]** 16/8 32/24 35/15
**only [9]** 6/11 8/7 15/24 23/18 26/15 29/4 35/20 40/25 41/2
**open [1]** 28/3
**opinion [1]** 14/20
**opportunity [8]** 15/18 22/6 22/14 24/20 25/7 36/18 37/6 39/20
**oppose [1]** 5/16
**option [1]** 18/4
**order [21]** 3/2 4/11 6/8 6/9 8/8 16/23 16/23 19/13 19/21 20/3 20/5 24/15 24/18 28/2 28/4 29/5 29/6 36/24 39/21 40/14 41/9
**ordered [3]** 22/10 25/1 29/9
**orders [1]** 16/11
**origin [3]** 11/8 15/2 38/11
**OSORIO [1]** 1/22
**other [22]** 7/15 8/3 9/11 9/16 20/23 21/8 21/10 21/14 21/21 22/3 22/19 23/8 23/13 24/4 24/15 24/25 24/25 25/3 25/14 26/11 26/18 33/2
**others [1]** 4/10
**Otherwise [1]** 5/19
**out [14]** 11/16 11/19 12/13 14/1 22/20 26/7 29/5 31/7 31/21 32/11 32/24 35/8 37/12 40/14
**outlined [2]** 33/7 33/12
**over [5]** 9/17 9/21 12/2 20/14 30/6
**oversimplification [1]** 39/23
**own [2]** 5/23 22/1


**P**


**p.m [2]** 41/16 41/19
**P.O [1]** 2/8
**page [3]** 6/4 29/2 43/9
**papers [2]** 5/20 34/12
**parole [8]** 27/8 27/16 27/22 27/24 28/3 28/5 28/6 28/23
**paroled [3]** 27/12 27/23 28/3
**part [8]** 4/15 15/10 18/23 28/16 31/3 34/16 34/18 35/22
**particular [5]** 4/25 7/3 7/5 12/23 13/16
**past [3]** 9/21 24/3 41/17
**PATHALAM [2]** 1/18 3/20
**PAULA [5]** 1/9 3/5 43/4 43/15 43/16
**pause [1]** 5/10
**pending [5]** 3/9 18/11 24/1 29/8 33/8
**Pennsylvania [1]** 2/5
**people [1]** 11/7
**percent [1]** 24/20
**perhaps [1]** 8/11
**period [10]** 12/25 14/7 14/16 20/2 20/13 22/24 24/10 24/12 24/13 27/24
**period-based [1]** 24/13
**periodic [2]** 23/14 24/6
**permissible [2]** 29/4 30/5
**persecution [1]** 10/19
**person [4]** 27/23 27/25 40/6 41/9
**persons [1]** 41/10

