# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, | Case No. 8:25-CV-02780-PX |
| Petitioner, | |
| v. | |
| KRISTI NOEM, ET AL., | |
| Respondents. | |

## RESPONDENTS' SUPPLEMENTAL BRIEF AND MOTION DISSOLVE THE PRELIMINARY INJUNCTION

BRETT A. SHUMATE
Assistant Attorney General
U.S. Department of Justice

JONATHAN GUYNN
Deputy Assistant Attorney General
U.S. Department of Justice
Civil Division
Torts Branch

DREW C. ENSIGN
Deputy Assistant Attorney General
U.S. Department of Justice
Civil Division
Office of Immigration Litigation

ERNESTO H. MOLINA, JR.
Deputy Director
U.S. Department of Justice
Civil Division
Office of Immigration Litigation –
    General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-616-93444
ernesto.h.molina@usdoj.gov

ATTORNEYS FOR RESPONDENTS

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND.................................................................................... 2

ARGUMENT ............................................................................................................ 5

I.      THE PRELIMINARY INJUNCTION SHOULD BE DISSOLVED .................... 5

II.     PETITIONER'S CHALLENGES TO MARCH 30 GUIDANCE ARE
        FORECLOSED BY THE SUPREME COURT AND NUMEROUS
        JURISDICTIONAL BARS.................................................................................. 7

        A.      Petitioner Cannot Litigate His Claims before Two Courts at Once........... 7

        B.      Petitioner Cannot Receive Preliminary Relief the Supreme Court
                Has Already Twice Rejected .................................................................... 11

                1.      The Supreme Court's decision in *D.V.D.* prohibits issuing
                        or maintaining a preliminary injunction against third-
                        country removal under the March 30 guidance ........................... 11

        C.      Numerous Jurisdictional Bars Foreclose Petitioner's Claims.................. 13

                1.      Section 1252(g) limits the Court's jurisdiction over
                        Petitioner's claims....................................................................... 14

                2.      Sections 1252(a)(5) and (b)(9) operate to preclude review
                        of Petitioner's claims .................................................................. 15

                3.      Section 1252(a)(4) and FARRA 2242(d) bar judicial review
                        or habeas review outside of a petition for review ........................ 19

                4.      The Fourth Circuit Has Clearly Ruled That
                        1252(a)(2)(B)(ii) review of statutory prerequisites for
                        actions that are specified to be discretionary ............................... 20

III.    THE PROCEDURES AFFORDED TO PETITIONER TO PURSUE ANY
        RIGHTS UNDER THE WITHHOLDING OF REMOVAL STATUTE OR
        CAT REGULATION COMPORT WITH DUE PROCESS ............................... 22

        A.      The March Guidance Procedures............................................................. 23

        B.      Petitioner's Interest in Additional Procedures Is Limited........................ 24

i

C.    The Supreme Court Has Determined That Aliens at the Border or
      Who Cross Evading Inspection and Admission Are Entitled Only
      to the Procedures Afforded by Congress ................................................... 26

D.    The Due Process Clause Does Not Require Additional Procedures
      Where the Department of State Has Received Diplomatic
      Assurances from Liberia and Found Those Assurances to Be
      Credible ..................................................................................................... 29

E.    The Substantial Process Available to Petitioner Substantially
      Reduces the Risk of an Erroneous Deprivation and Eliminate His
      Interest in Additional Procedures............................................................. 30

CONCLUSION ..................................................................................................... 32

CERTIFICATE OF SERVICE ............................................................................. 33

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrego Garcia v. Noem*,
   2025 WL 1021113 (4th Cir. Apr. 7, 2025) ............................................................... 21

*Abrego Garcia v. Noem*,
   771 F.Supp 3d 501 (D. Md. 2025) ............................................................................ 9

*Abrego Garcia v. Noem*,
   No. 8:25-cv-951, 2025 WL 2062203 ...................................................................... 22

*Alvarez v. ICE*,
   818 F.3d 1194 (11th Cir. 2016) .............................................................................. 15

*Camarena v. ICE*,
   988 F.3d 1268 (11th Cir. 2021) .............................................................................. 16

*Canal A Media Holding, LLC v. USCIS*,
   964 F.3d 1250. (11th Cir. 2020) ............................................................................. 16

*D.V.D. v. DHS*,
   778 F. Supp. 3d 355 (D. Mass. 2025) ................................................................. 8, 10

*Dada v. Mukasey*,
   554 U.S. 1 (2008) .................................................................................................... 28

*DHS v. D.V.D.*,
   No.24A1153, 2025 WL 154411 (U.S., May 1, 2025) ....................................... 10, 12

*DHS v. D.V.D.*,
   145 S. Ct. 2153 (2025) ....................................................................................... 11, 12

*DHS v. D.V.D.*,
   145 S. Ct. 2627 (2025) ........................................................................................... 11

*DHS v. Thuraissigiam*,
   591 U.S. 103 (2020) ................................................................................. 17, 18, 26, 27

*Dusenbery v. U.S.*,
   534 U.S. 161 (2002) ............................................................................................... 26

*Elgharib v. Napolitano*,
600 F.3d 597 (6th Cir. 2010) .................................................................................. 14

*Hamdi v. Rumsfeld,*
   342 U.S. 56 (2004) ................................................................................ 23

*Hollingsworth v. Perry,*
   558 U.S. 183 (2010) .............................................................................. 12

*J.E.F.M. v. Lynch,*
   837 F.3d 1026 (9th Cir. 2016) .............................................................. 16

*Japanese Immigrant Case,*
   189 U.S. 86 (1903) ........................................................................... 26, 28

*Johnson v. Guzman Chavez,*
   594 U.S. 523 (2021) .............................................................................. 19

*Kaplan v. Tod,*
   267 U.S. 228 (1925) .............................................................................. 27

*Kiyemba v. Obama,*
   561 F.3d 509 (D.C. Cir. 2009) ........................................................... 6, 29

*Kucana v. Holder,*
   558 U.S. 233 (2010) .............................................................................. 21

*Landon v. Plasencia,*
   459 U.S. 21 (1982) ........................................................................... 23, 26

*Linares v. DHS,*
   529 F. App'x 983 (11th Cir. 2013) ....................................................... 16

*Mata v. DHS,*
   426 F. App'x 698 (11th Cir. 2011) ....................................................... 16

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ......................................................................... 22, 23

*Medellin v. Texas,*
   552 U.S. 491 (2008) .............................................................................. 19

*Munaf v. Geren,*
   553 U.S. 674 (2008) .............................................................. 6, 17, 29, 30

*Nasrallah v. Barr,*
   590 U.S. 573 (2020) .............................................................................. 18

*Nat'l TPS All. v. Noem,*
   2025 WL 2661556 (9th Cir., Sept. 17, 2025) ..................................... 13

*Nishimura Ekiu v. United States*,
142 U.S. 651 (1892) ............................................................................ 26, 28

*Noem v. Nat'l TPS All.*,
2025 WL 2812732 (U.S., October 3, 2025) ......................................... 13

*Patel v. Garland*,
596 U.S. 328 (2022) ............................................................................ 21

*Polfliet v. Cuccinelli*,
955 F.3d 377 (4th Cir. 2020) .............................................................. 20

*Preiser v. Rodriguez*,
411 U.S. 475  (1973) ........................................................................... 17

*Reno v. American-Arab Anti-Discrimination* Committee,
("AADC"), 525 U.S. 471 (1999) ................................................... 14, 15

*Riley v. Bondi*,
145 S.Ct. 2190 (2025) ................................................................ 16, 18, 19

*Roland v. USCIS*,
850 F.3d 625 (4th Cir. 2017) .............................................................. 21

*Sadhvani v. Chertoff*,
460 F.Supp.2d 114 (D.D.C. 2006) ...................................................... 14

*Saint Fort v. Ashcroft*,
329 F.3d 191 (1st Cir. 2003) ............................................................... 19

*Shaiban v. Jaddou.*
97 F.4th 263 (4th Cir. 2024) .............................................................. 21

