# EXHIBIT P

No. 24A1153

# In the Supreme Court of the United States

---

U.S. Department of Homeland Security, et al., applicants

*v.*

D.V.D., et al.,

---

**MOTION FOR AN ORDER CLARIFYING THIS COURT'S JUNE 23, 2025, ORDER GRANTING A STAY OF THE INJUNCTION ISSUED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS AND REQUEST FOR AN IMMEDIATE ADMINISTRATIVE STAY OF THE DISTRICT COURT'S MAY 21, 2025, AND JUNE 23, 2025, ORDERS**

---
D. John Sauer
  *Solicitor General*
    *Counsel of Record*
  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *SupremeCtBriefs@usdoj.gov*
  *(202) 514-2217*

## PARTIES TO THE PROCEEDING

Applicants (defendants-appellants below) are the U.S. Department of Homeland Security; Kristi Noem, in her official capacity as Secretary of Homeland Security; Pamela J. Bondi, in her official capacity as Attorney General of the United States; and Antone Moniz, in his official capacity as Superintendent of the Plymouth County Correctional Facility.

Respondents (plaintiffs-appellees below) are D.V.D.; M.M.; E.F.D.; and O.C.G.

## RELATED PROCEEDINGS

United States District Court (D. Mass.):

*D.V.D.* v. *DHS*, No. 1:25-cv-10676 (Mar. 28, 2025) (order granting in part plaintiffs' motion for temporary restraining order)

*D.V.D.* v. *DHS*, No. 1:25-cv-10676 (Mar. 29, 2025) (order denying defendants' motion to stay temporary restraining order)

*D.V.D.* v. *DHS*, No. 1:25-cv-10676 (Apr. 18, 2025) (order granting plaintiffs' motion for class certification and granting in part plaintiffs' motion for preliminary injunction)

*D.V.D.* v. *DHS*, No. 1:25-cv-10676 (Apr. 18, 2025) (order denying defendants' motion for stay of preliminary injunction pending appeal)

*D.V.D.* v. *DHS*, No. 1:25-cv-10676 (May 21, 2025) (memorandum clarifying preliminary injunction and order on remedy for violation of injunction)

*D.V.D.* v. *DHS*, No. 1:25-cv-10676 (May 26, 2025) (order denying motion for reconsideration)

*D.V.D.* v. *DHS*, No. 1:25-cv-10676 (Jun. 23, 2025) (order denying as unnecessary emergency motion to enforce May 21 order)

United States Court of Appeals (1st Cir.):

*D.V.D.* v. *DHS*, No. 25-1311 (Apr. 7, 2025) (order denying defendants' motion for stay pending appeal)

*D.V.D.* v. *DHS*, No. 25-1393 (May 16, 2025) (order denying defendants' motion for stay pending appeal)

# In the Supreme Court of the United States

No. 24A1153

U.S. Department of Homeland Security, et al., Applicants

*v.*

D.V.D., et al.,

**MOTION FOR AN ORDER CLARIFYING THIS COURT'S JUNE 23, 2025, ORDER GRANTING A STAY OF THE INJUNCTION ISSUED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS AND REQUEST FOR AN IMMEDIATE ADMINISTRATIVE STAY OF THE DISTRICT COURT'S MAY 21, 2025, AND JUNE 23, 2025, ORDERS**

This motion addresses the district court's unprecedented defiance of this Court's authority. Yesterday evening, just hours after this Court stayed the preliminary injunction in this case, the district court issued an order asserting that its related ruling *enforcing* that injunction "remains in full force and effect," "notwithstanding todays [*sic*] stay of the Preliminary Injunction." D. Ct. Doc. 176 (Jun. 23, 2025). The district court claimed that the several "individuals" whose removal it previously halted mid-flight—and whose resulting detention in Djibouti in precarious circumstances was a focal point of the government's stay application—remain subject to its order enforcing the very injunction that this Court stayed yesterday. *Ibid.* That is untenable. This Court's stay order "divest[ed]" the district court's "order of enforceability," *Nken* v. *Holder*, 556 U.S. 418, 428 (2009), which equally applies to the original injunction, the remedial order enforcing that injunction, and the order last night asserting that the remedial order remained in force. The district court's ruling of last night is a lawless act of defiance that, once again, disrupts sensitive diplomatic rela-

(1)

tions and slams the brakes on the Executive's lawful efforts to effectuate third-country removals. For over two months now, the Executive has labored under an injunction that this Court yesterday deemed unenforceable. This Court should immediately make clear that the district court's enforcement order has no effect, and put a swift end to the ongoing irreparable harm to the Executive Branch and its agents, who remain under baseless threat of contempt as they are forced to house dangerous criminal aliens at a military base in the Horn of Africa that now lies on the borders of a regional conflict.

