# EXHIBIT Q

No. 24A1153

# In the
# Supreme Court of the United States

U.S. Department of Homeland Security et al.,

*Applicants*,

v.

D.V.D. et al.,

*Respondents*.

On Application for a Stay of the Injunction Issued by the United States District Court for the District of Massachusetts and Request for an Immediate Administrative Stay

**RESPONDENTS' RESPONSE TO MOTION TO CLARIFY**

Matt Adams
Leila Kang
Aaron Korthuis
Glenda M. Aldana Madrid
NORTHWEST IMMIGRANT
  RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104

Anwen Hughes
HUMAN RIGHTS FIRST
121 W. 36th St., PMB 520
New York, NY 10018

Trina Realmuto
  *Counsel of Record*
Kristin Macleod-Ball
Mary Kenney
NATIONAL IMMIGRATION
  LITIGATION ALLIANCE
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4447
trina@immigrationlitigation.org

## INTRODUCTION

The lives and safety of eight members of the nationally certified class in this case are at imminent risk. These men are currently being held at a U.S. naval base in Djibouti, and the district court's remedial order, Dist. Ct. Doc. 119, is the only shield that preserves and protects their statutory, regulatory, and due process rights to seek protection from torture in South Sudan.

Yesterday, this Court stayed the preliminary injunction (PI) pending appeal, without any reasoning. But that order does not change the fact that Defendants violated the preliminary injunction (PI), now stayed, *but then in effect*, over a month ago by attempting to remove these class members to South Sudan without providing meaningful notice or any opportunity to assert claims for protection under the Convention Against Torture (CAT). Dist. Ct. Doc. 118. In response to this violation, the Court issued a narrow and equitable *remedy*, requiring Defendant Department of Homeland Security (DHS) to retain custody of the class members and to provide the protections that they would have received but for the violation, namely, reasonable fear interviews with access to counsel and a motion to reopen filed by either DHS or the class member depending on the outcome of the interview. Dist. Ct. Doc. 119 at 1–2. The district court explicitly stated that this remedy was not intended to define future compliance, but rather to redress a discrete violation of the injunction. *Id.* at 2.

In its stay application to this Court, the government neither challenged nor sought relief from the district court's remedial order. Thus, as the dissent correctly indicated and the district court found yesterday, Dist. Ct. Doc. 176 (Jun. 23, 2025), the remedial order was not before this Court. The government now wants this Court to "clarify" that the district order's remedial order has no effect such that the Department of Homeland Security (DHS) can deport these men to South Sudan with no process at all, *not even the process afforded by the government's own policy*

1

*memorandum*. The Court should deny that request.

ARGUMENT

I. **The District Court Retains Authority to Remedy the Government's Violation of the Preliminary Injunction While It Was In Effect.**

Nothing in this Court's stay order nullifies the district court's May 21 remedial order, issued to address DHS's "clear violation of a court order" while it was in effect. *DHS v. D.V.D.*, 606 U.S. ___, Slip Op. at 1 (Sotomayor, J., dissenting). DHS was required to immediately comply with the district court's order when it was in effect, for it is a "basic proposition that all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). Equally well-established is the principle that violations of a court order are subject to enforcement "even though the order is set aside on appeal, or though the basic action has become moot." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 294 (1947) (citation and footnote omitted); *see also, e.g.*, *Howat v. State of Kansas*, 258 U.S. 181, 190 (1922) ("It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.").

