# EXHIBIT R

No. 24A1153

# In the Supreme Court of the United States

—————————

U.S. DEPARTMENT OF HOMELAND SECURITY, ET AL., APPLICANTS

*v.*

D.V.D., ET AL.,

—————————

**REPLY IN SUPPORT OF MOTION
FOR AN ORDER CLARIFYING THIS COURT'S JUNE 23, 2025,
ORDER GRANTING A STAY OF THE INJUNCTION ISSUED BY THE UNITED
STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS AND
REQUEST FOR AN IMMEDIATE ADMINISTRATIVE STAY OF THE DISTRICT
COURT'S MAY 21, 2025, AND JUNE 23, 2025, ORDERS**

—————————

D. JOHN SAUER
  *Solicitor General*
    *Counsel of Record*
  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *SupremeCtBriefs@usdoj.gov*
  *(202) 514-2217*

# In the Supreme Court of the United States

————

No. 24A1153

U.S. DEPARTMENT OF HOMELAND SECURITY, ET AL., APPLICANTS

*v.*

D.V.D., ET AL.,

————

**REPLY IN SUPPORT OF MOTION
FOR AN ORDER CLARIFYING THIS COURT'S JUNE 23, 2025,
ORDER GRANTING A STAY OF THE INJUNCTION ISSUED BY THE UNITED
STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS AND
REQUEST FOR AN IMMEDIATE ADMINISTRATIVE STAY OF THE DISTRICT
COURT'S MAY 21, 2025, AND JUNE 23, 2025, ORDERS**

————

Respondents' defense of the district court only confirms the court's lawlessness. To start, respondents do not deny that their position now is irreconcilable with what they told this Court before. In an effort to defeat the stay, respondents (correctly) emphasized that the preliminary injunction, as interpreted by the district court, was necessary to prevent the aliens in Djibouti from being moved to South Sudan. Now, in an effort to defend the district court's open act of defiance, respondents (wrongly) insist that those heinous criminals were protected all along. This unacknowledged about-face confirms how indefensible the order below really is.

So too does the rest of respondents' submission. Respondents' sole argument is that courts sometimes have authority to enforce vacated orders in contempt. But that is no defense of the district court's attempt to perpetuate its remedial order here, which (unlike a contempt sanction) is a *prospective* remedy that it claims simply clarified the commands of the preliminary injunction that this Court has since stayed.

(1)

2

As for whether *that* order can continue to be given effect, respondents cite nothing in support and have no answer to *Nken* v. *Holder*, 556 U.S. 418 (2009). And that is unsurprising: District courts do not ordinarily disregard this Court's orders so flagrantly. Because the court below has done so, however, this Court's urgent action is needed.

*First*, respondents do not deny that their current gambit is wholly at odds with their prior submission in this Court. Respondents urged this Court to deny the government's stay application for the very reason that doing so would mean that the several criminal aliens being held in Djibouti would be removed to South Sudan. See Gov't Motion 4 (citing stay opposition). Nowhere did respondents argue that the May 21 orders would be unaffected by this Court's decision or could survive this Court staying the April 18 injunction. On the contrary, in claiming irreparable injury, they argued that the *opposite* is true. *Ibid.* Respondents do not even address this inconsistency. Instead, they fault (at 2) this Court for not proactively answering an argument that they did not even raise, and that failed to persuade the Court's majority when raised *sua sponte* by the dissent.

*Second*, respondents' only substantive argument is that district courts can sometimes issue remedies in connection with stayed orders. Opp. 2-5. That is irrelevant. Respondents' cases concern courts remedying violations of past orders via contempt—*i.e.*, a *retrospective* remedy that punishes past action. See, *e.g.*, *Howat* v. *Kansas*, 258 U.S. 181, 190 (1922). Respondents cite no case for the proposition that a district court can enforce a *prospective* remedy that has the effect of *continuing* a since-stayed injunction. Nor could they, because that is obviously not the law. An ancillary order to clarify or enforce an injunction rises and falls with the underlying injunction. A stay "divest[s] [the] order of enforceability," full stop. *Nken*, 556 U.S.

at 428.  A district judge cannot "do indirectly what he cannot do directly."  *Trump* v. *United States*, 603 U.S. 593, 631 (2024).

