## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### Greenbelt Division

Kilmar Armando Abrego Garcia,

      Petitioner,

v.

Kristi Noem, *et al.*,

      Respondents.

Case No. 8:25-cv-02780 (PX)

**Petitioner's Brief in Opposition to Motion to Dissolve Preliminary Injunction**

**Table of Contents**

Introduction ................................................................................................................................1

Background ...............................................................................................................................1

Argument ..................................................................................................................................2

I.     Abrego Garcia's Challenges Are Not Barred by *D.V.D.* .................................................. 2

     A.     There Is No Claim Splitting in This Case. .......................................................... 2

     B.     The Government Misreads *D.V.D.* ..................................................................... 6

II.     Statutory Jurisdictional Bars Do Not Bar Abrego Garcia's Claims. ................................. 7

     A.     Section 1252(g) Does Not Bar Abrego Garcia's Claims. ..................................... 7

     B.     Sections 1252(a)(5) and (b)(9) Do Not Bar Abrego Garcia's Claims. ................. 9

     C.     Section 1252(a)(4) and FARRA Do Not Bar Abrego Garcia's Claims. .............. 11

     D.     Section 1252(a)(2)(B)(ii) Does Not Bar Abrego Garcia's Claims. ..................... 13

III.     The Government's Procedures Are Constitutionally Inadequate. ................................... 16

     A.     The March 30 Guidance Does Not Comport with Due Process. ......................... 16

     B.     The Government Has Not Provided Abrego Garcia With Due Process. ............. 18

     C.     Abrego Garcia Is Entitled To Due Process. ........................................................ 20

     D.     *Munaf* Does Not Preclude the Requested Relief .................................................. 23

Conclusion ..............................................................................................................................25

**Table of Authorities**

**Cases**

*Abrego Garcia v. Noem*,
    2025 WL 1021113 (4th Cir. Apr. 7, 2025) ..............................................................7, 8

*Abrego Garcia v. Noem*,
    2025 WL 2062203 (D. Md. July 23, 2025).................................................................9

*Abrego Garcia v. Noem*,
    777 F. Supp. 3d 501 (D. Md. 2025)...........................................................7, 8, 9, 26

*Baltodano v. Bondi*,
    2025 WL 3123991 (W.D. Wash. Nov. 7, 2025)...................................................5, 7

*Bracic v. Holder*,
    603 F.3d 1027 (8th Cir. 2010) ................................................................................3

*Bufkin v. Collins*,
    604 U.S. 369 (2025)..............................................................................................14

*Coreas v. Bounds*,
    451 F. Supp. 3d 407 (D. Md. 2020) ......................................................................11

*Cruz Medina v. Noem*,
    --- F. Supp. 3d ---, 2025 WL 2306274 (D. Md. Aug. 11, 2025)..............................5

*Cruz Medina v. Noem*,
    ---F. Supp. 3d---, 2025 WL 2841488 (D. Md. Oct. 7, 2025).......................7, 21, 23

*D.A. v. Noem*,
    ---F. Supp. 3d---, 2025 WL 2646888 (D.D.C. Sept. 15, 2025)...............................5

*D.V.D. v. DHS*,
    2025 WL 2673195 (D. Mass. Aug. 28, 2025) .......................................................5

*D.V.D. v. DHS*,
    778 F. Supp. 3d 355 (D. Mass. 2025) .........................................................2, 4, 29

*D.V.D. v. DHS*,
    No. 1:25-10676 (D. Mass.) ................................................................................4, 5

*Dep't of Homeland Security v. D.V.D.*,
    145 S. Ct. 2153 (2025)........................................................................................1, 6

*Dep't of Homeland Security v. D.V.D.*,
    145 S. Ct. 2627 (2025)...........................................................................................1

*Detroit Free Press v. Ashcroft*,
    303 F.3d 681 (6th Cir. 2002) ............................................27

*DHS v. Thuraissigiam*,
    591 U.S. 103 (2020) ..............................................10, 25, 26

*Douglas v. Baker*,
    2025 WL 2687354 (D. Md. Sept. 19, 2025) ...............................5

*E.D.Q.C. v. Warden, Stewart Det. Ctr.*,
    789 F. Supp. 3d 1234 (M.D. Ga. 2025) .................................5

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*,
    950 F.3d 177 (3d Cir. 2020) ............................................12

*Enriquez-Perdomo v. Newman*,
    54 F.4th 855 (6th Cir. 2022) ...........................................9

*Escalante v. Noem*,
    2025 WL 2206113 (E.D. Tex. Aug. 2, 2025) ...............................5

*Esmail v. Noem*,
    2025 WL 3030589 (C.D. Cal. Sept. 26, 2025) ...........................7

*Garcia v. Noem*,
    Case No. 25-02780 (D. Md. Oct. 10, 2025) ............................20

*Gomez v. Mattos*,
    2025 WL 3101994 (D. Nev. Nov. 6, 2025) ..............................7

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) ..........................................4

*Guzman Chavez v. Hott*,
    940 F.3d 867 (4th Cir. 2019), *rev'd on other grounds*, 594 U.S. 523 (2021) ........................21

*Hamdi v. Rumsfeld*,
    542 U.S. 507 (2004) ...................................................23

*Hernandez v. Gonzales*,
    424 F.3d 42 (1st Cir. 2005) ...........................................9

*Ibarra-Perez v. United States*,
    154 F.4th 989 (9th Cir. 2025) .......................................9, 10

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) .........................................10

*Jama v. Immigr. & Customs Enf't*,
543 U.S. 335 (2005) ........................................................................13

*Jama v. I.N.S.*,
329 F.3d 630 (8th Cir. 2003) .........................................................13

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ...............................................................8, 10, 11

*Johnson v. Guzman Chavez*,
594 U.S. 523 (2021) ........................................................................27

*Kirk v. Comm'r of Soc. Sec. Admin.*,
987 F.3d 314 (4th Cir. 2021) .........................................................23

*Kiyemba v. Obama*,
561 F.3d 509 (D.C. Cir. 2009) .......................................................28

*Kumarasamy v. Att'y Gen. of U.S.*,
453 F.3d 169 (3d Cir. 2006) ...........................................................27

*Louangmilith v. Noem*,
2025 WL 2881578 (S.D. Cal. Oct. 9, 2025) ....................................7

*Lynch v. Cannatella*,
810 F.2d 1363 (5th Cir. 1987) .......................................................27

*M.T.M. v. Andrews*,
2025 WL 2995053 (C.D. Cal. Sept. 24, 2025) .................................5

*Manago v. Carter*,
2025 WL 2576755 (D. Kansas Sept. 5, 2025) ..................................5

*Medellin v. Texas*,
552 U.S. 491 (2008) ........................................................................13

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) .......................................................................6

*Munaf v. Geren*,
553 U.S. 674 (2008) ........................................................................28

*Nadari v. Bondi*,
2025 WL 2934514 (C.D. Cal. Sept. 3, 2025) ...................................7

*Nasrallah v. Barr*,
590 U.S. 573 (2020) ....................................................................2, 10

iv

*Nguyen v. Scott,*
 --- F. Supp. 3d ---, 2025 WL 2419288 (W.D. Wash. Aug. 21, 2025) ..............................5, 6, 7

*Nishimura Ekiu v. United States,*
 142 U.S. 651 (1892) ..............................................................................................25, 26

*Noem v. Abrego Garcia,*
 145 S. Ct. 1017 (2025) ..............................................................................................1

*Ortega v. Kaiser,*
 2025 WL 2243616 (N.D. Cal. Aug. 6, 2025) ..........................................................5

