# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### GREENBELT DIVISION

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, | Case No. 8:25-CV-02780-PX |
| Petitioner, | **RESPONDENTS' RESPONSE TO PETITIONER'S SUPPLEMENTAL BRIEF** |
| v. | |
| KRISTI NOEM, ET AL., | |
| Respondents. | |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.   BOTH OF PETITIONER'S DUE PROCESS THEORIES FAIL FOR THE REASONS
     THE GOVERNMENT HAS ALREADY EXPLAINED. .................................................... 2

II.  PETITIONER'S RETALIATION-BASED DUE PROCESS ARGUMENT FAILS ON
     THE FACTS AND THE LAW. ..................................................................................... 3

     A.   Petitioner's Claims of Retaliation Are Wrong. ........................................... 4

     B.   Petitioner Has No Substantive Due Process Right to Freedom From Retaliation
          or to Indefinitely Escape Removal. ............................................................. 8

III. PETITIONER'S CHALLENGES TO THE MARCH 30 GUIDANCE LACK MERIT. . 14

     A.   Petitioner Lacks a Liberty Interest. ........................................................... 15

     B.   There Is No Appreciable Risk of Erroneous Deprivation When Petitioner Is
          Entitled To More Process Than Aliens in Expedited Removal or with
          Reinstated Removal Orders. ...................................................................... 20

          1.   Petitioner received ample procedures even compared to expedited
               removal and reinstated removal aliens. ........................................... 20

          2.   Petitioner's demand for consideration of the risk of chain refoulement is
               misplaced. ....................................................................................... 23

     C.   The Additional Process Petitioner Seeks Would Impose Considerable Burdens
          on the Government by Interfering with Foreign Relations. ..................... 26

CONCLUSION............................................................................................................. 27

CERTIFICATE OF SERVICE ...................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albathani v. INS,*
  318 F.3d 365 (1st Cir. 2003) ................................................................. 17

*Amanullah v. Nelson,*
  811 F.2d 1 (1st Cir. 1987) ................................................................. 10, 12

*Azzouka v. Sava,*
  777 F.2d 68 (2d Cir. 1985) ................................................................. 12

Cruz Medina v. Noem,
  2025 WL 2841488 (D. Md. 2025) ................................................................. 17, 18

*D.B. v. Cardall,*
  826 F.3d 721 (4th Cir. 2016) ................................................................. 14

*Dada v. Mukasey,*
  554 U.S. 1 (2008) ................................................................. 23

*DHS v. D.V.D.,*
  145 S.Ct. 2153 (2025) ................................................................. 1

*DHS. v. D.V.D.,*
  145 S.Ct. 2627 (2025) ................................................................. 1

*DHS. v. Thuraissigiam,*
  591 U.S. 103 (2020) ................................................................. 15, 16, 18

*Department of State v. Munoz,*
  602 U.S. 899 (2024) ................................................................. 12

*Dia v. Ashcroft,*
  353 F.3d 228 (3d Cir. 2003) ................................................................. 17

*El-Werfalli v. Smith,*
  547 F. Supp. 152 (S.D.N.Y. 1982) ................................................................. 11, 12

*Fiallo v. Bell,*
  430 U.S. 787 (1977) ................................................................. 9, 10, 11

*Guentchev v. INS,*
  77 F.3d 1036 (7th Cir. 1996) ................................................................. 17

*Hampton v. Wong,*
   426 U.S. 88 (1976) ............................................................................................... 10

*Harisiades v. Shaughnessy,*
   342 U.S. 580 (1952) ............................................................................................... 9

*Int'l Refuge Assistance Project v. Trump,*
   962 F.3d 635 (2020) ............................................................................................... 9

*Johnson v. Eisentrager,*
   339 U.S. 763 (1950) ............................................................................................... 25

*Kerry v. Din,*
   576 U.S. 86 (2015) ............................................................................................... 12

*Khouzam v. U.S. Att'y Gen.,*
   549 F.3d 235 (3d Cir. 2008) ............................................................................. 25, 26

*Kiyemba v. Obama,*
   561 F.3d 509 (D.C. Cir. 2009) ............................................................................. 25

*Kleindienst v. Mandel,*
   408 U.S. 753 (1972) ..................................................................................... 9, 10, 11

*Landon v. Plasencia,*
   459 U.S. 21 (1982) ............................................................................................... 14

*Mathews v. Diaz,*
   426 U.S. 67 (1976) ............................................................................................... 9

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ......................................................................................... 15, 16

*Mendoza v. U.S. Att'y Gen.,*
   327 F.3d 1283 (11th Cir. 2003) ......................................................................... 17

*Munaf v. Geren,*
   553 U.S. 674 (2008) ..................................................................................... 2, 25, 26

*Nat'l Black Polic Ass'n Inc. v. Velde,*
   712 F.2d 569 (D.C. Cir. 1983) ........................................................................... 24

*Norwood v. Harrison,*
   413 U.S. 455 (1975) ............................................................................................... 24

*Oceanic Steam Nav. Co. v. Stranahan,*
   214 U.S. 320 (1909) ............................................................................................... 9

*Padilla-Padilla v. Gonzales,*
  463 F.3d 972 (9th Cir. 2006) ................................................................... 13

*Parra v. Perryman,*
  172 F.3d 954 (7th Cir. 1999) ................................................................... 13

*Perez-Perez v. Hanberry,*
  781 F.2d 1477 (11th Cir. 1986) ............................................................... 13

*Reno v. Am.-Arab Anti-Discrim. Comm.,*
  525 U.S. 471 (1999) .................................................................................. 9

*Reno v. Flores,*
  507 U.S. 292 (1993) ................................................................... 15, 18, 23

*Sandin v. Conner,*
  515 U.S. 472 (1995) ................................................................................ 13

*Sesay v. United States,*
  984 F.3d 312 (4th Cir. 1921) ................................................................... 12

*Shaughnessy v. United States ex rel. Mezei,*
  345 U.S. 206 (1953) .................................................................................. 9

*Smith v. Ashcroft,*
  295 F.3d 425 (4th Cir. 2002) ................................................................... 16

*Trump v. Hawaii,*
  585 U.S. 667 (2018) ................................................................................ 12

*Trump v. J.G.G.,*
  604 U.S. 670 (2025) .......................................................................... 15, 18

*United States v. Verdugo-Uerquidez,*
  505 U.S. 1201 (1992) ............................................................................... 24

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) .................................................................................. 8

*Wolff v. McDonnell,*
  418 U.S. 539 ............................................................................................ 13

*Zhang v. U.S. Dep't of Justice,*
  362 F.3d 155 (2d Cir. 2004) ..................................................................... 17

**Statutes**

8 U.S.C. § 1101(b)(1) (1976) ........................................................................................................ 11

8 U.S.C. § 1101(b)(2) (1976) ........................................................................................................ 11

8 U.S.C. § 1103(a)(1) ................................................................................................................... 10

8 U.S.C. § 1182(a)(27) (1982) ..................................................................................................... 11

8 U.S.C. § 1182(a)(28) (1976) ..................................................................................................... 10

