UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION

KILMAR ARMANDO ABREGO GARCIA,

        Petitioner,

v.

KRISTI NOEM, ET AL.,

        Respondents.

Case No. 8:25-CV-02780-PX

**RESPONDENTS' OPPOSITION TO
PETITIONER'S EMERGENCY
MOTION FOR A TRO AND MOTION
TO DISSOLVE TRO**

## INTRODUCTION

On December 11, 2025, this Court granted habeas relief and ordered Petitioner's release, principally on the ground that the immigration judge (IJ), despite having accepted Petitioner's admission of alleged facts and concession of the grounds of removal, had neglected to include the words "ordered removed" at the end of his 2019 decision granting withholding of removal to El Salvador. Accordingly, the Court reasoned, Petitioner had never actually been ordered removed and his continued detention pending removal under 8 U.S.C. § 1231 was improper.

The consequence of this Court's decision is that Petitioner has no final order of removal. That means he is not presently removable from the United States. But it does not mean he is not subject to any form of detention. If there is no final order of removal, immigration proceedings are ongoing, and Petitioner is subject to pre-final order detention under the separate legal authority in 8 U.S.C. § 1225 and/or § 1226. This Court's new TRO precluding detention therefore has no legal basis, and must be immediately dissolved.

Indeed, following this Court's order, an IJ has issued a new removal order that includes the language omitted from the 2019 order. As Petitioner acknowledges, that order is not yet final and cannot currently be executed; by its terms, it preserves Petitioner's right to appeal within 30 days to the Board of Immigration Appeals (BIA). If Petitioner has any objection to the new order, the

1

BIA is the place to raise those arguments in the first instance; following a BIA appeal, Petitioner can also petition for review in the Court of Appeals. But in the meantime, Petitioner is subject to continued detention while his (renewed) immigration proceedings play out, and this Court has no jurisdiction to indulge a premature collateral attack on the new removal order.

Further, the equities in this case favor the government. In earlier bond proceedings before an IJ, Petitioner was found not to have demonstrated that he was not a danger to the community. The BIA upheld that determination. Accordingly, it is distinctly in the public interest that Petitioner remain in detention, if the Executive makes that lawful election.

This Court should therefore deny Petitioner's motion and immediately dissolve the TRO that it entered on December 12 on an *ex parte* basis. *See* Fed. R. Civ. P. 65(b)(4).

**RELEVANT BACKGROUND**

### I.    Administrative Background

Petitioner is a citizen and native of El Salvador. ECF 110 at 2. He has never been lawfully admitted into the United States. 8 U.S.C. § 1101(a)(13)(A) (defining "admission" as "lawful entry of the alien into the United States after inspection and authorization by an immigration officer"). ECF 28-1 at 22-23. In 2019, Petitioner was served a notice to appear in removal proceedings, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). ECF 72-1 at 2.

In his removal proceedings, Petitioner, through counsel, admitted the factual allegations in the NTA and conceded removability "as charged." *See* ECF 28-1 at 23. The IJ granted Petitioner's application for withholding of removal. ECF 110 at 3. On August 25, 2025, Petitioner filed a motion to reopen, seeking the opportunity to apply for asylum and other relief. ECF 28-1 at 1. On October 1, 2025, the IJ denied the motion to reopen. ECF 39. Petitioner filed an appeal of that decision to the BIA. That appeal remains pending.

II.    **The Court's Memorandum Opinion**

On December 11, 2025, the Court granted Petitioner's "Petition for immediate release." ECF 110 at 1.  After reciting "only those event necessary to explain why Abrego Garcia is entitled to immediate release[,]" ECF 110 at 1-4, the Court turned to jurisdiction and the merits.  *Id.* at 15-30.  First, as to jurisdiction, the Court ruled that 8 U.S.C. § 1252(a)(5), (b)(9), and (g) did not foreclose the Court's jurisdiction because there was no removal order and Petitioner was "not challenging a final order of removal."  *Id.* at 16.

