UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Greenbelt Division

Kilmar Armando Abrego Garcia,

           Petitioner,

v.

Kristi Noem, *et al.*,

           Respondents.

Case No. 8:25-cv-02780 (PX)

**Petitioner's Reply in Support of Motion for Temporary Restraining Order**

**Table of Contents**

**Page**

Introduction ........................................................................................................................................1

Argument ...........................................................................................................................................1

I.     Abrego Garcia Is Likely To Prevail On The Merits. ..............................................................1

    A.     Detention Remains Impermissible Under *Zadvydas*. ................................................1

    B.     The Court Need Not Resolve The Validity of the Immigration Judge's Order. ........4

    C.     Detention Is Impermissible Under Sections 1225 and 1226. ....................................6

    D.     The Court Retains Jurisdiction. .................................................................................8

II.     Abrego Garcia Will Be Irreparably Harmed Absent Injunctive Relief. .............................10

III.     Equities And The Public Interest Favor Injunctive Relief. .................................................11

Conclusion .......................................................................................................................................13

## Table of Authorities

Page(s)

### Cases

*Abrego Garcia v. Noem*,
    2025 WL 1021113 (4th Cir. Apr. 7, 2025) ............................................................................. 12

*Abrego Garcia v. Noem*,
    2025 WL 2062203 (D. Md. July 23, 2025) ........................................................................... 6, 8

*Abrego Garcia v. Noem*,
    777 F. Supp. 3d 501 (D. Md. 2025) ......................................................................................... 8

*Al Khouri v. Ashcroft*,
    362 F.3d 461 (8th Cir. 2004) .................................................................................................... 5

*Ascencio v. Garland*,
    2022 WL 112071 (4th Cir. Jan. 12, 2022) ............................................................................... 4

*Asylum Seeker Advocacy Project v. U.S. CIS*,
    --- F. Supp. 3d ----, 2025 WL 3029552 (D. Md. Oct. 30, 2025) ........................................... 11

*Black v. Almodovar*,
    156 F.4th 171 ........................................................................................................................... 7

*Castaneda v. Perry*,
    95 F.4th 750 (4th Cir. 2024) .................................................................................................... 7

*Clark v. Martinez*,
    543 U.S. 371 (2005) ................................................................................................................. 7

*Duarte Escobar v. Perry*,
    --- F. Supp. 3d ---, 2025 WL 3006742 (E.D. Va. Oct. 27, 2025) .......................................... 10

*Elrod v. Burns*,
    427 U.S. 347 (1976) ............................................................................................................... 10

*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017) .................................................................................................... 9

*Jama v. ICE*,
    543 U.S. 335 (2005) ................................................................................................................. 8

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ................................................................................................................. 7

*Johnson v. Arteaga-Martinez*,
    596 U.S. 573 (2022) ............................................................................................................. 6

*Johnson v. Guzman Chavez*,
    594 U.S. 523 (2021) ............................................................................................................. 6

*Lopez v. Noem*,
    2025 WL 3496195 (D. Md. Dec. 5, 2025) ........................................................................ 11

*Maldonado v. Baker*,
    2025 WL 2968042 (D. Md. Oct. 21, 2025) ......................................................................... 6

*Mata Velasquez v. Kurzdorfer*,
    794 F. Supp. 3d 128 (W.D.N.Y. 2025) .............................................................................. 10

*Miranda v. Garland*,
    34 F.4th 338 (4th Cir. 2022) ........................................................................................ 9, 10

*Nguyen v. Scott*,
    --- F. Supp. 3d ---, 2025 WL 2419288 (W.D. Wash. Aug. 21, 2025) ................................ 5

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................................... 11

*Noem v. Abrego Garcia*,
    145 S. Ct. 1017 (2025) ....................................................................................................... 12

*Patel v. Garland*,
    596 U.S. 328 (2022) ............................................................................................................. 9

*Puc-Ruiz v. Holder*,
    629 F.3d 771 (8th Cir. 2010) ............................................................................................... 4

*Reno v. Flores*,
    507 U.S. 292 (1993) ............................................................................................................. 5

*Rodriguez v. Bostock*,
    --- F. Supp. 3d ----, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ............................ 10

*United States v. Cruz-Candela*,
    399 F. Supp. 3d 454 (D. Md. 2019) .................................................................................... 4