## P

**pertinent [1]** 34/19
**petition [5]** 4/8 4/16 5/13 5/18 40/19
**petitioner [26]** 1/4 1/12 3/15 3/17 3/18 3/19 3/20 3/21 6/19 6/22 15/1 15/9 15/18 24/16 25/8 26/24 34/25 35/4 35/21 36/7 36/15 39/4 40/16 40/18 41/6 42/6
**petitioner's [4]** 4/13 24/23 31/1 40/21
**petitioners [5]** 19/6 26/7 33/16 40/5 41/13
**phone [1]** 30/25
**picked [1]** 19/13
**piece [1]** 26/21
**place [6]** 8/15 21/24 22/10 22/17 23/15 27/3
**plaintiffs [1]** 24/16
**plan [6]** 5/24 6/3 12/23 13/16 17/15 33/11
**planning [1]** 16/13
**please [2]** 3/13 25/22
**podium [1]** 12/2
**point [5]** 11/25 12/7 21/21 32/3 34/16
**points [1]** 33/12
**policy [1]** 5/19
**position [13]** 5/10 12/24 14/11 18/15 20/1 25/23 25/25 26/1 26/7 26/9 26/12 36/17 37/1
**possibility [2]** 10/6 10/9
**possible [1]** 9/4
**posture [1]** 20/11
**practice [1]** 11/15
**practices [1]** 11/18
**preferred [1]** 29/17
**prefers [1]** 38/22
**preliminary [1]** 4/18
**prepare [1]** 36/24
**prepared [7]** 13/21 13/24 26/16 26/17 34/8 35/13 35/19
**presence [1]** 28/6
**present [7]** 27/21 28/7 28/22 34/23 36/18 37/6 38/23
**presently [1]** 28/21
**presiding [1]** 3/5
**press [1]** 5/10
**pressing [1]** 4/9
**presumably [1]** 19/1
**presumption [3]** 14/23 15/10 29/2
**presumptive [1]** 14/11
**presumptively [3]** 12/25 14/7 14/16
**pretty [4]** 8/2 21/16 38/5 40/8
**primary [1]** 21/1
**principle [1]** 29/3
**prior [3]** 8/8 16/22 16/23
**prison [1]** 11/4
**privilege [3]** 34/12 34/13 35/24
**privileges [1]** 34/14
**probity [1]** 35/21
**problem [2]** 12/6 34/5
**procedural [1]** 20/10
**procedure [2]** 7/20 27/2
**proceed [6]** 6/9 9/1 9/3 9/10 21/7 26/12
**proceeding [1]** 19/21
**proceedings [11]** 13/15 15/17 16/9 16/21 16/22 17/4 17/7 17/10 17/11 42/13 43/8
**process [7]** 7/3 7/5 8/11 8/12 8/15 15/21 17/16
**processed [1]** 20/9
**produce [2]** 30/18 40/16
**producing [1]** 7/11
**prognostications [1]** 31/12
**prohibitions [1]** 5/25
**promise [1]** 40/13
**proper [1]** 16/17
**proposed [1]** 38/18
**protection [1]** 38/8
**provide [3]** 14/6 31/21 33/1
**provided [6]** 7/18 8/2 8/3 9/24 27/7 27/14
**public [2]** 11/10 40/9
**punitive [1]** 29/6
**purely [1]** 8/20
**purpose [2]** 11/6 29/4
**pursuant [4]** 23/22 27/21 28/23 43/6
**pursue [1]** 20/15
**put [7]** 23/8 34/20 35/13 36/24 38/24 39/12 39/23
**puts [1]** 18/14
**putting [1]** 39/22
**PX [1]** 1/5
**PX25 [1]** 3/10
**PX25-2780 [1]** 3/10

## Q

**question [16]** 4/8 9/18 13/2 13/13 14/8 14/21 21/16 25/9 25/12 26/1 26/8 33/16 34/1 38/25 39/22 40/24
**questions [10]** 6/12 9/17 17/8 22/3 24/1 33/21 34/12 35/20 36/1 36/24
**quickly [3]** 9/3 21/16 22/20
**QUINN [2]** 1/14 1/18
**quite [1]** 4/17
**quo [1]** 18/24
**quote [1]** 7/2