*Shaughnessy v. United States ex rel. Mezei*,
345 U.S. 206 (1953) ............................................................................ 27

*Silva v. United States*,
866 F.3d 938 (8th Cir. 2017) .............................................................. 15

*Singh v. Napolitano*,
500 F. App'x 50 (2d Cir. 2012) .......................................................... 14

*Skinner v. Switzer*,
562 U.S. 521 (2011) ............................................................................ 17

*Steele v. United States*,
144 F.4th 316 (D.C. Cir. 2025) ........................................................ 7, 8

*Themeus v. DOJ*,
    643 F. App'x 830 (11th Cir. 2016) ............................................................ 16

*Trump v. Boyle*,
    145 S. Ct. 2653 (2025) ......................................................................... 1

*United States ex rel. Turner v. Williams*,
    194 U.S. 279 (1904) ........................................................................... 26

*United States v. Curtiss-Wright Exp. Corp.*,
    299 U.S. 304 (1936) ........................................................................... 15

*Wilkinson v. Dotson*,
    544 U.S. 74 (2005) ............................................................................ 17

*Wong Yang Sung v. McGrath*,
    339 U.S. 33 (1950) ............................................................................ 26

*Woodby v. INS*,
    385 U.S. 276 (1966) ............................................................................. 9

**Statutes**

8 U.S.C. § 1101(a)(13)(A) ...................................................................... 2

8 U.S.C. § 1101(a)(47)(A) ...................................................................... 9

8 U.S.C. § 1159(b) ............................................................................. 21

8 U.S.C. § 1225(a)(1) .......................................................................... 27

8 U.S.C. § 1229a(c) ......................................................................... 9, 24

8 U.S.C. § 1231 ........................................................................... 17, 28

8 U.S.C. § 1231(a) ............................................................................ 24

8 U.S.C. § 1231(a)(5) ......................................................................... 19

8 U.S.C. § 1231(b)(2)(C) .................................................................. 20, 21, 22

8 U.S.C. § 1252(a)(2)(B) .................................................................... 20, 21

8 U.S.C. § 1252(a)(2)(B)(i) .................................................................... 21

8 U.S.C. § 1252(a)(2)(B)(ii) ......................................................... 1, 20, 21, 22

8 U.S.C. § 1252(a)(4) ......................................................................... 19

8 U.S.C. § 1252(a)(5) ........................................................................................ 1, 15, 16

8 U.S.C. § 1252(b)(2) ................................................................................................ 15

8 U.S.C. § 1252(b)(9) ....................................................................................... 1, 15, 16

8 U.S.C. § 1252(f)(1) ................................................................................................. 12

8 U.S.C. § 1252(g) ........................................................................................... 1, 14, 15

28 U.S.C. § 2241 ....................................................................................................... 14

Foreign Affairs Reform and Restruction Act of 1998, § 2242(d) ......................... 19, 20

**Regulations**

8 C.F. R. § 241.8(e) .................................................................................................. 19

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## GREENBELT DIVISION

|  |  |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, | Case No. 8:25-CV-02780-PX |
| Petitioner, | **RESPONDENTS' SUPPLEMENTAL** |
| v. | **BRIEF AND MOTION DISSOLVE THE** |
| KRISTI NOEM, ET AL., | **PRELIMINARY INJUNCTION** |
| Respondents. | |

## INTRODUCTION

Petitioner's claims are procedurally barred multiple times over and fail on the merits in any event. This Court should therefore dissolve its preliminary injunction and permit the government to remove Petitioner to Liberia.

As an initial matter, this action represents impermissible claim splitting. Petitioner is a member of the *D.V.D.* non-opt-out class and therefore must present his claims to the District of Massachusetts, which is hearing that class action. Claim-splitting aside, Petitioner's challenges to removal are subject to *multiple* jurisdictional bars. As explained in the government's prior briefing in this case, as well as the briefing in the Supreme Court in *D.V.D.*, which culminated in the grant of a complete stay, Petitioner's challenges to removal are barred by 8 U.S.C. § 1252(a)(2)(B)(ii), (a)(5), (b)(9), and (g), as well as FARRA § 2242(d). Just as the *D.V.D.* Plaintiffs' attempt to secure relief failed in the Supreme Court, Petitioner's substantively identical claims must fail here too. *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (Although the Court's "interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases," and they "squarely control[]" in like cases.).

Even if the merits were properly presented here, Petitioner's claims fail. The Constitution does not entitle Petitioner to process beyond what the political branches have chosen to afford.

1

And even if Petitioner were entitled to further process, it could not include judicial intervention in foreign diplomacy by second-guessing of diplomatic assurances that the Secretary of State has obtained and deemed credible and sufficient.

This Court should therefore dissolve its preliminary injunction and permit Petitioner to be removed to Liberia under DHS's March 30 policy.

## FACTUAL BACKGROUND

Petitioner is a citizen and native of El Salvador. He entered the United States unlawfully at some point prior to 2019. In March of 2019, the Petitioner was served a Notice to Appear in removal proceedings, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). He has never been lawfully admitted into the United States. 8 U.S.C. § 1101(a)(13)(A) (defining "admission" as "lawful entry of the alien into the United States after inspection and authorization by an immigration officer"). At a bond hearing, the immigration judge found that the Petitioner presented a danger to his community and that he had failed to refute the evidence that showed he was a verified member of MS-13. Exhibit C at 2-3. *That* evidence included that a "past, proven, and reliable source of information" had verified Petitoner's membership in MS-13, his rank, and his gang name. *Id.* at 3. The court denied bond. *Id.* That decision was upheld by the Board of Immigration Appeals. *See* Exhibit D. Separately, the immigration court found Petitioner removable, given that he had "admitted" that he entered the country illegally and that he was removable "as charged." *See* ECF 28-1 at 23.

Petitioner then filed an I-589 application for asylum, statutory withholding of removal, and protection under the regulations implementing the United Nations Convention Against Torture ("CAT"). ECF 28-1 at 23. On October 10, 2019, an immigration judge issued a final removal order denying Petitioner's application for asylum and protection under the CAT, but granting him

statutory withholding of removal to El Salvador. ECF 28-1 at 35. Notwithstanding that withholding of removal to El Salvador, the Petitioner has no lawful status within the United States.

On June 6, 2025, Petitioner was paroled into the United States. ECF 1 at 10; *see also* ECF 6 (submitted under seal). On that date, he was taken into criminal custody to face criminal charges in the Middle District of Tennessee. *See U.S. v. Abrego Garcia,* No. 3:25-cr-115, ECF 9 & 10. On August 22, 2025, the Petitioner was released on bond relating to his criminal proceedings. *See U.S. v. Abrego Garcia*, No. 3:25-cr-115, ECF 112. On August 25, 2025, Petitioner was taken into custody by Immigration and Customs Enforcement ("ICE") in Baltimore, Maryland, pending removal. *See* ECF 1 at ¶ 43. ICE initially notified Petitioner that he would be removed to Uganda, however, the Petitioner expressed fear of removal to Uganda. ECF 1-5; ECF 27-2 at 2. On August 25, 2025, the Petitioner filed a Motion to Reopen before the immigration judge, pursuing an opportunity to apply for asylum and withholding of removal based on his fear of removal to Uganda, as well as requesting other relief. ECF 28-1 at 2, 12.

Also, on August 25, 2025, Petitioner filed a habeas petition challenging his detention based on *Zadvydas v. Davis*, as well as a number of other claims. *See generally* ECF 1. In a conference with the district court on August 25, 2025, the Government agreed that it would not remove Petitioner while his Motion to Reopen was pending before the immigration judge. ECF 24 at 21. This Court entered a letter order on August 27, 2025, enjoining ICE, or members of the United States government, "from removing the Petitioner from the continental United States." ECF No. 20. Further, and based on Petitioner's fear expression related to deportation to Uganda, ICE named Eswatini as the country of removal. ECF 27 at 1; ECF 27-3. On October 1, 2025, the immigration judge denied Petitioner's Motion to Reopen. ECF 39 (sealed). On October 27, 2025, Petitioner

filed an appeal with the Executive Office for Immigration Review's Board of Immigration Appeals ("Board" or "BIA").