Yesterday, this Court entered an order staying the district court's April 18, 2025, preliminary injunction. Hours later, respondents filed an emergency motion in the district court seeking to prevent what this Court had just permitted—*i.e.*, removal to third countries without additional process. Respondents primarily asked the district court to "enforce" its May 21, 2025, remedial order. D. Ct. Doc. 174 (Jun. 23, 2025). But that May 21 remedial order is not a separate injunction. It merely enforced the original April 18 injunction: It was part of an effort by the district court to "clarif[y]" the injunction's original terms, D. Ct. Doc. 118 (May 21, 2025), and to "remedy" what the court saw as "violations" by the government in attempting to remove several criminal aliens to South Sudan, D. Ct. Doc. 119 (May 21, 2025). Perhaps aware of the glaring flaw in asking a district court to enforce an order that itself merely enforced an injunction stayed by this Court, respondents alternatively moved for a new temporary restraining order, barring the government from transferring any of the criminal aliens in Djibouti to a third country. D. Ct. Doc. 174.

Without hearing from the government, the district court promptly issued a ruling by docket entry denying respondents' motion as "unnecessary" on the ground that its May 21 remedial order "remains in full force and effect." D. Ct. Doc. 176. The

court did not issue any new injunction. Nor did it cite any support for its action, besides a sentence in the opinion *dissenting* from yesterday's stay. *Ibid.*

The district court's ruling of last night is indefensible. As noted, when an appellate court stays an injunction, it "divest[s] [the] order of enforceability." *Nken*, 556 U.S. at 428. This Court's stay order "suspend[ed] the [district court's] source of authority to act" on "the order or judgment in question," and it "suspend[ed] judicial alteration of the status quo." *Ibid.* (quoting *Ohio Citizens for Responsible Energy, Inc.* v. *NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). Needless to say, having lost the "authority to act" on the April 18 injunction, the district court cannot continue to enforce that injunction, which is "divest[ed] … of enforceability." *Ibid.*

That conclusion applies with particular force here, where the later orders explicitly purported to do nothing more than clarify and enforce the terms of the original injunction, without purporting to impose any new or different injunction. Indeed, the May 21 orders could hardly be clearer on this point. One order was entitled "Memorandum on Preliminary Injunction," and it stated that "the Court offers the following summary and clarification of its Preliminary Injunction," *i.e.*, the now-stayed April 18 injunction. D. Ct. Doc. 118, at 1-2. The second order was entitled "Order on Remedy for Violation of Preliminary Injunction," and in it the Court ordered "the following remedy for Defendants' violations of the Preliminary Injunction." D. Ct. Doc. 119, at 1. Accordingly, when the original injunction was stayed, these follow-on orders clarifying and enforcing the original injunction were likewise divested of enforceability. Once a tree is uprooted, its branches do not continue to thrive.

That this Court's stay of the April 18 injunction deprives the May 21 remedial order of prospective effect is especially clear given the stay briefing in this Court. In its application, the government emphasized the disastrous effects of the May 21 "re-

medial measures" that the district court imposed in clarifying the April 18 injunction. See Gov't Appl. 17; see also *id.* at 3-4, 8, 37-39. In particular, the government repeatedly emphasized the injury it continues to suffer from being forced to detain in Djibouti the criminal aliens whose third-country removals were halted mid-flight by the May 21 orders. See *id.* at 3, 17, 39.

Indeed, yesterday's dissenting opinion recognized the government "locate[d] the source of its injury" at least in part in the May 21 orders enforcing the April 18 injunction. Order, *D.H.S.* v. *D.V.D.*, No. 24A1153, at 12 (Jun. 23, 2025) (Sotomayor, J., dissenting). The dissent contended that those "remedial orders are not properly before this Court." *Ibid.* That reasoning, however, did not command a majority of the Court, and it contradicts the fundamental logic of *Nken*. Notably, respondents themselves did not make any such argument. Nowhere in their stay opposition did they suggest that staying the April 18 injunction would have no effect on the criminal aliens detained in Djibouti—whether because the May 21 order was not properly before the Court, or because the May 21 order would somehow continue to have force and effect even if the April 18 injunction it was enforcing had been divested of enforceability. In fact, respondents argued *the opposite*, urging this Court to deny the government's stay application, lest the government regain the ability to "deport" class members to "South Sudan." Opp. 39-40; see *id.* at 40 (arguing respondents would suffer harm from stay because some class members are "en route" to "South Sudan").