Far from "labor[ing] under [the] injunction," Defs.' Mot. at 2, the government has "repeatedly defied" the preliminary injunction from the moment of issuance, *D.V.D.*, Slip Op. at 2 (Sotomayor, J., dissenting); *cf.* Protected Whistleblower Disclosure of Erez Reuveni Regarding Violation of Laws, Rules & Regulations, Abuse of Authority, and Substantial and Specific Danger to Health and Safety at the Department of Justice*,* 16-21 https://s3.documentcloud.org/documents/25982155/file-5344.pdf (detailing how senior U.S. Department of Justice leadership and DHS collaborated to violate district court's temporary

restraining order in this case). Defendants have delayed compliance since May 21, 2025, even despite their own assurances that reasonable fear interviews could be provided abroad, and despite the district court's order providing only "the narrowest possible remedy," *D.V.D.*, Slip Op. at 12 (Sotomayor, J., dissenting). *Accord* Dist. Ct. Doc. 135 at 14 ("It cannot be said enough that this is the result Defendants asked for."). Indeed, Defendants did not provide the eight class members with any means to access their lawyers until after two weeks following their arrival in Djibouti. *See* Mattathias Schwartz, *How the Trump Administration Banished Eight Men to Legal Limbo in Africa*, N.Y.Times (June 6, 2025), https://www.nytimes.com/2025/06/06/us/trump-dhs-djibouti-deportees.html.

Here, the district court's continued enforcement of its remedial order does not constitute a "judicial alteration of the status quo"—in fact, it preserves the status quo, ensuring that class members receive the remedy to which they are entitled in light of the government's clear violation of a then-binding court order. Where, as here, "a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 1, 15 (1971); *cf. Brown v. Plata*, 563 U.S. 493, 545 (2011) (explaining that equitable decree required "appropriate modification" and "remedy" in light of "ongoing constitutional violation"); *Hutto v. Finney*, 437 U.S. 678, 687 (1978) ("In fashioning a remedy [for past constitutional violations], the District Court had ample authority to go beyond earlier orders and to address each element contributing to the violation.").

Here, the eight class members continue to face the harm that the district court sought to prevent in issuing its preliminary injunction and, later, by ordering a remedy for Defendants' violation of the preliminary injunction. *See* Dist. Ct. Doc. 64 at 44 ("Here, the threatened harm is

3

clear and simple: persecution, torture, and death. It is hard to imagine harm more irreparable.");
*see also* Dist. Ct. Doc. 135 at 6 (finding that the risk of irreparable harm "becomes tangible as class members were nearly dropped off in a war-torn country where the Government states that '[f]oreign nationals have been the victims of rape, sexual assault, armed robberies, and other violent cries'" (quoting U.S. Department of State, *South Sudan Travel Advisory* (Mar. 8, 2025))).

Critically, *nothing* in this Court's stay order addressed the merits of the preliminary injunction or the district court's remedial order, let alone retroactively invalidated the preliminary injunction on a jurisdictional basis or otherwise. Courts have long affirmed the principle that a "[d]istrict [c]ourt unquestionably ha[s] the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction." *United Mine Workers of Am.*, 330 U.S. at 290; *see also United States v. Shipp*, 203 U.S. 563, 573 (1906) (explaining that a court "necessarily had jurisdiction to decide whether the case was properly before it," and with it, the authority to issue orders to preserve the status quo "[u]ntil its judgment declining jurisdiction should be announced"). In *A.A.R.P. v. Trump*, the Supreme Court similarly "grant[ed] temporary injunctive relief to preserve [its] jurisdiction while the question of what notice is due is adjudicated." 145 S. Ct. 1364, 1368 (2025). Accordingly, in adjudicating Plaintiffs' motion for a preliminary injunction, the district court had the authority to both determine its own jurisdiction and issue injunctive relief necessary to preserve the status quo. It also unquestionably has subject matter jurisdiction over the Plaintiffs' claims. Dist. Ct. Doc. 64 at 11 n.14 (citing *Biden v. Texas*, 597 U.S. 785 (2022)).