Yet respondents are crystal clear that they want exactly that.  Remarkably, respondents try to justify the May 21 order on the ground (at 3) that it "preserves the status quo" and brings into effect "the remedy" that the district court designed when "issuing its preliminary injunction."  But that is not a *defense* of the order below; it is the *exact reason* that the order fails.  The district court's order last night purports to resuscitate the injunction that this Court has stayed.  That cannot be squared with *Nken*.  And that is perhaps why respondents do not even cite *Nken*—much less refute its applicability here.

*Third*, respondents wholly ignore the arbitrariness of their position.  On their view, the district court's April 18 injunction is stayed with respect to every class member—who can now be removed to a third country pursuant to the government's lawful policies—*except* that the injunction is somehow still practically in effect for the several criminal aliens now held in Djibouti, merely because the government allegedly violated the since-stayed injunction in transporting them there.  That makes no sense.  Those criminal aliens cannot invoke the protection of a stayed injunction through adverse possession.  While they were entitled to its benefits when it remained in effect, those aliens should be treated like every other class member now that the injunction has been stayed.  Respondents offer no legal or equitable reason for treating these two groups differently.

*Fourth*, respondents spend much of their time raising new merits objections to the government's conduct, insisting that the government is supposedly failing to follow its own procedures (the March Guidance).  Opp. 5-7.  But these objections did not provide the basis for the district court's injunction or its May 21 order enforcing it, so

they are beside the point. Moreover, respondents do not address the many reasons why—as the government explained in its original, and successful, application—injunctive relief is not available for such claims.

In any event, respondents' new merits arguments are baseless. The government has complied with its March Guidance with respect to all aliens detained in Djibouti, on multiple grounds. To begin, this Office has been informed that the State Department has received credible diplomatic assurances from South Sudan that the aliens at issue will not be subject to torture pursuant to the Convention Against Torture—which assurance satisfies the March Guidance. In addition, the government already explained, with record citations, that each of the criminal aliens in Djibouti was notified that they were being removed to South Sudan, and none of them manifested a fear of being removed there prior to the departure of their flight, Gov't App. 16—a point respondents tellingly do not dispute, with record citations or otherwise, despite their various complaints about the process, Opp. 6-7. Those facts independently satisfy the March Guidance as well.

*Finally*, respondents object that imposing restrictions on the district judge—or ordering his reassignment—would be an extraordinary step, reserved for rare cases. Opp. 7-9. This is one of those cases. Mere hours after this Court issued its stay, the district court issued its own order flagrantly disobeying the stay. That court cited nothing for its actions, other than the opinion *dissenting* from the order staying its injunction. Nor did the district court even give the government an opportunity to respond before it interjected itself (once again) into the removal process, disrupting sensitive governmental operations abroad. That order has (once again) jeopardized the safety and operational security of Americans currently stationed at a military base in the Horn of Africa. The order has (once again) stalled the Executive's lawful

attempts to finalize the long-delayed removal of those aliens to South Sudan, costing the Executive valuable time and resources it will not be able to recover.  And the order is in flagrant disregard of this Court's authority.  The court below has irreparably undermined any confidence in its ability to manage the rest of this case responsibly.  This Court is well within its discretion and authority to take added steps to address that defiance.

Obtaining a stay of the injunction in this case took over two months—two months when the Executive was barred from using its lawful authorities—yet it took the district court only a few hours to upend that stay.  The Executive Branch has labored long enough under an injunction that baselessly intrudes upon its authority over matters of foreign relations and immigration policy.  This Court should immediately put an end to the district court's artificial attempt to prolong that intrusion.

Respectfully submitted.

D. JOHN SAUER
*Solicitor General*

JUNE 2025