*Ozturk v. Hyde,*
 136 F.4th 382 (2d Cir. 2025) ..............................................................................9, 11

*Patel v. Garland,*
 596 U.S. 328 (2022) ..............................................................................................18

*Phillips Petroleum Co. v. Shutts,*
 472 U.S. 797 (1985) ................................................................................................6

*Polfliet v. Cuccinelli,*
 955 F.3d 377 (4th Cir. 2020) ................................................................................15

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem,*
 No. 25-CV-306, 2025 WL 1825431 (D.D.C. July 2, 2025) ..................................10

*Reno v. Am.-Arab Anti-Discrimination Comm.,*
 525 U.S. 471 (1999) ............................................................................................7, 8

*Reno v. Flores,*
 507 U.S. 292 (1993) ..............................................................................................21

*Riley v. Bondi,*
 606 U.S. 259 (2025) ............................................................................................2, 3

*Rodriguez-Fernandez v. Wilkinson,*
 654 F.2d 1382 (10th Cir. 1981) ............................................................................27

*Roland v. United States Citizenship & Immigr. Servs.,*
 850 F.3d 625 (4th Cir. 2017) ................................................................................16

*Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Ltd.,*
 511 F.3d 437 (4th Cir. 2007) ................................................................................21

*Sagastizado Sanchez v. Noem,*
 2025 WL 2957003 (S.D. Tex. Sept. 10, 2025) ....................................................21

*Sagastizado v. Noem,*
    --- F. Supp. 3d ---, 2025 WL 2957002 (S.D. Tex. Oct. 2, 2025) ..............................5, 7, 23, 29

*Saint Fort v. Ashcroft,*
    329 F.3d 191 (1st Cir. 2003) ....................................................................................13

*Santamaria Orellana v. Baker,*
    2025 WL 2444087 (D. Md. Aug. 25, 2025) ............................................................5, 11

*Santamaria Orellana v. Baker,*
    2025 WL 2841886 (D. Md. Oct. 7, 2025) .............................................................7, 12

*Shaiban v. Jaddou,*
    97 F.4th 263 (4th Cir. 2024), *cert. denied,* 145 S. Ct. 1046 (2025)..................16, 17

*Shaughnessy v. United States ex rel. Mezei,*
    345 U.S. 206 (1953)............................................................................................25, 26

*Trump v. J.G.G.,*
    604 U.S. 670 (2025).................................................................................................21

*Umanzor-Chavez v. Noem,*
    2025 WL 2467640 (D. Md. Aug. 27, 2025) .............................................................5

*Vaskanyan v. Janecka,*
    2025 WL 2014208 (C.D. Cal. June 25, 2025) ..........................................................5

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)..................................................................................................6

*Wong Wing v. United States,*
    163 U.S. 228 (1896)............................................................................................26, 27

*Y.T.D. v. Andrews,*
    2025 WL 2675760 (E.D. Cal. Sept. 18, 2025)..........................................................5

*Zadvydas v. Davis,*
    533 U.S. 678 (2001)........................................................................................8, 25, 26

*Zhenli Ye Gon v. Dyer,*
    651 F. App'x 249 (4th Cir. 2016) ...........................................................................12

## **Statutes**

8 U.S.C. 1159(b) ...............................................................................................................17

8 U.S.C. 1231(b)(2) ..........................................................................................................16

8 U.S.C. § 1101(a)(47)(A) ..................................................................................................2

8 U.S.C. § 1154 .................................................................................................16

8 U.S.C. § 1154(a)(1)(A)(viii) ..........................................................................16

8 U.S.C. § 1155 .................................................................................................15

8 U.S.C. §1159 ............................................................................................16, 17

8 U.S.C. § 1159(b) ......................................................................................16, 17

8 U.S.C. § 1159(b)(2) .......................................................................................17

8 U.S.C. § 1231(b)(2) ..............................................................13, 15, 16, 17, 18, 20

8 U.S.C. § 1231(b)(2)(A)(i) ..........................................................................13, 14

8 U.S.C. § 1231(b)(2)(A)(ii) ..............................................................................13

8 U.S.C. § 1231(b)(2)(C)(i–iv) ....................................................................14, 18

8 U.S.C. § 1231(b)(3)(A) .....................................................................................8

8 U.S.C. § 1252(a)(2)(B) ...............................................................................13, 14

8 U.S.C. § 1252(a)(2)(B)(ii) .............................................13, 14, 15, 17, 18

8 U.S.C. § 1252(a)(4) .....................................................................................11, 12

8 U.S.C. § 1252(a)(5) ...........................................................................................9

8 U.S.C. § 1252(b)(9) ...........................................................................................9

8 U.S.C. § 1252(g) ........................................................................................7, 8, 9

28 U.S.C. § 2241 ............................................................................................8, 13

## **Other Authorities**

Federal Rule of Civil Procedure 23(b)(2) ...........................................................5

18 *Moore's Federal Practice* § 131.40[3][e][iii] (2002) ....................................4

*Restatement (Second) of Judgments* § 26 (A.L.I. 1982) ...................................4

Rule 30(b)(6) .....................................................................................................22

18 Wright & Miller, *Federal Practice and Procedure* § 4404 (3d ed.) .............4

**Introduction**

The Government seeks to remove Abrego Garcia, without due process, to a distant country where he has no family, no ties, and no meaningful connection. That is part of the Government's campaign of retribution to punish Abrego Garcia because he dared to vindicate his statutory and constitutional rights in this Court earlier this year, after the Government unlawfully removed him to El Salvador. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025). Now on its fourth proposed removal destination in Africa—Liberia, after Uganda, Eswatini, and Ghana each fell through—the Government's Supplemental Brief and Motion to Dissolve the Preliminary Injunction (ECF 72) tries to block judicial review of its unlawful third-country removal efforts, largely by repackaging jurisdictional arguments that this Court has considered and rejected before.

The Court should deny the Government's Motion for three main reasons. First, the Supreme Court's stay order in *D.V.D.* says nothing about Abrego Garcia's claims and does not foreclose them. *See Dep't of Homeland Security v. D.V.D.*, 145 S. Ct. 2153 (2025). Second, the array of jurisdiction-stripping statutory provisions the Government invokes do not apply here. Third, the Government's procedures for attempting to remove Abrego Garcia to Liberia are constitutionally deficient, as they provide no meaningful review of country-specific fear determinations and deny Abrego Garcia the procedural protections that due process requires.

**Background**

In light of the Court's extensive familiarity with this matter—and to avoid duplicating the comprehensive briefing already before the Court—Abrego Garcia respectfully incorporates by reference his Supplemental Brief in Support of His Petition for Habeas Corpus (ECF 71). That submission sets forth a detailed recitation of the factual background.

**Argument**

**I.      Abrego Garcia's Challenges Are Not Barred by *D.V.D.***

**A.      There Is No Claim Splitting in This Case.**

The Government's lead argument is that Abrego Garcia is a member of the *D.V.D.* class and is impermissibly splitting his claims between this case and *D.V.D.* ECF 72 at 7–11. That is wrong for at least four reasons.

*First*, the Government has failed to show that Abrego Garcia is a member of the *D.V.D.* class. *See* ECF 32 at 2–5. Membership requires, among other things, a "final removal order." *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025). The Government has not put in the record a final removal order for Abrego Garcia.

The Government argues that it need not submit an actual removal order because the procedural history section of the immigration court's opinion addressing withholding of removal states that, at an earlier hearing, the court found "removability to be established." ECF 72 at 9 (quoting ECF 28-1 at 23).