8 U.S.C. § 1182(f) ....................................................................................................................... 12

8 U.S.C. § 1225(b) ....................................................................................................................... 20

8 U.S.C. § 1225(b)(1) ................................................................................................................... 21

8 U.S.C. § 1225(b)(1)(A)(i) .......................................................................................................... 20

8 U.S.C. § 1225(b)(1)(B)(i)(I) ...................................................................................................... 21

8 U.S.C. § 1225(b)(1)(B)(i)(II) ..................................................................................................... 21

8 U.S.C. § 1225(b)(1)(B)(i)(III) .................................................................................................... 21

8 U.S.C. § 1225(b)(1)(B)(ii) ................................................................................................... 20, 21

8 U.S.C. § 1225(b)(1)(D) .............................................................................................................. 21

8 U.S.C. § 1229a(c)(7) ................................................................................................................. 21

8 U.S.C. § 1231(a)(5) ............................................................................................................. 20, 22

8 U.S.C. § 1231(b)(2) ................................................................................................................... 15

8 U.S.C § 1231(b)(2)(A) ............................................................................................................... 16

8 U.S.C. § 1231(b)(2)(C) .............................................................................................................. 16

8 U.S.C. § 1231(b)(2)(C)(iii)-(iv) ................................................................................................. 16

8 U.S.C. § 1231(b)(3) ............................................................................................................. 19, 24

8 U.S.C. § 1252(a)(5) ..................................................................................................................... 7

8 U.S.C. § 1252(b)(9) ................................................................................................................. 7, 15

8 U.S.C. § 1252(e)(2) ................................................................................................................... 21

Foreign Relations Reform ad Restructuring Act, § 2242 ............................................................... 19

**Regulations**

8 C.F.R. § 241.8(e) ..................................................................................................................... 22

8 C.F.R. § 208.31(b) .................................................................................................................. 22

8 C.F.R. § 208.31(e) .................................................................................................................. 22

8 C.F.R. § 208.31(g) .................................................................................................................. 22

8 C.F.R. § 1208.16(c) ........................................................................................................... 19, 24

8 C.F.R. § 1208.16(c)(2) ............................................................................................................ 19

8 C.F.R. § 1208.16(c)(3) ....................................................................................................... 19, 24

**Miscellaneous**

**Regulations**

 U.S. Constitution, art. II §3 ......................................................................................................... 4

Fed. R. Civ. P. 23(b)(2) ................................................................................................................ 2

## INTRODUCTION

Petitioner's supplemental brief confirms the fundamental and dispositive defects in his claims for relief. Four overarching problems stand out.

*First*, Petitioner's brief squarely confirms that he is raising claims squarely presented by— and virtually identical to those of—the *D.V.D.* class. As a result, his claims represent impermissible claim splitting. And even if they did not, those claims are both jurisdictionally barred multiple times over and wanting in merit for the same reasons that the Supreme Court concluded in issuing its stay in *DHS v. D.V.D.*, 145 S.Ct. 2153 (2025) —as well as its supplemental July 3 order enforcing its original stay, *DHS v. D.V.D.*, 145 S.Ct. 2627 (2025).  The Supreme Court's 7-2 July 3 order in particular eliminates any doubt as to whether members of the *D.V.D.* class can obtain relief while that case is adjudicated. They can't.

*Second*, *D.V.D.* aside, Petitioner's due process claims are meritless. Most are not even procedural in nature, but rather seek to alter *substantive* immigration law—such as diluting the substantive standards for eligibility for withholding and CAT relief. But Petitioner does not even attempt to satisfy the demanding standards for substantive due process claims. Nor could he. And much of Petitioner's due process claims are premised are putative "retaliation" for filing his first federal suit. But the Executive has been trying to remove Petitioner *before* that suit was ever filed—vitiating the premise of those retaliations claims. In any event, those claims are neither cognizable nor supported by the record here.

*Third*, Petitioner's claims underscore the profound gamesmanship that underlies his fear claims and litigation strategy. As explained previously, Petitioner has gone so far as to simultaneously claim a fear of persecution and torture from the very country he purports to seek removal to, Costa Rica, ECF 28 at 4; ECF 28-1 at 13; ECF 71-5 at 4-5 —a country that has indicated that it will not simply accept him, ECF 72-17 at 4 (filed under seal at ECF 75-6 at 4).

Indeed, Petitioner has not indicated *any* fears specific to Liberia, instead merely asserting a fear that Liberia would send him to El Salvador. ECF 72-7 at 5 (filed under seal at ECF 75-4 at 5). But Liberia has committed not to do so. ECF 72-5 at 2 (ECF 75-3 at 2). It went further to make public its intent to receive Petitioner. ECF 72-6 at 3. ██████████████████████████████ ████████████████████████████████████████████████, Exhibit T at 2; and ████████████████████████████████████████████████████

Exhibit U at 2. The Secretaries of State and Homeland Security have found those assurances by Liberia to credible—determinations that are *not* reviewable by federal courts. *Munaf v. Geren*, 553 U.S. 674, 702 (2008).

    *Fourth*, the upshot of all of Petitioner's arguments is that could not be removed from the United States without his consent—which he will not grant for any country save Costa Rica (a country that does not wish to receive him, ECF 72-17 at 4 (filed at ECF 75-6 at 4)). In Petitioner's view, he has thus adversely possessed the right to remain in the United States perpetually—even though he entered the U.S. unlawfully and has no lawful right to remain here. The Due Process Clause requires no such thing. And Petitioner's apparent belief that it commands that result understands how profoundly his claims distort bedrock principles of immigration law and due process.

    This Court should dismiss Petitioner's petition and dissolve its preliminary injunction.

## ARGUMENT

## I.   BOTH OF PETITIONER'S DUE PROCESS THEORIES FAIL FOR THE REASONS THE GOVERNMENT HAS ALREADY EXPLAINED.

    Petitioner argues that the government has violated his due process rights twice over, first by treating him arbitrarily and with retaliatory intent and second by employing the processes in the March 30 Guidance governing third-country removals. Both arguments fail for the reasons

already explained in the government's supplemental brief.  First, as longstanding precedent maintains, Petitioner's due process rights do not extend beyond the process afforded to him by the political branches.  ECF 72 at 34-37.  Second, multiple jurisdictional bars prevent the Court from reviewing the claims.  *See* ECF 72 at 22-30.

Third, Petitioner's claims are not properly before the Court at all, because he is a member of the *D.V.D.* class, he cannot opt out of that class, and he is presently litigating his due process rights in the third-country removal context as a class member before the District of Massachusetts. ECF 72 at 15-19.  If anything, Petitioner's supplemental brief only makes that clearer.  Petitioner requests several changes to the third-country removal process.  ECF 71 at 7.  The Court's resolution of those arguments poses a straightforward risk that the United States will be subjected to conflicting judgments—one from this Court and one from the District of Massachusetts—regarding what the law does and does not require with respect to Petitioner himself.  Fed. R. Civ.. P. Rule 23(b)(2) exists to limit that risk by issuing a single injunction that applies to all class members, and forbidding any individual class member from opting out of the class.  Permitting class members to nonetheless opt out and obtain their own preliminary injunctions or final judgment in other courts undoes the Rule 23(b)(2) mechanism.  Petitioner's claims are thus not properly before the Court.  But even if they were, they would fail, both for lack of jurisdiction and on their merits.