In turning to the merits, the Court examined the question of what constitutes a "removal order."  *Id.* at 18.  Under Fourth Circuit law, the Court found that an order of removal must be "explicit" in directing removal to a foreign country.  *Id.* (quoting *Kouambo v. Barr*, 943 F.3d 205, 210 (4th Cir. 2019)).  The Court also relied on the BIA, which had similarly held that where "an Immigration Judge issues a decision granting a [non-citizen's] application for withholding of removal . . . the decision must include an explicit order of removal."  *Id.* (quoting *Matter of I-S- & C-S-,* 24 I. & N. Dec. 432, 432 (BIA 2008)).  After noting that Respondents "have never produced an order of removal" and citing testimony of Respondents' witnesses indicating that they had not seen an order of removal, the Court concluded that no order of removal exists.  *Id.* at 20.

Respondents had argued that withholding of removal cannot be granted or effective if there is no order to be withheld, and therefore a removal order existed by operation of law, but the Court held that this approach wrongly "collapse[es] two legally distinct orders . . . into one."  *Id.*  Further, the Court noted that Fourth Circuit law required an "explicit order of removal."  *Id.*  Ultimately, the Court found it dispositive that "nowhere does the IJ *order* Abrego Garcia removed to any country at all."  *Id.* at 24 (emphasis in original).

The lack of a final order of removal made Petitioner's detention under § 1231 unlawful. *Id.* at 24.  The Court noted that third-country removals and detention under that provision both depend on existence of a final order of removal.  *Id.* at 25.  The Court indicated that Respondents had not "articulated any other basis to hold Abrego Garcia apart from § 1231." *Id.*

The Court added that, under *Zadvydas v. Davis*, 533 U.S. 678 (2001), detention pending removal under § 1231 is only lawful for the purpose of effectuating removal.  *Id.* at 26.  Absent a final order of removal, the Court reasoned, Petitioner's "removal is not reasonably foreseeable," and so Respondents could not keep holding him under § 1231 and *Zadvydas*.  *Id.* at 27.  "Although Respondents may eventually get it right, they have not as of today." *Id.*

## III.    Subsequent Factual Developments

Consistent with the Court's order, Respondents released Petitioner from detention on December 11, 2025.  ECF 112 at 1-2.

Later that day, an IJ entered a new order in Petitioner's immigration case.  ECF 112-2 at 2, 4.  The IJ stated that DHS had provided him with a copy of this Court's Order.  ECF 112-2 at 4.  After noting that neither party had previously raised the absence of the "ordered removed" phrase in the prior five years, the IJ decided to correct that error.  *Id.*  The IJ recounted that Petitioner had long admitted the allegations and conceded removability as charged; that the immigration court had found that removability was established by clear and convincing evidence and had designated El Salvador as the country of removal; and that Petitioner (in removal proceedings, the respondent) had agreed with that designation; but that the written decision had omitted the explicit order of removal.  *Id.* at 4-5.  The IJ thus issued a new order that added: "The Respondent is removed to El Salvador based on the charge contained in the Notice to Appear, but the respondent's application for withholding of removal to El Salvador pursuant to INA § 241(b)(3) is granted."  *Id.* at 6.

In the cover sheet for the order, the box checked indicated that: "This decision is final unless an appeal is filed with the Board of Immigration Appeals withing 30 days of the date of the mailing of this written decision." *Id.* at 2. In other words, the new removal order is not yet final, and Petitioner may appeal to the BIA (and then seek review in the Court of Appeals).

## LEGAL STANDARD

A TRO is appropriate where a movant demonstrates: (1) likelihood of success on the merits; (2) likelihood of suffering irreparable harm absent an injunction; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## ARGUMENT

## I.  PETITIONER FAILS TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS CURRENT CHALLENGES

**A.**    This Court has determined that no final order of removal existed as to Petitioner, meaning that his detention pending removal was not authorized under § 1231, as his removal was not significantly likely in the reasonably foreseeable future. ECF 110 at 24-27. The consequence of that decision, as a matter of black-letter immigration law, is that Respondents cannot currently remove Petitioner, because his immigration proceedings are not completed and there is no final order of removal to execute. But Respondents are authorized to *detain* him under *other* authorities, namely §§ 1225 and/or 1226, which authorize detention of aliens during removal proceedings.