*Velasco Lopez v. Decker*,
    978 F.3d 842 (2d Cir. 2020) ................................................................................................ 9

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ................................................................................. 1, 2, 3, 4, 7, 8, 9, 12

**Statutes**

8 U.S.C. § 1225 ........................................................................................................................1, 6, 7

8 U.S.C. § 1226(e) ............................................................................................................................9

8 U.S.C. § 1231 ........................................................................................................... 1, 2, 3, 4, 5, 6, 7

8 U.S.C. § 1231(a)(1) .......................................................................................................................2

Immigration and Nationality Act ................................................................................................5, 6

## Introduction

The Government's opposition brief confirms that the Court correctly entered a temporary restraining order and should convert it to a preliminary injunction. Within twelve hours of this Court granting Abrego Garcia's habeas petition because no order of removal existed, an immigration judge *sua sponte* issued an order purporting to create "an order of removal in effect as of October 10, 2019." ECF No. 114 at 2 (citing ECF No. 112-2). Taking that order at face value, the consequence is exactly what this Court has already explained: "not only is *Zadvydas v. Davis*, 533 U.S. 678 (2001) squarely applicable," but also "Abrego Garcia's 90-day 'removal period' under 8 U.S.C. § 1231 expired nearly six years ago." *Id.* at 2–3.

Abrego Garcia disputes the validity of the immigration judge's latest order, but this Court need not resolve those disputes. For present purposes, it is enough to accept the order for what it purports to be. On that assumption, both *Zadvydas* and § 1231 foreclose continued removal detention of Abrego Garcia.

In response, the Government insists that it can detain Abrego Garcia under "8 U.S.C. § 1225 and/or § 1226." ECF No. 115 at 1. That position is irreconcilable with the Government's actions. If there is now an order of removal operative as of 2019, then § 1231 applies by its terms, and § 1225 and § 1226 do not. And even if § 1231 were inapplicable, the principles that undergird *Zadvydas* would independently bar detention under the circumstances of this extraordinary case.

## Argument

**I.    Abrego Garcia Is Likely To Prevail On The Merits.**

    **A.    Detention Remains Impermissible Under *Zadvydas*.**

Under 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Government cannot lawfully detain Abrego Garcia for removal under the circumstances of this case. This Court has already recognized as much. When it granted the temporary restraining order, the Court

explained that "[i]f the most recent order is as Respondents claim it to be—an order of removal in effect as of October 10, 2019—then not only is *Zadvydas v. Davis*, 533 U.S. 678 (2001) squarely applicable, *cf.* ECF No. 110 at 25," but also "Abrego Garcia's 90-day 'removal period' under 8 U.S.C. § 1231 expired nearly six years ago." ECF No. 114 at 2–3.

That conclusion follows directly from the statute and from *Zadvydas*. Under § 1231, mandatory detention exists only during a limited "removal period" that begins when an order of removal becomes administratively final. 8 U.S.C. § 1231(a)(1). That removal period is generally 90 days. *Id.* § 1231(a)(1)(B). Once that removal period expires, continued detention is subject to strict limitations. *Zadvydas*, 533 U.S. at 689. After six months of post-removal-order detention, and once a petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *id.* at 701, as Abrego Garcia has done here (*see* ECF 114 at 25–29), the Government bears the burden of proving that removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 701.

The Government suggests that the removal period has not expired because Abrego Garcia's right to appeal the purported October 2019 order has not run. *See* ECF No. 115 at 5. But a purported order of removal cannot be both operative as of October 2019 *and* appealable in December 2025. If the purported order of removal is effective as of October 10, 2019—as the immigration judge expressly stated, *see* ECF No. 112-2—then both the 90-day removal period and the six-month period expired years ago. The Government has relied on this purported October 2019 removal order. When it released Abrego Garcia on December 11, 2025, it issued an Order of Supervision stating that there is a "Final Order" of removal dated "October 10, 2019." ECF No. 112-1 at 2. The Government cannot invoke a purported 2019 final order of removal to establish removal and detention authority while simultaneously resetting the *Zadvydas* clock to run from 2025.