## R

**rack [1]** 30/4
**raise [2]** 6/6 21/21
**raised [1]** 34/11
**Ramos [1]** 3/24
**RAND [2]** 1/14 3/19
**rapidly [1]** 16/7
**re [1]** 15/5
**re-remove [1]** 15/5
**reach [3]** 32/24 32/25 37/12
**reached [1]** 12/13
**read [4]** 11/12 14/20 18/19 23/8
**reading [2]** 24/25 29/2
**ready [1]** 32/10
**real [2]** 33/17 35/7
**really [11]** 10/11 10/24 11/17 20/2 26/15 30/1 30/11 33/19 33/21 33/25 36/1
**reason [3]** 4/15 28/21 30/5
**reasonable [6]** 10/9 12/25 14/7 14/16 20/22 40/22
**reasonably [5]** 9/14 10/18 17/18 17/24 40/22
**reasons [2]** 26/18 33/2
**reassurance [1]** 38/10
**rebuttable [1]** 14/22
**rebutted [1]** 15/9
**recall [2]** 7/10 23/7
**receive [1]** 41/17
**received [3]** 7/8 7/17 30/3
**recess [2]** 32/15 32/16
**record [12]** 3/13 9/23 24/18 25/2 25/10 27/5 27/15 29/18 30/19 31/15 32/4 35/6
**referring [3]** 18/9 23/14 23/19
**refoul [1]** 38/4
**refouled [1]** 38/10
**refoulement [2]** 10/19 10/24
**refusal [1]** 10/14
**regard [3]** 19/7 20/1 38/17
**regarding [1]** 41/11
**regards [6]** 7/20 7/21 27/1 27/4 27/7 28/25
**regulation [3]** 22/16 23/3 24/13
**regulations [1]** 43/10
**regulatory [1]** 24/11
**reject [1]** 14/17
**related [5]** 24/23 27/2 27/4 28/20 40/17
**relations [1]** 31/11
**release [8]** 5/2 5/7 14/25 16/18 22/4 22/7 27/25 29/9
**released [1]** 20/7
**releasing [1]** 15/14
**relevance [1]** 35/20
**relevant [2]** 34/7 39/22
**relief [2]** 5/13 28/17
**remain [1]** 28/8
**remarkable [1]** 33/22
**remember [2]** 23/23 34/19
**removal [45]**
**removal-related [1]** 27/2
**remove [9]** 15/5 16/13 17/20 19/2 25/15 28/10 30/1 30/17 40/17
**removed [3]** 16/7 28/2 38/7
**reopen [1]** 16/22
**repatriate [1]** 11/7
**reported [1]** 43/8
**REPORTER [3]** 43/1 43/4 43/17
**represent [1]** 8/14
**representation [3]** 11/10 13/5 13/22
**representations [2]** 25/3 26/24
**represented [1]** 7/1
**representing [2]** 21/13 39/10
**request [13]** 6/21 8/13 9/5 12/13 18/8 30/11 31/5 33/10 34/7 37/6 39/12 41/14 41/16
**requested [1]** 5/13
**requests [2]** 15/7 25/16
**resolve [1]** 4/7
**resolving [1]** 7/5
**respect [2]** 12/7 13/16
**respond [1]** 16/5
**respondent [6]** 4/1 4/2 4/4 40/1 40/2 41/10
**respondents [12]** 1/7 2/2 4/3 4/22 6/6 12/12 12/22 19/2 25/6 26/25 32/22 33/19
**respondents' [4]** 4/11 5/10 7/14 23/12
**response [6]** 10/3 10/5 15/13 31/4 34/24 38/24
**response to [1]** 10/3
**responsive [1]** 33/16
**rest [1]** 5/20
**resumes [1]** 32/19
**return [2]** 32/17 39/16
**review [6]** 21/24 22/4 22/16 22/25 23/6 24/13
**reviews [2]** 21/23 23/15
**revocation [1]** 22/4
**revoke [1]** 27/19
**revoked [1]** 28/14
**Rica [13]** 10/7 10/10 10/12 10/14 10/15 10/17 29/12 30/2 30/7 37/24 38/1 38/4 38/15
**right [51]**
**ripe [4]** 9/10 9/12 12/11 36/12
**rise [4]** 3/3 32/14 32/18 42/11
**Road [1]** 1/22
**robust [1]** 7/25
**room [1]** 27/11
**ROSSMAN [2]** 1/13 3/15
**RPR [1]** 43/16
**rule [1]** 6/8
**ruling [1]** 4/8
**run [1]** 28/7
**running [1]** 19/12