On October 10, 2025, this Court held an evidentiary hearing. At the hearing, the Court examined documentation and witness testimony regarding potential removal of the Petitioner. During the hearing, this Court agreed that if the Government were in a position to effectuate removal, it could motion the court to dissolve the previous order enjoining removal. *See* ECF 52, at 37 ("[A]t any point you can ask me to modify, dissolve, end . . . the injunction."); *see also id.* at 2-52.

On October 24, 2025, the government filed notice with this Court that the government of Liberia has agreed to accept the Petitioner and has relayed diplomatic assurances regarding this treatment and status. ECF No. 56; see also Exhibit E (Determination by Kristi Noem); Exhibit F (Letter from Secretary of State Marco Rubio to Secretary of Homeland Security Kristi Noem); Exhibit G (Diplomatic Assurances received from the Government of Liberia); Exhibit H (Announcement by Liberian Ministry of Information). Likewise, on October 24, 2025, the government notified Petitioner, through counsel, that he would be removed to Liberia if the government were permitted to do so. ECF 57-1 at 3. On October 24, 2025, Petitioner communicated a fear of removal to Liberia, prompting a screening by the United States Citizenship and Immigration Services ("USCIS"). *Id.* at 2. USCIS performed that screening on October 28, 2025. *See* Exhibit I (interview record)*.* On October 28, 2025, USCIS concluded that Petitioner did not demonstrate that it was more likely than not that he would be persecuted or tortured in Liberia. *See* Exhibit J (decision).

## ARGUMENT

### I.    THE PRELIMINARY INJUNCTION SHOULD BE DISSOLVED.

Now that the government has identified and designated a country that will accept Petitioner for a third-country removal, and the government has complied with its March 30 policy governing such removals, the government respectfully requests that this Court dissolve its injunction barring Petitioner's removal. Because Petitioner's challenges to removal are procedurally and jurisdictionally barred, and also fail on the merits, such a dissolution is warranted here. That is so for all of the reasons previously explained by the government in its prior filing (ECF 28), which the government incorporates herein, as well as the reasons explained below.[1]

The government's compliance with DHS's March 30 policy is not reasonably disputable. That policy permits removal to third countries under two distinct alternatives: (1) where the government has received "diplomatic assurances that aliens removed from the United States will not be persecuted or tortured" and "the Department of State believes those assurances to be credible," or (2) where, if the alien affirmatively states a fear, the alien is given a screening by U.S. Citizenship and Immigration Service (USCIS), and USCIS determines that it is not "more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal." ECF 28-2 at 3.

Here, the government has in an abundance of caution exercised *both* alternatives, either one of which would individually suffice. The United States has received the requisite assurances from the government of Liberia, which here notably includes assurance that individuals would not be refouled to any country where they would be subject to persecution or torture. *See* Exhibit G.

---

[1]  Petitioner's challenges to detention also fail for the reasons set forth in the government's prior brief (ECF 28). Because this motion seeks to dissolve the injunction regarding removal, however, this brief does not address those challenges to detention.

The Secretaries of State and Homeland Security have further judged those assurances to be sufficient and credible. *See* Exhibits E & F. And "the Judiciary is not suited to second-guess such determinations—determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area." *Munaf v. Geren*, 553 U.S. 674, 702 (2008). Thus, "[u]nder [the Supreme Court's decision in] *Munaf* … the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee." *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009) *cert. denied*, 559 U.S. 1005 (2010).

Petitioner is alternatively removable under the March 30 policy because USCIS has determined that Petitioner has not carried his burden for obtaining relief based on fear of persecution or torture. *See* Exhibit J. While he sought a stay from the immigration judge, that stay was denied. Importantly, using his alternative avenue to present his claim – a motion to reopen before the immigration judge – Petitioner sought a stay of removal, but that request was denied. While he has filed an appeal from the immigration judge's denial of his motion to reopen, there is no indication that Petitioner even sought a stay of removal from the Board of Immigration Appeals.

Petitioner is thus removable on two independent grounds under the March 30 policy, and the Supreme Court has explicitly permitted removals under that policy while the *D.V.D.* class action is being litigated. And, as set forth below and previously, Petitioner's challenges to that policy fail.

Dissolution of the preliminary injunction is also in the public interest. Petitioner has an outstanding order of removal based on his past experience as a member of the international terrorist organization and criminal gang MS-13. Removal of such an individual is in the public interest. In 2019, an immigration judge concluded that "the evidence shows that [Abrego Garcia] is a verified

member of MS-13" and that he "has failed to present evidence to rebut that assertion." Exhibit C IJ Order 2-3. It concluded too that as a member of a notorious and violent gang, he presents a danger to Americans. *Id.* That conclusion was then affirmed by the BIA. Exhibit D. And it remains true today. As Acting Field Office Director Cerna explained, Abrego Garcia was arrested this March "due to his prominent role in MS-13." Exhibit K at ¶ 11; *see also id.* ¶ 15.

## II. PETITIONER'S CHALLENGES TO MARCH 30 GUIDANCE ARE FORECLOSED BY THE SUPREME COURT AND NUMEROUS JURISDICTIONAL BARS.

Petitioner has already litigated his third-country removal arguments in another court, as a member of the *D.V.D.* class. And the Supreme Court has already determined—twice—that preliminary relief on the same claims is not appropriate. This Court cannot resolve Petitioner's third-country removal claims, which he is litigating as a class member before another court. Nor can this Court enter preliminary relief on the claims in light of the Supreme Court's stay decisions, which control the permissibility of preliminary relief in other cases. And the Court cannot resolve any of the third-country removal claims because Congress has chosen to bar the Court's review of the claims several times over.

### A. Petitioner Cannot Litigate His Claims before Two Courts at Once.

Petitioner is a member of the class certified under rule 23(b)(2) in *D.V.D. v. DHS*. He cannot split his claims and get two bites at relief by challenging third-country removal before two different courts at the same time.

A party attempts to split its claims when it maintains two separate actions regarding the same subject-matter at the same time. Claim-splitting is forbidden. Just as claim preclusion bars duplicative successive lawsuits, "[c]laim-splitting prohibits duplicative litigation filed before judgment" in either case. *Steele v. United States*, 144 F.4th 316, 324 (D.C. Cir. 2025). "[T]he

claim-splitting rule provides a valid, independent basis for dismissal," as "[e]very circuit to address claim-splitting" has concluded. *Id.*

That rule accords with the nature of Rule 23(b)(2) classes. Unlike opt-out classes certified under Rule 23(b)(1), where a class member may follow the process to opt out of the class and pursue his own claims on an individual basis, members of Rule 23(b)(2) classes are bound to the judgment with no opportunity to opt out. A court that permits a Rule 23(b)(2) class member to litigate his own claims individually both violates both the claim-splitting rule and impinges on the authority of the court hearing the Rule 23(b)(2) class. If Petitioner's challenges to third-country removal procedures belong anywhere, then, they belong before Judge Murphy in *D.V.D.* That is because Petitioner is a member of the *D.V.D.* class, and he presses claims that are substantively indistinguishable from the claims at issue in *D.V.D.*

**1.** Petitioner is a member of the *D.V.D.* class. The *D.V.D.* class is defined as:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceeding as a country to which the individual would be removed.

*D.V.D. v. DHS,* 778 F. Supp. 3d 355, 378 (D. Mass. 2025). That class definition plainly includes Petitioner. He was found removable by an immigration judge after he admitted the allegations and conceded the charges against him. *See* ECF 28-1 at 23. Further, he is presently facing removal to a country (Liberia) that was neither designated as a country or alternative country of removal nor identified in writing in the prior proceeding.

Petitioner argues that he is not a *D.V.D.* class member because he does not have a final order of removal. *See* ECF 32 at 9-10. That is plainly incorrect. His only evidence to sustain his counterintuitive claim is (1) a comment by the Court in earlier proceedings (8:25-cv-951) that the

government had not provided an order of removal; and (2) a DHS officer's checkmark in one box on a detainer form as opposed to another. *Id.* at 10.