Consistent with *Nken*, the majority of this Court granted the stay the government requested, without any suggestion that the stay failed to extend to the worst-of-the-worst criminal aliens described in the government's briefing, or any suggestion that its stay would not remediate the concrete, urgent irreparable injury that the government continues to experience from detaining those aliens in the Horn of Africa.

The district court was not free to ignore this Court's decision or to insist that it can continue to enforce the very injunction that the stay order rendered unenforceable.

For these reasons, there is currently no injunction in place barring the removal of the criminal aliens in Djibouti. This Court has stayed the April 18 injunction, which effectively stayed the May 21 orders too. And the district court's ruling of last night is not a new injunction. Rather, it denied a new temporary restraining order, albeit based on the erroneous premise that its May 21 enforcement order somehow "remains in full force and effect, notwithstanding todays [*sic*] stay of the Preliminary Injunction." D. Ct. Doc. 176. As explained, that legal rationale is obviously wrong; and in turn, following this Court's stay, there is no longer any injunction limiting the government's conduct here.

Nevertheless, the district court's latest ruling confronts the government with an intolerable Hobson's choice, by holding the threat of contempt over the government if it acts according to this Court's stay ruling and proceeds with the third-country removals of aliens whose continued detention in Djibouti inflicts daily irreparable injury on the government and its agents. Accordingly, the government requests that this Court immediately clarify that its stay of the April 18 injunction extends to the May 21 orders that purported to clarify and enforce the stayed injunction. In addition, an immediate administrative stay of both the May 21 orders and the June 23 order is warranted, to make clear beyond any doubt that the government can immediately proceed with the third-country removals of the criminal aliens from Djibouti. As the government detailed, the district court's injunction has created an unstable and dangerous situation at the military base in Djibouti, Gov't Appl. 38-39—a situation that has become all the more dangerous given current events in the Middle East.

In addition, given the district court's defiance of this Court's stay order and

respondent's motion for a new temporary restraining order, further steps may be appropriate pursuant to this Court's power under the All Writs Act to "issue all writs necessary or appropriate in aid of [its] jurisdiction[]." 28 U.S.C. 1651. For instance, this Court may wish to direct the district court not to issue further injunctions in this case without first obtaining pre-clearance from this Court. See, *e.g.*, *Vasquez* v. *Harris*, 503 U.S. 1000 (1992) (ordering no further stays of execution "except upon order of this Court"). In the alternative, given the lower court's conduct, this Court may consider ordering that the case be reassigned to a different district judge. See, *e.g.*, *United States* v. *Smith*, 134 F.4th 248, 265 (4th Cir. 2025) (ordering reassignment "in light of the district court's disregard for procedure and our precedent"); *Dehertoghe* v. *City of Hemet*, 159 Fed. Appx. 775, 777 (9th Cir. 2005) (same where district court "ignored our previous directive"); *In re DaimlerChrysler Corp.*, 294 F.3d 697, 701 (5th Cir. 2002) (same where district court's actions betrayed lack of "impartiality").

\* \* \* \* \*

For the reasons stated, this Court should immediately clarify that its stay of the April 18 injunction extends to the May 21 orders enforcing the stayed injunction; grant an immediate administrative stay of the May 21 and June 23 orders; and enter any other relief it deems appropriate in these circumstances.[1]

Respectfully submitted.

D. JOHN SAUER<br>*Solicitor General*

JUNE 2025

---

[1] This is the type of "extraordinary circumstance[]" in which seeking relief first from the lower courts would not be "appropriate." S. Ct. Rule 23.3. The government is seeking an administrative stay pending this Court's clarification of the scope of its own stay order, which only it can provide. It would make no sense to ask either the district court or the court of appeals to themselves stay the May 21 and June 23 orders when the whole point of the government's motion is to obtain this Court's confirmation that those orders are already unenforceable by virtue of the stay it granted yesterday. Nor would that course be appropriate because any additional delay in implementing this Court's stay would only reward the district court's defiance, and compound a situation on the ground where relief is urgently needed.