In sum, the Supreme Court's stay ruling does not undermine either the procedural or substantive validity of the district court's preliminary injunction when it was in effect, and it cannot be disputed that DHS was required to promptly comply with the district court's May 21,

4

2025 order remedying that violation. Defendants should not be permitted to evade the ordered remedy simply because they delayed compliance. *See, e.g.*, *Coleman v. Brown*, 922 F. Supp. 2d 1004, 1054 (E.D. Cal. 2017) (emphasizing that parties may not "continue to violate . . . the Constitution" because "they believe a court's order is incorrect"). Based on well-established jurisdictional principles, as well as the district court's broad authority to remedy past constitutional violations, the district court retains its authority to enforce its May 21, 2025 remedial order.

**II.     Even Under DHS's Own Process, the Class Members in Djibouti Are Entitled to Fear Screenings Before Removal to a Third Country.**

In their application for a stay of the preliminary injunction filed with this Court, Defendants stated that, under DHS's own policy related to removal of class members to third countries, "additional process" applies "before any one of them is removed to a third country." Appl. at 28. The eight class members in Djibouti have not yet received even the process provided for under Defendants' own policy, its March 30, 2025 policy memorandum (memo), which DHS issued immediately following the district court's initial temporary restraining order. The district court's remedial order, ensuring that the class members receive some process before third country removal to South Sudan, is thus appropriate.

Under the memo, "[p]rior to the [noncitizen's] removal to a country that had not previously been designated as the country of removal, DHS must determine whether that country has provided diplomatic assurances that [noncitizens] removed from the United States will not be persecuted or tortured." Dist. Ct. Doc. 43-1 at 1. Here, the government has never provided any indication that the United States has sought or received diplomatic assurance by any country, let alone South Sudan.

Absent such assurances found credible by the U.S. Department of State, DHS "must"

5

both inform the noncitizen of the country to which they will be removed and "refer any [noncitizen] who affirmatively states a fear of removal to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." Dist. Ct. Doc. 43-1 at 2. Then, if the noncitizen establishes that they are more likely than not to be tortured in the third country, "USCIS will refer the matter to the Immigration Court" or notify U.S. Immigration and Customs Enforcement (ICE) who may file a motion to reopen. *Id*.

Again, there is no indication in the record that Defendants have received the diplomatic assurances described in the memo with regard to the removal of the eight class members to South Sudan. Thus, the eight class members are entitled to notice of removal to South Sudan and, subsequently, upon manifesting a fear of removal to South Sudan, a fear screening regarding their eligibility for both withholding of removal and CAT protection and a determination regarding that fear screening under Defendants' own policy. *See* Dist. Ct. Doc. 43-1 at 1-2.

Defendants did not comply with either prong of their own policy. The class members did not receive meaningful notice prior to Defendants' attempt to remove them to South Sudan. *See* Dist. Ct. Doc. 118 at 1 (explaining that the class members received "fewer than 24 hours' notice, and zero business hours' notice, before being put on a plane and sent to a country" that is the subject of a "Do not travel" warning from the U.S. Department of State); Dist. Ct. Doc. 135 at 11 n.15 (explaining that they received "at most, sixteen" hours' notice); *cf.* Mattathias Schwartz, *How the Trump Administration Banished Eight Men to Legal Limbo in Africa*, N.Y. Times (June 6, 2025), https://www.nytimes.com/2025/06/06/us/trump-dhs-djibouti-deportees.html (reporting that, according to a man detained with the class members, ICE officers did not bring the men *any* written notice of removal to South Sudan "because [ICE] knew no one would sign them

6

anyway."); Gustavo Sagrero Alvarez, *A Pierce County Man Expected to Be Deported to Vietnam. Instead, ICE Routed Him to South Sudan*, NPR (May 29, 2025), https://www.kuow.org/stories/pierce-county-man-expected-to-be-deported-to-vietnam-instead-ice-flew-him-to-south-sudan (explaining that one of the class members informed his wife that he "protested" upon learning of upcoming removal to South Sudan).