But a procedural history note is not an "order of removal." As the Supreme Court held earlier this year, an "order of removal" must share the "same characteristics" as an "order of deportation," *Riley v. Bondi*, 606 U.S. 259, 267 (2025), which is defined by statute as a formal "order . . . concluding that the alien is deportable or ordering deportation," 8 U.S.C. § 1101(a)(47)(A). An order that addresses only *relief from removal*—such as an order addressing only withholding of removal—does not qualify as an "order of removal." *Riley*, 606 U.S. at 263; *see also Nasrallah v. Barr*, 590 U.S. 573 (2020) (order that addresses only relief under the Convention Against Torture is not a final order of removal).

No such order exists in this record. The Government has not produced one. And the withholding order it cites is legally and factually insufficient to qualify as one. As a matter of law,

2

a withholding order like the one in this case that arose "in a withholding-only proceeding is not a 'final order of removal.'" *Riley*, 606 U.S. at 263. And, as a matter of fact, that withholding order never *orders* Abrego Garcia's removal. The withholding order is explicit that the scope of the order addresses only potential *relief from removal*:

<u>**ORDER**</u>

It is hereby ordered that:

    I.    the Respondent's application for asylum pursuant to INA § 208 is **DENIED**;

    II.   the Respondent's application for withholding of removal pursuant to INA § 241(b)(3) is **GRANTED**; and

    III.  the Respondent's application for withholding of removal under the Convention Against Torture is **DENIED**;

10 /10 /19
Date

David M. Jones
United States Immigration Judge
Baltimore, Maryland

ECF 28-1 at 35. Simply put, that is not an order of removal. When an immigration judge finds removability but fails to enter an actual order of removal, the proper course is for the Government to return to the immigration judge for entry of an order of removal. That is what happened, for example, in *Bracic v. Holder*, 603 F.3d 1027 (8th Cir. 2010). There, an individual conceded removability but sought withholding of removal and other relief. *Id.* at 1031. The immigration judge denied all relief but "failed to enter an order of removal." *Id.* at 1032. On appeal, the Board of Immigration Appeals found it "appropriate to remand the record to the Immigration Court for entry of an order of removal." *Id.* Here, the Government has failed to show it ever obtained an order of removal for Abrego Garcia.

*Second*, even if Abrego Garcia were a *D.V.D.* class member, "a class action, 'of course, is one of the recognized exceptions to the rule against claim-splitting.'" *Gunnells v. Healthplan Servs.,*

*Inc.*, 348 F.3d 417, 432 (4th Cir. 2003) (quoting 18 *Moore's Federal Practice* § 131.40[3][e][iii] (2002)). This is an exception precisely "to avoid unfairness and violations of due process rights of unnamed class members." 18 *Moore's Federal Practice* § 131.40[3][e][iii]; *see also Restatement (Second) of Judgments* § 26 (A.L.I. 1982). As an unnamed purported member of the non-opt-out *D.V.D.* class, Abrego Garcia had no control over the claims or arguments in that case—indeed, he was imprisoned in El Salvador when that class was certified in April 2025. *See D.V.D. v. DHS*, 778 F. Supp. 3d 355 (D. Mass. 2025). The Government's reliance on *Steele v. United States* is misplaced. 144 F.4th 316 (D.C. Cir. 2025). *Steele* was not a class action; rather, it concerned plaintiffs who, unlike Abrego Garcia, "attempt[ed] to reassert claims that they previously raised, voluntarily withdrew, and failed to revive through amendment." *Id.* at 327.

*Third*, the lack of a final judgment in *D.V.D.* means there is no formal bar to the Court considering Abrego Garcia's claims, even those that would overlap with *D.V.D. See* ECF 32 at 6–8. Beyond the prudential considerations Abrego Garcia previously discussed that favor deciding his claims here, *id.*, the Government's conduct in *D.V.D.* also warrants disregarding its claim-splitting argument. *See* 18 Wright & Miller, *Federal Practice and Procedure* § 4404 (3d ed.) ("A defendant who expressly asserts that one part of a claim should not be advanced in one action because it is properly the subject of a separate pending action should lose any claim-splitting argument, whether as a matter of express consent or estoppel.").

The Government's strategy across these cases is clear: evade judicial review. Since the Supreme Court stayed the injunction in *D.V.D.*, the Government has repeatedly obstructed progress in that case. *See, e.g.*, *D.V.D. v. DHS*, No. 1:25-10676 (D. Mass.), ECF 203, 206, 207, 220 (repeated motions to stay and extensions). At the same time, the Government argues in cases across the

country that similar claims may be heard only in *D.V.D.*,[1] while simultaneously contending in *D.V.D.* that the district court lacks jurisdiction and signaling that it will soon seek dismissal of the entire case. *See D.V.D. v. DHS*, No. 1:25-10676, ECF 222 ("*D.V.D.* Status Report") at 1–2; *D.V.D. v. DHS*, Nos. 25-1393, -1631 (1st Cir.), Docs. 00118311224, 00118343928. The Government cannot wield claim-splitting as both sword and shield to deny litigants their day in court. *See D.V.D. v. DHS*, 2025 WL 2673195, at *1 (D. Mass. Aug. 28, 2025) (recognizing this risk and holding the court would dissolve the inoperative injunction if it could); *see also D.A. v. Noem*, ---F. Supp. 3d--, 2025 WL 2646888, at *2 (D.D.C. Sept. 15, 2025) (recognizing the "pattern and widespread effort to evade the government's legal obligations by doing indirectly what it cannot do directly").

*Fourth*, the Supreme Court has left open the question whether, in certain circumstances, an individual's mandatory inclusion in a class certified under Federal Rule of Civil Procedure 23(b)(2) may violate due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 & n.3 (1985) (holding that the absence of notice and opt-out rights in class actions predominantly for monetary relief violates due process, while reserving the question of whether the same is true for class actions seeking equitable relief); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) (noting the "serious possibility" that *Phillips Petroleum* may apply to class actions "where the monetary

---

[1] *See e.g.*, *Baltodano v. Bondi*, 2025 WL 3123991, at *3 (W.D. Wash. Nov. 7, 2025); *Sagastizado v. Noem*, --- F. Supp. 3d ---, 2025 WL 2957002, at *7–8 (S.D. Tex. Oct. 2, 2025); *M.T.M. v. Andrews*, 2025 WL 2995053, at *1 (C.D. Cal. Sept. 24, 2025); *Douglas v. Baker*, 2025 WL 2687354, at *3 (D. Md. Sept. 19, 2025); *Y.T.D. v. Andrews*, 2025 WL 2675760, at *13 (E.D. Cal. Sept. 18, 2025); *Manago v. Carter*, 2025 WL 2576755, at *2 (D. Kansas Sept. 5, 2025); *Umanzor-Chavez v. Noem*, 2025 WL 2467640, at *1 n.1 (D. Md. Aug. 27, 2025); *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *3 (D. Md. Aug. 25, 2025); *Nguyen v. Scott*, --- F. Supp. 3d ---, 2025 WL 2419288, at *20 (W.D. Wash. Aug. 21, 2025); *Cruz Medina v. Noem*, --- F. Supp. 3d ---, 2025 WL 2306274, at *12 (D. Md. Aug. 11, 2025); *Ortega v. Kaiser*, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025); *Escalante v. Noem*, 2025 WL 2206113, at *4 (E.D. Tex. Aug. 2, 2025); *Vaskanyan v. Janecka*, 2025 WL 2014208, at *7 (C.D. Cal. June 25, 2025); *E.D.Q.C. v. Warden, Stewart Det. Ctr.*, 789 F. Supp. 3d 1234, 1243 (M.D. Ga. 2025).

claims do not predominate"). This case presents exactly the circumstances that raise those constitutional concerns. Under the Government's theory, mandatory inclusion in the *D.V.D.* class extinguishes Abrego Garcia's right to present his individual claims in court—even though his life and liberty are at stake. If that were true, due process would require an opt-out right. *Cf. Phillips Petroleum*, 472 U.S. at 812 (holding, in a class action seeking monetary damages, that "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court.").