## II.    PETITIONER'S RETALIATION-BASED DUE PROCESS ARGUMENT FAILS ON THE FACTS AND THE LAW.

Petitioner's lead argument is that the government violated his due process rights by acting with retaliatory intent. He concludes that the government may not remove him to a third country at all, apparently until it purges its retaliatory intent, through some unspecified means, to Petitioner's satisfaction—something that is unlikely to *ever* occur. Which, of course, is precisely

the point: Petitioner would enjoy complete immunity from removal to any country not of his choice.

That is not a claim about the process to which Petitioner is entitled. Petitioner's retaliation argument identifies no additional procedures to which Petitioner believes he is entitled. Instead, the argument would yield *substantive* rights: the right to be free from retaliation and the right to remain in the United States until the government has purged itself of its supposed retaliatory intent.

The Court should reject Petitioner's substantive due process argument for two reasons in addition to the reasons already explained in the government's own supplemental brief. First, Petitioner cannot establish the premise of his argument—that the government is retaliating against him by attempting to remove him to a third country. Second, Petitioner cannot establish that illegal aliens have a substantive due process right to be free from retaliation as a general matter.

### A.    Petitioner's Claims of Retaliation Are Wrong.

Petitioner's retaliation claim fails first because even if he were right about the law, *but see infra* § I.B, the procedural and factual history of the government's attempts to remove him do not support his argument that the government is retaliating against him.  Petitioner is concededly an alien with a final order of removal.  The government is not retaliating against him by attempting in good faith to remove him—which, ultimately, represents nothing more than the Executive "tak[ing] Care that the Laws be faithfully executed." U.S. Const. art. II §3. The Executive not only has authority to execute Petitioner's final order of removal, but a *duty* to do so. And Petitioner's jaded description of the procedural history of his case does not hold water.

Petitioner urges that the government's continued efforts to remove him suggest retaliatory intent.  ECF 71 at 12-17.  Not so.  The government has been attempting to remove Petitioner since well before he filed this case or any other.  Nor can the government possibly be retaliating against Petitioner by complying with the additional procedures the Court has ordered, ECF 72 at 13-15;

ECF 52 at 34-35, especially when the Court ordered the government to facilitate Petitioner's return *to face precisely those procedures*. *See Abrego Garcia v. Noem*, 8:25-cv-951 (D. Md.), ECF 238 at 5, 14 & ECF 239 at 1.

Petitioner also says that the government "obstructed" court orders directing the facilitation of his return and that it facilitated his return only after initiating criminal charges. ECF 71 at 13. He further relies on another court's finding of a "prima facie showing of prosecutorial vindictiveness." *Id.* Petitioner is litigating the supposed vindictiveness of his prosecution before that court, not this one. As for the allegation of "obstruction," the government's lawful exercise of its appeal rights to the court of appeals and the Supreme Court, ECF 71 at 13, are not "obstruction." The government demonstrated that it promptly took action to begin the process to facilitate the return of Abrego Garcia, *see Abrego Garcia v. Noem,* 8:25-cv-951, ECF 101 & 103, and his return was successfully accomplished by June 6. In any event, the government's efforts to remove Petitioner long pre-date any action he has filed in federal court. Continuing to attempt to remove an alien who concededly has no lawful right to remain in the United States (and a final order that he should be removed therefrom) cannot possibly amount to retaliation.

Petitioner does no better by arguing that attention to his removal by the Homeland Security Council (HSC) amounts to retaliation. ECF 71 at 14. As a legal matter, it would turn the Executive Branch upside down if due process somehow *prevented* the President, through his closest advisors, from supervising or playing a role in agency decisionmaking. That is especially the case when it comes to decisions involving foreign policy and diplomatic coordination, such as removal of a national of another country to a third country.

Nor, as a factual matter, has there been any deviation from the expected process that could suggest retaliation. As the government has explained, ICE's Enforcement and Removal

Operations ("ERO") usually begins the process by reaching out to the Department of State in an effort to help identify a third country. ECF 52 at 33 ("[W]e ask the State Department for help finding alternative third countries."). ERO does not have insight into how the Department of State arrives at its suggestions. *Id.* ("I don't have visibility on if they [the State Department] ask Country A and Country says no and then they pivot to Country B."). Rather, ERO's expectation is more limited: "The State Department may just come back and say, okay, Country B is willing to accept . . . ." *Id.* at 33-34. ERO then begins its assessment of the third country. *Id.* at 33.

On one occasion, it was HSC responded to ERO, notifying it that the initial country for removal would be Uganda. ECF 52 at 47. From there, the agency followed the remaining processes in the March Guidance, including notifying Petitioner (and, because of an order of this Court, his counsel). After he expressed fear, the March Guidance was still followed, and another country was named. ERO "asked the . . . Department of State to look into other countries." ECF 52 at 21. The Department of State that notified ERO that it was in discussions with Eswatini regarding Petitioner. *Id.* at 22. ERO then provided Petitioner and counsel with notice, and Petitioner expressed fear of removal to Eswatini. *Id.* Further, Eswatini returned assurances that individuals like Petitioner would be safe from torture or refoulement or persecution. *Id.* at 23. The Department of State found those assurances credible and notified ERO. *Id.* at 24. There is nothing untoward in that process. Each time, ERO commenced its process, and other Executive Branch decisionmakers better situated to evaluate foreign policy and diplomatic considerations supplied a country to designate for Petitioner's removal.

Petitioner also argues that the government must seek to retaliate against him because it has selected countries to which he has no connection and has not agreed to remove him to Costa Rica, the country he apparently prefers. ECF 71 at 14. But there is no evidence that Petitioner has a

connection to any country other than El Salvador. And Costa Rica has represented that it would not simply accept Petitioner if asked. ECF 72-17 at 3 (ECF 75-6 at 3). The government can hardly be at fault for not removing Petitioner to a country that refuses to accept him. Plus, ICE has discretionary authority—which, as the government has explained, is not subject to judicial review—to disregard an alien's preferred country of removal (which was not designated in a timely manner here in any event). ECF 72 at 28-29.

Petitioner next claims, without any evidence, that the government retaliated against him by re-assigning his case from an immigration judge in Baltimore to an immigration judge in Atlanta. ECF 71 at 15. Petitioner omits that the immigration judge who previously heard his claim in Baltimore no longer hears Baltimore matters. *See* ECF 28-1 at 35; *https://www.justice.gov/eoir/find-immigration-court-and-access-internet-based-hearings* (last visited November 12, 2025). Redistributing legacy casework to other judges hardly amounts to a nefarious scheme. And it was fully within EOIR's authority to reassign the case to handle the caseload. Moreover, if Petitioner believes that the reassignment of his immigration case amounts to a denial of due process, that would be a matter for appeal in his immigration proceedings. Petitioner cannot collaterally attack his immigration proceedings before this Court. *See* 8 U.S.C. § 1252(a)(5), (b)(9).