Indeed, for more than a century, immigration laws have authorized immigration officials to charge noncitizens as removable, arrest noncitizens subject to removal, and detain noncitizens for removal proceedings. *Abel v. United States*, 362 U.S. 217, 232-37 (1960). And it is is well-established that "detention during deportation proceedings *[is] a constitutionally valid aspect of*

*the deportation process.*" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (emphasis added).The relevant INA provisions for detention *before* a final order of removal are 8 U.S.C. §§ 1225 and 1226.

Section 1225(a) states that an alien "present in the United States who has not been admitted or who arrives in the United States … shall be deemed … an applicant for admission."  8 U.S.C. § 1225(a)(1).  "All aliens … who are applicants for admission or otherwise seeking admission or readmission to … the United States" are required to "be inspected by [an] immigration officer[]." *Id.* § 1225(a)(3).  For aliens placed in ordinary removal proceedings,[1] § 1225(b)(2) requires that those aliens "shall be detained" pending those proceedings.  8 U.S.C. § 1225(b)(2)(A); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (holding that § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings").

For aliens who are not "applicants for admission" or otherwise not "seeking admission," §1226 governs DHS's authority to detain them while removal proceedings are pending.  *Johnson v. Guzman Chavez*, 594 U.S. 523, 533-34 (2021).  That provision establishes two types of detention authority: (1) discretionary detention under 8 U.S.C. § 1226(a), which permits a bond hearing; and (2) mandatory detention under 8 U.S.C. § 1226(c), which does not permit a bond hearing.[2]  As the Supreme Court has explained, 8 U.S.C. § 1226(a) "creates a default rule … by permitting—but not requiring—the [Secretary] to issue warrants for their arrest and detention pending removal proceedings."  *Jennings*, 583 U.S. at 289, 303; *Q. Li*, 29 I&N Dec. at 70.

---

[1] There are separate rules for aliens who are subject to expedited removal.  *DHS v. Thuraissigiam*, 591 U.S. 103, 109-113 (2020).  They are also subject to detention pending their expedited removal proceedings.  8 U.S.C. § 1225(b)(1)(B)(iii)(IV), § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(2)(iii).  But Petitioner here is not subject to expedited removal.

[2] Section 1226(c) makes certain aliens ineligible for bond due to their criminal history or for other reasons.  *See* 8 U.S.C. § 1226(c)(1), (c)(2); 8 C.F.R. §§ 236.1(c)(1)(i), 1236.1(c)(1)(i).  Release of such aliens is permitted only in very narrow circumstances.  *See* 8 U.S.C. § 1226(c)(2).

6

An alien who is subject to discretionary detention may be released on bond, either by an ICE officer or by an IJ at a bond hearing. *See* 8 U.S.C. § 1226(a)(2); 8 C.F.R. §§ 236.1, 1003.19, 1236.1(d)(1). At a bond hearing, the burden is on the alien to justify release by showing that he or she is not a flight risk or a danger. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Matter of Siniauskas*, 27 I. & N. Dec. 207, 2017 (BIA 2018). An alien may appeal the bond decision to the BIA. *See* 8 C.F.R. §§ 1003.1(b)(7), 1003.19(f), 1003.38, 1236.1(d)(3)(i). Section 1226(a) does not, however, confer the *right* to release on bond; rather, both DHS and IJs have broad discretion in making bond determinations. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8); *Matter of Guerra*, 24 I&N Dec. 37, 39 (BIA 2006); *Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999). The determination to detain an alien is not subject to judicial review: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e).[3]

The takeaway is that this Court's determination that no final removal order exists bears only on DHS's authority to detain Petitioner under § 1231(a), which governs authority to detain a noncitizen *after* he is subject to "an administratively final removal order." *Guzman*, 549 U.S. at 533-34. If no final order of removal exists, then Petitioner's removal proceedings are ongoing, and he is instead subject to detention under either § 1225 or at minimum § 1226, subject to the prospect (if applicable) of a bond hearing before an IJ. Nothing about this Court's order somehow