2

Nor can the Government meet its burden under *Zadvydas* to show that removal is reasonably foreseeable. As this Court correctly concluded when granting the temporary restraining order: "Respondents also have detained Abrego Garcia for the six-month presumptive period articulated in *Zadvydas*, when conservatively considering the time spent in ICE detention since 2019, combined with the time spent in detention in El Salvador, and in ICE custody after securing his release in the *Tennessee Criminal Matter*." ECF No. 114 at 3. And, as this Court held last week when granting habeas relief, the "circumstances of Abrego Garcia's detention since he was released from criminal custody cannot be squared with the 'basic purpose' of holding him to effectuate removal." ECF No. 110 at 28 (quoting *Zadvydas*, 533 U.S. at 697).

That *Zadvydas* analysis applies with equal force today. Abrego Garcia remains willing to go to Costa Rica—a country that has committed to receive him—yet the Government still refuses to remove him there. *See* ECF No. 110 at 28–29. The Government's continued "inexplicable reluctance" to effectuate removal to Costa Rica remains at odds with the legitimate purpose of detention under § 1231. *Id.* at 28. The words this Court wrote one week ago remain true today: "Respondents' persistent refusal to acknowledge Costa Rica as a viable removal option, their threats to send Abrego Garcia to African countries that never agreed to take him, and their misrepresentation to the Court that Liberia is now the only country available to Abrego Garcia, all reflect that whatever purpose was behind his detention, it was not for the 'basic purpose' of timely third-country removal." *Id.* at 29 (quoting *Zadvydas*, 533 U.S. at 697).

The Government contends (at 8) that Abrego Garcia's reliance on *Zadvydas* is "misplaced" because the Court's ruling that there was no final order of removal "has taken him entirely outside of the *Zadvydas* framework." That contention is wrong for two reasons.

3

First, the immigration judge purported to create an order of removal effective as of October 10, 2019, *see* ECF No. 112-2 at 5, which places Abrego Garcia squarely within § 1231 and *Zadvydas*, as this Court has already recognized, *see* ECF No. 114 at 2–3.

Second, the principles articulated in *Zadvydas* do not depend on a final order of removal. *See* ECF No. 110 at 25–29 (applying *Zadvydas*'s principles even after holding that there is no final order of removal). As the Supreme Court made clear, "a statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. That limitation flows from the Due Process Clause and applies irrespective of the statutory label the Government invokes. Whether the Government claims detention authority under § 1231 or some other statute, due process forbids indefinite immigration detention of a non-citizen that is not for the basic purpose of timely removal. *See* ECF No. 110 at 25–29. Injunctive relief thus remains necessary to ensure compliance with constitutional limits on detention.

### B.     The Court Need Not Resolve The Validity of the Immigration Judge's Order.

The Court need not resolve the validity of the immigration judge's order purporting to create an order of removal effective as of October 2019.

To be sure, serious questions surround the order's validity. As an initial matter, Abrego Garcia's appeal of his motion to reopen to the Board of Immigration Appeals divested the immigration judge of jurisdiction. *See Ascencio v. Garland*, 2022 WL 112071, at *3 (4th Cir. Jan. 12, 2022); *Puc-Ruiz v. Holder*, 629 F.3d 771, 782 (8th Cir. 2010). An immigration judge's order entered without jurisdiction is "null and void." *United States v. Cruz-Candela*, 399 F. Supp. 3d 454, 462 (D. Md. 2019). The Government attempts to avoid that conclusion by characterizing (at 10, 12) the immigration judge's order as a mere "nunc pro tunc" correction of a "scrivener's error," meaning that the purported order of removal is today as it has always been. Yet the Government simultaneously argues (at 11) that because the 2019 withholding of removal order did not include

4

an order of removal, the entire document and everything that flows from it—including Abrego Garcia's motion to reopen—is a "jurisdictional nullit[y]" incapable of conferring appellate jurisdiction or divesting the immigration judge of jurisdiction. But the Government cites no authority for this sweeping proposition.[1]