## S

**Salvador [1]** 7/16
**same [2]** 16/18 20/10
**SANDOVAL [5]** 1/21 3/16 23/9 26/15 29/23
**SANDOVAL-MOSHENBERG [2]** 1/21 3/16
**SASCHA [2]** 1/14 3/19
**saying [14]** 7/13 7/16 9/9 17/21 18/2 22/13 29/18 29/22 31/9 33/22 35/4 35/7 35/22 36/8
**scheduling [1]** 7/1
**Scott [1]** 14/21
**seal [2]** 39/15 39/15
**seat [2]** 3/7 32/21
**second [3]** 28/20 33/9 40/11
**Secretary [1]** 3/11
**Section [1]** 19/9
**see [10]** 11/21 18/13 18/15 18/15 22/3 31/9 34/17 36/15 41/7 42/9
**seek [1]** 18/6
**seeking [1]** 19/2
**seem [1]** 23/7
**seems [3]** 19/7 20/22 38/5
**selected [1]** 17/13
**selection [1]** 37/18
**send [3]** 22/24 30/6 30/7
**sense [3]** 5/8 26/22 38/8
**sent [2]** 11/2 38/2
**separate [3]** 5/13 12/8 18/16
**separately [1]** 17/3
**September [2]** 6/4 14/20
**September 29 [1]** 6/4
**September 8th [1]** 14/20
**served [1]** 8/12
**session [2]** 3/4 32/19
**set [3]** 7/20 16/19 38/23
**sets [1]** 29/3
**seventeen [1]** 15/23
**shall [1]** 40/16
**shared [1]** 11/1
**shield [1]** 10/16
**short [2]** 26/16 39/21
**show [2]** 10/1 15/25
**showed [1]** 18/25
**shutdown [1]** 6/17
**side [1]** 3/22
**signal [2]** 14/4 16/10
**significance [1]** 27/12
**significant [2]** 10/1 40/21
**similar [2]** 15/1 40/2
**SIMON [2]** 1/21 3/16
**simply [1]** 41/6
**since [6]** 9/22 10/17 16/16 23/2 27/2 40/19
**sit [1]** 12/3
**situation [1]** 16/4
**six [12]** 12/24 14/7 14/11 14/16 14/22 14/25 15/4 15/8 15/10 15/24 23/18 29/1
**six-month [4]** 14/7 14/16 15/10 29/1
**sixteen [1]** 15/23
**small [1]** 31/20
**so [57]**
**someone [1]** 29/8
**something [4]** 9/13 9/14 21/25 40/15
**somewhat [1]** 12/8
**soon [1]** 16/14
**sorry [4]** 21/5 24/4 25/12 25/22
**sort [12]** 7/11 8/14 8/19 11/6 24/14 27/3 28/7 28/20 29/2 31/11 35/7 35/8
**soul [1]** 33/23
**sounds [1]** 19/3
**speak [2]** 29/12 35/11
**specifically [1]** 12/12
**spoken [1]** 7/2
**spokesperson [1]** 11/11
**stand [2]** 12/2 27/20
**stands [2]** 32/15 42/12
**start [3]** 17/16 19/18 33/11
**started [1]** 18/24
**starting [1]** 20/14
**STATES [12]** 1/1 1/10 3/3 16/8 16/12 27/21 27/24 28/8 28/8 28/22 43/5 43/11
**States' [1]** 16/10
**Station [1]** 2/8
**status [6]** 1/9 3/12 4/6 18/24 30/15 38/5
**statute [5]** 19/10 19/17 19/25 20/1 20/2
**stay [15]** 4/12 4/21 4/24 5/2 5/4 5/12 5/17 17/19 17/23 18/2 18/6 18/8 18/21 19/18 33/8
**stays [1]** 19/11
**stenographically [1]** 43/8
**stenographically-reported [1]** 43/8
**STENOTYPED [1]** 1/25
**step [1]** 29/3
**steps [3]** 33/11 40/18 40/20
**still [7]** 7/12 14/25 15/18 18/14 19/3 26/19 27/3
**stopping [1]** 30/12
**Street [1]** 1/19
**stringent [1]** 16/18
**studiously [1]** 33/19
**stuff [2]** 8/24 9/6
**subject [3]** 15/2 28/21 32/4
**substance [1]** 24/1
**substantive [1]** 33/14
**such [3]** 6/10 24/21 40/20
**sufficient [1]** 10/1
**suggested [1]** 18/3
**suggesting [1]** 22/15
**suggests [1]** 33/24
**Suite [2]** 1/19 1/22
**SULLIVAN [2]** 1/14 1/18
**supposed [1]** 22/17
**surgical [1]** 6/18
**surprised [1]** 28/13
**suspension [1]** 5/25
**sword [1]** 10/16