Neither holds water. First, the Court's statement that the Government "has not produced *any* order of removal as to Abrego Garcia, executed or otherwise," *Abrego Garcia v. Noem,* 771 F.Supp 3d 501, 514 (D. Md. 2025), does not reflect the present state of the record. The government has since provided evidence of an order of removal, which is memorialized in the immigration judge's memorandum and order granting withholding of removal, which stated:

> At a Master Calendar Hearing the Respondent, through counsel, admitted the factual allegations contained in the [Notice of Appeal] and conceded removability as charged. Based on the Respondent's admissions and concessions, the Court found his removability to be established by clear and convincing evidence as required by INA 240(c)(3). *See also Woodby v. INS*, 385 U.S. 276 (1966). As relief from removal, [Petitioner] filed a Form I-589 . . . .

ECF 28-1 at 23. Accordingly, the immigration judge has adequately memorialized the determination. No law requires additional formalization of this order. *Cf.* 8 U.S.C. 1229a(c). Indeed, the statutory definition of an "order of removal" is "the order of the [immigration judge] … concluding that the alien is deportable or ordering deportation." 8 U.S.C. 1101(a)(47)(A). The express, memorialized conclusion that the alien is deportable is sufficient to constitute an order of removal.

Second, the checkboxes on a detainer form (ECF 32-1 at 2) completed *five years* after the immigration judge's decision have no bearing on whether Petitioner has a final order of removal. That form has no power to override the removal order plainly entered by the immigration judge and amply documented in the record before the Court.  Indeed, as explained to the petitioner in his Notice of Revocation of Release, he was unambiguously explained that " ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of

9

removal against you. . . .  You are subject to an administratively final order of removal."  Exhibit L at 1.

**2.** Petitioner is attempting to assert the same claims in this case that he is also litigating as a class member in *D.V.D.* The claims presented in *D.V.D.* include whether "Defendants' policy or practice of failing to provide notice and an opportunity to be heard prior to removal to a country that was not designated in their removal orders, which Plaintiffs allege violates the INA, the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), regulations implementing the two statutes, and the Due Process Clause of the Fifth Amendment." *D.V.D.,* 778 F.Supp. 3d at 369. Importantly, that challenge is expressly aimed at the Secretary's March 30 memo. *See, e.g.,* Exhibit Q, Opposition to Motion to Clarify ("Clarification Opp"), *DHS v. D.V.D.,* 24A1153 (U.S.), at 1-2, 5.  On appeal, the plaintiff class expressed their concern that the Government's procedures risk chain refoulement. Exhibit N, Opposition to Application to Stay ("Stay Opp"), *DHS v. D.V.D.,* 24A1153 (U.S.), at 3, 10, 28. They complained about the lack of visibility into the Government's diplomatic assurance process. *Id.*, Stay Opp at 27-30. They argued that class members were entitled under the Fifth Amendment to meaningful notice and an opportunity to be heard on any fear-based claims. *Id.,* Stay Opp at 33-36. They argued that the Government was failing to follow the March Guidance. Exhibit Q, Clarification Opp at 5 ("The eight class members in Djibouti have not yet received even the process provided for under Defendants' own policy, its March 30, 2025 policy memorandum."); *id.* at 1-2 (alleging that class members had received "not even the process afforded by the government's own policy memorandum"). They also objected to the Government's claims of irreparable harm and mounted numerous arguments about the harm that would befall their class members who, at the time of briefing, included eight aliens who the Government intended to send to South Sudan and who class counsel cited news articles they claimed

demonstrated these eight aliens would be returned to their countries of origin. Exhibit N, Stay Opp at 36-40; Exhibit Q, Clarification Opp at 3-5. Despite all of these arguments, the Supreme Court sided with the Government *twice.*

Petitioner raises the same claims. Just as he does as a class member in *D.V.D.*, he challenges the March 30 guidance. Just as in *D.V.D.*, he argues that the March Guidance lacks adequate procedures. ECF 1 at ¶¶ 60-67; ECF 32 at 20. As such, being a class member presenting the identical claim, or as someone bringing a "like" claim, his claims cannot proceed.

Petitioner's argument that the Government impermissibly disregarded his preferred country of removal does not place him outside the *D.V.D.* class. ECF 32 at 15. That claim, too, is a challenge to the March 30 Guidance, which governs the process for Petitioner's removal to the country it has designated. At absolute most, Petitioner could continue to litigate only that claim (albeit, the Court would lack jurisdiction, as explained *infra* at 20-22), not his other challenges to the March 30 guidance.

### B.    Petitioner Cannot Receive Preliminary Relief the Supreme Court Has Already Twice Rejected.

#### 1.    The Supreme Court's decision in *D.V.D.* prohibits issuing or maintaining a preliminary injunction against third-country removal under the March 30 guidance.

The Supreme Court has already determined that third-country removals may go forward under the March 30 policy while those claims are litigated in the *D.V.D.* class action by granting a stay pending certiorari. *DHS v. D.V.D.*, 145 S. Ct. 2153 (2025). When the district court attempted to enjoin the removal of aliens to South Sudan notwithstanding the Supreme Court's stay, the Supreme Court entered an extraordinary second order permitting the removals to go forward. *DHS v. D.V.D.*, 145 S. Ct. 2627 (2025). Indeed, Justice Kagan emphasized the impropriety of further orders foreclosing removal: "I do not see how a district court can compel compliance with an order

that this Court has stayed." *Id.* at 2630 (Kagan, J., concurring). But Petitioner's request here seeks relief identical to that which the Supreme Court stayed, and on the very same bases.

As explained above, all of the claims and arguments Petitioner presses here regarding his country of removal have also been pressed in *D.V.D.*, including before the Supreme Court. *See generally* Exhibit N, Stay Opp; Exhibit Q, Clarification Opp. Despite all of these arguments, the Supreme Court sided with the Government *twice* in concluding that a preliminary injunction is impermissible, and third-country removals should proceed while the *D.V.D.* litigation unfolds. This Court should not force the Supreme Court to reiterate that conclusion for a third time.

Petitioner speculates that the Supreme Court's *two* stays may be irrelevant to this case if they depended only on a conclusion that the *D.V.D.* district court entered a classwide injunction that violated Section 1252(f)(1)'s prohibition on classwide relief. That theory is not consistent with the Supreme Court's decisions. If the only problem were classwide relief, the Supreme Court would have narrowed the preliminary injunction to apply only to the named plaintiffs, for whom Section 1252(f)(1) does not forbid a preliminary injunction. But the Court instead stayed the preliminary injunction as to both the named plaintiffs and class members like Petitioner.

Even if the Supreme Court's merits analysis could have rested solely by Section 1252(f)(1), that would not make the stay decisions irrelevant. In granting the stays, the Court necessarily *also* concluded that the balance of equities and public interest weighed in the Government's favor. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). As the Government explained, arranging a third-country removal "is a delicate diplomatic endeavor," and orders that inject courts "into that process" "disrupt[] those carefully negotiated arrangements" and "caus[e] major and irremediable harm to U.S. foreign policy." Exhibit M, Application for a Stay of the Injunction, *DHS v. D.V.D.*, No.24A1153 (U.S.) at 1, 8. This Court should not openly defy the Supreme Court's order by

visiting more *direct* harm to the diplomatic process than the Supreme Court already twice found objectionable. For this reason alone, a preliminary injunction barring Petitioner's removal to Liberia is impermissible.

Petitioner also suggests that the *D.V.D.* stays should not inform his case because they were issued in a different "procedural posture" on a "different record." ECF 32 at 12, quoting *Nat'l TPS All. v. Noem*, 2025 WL 2661556 at *3 (9th Cir., Sept. 17, 2025). That argument confirms the error of this position. The Supreme Court has since rejected that reasoning by granting a stay, concluding that "[a]lthough the posture of the case has changed, the parties' legal arguments and relative harms generally have not," so the "same result" remained "appropriate." *See Noem v. Nat'l TPS All.*, 2025 WL 2812732 (U.S., October 3, 2025). That merely underscores that presenting the same arguments in slightly different circumstances does not suffice to ignore the effects and implications of the Supreme Court's interventions to stay preliminary relief.