Nor did Defendants provide the screening process set forth in their guidance before attempting to deport the class members to South Sudan. Even if Defendants failed to treat the class members' refusal to sign notices providing for third country deportation as an expression of fear, *see, e.g.*, Dist. Ct. Doc. 130-2 ¶ 10, the class members have since affirmatively manifested a fear of removal to South Sudan through their statements and behavior. *See* Schwartz, *How the Trump Administration Banished Eight Men to Legal Limbo in Africa* (quoting an observer who noted that the class members "faces just turned pale" upon realizing they would not be deported to their countries of origin); Dist. Ct. Doc. 175-1 ¶ 8 (explaining based on, inter alia, conversations with one of the class members, that he "fears he will be tortured if removed to the Republic of South Sudan"); *cf.* Dist. Ct. Doc. 175-2 (explaining that "it is extremely likely" that the class members will face immediate detention and subsequent torture in South Sudan).

Plaintiffs vigorously dispute the legality of Defendants' policy. But at a minimum, even under Defendants' own policy, the class members are entitled to completion of screenings for eligibility for withholding of removal and CAT protection.

III. **The Court Also Should Reject Defendants' Request to Require Preclearance for Any Further Injunctive Relief or to Reassign this Case to a Different Judge.**

Finally, the Court should reject Defendants' request to require preclearance for any further injunctive relief or to reassign this case to a different judge. As detailed above, the district court's order last night was entered based on the uncontroversial principle that a remedial order

7

remains in force even where the court's initial injunctive order is vacated. Indeed, in issuing the order, the district court drew on the dissent's statement in this respect, which affirmed that these remedial orders remain in effect. Given that the majority did not indicate otherwise, the district court's reliance on this statement was not made in defiance of this Court's stay order. Instead, it was a reasonable interpretation of this Court's order, particularly given precedent about the enduring power of remedial orders.[1]

Nor should the Court reassign this case. Reassignment is a "severe remedy," *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1272 (11th Cir. 2021) (citation omitted), that occurs only in "'rare and extraordinary circumstances." *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 844 (9th Cir. 2024) (citation omitted). Moreover, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Defendants ask the Court to depart from that well-established principle here without any legal or factual support. There was ample appellate precedent for the district court's order, and this Court's stay order did not refute the dissent's explanation that the remedial orders remain in effect. Defendants' suggestion that the district court lacks impartiality is unfounded. As Plaintiffs detailed at length in their response to the motion to stay, the district court in this case has proceeded carefully, repeatedly inviting Defendants to clarify their position, offering Defendants opportunities to suggest alternatives as to remedies, and adopting Defendant's proposed alternatives, including as to the class members that are the focus of Defendants' motion. The district court's basis for acting here, and the

---

[1] Moreover, to the extent the Court's stay order was based on 8 U.S.C. § 1252(f)(1), that statute does not preclude injunctions on behalf of individual persons, including the Named Plaintiffs in this case. The district court plainly had and has authority to issue injunctions on behalf of such persons.

judge's record of proceeding carefully and with the input of Defendants, show the Defendants' continued attack on the district court judge is baseless.

## CONCLUSION

Because the district court's remedial order is not before the Court, it remains in effect. Any other conclusion would reward the government's defiance of the district court's orders. Furthermore, even under the government's March 30 memo, the class members are entitled to fear-based screenings to demonstrate that they will face torture or death if deported to a third country. Finally, the Court should reject Defendants' request to require preclearance for any further injunctive relief or to reassign this case to a different judge.

Respectfully submitted,

Matt Adams
Leila Kang
Aaron Korthuis
Glenda M. Aldana Madrid
NORTHWEST IMMIGRANT
  RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104

Anwen Hughes
HUMAN RIGHTS FIRST
121 W. 36th St., PMB 520
New York, NY 10018

Dated: June 24, 2025

Trina Realmuto
  *Counsel of Record*
Kristin Macleod-Ball
Mary Kenney
NATIONAL IMMIGRATION
  LITIGATION ALLIANCE
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4447
trina@immigrationlitigation.org