### B.     The Government Misreads *D.V.D.*

The Government next argues that the Supreme Court in *D.V.D.* rejected, on the merits, challenges to its March 30 Memorandum. ECF 72 at 11–13. That is incorrect. The Supreme Court did not resolve the merits in *D.V.D.*; it merely entered a stay of the district court's injunction. 145 S. Ct. at 2153 ("The April 18, 2025, preliminary injunction . . . is stayed . . . ."). As Justice Kavanaugh has emphasized, a "stay order is not a ruling on the merits, but instead simply stays the District Court's injunction *pending a ruling on the merits*." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring). The Government's theory—that an unexplained stay silently endorses every argument it made—finds no support in law or logic. The far more reasonable understanding is that the *D.V.D.* stay order says nothing about the merits of the March 30 Memorandum. *See Nguyen*, ---F. Supp. 3d---, 2025 WL 2419288, at *23; ECF 32 at 5–6.

Consistent with that understanding, courts around the country, including in this District, have rejected the Government's attempt to treat the *D.V.D.* stay as an implicit ruling that the March 30 Memorandum satisfies due process. *See Baltondano*, 2025 WL 3123991, at *3; *Cruz Medina v. Noem*, ---F. Supp. 3d---, 2025 WL 2841488, at *8 (D. Md. Oct. 7, 2025) ("*Cruz Medina II*"); *Sagastizado*, ---F. Supp. 3d---, 2025 WL 2957002, at *13; *Santamaria Orellana v. Baker*, 2025

WL 2841886, at *11 (D. Md. Oct. 7, 2025); *Nguyen*, ---F. Supp. 3d---, 2025 WL 2419288, at *22–23.

Indeed, when courts have directly addressed the merits, they have consistently held that the March 30 Memorandum fails to provide due process. *See Baltondano*, 2025 WL 3123991, at *3–6; *Gomez v. Mattos*, 2025 WL 3101994, at *2–3, 6 (D. Nev. Nov. 6, 2025); *Louangmilith v. Noem*, 2025 WL 2881578, at *4–5 (S.D. Cal. Oct. 9, 2025); *Cruz Medina II*, ---F. Supp. 3d---, 2025 WL 2841488, at *5–9; *Sagastizado*, ---F. Supp. 3d---, 2025 WL 2957002, at *9–12; *Esmail v. Noem*, 2025 WL 3030589, at *4–7 (C.D. Cal. Sept. 26, 2025); *Nadari v. Bondi*, 2025 WL 2934514, at *3 & n.2 (C.D. Cal. Sept. 3, 2025); *Nguyen*, ---F. Supp. 3d---, 2025 WL 2419288, at *18–24.

## II.     Statutory Jurisdictional Bars Do Not Bar Abrego Garcia's Claims.

The Government cites an assortment of jurisdiction-stripping provisions that limit district court review of certain immigration-related claims. None applies here.

### A.     Section 1252(g) Does Not Bar Abrego Garcia's Claims.

As it has in prior filings, the Government argues that 8 U.S.C. § 1252(g) strips this Court of jurisdiction. ECF 72 at 14–15. But the Supreme Court has "command[ed] a narrow construction of Section 1252(g), limiting application solely to the Attorney General's exercise of lawful discretion to (1) commence proceedings; (2) adjudicate cases; or (3) execute removal orders." *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 514 (D. Md. 2025) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999)); *accord Abrego Garcia v. Noem* ("*Abrego Garcia II*"), 2025 WL 1021113 (4th Cir. Apr. 7, 2025) at *2 (Thacker, J., concurring). Because § 1252(g) names "three discrete events along the road to deportation," *AADC*, 525 U.S. at 482, it does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). For three reasons, Abrego Garcia's claims fall well outside § 1252(g)'s narrow domain.

*First*, Abrego Garcia is not challenging any exercise of discretion to execute his purported removal order. Instead, like the petitioner in *Zadvydas v. Davis*, 533 U.S. 678 (2001), Abrego Garcia "challenge[s] the extent of the Attorney General's authority under the [Immigration and Nationality Act] statute" and the Constitution. 533 U.S. at 688. "[T]he extent of that authority is not a matter of discretion," and therefore falls outside the scope of § 1252(g). *Id.* (holding that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention). As the Fourth Circuit held in *Bowrin v. U.S. I.N.S.*, § 1252(g) does not bar jurisdiction over habeas petitions challenging "agency interpretation of statutes as these decisions do not fall into any of the three categories enumerated in § 1252(g)." 194 F.3d 483, 488 (4th Cir. 1999). Like in *Bowrin*, Abrego Garcia raises only pure questions of law. *See* ECF 71 at 1–2. Because Abrego Garcia is not challenging any of the "three discrete actions" that § 1252(g) covers, the jurisdictional bar does not apply. *See Abrego Garcia II*, 2025 WL 1021113, at *2 (Thacker, J., concurring) (citation omitted).

*Second*, this Court has already rejected the Government's argument, holding that § 1252(g) did not bar judicial review of the legal question of whether the Government exceeded its authority in removing Abrego Garcia to El Salvador in violation of 8 U.S.C. § 1231(b)(3)(A). *Abrego Garcia v. Noem*, 777 F. Supp. 3d at 515. Other courts agree that § 1252(g) does not deprive the federal courts of jurisdiction to review a noncitizen's purely legal arguments challenging the third-country removal process. *See, e.g., Ibarra-Perez v. United States*, 154 F.4th 989, 999 (9th Cir. 2025) (holding § 1252(g) did not bar "review [of] Ibarra-Perezs' purely legal arguments challenging ICE's removal to Mexico without providing any process that would have allowed him to present evidence supporting his fear of removal to that country"). Nor do they bar challenges to the legality

of detention. *See, e.g.*, *Öztürk v. Hyde*, 136 F.4th 382, 394–401 (2d Cir. 2025); *Hernandez v. Gonzales*, 424 F.3d 42, 42–43 (1st Cir. 2005).

*Third*, § 1252(g) does not apply here for the additional reason that there is no record in this case of a final removal order subject to execution. *See* Section I.A, above. Section 1252(g) is inapplicable when there is no removal order "subject to execution." *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 865 (6th Cir. 2022); *accord Abrego Garcia*, 777 F. Supp. 3d at 514.

**B.      Sections 1252(a)(5) and (b)(9) Do Not Bar Abrego Garcia's Claims.**

The Government fares no better with its argument that Abrego Garcia's habeas petition is really a "petition for review . . . of an order of removal" such that 8 U.S.C. § 1252(a)(5) and § 1252(b)(9) deprive this Court of jurisdiction. ECF 72 at 15–19.

The Government argues that "[d]esignating a third country for removal . . . falls within" § 1252(b)(9)'s jurisdictional bar because it is "an action taken to remove" Abrego Garcia. ECF 72 at 16. Nothing has changed since the Court last rejected this argument. *See Abrego Garcia v. Noem*, Case No. 8:25-cv-00951-PX (D. Md. June 30, 2025), ECF 208 at 4–5 (making this argument in opposition to Abrego Garcia's emergency motion); *Abrego Garcia v. Noem*, 2025 WL 2062203 (D. Md. July 23, 2025) (granting emergency motion over Government's opposition).