No inference of retaliation follows from the government's handling of Petitioner's interviews after he alleged fear of removal to Uganda or Ghana. Petitioner did not need a fear interview for Uganda because the government withdrew the designation of Uganda before any fear interview was necessary. ECF 52 at 21-22, As for the mention of Ghana, the Respondents have explained that the naming of Ghana was improvidently issued, and it is not a country to which Petitioner may be removed at this time. ECF 52 at 32; ECF 71-5 at 2. Similarly, again, the

government designated Liberia for Petitioner's removal before any need to resolve Petitioner's claimed fear of removal to Eswatini.  ECF 56.

Last, the government's designation of Liberia and its efforts to lay the groundwork for prompt removal of Petitioner to Liberia likewise do not show retaliation.  ECF 71 at 16.  The government's actions to arrange Liberia as a viable option for Petitioner's removal promptly followed the Court's indication that the government could proceed with identifying the country of removal and seeking to lift the preliminary injunction preventing Petitioner's removal.  That the government did precisely what the Court said it could do shows good faith, not animus.

**B.    Petitioner Has No Substantive Due Process Right to Freedom From Retaliation or to Indefinitely Escape Removal.**

Even if Petitioner could show that the government sought to retaliate against him by continuing to attempt to remove him, Petitioner's claim would still fail on the law.  Petitioner is an alien who is unlawfully present in the United States and is concededly removable, and he does not have a substantive due process right to be free from retaliation or to remain in the United States indefinitely.

Petitioner's asserted rights—apparently, to be free from retaliation and to remain indefinitely in the United States until the government purges itself of any retaliatory intent—are substantive, not procedural, in nature.  Petitioner identifies no particular process to which he is supposedly entitled based on this due process argument.  He is thus asserting a substantive due process claim, but he cannot meet the strict requirements for such a claim.  Substantive due process can protect only "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition."  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).  Binding precedent, history, and tradition establish just the opposite.

**a.** The Supreme Court has rejected the argument that targeting an alien for deportation would raise constitutional alarm.  The Court explained that the interest of an alien in "avoiding 'selective' treatment" is weak, and that "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 488, 491 (1999). "The Executive should not have to disclose its 'real' reasons for deeming" particular aliens to be "a special threat," "and even if it did disclose them a court would be ill equipped to determine their authenticity and utterly unable to assess their adequacy." *Id.* at 491.  Plus, "in all cases, deportation is necessary to bring an end to *an ongoing violation* of United States law.  The contention that a violation must be allowed to continue because it has been improperly selected is not powerfully appealing." *Id.*  For all these reasons, retaliation claims here are barred as a matter of law for the same reasons selective-prosecution claims are.

**b.** *Reno* accords with and reflects history and longstanding precedent establishing that Congress has plenary power to admit aliens to the United States or, conversely, to bar them or remove them, which results in extraordinarily deferential review of Executive Branch actions to remove aliens (where review is possible at all). *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972); s*ee also Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952). Courts have "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206,210 (1953).  As to the admission (or not) of aliens, the Supreme Court has repeatedly emphasized that "over no conceivable subject is the legislative power of Congress more complete." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 339 (1909)).  Congress has delegated much of its "unusually broad dominion" in

the field of immigration to the Executive Branch. *See, e.g., Amanullah v. Nelson*, 811 F.2d 1, 4 (1st Cir. 1987).  By statute, Congress provided that: "[t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as [power may be delegated to other executive officials] . . . : *Provided, however,* That determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(a)(1).

The Supreme Court has repeatedly emphasized that the "power over aliens is of a political character and therefore subject only to narrow judicial review." *Fiallo*, 430 U.S. at 792 (citing *Hampton v. Wong*, 426 U.S. 88, 101 n.21 (1976) (additional citations omitted)). Courts therefore conduct an especially limited review of those immigration matters where Congress emphasizes special deference to the Executive Branch.

The Supreme Court announced a landmark deferential review standard for the immigration context in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), where American citizens challenged on First Amendment grounds the Government's exclusion of a Belgian national and advocate of "world communism," then a ground of inadmissibility under INA § 212(a)(28), 8 U.S.C. § 1182(a)(28) (1976). *Mandel*, 408 U.S. at 755. The Court noted that the alien had no right of entry, and that the case turned on whether the First Amendment conferred upon American citizens the ability to compel Mandel's admission so that they could interact with him. *Mandel*, 408 U.S. at 762. Although acknowledging that First Amendment rights were implicated, the Court emphasized the longstanding principle that Congress has plenary power to make policies and rules for the exclusion of aliens. *Id*. at 765-66. Noting that Congress had delegated to the Executive Branch conditional exercise of this power regarding certain classes of excludable aliens, the Court held that only the most limited, deferential judicial review was warranted: "[W]hen the Executive

exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." *Id*. at 770.

Mandel was no fluke. The Court revisited *Mandel*—and reaffirmed it—five years later in *Fiallo v. Bell*, 430 U.S. 787 (1977).  *Fiallo* involved an equal protection challenge to family preference provisions under INA § l0l(b)(l) & (2), 8 U.S.C. § 1101(b)(1) & (2) (1976), which afforded preferential immigration status to mothers of illegitimate children but not to fathers. *Fiallo*, 430 U.S; at 791. The Court "s[aw] no reason to review th[at] broad congressional policy choice . . . under a more exacting standard than was applied in *Kleindienst v. Mandel*." *Fiallo*, 430 U.S. at 795. Upholding the constitutionality of INA § 101(b)(l)(D) and (b)(2), the Court explained that its highly deferential standard of review reflected the political branches' primacy in the immigration field: "We find no indication in our prior cases that the scope of judicial review is a function of the nature of the policy choice at issue. . . . '[T]he reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization.'" *Fiallo*, 430 U.S. at 796 (citations omitted).

Following *Mandel* and *Fiallo*, lower federal courts applied the "facially legitimate and bona fide reason" standard to hundreds of immigration cases.  In 1982, for instance, INS revoked a Libyan student's visa under INA§ 212(a)(27), 8 U.S.C. § 1182(a)(27) (1982), concluding that he was involved with activities inconsistent with the public interest and contrary to national security. *See El-Werfalli v. Smith*, 547 F. Supp. 152, 153 (S.D.N.Y. 1982).  Denying the alien's habeas petition, the district court employed *Mandel*'s deferential review standard:

> This governing standard permits the Court to inquire as to the Government's reasons [for revoking the visa], but proscribes its probing into their wisdom or basis.  If the Court finds that the Government acted on a facially legitimate and bona fide reason, its inquiry is complete.

*Id.* at 153.