---

[3] If an alien is denied bond, the alien is always free to terminate detention by accepting a final order of removal, qualifying for voluntary departure, or (in some instances) simply leaving the United States. *See Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999). That choice need not prejudice the alien's rights to judicial review, as an alien who files a petition for review in the court of appeals after the BIA has entered a final removal order can depart or be removed from the United States and continue to challenge the removal order from abroad. *See Nken v. Holder*, 556 U.S. 418, 424-25 (2009).

shields Petitioner from the ordinary detention rules that apply to all aliens in removal proceedings. Rather, the Supreme Court has expressly found that detention remains under §1226(a) until there is an "administratively final removal order." *Guzman*, 594 U.S. at 533-34.

Petitioner's reliance on *Zadvydas* is misplaced. That decision only applies to post-final-order detention pending removal under §1231. The very nature of the relief that Petitioner has obtained has taken him entirely outside of the *Zadvydas* framework. And the Fourth Circuit has expressly admonished district courts that "*Zadvydas* should not be expanded beyond the context of the *indefinite and potentially permanent* detention involved there." *Miranda v. Garland*, 34 F.4th 338, 361 (4th Cir. 2022) (emphasis added). Petitioner's reliance on *Zadvydas* to challenge his pre-final-order detention is precisely the sort of claim that the Fourth Circuit expressly prohibited in *Miranda*.

**B.** That result is only reinforced by the IJ's recent entry of an order of removal. In correcting the omission from the 2019 order, the IJ analyzed the record and issued a complete order of removal in compliance with the statute and regulations. But as the Petitioner correctly notes, that order of removal is not yet "final." ECF 112 at 3. The order expressly informed the parties that an appeal may be taken to the BIA. 112-2 at 2. The IJ's new removal order does not become final until "waiver of an appeal or upon expiration of the time to appeal if no appeal is taken." 8 C.F.R. 1003.39. At present, Petitioner has not waived appeal and the time to take an appeal has not expired. Thus, the new order is not final or executable. Petitioner is not yet removable.

All that means for *detention*, however, is that any potential further detention now is authorized under 8 U.S.C. §§ 1225 and/or 1226. Petitioner may seek a bond hearing before an IJ, and appeal to the BIA if the IJ denies bond. Indeed, Petitioner has done exactly that in the past. *See* ECF 72-1 at 2-3 (IJ's denial of bond); ECF 72-2 at 2 (BIA order upholding that decision). But

8

a challenge to Petitioner's detention pending his removal proceedings cannot be pursued in federal court.  8 U.S.C. § 1226(e).

At minimum, such a challenge is premature because Petitioner has not been taken into detention and has not exhausted administrative remedies.  "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law . . . [and] provides that 'no one is entitled to judicial relief for a supported or threatened injury until the prescribed administrative remedy has been exhausted."  *Miranda v. Garland*, 34 F.4th 338, 351 (4th Cir. 2022).  Again, if Petitioner is taken into detention, he will have the opportunity to seek release on bond from an IJ, an independent adjudicator.  8 C.F.R. 1236.1(d)(1).  If he is dissatisfied with the result, he may pursue an appeal to the BIA.  8 C.F.R. § 1236(d)(3).  It is inappropriate for this Court to pretermit that entire process before it begins.

In short, if there was no final order of removal, then DHS remains fully authorized to continue Petitioner's previous detention under § 1226 at minimum.  And there is no lawful basis for this Court to interfere with that exercise of authority.

**C.**    Petitioner also argues that he is entitled to release because of perceived defects in the IJ's new removal order.  That line of argument fails thrice over.

*First*, whether the new removal order is valid or not, Petitioner is subject to detention under §§ 1225 and/or 1226 while the removal proceedings play out.  For all of the reasons set forth above, detention is an ordinary part of removal proceedings, and Petitioner cannot launch a collateral attack on one aspect of his removal proceedings as a way to exempt himself from that regime.