There are additional concerns. The immigration judge's order was issued *sua sponte* and *ex parte*—*i.e.*, without any notice or opportunity for Abrego Garcia to be heard—and it was issued within hours of this Court's habeas ruling ordering his release. *See* ECF No. 112 at 3–4. That sequence raises substantial questions under the Immigration and Nationality Act and the Due Process Clause. *See* ECF No. 110 at 29–30; *Nguyen v. Scott*, --- F. Supp. 3d ---, 2025 WL 2419288 (W.D. Wash. Aug. 21, 2025) (granting immediate release and enjoining removal absent meaningful opportunity to be heard in reopened removal proceedings); *see also Al Khouri v. Ashcroft*, 362 F.3d 461, 464 (8th Cir. 2004) (due process requires "removal hearings be fundamentally fair") (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The Court need not wade into these waters, however, to resolve Abrego Garcia's motion for injunctive relief. *See* ECF No. 114 at 2 (declining to "opine on this newest 'order'"). For present purposes, the Court may assume that the order is valid and still conclude—under *Zadvydas* and § 1231—that continued detention is impermissible. Preserving the status quo through injunctive relief therefore requires no determination on the order's ultimate legality.

---

[1] The Government's suggestion (at 11) that Abrego Garcia is "estopped" from arguing that the immigration judge lacked jurisdiction is meritless. Abrego Garcia has consistently pointed out that the 2019 withholding of removal decision did not include a final order of removal, but has never suggested that meant the 2019 decision could not be appealed. *See, e.g.*, ECF No. 1 ¶¶ 54, 68–69; ECF No. 32 at 3, 9, 10, 20; ECF No. 87 at 11, 18. To the contrary, Abrego Garcia has consistently looked to the plain language of the 2019 withholding of removal order, which expressly provides that it is appealable. ECF No. 28-1 at 35. There is thus no inconsistency in Abrego Garcia's positions, and no basis for estoppel to apply.

### C. Detention Is Impermissible Under Sections 1225 and 1226.

Assuming the validity of the immigration judge's order, the Government lacks any basis under 8 U.S.C. § 1225 or § 1226 to detain Abrego Garcia. That is for at least two reasons.

First, the immigration judge purported to create an order of removal effective as of "October 10, 2019." ECF No. 112-2 at 5. The Government itself characterized that order as a "Final Order." ECF No. 112-1 at 2. Under the Immigration and Nationality Act, detention following an order of removal is governed exclusively by 8 U.S.C. § 1231, entitled "Detention and removal of aliens ordered removed." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022) ("Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States."); ECF No. 110 at 25 (similar). Once § 1231 applies, other detention provisions—such as § 1225 and § 1226—do not. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 533–34 (2021).

Second, as the Government acknowledges, § 1225 and § 1226 apply only during the pendency of removal proceedings. *See* ECF No. 115 at 5–6; *see also Maldonado v. Baker*, 2025 WL 2968042, at *5 (D. Md. Oct. 21, 2025) (explaining that § 1225(b) provides for mandatory detention during removal proceedings and § 1226(a) grants discretionary authority to "arrest[] and detain[]" a noncitizen "pending a decision on whether the alien is to be removed from the United States"). But as this Court previously observed, "by [the Government's] own admission, there are no ongoing removal proceedings." *Abrego Garcia v. Noem*, 2025 WL 2062203, at *6, 8 (D. Md. July 23, 2025) ("*Abrego Garcia II*"). That remains true today. Abrego Garcia sought to reopen his immigration proceedings, but the Government opposed reopening, and the immigration judge denied it. *See* ECF 39 at 2 (noting the Government's opposition). If the Government wishes to reopen removal proceedings, it "must move to reopen such proceedings in Baltimore, which has not been done." *Abrego Garcia II*, 2025 WL 2062203, at *8.

6

Even if § 1231 did not apply, however, detention would still be unlawful. The Court's determination that the Government failed to properly document an order of removal does not erase the immigration proceedings that occurred in 2019 and culminated in the withholding of removal decision. *See* ECF No. 1-1. Nor does it mean that Abrego Garcia's proceedings have been unknowingly open and ongoing for the last six years, granting the Government a blank check to indefinitely detain Abrego Garcia.