## T

**table [2]** 14/3 41/2
**taken [9]** 8/15 21/24 23/15 24/23 25/19 27/2 32/16 40/17 40/19
**taking [2]** 21/2 29/2
**talk [5]** 4/10 4/19 14/12 25/9 34/6
**talking [4]** 23/12 24/3 24/5 24/6
**target [2]** 9/8 41/6
**targeted [1]** 8/13
**Tasha [1]** 40/12
**tell [5]** 18/1 24/20 25/25 34/11 36/21
**telling [1]** 33/14
**tenable [1]** 25/23
**Tennessee [1]** 16/19
**term [1]** 26/16
**terms [2]** 28/17 33/16
**testify [1]** 41/11
**testimony [1]** 37/10
**therefore [1]** 27/20
**things [6]** 4/16 8/9 8/24 33/7 34/11 37/21
**think [15]** 4/9 4/23 5/17 9/25 10/3 10/4 14/15 23/1 23/9 23/14 23/19 30/4 34/16 38/9 39/13
**thinking [1]** 39/19

**T**

**third [16]** 7/15 13/16 15/11 17/4 17/5 17/9 17/10 19/2 20/15 20/21 25/15 31/6 31/7 33/10 38/6 40/18
**third-country [4]** 13/16 17/5 17/10 20/15
**thorough [1]** 14/21
**though [2]** 5/7 27/6
**thought [2]** 8/13 24/5
**three [2]** 33/7 33/12
**through [5]** 6/7 6/7 21/13 27/16 28/9
**tight [1]** 39/13
**time [15]** 17/20 19/17 20/5 20/13 20/13 22/18 22/24 23/6 31/1 31/1 31/23 36/22 39/2 39/3 42/1
**timeline [1]** 39/18
**times [1]** 40/20
**today [20]** 4/6 4/10 4/15 4/19 6/18 9/2 15/14 23/19 25/4 27/20 28/13 33/8 33/21 34/2 34/7 34/23 35/13 39/1 39/11 40/14
**today's [1]** 33/6
**told [4]** 18/22 20/24 30/20 30/22
**tolled [1]** 19/17
**topic [1]** 33/7
**topsyturvy [1]** 35/8
**towards [1]** 40/23
**transcript [3]** 1/9 43/7 43/9
**TRANSCRIPTION [1]** 1/25
**travel [1]** 25/16
**trial [2]** 20/25 29/8
**trick [1]** 19/7
**triggers [1]** 14/25
**true [1]** 43/7
**try [4]** 6/18 32/24 37/12 37/23
**trying [5]** 16/5 21/7 23/8 34/4 34/17
**turn [2]** 25/8 26/7
**two [4]** 7/3 7/6 7/8 8/23

**U**

**U.S.C [2]** 19/10 43/6
**Uganda [7]** 7/19 8/6 11/17 14/2 14/3 41/1 41/1
**Ulander [2]** 3/8 32/10
**ultimate [1]** 4/8
**unable [2]** 25/17 32/25
**unaware [1]** 30/23
**uncomfortable [1]** 12/3
**under [13]** 10/18 12/23 14/4 14/10 14/14 14/25 15/22 15/22 16/16 19/9 19/25 39/15 39/15
**underlying [1]** 35/25
**understand [7]** 14/3 17/21 24/4 26/3 29/22 35/18 35/18
**understanding [2]** 11/6 41/4
**understands [1]** 27/11
**Understood [1]** 18/10
**UNITED [13]** 1/1 1/10 3/3 16/7 16/10 16/12 27/21 27/24 28/8 28/8 28/22 43/5 43/11
**universe [1]** 26/11
**unless [3]** 18/15 24/15 34/8
**untenable [1]** 18/15
**until [1]** 38/9
**up [14]** 11/16 11/23 15/25 18/21 18/25 19/13 24/14 29/2 31/12 35/11 38/15 38/24 39/17 41/17
**urge [2]** 30/14 33/5
**URQUHART [2]** 1/14 1/18
**use [2]** 10/14 10/15
**used [2]** 29/6 29/7