### C.  Numerous Jurisdictional Bars Foreclose Petitioner's Claims.

Even if Petitioner were not a member of the mandatory *D.V.D.* class, numerous sections of the INA preclude this Court from issuing the relief Plaintiffs seek. Instead, his challenges to removal are effectively identical to those raised by the (b)(2) plaintiff class in the *D.V.D. v. DHS* case. Those claims were extensively litigated at the U.S. Supreme Court. *See* Exhibit M, Application for a Stay of the Injunction, *DHS v. D.V.D.,* No.24A1153 (U.S.); Exhibit N, Stay opp; Exhibit O, Reply in Support of Application for a Stay of the Injunction, *DHS v. D.V.D.,* No.24A1153 (U.S.); Exhibit P, Motion for an Order Clarifying, *DHS v. D.V.D.,* No.24A1153 (U.S.).; Exhibit Q, Clarification Opp; Exhibit R, Reply in Support of Motion for an Order Clarifying, *DHS v. D.V.D.,* No.24A1153 (U.S.). Respondents incorporate those arguments here as well.

### 1.   Section 1252(g) limits the Court's jurisdiction over Petitioner's claims.

*First*, 8 U.S.C. § 1252(g) deprives the Court of jurisdiction to review Petitioner's claims because the claims arise from the execution of his removal order. Section 1252(g), as amended by the REAL ID Act, bars claims arising from three discrete actions, including, as relevant here, the decision or action to "execute removal orders." *Id.* In enacting § 1252(g), Congress spoke clearly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. *Id.*; *accord Elgharib v. Napolitano,* 600 F.3d 597, 605 (6th Cir. 2010) (holding that Section 1252(g) precludes jurisdiction under the All Writs Act); *Sadhvani v. Chertoff,* 460 F.Supp.2d 114, 122 (D.D.C. 2006) (same). Accordingly, by its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241 of claims arising from a decision or action to "execute" a final order of removal. *See Reno v. American-Arab Anti-Discrimination Committee* ("AADC"), 525 U.S. 471, 482 (1999); *see also Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012) (holding that attempt to "employ[] a habeas petition effectively to challenge the validity and execution of [a] removal order," even "indirectly," is "jurisdictionally barred"). The decision to execute a removal order is committed to the discretion of the Executive Branch, and § 1252(g) was designed to protect that discretion and to avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings." AADC, 525 U.S. at 487.

Petitioner appears to suggest that the ambit of Section 1252(g) is limited to "discretionary" decisions. ECF 32 at 15-16. However, his suggestion is contrary to the language of the statute and distorts the Supreme Court's point. For example, section 1252(g) applies to constitutional claims arising from the execution of a final order of removal, as the language barring "any cause or claim"

made it "unnecessary for Congress to enumerate every possible cause or claim[.]" *AADC*, 525 U.S. at 487; *accord Silva v. United States*, 866 F.3d 938, 940-41 (8th Cir. 2017). Further, *AADC* established that § 1252(g) is "designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Alvarez v. ICE*, 818 F.3d 1194, 1205 (11th Cir. 2016) (quoting, *AADC,* 525 U.S. at 485). Section 1252(g) therefore precludes "[e]fforts to challenge the refusal to exercise [favorable] discretion on behalf of specific aliens[.]" *Id.* (quoting *AADC*, 525 at 485).

Of course, there is no doubt that the timing of when an alien should be removed is a matter of discretion. Here, section 1252(g)'s prohibition is particularly pronounced. Petitioner's habeas petition not only plainly arises from the effort to remove him, and the remedy he seeks falls firmly within the Executive's "plenary and exclusive" authority to speak for the country "in the field of international relations." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936). All three branches of Government have made clear that Petitioner's claim regarding the sufficiency of assurances by a foreign state is outside this Court's control; this Court should deny the petition.

### 2. Sections 1252(a)(5) and (b)(9) operate to preclude review of Petitioner's claims.

Petitioner's claims are barred in district courts by Section 1252(a)(5) and (b)(9). By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(a)(5), (b)(2). This explicitly excludes "section 2241 of title 28, or any other habeas corpus provision." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial

review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483.  "Taken together, § 1252(a)(5) and [(b)(9)] mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). Section 1252(b)(9) thus eliminates this Court's jurisdiction over Petitioner's claims by channeling "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" to the courts of appeals. Accordingly, this Court lacks jurisdiction under §§ 1252(a)(5) and (b)(9) to review Petitioner's request to "undo" his removal. *See J.E.F.M.*, 837 F.3d at 1031; *see also Mata v. DHS*, 426 F. App'x 698, 700 (11th Cir. 2011); *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1257-58. (11th Cir. 2020); *Camarena v. ICE,* 988 F.3d 1268, 1272 (11th Cir. 2021); *Linares v. DHS*, 529 F. App'x 983 (11th Cir. 2013); *Themeus v. DOJ*, 643 F. App'x 830 (11th Cir. 2016).

Petitioner attempts to eschew the plain import of the statutory bars he faces. He argues that the government is conflating "challenges to a removal order itself with challenges to the procedures for obtaining withholding of removal to a third country." ECF 32 at 17, citing *Riley v. Bondi*, 145 S.Ct. 2190, 2199 (2025). Not so. Section 1252(b)(9) draws no distinction between challenges to a removal order and challenges to withholding of removal procedures. The text plainly sweeps beyond challenges to a removal order to encompass all "questions of law and fact . . . arising from *any action taken* or *proceedings brought* to remove an alien." 8 U.S.C. 1252(b)(9) (emphasis added). Designating a third country for removal is an action taken to remove Petitioner, so it falls within the bar.

Even if Petitioner's suggestion that he merely challenges "procedures for obtaining withholding of removal to a third country" had any merit—and that somehow it is not a challenge

to the adequacy of the "proceedings brought" to remove him—that would just mean that his claims fail for a different reason: They would fall outside the proper scope of habeas corpus. As a general matter, habeas corpus is intended to "remov[e] the injury of unjust and illegal confinement." *DHS v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (quoting 3 Blackstone, Commentaries on the Laws of England 137) (emphasis deleted in original). The function and role of habeas "to ascertain . . . whether any person is rightfully in confinement or not." *Id.* (ellipsis in original). *"*It is clear . . . from the common-law history of the writ . . . that the essence of habeas corpus is an attack by the person in custody on the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475 484 (1973). Claims that fall outside this "core" may not be pursued through habeas corpus. *See, e.g. Skinner v. Switzer*, 562 U.S. 521, 535, n.13 (2011); *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *Munaf v. Geren*, 552 U.S. 674, 593 (2008). Thus, in *Thuraissigiam*, the Court held that habeas could not be used "to permit a petitioner to claim the right to enter or remain in a country or to obtain administrative review leading to that result." 591 U.S. at 117. Instead, "the writ simply provided a means of contesting the lawfulness of restraint and securing release." *Id.*

Petitioner's various claims relating to removal to a third country are not related to the actual basis of confinement. Here, Petitioner is subject to detention under 8 U.S.C. § 1231 as a result of his final order of removal.  The proper scope of the Court habeas jurisdiction extends only to evaluating the lawful authority for detention. Since the basis of his confinement is his order of removal (which, as discussed *supra*, is expressly barred from habeas corpus review), the Court authority is limited to evaluating whether his order of removal provides a lawful basis for his detention.