The Government cannot twist Abrego Garcia's habeas petition into something it is not: a challenge to his putative removal order from 2019. Challenges to removal orders are distinct from challenges to the procedures for obtaining withholding of removal to a third country. The Ninth Circuit held exactly that earlier this year in *Ibarra-Perez*, when confronted with a noncitizen's lawsuit based on his erroneous removal to a third country. 154 F.4th at 989. Rejecting the very argument the Government makes here, the Ninth Circuit noted that § 1252(b)(9)'s "'arising from' language appears broad, but the Supreme Court has cautioned against an 'expansive' interpretation of Section 1252(b)(9) that would lead to 'absurd' results and make certain claims 'effectively

unreviewable.'" *Id.* at 1000 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality op.)); *accord Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, No. 25-CV-306, 2025 WL 1825431, at *48 n.18 (D.D.C. July 2, 2025) ("Because the actions taken to remove the individual plaintiffs and putative class members were taken outside the procedures set forth in the INA, the zipper clause does not bar review of those actions prior to the issuance of a final order of removal.").

The Government relies on another Ninth Circuit case—*J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016)—for the contrary proposition, but *J.E.F.M.* undermines, rather than supports, its argument. The *J.E.F.M.* court held that right-to-counsel claims *within Section 1229a removal proceedings* fall within § 1252(b)(9)'s bar on review of claims "arising from any . . . proceeding brought to remove an alien." *Id.* at 1035. At the same time, however, it recognized that Section 1252(b)(9) presents no bar to claims "that are 'independent of or collateral to the removal process.'" *Id.* at 1032. Abrego Garcia's habeas claims fall squarely within this latter category. If he prevails on any or all of his habeas claims, the validity of his removal order remains unaffected—only his detention and the Government's unlawful third-country removal procedures are at issue. *Cf. Nasrallah*, 590 U.S. at 582 (holding that only "rulings that affect the validity of the final order of removal merge into the final order of removal for purposes of judicial review").

The Government's fallback argument—that Abrego Garcia's habeas claims "fall outside the proper scope of habeas corpus," ECF 72 at 17 (citing *DHS v. Thuraissigiam*, 591 U.S. 103 (2020))—is easily disposed of. Courts regularly hear habeas petitions and grant relief to habeas petitioners who challenge unconstitutional procedures or the failure to observe procedures required by law. *E.g.*, *Santamaria Orellana*, 2025 WL 2444087 (D. Md. Aug. 25, 2025); *Coreas v. Bounds*, 451 F. Supp. 3d 407, 419 (D. Md. 2020).

In sum, the "mere fact of" Abrego Garcia's detention does not "funnel[] all [his] unlawful detention claims into § 1252(b)(9)," *Öztürk*, 136 F.4th at 399, because "[t]he question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action," *Jennings*, 583 U.S. at 295 n.3 (plurality op.) (emphasis in original). Here, the legal disputes arise from the Government's unlawful detention and third-country removal procedures, so § 1252(a)(5) and § 1252(b)(9) do not deprive this Court of jurisdiction. *See Öztürk*, 136 F.4th at 401 ("Construing an independent . . . challenge to detention as necessarily implying a challenge to removal would lead to what *Jennings* called an 'absurd' result.") (quoting *Jennings*, 583 U.S. at 293 (plurality op.)).

### C.    Section 1252(a)(4) and FARRA Do Not Bar Abrego Garcia's Claims.

The Government's argument that 8 U.S.C. § 1252(a)(4) and the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") bar this Court's jurisdiction over Abrego Garcia's habeas petition, *see* ECF 72 at 19–20, is equally meritless.

§ 1252(a)(4) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture . . . ." 8 U.S.C. § 1252(a)(4). Similarly, FARRA § 2242(d) limits jurisdiction "to consider or review claims raised under the Convention" except "as part of the review of a final order of removal." Pub. L. No. 105-277, § 2242(d), 112 Stat. 2681, 2681-822. This Court has made clear that these provisions do not limit jurisdiction over claims that do not "seek review of any determination by an IJ or the BIA pursuant to CAT" but rather seek "the opportunity to have an IJ hear [Petitioner's] reasonable fear claim that may be based on CAT." *Santamaria Orellana*, 2025 WL 2841886, at *8. Like Santamaria Orellana, Abrego Garcia is not challenging a CAT determination that has already been made

through proper channels. Rather, he is challenging the lawfulness of the process the Government is following in its endeavor to remove him to Liberia.

Further, even if Abrego Garcia's claims were deemed to implicate CAT, § 1252(a)(4) "does not expressly strip jurisdiction over [CAT] claims that cannot await a petition for review." *Santamaria Orellana*, 2025 WL 2841886, at *8 (quoting *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 180, 190 (3d Cir. 2020)). Here, if Abrego Garcia "cannot present his claim that he is entitled to IJ review of the USCIS asylum officer's negative reasonable fear determination, he will be sent to the exact country to which he alleges a reasonable fear of removal before any judicial review." *Id.*

Likewise, the procedural nature of Abrego Garcia's claim places it outside of FARRA's jurisdictional bar. The Fourth Circuit drew this distinction in *Zhenli Ye Gon v. Dyer*, 651 F. App'x 249, at 251, 253 (4th Cir. 2016), as did this Court in *Santamaria Orellana*, 2025 WL 2841886, at *9. As the court explained in *Santamaria Orellana*, even where a district court could not hear a direct CAT claim, it "properly considered the claim that the petitioner was denied due process based on the manner in which his case was reviewed and decided." 2025 WL 2841886, at *9 (citing *Zhenli Ye Gon*, 651 F. App'x at 251, 253). Like the claims at issue in *Santamaria Orellana* and *Zhenli Ye Gon*, Abrego Garcia's claims focus on procedural deficiencies and due process violations in the Government's removal process, not a direct CAT determination. Because he "does not contest a ruling under CAT on whether he has a reasonable fear of torture but instead advances a procedural due process claim," alongside a substantive due process claim, "FARRA § 2242(d) does not bar his claim." *Id.*

It is telling that the Government does not address this on-point precedent. Instead, it cites only to *Medellin v. Texas*, 552 U.S. 491 (2008), and *Saint Fort v. Ashcroft*, 329 F.3d 191 (1st Cir.

2003), for the general proposition that the CAT is not self-executing. *See* ECF 72 at 19. That is irrelevant. That FARRA may not supply jurisdiction is of no consequence; this Court has jurisdiction under the habeas statute, 28 U.S.C. § 2241. *See* ECF 1 ¶ 8.

### D. Section 1252(a)(2)(B)(ii) Does Not Bar Abrego Garcia's Claims.

The Government continues to argue that its decision to disregard Costa Rica as Abrego Garcia's designated removal country is unreviewable because it was a discretionary decision, review of which is barred by 8 U.S.C. § 1252(a)(2)(B)(ii). But Congress has not given the Government such discretion.

The Immigration and Nationality Act provides that a noncitizen "ordered removed *may* designate one country to which the alien wants to be removed." 8 U.S.C. § 1231(b)(2)(A)(i) (emphasis added). If the noncitizen designates a country, "the Attorney General *shall* remove the alien to the country the alien so designates." 8 U.S.C. § 1231(b)(2)(A)(ii) (emphasis added). The statute thus bestows discretion only on the noncitizen subject to removal, who "may," but need not, designate a removal country. No discretion is bestowed on the Government, which "shall"—*i.e.*, must—remove the noncitizen to the designated country. *See Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("It is undisputed that the word 'shall' imposes a mandatory command. 'Shall' means 'must.'") (citations omitted). The statute does empower the Attorney General to disregard a designation, but only if one of four specified conditions exists. 8 U.S.C. § 1231(b)(2)(C)(i–iv).