This understanding of the Government's plenary authority over immigration matters and procedures cannot be breezily discounted as being from "a different era."  The Court has continued to apply the standard in the immigration context, regardless of the nature of the right asserted.  In *Trump v. Hawaii*, the Court reaffirmed the vitality of *Mandel* and its progeny in the context of a broad grant of authority to the President regarding the invocation of 8 U.S.C. § 1182(f).  *See* 585 U.S. 667, 702-04 (2018).  Similarly, the Court turned again to *Mandel* and its progeny when confronted with a challenge based on the "fundamental right" of marriage, the "right of association," and Due Process's alleged protection "to be free from arbitrary restrictions . . . ."  *Kerry v. Din*, 576 U.S. 86, 93 (2015).  The Court again relied on *Mandel* to circumscribe a challenge to an asserted liberty interest in a visa.  *See Department of State v. Munoz*, 602 U.S. 899, 908 (2024).  Emphatically, the Court explained that:

> We have assumed that a narrow exception to th[e] [consular nonreviewability] bar exists "when the denial of a visa allegedly burdens the constitutional rights of U.S. citizens." [] In that event, the Court has considered whether the Executive gave a "facially legitimate and bona fide reason" for denying the visa."  If so, the inquiry is at an end – the Court has disclaimed the authority to "look behind the exercise of that discretion," much less to balance the reason given against the asserted constitutional right.

*Id.* at 908 (citations omitted).

The Fourth Circuit has implemented the *Mandel* standard into its case law.  *See, e.g., Sesay v. United States*, 984 F.3d 312 (4th Cir. 1921); *Int'l Refuge Assistance Project v. Trump*, 962 F.3d 635 (2020).  In doing so, it has accepted the instruction from *Mandel* and joined a host of other circuits.  *See*, *e.g., Amanullah v. Nelson,* 811 F.2d 1, 8 (1st Cir. 1987); *Azzouka v. Sava*, 777

F.2d 68, 72 (2d Cir. 1985); *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 978-79 (9th Cir. 2006); *Perez-Perez v. Hanberry,* 781 F.2d 1477, 1482 (11th Cir. 1986).

**c.** Petitioner cannot save his claim by relying on due process protections afforded to prisoners. Petitioner would ignore the great weight of Supreme Court precedent to suggest that Due Process affords him protection against "arbitrary" or "retaliatory" action in removing him. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539. *Wolff* considered the adequacy of *procedures* provided by a prison—a genuine procedural due process claim. The Supreme Court has revisited and revised *Wolff*. *See Sandin v. Conner*, 515 U.S. 472 (1995). And *Wolff* and other cases in the criminal context have little to do with Petitioner's claim in any event. Petitioner is not a prisoner following a criminal conviction. Instead, he is an alien with a final order of removal, meaning that his "legal right to remain in the United States has come to an end." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999). Supposedly arbitrary, retaliatory action that wholly post-dates the finality of his removal order and initial efforts to remove him cannot create an interest in remaining in the United States.

The import to Petitioner's case is clear. Here, there is no suggestion of arbitrariness or vindictiveness when Petitioner was charged with removability. There is no suggestion of arbitrariness or vindictiveness when the immigration judge ordered him removed. There is also no suggestion of arbitrariness or vindictiveness when ICE attempted to execute the removal order in March. Rather, his whole claim of vindictiveness is that because he prevailed in his complaint, facilitating his return to the U.S., the government was now attempting to employ the very procedures the Court ruled it must follow in order to effectuate the perfectly valid order of removal. *See Abrego Garcia v. Noem,* 8:25-cv-951, ECF 239 at 1. That is not vindictiveness; rather, that is merely the continuation of the removal process and the benefit of the bargain that Petitioner has

struck.  The fact that additional government officials have taken an interest in his case—well after

his right to remain in the United States had been adjudicated—does not equate to vindictiveness

and violates no law.

## III.    PETITIONER'S CHALLENGES TO THE MARCH 30 GUIDANCE LACK MERIT.

Petitioner also challenges the adequacy of the March 30 guidance governing third-country

removals.  He contends that, under *Mathews v. Elridge*, the Fifth Amendment entitles him to

(1) review of USCIS's negative fear determination by an immigration judge, (2) application of the

fear standard for asylum claims ("reasonable possibility") rather than the standard for CAT and

withholding of removal claims ("more likely than not"), and (3) evaluation of the risk of chain

refoulement. ECF 71 at 7.  As the government has previously explained, Petitioner cannot press

any of these arguments before this Court because Petitioner is also presently pressing the claims

before a different court in the *D.V.D.* litigation as a member of a no-opt-out Rule 23(b)(2) class.

ECF 72 at 15-19  And as the government has likewise explained, the *Mathews* framework does

not apply to Petitioner at all, because the Constitution does not require process beyond that

afforded by the political branches for aliens like Petitioner who entered the United States without

inspection and admission. ECF 72 at 34-35.

When an alien has been *lawfully* admitted to the United States and developed lawful ties to

the United States, some due process rights attend beyond those prescribed by Congress and the

Executive Branch.  *See* ECF 72 at 34, *citing Landon v. Plasencia*, 459 U.S. 21, 32 (1982).  In such

cases, there must be a demonstrable "liberty" interest at issue.  *See D.B. v. Cardall*, 826 F.3d 721,

741 (4th Cir. 2016).  Once there is a cognizable liberty interest, the courts employ a test from

*Mathews v. Eldridge*:

> the interest at stake for the individual, the risk of an erroneous deprivation of the
> interest through the procedures used as well as the probable value of additional or

different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures.

424 U.S. 319, 334-35 (1976). But *Mathews* cannot apply here because Petitioner was never lawfully admitted into the United States and, thus, is entitled only to "[w]hatever the procedures[s] authorized by Congress" and no more. *DHS. v. Thuraissigiam*, 591 U.S. 103, 139 (2020).

Even if Petitioner were entitled to process beyond that provided by the political branches, he has failed to establish a liberty interest. And even if he could establish a liberty interest and *Mathews* applied, it would not support the process to which Petitioner claims he is entitled.

### A.    Petitioner Lacks a Liberty Interest.

The Supreme Court has explained that a due process challenge must begin with a careful explanation of the right allegedly being protected. *See Reno v. Flores*, 507 U.S. 292, 302 (1993). Petitioner vague asserts "due process" rights in "removal proceedings" on the one hand, ECF 71 at 18, *citing Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), but he elsewhere says he is *not* raising a claim related to removal proceedings but instead to the procedures attendant to withholding of removal. ECF 32 at 17 ("The Government conflates challenges to a removal order itself with challenges to the procedures for obtaining withholding of removal to a third country."). Petitioner's effort misses the mark, as *J.G.G.* involved aliens' rights *resisting actual removal* under the Alien Enemies Act, for whom the right to present claims that "necessarily imply the invalidity" of their orders in habeas corpus had been already established. *See* 604 U.S. at 672. That is not the claim he attempts to present. ECF 32 at 17. Thus, *J.G.G.* is clearly inapposite.