*Second*, Petitioner's arguments are jurisdictionally barred.  By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals."  8 U.S.C. § 1252(a)(5), (b)(2).  This explicitly precludes relief under "section

2241 of title 28, or any other habeas corpus provision." *Id*. § 1252(a)(5). "Taken together, §[§] 1252(a)(5) and [(b)(9)] mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphases added). Section 1252(b)(9) thus eliminates this Court's jurisdiction over Plaintiffs' claims by channeling "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" to the courts of appeals. Accordingly, this Court lacks jurisdiction under § 1252(a)(5) and (b)(9) to review Petitioner's request to review the IJ's new removal order. *See J.E.F.M.*, 837 F.3d at 1031; *Mata v. DHS*, 426 F. App'x 698, 700 (11th Cir. 2011); *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1257-58 (11th Cir. 2020); *Camarena v. ICE,* 988 F.3d 1268, 1272 (11th Cir. 2021).

*Finally*, Petitioner's challenges are meritless anyway. "To succeed on a due process claim in a[] . . . removal proceeding, an alien must establish two closely linked elements: (1) that a defect in the proceeding rendered it fundamentally unfair and (2) that the defect prejudiced the outcome of the case." *Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008). Petitioner has not demonstrated either. Most fundamentally, as the IJ's order makes clear, Petitioner long admitted the allegations of removal against him and conceded his removability; the IJ also found Petitioner removable as charged during the removal proceedings. The ministerial task of remedying an oversight at the conclusion of those proceedings is well within an IJ's discretionary authority. *See Maksymchuk v. Frank*, 987 F.2d 1072, 1075 n.1 (4th Cir. 1993) (explaining that issuing an order *nunc pro tunc* "'is a procedure whereby a determination previously made, but for some reason improperly entered or expressed, may be corrected and entered as of the original time when it should have been, or when there has been an omission to enter it at all'"); *Matter of L-*, 1 I&N Dec. 1, 6 (A.G. 1940).

(decision to rectify an error *nunc pro tunc* "amounts to little more than a correction of a record of entry, which is a frequent and indispensable practice in many and varied situations").

Petitioner also argues that his pending appeal before the BIA of the denial of his motion to reopen the underlying removal order divested the IJ of authority to issue a new order involving the original removal order. Not so. Unless a motion to reopen is granted, such motion does not affect the finality of the underlying order. *See* 8 U.S.C. § 1252(b)(6); *Stone v. INS*, 514 U.S. 386, 394 (1995), *abrogated on other grounds in Riley v. Bondi*, 606 U.S. 259 (2025). And this Court held that there was no order of removal at all, necessarily rendering both the prior 2019 order and the appeal implicating it jurisdictional nullities for appellate purposes, since there is now no final order that could have been appealed to the BIA nor an final removal decision that could be reopened. Petitioner cannot have it both ways: simultaneously obtaining relief that wiped his order of removal out of existence while concurrently relying on an appeal involving that no-longer-extent order to prevent proceedings before the IJ that are directly required as a result of the relief he obtained. Petitioner cites nothing for his purported Catch-22 in which the IJ has neither issued an order of removal in the past nor could do so in the future given the putative lack of jurisdiction— all for an alien who concedes he is removable as a result of his unlawful entry into the United States. Moreover, having successfully argued that there he had no final order of removal, Petitioner is judicially estopped from arguing that an appeal of such a non-existent order bars IJ consideration over whether to issue an order of removal. "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Lowery v. Stovall*, 92 F.3d 219, 223 (4ᵗʰ Cir. 1996), *quoting John S. Clark Co. v. Foggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4ᵗʰ Cir. 1995). He has, for the moment,

11

prevailed on the suggestion that there is no final order; thus, he is stuck with the consequence that his prior proceedings have not achieved the degree of finality such that his interlocutory appeal to the Board from a subsequent order somehow deprives the immigration judge of authority to correct a scrivener's error. In any event, that is a matter for the Board to decide in the context of either his appeal from an interim order or the appeal from the immigration judge's December 11 decision.