As this Court recognized when granting Abrego Garcia's release, "indefinite detention" is impermissible not only under § 1231 but also would "raise serious constitutional concern." ECF No. 110 at 26 (quoting *Zadvydas*, 533 U.S. at 682). Civil immigration detention is permissible only to the extent it is "reasonably necessary" to effectuate lawful removal. *Id.* Once "there is no significant likelihood of removal in the reasonably foreseeable future," such detention is no longer permissible. *Id.* at 26–27 (citing *Zadvydas*, 533 U.S. at 701; *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018)); *see also Clark v. Martinez*, 543 U.S. 371, 386 (2005) (finding petitioners should be released where there was "nothing to indicate that a substantial likelihood of removal subsists" and the Government "concede[d] that it [was] no longer even involved in repatriation negotiations with Cuba"). Those due process principles apply with equal force to detention under § 1225 or § 1226.[2] If due process can require release of a noncitizen with a final order of removal when removal is not reasonably foreseeable, it follows *a fortiori* that it can require release of a noncitizen

---

[2] *Jennings* left open the question of when due process challenges to detention under § 1225 or § 1226 may succeed. *See* 583 U.S. at 312 ("Because the Court of Appeals . . . had no occasion to consider respondents' constitutional arguments on their merits, . . . we remand the case to the Court of Appeals to consider them in the first instance."). The Government has consistently maintained that as-applied challenges to detention are available. *See, e.g.*, *Black v. Almodovar*, 156 F.4th 171, 197–98, 198 n.10, 199 & n.12 (2d Cir. 2025) (collecting examples); *see also Castaneda v. Perry*, 95 F.4th 750, 761 (4th Cir. 2024) (assuming without deciding "that as-applied due process challenges to § 1231 detentions may proceed outside the *Zadvydas* framework").

7

without such an order in the same circumstances. If immigration detention does not serve the legitimate purpose of effectuating reasonably foreseeable removal, it is punitive, potentially indefinite, and unconstitutional. *See Zadvydas*, 533 U.S. at 690 (explaining that because immigration proceedings "are civil, not criminal," detention must be "nonpunitive in purpose and effect"). The Government's course of action since this Court issued its habeas corpus ruling only reinforces the Court's conclusion that its true purpose in detaining Abrego Garcia is simply to detain him, not to expeditiously remove him.

There can be no serious dispute that removal is not reasonably foreseeable here. The purported removal order states that Abrego Garcia is removable to El Salvador, but it also reaffirms that Abrego Garcia cannot lawfully be removed there. ECF No. 112-2 at 5. And despite detaining Abrego Garcia in immigration custody from August through December, the Government did not meaningfully attempt to lawfully remove him to a third country. *See* ECF No. 110 at 28–29. "For if they had wished to remove him, they certainly could have as early as August 21, 2025, to Costa Rica." *Id.* at 28. But the Government has not, and its continued "inexplicable reluctance" to do so is irreconcilable with the legitimate purpose of detention. *See id.* Removal is no more likely today than it was when the Court made these findings. So long as the Government continues to refuse to remove Abrego Garcia to Costa Rica, there are no viable removal destinations, and Abrego Garcia remains in the type of "removable-but-unremovable limbo as the aliens in *Zadvydas v. Davis*, . . . and *Clark v. Martinez*" where due process requires release. *Jama v. ICE*, 543 U.S. 335, 347 (2005).

### D.    The Court Retains Jurisdiction.

The Government again advances jurisdictional objections to judicial review. *See* ECF No. 115 at 9–10. This Court has considered and rejected many of these arguments before, and nothing in the Government's latest submission warrants a different conclusion. *See* ECF 110 at 15–17; *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 510–15 (D. Md. 2025) ("*Abrego Garcia I*"); *Abrego*

8

*Garcia II*, 2025 WL 2062203, at *6–7. The Court's *Zadvydas* decision still stands, as does its jurisdiction to hear challenges to unlawful immigration detention. *See* ECF No. 110 at 16 n.13 ("The Court similarly retains jurisdiction over Petitioner's *Zadvydas* claim.").

Section 1226(e) does not strip this Court of jurisdiction. That provision is inapplicable because there are no ongoing removal proceedings. *See* Section I.C, above. And even where § 1226(e) applies, it "does not limit habeas jurisdiction over questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *accord Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). Abrego Garcia's habeas petition and request for injunctive relief present precisely such a question: whether the Government has lawful authority to detain him. *See* ECF No. 110 at 16–17. Although § 1226(e) bars judicial review of "[t]he Attorney General's discretionary judgment," *Patel v. Garland*, 596 U.S. 328, 341–42 (2022) (emphasis omitted) (quoting 8 U.S.C. § 1226(e)), "the extent of [the Government's] authority is not a matter of discretion, *Zadvydas*, 533 U.S. at 688.