**V**

**VA [1]** 1/23
**valid [1]** 27/16
**very [21]** 6/12 8/13 11/3 11/15 12/12 14/21 14/21 15/1 15/15 16/16 22/20 24/18 29/13 32/12 33/14 33/16 36/4 38/7 39/13 39/13 40/2
**view [3]** 6/11 9/12 14/13
**vs [1]** 1/5

**W**

**Wait [1]** 12/10
**waited [2]** 7/8 7/11
**waiting [4]** 12/11 13/14 15/17 41/17
**waive [1]** 23/24
**walking [1]** 15/4
**want [13]** 4/12 12/2 14/12 20/25 21/18 24/1 24/15 26/19 27/6 30/1 30/24 31/1 38/6
**wanted [1]** 4/17
**wants [1]** 38/24
**was [39]** 7/7 8/9 8/12 8/13 8/19 9/24 15/1 15/4 15/4 15/9 16/14 16/18 16/25 16/25 19/1 19/1 20/6 20/7 20/7 20/8 22/2 27/9 30/15 30/22 31/3 32/25 33/3 33/9 33/10 33/19 34/17 34/22 34/22 34/24 35/15 35/23 36/20 39/11 39/18
**Washington [3]** 1/20 2/5 2/9
**wasn't [1]** 35/12
**waste [1]** 31/1
**watching [1]** 6/13
**way [4]** 21/22 35/20 36/9 36/15
**we'll [4]** 4/10 31/21 40/14 41/7
**Wednesday [2]** 40/16 41/19
**week [2]** 7/12 16/13
**weeks [7]** 7/4 7/6 7/7 7/8 9/22 22/11 23/18
**weight [1]** 20/23
**well [14]** 13/7 13/24 15/15 19/8 21/12 22/2 23/4 26/14 30/14 30/20 37/25 38/20 39/19 41/15
**whatever [1]** 38/23
**whatsoever [3]** 7/14 8/20 13/12
**whereas [2]** 27/1 27/4
**whether [12]** 9/14 12/13 14/9 14/13 14/22 19/6 25/8 30/6 31/7 33/1 34/15 40/21
**while [7]** 18/10 18/11 18/17 23/2 24/13 26/3 30/16
**willing [1]** 31/7
**wish [4]** 4/22 5/15 6/22 12/1
**wishes [2]** 20/15 37/7
**withdraw [2]** 9/4 25/9
**withdrawn [1]** 30/11
**withholding [3]** 15/2 16/23 20/8
**within [2]** 7/3 7/5
**witness [4]** 11/15 36/23 37/5 41/22
**witnesses [2]** 40/1 41/22
**won't [1]** 17/19
**word [2]** 40/13 40/14
**works [1]** 26/5
**wouldn't [1]** 7/10
**writ [1]** 5/25
**writing [1]** 7/11
**written [1]** 37/1
**wrong [1]** 22/25

**X**

**XINIS [2]** 1/9 3/5

**Y**

**yeah [6]** 8/9 12/9 12/10 27/14 32/1 32/4
**year [3]** 28/4 28/9 28/10
**years [5]** 15/3 15/11 15/15 15/23 15/23
**yes [12]** 5/5 5/12 8/1 10/22 12/16 12/20 19/23 36/11 40/4 41/20 41/21 42/3
**yet [6]** 12/23 22/23 23/15 24/9 26/17 27/3
**York [1]** 1/15
**you'd [1]** 9/9
**you'll [1]** 7/10
**yourselves [1]** 3/13

**Z**

**Zadvydas [31]** 9/10 9/11 9/18 10/6 11/24 12/7 12/24 14/4 14/6 14/10 14/14 14/25 15/25 16/16 18/18 19/7 20/2 21/16 25/10 26/16 27/1 28/16 29/1 29/1 29/3 30/13 33/15 33/20 36/10 40/24 40/24
**Zavvar [3]** 14/21 15/22 15/22