The Supreme Court has weighed in recently on the issues that relate to or affect a "final order of removal." In *Thuraissigiam*, the Supreme Court considered the question of whether asylum was related to a final order of removal for purposes of habeas corpus, but it noted that the petitioner "did not ask to be released." *Thuraissigiam*, 591 U.S. at 117. There, the petitioner "sought entirely different relief: vacatur of his 'removal order' and 'an order directing [the Department] to provide him with a new . . . opportunity to apply for asylum and other relief from removal.'" *Id.* at 117-18. It further cited the efforts to provide him with further procedures, but the Court observed "that relief falls outside the common-law scope of habeas writ." *Id.* at 118. Indeed, it was that call for further proceedings that demonstrated that the "petition did not call for traditional habeas relief." *Id.*

Recently, the Court has gone further in explaining what constitutes part of a "final order of removal," which is the basis for Petitioner's detention. In *Nasrallah v. Barr*, the Court explained that protection under the CAT was not part of the "final order of removal." 590 U.S. 573, 582 (2020). "A CAT order is not itself a final order of removal because it is not an order 'concluding that the alien is deportable or ordering deportation.'" *Id.* Importantly, "a CAT order does not disturb the final order of removal." *Id.* Even if CAT is granted, the alien "still may be removed at any time to another country where he or she is not likely to be tortured." *Id.* The Court answered the question of what comprises a "final order of removal" —*i.e.,* the order that formulates the basis for Petitioner's purported unlawful detention: "[F]inal orders of removal encompass only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal." *Id.*

The Court has recently provided even further insight into what issues are properly considered to affect the validity of a final order of removal. In *Riley v. Bondi*, the Court considered

18

the import of withholding-only proceedings.[2] In examining the timing to pursue judicial review

before the courts of appeals, the Court ruled that restriction of removal (withholding of removal)

did not affect the finality of a final order of removal, thus the petitioner for review must be filed

within 30 days of the final order of removal. *Riley v. Bondi*, 606 U.S. ___, 145 S.Ct. 2190 at 2199

(2025); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 535-38 (2021).[3] Importantly, the

Supreme Court expressly noted that the relatively infrequent removal of aliens to third countries

did not change the analysis. *Id.* at 537-38. Accordingly, an order relating to withholding of removal

did not comprise a part of, nor affect the validity of, a final order of removal. Thus, if Petitioner is

right that he merely "challenges [] the procedures for obtaining withholding of removal," ECF 32

at 17, then he is challenging something that does not affect this removal order and does not relate

the basis for his current detention, and consequently, he cannot present his claim here.

### 3. Section 1252(a)(4) and FARRA 2242(d) bar judicial review or habeas review outside of a petition for review.

FARRA and 8 U.S.C. § 1252(a)(4) also preclude this Court from issuing the requested

relief. The Convention Against Torture (CAT) is not self-executing. *See Medellin v. Texas*, 552

U.S. 491, 505, 520 (2008); *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003). Rather, it

operates domestically only to the extent Congress implements it by statute. Congress has

---

[2] Contextually, a brief explanation of withholding-only proceedings is appropriate. When an alien is removed under a final order of removal, but returns to the United States unlawfully, DHS may subject the alien to "reinstated removal," which, upon a determination by the agency that the alien is unlawfully present after previously being removed under an order of removal, permits the agency to reinstate the prior order of removal, and creates an express bar to review of the prior determination and rendering the alien ineligible for relief from removal. *See* 8 U.S.C. § 1231(a)(5). However, the agency still provides for an avenue to pursue either restriction of removal (withholding of removal under a prior statute) and protection under CAT. In such cases, the alien is put in "withholding-only" proceedings before an immigration judge, if the alien shows the requisite fear. 8 C.F.R. § 241.8(e).

[3] The Court did not determine whether the "reinstatement" of the order of removal was, itself, a final order of removal, and that remains an open question.

implemented it by directing the issuance of regulations, expressly depriving courts of jurisdiction to review those regulations, and channeling all review of individual CAT claims into review of final orders of removal. FARRA § 2242(d); *see also* 8 U.S.C. § 1252(a)(4) (explaining that "a petition for review" is the "sole and exclusive means for judicial review of any cause or claim under the [CAT]"). The Court may not review those regulations or evade those limitations by imposing its own requirements on the third-country removal process.

4.     **The Fourth Circuit Has Clearly Ruled That 1252(a)(2)(B)(ii) bars review of statutory prerequisites for actions that are specified to be discretionary.**

Finally, as to Petitioner's claim that the government impermissibly disregarded his designation of a country of removal, the Court's jurisdiction over the agency's discretionary action under 8 U.S.C. § 1231(b)(2)(C) is barred by 8 U.S.C. § 1252(a)(2)(B), which provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review –
>
> (i) Any judgment regarding the granting of relief under sections 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
> (ii) any other decision or action of the Attorney Geneal or the Secretary of Homeland Security the authorization for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B). The Fourth Circuit has ruled that challenges to such decisions or actions extending from an authority specified as "discretionary" by Congress extends not only to the "discretionary" aspect of the determination, but to all aspects of the decision, including constitutional questions. *See Polfliet v. Cuccinelli*, 955 F.3d 377, 383-84 (4th Cir. 2020). Importantly, the statute need not contain the words "discretion" or "discretionary" to qualify; rather, even the indication that the agency "may" take an action suffices. *Id.* at 381-82. Even the

effort to suggest that a "legal issue" is being presented does not remove the issue from the bar in § 1252(a)(2)(B)(ii). *See Roland v. USCIS*, 850 F.3d 625, 629-30 (4th Cir. 2017).

Petitioner cites *Abrego Garcia v. Noem*, 2025 WL 1021113, at *2-3 (4th Cir. Apr. 7, 2025) (Thacker, J., concurring), to support his argument that the bar does not apply if the statutory prerequisites for disregarding an alien's selected country are not satisfied. *See* ECF 32 at 24 ("but that is not the case since none of the four statutory circumstances are presented that might authorize the exercise of discretion."). But that decision addressed § 1252(g), not § 1252(a)(2)(B). And Judge Thacker's separate stay opinion cannot override the Supreme Court's holding that § 1252(a)(2)(B)(i) (barring review of judgments relating to specified forms of relief) and (B)(ii) (applying to any other decision or action specified to be in discretionary) are to be read in harmony and given the same effect—particularly in light of (B)(ii)'s use of "any other decision or action." *See Kucana v. Holder,* 558 U.S. 233, 247 (2010). As the Court explained in *Patel v. Garland*, in § 1252(a)(2)(B), Congress was going for the same end: that discretionary decisions will not be subject to review. 596 U.S. 328, 342-43. Accordingly, just as the all the parts of the determination made under § 1252(a)(2)(B)(i)—questions of law, questions of fact, and constitutional questions—are subject to the bar, so, too, are the components of the action or decisions covered in § 1252(a)(2)(B)(ii). The Fourth Circuit reached precisely the same conclusion in *Shaiban v. Jaddou*. *See* 97 F.4th 263 (4th Cir. 2024). There, the court of appeals was addressing the denial of adjustment of status to a refugee under 8 U.S.C. § 1159(b), which has a number of prerequisites for eligibility for ultimately discretionary relief, such as sufficient physical presence, remaining in status as a refugee, and being otherwise admissible. *Id.* at 266-67. After discussing the import of *Patel*, the court readily concluded that 1252(a)(2)(B)(ii) barred review of even the prerequisites to actions or decisions specified to be discretionary. *Id.*

The same conclusion is warranted here. Petitioner does not question that 8 U.S.C. § 1231(b)(2)(C) is discretionary, as it provides the Attorney General "may disregard" an alien's designation of a country of removal. Because that ultimate decision is in the discretion of the agency, no subpart of that discretionary action or decision evades the bar in § 1252(a)(2)(B)(ii) on judicial review.

## III.    THE PROCEDURES AFFORDED TO PETITIONER TO PURSUE ANY RIGHTS UNDER THE WITHHOLDING OF REMOVAL STATUTE OR CAT REGULATION COMPORT WITH DUE PROCESS

In any event, Petitioner's challenge to the adequacy of the procedures afforded by the March Guidance is meritless. The government's procedures for implementing asylum, withholding, and CAT protection in this context are fully consistent with due process, and the Court should deny the petition for writ of habeas corpus. Again, Respondents have already briefed these issues before the Supreme Court, and Respondents incorporate those arguments by reference here. *See* Exhibits M, N, O, P, Q and R.