The only case that directly addresses Section 1231(b)(2) in an applicable context is *Jama v. INS*, 29 F.3d 630 (8th Cir. 2003), *aff'd sub nom. Jama v. ICE*, 543 U.S. 335 (2005). *Jama* describes Section 1231(b)(2) as a "progressive, three-step process for determining a removable alien's destination country." *Id.* at 633. This process begins by "permit[ting] the alien to select a country of removal, subject to certain limitations if the country designated is one that is contiguous or adjacent to the United States." *Id.* "The Attorney General may disregard the alien's designation

under four specified circumstances; for example, if the designated country is unwilling to accept the alien." *Id. Jama* thus confirms that a designation may be disregarded only under the "four specified circumstances" in 8 U.S.C. § 1231(b)(2)(C); if none of those circumstances apply, then the Attorney General must abide by the noncitizen's designated removal destination.

Here, Abrego Garcia exercised his discretion to designate Costa Rica under § 1231(b)(2)(A)(i). *See* ECF 1-3; ECF 32 at 15–16. The Government does not argue that any of the four specified conditions applies here, *see* ECF 72 at 20–22, and none do, *see* ECF 32 at 14–16; *see* Transcript of Evidentiary Hearing at 100–04, *Garcia v. Noem,* Case No. 25-02780 (D. Md. Oct. 10, 2025) ("Oct. 10 Hr'g Tr."). Because none of these conditions applies, the Government has no discretion to disregard Costa Rica and select an alternative third-country removal destination. The Attorney General must follow the statutory framework specified in § 1231(b)(2) and described in *Jama*.

The Government argues that the "statutory prerequisites for actions that are specified to be discretionary" are unreviewable under § 1252(a)(2)(B)(ii). *See* ECF No. 72 at 20–22. That provision states that "no court shall have jurisdiction to review . . . any other *decision or action* of the Attorney General or the Secretary of Homeland Security the authorization for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). The scope of the jurisdictional bar is thus limited to discretionary decisions made or discretionary actions taken by the Attorney General or the Secretary of Homeland Security. *See Polfliet v. Cuccinelli,* 955 F.3d 377, 381 (4th Cir. 2020) ("On its face, § 1252(a)(2)(B)(ii) bars judicial review of decisions 'specified' to be in the 'discretion' of the Secretary.").

Under 8 U.S.C. § 1231(b)(2), the Government can disregard a noncitizen's designated country only when one of the four statutory conditions is met. Where none are met, there is no discretionary decision to make or discretionary action to take, so § 1252(a)(2)(B)(ii)'s jurisdictional bar is inapplicable. In other words, the Government's failure to abide by its mandatory duty under § 1231(b)(2)(A)(ii) remains reviewable notwithstanding § 1252(a)(2)(B)(ii).

None of the Government's cited cases addressed 8 U.S.C. § 1231(b)(2). Rather, the cases involved statutes with fundamentally different structures that—unlike § 1231(b)(2)—granted unbounded or expressly unreviewable discretion. *See Patel v. Garland*, 596 U.S. 328, 331 (2022) ("With an exception for legal and constitutional questions, Congress has [in § 1252(a)(2)(B)(i)] barred judicial review of the Attorney General's decisions denying discretionary relief from removal"); *Shaiban v. Jaddou*, 97 F.4th 263, 265 (4th Cir. 2024) (§ 1252(a)(2)(B)(ii) barred review of a discretionary decision under 8 U.S.C. § 1159(b)(2), which bestows discretion on the Secretary of Homeland Security and the Attorney General "whether to adjust the status of a noncitizen granted asylum to that of a lawful permanent resident"); *Polfliet v. Cuccinelli*, 955 F.3d at 381 (same for a discretionary decision under 8 U.S.C. § 1155, which grants unbounded discretion to the Secretary of Homeland Security, who "may, at any time, for what he deems to be good and sufficient cause, remove the approval of any petition approved by him . . . ."); *Roland v. U.S. CIS*, 850 F.3d 625, 629 (4th Cir. 2017) (same for discretionary decision under 8 U.S.C. § 1154(a)(1)(A)(viii), which gives the Secretary of Homeland Security "sole and unreviewable discretion" to determine whether a "citizen poses no risk" to a noncitizen beneficiary for purposes of certain petitions). These cases thus provide no support for barring judicial review here.

In an attempt to undermine Abrego Garcia's Costa Rica designation, the Government submitted a Declaration from John E. Cantú, the Acting Assistant Director for the Removal

Division of Enforcement and Removal Operations at ICE. *See* ECF 75-6. Cantú—an official never previously mentioned in this proceeding—states that he has been in contact with U.S. Department of State personnel. ECF 72 at 30. Due to the time that has elapsed, the Government claims that it is now assessment of the Department of State that Costa Rica "would not accept [Abrego Garcia] without further negotiations and, likely, additional commitments from the United States." *See* ECF 72 at 38 (citing ECF 75-6 ¶ 5).

The Declaration, however, offers nothing further to support this hearsay. Cantú provides no details about what changed, what communications occurred, or why the State Department purportedly believes further negotiations or additional commitments are now necessary. He cites no conversations with Costa Rican officials, no diplomatic correspondence, and no State Department analysis—just bare hearsay of the State Department's purported assessment. The Declaration is notable mainly for what it omits: any substantiation of its hearsay assertions.

In contrast to Cantú's unsubstantiated hearsay, the Government's designated witness testified at the October 10 hearing that nothing in Costa Rica's assurances letter would prevent Abrego Garcia's removal. *See* Oct. 10 Hr'g Tr. at 170:19–23. The Government further testified that the statutory conditions necessary to disregard a designation under § 1231(b)(2)(C) were not met. *See id.* at 100:10–102:18. The record thus establishes that Abrego Garcia's designation under § 1231(b)(2)(A)(i) may not be disregarded, and so review of the Government's compliance with its mandatory under § 1231(b)(2)(A)(ii) is not barred by § 1252(a)(2)(B)(ii).

III.    **The Government's Procedures Are Constitutionally Inadequate.**

A.    **The March 30 Guidance Does Not Comport with Due Process.**

The Government argues that because it has received purported assurances from Liberia, the March 30 Memorandum allows it to remove Abrego Garcia there without any further process. ECF 72 at 29–30. According to the Government, "the Due Process Clause requires no additional

procedures where the Executive has determined, based on diplomatic assurances that it has deemed to be credible, that a country will not torture a person on his removal.*" Id.* at 29. That is no process at all.

"It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings," including removal to third countries. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Indeed, it is well established that withholding of removal is country specific, meaning that noncitizens are entitled to "notice and an opportunity to request withholding of removal to *that* particular country." *Cruz Medina v. Noem*, 2025 WL 2841488, at *6 (D. Md. Oct. 7, 2025) (quoting *Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019), *rev'd on other grounds*, 594 U.S. 523 (2021)). That means that "[n]oncitizens have a right to meaningful notice and opportunity to be heard before being deported to a third country." *Id.* (quoting *Sagastizado Sanchez v. Noem*, 2025 WL 2957003, at *2 (S.D. Tex. Sept. 10, 2025) ("*Sagastizado I*")). The Constitution does not allow the Government to remove someone to a third country based only on purported assurances with no administrative or judicial oversight or protection whatsoever.