The only possible liberty interest Petitioner could be asserting must be related to the procedures for identifying a country for third-country removal. *See* 8 U.S.C. § 1231(b)(2). That is because, if Petitioner's claim is to survive jurisdictional bars, it cannot arise from an action taken to remove him. *See* 8 U.S.C. § 1252(b)(9). And for Petitioner's claim to remain within the scope

of habeas corpus, it must be a question going to the basis of his executive detention—*i.e.*, his removal order.  *See Thuraissigiam*, 591 U.S. at 117.  But § 1231(b)(2) offers precious little in terms of an interest that Petitioner can claim.  He cannot claim an interest in selecting a county of removal under § 1231(b)(2)(A).  He had that opportunity as a part of his removal proceeding, and he does not claim to have been denied that opportunity.  Nor can he claim an interest in providing the nomination after removal proceedings because, even assuming the statute or regulations provide the opportunity (they do not), he has been able to make that designation.

Nor can Petitioner claim some interest in preventing the Secretary or Attorney General from disregarding his designation of Costa Rica.  Section 1231(b)(2)(C) plainly affords the Secretary or Attorney General to disregard an alien's designation of a third country, including if (as here) the alien's preferred country "is not willing to accept the alien into the country," or if (for example) she "decides that removing the alien to the country is prejudicial to the United States." 8 U.S.C. § 1231(b)(2)(C)(iii)-(iv).  The discretionary nature of that action eliminates Petitioner's capacity to cite any "liberty interest" under it.  When an action of the Executive is discretionary, it does not present a liberty interest for due process purposes.  *See Smith v. Ashcroft*, 295 F.3d 425 (4th Cir. 2002).  That applies even where the agency frequently exercises its discretion in the alien's favor.  *Id.*

Petitioner's effort to rely on the withholding of removal statute fairs no better.  As previously explained, ECF 72 at 24-25, the issue presented by Petitioner is, at best, whether an alien who evades inspection and admission procedures, who clandestinely arrives in the United States, who has been the subject of full removal proceedings, who has been found removable, who has had an opportunity to designate a country of removal in those proceedings, who declined to do so, who was afforded the opportunity to apply for withholding (and did so), who was granted

withholding as to a single country (El Salvador), who has access to a motion to reopen to apply for withholding of removal as to third countries (and did so for some countries but not others), who has had that motion denied, who has had the opportunity to take an appeal of that denial (and has done so), and who may have the opportunity for review by the Fourth Circuit, has any interest in a secondary process that is not required either by the withholding statute or the regulations, has an interest in still further process and protections.  He does not.  Due process does not require "multiple layers of agency review." *Guentchev v. INS*, 77 F.3d 1036, 1037 (7th Cir. 1996); *Albathani v. INS*, 318 F.3d 365, 376 (1st Cir. 2003); *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1289 (11th Cir. 2003); *Zhang v. U.S. Dep't of Justice*, 362 F.3d 155, 157 (2d Cir. 2004); *Dia v. Ashcroft*, 353 F.3d 228, 242 (3d Cir. 2003) (*en banc*).  Here, even assuming that Petitioner needs an opportunity to be heard on his withholding claim, he does not have an interest in that claim being heard by the Department of Homeland Security or ICE.  Having no such interest, he clearly has no liberty interest presented in further review.

Finally, Petitioner makes a vague effort at alleging a due process interest in withholding of removal.  *See* ECF 71 at 19, *citing Cruz Medina v. Noem*, __ F. Supp. 3d ___, 2025 WL 2841488, *6 (D. Md. 2025).  That cursory effort falls well short of establishing his interest, much less appropriate prescribe the requisite liberty interest.  *Cruz Medina* involved an alien who was found removable and was granted withholding of removal to Honduras.  *Id.* at *1.  Thereafter, the government informed him of the intent to remove him to El Salvador.  *Id.* Nearly three months before a hearing before the district court, the government notified the alien that it was naming Mexico as the country of removal, the alien expressed a fear that was later considered by USCIS, which returned a negative determination.  *Id.*  The alien thereafter sought a temporary restraining

17

order, then a preliminary injunction, staying his removal pending completion of the review of the USCIS determination by an immigration judge.  *Id.* at 2.

In examining the alien's interest, the court relied on the vague allegation of a right to due process in removal proceedings.  *Cruz Mendina*, 2025 WL 2841488 at *6, citing *J.G.G.*, 604 U.S. at 673.  Of course, that reliance on *J.G.G.* is misplaced, as *J.G.G.* related to removal under the Alien Enemies Act, not withholding of removal.  Quite the contrary, as the Supreme Court has ruled, forms of relief and protection like asylum, withholding, and CAT protection are *not* cognizable in habeas.  *See Thuraissigiam*, 502 U.S. at 118.  Moreover, *Cruz Medina's* reliance on a vague notion of due process regarding "removal proceedings"—again, something Petitioner disclaims he is doing, ECF 32 at 17—was thoroughly inadequate under the dictates of *Flores*. Importantly, the alien in *Cruz Medina* neither mentioned pursuing a motion to reopen, nor did the court consider that in evaluating the interest at stake.  Here, Petitioner has pursued the alternative form of relief, and he has not argued that it is inadequate.  Thus, *Cruz Medina* facially insufficient analysis means that it does not inform Petitioner's interest.

Importantly, *Cruz Medina* does not stand for the proposition urged by Petitioner because while the court noted that withholding of removal is limited to fear of persecution or torture in the particular country of removal, it made no finding regarding chain refoulement.  *See Cruz Medina,* 2025 WL 2841488 at *6.  Of course, his argument is really a substantive due process claim recast in procedural due process garb, which *Flores* finds unavailing.  *Reno v. Flores*, 507 U.S. 292, 308 (1993).  Under federal law, Petitioner has no interest in avoiding "chain refoulement." Importantly, the 1951 Refugee Convention and the 1967 Protocol were not "self-executing" treaties.  The same is true of the Convention Against Torture.  Rather, they had to be implemented by Congress, which has done so in different statutes.  As currently written, the withholding statute

at § 1231(b)(3) provides:  "[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3) (emphasis added).  Petitioner's concept of "chain refoulement"—*i.e.*, that he will be removed to a country that will, in turn, return him to El Salvador—has no place under the statute.  The withholding statute protects only against a deprivation of life or liberty within the country of removal.  Petitioner's interest under the statute is limited to the question of whether, while in Liberia, he will experience persecution, not whether he might eventually experience harm in El Salvador.  He cannot cite a single case in the court of the appeals where chain refoulement has been found to be a legitimate basis for alleged removal.

Similarly, CAT provides no protection for "chain refoulement."  FARRA § 2242 expressly delegated the implementation of CAT to the agencies.  The Department of Justice's implementation is found at 8 C.F.R. § 1208.16(c), which provides that an alien must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2).  The alien must actually demonstrate that he would be "tortured in the proposed country of removal . . . ."  8 C.F.R. § 1208.16(c)(3).  Thus, his interest under the regulation is in demonstrating that he will be tortured in Liberia, not that he will be tortured elsewhere.

In any event, Liberia has publicly stated that it will not refoul Petitioner to El Salvador.  ECF 72-6 at 2 ("Mr. Abrego Garcia will not be returned to any country where he may face a substantial risk of persecution, torture, or other serious harm.").   It has provided that diplomatic assurance not once, ECF 72-5 at 2 (ECF 75-3 at 2), but *twice*.  Exhibit U at 2 ██████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ The

Secretaries of State and Homeland Security have found Liberia's assurances credible. ECF 72-3

(ECF 75-1); ECF 72-4 (ECF 75-2).