In any event, it is well-established that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the [appellate court] and divests the [lower courts] of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 60-61 (1982). But the IJ's correction of its prior order does not implicate any aspect of Petitioner's appeal of the denial of his motion to reopen. Indeed, Petitioner's motion to reopen never raised the putative lack-of-order-of-removal argument at all. But even if that argument had merit, Petitioner would need to raise it through a proper appeal to the BIA, not a collateral challenge in this Court.

## II.    THE EQUITITES FAVOR ALLOWING ADMINISTRATIVE PROCESSESS TO CONTINUE AND DISFAVOR PROTECTING A FORMER MEMBER OF MS-13

The public interest cuts firmly against preventing the Respondents from making recourse to the ordinary administrative procedures attendant to assessing and effectuating the removal of an unlawfully present alien, particularly where that alien was previously found to be a member of a designated terrorist organization. Petitioner otherwise fails to offer any compelling irreparable harm that would justify this injunction.

The Respondents' and the public interest have a particularly strong equity in the administrative proceedings that have already been employed. In 2019, an immigration judge concluded that "the evidence shows that [Abrego Garcia] is a verified member of MS-13" and that

he "has failed to present evidence to rebut that assertion." ECF 72-1 at 2-3. It concluded too that as a member of a notorious and violent gang, he presents a danger to Americans. *Id.* That conclusion was then affirmed by the BIA. ECF 72-2. Accordingly, while there is no doubt a "public interest in preventing aliens from being wrongfully removed," *Nken*, 556 U.S. at 435, there is an overwhelming public interest in allowing immigration officials to make case-by-case assessments of whether an individual presents a danger to the public such that he should be detained pending proceedings, *see id.* at 436 (noting a heightened "interest in prompt removal" if an "alien is particularly dangerous"). The administrative proceedings before neutral adjudicators have assessed the degree of danger that Abrego Garcia presents to the United States, and that is the precise sort of national security judgment on which the Executive is entitled to peak deference. *See Trump v. Hawaii*, 585 U.S. 667, 704 (2018).

Petitioner's interests, by contrast, are minimal. He has admitted that he arrived unlawfully, and he has conceded his removability. He is given recourse to a full panoply of rights, including his currently pending appeal from the denial of a motion to reopen, and those rights are being determined. The INA has provided that he may be detained while his proceedings continue, and he has full recourse to independent adjudicators while his motion to reopen and any potential appeal from the immigration judge's December 11 order are pending. Importantly, he has the right to an independent assessment of whether, even assuming he is detained again, he may be released on bond.

In sum, the equities favor the administrative processes playing out according to the provisions established by Congress and enforced by the Executive.

**CONCLUSION**

For the foregoing reasons, the Court should deny Petitioner's Emergency Motion for a Temporary Restraining Order, and should instead immediately dissolve its *ex parte* TRO.


Dated: December 14, 2025                    Respectfully Submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General

                                            DREW C. ENSIGN
                                            Deputy Assistant Attorney General
                                            U.S. Department of Justice
                                            Civil Division, Office of Immigration Litigation

                                            JONATHAN GUYNN
                                            Deputy Assistant Attorney General
                                            U.S. Department of Justice
                                            Civil Division, Torts Branch

                                            */s/ Ernesto H. Molina, Jr.*
                                            ERNESTO H. MOLINA, JR.
                                            Deputy Director
                                            U.S. Department of Justice
                                            Civil Division
                                            Office of Immigration Litigation
                                            P.O. Box 878, Ben Franklin Station
                                            Washington, DC 20044
                                            202-616-93444
                                            ernesto.h.molina@usdoj.gov

                                            ATTORNEYS FOR RESPONDENTS

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2025, I electronically filed the foregoing document by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

 /s/ Ernesto H. Molina, Jr.
ERENSTO H. MOLINA, JR.
Deputy Director
United States Department of Justice
Civil Division
Office of Immigration Litigation