Sections 1252(a)(5) and 1252(b)(9) likewise do not bar jurisdiction any more than they did when the Court rejected these same arguments last week. Today, as then, Abrego Garcia is not challenging a final order of removal, but is instead challenging his detention (or re-detention). *See* ECF 110 at 16–17.

The Government's exhaustion argument fares no better. *See* ECF No. 115 at 9. Exhaustion is a prudential, not jurisdictional, doctrine, and no statute requires exhaustion of administrative remedies here. *See Miranda v. Garland*, 34 F.4th 338, 350–51 (4th Cir. 2022). Nor does the speculative availability of a bond hearing alter the analysis, particularly in light of the

9

Government's new policy of pretermitting such hearings.³ *See Rodriguez v. Bostock*, --- F. Supp. 3d ----, 2025 WL 2782499, at *2–5 (W.D. Wash. Sept. 30, 2025) (discussing this policy). In any event, the history of this case demonstrates that exhaustion would be futile. *See Duarte Escobar v. Perry*, --- F. Supp. 3d ---, 2025 WL 3006742, at *5 (E.D. Va. Oct. 27, 2025) (applying the futility exception to exhaustion).

## II. Abrego Garcia Will Be Irreparably Harmed Absent Injunctive Relief.

The law is unequivocal. Unlawful detention, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *accord, e.g.*, *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) ("[T]here is no question that unlawful detention causes irreparable harm, and the government's argument to the contrary is deeply troubling."). This Court has already agreed, concluding that the irreparable-harm factor is "easily met" here. ECF No. 114 at 3.

The Government does not meaningfully contest that conclusion. Its entire argument on irreparable injury consists of a single sentence asserting that "Petitioner otherwise fails to offer any compelling irreparable harm that would justify this injunction." ECF No. 115 at 12. That assertion does not engage with the controlling precedent holding that unlawful detention inflicts irreparable harm. Because the Government is likely to unlawfully detain—and thus irreparably injure—Abrego Garcia without an injunction, this factor cuts strongly in favor of injunctive relief.

---

³ Likewise, the Government's suggestion that Abrego Garcia is "always free to terminate detention by accepting a final order of removal, qualifying for voluntary departure, or . . . simply leaving the United States" is not well taken. ECF No. 115 at 7 n.3. Abrego Garcia is ready and willing to leave the United States for Costa Rica, but the Government's "steadfast refusal to remove him to Costa Rica" prevents him from doing so. ECF No. 110 at 15.

### III. Equities And The Public Interest Favor Injunctive Relief.

"When the Government is the opposing party, the balance of the equities and the public interest merge because the interest of the government is the interest of the public." *Lopez v. Noem*, 2025 WL 3496195, at *8 (D. Md. Dec. 5, 2025) (cleaned up); *see also Nken v. Holder*, 556 U.S. 418, 435 (2009). Those considerations decisively favor injunctive relief here, as this Court has already held. ECF No. 114 at 3–4. Abrego Garcia "maintains strong interest in avoiding unconstitutional detention," while the Government's interests "are adequately preserved" through release conditions." *Id.* at 3. The Order of Supervision that the Government issued to Abrego Garcia "articulates [the Government's] own conditions of release which are substantially like those imposed in the Tennessee Criminal Matter." *Id.* at 4 (citing *United States v. Abrego Garcia*, 3:25-cr-00115-1 (M.D. Tenn.) ECF No. 112). Those conditions were deemed sufficient to protect the community then. The Government offers no reason why they are insufficient now. And "[t]here is no public interest in allowing an agency to proceed with unlawful agency action." *Asylum Seeker Advocacy Project v. U.S. CIS*, --- F. Supp. 3d ----, 2025 WL 3029552, at *9 (D. Md. Oct. 30, 2025). To the contrary, "the public retains keen interest in ensuring that government agencies comply with court orders, especially those necessary to protect individual liberties." ECF No. 114 at 4.