Petitioner does not say what procedures he thinks are required or under what theory. *See* ECF 32 at 20. Rather, he only cursorily cites conclusory statements by the Court at points where the Court was not purporting to engage in a legal theory nor making a dispositive finding. *See id.,* quoting *Abrego Garcia v. Noem*, No. 8:25-cv-951, 2025 WL 2062203 at *5. His reliance is misplaced, as the Court was merely granting interim relief while imposing certain safeguards, such as a 72-hour notice before removal and notice to counsel. *Id.* at *9.

Under the traditional *Mathews v. Eldridge* test for procedural due process, where a liberty or property interest is implicated, the Court balances three factors:

> the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures.

*Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976); *see Hamdi v. Rumsfeld*, 342 U.S. 56, 529-30 (2004) (plurality). In performing this analysis, however, the Court must bear in mind that "[t]he role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." *Landon v. Plasencia*, 459 U.S. 21, 34-35 (1982).

In addressing the application of Due Process, the Respondents will explain the process provided by the March Guidance and identify the precise interest at issue. Then, the Respondents will argue that the *Mathews* test is inapplicable in this context of an alien who unlawfully crossed the border without inspection or admission. In the alternative, even if *Mathews* can be said to apply in this habeas context, Respondents afford adequate due process protections.

A.    **The March Guidance Procedures.**

The March Guidance explains that the government provides these aliens with additional process, before any one of them is removed to a third country. ECF 28-2 at 2-3. That process, as detailed below, ensures that an alien will either be sent to a country where the United States has received adequate assurance the alien will not be persecuted or tortured, or that the alien will be given notice and an opportunity to be heard regarding any fear as to his country of removal. *Id.*

As explained already, the Guidance provides that if the State Department finds that country's assurances credible, "the alien may be removed without the need for further procedures." ECF 28-2 at 2-3.  However, if the country has not provided assurances, or the State Department has not found those credible, the alien is provided with additional procedures. *Id.* at 3. First, DHS will inform the alien of removal to that country. *Id.* If the alien expresses a fear, the alien is referred to USCIS, which will screen the alien for eligibility for any protection under withholding or CAT, generally within 24 hours. *Id.* If it determines that the requisite fear is not present, the alien will be

removed. *Id.* If it determines that the requisite fear is present, it will refer the matter to immigration court if the alien has never been in such proceeding before. *Id.* If the alien has been in removal proceedings before, USCIS will notify the immigration officer, and ICE OPLA may file a motion to reopen with the immigration court or Board. *Id.* Alternatively, ICE may designate a different country. Here, the government has followed *both* sets of procedures, ending any question of compliance.

### B.    Petitioner's Interest in Additional Procedures Is Limited.

Petitioner's interest in further procedures is extremely limited. Petitioner is a native and citizen of El Salvador. He arrived in the United States by coming across the border illegally—that is, he did not follow the law, which required that he present himself at a port of entry for inspection. He has been granted withholding of removal to El Salvador, which means that he may be removed to any country that will accept him, other than El Salvador. The INA specifically provides procedures for designating another country for removal. *See generally* 8 U.S.C. § 1229a(c), 1231(a). Consistent with the March Guidance, on August 22, 2025, Petitioner was informed that Uganda was designated as the country of removal, and he was afforded an opportunity to express a fear of removal to Uganda. ECF 1-5 at 2. He did so on August 23, 2025. ECF 1-6 at 2. On August 25, he also filed a motion to reopen his removal proceedings and a motion for a stay of removal before an immigration judge, seeking, inter alia, the opportunity seek asylum from Uganda and El Salvador, as well as other forms of relief, such as cancellation of removal. *See generally* ECF 28-1 at 2.

On September 5, 2025, ICE informed Petitioner that Eswatini would replace Uganda as the country of removal and afforded Petitioner the opportunity to express a fear. He did, and he also

sought asylum, withholding, and CAT protection from removal to Eswatini in his motion to reopen. His motion to reopen and his stay were denied on October 1, 2025.

Thereafter, Petitioner and his counsel were informed of the designation of Liberia as the country of removal, again affording him time to express a fear of removal to Liberia. After he did so, an interview was conducted by USCIS on October 28, 2025 to evaluate whether Petitioner had an adequate fear of removal to Liberia. On October 28, 2025, USCIS determined that Petitioner faced neither persecution nor torture in Liberia. Accordingly, the question before the Court is whether the procedures afforded by the March Guidance, in addition to the procedures afforded by the INA, comport with Due Process.

Accordingly, the question before the Court is whether an alien who crossed the border illegally, evading inspection and admission procedures; who has been found removable from the United States; who becomes subject to DHS's third-country removal process; where DHS gave notice to him and his counsel notice of the Liberia as the country of designation; where he has access to both DHS's fear assessment and a motion to reopen removal proceedings and has availed himself of both; where the Department of State has received diplomatic assurances from Liberia providing that he will not be subject to persecution or torture; and where the Department of State has found those assurances credible, requires still more procedures under the Due Process Clause. He does not.

///

///

///

///

25

C.    **The Supreme Court Has Determined That Aliens at the Border or Who Cross Evading Inspection and Admission Are Entitled Only to the Procedures Afforded by Congress.**

For many aliens, the Due Process Clause requires only the process that the political branches provide, and therefore the *Mathews* test is not applicable. For example, the Supreme Court explained in *Dusenbery v. U.S.*, the Supreme Court explained that there are instances where *Mathews* is not the appropriate test. 534 U.S. 161, 167-68 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims."). In one important alternative framework, the Supreme Court has held that "the due process rights of an alien seeking initial entry" are simply "[w]hatever the procedure[s] authorized by Congress." *Thuraissigiam*, 591 U.S. at 139 (citation omitted). For aliens who have never been admitted—such as Petitioner— "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892); *accord Thuraissigiam*, 591 U.S. at 138-40.

Supreme Court precedents distinguish for due process purposes between aliens who have been admitted and aliens who have never been admitted. An alien who overstays a visa or is later determined to have been admitted in error, and who has begun "to develop the ties that go with permanent residence," may claim due-process protections beyond what Congress has provided. *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *see Wong Yang Sung v. McGrath*, 339 U.S. 33, 49-50 (1950). the Supreme Court has never held that aliens who have "entered the country clandestinely" are entitled to such additional rights, *The Japanese Immigrant Case*, 189 U.S. 86, 100 (1903). By contrast, an alien who clandestinely enters "does not become one of the people to whom these things are secured by our Constitution." *United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904); *accord Wong Yang Sung*, 339 U.S. at 49-50.

26

One group of aliens in the latter category are aliens subject to the so-called "entry fiction"—that is, all "aliens who arrive at ports of entry." *Thuraissigiam*, 591 U.S. at 139. These aliens "are treated for due process purposes as if stopped at the border." *Id*. Indeed, that is so "even [for] those paroled elsewhere in the country for years pending removal." *Id.* The Supreme Court has applied the entry fiction to aliens with highly sympathetic claims to having "entered" and developed significant ties to this country. *See, e.g., Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (holding that a mentally disabled girl paroled into the care of relatives for nine years must be "regarded as stopped at the boundary line" and "had gained no foothold in the United States"); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 214-15 (1953) (holding that an alien with 25 years' of lawful presence who sought to reenter enjoyed "no additional rights" beyond those granted by "legislative grace").

Another group of aliens in the latter category are unlawful entrants—those who violate our laws, evade detection in crossing the border, and never obtain lawful admission. These aliens too, once found, are "treated as if stopped at the border." *Mezei*, 345 U.S. at 215; *Thuraissigiam*, 591 U.S. at 138-40. Petitioner is one such alien.

Congress has codified that distinction by treating all aliens who have not been admitted—including unlawful entrants who evade detection for years—as "applicants for admission." 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted . . . shall be deemed for purposes of [the INA] an applicant for admission."). That rule comports with the Constitution. The Due Process Clause does not offer a windfall for those who successfully circumvent our laws and evade detection. For constitutional purposes, it does not matter whether an alien was apprehended "25 yards into U.S. territory" or 25 miles; nor should it matter whether he was here unlawfully and evades detection for 25 minutes or 25 years. *See Thuraissigiam*, 591

27

U.S. at 139. When an illegal alien has never been admitted to this country by immigration officers, his constitutional status for due-process objections to removal is no different from an alien stopped at the border.