That is likely why the Government's own witness testified that even where the Government has received "credible" assurances from a third country, noncitizens who express fear of torture or prosecution upon removal must nevertheless receive a fear determination. *See* Transcript of Evidentiary Hearing at 81–84, *Garcia v. Noem*, Case No. 25-00951 (D. Md. Jul. 10, 2025)*.* That testimony binds the Government here. *Garcia*, Case No. 25-00951, ECF 216 (ordering the Government to "designate one or more individuals who have personal knowledge, or will acquire such knowledge . . . to testify on their behalf regarding . . . anticipated efforts to remove [Abrego Garcia] to a third country," including "the procedural steps Defendants intend to pursue"); *see also*

*Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Ltd.*, 511 F.3d 437, 445 (4th Cir. 2007) (holding that for purposes of Rule 30(b)(6), "there is no distinction between the corporate representative and the corporation"). Having heard that testimony, the Court determined that "[a]dherence to the Memorandum … raised a substantial risk that Abrego Garcia could once again be removed without due process and in a manner that would evade this Court's jurisdiction and the attendant protection against further constitutional violation." No. 25-cv-00951, ECF 238 at 8. The Government's withdrawal of the procedures it once claimed to offer only means the Memorandum provides even less protection to Abrego Garcia than it appeared to when the Court issued that prior ruling. The Court should reject the Government's argument that it need provide no more process than provided for by the Memorandum's plain text.

**B.     The Government Has Not Provided Abrego Garcia With Due Process.**

The Government next argues that Abrego Garcia in fact received *more* process than he is entitled to because he received a fear determination by a single USCIS officer and supposedly had the opportunity to file a motion to reopen his underlying removal order. According to the Government, the "combination of the March Guidance and the motion to reopen mechanism substantially eliminate the risk of an erroneous deprivation regarding [Abrego Garcia's] claimed fear of persecution or torture in Liberia." ECF 72 at 31.

That process falls well short of what due process requires. *See* ECF 71 at 12–21. The fear determination Abrego Garcia received was made without adequate information or protections. During that interview, a single USCIS officer concluded that Abrego Garcia did not establish that it is "more likely than not" that he would be persecuted or tortured in Liberia. However, that officer did not have the benefit of three of the four relevant documents in the Government's possession regarding Liberia's purported assurances of Abrego Garcia's safety. ECF 71 at 13 n.2. Nor was the officer permitted to consider the risk of refoulement, despite Liberia's agreeing to accept Abrego

Garcia only temporarily. Abrego Garcia was not given any explanation for why his claim was denied, just a check-the-box form stating the conclusion. *Id.* at 15–16. Where, as here, "an individual is not provided 'notice of the factual basis' for a material government finding and 'a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker," "the risk of an erroneous deprivation is too high." *Kirk v. Comm'r of Soc. Sec. Admin.*, 987 F.3d 314, 325 (4th Cir. 2021) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004)).

DHS regulations in analogous circumstances confirm that the Government does not consider a single, unreviewed USCIS determination to be sufficiently protective. *See Cruz Medina*, 2025 WL 2841488, at *7 ("The Court need look no further than DHS regulations themselves to conclude that, where a person alleges that he would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation."). "[T]here are no regulations that provide for circumstances under which USCIS is given the authority to conduct fear-screening interviews without providing for independent review of that screening by an IJ." *Id.*; *see also Sagastizado II*, 2025 WL 2957002, at *10–11. That review exists to protect noncitizens against erroneous deportation. Even the Government's designated witness testified that it was his understanding that the ordinary course process would apply here. Oct. 10 Hr'g Tr. at 143:11–25 (testifying "that judicial review of a determination of noncredibility as to fear will occur"). Moreover, in the ordinary course, that review is done at the more lenient "reasonable possibility" standard *because* it is a screening interview. ECF 71 at 17–18. There can be no serious dispute that an unreviewed determination at the more onerous "more likely than not" standard risks more erroneous deportations.

The motion to reopen supplied Abrego Garcia no additional process or protection. The Government argues that Abrego Garcia had "the opportunity to avail himself of the 'safeguard' of

a motion to reopen and a motion for stay of removal before an immigration judge," noting that "[t]he immigration judge denied his motion, but that is part of the process." ECF 72 at 31. The Government omits, however, that, after informing Abrego Garcia his sole recourse was to move to reopen in immigration court, Aug. 25 Tr. at 14:14–22, his motion was denied for lack of jurisdiction because the Immigration Judge held that "only the [Government] has jurisdiction to seek reopening."[2] ECF 39 at 10. As the Government well knows, it refused to do so, foreclosing that opportunity to be heard. ECF 71 at 10.

### C. Abrego Garcia Is Entitled To Due Process.

The Government's lead due process argument—that Abrego Garcia lacks any constitutional due process rights and thus *Mathews v. Diaz*, 426 U.S. 67 (1976), does not apply—rests on a misrepresentation of Supreme Court precedent. The Government claims that noncitizens "who cross the border illegally, evading inspection and admission procedures" are categorically excluded from constitutional due process. ECF 72 at 26. That argument wrongly conflates the minimal due process framework applicable at the border and ports of entry—where individual rights are at their lowest—with the robust due process rights granted to noncitizens living and working legally in our communities in the entire interior of the United States.

As the Supreme Court explained in *Thuraissigiam:* "While aliens who have *established connections* in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien *at the threshold of initial entry* cannot claim any greater rights under the Due Process Clause." 591 U.S. at 107 (emphasis added); *see also Shaughnessy v. United States ex*

---

[2] Before the motion was adjudicated, the Department of Justice interfered, reassigning it from the Baltimore-based judge who had overseen Abrego Garcia's 2019 case to an out-of-state judge with a history of denying asylum claims. *See* Oct. 10 H'rg Tr. at 109:10–114:9; ECF 39.1.

*rel. Mezei,* 345 U.S. 206, 213 (1953) (same). As applied here, Abrego Garcia is not "at the threshold

of initial entry" and has substantial "established connections in this country." He has a residence

in Maryland, where he has worked legally for more than six years, is married to a U.S. citizen, and

is the father of a U.S. citizen child. *See Thuraissigiam*, 591 U.S. at 138 (noting that constitutional

due process rights attach to foreigners who have a "domicil[e] or residence within the United States"

(quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892))). Abrego Garcia's

circumstances bear no resemblance to the circumstances of the petitioner in *Thuraissigiam*, where

the Court rejected the petitioner's argument that he was not stopped upon "initial entry into the

United States" because he "succeeded in making it 25 yards into U.S. territory." *Id.* at 139. Here,

once Abrego Garcia "enter[ed] the country, the legal circumstance change[d], for the Due Process

Clause applies to all 'persons' within the United States, including aliens, whether their presence

here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

The Government claims that there is an exception to the above framework for "unlawful

entrants" who have "evade[d] detection in crossing the border" and "entered the country

clandestinely." ECF 72 at 26. The Supreme Court has long held precisely the opposite. In *Yamataya*

*v. Fisher*, for example, the Supreme Court held that a noncitizen who was alleged to have

"surreptitiously, clandestinely, unlawfully, and without any authority come into the United States"

was entitled to "the fundamental principles that adhere in 'due process of law' as understood at the

time of adoption of the Constitution." 189 U.S. 86, 87 (1903); *id.* at 100. So too in *Mathews*, where

the Supreme Court held that the Fifth Amendment "protects every one" of the "millions of aliens

within the jurisdiction of the United States," and "[e]ven one whose presence in this country is

unlawful, involuntary, or transitory. 426 U.S. at 77. And in *Shaughnessy v. United States ex rel.*

*Mezei,* where the Court explained: "It is true that aliens who have once passed through our gates,

even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." 345 U.S. 206, 212 (1953).[3] In any event, the removal proceedings here were not initiated after Abrego Garcia had "evade[d] detection for years," ECF 72 at 27. The Government has long been aware of Abrego Garcia's presence in the United States—it granted him a withholding of removal to El Salvador in 2019, and prior to his March 2025 removal, he had been working pursuant to a government work authorization. *See Abrego Garcia v. Noem*, 8:25-cv-09051, ECF 211-3 at 14.