> **B.    There Is No Appreciable Risk of Erroneous Deprivation When Petitioner Is Entitled To More Process Than Aliens in Expedited Removal or with Reinstated Removal Orders.**

>> **1.    Petitioner received ample procedures even compared to expedited removal and reinstated removal aliens.**

Petitioner argues that the Constitution entitles him to the procedures that apply, by statute

or regulation, to aliens in expedited removal under 8 U.S.C. § 1225(b) or to aliens subject to

reinstated removal under 8 U.S.C. § 1251(a)(5).  ECF 71 at 20-25.  It is surpassingly unlikely that

those precise requirements happen to represent the constitutional minimum—and petitioner has no

real argument that they do.

Petitioner has received far more process than those aliens.  He (1) has gone through

removal proceedings; (2) has been found removable; (3) has been granted withholding to El

Salvador; (4) remains removable to other countries; (5) has access to a motion to reopen to pursue

any additional claims; (5) has access to judicial review of the motion to reopen; and (6) has access

to an additional consideration for protection under the March Guidance.

By contrast, an arriving alien in expedited removal has extraordinarily limited proceedings.

There, when the immigration officer performing the inspection finds the alien inadmissible, the

officer is required to immediately order the aliens removal "without further hearing or review

unless the alien indicates either any intention to apply for asylum . . . or a fear of persecution."  8

U.S.C. § 1225(b)(1)(A)(i).  When the alien expresses the intent to apply for asylum or a fear of

persecution, the case is then referred to an asylum officer for evaluation of whether then alien

shows a "credible fear" of persecution.  8 U.S.C. § 1225(b)(1)(A)(ii) & (B)(ii).  If the alien is found

not to have credible fear, he or she will be ordered removed without further hearing or review, though the alien may seek review of the credible fear determination before an immigration judge. 8 U.S.C. § 1225(b)(1)(B)(i)(I) & (III).  The asylum officer is required to create a summary of the material facts stated by the applicant, any additional facts considered and a written explanation for the officer's decision.  8 U.S.C. § 1225(b)(1)(B)(i)(II).  An adverse determination by the immigration judge is not subject to judicial review.  *See* 8 U.S.C. § 1225(b)(1)(D); 8 U.S.C. § 1252(e)(2).

Petitioner's circumstances are unlike those of an alien in expedited removal in that he finds himself in a better position.  Of course, Petitioner has been afforded treatment that is comparable to those afforded to arriving aliens:  He had the opportunity to express a fear; he expressed a fear; he was interviewed by an asylum officer; he received a written decision from the asylum officer; and he was presented copies of the statement of facts by himself (ECF 72-7 (ECF 75-4)), the reason-for-decision by the asylum officer (ECF 71-7), and the order (ECF 72-8 (ECF 75-5)). Importantly, Petitioner has access to an alternative pathway to consideration of his alleged fear:  a motion to reopen.  *See* 8 U.S.C. § 1229a(c)(7).  Aliens in expedited removal have no such mechanism or opportunity.  *See* 8 U.S.C. § 1225(b)(1).  As a consequence, he has access to an independent consideration of his claim—and he has had that review.  Further, unlike aliens in expedited removal, he will have the right to appeal to the Board, which he is currently litigating. Finally, again unlike aliens in expedited removal, he will have the opportunity to pursue judicial review in a court of appeals.  While Petitioner still complains that under the March Guidance, the standard imposed is too high, *see* ECF 71 at 22, that is baseless.  Petitioner offers no basis to apply the more lenient standard governing asylum claims when Petitioner is not applying for asylum.  (If a "more likely than not" standard is unconstitutional for Petitioner, is it also unconstitutional for

CAT and withholding claims, on Petitioner's theory?) Given all these procedures available to Petitioner, including parallel consideration of his alleged fear via a motion to reopen, the risk of erroneous deprivation is minimal.

Petitioner's comparison to aliens subject to reinstated removal under § 1231(a)(5) fares no better. Such aliens, after the reinstatement of a removal order, are given the opportunity to apply for withholding of removal and CAT protection, but not asylum.[1] *See* 8 C.F.R. § 241.8(e). The alien is then referred to USCIS for evaluation of whether the alien presents a "reasonable fear." *Id.* The regulation creates the obligations to generate a written summary of the facts and a decision. 8 C.F.R. § 208.31(b). Further, if an alien is found to have a reasonable fear of persecution, he is referred to withholding-only proceedings before an immigration judge. 8 C.F.R. § 208.31(e). However, if no reasonable fear is found, the case may be appealed by the alien to an immigration judge, but no appeal to the Board. 8 C.F.R. § 208.31(g).

Again, Petitioner finds himself in a position better than his point of comparison. The March Guidance provides for procedures that are substantially comparable to the reinstated removal proceedings – and in Petitioner's case, has substantially complied by providing the statement of facts (ECF 72-7 (ECF 75-4)), the reason-for-decision by the asylum officer (ECF 71-7), and the order (ECF 72-8 (ECF 75-5)). The key distinction is that he may (and has) filed a motion to reopen, while an alien subject to a reinstated order of removal is barred from seeking reopening. 8 U.S.C. § 1231(a)(5). Accordingly, whether DHS procedures are identical to those afforded in reinstated removal proceedings is immaterial: Petitioner has a parallel means to present his claim. Again, while he urges that USCIS should review his case under the "reasonable possibility"

---

[1] The reason asylum is not available is that the reinstatement statute provides that "the alien is not eligible and may not apply for any relief under this chapter . . . ." 8 U.S.C. 1231(a)(5). Withholding is a "protection" not subject to the bar, and CAT is not codified in the INA.

standard, that is of no moment as even that would only result in the presentation of his case to the immigration judge under the requirements of a motion to reopen—the evaluation which already been performed.  If that were not enough, he will have the right to an appeal to the Board and the possibility of review before the court of appeals.  Given that broad array of tools and opportunities, including the "safeguard" provided by the motion to reopen, *see Dada v. Mukasey*, 554 U.S. 1, 18 (2008), there is little risk of erroneous deprivation.

<strong>2.    Petitioner's demand for consideration of the risk of chain refoulement is misplaced.</strong>

Petitioner also argues that due process requires consideration of the possibility of chain refoulement.  That fails three times over.

*First*, the argument fails on the facts.  Even if chain refoulement were relevant and a mandatory consideration, the government of Liberia has publicly stated that it will not send Petitioner to El Salvador.  ECF 72-6 at 3 ("Mr. Abrego Garcia will not be returned to any country where he may face a substantial risk of persecution, torture, or other serious harm.").  Considering (1) that on two occasions, Liberia has provided diplomatic assurances ██████████████████

████████████████, ECF 72-5 at 2 (ECF 75-3 at 2) & Exhibit U; (2) that the United States Government deems those assurances credible, ECF 72-3 (ECF 75-1) & ECF 72 (ECF 75-2); and (3) that the Court cannot review for the reasons explained in the government's supplemental brief, the Court need not entertain Petitioner's chain refoulement arguments any further.