The Government's effort to recast the equities rests largely on assertions that Abrego Garcia poses a danger to the community based on an alleged MS-13 affiliation. ECF No. 115 at 12–13. Those assertions have been repeatedly rejected. In the Tennessee criminal proceedings, Magistrate Judge Holmes concluded that "the Court cannot find from the evidence presented that Abrego's release clearly and convincingly poses an irremediable danger to other persons or to the community." *United States v. Abrego Garcia*, No. 3:25-cr-00115-1 (M.D. Tenn.), ECF No. 43 at 47. Judge Crenshaw reaffirmed that finding, concluding that "the evidence that the Government relies on to show this . . . is a far cry from showing that Abrego is such a danger to others or the

11

community." *United States v. Abrego Garcia*, No. 3:25-cr-00115 (M.D. Tenn.), ECF No. 95 at 30. Multiple courts—including this Court, the Fourth Circuit, and in Tennessee—have likewise found no evidence substantiating the Government's MS-13 allegations. *See Abrego Garcia v. Noem*, No. 8:25-cv-00951 (D. Md. Apr. 6, 2025), ECF No. 31 at 20–21; *Abrego Garcia v. Noem*, 2025 WL 1021113, at *5 (4th Cir. Apr. 7, 2025) (Thacker, J., with King, J., concurring); *United States v. Abrego Garcia*, No. 3:25-cr-00115-1 (M.D. Tenn.), ECF No. 95 at 32 ("Based on the record before it, for the Court to find that Abrego is member of or in affiliation with MS-13, it would have to make so many inferences from the Government's proffered evidence in its favor that such conclusion would border on fanciful."). Where multiple courts have consistently rejected claims of dangerousness and gang affiliation, such assertions cannot tip the equitable scales.

Nor is the Government aided by its contention that Abrego Garcia may rely on the ordinary processes of immigration adjudication. *See* ECF No. 115 at 13. This Court has already recognized that the proceedings in this case have been "highly irregular" and that the "presumption of regularity" has been "destroyed." Transcript of Evidentiary Hearing at 11:7–10, *Abrego Garcia v. Noem*, No. 8:25-cv-00951 (D. Md. July 11, 2025); *see also* Transcript of Evidentiary Hearing at 135:4–5, 10–12, No. 8:25-cv-02780 (D. Md. Nov. 20, 2025) ("if it was done outside of the normal procedure, that's a real problem . . . . And the next thing you know, he's got an IJ that's not familiar with the original case who's deciding the motion to reopen. That seems odd to me."). That conclusion is borne out by the record, which establishes, among other things, (1) an "illegal" removal to El Salvador, *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025); (2) repeated "defi[ance of] this Court's orders," ECF No. 110 at 13; (3) a criminal prosecution under scrutiny for being vindictive and selective, *see id.* at 5; (4) the Government "affirmatively misl[eading] the tribunal," *id.* at 29; and (5) immigration detention that "cannot be squared with the 'basic purpose'

12

of holding [Abrego Garcia] to effectuate removal, *id.* at 28 (quoting *Zadvydas*, 533 U.S. at 697). Against that backdrop, the Government's suggestion that it may now finally follow ordinary procedures does not cut against injunctive relief here.

## Conclusion

For these reasons, absent prompt removal to Costa Rica, the Court should convert the temporary restraining order to a preliminary injunction that enjoins the Government from detaining Abrego Garcia until and unless it can do so to timely effectuate lawful removal. Petitioner respectfully suggests that the Court order the parties to each submit a Proposed Order setting forth the conditions under which Abrego Garcia may be re-detained, so the Court can further clarify the rights and obligations of the parties and thereby avoid further emergency motions practice.

Respectfully Submitted,

Dated: December 17, 2025

*/s/ Jonathan G. Cooper*

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
Rina Gandhi
4103 Chain Bridge Road, Suite 300
Fairfax, VA 22030
(703) 352-2399
ssandoval@murrayosorio.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton* (*pro hac vice*)
Nithya Pathalam** (*pro hac vice*)
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
nithyapathalam@quinnemanuel.com
**admitted in Texas; not admitted in D.C.*
*Supervised by attorney admitted in D.C.*
***admitted in New York; not admitted in D.C.*
*Supervised by attorney admitted in D.C.*

Andrew J. Rossman (*pro hac vice*)
Sascha N. Rand (*pro hac vice*)
Courtney Daukas (*pro hac vice*)
Morgan L. Anastasio (*pro hac vice*)
295 Fifth Avenue, 9th Floor
New York, NY 10016

13

(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
courtneydaukas@quinnemanuel.com
morgananastasio@quinnemanuel.com

*Counsel for Petitioner*

14