That principle is fatal to Petitioner's due process claim. For aliens at the border, aliens subject to parole, and aliens who have never obtained lawful admission to the United States, the Due Process Clause affords no constitutional entitlement to any extra removal procedures beyond what the political branches have provided. *See Thuraissigiam*, 591 U.S. at 138-40.

Petitioner has received all the process the political branches have provided. The INA is silent as to any specific process that aliens must be afforded regarding asylum, withholding, or CAT protection before they are removed to a third country. Importantly, for CAT, FARRA delegates that decision to the Executive Branch. *See* 8 U.S.C. § 1231 note. The March Guidance thus constitutes the political branches' reasoned judgment as to what that process should be in these circumstances, for aliens who have a final order of removal. Similarly, for aliens seeking asylum or withholding under the INA, Congress has prescribed the rules applicable to aliens who are subject to a final order of removal who are subject to third-country removal, including the availability of motions to reopen in appropriate cases. This is no small thing, as the Supreme Court has indicated that the purpose of a motion to reopen is "to ensure a proper and lawful disposition" and that it is a "safeguard." *See Dada v. Mukasey,* 554 U.S. 1, 18 (2008). For aliens who were never admitted to the United States, the Executive's policies and Legislative decisions made under the INA and FARRA "are due process of law." *Nishimura Ekiu*, 142 U.S. at 660 (emphasis added). And as detailed, far from some exercise of "arbitrary power," *Japanese Immigrant*, 189 U.S. at 101, the Guidance is exceedingly reasonable and provides aliens with more than ample process to effectuate their responsible removal, particularly where the alien has an alternative path before the

immigration courts. As the Supreme Court has already recognized, the Constitution requires nothing further.

> **D.    The Due Process Clause Does Not Require Additional Procedures Where the Department of State Has Received Diplomatic Assurances from Liberia and Found Those Assurances to Be Credible.**

Even if *Mathews* applied, the Due Process Clause requires no additional procedures where the Executive has determined, based on diplomatic assurances that it has deemed to be credible, that a country will not torture a person on his removal. On October 24, 2025, the Respondents informed the Court that the nation of Liberia had agreed to accept Petitioner and had provided diplomatic assurances that Petitioner would not be persecuted or tortured, and that the Department of State had reviewed those assurances and found them credible. *See* ECF 56. In response, Petitioner suggested that he was "entitled . . . to challenge the sufficiency of any purported diplomatic assurances . . . ." ECF 57 at 2. But courts lack authority to entertain challenges to the sufficiency of diplomatic assurances that the Secretary of State has deemed credible.

The Supreme Court has squarely held as much. *See Munaf v. Geren*, 553 U.S. 674, 702-03 (2008); *see Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009) ("Under *Munaf* … the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee."). When the Executive decides an alien will not be tortured abroad, courts may not "second-guess [that] assessment," at least unless Congress has specifically authorized judicial review of that decision. *Kiyemba*, 561 F.3d at 517 (Kavanaugh, J., concurring); *Munaf*, 553 U.S. at 703 n.6. The Department of State has performed the exclusively Executive, diplomatic event of both obtaining diplomatic assurances and finding those assurances credible. The judicial branch may not "second-guess" either the substance or the scope of the Executive's credibility conclusion. *See Kiyemba*, 561 F.3d at 517-18 (Kavanaugh, J., concurring). The

decision of the Secretary of State that a foreign government's categorial assurance against persecution or torture is sufficient is itself a "foreign policy" judgment the Judiciary "is not suited" to question. *Munaf*, 553 U.S. at 702. Even if *Mathews* could entitle Petitioner to process beyond that provided by the political branches, no additional process could include Petitioner's request to second-guess the Secretary of State's diplomacy with foreign nations.

The same reasoning should apply with equal force to instances where the Executive finds that a country's assurances are not reliable or that the assurance will come only at greater cost to the United States. As Petitioner urges, the Government of Costa Rica has signaled a potential willingness to accept the Petitioner with assurances. ECF 1 ¶ 36; ECF 1-3. However, the Respondents have had time to examine that assurance. *See* Exhibit S, Declaration of John E. Cantú, Acting Director of Enforcement and Removal Operations, ICE. As a part of his duties, he has been in contact with the Department of State about the discussion with Costa Rica. *Id.* ¶ 4. Any "assurances" by Costa Rica were non-binding and were extended based on "certain understandings and contingencies not reflected in the assurances themselves." *Id.* Importantly, it is now the assessment of the Department of State that the Government of Costa Rica would not accept Petitioner at this time without further negotiations and, likely, additional commitments from the United States. *Id.* ¶ 5. Importantly, the Department of State advises that the Republic of Liberia is the only state willing to accept Petitioner without further negotiations or additional commitments by the United States. *Id.* ¶ 6. Again, with the Executive prerogative being exercised, it is not for the Court to conduct any review of that decision. *Munaf*, 553 U.S. at 702.

**E.    The Substantial Process Available to Petitioner Substantially Reduces the Risk of an Erroneous Deprivation and Eliminate His Interest in Additional Procedures.**

Even as to the remainder of Petitioner's preferred procedures, the combination of the March Guidance and the motion to reopen mechanism substantially eliminate the risk of an erroneous deprivation regarding Petitioner's claimed fear of persecution or torture in Liberia and undermine Petitioner's interest in additional procedures.

First, as explained already, Petitioner has received the process to which he is entitled under the March 30 memorandum. No process permits him to second-guess the Secretary of State's conclusion that the diplomatic assurances are credible and sufficient, because no Court could second-guess that question in any event.

Second, again, Petitioner has also received additional process because USCIS has afforded him the opportunity to make a fear claim and determined that Petitioner has not carried his burden for obtaining relief based on fear of persecution or torture. *See supra* at 4; Exhibit J.

Petitioner has also availed himself of his procedural rights under the INA. The notice provided by ICE provided him the opportunity to avail himself of the "safeguard" of a motion to reopen and a motion for stay of removal before an immigration judge. ECF 28-2 at 3.  While his motion was initially aimed at expressing fear of persecution and torture in Uganda, he updated his claim to address Eswatini, too. The immigration judge denied his motion, but that is part of the process—and Petitioner could have sought a stay of removal from the immigration judge or Board of Immigration Appeals. He has not done so, instead preferring to seek relief from this Court that fails for all the reasons explained above.

///

///

///

**CONCLUSION**

For the foregoing reasons, the district court's injunction prohibiting Respondent's from removing Petitioner to a designated country of removal should be dissolved. Further, the petition for writ of habeas corpus should be denied.

Dated: November 7, 2025                    Respectfully Submitted,

                                           BRETT A. SHUMATE
                                           Assistant Attorney General

                                           DREW C. ENSIGN
                                           Deputy Assistant Attorney General
                                           U.S. Department of Justice
                                           Civil Division, Office of Immigration Litigation

                                           JONATHAN GUYNN
                                           Deputy Assistant Attorney General
                                           U.S. Department of Justice
                                           Civil Division, Torts Branch

                                           */s/ Ernesto H. Molina, Jr.*
                                           ERNESTO H. MOLINA, JR.
                                           Deputy Director
                                           U.S. Department of Justice
                                           Civil Division
                                           Office of Immigration Litigation –
                                             General Litigation and Appeals Section
                                           P.O. Box 878, Ben Franklin Station
                                           Washington, DC 20044
                                           202-616-93444
                                           ernesto.h.molina@usdoj.gov

                                           ATTORNEYS FOR RESPONDENTS

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2025, I electronically filed the foregoing document by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

                */s/ Ernesto H. Molina, Jr.*
                ERENSTO H. MOLINA, JR.
                Deputy Director
                United States Department of Justice
                Civil Division
                Office of Immigration Litigation -
                  General Litigation and Appeals Section

33