Moreover, every case on which the Government relies concerns procedural protections due to noncitizens seeking *admission* to the United States or asserting a right to *enter or remain* in the United States. *See, e.g.*, *Thuraissigiam*, 591 U.S. at 117 ("right to enter or remain"); *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("right to admission"); *Nishimura*, 142 U.S. at 660 ("permitted to enter"). But Abrego Garcia's habeas petition is not challenging his removal order—he is challenging the Government's third country removal procedures and its arbitrary and retaliatory treatment of him and detention. This case is thus more like *Wong Wing v. United States,* 163 U.S. 228, 237 (1896), in that it concerns "substantive protections for aliens who ha[ve already] been ordered removed, not procedural protections for aliens whose removability was being determined." *Zadvydas*, 533 U.S. at 694 (discussing *Wong Wing*, 163 U.S. at 237). This distinction is important because while "the power to admit or exclude aliens is a sovereign prerogative," *Landon*, 459 U.S. at 32, "[i]t does not follow that . . . [the Government] can confine them at hard labor in a

---

[3] To the extent *Thuraissigiam* said anything on the matter, it was to suggest that individuals who entered the country clandestinely but had established roots here might be entitled to bring a Suspension Clause challenge. *See Thuraissigiam*, *591 U.S.* at 150 (Breyer and Ginsburg, JJ., concurring) (noting the case raised "a host of difficult questions" including: "What review might the Suspension Clause assure, say, a person apprehended years after she crossed our borders clandestinely and started a life in this country?").

penitentiary before deportment, or subject them to any harsh and cruel punishment," or send them to a distant country where they risk torture or death. *Wong Wing*, 163 U.S. at 241. The Government's argument therefore fails, and the *Mathews* framework applies.[4]

### D. *Munaf* Does Not Preclude the Requested Relief.

The Government claims that under *Munaf v. Geren*, courts lack authority to entertain challenges to the sufficiency of diplomatic assurances that the Secretary of State has deemed credible. ECF 72 at 29 (citing *Munaf v. Geren*, 553 U.S. 674, 702–03 (2008); *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009) ("Kiyemba II")). But in so doing, the Government misrepresents both *Munaf* and progeny and the realities of Abrego Garcia's case.

As an initial matter, courts interpreting *Munaf* have made clear that *Munaf* did not create the bright-line rule the Government suggests. *See, e.g.*, *Kiyemba II*, 561 F.3d 509, 514–515 (holding that the government's assurances foreclose relief, not that the courts are powerless to intervene), *rehearing denied, Kiyemba v. Obama*, 2009 WL 9156123, at *1 (D.C. Cir. July 27,

---

[4] At bottom, the Government's argument fails for the fundamental reason that the "political branches" do not get to dictate the contours of constitutional rights. But it is also misleading to argue, as the Government does, that the "March Guidance . . . constitutes the political branches' reasoned judgment as to what [due] process should be in these circumstances." ECF 72 at 28. Congress has not enacted a statutory scheme governing third-country removals because such removals were virtually unheard of until ten months ago. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (noting "alternative-country removal is rare" and that "in 2017, only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country," representing roughly 0.007% of all removals); Brief for National Immigration Litigation Alliance, et. al. as Amici Curiae, *id.* (No. 19-897) (same); *see also Kumarasamy v. Att'y Gen. of U.S.*, 453 F.3d 169, 171 n.1 (3d Cir. 2006) (emphasizing that "non-citizens who are granted restrictions on removal are almost never removed from the U.S." (citations omitted)). And it is difficult to credit the notion that the March Guidance reflects a "reasoned judgment" when just days before it was issued, the Government had a far different view of what Due Process required. *See* Transcript of Oral Argument at 32–33*, Riley*, 606 U.S. 259 (Government arguing it has authority send a non-citizen to a third country "with the following caveat: We would have to give the person notice" and "the opportunity to raise a reasonable fear," and "[i]f they raise that reasonable fear, the withholding-only proceedings would [] continue . . . focus[ing] on the new country rather than the original one").

2009). Indeed, the Court in *Munaf* made clear that an exception exists, at least, for the "more extreme case in which the Executive has determined that a detainee is likely to be tortured but decides to transfer him anyway." *Munaf*, 553 U.S. 674 at 702; *see also Munaf*, 553 U.S. at 706–07 (Souter, J., concurring) (noting he "would extend the caveat to a case in which the probability of torture is well documented, even if the Executive fails to acknowledge it"). Abrego Garcia's current concerns relate to refoulement, and not torture, to which the rule that the Government is attempting to enforce does not apply.

Further, Abrego Garcia is not asking this Court to second-guess the sufficiency of Liberia's diplomatic assurances, nor of the Government's determination as to the credibility of those assurances. Rather, Abrego Garcia asks this Court to **take them at their word** that Liberia is only offering to accept him on a temporary basis. *See* ECF 73-3 ("The Government of the Republic of Liberia has announced its decision to receive Mr. Kilmar Armando Abrego Garcia on a *strictly humanitarian and temporary basis . . . .*") (emphasis in original). As a matter of common sense, once those temporary assurances expire, Abrego Garcia will have nowhere to go. This Court should deny the Government's request to dissolve the preliminary injunction to allow Abrego Garcia to pursue the process to which he is entitled under the laws of this country: for an immigration judge to review an immigration officer's unilateral negative fear determination.

Moreover, even accepting the Government's position that *Munaf* forecloses relief in this way, *Munaf* and *Kiyemba II* are silent as to fear of refoulement. As discussed above, Liberia has agreed to receive Abrego Garcia only on a "temporary basis." ECF 72-6. Setting aside the sufficiency of Liberia's diplomatic assurances that Abrego Garcia will not be tortured *while in Liberia*, Abrego Garcia has no guarantee against refoulement after Liberia's temporary assurances expire. *See D.V.D. v. U.S. Dep't of Homeland Sec.,* 778 F. Supp. 3d 355, 390 (D. Mass.) (subsequent

history omitted) ("Moreover, blanket assurances offer no protection against . . . chain refoulement, whereby the third country proceeds to return an individual to his country of origin."); *Sagastizado II*, 2025 WL 2957002, at *15 (similar).

Abrego Garcia is not requesting that this Court second-guess Liberia's diplomatic assurances, nor is he requesting this Court review the Government's determination as to the credibility of the same. Rather, Abrego Garcia seeks relief in the form of a forum in which to challenge an immigration officer's unilateral negative fear determination as a matter of due process—relief that does not implicate *Munaf.*

## Conclusion

For the aforementioned reasons, the Government's Motion to Dissolve the Preliminary Injunction should be denied.

Respectfully Submitted,

Dated: November 14, 2025

/s/*Jonathan G. Cooper*

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
Rina Gandhi
4103 Chain Bridge Road, Suite 300
Fairfax, VA 22030
(703) 352-2399
ssandoval@murrayosorio.com

**QUINN EMANUEL URQUHART &
  SULLIVAN, LLP**
Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton* (*pro hac vice*)
Nithya Pathalam** (*pro hac vice*)
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
nithyapathalam@quinnemanuel.com
*admitted in Texas; not admitted in D.C.
Supervised by attorney admitted in D.C.
**admitted in New York; not admitted in D.C.
Supervised by attorney admitted in D.C.

Andrew J. Rossman (*pro hac vice*)
Sascha N. Rand (*pro hac vice*)
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com

*Counsel for Petitioner*