*Second*, the argument fails because it is another attempt to conjure substantive requirements out of a procedural due process claim.  Petitioner argues that he is entitled to relief if he risks chain refoulement—but that is not a question about process at all.  *See, e.g.*, *Flores*, 507 U.S. at 308. Instead, it is about what the law requires for an alien to be entitled to relief.

*Third*, Petitioner is not entitled to consideration of chain refoulement because as far as U.S. law is concerned, Petitioner has no interest in avoiding chain refoulement. That means there is inherently no risk of erroneous deprivation of any interest in avoiding chain refoulement. The 1951 Refugee Convention and the 1967 Protocol were not "self-executing" treaties. The same is true of the Convention Against Torture. Rather, they had to be implemented by Congress. No statute entitles Petitioner to avoid chain refoulement. The withholding statute protects aliens from removal "to a country if the Attorney General decides that the alien's life or freedom would be threatened *in that country* because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3) (emphasis added). Similarly, CAT provides no protection for "chain refoulement." FARRA § 2242 expressly delegated the implementation of CAT to the agencies. The Department of Justice's implementation is found at 8 C.F.R. § 1208.16(c), which provides that an alien must establish that he would more likely than not be "tortured *in the proposed country of removal*." 8 C.F.R. § 1208.16(c)(3). Thus, his interest under the regulation is in demonstrating that he will be tortured in Liberia, not that he will be tortured elsewhere.

Unable to cite asylum and withholding law supporting their theory of chain refoulement, Petitioner now turns to a slightly different theory, arguing that "the Government may not do indirectly through an intermediary, what it is forbidden to do directly." ECF 71 at 23 n. 3, *citing Norwood v. Harrison*, 413 U.S. 455, 465 (1975), and *Nat'l Black Polic Ass'n Inc. v. Velde*, 712 F.2d 569, 580 (D.C. Cir. 1983). But the Supreme Court has been clear that the Constitution does not apply outside the United States—even to U.S. government officials. *See United States v. Verdugo-Uerquidez,* 505 U.S. 1201, 268 (1992). And "aliens are not entitled to Fifth Amendment

rights outside the sovereign territory of the United States." *Id.* at 269, *citing Johnson v. Eisentrager*, 339 U.S. 763 (1950).

Petitioner also seeks further proceedings so that he can argue that the diplomatic "assurances from Liberia here do not offer sufficient protection." ECF. 71 at 23-24. Further process would do nothing to mitigate any risk of error because the "Judiciary is not suited to second-guess" the determinations of the Executive Branch regarding the reliability of diplomatic assurances. *Munaf v. Geren*, 553 U.S. 674, 702 (2008). In *Munaf*, the Supreme Court held that when the Executive determines a country will not torture a person on his removal, that is conclusive. *Munaf*, 553 U.S. at 702-703; *see also Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009) (federal courts "may not question the Government's determination that a potential recipient country is not likely to torture a detainee"), *cert denied*, 599 U.S. 1005 (2010). The "*Munaf* decision applies here a fortiori: That case involved transfer of *American citizens*, whereas this case involves transfer of alien detainees with no constitutional or statutory right to enter the United States." *Kiyemba*, 561 F.3d at 517-518 (Kavanaugh, J., concurring). When the Executive decides an alien will not be tortured abroad, courts may not "second-guess [that] assessment," at least unless Congress has specifically authorized judicial review of that decision. *Id*. at 517; *see Munaf*, 553 U.S. at 703 n. 6. The decision that a foreign government's categorical assurance against torture is sufficient to be accepted for all aliens is itself a "foreign policy" judgment the Judiciary "is not suited" to question. *Munaf*, 553 U.S. at 702. No additional process could permit Petitioner to challenge the adequacy of these assurances.

Petitioner cites *Khouzam v. U.S. Att'y Gen.*, 549 F.3d 235 (3d Cir. 2008), to argue that, despite *Munaf*, due process entitles him to an opportunity to challenge the reliability of assurances. ECF 71 at 24. *Khouzam* is unpersuasive. That court misread *Munaf* as leaving open the possibility

of challenges under CAT to adequacy of diplomatic assurances. *Khouzam*, 549 F.3d at 254. *Munaf* did no such thing. It unequivocally held that "[t]he Judiciary is not suited to second-guess" determinations of the adequacy of diplomatic assurances and that it would be inappropriate for "federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area." *Munaf*, 553 U.S. at 702. It likewise held that that "it is for the political branches, not the judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments." *Id.* at 700-01. That is just as true of CAT claims challenging diplomatic assurances as other claims. True, *Munaf* did not decide "whether Munaf and Omar may be permitted to amend their respective pleadings" on remand to raise a CAT claim—but far from suggesting that a CAT claim could somehow go forward, it identified several *more* threshold problems such a claim would face. *Id.* at 702 n.6. That is no basis to set *Munaf* to the side.

### C. The Additional Process Petitioner Seeks Would Impose Considerable Burdens on the Government by Interfering with Foreign Relations.

Creating new procedures for third-country removal and intruding on sensitive foreign policy matters would place significant burdens on the Government. As the Government has explained, arranging a third-country removal "is a delicate diplomatic endeavor," and orders that inject courts "into that process" "disrupt[] those carefully negotiated arrangements" and "caus[e] major and irremediable harm to U.S. foreign policy." ECF 72-11, Application for a Stay of the Injunction, *DHS v. D.V.D.,* No.24A1153 (U.S.) at 1, 8. Petitioner proposes that U.S. foreign relations—including whether or not a foreign sovereign is to be believed—be evaluated and managed by immigration judges and the federal courts. That is a major separation of powers problem, not a minor inconvenience. That burdensome intrusion on not just removal operations,

but also the conduct of diplomacy, is entirely unwarranted—especially in light of the substantial

process Petitioner has received and continues to receive.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus should be denied.

Dated: November 14, 2025                    Respectfully Submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General

                                            DREW C. ENSIGN
                                            Deputy Assistant Attorney General
                                            U.S. Department of Justice
                                            Civil Division, Office of Immigration Litigation

                                            JONATHAN GUYNN
                                            Deputy Assistant Attorney General
                                            U.S. Department of Justice
                                            Civil Division, Torts Branch

                                            */s/ Ernesto H. Molina, Jr.*
                                            ERNESTO H. MOLINA, JR.
                                            Deputy Director
                                            U.S. Department of Justice
                                            Civil Division
                                            Office of Immigration Litigation –
                                                General Litigation and Appeals Section
                                            P.O. Box 878, Ben Franklin Station
                                            Washington, DC 20044
                                            202-616-93444
                                            ernesto.h.molina@usdoj.gov

                                            ATTORNEYS FOR RESPONDENTS

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2025, I electronically filed the foregoing document by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Ernesto H. Molina, Jr.*
ERNESTO H. MOLINA, JR.
Deputy Director
United States Department of Justice
Civil Division
Office of Immigration Litigation -
  General Litigation and Appeals Section

28