IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

_____
                                )
KILMAR ARMANDO ABREGO GARCIA,   )
                                )
            Petitioner,         )
                                )
     v.                         )   Case No. 8:25-cv-02780-PX
                                )
SECRETARY KRISTI NOEM, et al.,  )
                                )
            Respondents.        )
_____)

                                   Greenbelt, Maryland
                                   December 22, 2025
                                   1:00 p.m.


                  MOTION HEARING
        BEFORE THE HONORABLE PAULA XINIS
           United States District Judge


              A P P E A R A N C E S

ON BEHALF OF THE PETITIONER:

    QUINN EMANUEL URQUHART & SULLIVAN LLP
    1300 I Street, N.W., Suite 900
    Washington, DC  20005
    BY:  JONATHAN GORDON COOPER, ESQUIRE
         (202) 538-8000
         jonathancooper@quinnemanuel.com
    BY:  OLIVIA G. HORTON, ESQUIRE
         (713) 898-9647
         oliviahorton@quinnemanuel.com
    BY:  NITHYA PATHALAM, ESQUIRE
         (508) 344-1443
         nithyapathalam@quinnemanuel.com

                  (Continued)
             Patricia Klepp, RMR
        Federal Official Court Reporter
        6500 Cherrywood Lane, Suite 200
          Greenbelt, Maryland  20770
               (301) 344-3228


Produced by Stenographic Computer-Aided Transcription

A P P E A R A N C E S (Cont'd)

ON BEHALF OF THE PETITIONER:   (Continued)

QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue
New York, New York  10016
BY:  SASCHA N. RAND, ESQUIRE
     (212) 849-7175
     sascharand@quinnemanuel.com
BY:  COURTNEY L. DAUKAS, ESQUIRE
     (212) 849-7000
     courtneydaukas@quinnemanuel.com
BY:  ROEY GOLDSTEIN, ESQUIRE
     (212) 849-7045
     roeygoldstein@quinnemanuel.com
BY:  MORGAN L. ANASTASIO, ESQUIRE
     (212) 849-7340
     morgananastasio@quinnemanuel.com

MURRAY OSORIO PLLC
4103 Chain Bridge Road, Suite 300
Fairfax, Virginia  22030
BY:  SIMON Y. SANDOVAL-MOSHENBERG, ESQUIRE
     (434) 218-9376
     ssandoval@murrayosorio.com

ON BEHALF OF THE RESPONDENTS:

UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION -
  Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C.  20009
BY:  ERNESTO H. MOLINA, JR, ESQUIRE
     (202) 616-9344
     ernesto.h.molina@usdoj.gov

ALSO PRESENT:

KILMAR ARMANDO ABREGO GARCIA

P R O C E E D I N G S

(Call to order of the Court.)

THE COURTROOM DEPUTY:  All rise.  The United States District Court for the District of Maryland is now in session, the Honorable Paula Xinis presiding.

THE COURT:  Good morning, everyone.

(All responding:  Good morning, Your Honor.)

THE COURT:  Good afternoon, not morning.

Good to see you all.  Have a seat.

Mr. Ulander.

THE COURTROOM DEPUTY:  Yes, Your Honor.

The matter now pending before the Court is Civil Action No. PX 25-2780, Kilmar Armando Abrego Garcia v. Secretary Kristi Noem, et al.  The matter comes before this Court for a motions hearing.

Counsel, please identify yourselves for the record.

MR. COOPER:  Good afternoon, Your Honor.

Jonathan Cooper for Petitioner.

MR. RAND:  Good afternoon, Your Honor.

Sascha Rand for Petitioner.

MR. SANDOVAL-MOSHENBERG:  Good afternoon, Your Honor.

Simon Sandoval-Moshenberg for Petitioner.

THE PETITIONER:  Good afternoon.

My name is Kilmar Abrego Garcia.

MS. DAUKAS:  Good afternoon, Your Honor.

Courtney Daukas for Petitioner.

MR. GOLDSTEIN:  Good afternoon, Your Honor.

Roey Goldstein for Petitioner.

MS. ANASTASIO:  Good afternoon, Your Honor.

Morgan Anastasio for Petitioner.

MS. PATHALAM:  Good afternoon, Your Honor.

Nithaya Pathalam for Petitioner.

MS. HORTON:  Good afternoon, Your Honor.

Olivia Horton, also for Petitioner.

THE COURT:  All right, thank you all.

Mr. Abrego Garcia, you almost have a baseball team representing you today.

Okay.

MR. MOLINA:  Good afternoon, Your Honor.

Ernesto Molina for the respondents.

THE COURT:  Okay.  Mr. Molina, anyone joining you today?

MR. MOLINA:  Only listening online, Your Honor.

THE COURT:  Great.  Who do we have on phone right now?

MR. MOLINA:  I believe we have Drew Ensign online, or listening on the phone.

THE COURT:  Okay.

MR. MOLINA:  We may have John Guynn listening on the phone, and we may have Shane Young listening on.

THE COURT:  Okay, great.

MR. COOPER:  And Your Honor, Andy Rossman is also listening in for Petitioner.

THE COURT:  Okay, great, thank you.  Just give me one second.

All right, Counsel, just to catch everyone up really quickly as to why we're here, last week, on December 11, I issued my memorandum opinion and order granting Mr. Abrego Garcia's habeas petition and ordering his release. That evening, I believe it was, at about 5:00, Mr. Abrego Garcia was released but given a notice to appear in the Baltimore ICE field office the next morning.  This was déjà vu all over again in terms of the last time Mr. Abrego Garcia was ordered to report.  He was arrested -- he was brought into custody I should say, and there was concern on the part of the petitioner that that may happen again.  So at 12:30 in the -- the following morning, we received an emergency TRO.

Mr. Molina, you received that, right, by ECF?

MR. MOLINA:  That is correct, Your Honor.

THE COURT:  Okay.  And by the morning, because once a person is arrested, you can't un-ring that bell very easily, and for the reasons that I stated in my order of that morning, I granted the TRO pending further hearing and briefing on the issue and set an expedited briefing schedule and a hearing, and that's why we're here today.

I have received everyone's responses, and I'm ready to

hear from you all.  I'll start with the petitioner and then turn to you, Mr. Molina.

MR. COOPER:  Thank you, Your Honor.  May it please the Court.

Eleven days ago, this Court granted Petitioner Kilmar Abrego Garcia's habeas petition.  It found in that order that the government lacked both an order of removal as well as any lawful authority to keep him in immigration custody, and so it ordered his immediate release from ICE custody.  We are grateful that because of this Court's habeas order and because of the prior orders of this Court, the Fourth Circuit, and the Supreme Court all upholding due process and the rule of law, that Mr. Abrego Garcia's here in this courtroom for the first time since his extraordinary ordeal began nine months ago.

THE COURT:  So Mr. Cooper, a lot has happened in a very short period of time since that release decision.  If I understand it right based on your filings, an immigration judge later that evening issued a nunc pro tunc order to correct a scrivener's error, where now the immigration judge is saying there is a final order of removal -- or there is an order of removal along with the withholding, and it is retroactive to October 10 of 2019.  And then subsequent to that, the BIA dismissed your appeal from the denial of the motion to reopen.

That's a mouthful, but I want to understand from the petitioner's perspective where that places you --

Mr. Abrego Garcia in terms of his immigration proceedings.  And the reason why I ask is not because I'm sticking my nose in it, as the legal term would go, but because what happens next in terms of the authority to detain is all about the statute, and it's all about what happens next in immigration court.  I can't call this unless I know the legal basis, if any, to redetain Mr. Abrego Garcia.  So I've got to talk with you all very specifically about what happens next.

Can I get your perspective first.

MR. COOPER:  Certainly, Your Honor, and some of the questions you just raised, we also have questions for the government on those issues, and let me get to that, but yes, Your Honor's recitation is correct to the best of our knowledge that Mr. Abrego Garcia was released around 4:45 p.m. on December 11th.  And at the time he was released, he was handed an order of supervision; that's ECF No. 112-1.

THE COURT:  Right.

MR. COOPER:  Now, this is actually a quite important point that I -- it's a little technical, but I want to draw Your Honor's attention to it.  If you look at the first page of that exhibit in the top left corner, it says that Mr. Abrego Garcia has a "Final Order of Removal" dated October 10, 2019, and the form, as you can see in the bottom left-hand corner of that document, Your Honor, is an ICE form I-220B.  Now, that form can only be issued, my understanding is,

for someone with a final order of removal, who is operating under 8 U.S.C. 1231.

THE COURT:  Right.

MR. COOPER:  And so the government, by giving him that order, has elected to say that there is a final order of removal that Mr. Abrego Garcia couldn't here then be detained under -- could be detained with respect to -- under 1231.  And in that context, our submission, Your Honor, is that under 1231 in Zadvydas, the Supreme Court's decision, further detention here would be impermissible, primarily for the reasons Your Honor already gave in the habeas petition ruling you issued 11 days ago.

THE COURT:  Right.  Then the language says that. Because the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large, which is -- I take it as the codification of Zadvydas, essentially.

MR. COOPER:  And we would have no issue with that interpretation, Your Honor.

THE COURT:  Okay.

MR. COOPER:  Now, what frankly leaves us scratching our head a bit, Your Honor, is the government's submissions -- after our TRO motion and Your Honor's TRO order, the government submitted its TRO response, and then also, the parties issued or submitted a joint status report on December 18th, and in those

filings, the government indicated, we believe, both that it intends to detain and remove Mr. Abrego Garcia but also to urge that continued Court protection is unnecessary because he has been released and "the potential of his removal" is supposedly "far from imminent."

Now, what is the Government's current plan for Mr. Abrego Garcia, whether it intends to try to detain him again, whether it intends to try to remove him again and, if so, to where is completely unclear to us.

THE COURT:  Have you asked?

MR. COOPER:  Not beyond the joint submission, Your Honor.

THE COURT:  Okay.

MR. COOPER:  We have not gotten -- I believe -- I don't think we've -- with respect to the other side, we have not put that question in that pointed a fashion to the government.

You know, nothing was stated in the joint status report.  That was the most recent I believe communications between the parties.

Now, one other thing I would like to point out, Your Honor, is that in the new purported final order of removal that the government relies on -- and this is ECF No. 112-2 at page 5 -- it says only that Mr. Abrego Garcia is ordered to be removed to El Salvador, nowhere else, and then it goes on to say that the order of withholding of removal is also granted.

And so under the new order of removal that the government's relying on, the only place it could in theory remove him to is El Salvador, which it also says it can't remove him to, so there's nowhere that he could be removed to under that order of removal.

Your Honor in your habeas ruling 11 days ago drew on Fourth Circuit precedent to say that an order of removal must explicitly state the country to which a person may be removed or any alternative countries if there's to be some sort of third country removal.  There were no countries listed other than El Salvador in this new purported order of removal.

THE COURT:  But more to the point, the government is now saying, It's not final, and because it's not final, 1231 doesn't apply, so now what?

MR. COOPER:  Right, Your Honor.  So our primary submission would be, the government has elected to treat this as a final order of removal, and Your Honor does not need to delve into reviewing that order, it can take the government at its word, and therefore, 1231 and Zadvydas apply.

As a fallback, Your Honor, if Your Honor was to determine that 1231 doesn't apply here, we would submit that under an as-applied due process challenge, that detention would continue to be impermissible, for the exact same reasons that Zadvydas, the Supreme Court decided, inferring and was animated by due process principles that removal in the immigration

context is supposed to be for the purpose of effectuating a timely removal and any removal proceedings necessary thereto, whereas here, as Your Honor found in the habeas ruling, any detention so far of Mr. Abrego Garcia, at least in this year, has not been for that purpose; it's been for other purposes.

And we would submit, Your Honor, that further detention at this point would be either punitive or at least not for any purpose of effectuating a timely removal.  Given that, we submit on the facts of the record before you, there is no place that the government could lawfully remove Mr. Abrego Garcia to at this point other than Costa Rica.

THE COURT:  So let me ask you -- again, not sticking my nose in it, just trying to figure out what happens next -- do you read the BIA dismissal as implicitly saying, what the IJ did puts you all back at square one?  Because if they're dismissing the motion to reopen as moot, that at least suggests that -- and they say that the IJ's decision from October 10, 2019, if I read it right, is not -- how did they put it; let's get the exact language.

Well, let me, while I pull it up -- is it your view that this -- as the -- because it says, It is clear, based on the record before us and the current posture of this case that the immigration judge's October 10, 2019, decision is not final and, in fact, has been amended by the immigration judge's December 11, 2025 order.

And that's part of why they're not -- the BIA did not extend briefing and dismissed as moot.  Do you see this as you're starting over in immigration court on the question of removal as well as the question -- well, of all the questions, basically, why you asked to reopen in the first place?

MR. COOPER:  So respectfully, Your Honor, I don't believe we view it as completely starting over at square one. We don't think you can unwind the clock of all the proceedings that have come to date, and in particular, for example, the order granting withholding of removal is not gone; it remains firmly intact.

I agree, there are significant questions about what the BIA's order means, and I do believe those will have to be addressed if anywhere in -- either before the immigration judge, or the BIA, or the Fourth Circuit on an appeal.  And both the BIA's order denying as moot the motion to reopen, my understanding is, that would be appealable up to the Fourth Circuit, and if, you know, the BIA order was followed and further proceedings potentially needed to happen before the immigration judge or on some new appeal to the BIA from the IJ's order, then those would be the venues to sort out those issues.

THE COURT:  And to put a finer point on it so you know and Mr. Molina knows, the reason why I find this to be relevant is because the response at best gives me a tutorial on 1225, 1226, but it doesn't tell me whether in fact anybody's position

is currently, Mr. Abrego Garcia can be detained for removal proceedings. Proceedings. It seems to me like these questions are squarely relevant to whether the fact remains that the respondents can pursue removal proceedings.

This is an extremely irregular and extraordinary situation, and is it a situation where I've ruled on 1231 and there's no factual basis to believe that proceedings will start over again.

Do you see what I'm saying?

MR. COOPER: Absolutely, Your Honor. As we put in our papers, I believe Your Honor has said before, there would need to have been a motion to reopen proceedings for there to be reopening proceedings, and that -- well, frankly, Petitioner did file one and it was denied, so it certainly is surprising to us for the government to now suggest that there are removal proceedings ongoing, when the IJ denied it and the BIA dismissed an appeal of that denial.

And so yes, I think we would agree, Your Honor, there are not currently ongoing removal proceedings for which Mr. Abrego Garcia could be detained.

THE COURT: Because the basic purpose of detention is removal.

MR. COOPER: Absolutely.

THE COURT: So I'm trying to figure out --

MR. COOPER: And not just removal but to effectuate

timely removal.  I think that nuance is especially important here, Your Honor.

THE COURT:  Okay.

MR. COOPER:  And so yes, Your Honor, we would submit that there wouldn't be ongoing removal proceedings that could justify detention under those provisions, 1225 and 1226, but even if there were, we would also maintain, Your Honor, that due process under these unique circumstances and this unique factual record makes clear that there is no place to which Mr. Abrego Garcia can lawfully be removed at this time by the government other than Costa Rica, given the record that the government has presented to you at this point.

And if -- and we've said this to you before, we maintain it; if the government were to say today, we will remove Mr. Abrego Garcia to Costa Rica, he's ready and prepared to do that this afternoon and tomorrow.

THE COURT:  Well, and that has legal relevance all depending on what statutory basis there is an election to move forward, if any.

MR. COOPER:  Correct.

THE COURT:  I mean, that's -- that's the problem I'm having, is, I don't know what bucket to put any of this in.

MR. COOPER:  And frankly, as I said before, we are also confused and a little befuddled by the government's positions here, and it's changed its tack several times.

Those are the main submissions that I have, Your Honor.  We've put obviously a lot in our papers as well. If Your Honor has further questions, I'm happy to go through our positions.

THE COURT:  I suppose the only other thing that in the sort of wee hours of December 12th, if I didn't make clear, I want your view on it because if I continue -- you know, I'm likely to continue the TRO at a minimum until I can rule, until I can actually come up with a ruling, because this is not easy, and I'm going to move as quickly as I can, but I want to clarify that obviously, my injunction does not reach any violation of release orders.  In other words, Mr. Abrego Garcia has to comply with not only the Tennessee criminal matter release conditions but also DHS'.  Do you agree with that?

MR. COOPER:  Yes, Your Honor, and Mr. Abrego Garcia has done so.  He, for example, showed up at the 8:00 a.m. session on the day after the habeas order, as it was required.

THE COURT:  Yes, right.

MR. COOPER:  And yes, he is complying with both the criminal court custody -- or excuse me, supervised release provisions as well as the order of supervision from ICE.

THE COURT:  Right.  And I think I'll just -- at a minimum, I'm going to make that express so that between now and when I issue my order on whether to convert -- and so we're clear, convert the temporary restraining order into a

preliminary injunction or deny the TRO, you know, just let it lapse -- I'm going to keep it in place until I can make that decision, and I'll move as quickly as I can.

MR. COOPER:  Yes, Your Honor.  And two -- and we -- first, we fully agree it should be converted from a TRO to preliminary injunction as a trial matter, and I think the relief we would request from this Court is that it should convert the TRO to a preliminary injunction and both it and the Court's August 27th preliminary injunction should stay in place, namely, that the Court should continue to prohibit Mr. Abrego Garcia's detention in immigration custody and removal from this country until the government can show that it has lawful authority consistent with the INA and due process to detain and remove him.

So I believe that would include if, for example, there was a violation of a supervised release provision, that may be a lawful reason to detain, but -- there's no such thing here, but I believe that would be encompassed within the relief we would propose, Your Honor.

THE COURT:  I think you had also in your status report -- maybe -- it was either your status report or your response to the TRO suggested that, one, you need supplemental briefing on ECF 72, which is the motion to dissolve the injunction for -- prohibiting Mr. Abrego Garcia's removal from the continental United States.  And then, I think you were --

also suggested that if I'm inclined to convert this to a preliminary injunction, that you work together to propose an order that really defines the contours of it, because things in this situation may change.

Am I kind of getting that right?

MR. COOPER:  That's exactly right, Your Honor.

Yes, if Your Honor was considering at this point dissolving that August 27 preliminary injunction, we would request supplemental briefing on that issue, and then, yes, with respect to converting the current TRO into a preliminary injunction, we would be -- we agree it would make sense to try to exchange drafts with the government to see if we can either agree on a proposed order or submit competing ones. But the relief we seek would be of the form I just laid out, namely, to prevent detention and removal until there's -- the government gets their lawful authority and basis to do so.

THE COURT:  Okay, all right.  Thank you, Mr. Cooper.

MR. COOPER:  Thank you, Your Honor.

MR. MOLINA:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MR. MOLINA:  I guess we should sort of address many things the Court has brought up, and I think one of the key aspects that I do need to indulge -- or ask the Court to indulge me on is, sort giving you an explanation as to the significance of what the Board of Immigration Appeals has done, because

technically, you know, every party here is under agreement that there is no final order of removal.

The Court found as much on December 11th in --

THE COURT:  Right, I found no order of removal, and then, the IJ -- and I assume -- I don't know -- I don't know whether the respondents believe this, but -- because we'll see, but the IJ said -- how -- I guess, once DHS gave him the order?

MR. MOLINA:  That is correct.

THE COURT:  Did Petitioner know you were -- that DHS was doing this?

MR. MOLINA:  I have no information that DHS had informed the petitioner of that.

THE COURT:  Okay.  So we'll get back to the term ex parte in a moment, but -- so that was given to the IJ, and the IJ then ruled that there -- based on my belief, that there is no final order of removal, whatever that means, he'll issue one; it's just not final yet.

Okay.  Am I getting that right?

MR. MOLINA:  That is correct.

THE COURT:  Okay.  And then, the BIA, based on that decision, dismissed the appeal.  What do you want to tell me about the significance of the BIA's dismissal?

MR. MOLINA:  Well, recall that the Board of Immigration Appeals is sort of a superior court to the immigration judge --

THE COURT:  Right.

MR. MOLINA:  -- and represents sort of the final order of the attorney general, save for the attorney general herself.

So when the Board of Immigration Appeals reviewed the case and notes that there is an order of removal but it is not yet final, that represents the last order of the Department of Justice and the government on that issue.

Now, why is the decision not final?  Well, for some obvious reasons.  First, by regulation, when an immigration judge's decision becomes final is dictated by 8 CFR 1003.39, and it's after the immigration judge issues the decision and either the party waives or the time to take an appeal has expired.  And that's true of even regular rule proceedings.

THE COURT:  Well, let me ask you, if the order's not final and the appeal is dismissed, it's now back in the IJ, can you -- either of you open -- move to reopen the proceedings and start over?

MR. MOLINA:  Actually, Your Honor, it's not back before the IJ; the IJ has now concluded everything.  They are -- we are now in an appeal period, where the petitioner has 30 days from the date of the immigration judge's decision to take an appeal.

THE COURT:  Okay.  So your position, just so I understand it, is that neither you, neither DHS nor petitioner can move to reopen the removal proceedings.

MR. MOLINA:  That is actually incorrect, Your Honor.

An immigration judge -- parties are always free to file a motion to reopen before the immigration judge.

THE COURT:  And they have 30 days --

MR. MOLINA:  Yeah.

THE COURT:  -- if the order is nonfinal, right?

MR. MOLINA:  Well, actually, for a motion to reopen, Your Honor, the time period is actually 90 days.

THE COURT:  90 days, okay.

MR. MOLINA:  The party has 90 days.  For a motion to reconsider, it's 30 days, just to bear that in mind.

THE COURT:  Okay.  So -- and the reason why I'm asking this is, I'm trying to get to the bottom of whether there are going to be any removal proceedings.

MR. MOLINA:  Well, the answer is, we are actually still in those removal proceedings, Your Honor.  While the immigration judge did enter that last ministerial part of entering the final order of removal to El Salvador --

THE COURT:  Okay.

MR. MOLINA:  -- the statute and the regulations contemplate that the appeal to the Board of Immigration Appeals continues to constitute a part of those removal proceedings.

THE COURT:  Let me be more specific, since this is the language of the Fourth Circuit.

Is there going to be a removal hearing?

MR. MOLINA:  At this juncture, no, Your Honor, but --

THE COURT:  Okay.

MR. MOLINA:  -- the proceedings are not yet final.

THE COURT:  That's fine, but what is your authority, then, to detain Mr. Abrego Garcia if there is no removal hearing in process, if this is just now a matter of a very strange procedural posture and an appeal?

MR. MOLINA:  Sure, Your Honor.  Well, bear in mind, the Immigration Nationality Act has a comprehensive detention scheme.  There is no period during which an alien cannot be detained under the appropriate circumstances.

Now, in Guzman Chavez, the Supreme Court looked at the interplay of Section 1226, which is pre-final order of detention, and 1231, which is post-order of detention.

THE COURT:  And which one are you -- here's the thing though.  As a matter of fact -- now we're going back to the facts -- the only fact I have before me is that your officer, your deportation officer, issued a notice -- an order of supervision and elected that this is a final order, it's a 1231 order, it's -- that's my shorthand for what it means, a 220B order in this context, okay?

You have not elected any other provision.  You haven't told me what you're going to do next.  The memorandum that you filed, while very helpful to an immigration acolyte, not telling me anything about what respondents will do with regard to

Mr. Abrego Garcia.  So how can I make a considered judgment, if there's -- the only thing in the record is a 1231 order of supervision, and you've put nothing else before me?

MR. MOLINA:  Certainly, Your Honor.

First, I would indicate that the document at issue, the one that accompanies ECF 112-1, it's Exhibit 1 --

THE COURT:  Yeah, yeah.

MR. MOLINA:  -- is an order of supervision.  It's merely an order of release.  It's not an order of detention, it is not seizure, it's not --

THE COURT:  But it's an order of release post-final order of removal.

MR. MOLINA:  It indicates that, Your Honor, but again --

THE COURT:  No, it is, according to your own regulations, your own website, which you tell the public, there's an I-220A, right, and that's pre-order of removal, and then there's a 220B.  You elected this form.  I'm taking you at your word.

MR. MOLINA:  You can, Your Honor.

THE COURT:  Okay.

MR. MOLINA:  But then, realize it's a sequence of events.

THE COURT:  Yeah.  So now, what are you going to elect?  What will be -- if I lift the -- let's do a

hypothetical.  If I lift the TRO today, what will you do next?  What will the arrest warrant be for?  What will the notice to appear be for?

MR. MOLINA:  Right.  I'll answer that directly, Your Honor.

THE COURT:  Great.

MR. MOLINA:  The answer is, detention would be under either 1225 or 1226.  There's an interplay between those two sections.  I'll remind the Court that Mr. Abrego Garcia was held pursuant to 1226 before his final -- before the October 10th --

THE COURT:  Right.

MR. MOLINA:  So he would at a minimum be placed under 1226, subsection (a).

THE COURT:  Can you tell me, though -- you can't tell me (a) versus (c) versus 1225(b)?

MR. MOLINA:  Well, it would be 1226(a), Your Honor.

THE COURT:  You're saying that as a matter of fact.

MR. MOLINA:  As a matter of fact, he is subject to, at a minimum, 1226(a).  He does not appear, under anything that I see, to be subject to 1226(c), which is the mandatory detention provision --

THE COURT:  Correct.

MR. COOPER:  -- which means, just as before, he's going to have the opportunity to pursue bond before an immigration judge.

THE COURT:  Will he?  Because -- are you -- you're familiar with the country's litigation on this issue, right?

MR. MOLINA:  Yes, I am.

THE COURT:  So are you also saying today -- and I'm likely going to ask you to put this in writing, but are you also saying today he's a member of the Bautista class?

See, this gets complicated, because you have to elect for me to be able to do anything.

MR. MOLINA:  Yeah, I understand, Your Honor.

THE COURT:  Okay.

MR. MOLINA:  And right now, the Bautista class is in a little bit of a state of flux.  I'm reluctant to give an answer at this juncture, but we can provide further briefing on that, the reason being is, the Bautista class, while issued, and there is an injunction, and you know, while -- and that may, you know, preclude the Court needing to take action, et cetera.  We -- I certainly appreciate that.  We'll want to look at the requirements to that, because there are warnings by courts that when there's a nationwide injunction that's issued, courts need to proceed with a bit of caution.

THE COURT:  Right.  And that many of our -- my colleagues before that decision issued were ordering bond hearings or release, okay, different procedural posture.  Mr. Garcia is out.  So what I'm trying to do is prevent a third habeas.  I want us to get to the bottom of what the respondent's

position is so that I know how to move from there.

MR. MOLINA:  Certainly, Your Honor, but it would be premature to do so, because again, the agency has not elected to act against Abrego Martinez [sic] at this juncture.  He is under an order of supervision.

THE COURT:  Okay.  Hold on, hold on, let's slow down. Abrego Garcia, Mr. Abrego Garcia.

MR. MOLINA:  That is correct.

THE COURT:  He's under an order of supervision.

MR. MOLINA:  That is correct.

THE COURT:  You're saying, at this juncture, you haven't decided if you would arrest him and take him into detention under 1226(a)?

MR. MOLINA:  No such intention has been communicated to me, Your Honor.

THE COURT:  Well, then, this is -- then, no harm, no foul; I'll just keep the order in place until you decide and you tell me what the decision is, and then we'll go from there, because it's not -- here's the thing.  I've got a record right now, because this is -- this is, in some ways, a court of fact, right, in many ways, on the first fact, and the only fact I have is 112-1, and that tells Mr. Abrego Garcia, on October 10, 2019, you were ordered, date of final order, removed pursuant to proceedings commenced on or after April 1, 1997.  And then, it goes on to give what I'm calling the Zadvydas language, like, we

didn't remove you during the removal period, so you're ordered to be on supervision.

If you tell me that that's what you're standing by and you're -- then I have to decide whether what I said in the TRO opinion stands and this is squarely Zadvydas and we're going to go with that, or you can tell me, no, Judge, things have changed, we are prepared to issue the following arrest warrant, on the following basis, and then I -- Petitioners will respond quickly, and I'll respond to that.

And the answer will be very different, I would imagine, all depending on what you elect to do.  If you're telling me you haven't made a decision yet, then why am I dissolving the injunction -- or the TRO?

MR. MOLINA:  You're dissolving the TRO because the case has -- it has essentially reached a different posture that's not an issue before the Court.  The habeas petition --

THE COURT:  Well, it's not an issue before the Court because you choose not to make it one.  In other words, again, the only record I have is 1231 before me.  If you want to put the order in front of me that says -- or the arrest warrant, right, because that's how you would do it?

MR. MOLINA:  It would be -- but -- yes, there has to be an arrest warrant, Your Honor, under 1226(a); it's by warrant and arrest.

THE COURT:  Okay.  So if -- say, just hypothetically,

I say, you know, if that's what y'all wish to do and you're going to do it, then just submit it to me by Friday, and if I have it, then I'll know it's 1226(a).  We all know the developed litigation around that.  Petitioners can respond, and then I can issue a decision based on that, which then it streamlines everything, and it makes it -- it makes it ripe.

See, this was the problem I had with the midnight filing that you didn't respond to, is, it sounded to me like you weren't going to detain Mr. Abrego, but nobody responded, and he was walking up the steps at risk of getting rearrested.  So that's why, like, several days later, I'm just asking you what basically you're going to do, and if you're going to do nothing, then why should I lift it?  So that he can get arrested in the middle of the night?  Or why don't we just put it in front of me and let's keep this moving.

MR. MOLINA:  Well, because the habeas course has really run its course, Your Honor.  The Court has ended the unlawful executive detention, and if the agency is going to elect at some future point to invoke an appropriate basis for detention, which is its prerogative, and that is a discretionary matter that is actually not subject to judicial review --

THE COURT:  I completely agree with you.

MR. MOLINA:  -- it's not for the Court to say, put up now, so I can -- so the Court will know whether to go further.

THE COURT:  Well, but what do you say to the fact that

he was deported -- removed once to the very country he wasn't supposed to be removed to, and placed in CECOT for three months, and then he came back, and if you're really giving true faith to my order, was held for three months without an order of removal even in existence.

Like, if we're going to just -- you can debate it and appeal it to the Fourth Circuit, right, but if we take that factual predicate as it is, now you're saying the third time, No, trust us on this one; this order is going to be correct. And I'm saying, you -- I've given you that benefit, but you have to show me the order, you have to show me the arrest warrant, because the only one I have in the file right now is a 1231 order.  I'm happily -- I happily will consider what you say will be a lawful order, and if you're correct, it's a 1226, and I have no -- no beef with that, like I've said before, there's no constitutional question, then I'll proceed accordingly.

But the problem is, you want me to lift the TRO so that we don't know what's going to happen next.  Why should I give the respondents the benefit of that doubt in this case?

Remember the last hearing; the last hearing was extraordinary.  Like, I -- that word keeps coming up.  Like, why should I do that here?  Show your work; that's all.

MR. MOLINA:  Well, sure, Your Honor, but remember, the Court's not supposed to enter a TRO unless there is the imminent harm.  And right now, Abrego Garcia is not in detention, the

petitioner is at liberty.  The order that the Court keeps referring to is the order that says, you're at liberty to proceed, just follow these conditions, which means --

THE COURT:  But you also sent me a response, right, that is inconsistent with that.  The response was that, oh, Judge, you have nothing to worry about.  We issued an order of release.  You were right in the first paragraph of your TRO, you were correct; we have no plans of detaining him.  You could have said that.  You didn't.  You proceeded to tell me all of the statutory -- hypothetical statutory bases that you could detain Mr. Abrego.  I just want to know which one you're electing, and give it to me, and then we know.  We don't have to speculate whether it's 1231, which is what I've already decided, or if it's something else.

MR. MOLINA:  So Your Honor, if the government were to submit the document that would normally accompany a release under 1226(a), you know --

THE COURT:  Mm-hmm.

MR. MOLINA:  -- that would be -- there would be an oddity, where they couldn't order his release unless he had been arrested and detained; then they can order the conditions of release.

THE COURT:  So you're saying ... are you asking for us to discuss what would happen if, in the ordinary course, Mr. Abrego were -- the arrest warrant for 1226(a) were issued

and he went to court and he got a bond hearing and he was released on bond?

MR. MOLINA:  Right.

THE COURT:  Okay.

MR. MOLINA:  Though I do have to admit, Your Honor -- and this was one thought that has occurred to the government, and it actually may be true, which is he was --

(Laughter.)

MR. MOLINA:  Thank you much.

Your Honor, if in fact there was no final order of removal --

THE COURT:  Yep.

MR. MOLINA:  -- you'll recall that Petitioner was detained under 1226(a), with no -- you know, there was no doubt of that.  He was released what would now appear to be improvidently using the very same order of supervision the Court is now pointing out, because there was no final order of removal.  I imagine it is possible, and I can consult with my clients on this, that they can say, Oh, that order was improvidently issued, we are going to correct it, here is your release under 1226(a), and submit that.

THE COURT:  Well, if you do that, right, then that's your way, on behalf of the respondents, of saying, we view Mr. Abrego Garcia as being in 1226(a) status, and we find him -- the respondents find him to be releasable under the identical

conditions.

Am I getting it right?

MR. MOLINA:  Yes, Your Honor.

THE COURT:  Okay.  So then, that means, I can lift the injunction because -- I can lift the TRO because you're saying, you're not going to arrest him today, or -- unless he violates one of the conditions.

MR. MOLINA:  Well, that's the problem, Your Honor. You see, Mr. -- the petitioner was previously found by an immigration judge to be a danger to the community.

THE COURT:  Six years ago would -- now that you're saying -- well, then why would you issue an I-220A?

MR. MOLINA:  That's kind of the point I'm trying to bring up, Your Honor, which is, he was pretty, you know -- and that's what -- again, it may just be a matter for the discretion of the Secretary of Homeland Security, are they going to take him into detention under 1226(a) at this juncture.

THE COURT:  Correct, and that's what you have to tell me; you have to elect what you're going to do so that I can decide, oh, they're right; in this case, they have an arrest warrant, it's 1226(a), he's going to be entitled to a bond hearing, let's just get that or not, let's just get that litigated right now, quickly, because there's several -- I mean, what, 200 district judges have said, someone in Mr. Abrego Garcia's -- tell me if I'm wrong; someone in

Mr. Abrego Garcia's situation is not an applicant for an admission.  He is in the United States, and therefore, he's entitled to a bond hearing, right?  Is that --

MR. MOLINA:  There's a large number of district courts making that finding, Your Honor.

THE COURT:  Okay.  If you make that representation here, then I'll hear from the petitioner and we know what lane I'm putting this in.  I don't have to then hear from the parties about if he's taken into custody, will he get a bond hearing. And I know what you're saying is the lawful basis, right?  I don't have that right now.  The only basis I have articulated from you runs contrary to my order, so ...

MR. MOLINA:  Certainly, Your Honor.  I can imagine that the single form filled out by the officer at ERO could cause the Court confusion.  Of course, I would ... and I'm not --

THE COURT:  No, it's crystal clear to me; it's just, you don't have the lawful authority.

MR. MOLINA:  Not quite -- actually, it's sort of not quite yet -- I'm sorry; I will slow down and not talk over the Judge.  I apologize for that.

Recall that there is a sequence of events.

THE COURT:  Uh-huh.

MR. MOLINA:  The order of supervision came out first, where the Department of Homeland Security filled out that form

as it did, probably even using much of the earlier order of supervision that had been used.

THE COURT:  But wait a minute.  It was after my opinion, right?

MR. MOLINA:  Yes.  That is correct, yes.

THE COURT:  Okay.  And my opinion, which you now say everyone's being so faithful to, said, no order of removal exists.

MR. MOLINA:  That's correct.

THE COURT:  Okay.  But yet, this officer was told by somebody to issue an order of supervision that says the opposite, right?

MR. MOLINA:  Yes, Your Honor.

THE COURT:  Who told -- who told the officer to do that?  I'm just curious.

MR. MOLINA:  I think it's just a matter of processing somebody out of detention, Your Honor.

THE COURT:  So ignore the District Judge's order that says the opposite, don't come up with a way that is legally consistent with the District Judge's order, just do it anyway, even though it's contrary to the District Judge's order.

I just want to make sure I'm understanding this.

MR. MOLINA:  Well, Your Honor, I believe the focus was to release Abrego Garcia by the Court's expected deadline.

THE COURT:  Okay.

MR. MOLINA:  It may have been done in a manner that was not farsighted or didn't have the information it needed to make the determination, and the officer did the best he or she could at the time.  Events did overtake that.  The immigration judge did issue an order thereafter, and the Board of Immigration Appeals confirmed the non-finality of that decision.  I'm confident that if the director of the Baltimore ICE office were to look at this again and realized the full structure of the Court saying, there is no final order --

THE COURT:  Because this was --

MR. MOLINA:  -- the Board and the immigration --

THE COURT:  Sir, because this was such a case that was just like -- you know, it was a mushroom, it was just hiding under a rock; nobody knew about it.  Nobody thought to give this order some consideration?  I -- really, that's a very hard pill to swallow.

So here's the fact.  The fact is, it's the only order in the record.  So, it is what it is until it isn't; that's the decision that you all made to issue an order of supervision.  I had already released Mr. Abrego Garcia under the supervision of the Tennessee criminal matter, so he was under strict conditions of supervision.  You all elected this order.  I don't know why, but it's -- that's the only thing in the record right now.

So if you're saying that you're going to take future action, you will, then just give it to me, just let me know what

it is.  It could be the arrest warrant, it could be a declaration, it could be both, but I need something to say, okay, they're not just going to pick Mr. Abrego Garcia up without lawful authority.

And that's a real -- that's a real question, okay, it's not a fake question, because he was deported without lawful authority, he was held without lawful authority.  So I just need the authority.

Does that make sense to you?

MR. MOLINA:  Yes, Your Honor.

THE COURT:  Okay.  Will you be able to do that?

MR. MOLINA:  I will go to my clients, and I will let them know that they probably need to -- or that --

THE COURT:  Or I'll just decide it on the record.

MR. MOLINA:  I will speak with my clients, I will speak with my clients, Your Honor, and I will give them -- I'll properly advise them as to what they need to get done.

THE COURT:  Okay.  Well, if you wish to do that, just think about this before we leave today, what date you want, because I need a date by which I know, is the record what the record is and I'm going to decide it based on the record before me, or is there something else coming, so that I know not to close this question out until you have an opportunity to supplement.

So what I'm -- I'm thinking, because I know -- well,

I'd be -- I'm comfortable with any date you want to give me.  I was thinking Friday, but I understand it's the holidays, so if you want more time, that's fine.  But the TRO will stay in place until that date passes so I know what the record is.  So I can do it sooner, I can do it later.

Do you see what I'm saying?

MR. MOLINA:  Yes, Your Honor.

THE COURT:  Okay, all right.

I've got one final question for you.  Who -- who wrote in the memorandum that I entered the December 12 order on an ex parte basis?

MR. MOLINA:  That I don't know, who the author of that would be, because that would be incorrect.  They might --

THE COURT:  Wrong.  Everybody signed it, and it's flat wrong.  So who -- who did that?

Okay.  There's like four lawyers signed this; I want to know who -- you all read it, right, and it's wrong.

MR. MOLINA:  Right.

THE COURT:  If you signed the document and you submitted it to the Court as lawyers, as officers of the Court, you're telling the Court and the public that everything in there is right, and I'm growing beyond impatient with this happening.

So you've admitted in open court that the document said it's wrong, if it says "The Court should therefore deny petitioner's motion and immediately dissolve the TRO that it

entered on December 12 on an ex parte basis."

It's wrong, right?

MR. MOLINA:  Yes, Your Honor.

THE COURT:  Okay.  Because "ex parte" means only one side, got it, correct?

MR. MOLINA:  That is correct, Your Honor.

THE COURT:  And you got it, and the petitioner got it, at 7:00 in the morning, right?

MR. MOLINA:  Yes, Your Honor.

THE COURT:  Okay.  So, I want to know who wrote that, and I want to know why all four lawyers that were signatories to this thought that was a good idea.  And I'm striking it.

And once again, I'm making a finding that these representations, which are misrepresentations, are in bad faith.  You cannot do that, okay.  Judges take the rule of law very seriously and are faithful to giving both sides the opportunity to be heard.  You had all night to tell me why the petitioner was wrong, and you had ample opportunity afterwards.  There was a deadline.

You said 8:00.  That was your client, who said, 8:00, he had to be there.  So this was an emergency of your own making.

What I did not do was issue it ex parte, okay?

MR. MOLINA:  Yes, Your Honor.

THE COURT:  Let's be real clear.

So in the future, I'm going to say it again, be really careful what you write, make sure it's factually accurate, because it's getting to the point where we're going to have a very long hearing on the motion in Abrego 1, very long, okay?

MR. MOLINA:  Yes, Your Honor.

THE COURT:  All right.  Well, my order is going to strike that reference, because it's wrong.

Anything else before I turn back to the petitioner?

MR. MOLINA:  No, I think we've covered most of the points that the government wanted to address.

THE COURT:  Okay.  Does December 26 for any supplement work for you, or would you like another date?

MR. MOLINA:  We'll endeavor to make December 26 work, Your Honor.

THE COURT:  If you need more time, let me know.

MR. MOLINA:  Yes, Your Honor.

THE COURT:  If you -- and if not, if I don't hear from you and the 26th passes, I will work as expeditiously as I can to get the decision out as to whether I convert the TRO to a PI or dissolve it, okay?

MR. MOLINA:  Yes, Your Honor.

THE COURT:  All right, very good.  Thank you, Mr. Molina.

MR. COOPER:  Two points I'd like to make, Your Honor, and one of them I'm actually going to pass over to my cocounsel,

Mr. Sandoval-Moshenberg.

THE COURT:  Okay.

MR. COOPER:  Just the first point, briefly, responding to Mr. Molina that the habeas has run its course, I just want to put on the record that we certainly object to that for at least a couple of reasons.

One, even though Mr. Abrego Garcia is not incarcerated, he's still under an order of supervision, so he's still subject to conditions of confinement as understood in the habeas context as a result.

THE COURT:  And there's also a secondary question that I never reached, which is, if we're back, ever, in 1231 status, and now the removal to Liberia is imminent, you made secondary arguments about the March 30 memorandum, which I did not reach the jurisdictional question and I did not reach the merits, so --

MR. COOPER:  That's entirely right, Your Honor.

And I would also point to, Your Honor, there's several Supreme Court cases on the related issue of, after someone is released on habeas, does the Court lose habeas jurisdiction? The Supreme Court has repeatedly said no.  There's the Hensley v. Municipal Court of San José case, 411 U.S. I believe 345 from 1973, where in that case, there was an individual who had been released by order of Court, and the Supreme Court Justices had continued to stay that order of -- continued to stay the order

of detention, and that -- they wrote that, in that context, the stay continued, emphatically had indicated its determination to put that individual behind bars.

We submit the same is true here, and the Supreme Court said the District Court retained habeas jurisdiction there.  So we'd submit, it's -- the similar principle would apply here.

The second point I want to make -- and I want to turn it over to my colleague to address this -- is, this issue about the finality of the order, to the extent it's in dispute, that's going to lapse by I believe January 10th, because if there's no appeal of the IJ's order, then that becomes final as of Jan- -- that's the latest it could become final with an appeal --

THE COURT:  Right, right.

MR. COOPER:  -- in which case, then you're definitely in 1231 land, and Zadvydas, and all of that.

And so even accepting all of the government's arguments on their best case scenario, that's going to be a maximum of 10, 15 days' detention, for no purpose, because there's no imminent removal possible on the factual record here, and in that context, Your Honor, we would continue to submit that --

THE COURT:  But I can't -- I mean, how do I do this in terms of -- I wouldn't ask either party to tell me whether they're going to appeal this decision at this juncture, but maybe you --

MR. COOPER:  Let me turn it over to Mr. Sandoval-Moshenberg, because he's counsel in the immigration proceedings.

THE COURT:  Okay, all right.

MR. COOPER:  Thank you, Your Honor.

MR. SANDOVAL-MOSHENBERG:  Your Honor, I think that's precisely right; I don't think you need to ask either party to sort of either waive or stand on its rights.

THE COURT:  Right.

MR. SANDOVAL-MOSHENBERG:  I can't imagine why the government would appeal an order that they, you know, went to such great lengths to obtain, but come January 10th, which is a Saturday, so therefore January 12th, we're going to be on solid ground, right?  I mean ...

THE COURT:  You mean, in terms of either you're going to take the appeal or not.

MR. SANDOVAL-MOSHENBERG:  One of two things will have happened by then.  Either Mr. Abrego Garcia will have appealed to the Board of Immigration Appeals, in which case, you know, we'll be looking at a fairly long road ahead at the Board of Immigration Appeals -- they generally don't tend to decide these matters with the speed that they decided the order earlier last week -- or he will not have done so, in which case, essentially, we'll still be in the territory of, you know, an unexecuted final order, and the second half of this Court's habeas ruling,

the Zadvydas ruling.  Nothing will have changed; there will have been no relevant change in facts, and so there would be no reason to think that redetention is permissible.

THE COURT:  So is there a third option, though, which is -- and again, just for my education, that between now and that January 10 date, you actually move to reopen the proceedings, because according to the IJ, there's an order, but it's not final, so what you tried to do the first time that got denied, if what everyone says is true, that there's this order, it's nonfinal, would you put that argument before the IJ?

MR. SANDOVAL-MOSHENBERG:  I can certainly tell the Court that it's not our intention to do so at this time, right?  I mean ...

THE COURT:  And so you'll live with -- if you don't appeal it, you will be living with an order that says, Mr. Abrego Garcia is to be removed, he's ordered removed to El Salvador, and it is retroactive.  It's October 10, 2019.

MR. SANDOVAL-MOSHENBERG:  Yes, Your Honor.

I mean, the government's actions subsequent to this Court's habeas opinion has made clear that they're willing to do whatever it takes, take whatever legal position, do anything it takes for the purpose of making sure that he continues to be detained under ICE detention.

And frankly, Mr. Abrego, you know, he has a number of legal options available to him in the immigration court, to seek

asylum, to seek cancellation of removal, but given the government's professed and avowed desire to make sure that all of that happens as slowly as possible and from behind the bars of a Pennsylvania detention center, Mr. Abrego's priority at this point has not changed, right, his -- the -- you know, he came into court last time and said, he's ready and willing to go to Costa Rica tomorrow, and that remains the case.  That remains the case today.  I mean, he's sitting here right now --

THE COURT:  Is there any developments in that area?

MR. SANDOVAL-MOSHENBERG:  No, none whatsoever.  I mean, as Your Honor pointed out, the government's representations at the last hearing proved to be total fabrications.

THE COURT:  But let me just sort of pull on that thread a little bit.  If the government comes back on the 26th or whatever date that -- and they decide that they're going to issue an arrest warrant under 1226(a), then the footnote, the dueling footnotes about can't Mr. Abrego simply moot this whole thing by voluntarily removing himself and can he do that, to Costa Rica?

MR. SANDOVAL-MOSHENBERG:  Well, he's under -- no, he's under -- he's still under felony indictment in the Middle District of Tennessee, and so that's why he hasn't -- you know, were it not for that, he could have gotten on a plane yesterday, right, fly commercial, but he can't do that while he's --

THE COURT:  Well, I guess -- I'm sorry to -- you know, to show my ignorance, but could he?  I mean, is there -- if you put the indictment aside, just so I understand how this works, and you have someone who has been found in the United States, is without lawful authority, inadmissible, and that person obtains the permission of a third country, and the third country says, well, yes, we'll grant him this status, and we'll give him the papers, that person can just go?  That's the same as, we'll give you $1,000 to voluntarily remove yourself?

MR. SANDOVAL-MOSHENBERG:  Right.  I mean, that person can certainly self-execute, and it's quite common that a person will self-execute an order of removal.

THE COURT:  Okay, all right.

MR. SANDOVAL-MOSHENBERG:  And he remains willing to do that, and it's the government that's preventing him from doing so, right?  They're preventing him from doing so by means of, you know, the order of supervision, and -- I mean, he's literally in a double -- you know the expression "double bind;" he's literally in a double bind, and then he's got two ankle bracelets on him, right, one from the Middle District of Tennessee, you know, Pretrial Services, and one from ICE, right, so those are the two things that are tethering him to being here in this courtroom, to being here right now.

Were it not for those two devices, we would have flown him out to Costa Rica the day after he got released, you know,

from the detention center in Pennsylvania.

THE COURT:  So then, if it's a 1226(a) order, in the end, what it may come down to is what happens with the criminal case.  Because what you're saying is, if the criminal case -- I mean, there's a pending motion to dismiss, we don't know what's going to happen.  There's trial.  We don't know what's going to happen.  In the event of acquittal, then you're saying that voluntary departure that was mentioned in the response briefing actually could apply.

MR. SANDOVAL-MOSHENBERG:  Yeah.  I mean, Mr. Abrego is essentially begging to take the government up on that offer.  I did speak with criminal defense attorney.  It is their opinion, though, that if the government chooses to appeal any dismissal order to the Sixth Circuit --

THE COURT:  Mm-hmm, it's going to be pending, yeah.

MR. SANDOVAL-MOSHENBERG:  -- you know, the condition that probation remain in effect.

THE COURT:  Okay, all right.

So what -- what's your response to where I'm likely to go, which is, give the government the opportunity in the next few days to -- if they're going -- I've gotten a brief on all the different provisions, but tell me what provision you think applies.

MR. SANDOVAL-MOSHENBERG:  Your Honor, I think -- as Mr. Cooper said, I think the government's best argument -- and

you have to accept a lot of things before you even get to this argument, but I think the government's best argument is that they have permissible 1226 detention for another 18 or 20 days, right?

THE COURT: Mm-hmm.

MR. SANDOVAL-MOSHENBERG: And so, you know, in order to just be on solid ground, we would suggest that, you know, since the 12th is when all of this expires, that the 13th be the deadline for the parties to submit their briefing and anything else they want to submit.

THE COURT: Well, I think what I'm more inclined to do is give the government a date by which they wish to either tell me that they have no intention of detaining Mr. Abrego Garcia unless he violates his condition or they do wish to take him into custody and it's under a particular provision, and then give you an opportunity to respond in a quick fashion, because I do take seriously -- I'm not, at all, ever interested in sticking my nose where it doesn't belong, but I have to know where we're proverbially sticking it.

Like, I just don't know what the government's position is, because it can't be the order of supervision. We've already -- I've already decided that.

Do you see what I'm saying?

MR. SANDOVAL-MOSHENBERG: Yeah, we -- Your Honor, the sands are far too shifting at this point.

THE COURT:  Right, so I just -- I need to nail it down.

MR. SANDOVAL-MOSHENBERG:  Yes.

THE COURT:  And your position is, if we're getting really close to -- and maybe you can talk to the government about this.  If we're getting really close to the date by which you're going to take the appeal or not, and in which case if you don't, it's final, if you come up with an agreed-upon briefing schedule, I'm not going to -- now, let's push on that a little bit, just because I want to think through this.

If your position is, we're not going to take an appeal on this order of removal and it is in fact then retroactive to October 10 of 2019, there is my Zadvydas order, which I probably will amplify, because then it's just squarely a matter of 1231, there's no -- the first part of the opinion has been mooted, or changed, however you want to put it.  Okay.

There's still, then, the question of Liberia and the March 30 memorandum.  That argument, are you -- what's your -- where are you with that?  I mean, I have to decide that then, right, because then that's relevant.  I didn't get there because there was no final order of removal.  You couldn't remove Mr. Abrego anywhere.

MR. SANDOVAL-MOSHENBERG:  Yes, Your Honor, I think that's correct.

THE COURT:  If now, right, the posture is that there

is a final -- if there's an order, it's final, it's valid, now we have to move to the next question.

MR. SANDOVAL-MOSHENBERG:  Yes.

THE COURT:  Am I right about that?

MR. SANDOVAL-MOSHENBERG:  I think that's correct.

THE COURT:  Okay.

MR. SANDOVAL-MOSHENBERG:  And I'm -- I'm sort of -- I feel like I'm sorry to have to do this to Your Honor, right, I mean, because you know, we had sort of come up with a resolution that avoided the Court from having to do that, but unfortunately, you know, we are where we are.

THE COURT:  Yeah, yeah.  No, I understand it.  It is what it is.  I mean, we've got to get it right.

Okay.

MR. SANDOVAL-MOSHENBERG:  I mean, for what it's worth, we -- that matter is fully briefed.  I don't think --

THE COURT:  Yes, that is fully briefed.

MR. SANDOVAL-MOSHENBERG:  We're clear on that.  I don't know that we need to do another round of briefing, another hearing on that.

THE COURT:  I think that's correct.  I don't -- unless something changes factually in any regard, like real facts that change.

MR. SANDOVAL-MOSHENBERG:  Right.  I mean, there's still several African countries that they haven't tried yet, but

we don't think that that's going to move the needle one way or the other.

THE COURT:  Okay, all right.

MR. SANDOVAL-MOSHENBERG:  Thank you, Your Honor.

THE COURT:  Okay, thank you.

All right.  So Mr. Molina, do you have anything else you want to add before I ask you for the date that works for you, in terms of either supplementing, or now I know I stand on what's in the record.

MR. MOLINA:  I know that the Court just discussed whether briefing was completed, really, on some of the issues, and I do think we need to -- I should appraise the Court that of course, the final order removal that is now effective back through October 10, 2019 actually doesn't become -- it becomes administratively final order when no appeal is taken.  That may be the date that -- that 1231 actually applies to, because 1231 expressly just talks in terms of administratively final order.

THE COURT:  Well, maybe, maybe not.  I mean, you can -- you're saying you have to make that argument.

MR. MOLINA:  I'm just -- yeah, I'm just advising the Court that that issue will then crop up, and then, you know, if the government prevails upon the Court with that, there may be other issues with regard to whether the Court's -- oh, no, I think I'll stop there, Your Honor.

THE COURT:  Okay.

MR. MOLINA:  I think that's -- that's the one issue that would need to be discussed.  But other than that, I think the December 26th date should work fine.  I'll work on that immediately, and if the government needs more time, we'll certainly let the Court know.

THE COURT:  Okay, all right.

And then -- okay.  So we've got a few things going on.  If -- currently in my order, it will be that Government shall supplement the record if it chooses by the 26th.  I'm going to give -- and obviously, this isn't going to be, we can detain under 1220(a), or in the alternative, or (c), or in the alternative; like, you're going to pick a basis, right?  Because the reason why I ask is, I want to make sure I don't give Petitioners unnecessary amount of time because I know I've got to move on this.  So you're likely -- if you're going to do this at all, you're likely to tell me it's 1226(a), and that's it, right?

MR. MOLINA:  We will let the Court know what -- the basis of any detention and whether there's -- or whether there's any intent to take the individual into custody.

THE COURT:  Got it, okay.  That's great.

And that will be by the 26th.  And so by the 30th, if I can have Petitioner's response to that supplement, and then we will -- Happy New Year; we will be working, and we'll get it to you.

In light of sort of the fluidity of everything, am I -- I don't really know if it makes sense to order supplemental briefing right now on the injunction to prevent removal from the continental United States.  I mean, I don't want to burden you all to write another round of briefing as long as there's no objection that it's just going to stay in place until you all decide what's happening with this new order of removal.

MR. COOPER:  That makes sense to Petitioner, Your Honor.

MR. MOLINA:  That makes sense to the respondents.

THE COURT:  Okay.

Does it make sense to you all to have a status report due after the 30-day period of finality so that if neither of you appeal, then we know we're in one spot, and you can tell me that; if one of you appeals, then you can tell me what happens next in your view, what needs to be briefed or not briefed, or in either event.

So I was thinking -- you said the date, Mr. Sandoval-Moshenberg, is January 12th?

MR. SANDOVAL-MOSHENBERG:  Yes.  It would follow the 10th.  The 10th is a Saturday, so therefore, it's the 12th.

THE COURT:  Okay.  So how about a status due to the Court by the 14th?  So you have time to meet and confer and ...

MR. COOPER:  Agree, that's a good idea, Your Honor, yes.

THE COURT:  Okay, all right.

So I'm going to extend the current restraining order pending further submission, as I'm going to articulate in the order.  I'm going to clarify that this restraining order does not prevent DHS or, obviously, the Tennessee criminal court from exercising detention if Mr. Abrego violates any of those release conditions, that's not the purpose of the order, but that the order otherwise stays in place until I get the government's submission on the 26th, Petitioner's response, and I issue an order, okay?  It's going to stay in place until I either convert it to a PI or dissolve it.  Make sense?

MR. COOPER:  Yes.  Yes, Your Honor, and I think you could probably even cabin whatever order you wish to even more by limiting it just to prohibiting immigration detention by DHS, and you don't need to address --

THE COURT:  Right.  Right, right.

MR. COOPER:  -- criminal --

THE COURT:  But I issued -- let me ask you this, because I issued my original order releasing Mr. Abrego Garcia under the same conditions as the criminal case.

MR. COOPER:  You did.  All I'm suggesting is, I don't think Your Honor needs to prohibit any kind of detention --

THE COURT:  Any detention, got it.

MR. COOPER:  -- by --

THE COURT:  Uh-huh, I get it.

MR. COOPER:  -- criminal -- by officers enforcing criminal law as distinct from immigration law.

THE COURT:  It's -- it's just respondents in this case, got it.

MR. COOPER:  Correct.

THE COURT:  Okay.  Yep, that makes sense.

All right.  We'll work on the language.

But the order will stay in place until I either convert it to a PI or dissolve it.

Make sense?  Any objection to that?

MR. COOPER:  No, Your Honor.

MR. MOLINA:  No objection, Your Honor.

THE COURT:  Okay, all right.

Anything else that we need to discuss?  Did I miss anything?

Okay.  Anything else?

MR. COOPER:  Nothing from Petitioner, Your Honor, thank you.

MR. MOLINA:  Nothing more from the respondents, Your Honor.

THE COURT:  All right, thank you.  Have a peaceful holiday.  I appreciate your time.

THE COURTROOM DEPUTY:  All rise.  This Honorable Court now stands adjourned.

(The proceedings were adjourned at 2:07 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Patricia Klepp, Registered Merit Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 23rd day of December, 2025.


_____/s/_____
PATRICIA KLEPP, RMR
Official Court Reporter

| | | | | |
|---|---|---|---|---|
| **MR. COOPER: [40]** 3/17 5/1 6/3 7/10 7/18 8/4 8/18 8/21 9/11 9/14 10/15 12/6 13/10 13/23 13/25 14/4 14/20 14/23 15/15 15/19 16/4 17/6 17/18 23/23 38/24 39/3 39/17 40/14 41/1 41/5 51/8 51/24 52/12 52/17 52/21 52/24 53/1 53/5 53/11 53/17 | 21/13 23/8 23/10 23/13 23/16 23/19 23/20 25/13 26/23 27/3 28/14 29/17 29/25 30/14 30/21 30/24 31/17 31/21 43/17 45/2 46/3 50/16 **1231 [16]** 8/2 8/7 8/8 10/19 10/21 13/6 21/14 22/2 26/19 28/12 29/13 39/12 40/15 47/14 49/16 49/16 | **30th [1]** 50/22 **3228 [1]** 1/25 **344-1443 [1]** 1/21 **344-3228 [1]** 1/25 **345 [1]** 39/22 **4** **4103 [1]** 2/11 **411 [1]** 39/22 **434 [1]** 2/13 **4:45 p.m [1]** 7/14 | **accept [1]** 46/1 **accepting [1]** 40/16 **accompanies [1]** 22/6 **accompany [1]** 29/16 **according [2]** 22/15 42/7 **accordingly [1]** 28/16 **accurate [1]** 38/2 **acolyte [1]** 21/24 **acquittal [1]** 45/7 **act [2]** 21/9 25/4 | 36/17 37/11 37/17 38/6 38/22 40/15 40/16 41/4 43/2 44/13 45/18 45/21 46/8 46/17 49/3 49/6 50/6 50/16 51/5 51/6 51/12 52/1 52/21 53/7 53/13 53/21 53/23 **all right [4]** 36/8 50/6 52/1 53/21 |
| **MR. GOLDSTEIN: [1]** 4/2 **MR. MOLINA: [86]** **MR. RAND: [1]** 3/19 **MR. SANDOVAL-MOSHE NBERG: [25]** 3/21 41/6 41/10 41/17 42/11 42/18 43/10 43/21 44/10 44/14 45/10 45/16 45/24 46/6 46/24 47/3 47/23 48/3 48/5 48/7 48/15 48/18 48/24 49/4 51/20 | **1231 doesn't [1]** 10/14 **1231 order [1]** 21/20 **12:30 [1]** 5/15 **12th [5]** 15/6 41/13 46/8 51/19 51/21 **1300 [1]** 1/16 **13th [1]** 46/8 **1443 [1]** 1/21 **14th [1]** 51/23 **15 [1]** 40/18 **18 [1]** 46/3 **18th [1]** 8/25 **1973 [1]** 39/23 **1997 [1]** 25/24 **1:00 [1]** 1/10 | **5** **508 [1]** 1/21 **538-8000 [1]** 1/18 **5:00 [1]** 5/9 **6** **616-9344 [1]** 2/18 **6500 [1]** 1/24 **7** **7000 [1]** 2/6 **7045 [1]** 2/8 **713 [1]** 1/19 **7175 [1]** 2/5 **72 [1]** 16/23 **7340 [1]** 2/9 **753 [1]** 54/4 **7:00 [1]** 37/8 | **action [3]** 3/13 24/16 34/25 **actions [1]** 42/19 **actually [15]** 7/18 15/9 19/18 20/1 20/7 20/8 20/15 27/21 30/7 32/19 38/25 42/6 45/9 49/14 49/16 **add [1]** 49/7 **address [4]** 17/21 38/10 40/8 52/15 **addressed [1]** 12/14 **adjourned [2]** 53/24 53/25 **administratively [2]** 49/15 49/17 **admission [1]** 32/2 **admit [1]** 30/5 **admitted [1]** 36/23 | **almost [1]** 4/11 **along [1]** 6/21 **already [5]** 8/11 29/13 34/20 46/22 46/22 **also [18]** 2/20 4/9 5/1 7/11 8/24 9/2 9/25 10/3 14/7 14/24 15/14 16/20 17/1 24/4 24/5 29/4 39/11 39/18 **alternative [3]** 10/9 50/11 50/12 **always [1]** 20/2 **am [7]** 17/5 18/18 24/3 26/12 31/2 48/4 51/1 **amended [1]** 11/24 **amount [1]** 50/14 |
| **MS. ANASTASIO: [1]** 4/4 **MS. DAUKAS: [1]** 3/25 **MS. HORTON: [1]** 4/8 **MS. PATHALAM: [1]** 4/6 **THE COURT: [146]** **THE COURTROOM DEPUTY: [3]** 3/3 3/11 53/23 **THE PETITIONER: [1]** 3/23 | **2** **20 [1]** 46/3 **200 [2]** 1/24 31/24 **20005 [1]** 1/17 **20009 [1]** 2/17 **2019 [8]** 6/22 7/23 11/17 11/23 25/22 42/17 47/13 49/14 **202 [2]** 1/18 2/18 **2025 [3]** 1/9 11/25 54/9 **20770 [1]** 1/24 **212 [4]** 2/5 2/6 2/8 2/9 **218-9376 [1]** 2/13 **22 [1]** 1/9 | **8** **8000 [1]** 1/18 **849-7000 [1]** 2/6 **849-7045 [1]** 2/8 **849-7175 [1]** 2/5 **849-7340 [1]** 2/9 **878 [1]** 2/16 **898-9647 [1]** 1/19 **8:00 [2]** 37/20 37/20 **8:00 a.m [1]** 15/16 **8:25-cv-02780-PX [1]** 1/5 | **advise [1]** 35/17 **advising [1]** 49/20 **African [1]** 48/25 **after [8]** 8/23 15/17 19/11 25/24 33/3 39/19 44/25 51/13 **afternoon [14]** 3/8 3/17 3/19 3/21 3/23 3/25 4/2 4/4 4/6 4/8 4/14 14/16 17/19 17/20 **afterwards [1]** 37/18 **again [14]** 5/12 5/15 9/8 9/8 11/12 13/8 | **ample [1]** 37/18 **amplify [1]** 47/14 **ANASTASIO [2]** 2/9 4/5 **Andy [1]** 5/1 **animated [1]** 10/24 **ankle [1]** 44/19 **another [5]** 38/12 46/3 48/19 48/19 51/5 **answer [5]** 20/15 23/4 23/7 24/12 26/10 **any [22]** 6/8 7/6 10/9 11/2 11/3 11/8 14/19 14/22 15/11 20/14 21/22 36/1 38/11 43/9 45/13 48/22 50/19 |
| **$** **$1,000 [1]** 44/9 **/** **/s [1]** 54/11 **1** **10 [10]** 6/22 7/23 11/17 11/23 25/22 40/18 42/6 42/17 47/13 49/14 **10016 [1]** 2/4 **1003.39 [1]** 19/10 **10th [5]** 23/10 40/10 41/12 51/21 51/21 **11 [3]** 5/6 10/6 11/25 **11 days [1]** 8/11 **112-1 [2]** 22/6 25/22 **112-2 [1]** 9/22 **11th [2]** 7/15 18/3 **12 [2]** 36/10 37/1 **1220 [1]** 50/11 **1225 [4]** 12/24 14/6 23/8 23/15 **1226 [24]** 12/25 14/6 | **22030 [1]** 2/12 **220A [2]** 22/17 31/12 **220B [3]** 7/25 21/21 22/18 **23rd [1]** 54/9 **25-2780 [1]** 3/13 **26 [2]** 38/11 38/13 **26th [6]** 38/18 43/15 50/3 50/9 50/22 52/9 **27 [1]** 17/8 **2780 [1]** 3/13 **27th [1]** 16/9 **28 [1]** 54/4 **295 [1]** 2/3 **2:07 [1]** 53/25 **3** **30 [5]** 19/20 20/4 20/11 39/14 47/18 **30-day [1]** 51/13 **300 [1]** 2/11 **301 [1]** 1/25 | **9** **90 [3]** 20/8 20/9 20/10 **900 [1]** 1/16 **9344 [1]** 2/18 **9376 [1]** 2/13 **9647 [1]** 1/19 **A** **a.m [1]** 15/16 **able [2]** 24/8 35/11 **about [17]** 5/9 7/4 7/5 7/8 12/12 18/22 21/25 29/6 32/9 34/14 35/19 39/14 40/8 43/18 47/6 48/4 51/22 **above [1]** 54/6 **above-entitled [1]** 54/6 **ABREGO [56]** **Abrego Garcia [3]** 5/12 28/25 33/24 **Abrego's [1]** 43/4 **Absolutely [2]** 13/10 13/23 | 22/14 25/3 26/18 31/15 34/8 37/13 38/1 42/5 **against [1]** 25/4 **agency [3]** 8/14 25/3 27/18 **ago [5]** 6/5 6/14 8/12 10/6 31/11 **agree [8]** 12/12 13/18 15/14 16/5 17/11 17/13 27/22 51/24 **agreed [1]** 47/8 **agreed-upon [1]** 47/8 **agreement [1]** 18/1 **ahead [1]** 41/20 **al [2]** 1/6 3/14 **alien [1]** 21/10 **all [51]** 3/3 3/7 3/9 4/10 4/10 5/5 5/11 6/1 6/12 7/4 7/5 7/7 11/15 12/4 12/8 14/17 17/17 26/11 27/3 28/22 29/9 34/19 34/22 36/8 | 50/20 52/6 52/22 52/23 53/10 **anybody's [1]** 12/25 **anyone [1]** 4/16 **anything [10]** 21/25 23/19 24/8 38/8 42/21 46/9 49/6 53/14 53/15 53/16 **anyway [1]** 33/20 **anywhere [2]** 12/14 47/22 **apologize [1]** 32/21 **appeal [23]** 6/23 12/15 12/20 13/17 18/21 19/12 19/15 19/20 19/22 20/21 21/7 28/7 40/11 40/12 40/24 41/11 41/16 42/15 45/13 47/7 47/11 49/15 51/14 **appealable [1]** 12/17 **appealed [1]** 41/18 **appeals [8]** 17/25 18/24 19/4 20/21 34/6 41/19 41/21 51/15 |

**A**

appear [4] 8/10 23/3 23/19 30/15
applicant [1] 32/1
applied [1] 10/22
applies [2] 45/23 49/16
apply [5] 10/14 10/19 10/21 40/6 45/9
appraise [1] 49/12
appreciate [2] 24/17 53/22
appropriate [2] 21/11 27/19
April [1] 25/24
April 1 [1] 25/24
are [33] 6/9 12/12 13/3 13/15 13/19 14/23 15/1 19/19 19/20 20/2 20/13 20/15 21/3 21/15 22/24 24/1 24/4 24/5 24/18 26/7 29/23 30/20 31/16 37/14 37/14 37/16 44/22 44/22 46/25 47/18 47/19 48/11 48/11
area [1] 43/9
argument [6] 42/10 45/25 46/2 46/2 47/18 49/19
arguments [2] 39/14 40/17
ARMANDO [3] 1/3 2/21 3/13
around [2] 7/14 27/4
arrest [12] 23/2 25/12 26/7 26/20 26/23 26/24 28/11 29/25 31/6 31/20 35/1 43/17
arrested [4] 5/13 5/20 27/13 29/21
articulate [1] 52/3
articulated [1] 32/11
as [58]
as-applied [1] 10/22
aside [1] 44/3
ask [10] 7/2 11/12 17/23 19/14 24/5 40/23 41/7 49/7 50/13 52/18
asked [2] 9/10 12/5
asking [3] 20/12 27/11 29/23
aspects [1] 17/23
assume [1] 18/5
asylum [1] 43/1
attention [1] 7/20
attorney [3] 19/3 19/3 45/12
August [2] 16/9 17/8
August 27 [1] 17/8
August 27th [1] 16/9
author [1] 36/12
authority [11] 6/8 7/4 16/12 17/16 21/4 32/18 35/4 35/7 35/7 35/8 44/5

**B**

available [1] 42/25
Avenue [1] 2/3
avoided [1] 48/10
avowed [1] 43/2

back [10] 11/15 18/13 19/15 19/18 21/16 28/3 38/8 39/12 43/15 49/13
bad [1] 37/14
Baltimore [2] 5/10 34/7
bars [2] 40/3 43/3
baseball [1] 4/11
based [6] 6/17 11/21 18/15 18/20 27/5 35/21
bases [1] 29/10
basic [1] 13/21
basically [2] 12/5 27/12
basis [12] 7/6 13/7 14/18 17/16 26/8 27/19 32/10 32/11 36/11 37/1 50/12 50/19
Bautista [3] 24/6 24/11 24/14
be [88]
bear [2] 20/11 21/8
because [57]
become [2] 40/12 49/14
becomes [3] 19/10 40/11 49/14
beef [1] 28/15
been [13] 9/4 11/5 11/5 11/24 13/12 25/14 29/20 33/2 34/1 39/23 42/2 44/4 47/15
before [29] 1/12 3/12 3/14 11/9 11/22 12/14 12/19 13/11 14/13 14/23 19/19 20/3 21/17 22/3 23/10 23/10 23/23 23/24 24/22 26/16 26/17 26/19 28/15 35/19 35/21 38/8 42/10 46/1 49/7
befuddled [1] 14/24
began [1] 6/14
begging [1] 45/11
behalf [4] 1/15 2/2 2/14 30/23
behind [2] 40/3 43/3
being [5] 24/14 30/24 33/7 44/22 44/23
belief [1] 18/15
believe [15] 4/20 5/9 9/1 9/14 9/18 12/7 12/13 13/7 13/11 16/15 16/18 18/6 33/23 39/22 40/10
bell [1] 5/20
belong [1] 46/18

**Ben [1]** 2/17
benefit [2] 28/19 28/19
best [6] 7/13 12/24 34/3 40/17 45/25 46/2
between [4] 9/19 15/23 23/8 42/5
beyond [2] 9/11 36/22
BIA [8] 6/22 11/14 12/1 12/15 12/18 12/20 13/16 18/20
BIA's [3] 12/13 12/16 18/22
bind [2] 44/18 44/19
bit [5] 8/22 24/12 24/20 43/15 47/10
Board [8] 17/25 18/23 19/4 20/21 34/5 34/11 41/19 41/20
bond [7] 23/24 24/22 30/1 30/2 31/21 32/3 32/9
both [7] 6/7 9/1 12/15 15/19 16/8 35/2 37/16
bottom [3] 7/23 20/13 24/25
Box [1] 2/16
bracelets [1] 44/20
Bridge [1] 2/11
brief [1] 45/21
briefed [4] 48/16 48/17 51/16 51/16
briefing [13] 5/22 5/23 12/2 16/23 17/9 24/13 45/8 46/9 47/8 48/19 49/11 51/3 51/5
briefly [1] 39/3
bring [1] 31/14
brought [2] 5/13 17/22
bucket [1] 14/22
burden [1] 51/4

**C**

cabin [1] 52/13
call [2] 3/2 7/6
calling [1] 25/25
came [3] 28/3 32/24 43/6
can [47] 7/9 7/23 7/25 10/18 12/8 13/1 13/4 14/10 15/8 15/9 15/10 16/2 16/3 16/12 17/13 19/15 19/25 22/1 22/20 23/14 24/13 26/6 27/4 27/4 27/13 27/24 28/6 29/21 30/18 30/19 31/4 31/5 31/19 32/13 36/4 36/5 38/18 42/11 43/19 44/8 44/11 47/5 49/19 50/10 50/23 51/14 51/15
can't [9] 5/20 7/5 10/3 23/14 40/22 41/10 43/18 43/25 46/21
cancellation [1] 43/1

**cannot [2]** 21/10 37/15
careful [1] 38/2
case [20] 1/5 11/22 19/5 26/15 28/19 31/20 34/12 39/22 39/23 40/14 40/17 41/19 41/23 43/7 43/8 45/4 45/4 47/7 52/20 53/4
cases [1] 39/19
catch [1] 5/5
cause [1] 32/15
caution [1] 24/20
CECOT [1] 28/2
center [2] 43/4 45/1
certainly [10] 7/10 13/14 22/4 24/17 25/2 32/13 39/5 42/11 44/11 50/5
CERTIFICATE [1] 54/1
certify [1] 54/4
cetera [1] 24/16
CFR [1] 19/10
Chain [1] 2/11
challenge [1] 10/22
change [3] 17/4 42/2 48/23
changed [5] 14/25 26/7 42/1 43/5 47/16
changes [1] 48/22
Chavez [1] 21/12
Cherrywood [1] 1/24
choose [1] 26/18
chooses [2] 45/13 50/9
Circuit [7] 6/11 10/7 12/15 12/18 20/24 28/7 45/14
circumstances [2] 14/8 21/11
CIVIL [2] 2/15 3/12
clarify [2] 15/10 52/4
class [3] 24/6 24/11 24/14
clear [8] 11/21 14/9 15/6 15/25 32/17 37/25 42/20 48/18
client [1] 37/20
clients [4] 30/19 35/12 35/15 35/16
clock [1] 12/8
close [3] 35/23 47/5 47/6
cocounsel [1] 38/25
codification [1] 8/17
colleague [1] 40/8
colleagues [1] 24/22
come [7] 12/9 15/9 33/19 41/12 45/3 47/8 48/9
comes [2] 3/14 43/15
comfortable [1] 36/1
coming [2] 28/21 35/22
commenced [1] 25/24

**commercial [1]** 43/25
common [1] 44/11
communicated [1] 25/14
communications [1] 9/18
community [1] 31/10
competing [1] 17/13
completed [1] 49/11
completely [3] 9/9 12/7 27/22
complicated [1] 24/7
comply [1] 15/12
complying [1] 15/19
comprehensive [1] 21/9
concern [1] 5/14
concluded [1] 19/19
condition [2] 45/16 46/14
conditions [9] 15/13 29/3 29/21 31/1 31/7 34/21 39/9 52/7 52/20
confer [1] 51/23
Conference [1] 54/8
confident [1] 34/7
confinement [1] 39/9
confirmed [1] 34/6
conformance [1] 54/7
confused [1] 14/24
confusion [1] 32/15
consider [1] 28/13
consideration [1] 34/15
considered [1] 22/1
considering [1] 17/7
consistent [2] 16/13 33/20
constitute [1] 20/22
constitutional [1] 28/16
consult [1] 30/18
Cont'd [1] 2/1
contemplate [1] 20/21
context [6] 8/8 11/1 21/21 39/10 40/1 40/20
continental [2] 16/25 51/4
continue [5] 10/23 15/7 15/8 16/10 40/20
continued [6] 1/22 2/2 9/3 39/25 39/25 40/2
continues [2] 20/22 42/22
contours [1] 17/3
contrary [2] 32/12 33/21
convert [7] 15/24 15/25 16/7 17/1 38/19 52/10 53/9
converted [1] 16/5
converting [1] 17/10
COOPER [5] 1/17 3/18 6/15 17/17 45/25
corner [2] 7/21 7/24
correct [23] 5/18 6/18

**C**

**correct...** **[26]** 7/23 14/20 18/8 18/19 23/22 25/8 25/10 28/9 28/14 29/8 30/20 31/18 33/5 33/9 37/5 37/6 47/24 48/5 48/21 53/5 54/5
**Costa** **[6]** 11/11 14/11 14/15 43/7 43/20 44/25
**Costa Rica** **[1]** 43/7
**could** **[18]** 8/7 10/2 10/4 11/10 13/20 14/5 29/8 29/10 32/14 34/4 35/1 35/1 35/2 40/12 43/24 44/2 45/9 52/13
**couldn't** **[3]** 8/6 29/20 47/21
**counsel** **[3]** 3/16 5/5 41/2
**countries** **[3]** 10/9 10/10 48/25
**country** **[6]** 10/8 10/10 16/11 28/1 44/6 44/6
**country's** **[1]** 24/2
**couple** **[1]** 39/6
**course** **[6]** 27/16 27/17 29/24 32/15 39/4 49/13
**court** **[63]**
**Court's** **[8]** 6/10 8/9 16/8 28/24 33/24 41/25 42/20 49/23
**COURTNEY** **[2]** 2/6 4/1
**courtneydaukas** **[1]** 2/7
**courtroom** **[2]** 6/13 44/23
**courts** **[3]** 24/18 24/19 32/4
**covered** **[1]** 38/9
**criminal** **[11]** 15/13 15/20 34/21 45/3 45/4 45/12 52/5 52/17 52/20 53/1 53/2
**crop** **[1]** 49/21
**crystal** **[1]** 32/17
**curious** **[1]** 33/15
**current** **[4]** 9/6 11/22 17/10 52/2
**currently** **[3]** 13/1 13/19 50/8
**custody** **[8]** 5/13 6/8 6/9 15/20 16/11 32/9 46/15 50/20
**cv** **[1]** 1/5

**D**

**D.C** **[1]** 2/17
**danger** **[1]** 31/10
**date** **[16]** 12/9 19/21 25/23 35/19 35/20 36/1 36/4 38/12 42/6 43/16 46/12 47/6 49/7 49/16 50/3 51/18

**dated** **[2]** 7/22 54/9
**DAUKAS** **[2]** 2/6 4/1
**day** **[4]** 15/17 44/25 51/13 54/9
**days** **[12]** 6/5 8/11 10/6 19/20 20/4 20/8 20/9 20/10 20/11 27/11 45/21 46/3
**days'** **[1]** 40/18
**DC** **[1]** 1/17
**deadline** **[3]** 33/24 37/19 46/9
**debate** **[1]** 28/6
**December** **[13]** 1/9 5/6 7/15 8/25 11/25 15/6 18/3 36/10 37/1 38/11 38/13 50/3 54/9
**December 11** **[1]** 11/25
**December 11th** **[1]** 7/15
**December 12** **[1]** 37/1
**December 26** **[1]** 38/13
**December 26th** **[1]** 50/3
**decide** **[9]** 25/17 26/4 31/20 35/14 35/21 41/21 43/16 47/19 51/7
**decided** **[5]** 10/24 25/12 29/13 41/22 46/22
**decision** **[18]** 6/16 8/9 11/17 11/23 16/3 18/21 19/8 19/10 19/11 19/21 24/22 25/18 26/12 27/5 34/6 34/19 38/19 40/24
**declaration** **[1]** 35/2
**defense** **[1]** 45/12
**defines** **[1]** 17/3
**definitely** **[1]** 40/14
**delve** **[1]** 10/17
**denial** **[2]** 6/23 13/17
**denied** **[3]** 13/14 13/16 42/9
**deny** **[2]** 16/1 36/24
**denying** **[1]** 12/16
**DEPARTMENT** **[3]** 2/15 19/6 32/25
**departure** **[1]** 45/8
**depending** **[2]** 14/18 26/11
**deportation** **[2]** 8/14 21/18
**deported** **[2]** 28/1 35/6
**desire** **[1]** 43/2
**detain** **[9]** 7/4 9/2 9/7 16/13 16/17 21/5 27/9 29/10 50/10
**detained** **[8]** 8/6 8/7 13/1 13/20 21/11 29/21 30/14 42/23
**detaining** **[2]** 29/8 46/13
**detention** **[31]** 8/9

10/22 11/4 11/7 13/21 14/6 16/21 17/15 21/9 21/14 21/14 22/9 23/7 23/20 25/13 27/18 27/20 28/25 31/17 33/17 40/1 40/18 42/23 43/4 45/1 46/3 50/19 52/6 52/14 52/22 52/23
**determination** **[2]** 34/3 40/2
**determine** **[1]** 10/21
**developed** **[1]** 27/3
**developments** **[1]** 43/9
**devices** **[1]** 44/24
**DHS** **[6]** 18/7 18/9 18/11 19/24 52/5 52/14
**DHS'** **[1]** 15/14
**dictated** **[1]** 19/10
**did** **[17]** 11/14 11/18 12/1 13/13 18/9 20/17 33/1 34/3 34/4 34/5 36/15 37/23 39/14 39/15 45/12 52/21 53/14
**didn't** **[6]** 15/6 26/1 27/8 29/9 34/2 47/20
**different** **[4]** 24/23 26/10 26/15 45/22
**directly** **[1]** 23/4
**director** **[1]** 34/7
**discretion** **[1]** 31/15
**discretionary** **[1]** 27/20
**discuss** **[2]** 29/24 53/14
**discussed** **[2]** 49/10 50/2
**dismiss** **[1]** 45/5
**dismissal** **[3]** 11/14 18/22 45/13
**dismissed** **[5]** 6/23 12/2 13/16 18/21 19/15
**dismissing** **[1]** 11/15
**dispute** **[1]** 40/9
**dissolve** **[5]** 16/23 36/25 38/20 52/11 53/9
**dissolving** **[3]** 17/8 26/13 26/14
**distinct** **[1]** 53/2
**district** **[15]** 1/1 1/1 1/12 3/4 3/4 31/24 32/4 33/18 33/20 33/21 40/5 43/23 44/20 54/3 54/3
**DIVISION** **[2]** 1/2 2/15
**do** **[57]**
**document** **[5]** 7/24 22/5 29/16 36/19 36/23
**does** **[8]** 10/17 15/11 23/19 35/9 38/11 39/20 51/12 52/4

**doesn't** **[5]** 10/14 10/21 12/25 46/18 49/14
**doing** **[3]** 18/10 44/15 44/16
**don't** **[32]** 9/15 12/6 12/8 14/22 18/5 18/5 27/14 28/18 29/12 32/8 32/11 32/18 33/19 34/22 36/12 38/17 41/7 41/21 42/14 45/5 45/6 46/20 47/8 48/16 48/19 48/21 49/1 50/13 51/2 51/4 52/15 52/21
**done** **[5]** 15/16 17/25 34/1 35/17 41/23
**double** **[3]** 44/18 44/18 44/19
**doubt** **[2]** 28/19 30/14
**down** **[4]** 25/6 32/20 45/3 47/2
**drafts** **[1]** 17/12
**draw** **[1]** 7/19
**drew** **[2]** 4/20 10/6
**due** **[7]** 6/12 10/22 10/25 14/7 16/13 51/13 51/22
**due process** **[3]** 10/22 10/25 16/13
**dueling** **[1]** 43/18
**during** **[3]** 8/15 21/10 26/1
**déjà** **[1]** 5/11

**E**

**earlier** **[2]** 33/1 41/22
**easily** **[1]** 5/20
**easy** **[1]** 15/9
**ECF** **[5]** 5/17 7/16 9/22 16/23 22/6
**education** **[1]** 42/5
**effect** **[1]** 45/17
**effected** **[1]** 8/14
**effective** **[1]** 49/13
**effectuate** **[1]** 13/25
**effectuating** **[2]** 11/1 11/8
**either** **[17]** 11/7 12/14 16/21 17/13 19/11 19/16 23/8 40/23 41/7 41/8 41/15 41/18 46/12 49/8 51/17 52/10 53/8
**El** **[5]** 9/24 10/3 10/11 20/18 42/17
**El Salvador** **[4]** 9/24 10/3 10/11 42/17
**elect** **[5]** 22/25 24/7 26/11 27/19 31/19
**elected** **[7]** 8/5 10/16 21/19 21/22 22/18 25/3 34/22
**electing** **[1]** 29/11
**election** **[1]** 14/18
**Eleven** **[1]** 6/5
**else** **[9]** 9/24 22/3

29/14 35/22 38/8 46/10 49/6 53/14 53/16
**EMANUEL** **[2]** 1/16 2/3
**emergency** **[2]** 5/16 37/21
**emphatically** **[1]** 40/2
**encompassed** **[1]** 16/18
**end** **[1]** 45/3
**endeavor** **[1]** 38/13
**ended** **[1]** 27/17
**enforcing** **[1]** 53/1
**Ensign** **[1]** 4/20
**enter** **[2]** 20/17 28/24
**entered** **[2]** 36/10 37/1
**entering** **[1]** 20/18
**entirely** **[1]** 39/17
**entitled** **[3]** 31/21 32/3 54/6
**ERNESTO** **[2]** 2/18 4/15
**ernesto.h.molina** **[1]** 2/19
**ERO** **[1]** 32/14
**error** **[1]** 6/19
**especially** **[1]** 14/1
**ESQUIRE** **[9]** 1/17 1/19 1/20 2/4 2/6 2/7 2/9 2/12 2/18
**essentially** **[4]** 8/17 26/15 41/23 45/11
**et** **[3]** 1/6 3/14 24/16
**et al** **[1]** 3/14
**even** **[10]** 14/7 19/13 28/5 33/1 33/21 39/7 40/16 46/1 52/13 52/13
**evening** **[2]** 5/9 6/18
**event** **[2]** 45/7 51/17
**events** **[3]** 22/23 32/22 34/4
**ever** **[2]** 39/12 46/17
**every** **[1]** 18/1
**Everybody** **[1]** 36/14
**everyone** **[3]** 3/6 5/5 42/9
**everyone's** **[2]** 5/25 33/7
**everything** **[4]** 19/19 27/6 36/21 51/1
**ex** **[5]** 18/14 36/11 37/1 37/4 37/23
**ex parte** **[5]** 18/14 36/11 37/1 37/4 37/23
**exact** **[2]** 10/23 11/18
**exactly** **[1]** 17/6
**example** **[3]** 12/9 15/16 16/15
**exchange** **[1]** 17/12
**excuse** **[1]** 15/20
**execute** **[2]** 44/11 44/12
**executive** **[1]** 27/18
**exercising** **[1]** 52/6
**exhibit** **[2]** 7/21 22/6

**E**

**Exhibit [1]** 22/6
**existence [1]** 28/5
**exists [1]** 33/8
**expected [1]** 33/24
**expedited [1]** 5/23
**expeditiously [1]** 38/18
**expired [1]** 19/12
**expires [1]** 46/8
**explanation [1]** 17/24
**explicitly [1]** 10/8
**express [1]** 15/23
**expression [1]** 44/18
**expressly [1]** 49/17
**extend [2]** 12/2 52/2
**extent [1]** 40/9
**extraordinary [3]** 6/14 13/5 28/21
**extremely [1]** 13/5

**F**

**fabrications [1]** 43/13
**fact [15]** 11/24 12/25 13/3 21/16 21/17 23/17 23/18 25/20 25/21 25/21 27/25 30/10 34/17 34/17 47/12
**facts [4]** 11/9 21/17 42/2 48/22
**factual [4]** 13/7 14/8 28/8 40/19
**factually [2]** 38/2 48/22
**Fairfax [1]** 2/12
**fairly [1]** 41/20
**faith [2]** 28/3 37/14
**faithful [2]** 33/7 37/16
**fake [1]** 35/6
**fallback [1]** 10/20
**familiar [1]** 24/2
**far [3]** 9/5 11/4 46/25
**farsighted [1]** 34/2
**fashion [2]** 9/16 46/16
**Federal [1]** 1/23
**feel [1]** 48/8
**felony [1]** 43/22
**few [2]** 45/21 50/7
**field [1]** 5/11
**Fifth [1]** 2/3
**figure [2]** 11/13 13/24
**file [3]** 13/14 20/3 28/12
**filed [1]** 21/24
**filing [1]** 27/8
**filings [2]** 6/17 9/1
**filled [2]** 32/14 32/25
**final [39]** 6/20 7/22 8/1 8/5 9/21 10/13 10/13 10/17 11/23 18/2 18/16 18/17 19/2 19/6 19/8 19/10 19/15 20/18 21/3 21/13 21/19 22/11 23/10 25/23 30/10 30/17 34/9 36/9 40/11 40/12

**finality [3]** 34/6 40/9 51/13
**find [3]** 12/23 30/24 30/25
**finding [2]** 32/5 37/13
**fine [3]** 21/4 36/3 50/3
**finer [1]** 12/22
**firmly [1]** 12/11
**first [13]** 6/13 7/9 7/20 12/5 16/5 19/9 22/5 25/21 29/7 32/24 39/3 42/8 47/15
**flat [1]** 36/14
**flown [1]** 44/24
**fluidity [1]** 51/1
**flux [1]** 24/12
**fly [1]** 43/25
**focus [1]** 33/23
**follow [2]** 29/3 51/20
**followed [1]** 12/18
**following [3]** 5/15 26/7 26/8
**footnote [1]** 43/17
**footnotes [1]** 43/18
**foregoing [1]** 54/5
**form [7]** 7/23 7/24 7/25 17/14 22/18 32/14 32/25
**format [1]** 54/7
**forward [1]** 14/19
**foul [1]** 25/17
**found [6]** 6/6 11/3 18/3 18/4 31/9 44/4
**four [2]** 36/16 37/11
**Fourth [6]** 6/11 10/7 12/15 12/18 20/24 28/7
**Fourth Circuit [5]** 6/11 10/7 12/18 20/24 28/7
**Franklin [1]** 2/17
**frankly [4]** 8/21 13/13 14/23 42/24
**free [1]** 20/2
**Friday [2]** 27/2 36/2
**front [2]** 26/20 27/14
**full [1]** 34/8
**fully [3]** 16/5 48/16 48/17
**further [8]** 5/22 8/9 11/6 12/19 15/3 24/13 27/24 52/3
**future [3]** 27/19 34/24 38/1

**G**

**GARCIA [40]** 1/3 2/21 3/13 3/24 4/11 5/9 5/12 7/1 7/7 7/14 7/22 8/6 9/2 9/7 9/23 11/4 11/11 13/1 13/20 14/10 14/15 15/12 15/15 21/5 22/1 23/9 24/24 25/7 25/7 25/22

41/25 42/8 47/8 47/21 48/1 48/1 49/13 49/15 49/17
**finality [3]** 34/6 40/9
**Garcia's [7]** 5/8 6/6 6/13 16/10 16/24 31/25 32/1
**gave [2]** 8/11 18/7
**general [2]** 19/3 19/3
**generally [1]** 41/21
**get [18]** 7/9 7/12 11/18 18/13 20/13 24/25 27/13 31/22 31/22 32/9 35/17 38/19 46/1 47/20 48/13 50/24 52/8 52/25
**gets [2]** 17/16 24/7
**getting [7]** 17/5 18/18 27/10 31/2 38/3 47/4 47/6
**give [16]** 5/3 24/12 25/25 28/19 29/12 34/14 34/25 35/16 36/1 44/7 44/8 45/20 46/12 46/16 50/10 50/13
**given [6]** 5/10 11/8 14/11 18/14 28/10 43/1
**gives [1]** 12/24
**giving [4]** 8/4 17/24 28/3 37/16
**go [9]** 7/3 15/3 25/18 26/6 27/24 35/12 43/6 44/8 45/20
**goes [2]** 9/24 25/25
**going [55]**
**GOLDSTEIN [2]** 2/7 4/3
**gone [1]** 12/10
**good [19]** 3/6 3/7 3/8 3/9 3/17 3/19 3/21 3/23 3/25 4/2 4/4 4/6 4/8 4/14 17/19 17/20 37/12 38/22 51/24
**Good afternoon [5]** 3/17 3/19 4/14 17/19 17/20
**GORDON [1]** 1/17
**got [16]** 7/7 25/19 30/1 36/9 37/5 37/7 37/7 42/8 44/19 44/25 48/13 50/7 50/14 50/21 52/23 53/4
**gotten [3]** 9/14 43/24 45/21
**government [33]** 6/7 7/12 8/4 8/23 9/1 9/16 9/22 10/12 10/16 10/18 11/10 13/15 14/11 14/12 14/14 16/12 17/12 17/16 19/7 29/15 30/6 38/10 41/11 43/15 44/15 45/11 45/13 45/20 46/12 47/5 49/22 50/4 50/8
**government's [12]**

8/22 9/6 10/2 14/24 40/16 42/19 43/2 43/11 45/25 46/2 46/20 52/8
**grant [1]** 44/7
**granted [3]** 5/22 6/5 9/25
**granting [2]** 5/7 12/10
**grateful [1]** 6/10
**great [6]** 4/19 4/25 5/3 23/6 41/12 50/21
**Greenbelt [2]** 1/9 1/24
**ground [2]** 41/14 46/7
**growing [1]** 36/22
**guess [3]** 17/21 18/7 44/1
**Guynn [1]** 4/23
**Guzman [1]** 21/12

**H**

**habeas [17]** 5/8 6/6 6/10 8/11 10/6 11/3 15/17 24/25 26/16 27/16 39/4 39/10 39/20 39/20 40/5 41/25 42/20
**had [13]** 16/20 18/11 27/7 29/20 33/2 34/20 37/17 37/18 37/21 39/23 39/24 40/2 48/9
**half [1]** 41/25
**hand [1]** 7/24
**handed [1]** 7/15
**happen [6]** 5/15 12/19 28/18 29/24 45/6 45/7
**happened [2]** 6/15 41/18
**happening [2]** 36/22 51/7
**happens [7]** 7/3 7/5 7/8 11/13 43/3 45/3 51/15
**happily [2]** 28/13 28/13
**happy [2]** 15/3 50/24
**hard [1]** 34/15
**harm [2]** 25/16 28/25
**has [37]** 6/15 7/22 8/5 8/14 9/3 10/16 11/5 11/24 13/11 14/12 14/17 15/3 15/12 15/16 16/12 17/22 17/25 19/12 19/19 19/20 20/10 21/9 25/3 25/14 26/15 26/15 26/22 27/16 27/17 30/6 39/4 39/21 42/20 42/24 43/5 44/4 47/15
**hasn't [1]** 43/23
**have [69]**
**haven't [4]** 21/22 25/12 26/12 48/25
**having [2]** 14/22 48/10
**he [45]** 5/13 5/13 7/15 7/15 9/3 10/4 15/16 15/19 23/12 23/18

23/19 24/1 25/4 27/9 27/13 28/1 28/1 28/3 29/20 30/1 30/1 30/1 30/7 30/15 31/6 31/14 32/2 32/9 34/3 34/21 35/6 35/7 37/21 41/23 42/22 42/24 43/5 43/19 43/23 43/24 43/25 44/2 44/14 44/25 46/14
**he'll [1]** 18/16
**he's [20]** 14/15 23/23 24/6 25/9 31/21 32/2 32/9 39/8 39/8 41/2 42/16 43/6 43/8 43/21 43/21 43/22 43/25 44/17 44/19 44/19
**head [1]** 8/22
**hear [4]** 6/1 32/7 32/8 38/17
**heard [1]** 37/17
**hearing [15]** 1/11 3/15 5/22 5/23 20/25 21/5 28/20 28/20 30/1 31/22 32/3 32/9 38/4 43/12 48/20
**hearings [1]** 24/23
**held [4]** 23/9 28/4 35/7 54/6
**helpful [1]** 21/24
**Hensley [1]** 39/21
**here [20]** 5/6 5/24 6/13 8/6 8/9 10/21 11/3 14/2 14/25 16/17 18/1 28/22 30/20 32/7 40/4 40/6 40/19 43/8 44/22 44/23
**here's [3]** 21/15 25/19 34/17
**hereby [1]** 54/4
**herself [1]** 19/3
**hiding [1]** 34/13
**him [24]** 6/8 8/4 9/7 9/8 10/3 10/4 16/14 18/7 25/12 25/12 29/8 30/24 30/25 31/6 31/17 42/25 44/7 44/7 44/15 44/16 44/20 44/22 44/25 46/14
**himself [1]** 43/19
**his [9]** 5/8 6/9 6/14 7/1 9/4 23/10 29/20 43/5 46/14
**hmm [3]** 29/18 45/15 46/5
**hold [2]** 25/6 25/6
**holiday [1]** 53/22
**holidays [1]** 36/2
**Homeland [2]** 31/16 32/25
**Homeland Security [2]** 31/16 32/25
**Honor [107]**
**Honor's [3]** 7/13 7/20 8/23
**HONORABLE [3]** 1/12 3/5 53/23

## H

**HORTON [2]** 4/13 4/9
**hours [1]** 15/6
**how [8]** 11/18 18/7
22/1 25/1 26/21 40/22
44/3 51/22
**however [1]** 47/16
**huh [2]** 32/23 52/25
**hypothetical [2]** 23/1
29/10
**hypothetically [1]**
26/25

## I

**I believe [7]** 5/9 9/18
13/11 16/15 33/23
39/22 40/10
**I guess [1]** 17/21
**I mean [11]** 31/23
40/22 41/14 44/2
44/17 45/10 47/19
48/9 48/13 48/15 51/4
**I think [7]** 14/1 16/6
16/20 16/25 41/6 50/1
52/12
**I'd [2]** 36/1 38/24
**I'll [14]** 6/1 15/22 16/3
23/4 23/9 25/17 26/9
27/3 28/16 32/7 35/14
35/16 49/24 50/3
**I'm [55]**
**I've [10]** 7/7 13/6
25/19 28/10 28/15
29/13 36/9 45/21
46/22 50/14
**I-220A [2]** 22/17 31/12
**I-220B [1]** 7/25
**ICE [7]** 5/11 6/9 7/24
15/21 34/7 42/23
44/21
**ICE field [1]** 5/11
**idea [2]** 37/12 51/24
**identical [1]** 30/25
**identify [1]** 3/16
**ignorance [1]** 44/2
**ignore [1]** 33/18
**IJ [11]** 11/14 13/16
18/5 18/7 18/14 18/15
19/15 19/19 19/19
42/7 42/10
**IJ's [3]** 11/17 12/20
40/11
**imagine [4]** 26/11
30/18 32/13 41/10
**immediate [1]** 6/9
**immediately [2]** 36/25
50/4
**immigration [37]** 2/16
6/8 6/17 6/19 7/1 7/5
10/25 11/23 11/24
12/3 12/14 12/20
16/11 17/25 18/24
18/25 19/4 19/9 19/11
19/21 20/2 20/3 20/17
20/21 21/9 21/24
23/25 31/10 34/4 34/6
34/11 41/2 41/19

**imminent [4]** 9/5
28/24 39/13 40/19
**impatient [1]** 36/22
**impermissible [2]**
8/10 10/23
**implicitly [1]** 11/14
**important [2]** 7/18
14/1
**improvidently [2]**
30/16 30/20
**INA [1]** 16/13
**inadmissible [1]** 44/5
**incarcerated [1]** 39/8
**inclined [2]** 17/1
46/11
**include [1]** 16/15
**inconsistent [1]** 29/5
**incorrect [2]** 20/1
36/13
**indicate [1]** 22/5
**indicated [2]** 9/1 40/2
**indicates [1]** 22/13
**indictment [2]** 43/22
44/3
**individual [3]** 39/23
40/3 50/20
**indulge [2]** 17/23
17/23
**inferring [1]** 10/24
**information [2]** 18/11
34/2
**informed [1]** 18/12
**injunction [14]** 15/11
16/1 16/6 16/8 16/9
16/24 17/2 17/8 17/11
24/15 24/19 26/13
31/5 51/3
**intact [1]** 12/11
**intends [3]** 9/2 9/7 9/8
**intent [1]** 50/20
**intention [3]** 25/14
42/12 46/13
**interested [1]** 46/17
**interplay [2]** 21/13
23/8
**interpretation [1]** 8/19
**invoke [1]** 27/19
**irregular [1]** 13/5
**is [187]**
**isn't [2]** 34/18 50/10
**issue [23]** 5/23 8/18
15/24 17/9 18/16 19/7
22/5 24/2 26/7 26/16
26/17 27/5 31/12
33/11 34/5 34/19
37/23 39/19 40/8
43/17 49/21 50/1 52/9
**issued [14]** 5/7 6/18
7/25 8/11 8/24 21/18
24/14 24/19 24/22
29/6 29/25 30/20
52/18 52/19
**issues [5]** 7/12 12/21
19/11 49/11 49/23
**it [151]**

**it's [66]**
**its [8]** 8/24 10/18
14/25 27/17 27/20
39/4 40/2 41/8

## J

**Jan [1]** 40/11
**January [5]** 40/10
41/12 41/13 42/6
51/19
**January 10 [1]** 42/6
**January 10th [2]**
40/10 41/12
**January 12th [2]**
41/13 51/19
**John [1]** 4/23
**joining [1]** 4/16
**joint [3]** 8/25 9/11
9/17
**JONATHAN [2]** 1/17
3/18
**jonathancooper [1]**
1/18
**José [1]** 39/22
**JR [1]** 2/18
**judge [16]** 1/12 6/17
6/19 12/14 12/20
18/25 19/11 20/2 20/3
20/17 23/25 26/6 29/6
31/10 32/21 34/5
**judge's [7]** 11/23
11/24 19/10 19/21
33/18 33/20 33/21
**judges [2]** 31/24
37/15
**judgment [1]** 22/1
**judicial [2]** 27/21 54/8
**juncture [6]** 21/1
24/13 25/4 25/11
31/17 40/24
**jurisdiction [2]** 39/20
40/5
**jurisdictional [1]**
39/15
**just [55]**
**JUSTICE [2]** 2/15 19/7
**Justices [1]** 39/24
**justify [1]** 14/6

## K

**keep [4]** 6/8 16/2
25/17 27/15
**keeps [2]** 28/21 29/1
**key [1]** 17/22
**KILMAR [5]** 1/3 2/21
3/13 3/24 6/6
**Kilmar Abrego**
**Garcia's [1]** 6/6
**kind [3]** 17/5 31/13
52/22
**Klepp [3]** 1/23 54/2
54/12
**knew [1]** 34/14
**know [68]**
**knowledge [1]** 7/13
**knows [1]** 12/23
**KRISTI [2]** 1/6 3/14

## L

**lacked [1]** 6/7
**laid [1]** 17/14
**land [1]** 40/15
**lane [2]** 1/24 32/7
**language [5]** 8/13
11/19 20/24 25/25
53/7
**lapse [2]** 16/2 40/10
**large [2]** 8/16 32/4
**last [9]** 5/6 5/12 19/6
20/17 28/20 28/20
41/22 43/6 43/12
**later [3]** 6/18 27/11
36/5
**latest [1]** 40/12
**Laughter [1]** 30/8
**law [5]** 6/12 8/15
37/15 53/2 53/2
**lawful [11]** 6/8 16/12
16/17 17/16 28/14
32/10 32/18 35/4 35/6
35/7 44/5
**lawfully [2]** 11/10
14/10
**lawyers [3]** 36/16
36/20 37/11
**least [4]** 11/4 11/7
11/16 39/5
**leave [1]** 35/19
**leaves [1]** 8/21
**left [2]** 7/21 7/24
**left-hand [1]** 7/24
**legal [5]** 7/3 7/6 14/17
42/21 42/25
**legally [1]** 33/19
**lengths [1]** 41/12
**let [14]** 7/12 11/12
11/20 16/1 19/14
20/23 34/25 35/12
38/15 41/1 43/14 50/5
50/18 52/18
**let's [8]** 11/18 22/25
25/6 27/15 31/22
31/22 37/25 47/9
**Liberia [2]** 39/13
47/17
**liberty [2]** 29/1 29/2
**lift [6]** 22/25 23/1
27/13 28/17 31/4 31/5
**light [1]** 51/1
**like [17]** 9/20 13/2
25/25 27/8 27/11 28/6
28/15 28/21 28/21
34/13 36/16 38/12
38/24 46/20 48/8
48/22 50/12
**likely [5]** 15/8 24/5
45/19 50/15 50/16
**limiting [1]** 52/14
**listed [1]** 10/10
**listening [5]** 4/18 4/21
4/23 4/24 5/2
**literally [2]** 44/18
44/19
**litigated [1]** 31/23
**litigation [3]** 2/16 24/2

27/4
**little [5]** 7/19 14/24
24/12 43/15 47/9
**live [1]** 42/14
**living [1]** 42/15
**LLP [2]** 1/16 2/3
**long [4]** 38/4 38/4
41/20 51/5
**look [3]** 7/20 24/17
34/8
**looked [1]** 21/12
**looking [1]** 41/20
**lose [1]** 39/20
**lot [3]** 6/15 15/2 46/1

## M

**made [4]** 26/12 34/19
39/13 42/20
**main [1]** 15/1
**maintain [2]** 14/7
14/14
**make [20]** 15/6 15/23
16/2 17/11 22/1 26/18
32/6 33/22 34/3 35/9
38/2 38/13 38/24 40/7
43/2 49/19 50/13
51/12 52/11 53/10
**makes [7]** 14/9 27/6
27/6 51/2 51/8 51/10
53/6
**making [4]** 32/5 37/13
37/22 42/22
**mandatory [1]** 23/20
**manner [1]** 34/1
**many [3]** 17/21 24/21
25/21
**March [2]** 39/14 47/18
**March 30 [2]** 39/14
47/18
**Martinez [1]** 25/4
**MARYLAND [5]** 1/1
1/9 1/24 3/4 54/3
**matter [15]** 3/12 3/14
15/13 16/6 21/6 21/16
23/17 23/18 27/21
31/15 33/16 34/21
47/14 48/16 54/7
**matters [1]** 41/22
**maximum [1]** 40/18
**may [14]** 4/23 4/24
5/15 6/3 10/8 16/16
17/4 24/15 30/7 31/15
34/1 45/3 49/15 49/22
**maybe [5]** 16/21 40/25
47/5 49/18 49/18
**me [53]** 5/3 7/12 11/12
11/20 12/24 12/25
13/2 15/20 17/24
18/21 19/14 20/23
21/17 21/23 21/25
22/3 23/14 23/15 24/8
25/15 25/18 26/3 26/6
26/12 26/19 26/20
27/2 27/8 27/14 28/11
28/11 28/17 29/4 29/9
29/12 31/19 31/25
32/17 34/25 34/25

**M**

me... [13] 36/22 36/
37/17 38/15 40/23
41/1 43/14 45/22
46/13 50/16 51/14
51/15 52/18
mean [21] 14/21 31/23
40/22 41/14 41/15
42/13 42/19 43/8
43/11 44/2 44/10
44/17 45/5 45/10
47/19 48/9 48/13
48/15 48/24 49/18
51/4
means [8] 12/13 18/16
21/20 23/23 29/3 31/4
37/4 44/16
meet [1] 51/23
member [1] 24/6
memorandum [5] 5/7
21/23 36/10 39/14
47/18
mentioned [1] 45/8
merely [1] 22/9
Merit [1] 54/2
merits [1] 39/15
middle [3] 27/14
43/22 44/20
midnight [1] 27/7
might [1] 36/13
mind [2] 20/11 21/8
minimum [4] 15/8
15/23 23/12 23/19
ministerial [1] 20/17
minute [1] 33/3
misrepresentations
[1] 37/14
miss [1] 53/14
Mm [3] 29/18 45/15
46/5
Mm-hmm [3] 29/18
45/15 46/5
MOLINA [9] 2/18 4/15
4/16 5/17 6/2 12/23
38/23 39/4 49/6
moment [1] 18/14
months [3] 6/14 28/2
28/4
moot [4] 11/16 12/2
12/16 43/18
mooted [1] 47/15
more [8] 10/12 20/23
36/3 38/15 46/11 50/4
52/13 53/19
MORGAN [2] 2/9 4/5
morgananastasio [1]
2/10
morning [8] 3/6 3/7
3/8 5/11 5/16 5/19
5/21 37/8
MOSHENBERG [5]
2/12 3/22 39/1 41/2
51/19
most [2] 9/18 38/9
motion [13] 1/11 6/23
8/23 11/16 12/16
13/12 16/23 20/3 20/7

20/10 36/25 38/4 45/5
motions [1] 3/15
mouthful [1] 6/24
move [10] 14/18 15/10
16/3 19/16 19/25 25/1
42/6 48/2 49/1 50/15
moving [1] 27/15
Mr [7] 5/12 6/15 9/23
16/10 16/24 25/7 31/9
Mr. [56]
Mr. Abrego [8] 27/9
29/11 29/25 42/24
43/18 45/10 47/22
52/6
Mr. Abrego Garcia
[29] 4/11 5/9 7/1 7/7
7/14 7/22 8/6 9/2 9/7
11/4 11/11 13/1 13/20
14/10 14/15 15/12
15/15 21/5 22/1 23/9
25/22 30/24 34/20
35/3 39/7 41/18 42/16
46/13 52/19
Mr. Abrego Garcia's
[4] 5/8 6/13 31/25 32/1
Mr. Abrego's [1] 43/4
Mr. Cooper [2] 17/17
45/25
Mr. Garcia [1] 24/24
Mr. Molina [7] 4/16
5/17 6/2 12/23 38/23
39/4 49/6
Mr.
Sandoval-Moshenber
g [3] 39/1 41/2 51/19
Mr. Ulander [1] 3/10
much [3] 18/3 30/9
33/1
Municipal [1] 39/22
MURRAY [1] 2/11
murrayosorio.com [1]
2/13
mushroom [1] 34/13
must [1] 10/7
my [29] 3/24 5/7 5/21
7/2 7/25 11/13 12/16
15/11 15/24 18/15
21/20 24/21 28/4
30/18 32/12 33/3 33/6
35/12 35/15 35/16
38/6 38/25 40/8 42/5
44/2 46/18 47/13 50/8
52/19

**N**

N.W [1] 1/16
nail [1] 47/1
name [1] 3/24
namely [2] 16/9 17/15
Nationality [1] 21/9
nationwide [1] 24/19
necessary [1] 11/2
need [18] 10/17 13/11
16/22 17/23 24/19
35/2 35/7 35/13 35/17
35/20 38/15 41/7 47/1
48/19 49/12 50/2

52/15 53/14
needed [2] 12/19 24/2
needing [1] 24/16
needle [1] 49/1
needs [3] 50/4 51/16
52/22
neither [3] 19/24
19/24 51/13
never [1] 39/12
new [8] 2/4 2/4 9/21
10/1 10/11 12/20
50/24 51/7
next [11] 5/11 7/3 7/5
7/8 11/13 21/23 23/1
28/18 45/20 48/2
51/16
night [2] 27/14 37/17
nine [1] 6/14
Nithaya [1] 4/7
NITHYA [1] 1/20
nithyapathalam [1]
1/21
no [51] 1/5 3/13 8/18
9/22 10/10 11/9 13/7
14/9 16/17 18/2 18/4
18/11 18/16 21/1 21/5
21/10 22/15 25/14
25/16 25/16 26/6 28/9
28/15 28/15 28/15
29/8 30/10 30/14
30/14 30/17 32/17
33/7 34/9 38/9 39/21
40/10 40/18 40/19
42/2 42/2 43/10 43/21
46/13 47/15 47/21
48/12 49/15 49/23
51/5 53/11 53/12
No. [1] 7/16
No. 112-1 [1] 7/16
nobody [3] 27/9 34/14
34/14
NOEM [2] 1/6 3/14
non [1] 34/6
non-finality [1] 34/6
none [1] 43/10
nonfinal [2] 20/6
42/10
normally [1] 29/16
nose [3] 7/2 11/13
46/18
not [74]
notes [1] 19/5
nothing [7] 9/17 22/3
27/12 29/6 42/1 53/17
53/19
notice [3] 5/10 21/18
23/2
now [45] 3/4 3/12 4/19
6/19 7/18 7/25 8/21
9/6 9/20 10/13 10/14
13/15 15/23 19/8
19/15 19/19 19/20
21/6 21/12 21/16
22/24 24/11 25/20
27/24 28/8 28/12
28/25 30/15 30/17
31/11 31/23 32/11

33/6 34/23 39/13 42/5
43/8 44/23 47/9 47/25
48/1 49/8 49/13 51/3
53/24
nowhere [2] 9/24 10/4
nuance [1] 14/1
number [2] 32/4 42/24
nunc [1] 6/18

**O**

object [1] 39/5
objection [3] 51/6
53/10 53/12
obtain [1] 41/12
obtains [1] 44/5
obvious [1] 19/9
obviously [4] 15/2
15/11 50/10 52/5
occurred [1] 30/6
October [9] 6/22 7/23
11/17 11/23 23/10
25/22 42/17 47/13
49/14
October 10 [8] 6/22
7/23 11/17 11/23
25/22 42/17 47/13
49/14
October 10th [1]
23/10
oddity [1] 29/20
offer [1] 45/11
office [3] 2/16 5/11
34/7
officer [6] 21/17 21/18
32/14 33/10 33/14
34/3
officers [2] 36/20 53/1
Official [3] 1/23 54/1
54/12
oh [4] 29/5 30/19
31/20 49/23
okay [63]
OLIVIA [2] 1/19 4/9
oliviahorton [1] 1/20
once [4] 5/19 18/7
28/1 37/13
one [27] 5/3 9/20
11/15 12/7 13/14
16/22 17/22 18/17
21/15 22/6 26/18 28/9
28/12 29/11 30/6 31/7
36/9 37/4 38/25 39/7
41/17 44/20 44/21
49/1 50/1 51/14 51/15
ones [1] 17/13
ongoing [3] 13/16
13/19 14/5
online [2] 4/18 4/20
only [15] 4/18 7/25
9/23 10/2 15/5 15/13
21/17 22/2 25/21
26/19 28/12 32/11
34/17 34/23 37/4
open [2] 19/16 36/23
operating [1] 8/1
opinion [7] 5/7 26/5
33/4 33/6 42/20 45/12

47/15
opportunity [6] 23/24
35/23 37/16 37/18
45/20 46/16
opposite [2] 33/12
33/19
option [1] 42/4
options [1] 42/25
ordeal [1] 6/14
order [130]
order's [1] 19/14
ordered [7] 5/12 6/9
8/15 9/23 25/23 26/1
42/16
ordering [2] 5/8 24/22
orders [2] 6/11 15/12
ordinary [1] 29/24
original [1] 52/19
OSORIO [1] 2/11
other [13] 9/15 9/20
10/10 11/5 11/11
14/11 15/5 15/12
21/22 26/18 49/2
49/23 50/2
otherwise [1] 52/8
our [10] 7/13 8/8 8/22
8/23 10/15 13/10 15/2
15/3 24/21 42/12
out [15] 9/20 11/13
12/21 13/24 17/14
24/24 30/17 32/14
32/24 32/25 33/17
35/23 38/19 43/11
44/25
over [9] 5/11 12/3
12/7 13/8 19/17 32/20
38/25 40/8 41/1
overtake [1] 34/4
own [3] 22/15 22/16
37/21

**P**

p.m [3] 1/10 7/14
53/25
P.O [1] 2/16
page [3] 7/20 9/23
54/7
page 5 [1] 9/23
papers [3] 13/11 15/2
44/8
paragraph [1] 29/7
part [5] 5/14 12/1
20/17 20/22 47/15
parte [5] 18/14 36/11
37/1 37/4 37/23
particular [2] 12/9
46/15
parties [5] 8/24 9/19
20/2 32/8 46/9
party [5] 18/1 19/12
20/10 40/23 41/7
pass [1] 38/25
passes [2] 36/4 38/18
PATHALAM [2] 1/20
4/7
Patricia [3] 1/23 54/2
54/12

**P**

PAULA [2] 1/23 54/1
peaceful [1] 53/21
pending [5] 3/12 5/22 45/5 45/15 52/3
Pennsylvania [2] 43/4 45/1
period [7] 6/16 8/15 19/20 20/8 21/10 26/1 51/13
permissible [2] 42/3 46/3
permission [1] 44/6
permitted [1] 8/16
person [6] 5/20 10/8 44/5 44/8 44/10 44/11
perspective [2] 6/25 7/9
petition [4] 5/8 6/6 8/11 26/16
petitioner [29] 1/4 1/15 2/2 3/18 3/20 3/22 4/1 4/3 4/5 4/7 4/9 5/2 5/14 6/1 6/5 13/13 18/9 18/12 19/20 19/24 29/1 30/13 31/9 32/7 37/7 37/17 38/8 51/8 53/17
petitioner's [4] 6/25 36/25 50/23 52/9
Petitioners [3] 26/8 27/4 50/14
phone [3] 4/19 4/21 4/24
PI [3] 38/19 52/11 53/9
pick [2] 35/3 50/12
pill [1] 34/15
place [12] 10/2 11/10 12/5 14/9 16/2 16/9 25/17 36/3 51/6 52/8 52/10 53/8
placed [3] 8/16 23/12 28/2
places [1] 6/25
plan [1] 9/6
plane [1] 43/24
plans [1] 29/8
please [2] 3/16 6/3
PLLC [1] 2/11
point [16] 7/19 9/20 10/12 11/7 11/11 12/22 14/12 17/7 27/19 31/13 38/3 39/3 39/18 40/7 43/5 46/25
pointed [2] 9/16 43/11
pointing [1] 30/17
points [2] 38/10 38/24
position [7] 12/25 19/23 25/1 42/21 46/20 47/4 47/11
positions [2] 14/25 15/4
possible [3] 30/18 40/19 43/3
post [2] 21/14 22/11
post-final [1] 22/11
post-order [1] 21/14

posture [5] 11/22 21/7 24/23 26/25 47/25
potential [1] 9/4
potentially [1] 12/19
pre [2] 21/13 22/17
pre-final [1] 21/13
pre-order [1] 22/17
precedent [1] 10/7
precisely [1] 41/7
preclude [1] 24/16
predicate [1] 28/8
preliminary [7] 16/1 16/6 16/8 16/9 17/2 17/8 17/11
preliminary injunction [4] 16/8 16/9 17/8 17/11
premature [1] 25/3
prepared [2] 14/15 26/7
prerogative [1] 27/20
prescribed [1] 8/15
PRESENT [1] 2/20
presented [1] 14/12
presiding [1] 3/5
Pretrial [1] 44/21
pretty [1] 31/14
prevails [1] 49/22
prevent [4] 17/15 24/24 51/3 52/5
preventing [2] 44/15 44/16
previously [1] 31/9
primarily [1] 8/10
primary [1] 10/15
principle [1] 40/6
principles [1] 10/25
prior [1] 6/11
priority [1] 43/4
pro [1] 6/18
probably [4] 33/1 35/13 47/13 52/13
probation [1] 45/17
problem [4] 14/21 27/7 28/17 31/8
procedural [2] 21/7 24/23
proceed [3] 24/20 28/16 29/3
proceeded [1] 29/9
proceedings [25] 7/1 11/2 12/8 12/19 13/2 13/2 13/4 13/7 13/12 13/13 13/16 13/19 14/5 19/13 19/16 19/25 20/14 20/16 20/22 21/3 25/24 41/3 42/7 53/25 54/6
process [6] 6/12 10/22 10/25 14/8 16/13 21/6
processing [1] 33/16
professed [1] 43/2
prohibit [2] 16/10 52/22
prohibiting [2] 16/24 52/14

properly [1] 35/17
propose [2] 16/19 17/2
proposed [1] 17/13
protection [1] 9/3
proved [1] 43/12
proverbially [1] 46/19
provide [1] 24/13
provision [5] 16/16 21/22 23/21 45/22 46/15
provisions [3] 14/6 15/21 45/22
public [2] 22/16 36/21
pull [2] 11/20 43/14
punitive [1] 11/7
purported [2] 9/21 10/11
purpose [7] 11/1 11/5 11/8 13/21 40/18 42/22 52/7
purposes [1] 11/5
pursuant [3] 23/10 25/23 54/4
pursue [2] 13/4 23/24
push [1] 47/9
put [16] 9/16 11/18 12/22 13/10 14/22 15/2 22/3 24/5 26/19 27/14 27/23 39/5 40/3 42/10 44/3 47/16
puts [1] 11/15
putting [1] 32/8
PX [2] 1/5 3/13

**Q**

question [12] 9/16 12/3 12/4 28/16 35/5 35/6 35/23 36/9 39/11 39/15 47/17 48/2
questions [6] 7/11 7/11 12/4 12/12 13/2 15/3
quick [1] 46/16
quickly [5] 5/6 15/10 16/3 26/9 31/23
QUINN [2] 1/16 2/3
quinnemanuel.com [7] 1/18 1/20 1/21 2/5 2/7 2/8 2/10
quite [4] 7/18 32/19 32/20 44/11

**R**

raised [1] 7/11
RAND [2] 2/4 3/20
reach [3] 15/11 39/14 39/15
reached [2] 26/15 39/12
read [3] 11/14 11/17 36/17
ready [3] 5/25 14/15 43/6
real [4] 35/5 35/5 37/25 48/22
realize [1] 22/22

realized [1] 34/8
really [10] 5/5 17/3 27/17 28/3 34/15 38/1 47/5 47/6 49/11 51/2
rearrested [1] 27/10
reason [7] 7/2 12/23 16/17 20/12 24/14 42/3 50/13
reasons [5] 5/21 8/10 10/23 19/9 39/6
recall [3] 18/23 30/13 32/22
received [3] 5/16 5/17 5/25
recent [1] 9/18
recitation [1] 7/13
reconsider [1] 20/11
record [19] 3/16 11/9 11/22 14/9 14/11 22/2 25/19 26/19 34/18 34/23 35/14 35/20 35/21 35/21 36/4 39/5 40/19 49/9 50/9
redetain [1] 7/6
redetention [1] 42/3
reference [1] 38/7
referring [1] 29/2
regard [3] 21/25 48/22 49/23
Registered [1] 54/2
regular [1] 19/13
regulation [1] 19/9
regulations [3] 20/20 22/16 54/8
related [1] 39/19
releasable [1] 30/25
release [17] 5/8 6/9 6/16 15/12 15/13 15/20 16/16 22/9 22/11 24/23 29/7 29/16 29/20 29/22 30/21 33/24 52/6
released [10] 5/10 7/14 7/15 9/4 30/2 30/15 34/20 39/20 39/24 44/25
releasing [1] 52/19
relevance [1] 14/17
relevant [4] 12/23 13/3 42/2 47/20
relief [3] 16/6 16/18 17/14
relies [1] 9/22
reluctant [1] 24/12
relying [1] 10/2
remain [1] 45/17
remains [5] 12/10 13/3 43/7 43/7 44/14
remember [2] 28/20 28/23
remind [1] 23/9
removal [60]
remove [10] 9/2 9/8 10/3 10/3 11/10 14/14 16/13 26/1 44/9 47/21
removed [9] 9/24 10/4 10/8 14/10 25/23 28/1

28/2 42/16 42/16
removing [1] 43/19
reopen [10] 6/23 11/16 12/5 12/16 13/12 19/16 19/25 20/3 20/7 42/6
reopening [1] 13/13
repeatedly [1] 39/21
report [6] 5/13 8/25 9/18 16/21 16/21 51/12
reported [1] 54/6
Reporter [4] 1/23 54/1 54/2 54/12
representation [1] 32/6
representations [2] 37/14 43/12
representing [1] 4/12
represents [2] 19/2 19/6
request [2] 16/7 17/9
required [1] 15/17
requirements [1] 24/18
resolution [1] 48/10
respect [3] 8/7 9/15 17/10
respectfully [1] 12/6
respond [5] 26/8 26/9 27/4 27/8 46/16
responded [1] 27/9
respondent's [1] 24/25
respondents [12] 1/7 2/14 4/15 13/4 18/6 21/25 28/19 30/23 30/25 51/10 53/3 53/19
responding [2] 3/7 39/3
response [9] 8/24 12/24 16/22 29/4 29/5 45/8 45/19 50/23 52/9
responses [1] 5/25
restraining [3] 15/25 52/2 52/4
result [1] 39/10
retained [1] 40/5
retroactive [3] 6/21 42/17 47/12
review [1] 27/21
reviewed [1] 19/4
reviewing [1] 10/18
Rica [6] 11/11 14/11 14/15 43/7 43/20 44/25
right [91]
rights [1] 41/8
ring [1] 5/20
ripe [1] 27/6
rise [2] 3/3 53/23
risk [1] 27/10
RMR [2] 1/23 54/12
road [2] 2/11 41/20
rock [1] 34/14
ROEY [2] 2/7 4/3

| | | | | |
|---|---|---|---|---|
| **R** | 13/9 17/12 18/6 23/20 24/7 27/7 31/9 36/6 46/23 | **someone [5]** 8/1 31/24 31/25 39/19 44/4 | 23/20 27/21 39/9 **submission [5]** 8/8 9/11 10/16 52/3 52/9 | 46/17 47/7 47/11 50/20 |
| **roeygoldstein [1]** 2/8 | **seek [3]** 17/14 42/25 43/1 | **something [4]** 29/14 35/2 35/22 48/22 | **submissions [2]** 8/22 15/1 | **taken [2]** 32/9 49/15 **takes [2]** 42/21 42/22 |
| **Rossman [1]** 5/1 **round [2]** 48/19 51/5 **rule [4]** 6/12 15/8 19/13 37/15 | **seems [1]** 13/2 **seizure [1]** 22/10 **self [2]** 44/11 44/12 | **sooner [1]** 36/5 **sorry [3]** 32/20 44/1 48/8 | **submit [13]** 10/21 11/6 11/9 14/4 17/13 27/2 29/16 30/21 40/4 40/6 40/20 46/9 46/10 | **taking [1]** 22/18 **talk [3]** 7/7 32/20 47/5 **talks [1]** 49/17 **team [1]** 4/11 |
| **ruled [2]** 13/6 18/15 **ruling [6]** 8/11 10/6 11/3 15/9 41/25 42/1 | **self-execute [2]** 44/11 44/12 | **sort [13]** 10/9 12/21 15/6 17/21 17/24 18/24 19/2 32/19 41/8 | **submitted [3]** 8/24 8/25 36/20 | **technical [1]** 7/19 **technically [1]** 18/1 **tell [19]** 12/25 18/21 |
| **run [2]** 27/17 39/4 **runs [1]** 32/12 | **sense [9]** 17/12 35/9 51/2 51/8 51/10 51/12 52/11 53/6 53/10 | 43/14 48/7 48/9 51/1 **sounded [1]** 27/8 **SOUTHERN [1]** 1/2 | **subsection [1]** 23/13 **subsequent [2]** 6/22 42/19 | 22/16 23/14 23/14 25/18 26/3 26/6 29/9 31/18 31/25 37/17 |
| **S** | **sent [1]** 29/4 **sequence [2]** 22/22 32/22 | **speak [3]** 35/15 35/16 45/12 | **such [4]** 16/17 25/14 34/12 41/12 | 40/23 42/11 45/22 46/12 50/16 51/14 51/15 |
| **said [17]** 13/11 14/13 14/23 18/7 26/4 28/15 29/9 31/24 33/7 36/24 | **seriously [2]** 37/16 46/17 **Services [1]** 44/21 | **specific [1]** 20/23 **specifically [1]** 7/8 **speculate [1]** 29/12 | **suggest [2]** 13/15 46/7 **suggested [2]** 16/22 17/1 | **telling [3]** 21/24 26/12 36/21 **tells [1]** 25/22 |
| 37/20 37/20 39/21 40/5 43/6 45/25 51/18 | **session [2]** 3/4 15/17 **set [1]** 5/23 **several [5]** 14/25 | **speed [1]** 41/22 **spot [1]** 51/14 **square [2]** 11/15 12/7 | **suggesting [1]** 52/21 **suggests [1]** 11/16 **Suite [3]** 1/16 1/24 | **temporary [1]** 15/25 **tend [1]** 41/21 **Tennessee [5]** 15/13 |
| **Salvador [5]** 9/24 10/3 10/11 20/18 42/17 **same [5]** 10/23 30/16 | 27/11 31/23 39/18 48/25 **shall [1]** 50/8 | **squarely [3]** 13/3 26/5 47/14 | 2/11 **SULLIVAN [2]** 1/16 2/3 | 34/21 43/23 44/21 52/5 **term [2]** 7/3 18/13 |
| 40/4 44/8 52/20 **San [1]** 39/22 **SANDOVAL [5]** 2/12 | **Shane [1]** 4/24 **she [1]** 34/3 **shifting [1]** 46/25 | **ssandoval [1]** 2/13 **stand [2]** 41/8 49/8 **standing [1]** 26/3 | **superior [1]** 18/24 **supervised [2]** 15/20 16/16 | **terms [7]** 5/12 7/1 7/4 40/23 41/15 49/8 49/17 |
| 3/22 39/1 41/2 51/19 **SANDOVAL-MOSHEN BERG [2]** 2/12 3/22 | **short [1]** 6/16 **shorthand [1]** 21/20 **should [12]** 5/13 16/5 | **stands [2]** 26/5 53/24 **start [3]** 6/1 13/7 19/17 | **supervision [19]** 7/16 8/16 15/21 21/19 22/3 22/8 25/5 25/9 26/2 | **territory [1]** 41/24 **tethering [1]** 44/22 **than [4]** 10/10 11/11 |
| **sands [1]** 46/25 **SASCHA [2]** 2/4 3/20 **sascharand [1]** 2/5 | 16/7 16/9 16/10 17/21 27/13 28/18 28/22 36/24 49/12 50/3 | **starting [2]** 12/3 12/7 **state [2]** 10/8 24/12 **stated [2]** 5/21 9/17 | 30/16 32/24 33/2 33/11 34/19 34/20 34/22 39/8 44/17 | 14/11 50/2 **thank [12]** 4/10 5/3 6/3 17/17 17/18 30/9 |
| **Saturday [2]** 41/13 51/21 **save [1]** 19/3 | **show [5]** 16/12 28/11 28/11 28/22 44/2 **showed [1]** 15/16 | **STATES [10]** 1/1 1/12 2/15 3/3 16/25 32/2 44/4 51/4 54/3 54/8 | 46/21 **supplement [4]** 35/24 38/11 50/9 50/23 | 38/22 41/5 49/4 49/5 53/18 53/21 **thank you [10]** 4/10 |
| **say [15]** 5/14 8/5 9/24 10/7 11/17 14/14 26/25 27/1 27/23 | **sic [1]** 25/4 **side [2]** 9/15 37/5 **sides [1]** 37/16 | **Station [1]** 2/17 **status [9]** 8/25 9/17 16/20 16/21 30/24 | **supplemental [3]** 16/22 17/9 51/2 **supplementing [1]** | 5/3 6/3 17/17 17/18 30/9 38/22 41/5 53/18 53/21 |
| 27/25 28/13 30/19 33/6 35/2 38/1 **saying [22]** 6/19 10/13 | **signatories [1]** 37/11 **signed [3]** 36/14 36/16 36/19 | 39/12 44/7 51/12 51/22 **statute [2]** 7/4 20/20 | 49/8 **suppose [1]** 15/5 **supposed [3]** 11/1 | **that [318]** **that's [49]** 5/24 6/24 7/16 12/1 14/21 14/21 |
| 11/14 13/9 23/17 24/4 24/6 25/11 28/8 28/10 29/23 30/23 31/5 | **significance [2]** 17/24 18/22 **significant [1]** 12/12 | **statutory [3]** 14/18 29/10 29/10 **stay [8]** 16/9 36/3 | 28/2 28/24 **supposedly [1]** 9/4 **Supreme [8]** 6/12 8/9 | 17/6 19/13 21/4 21/20 22/17 24/19 26/3 26/16 26/21 27/1 |
| 31/12 32/10 34/9 34/24 36/6 45/4 45/7 46/23 49/19 | **similar [1]** 40/6 **SIMON [2]** 2/12 3/22 **simply [1]** 43/18 | 39/25 39/25 40/2 51/6 52/10 53/8 **stays [1]** 52/8 | 10/24 21/12 39/19 39/21 39/24 40/4 **Supreme Court [6]** | 27/11 28/22 30/22 31/8 31/13 31/15 31/18 33/9 34/15 |
| **says [13]** 7/21 8/13 9/23 10/3 11/21 26/20 29/2 33/11 33/19 | **since [4]** 6/14 6/16 20/23 46/8 **single [1]** 32/14 | **stenographically [1]** 54/6 **stenographically-repo rted [1]** 54/6 | 6/12 10/24 21/12 39/19 39/21 39/24 **Supreme Court's [1]** | 34/18 34/23 35/5 35/5 36/3 39/17 40/9 40/12 40/17 41/6 43/23 44/8 |
| 36/24 42/9 42/15 44/6 **scenario [1]** 40/17 **schedule [2]** 5/23 | **Sir [1]** 34/12 **sitting [1]** 43/8 **situation [4]** 13/6 13/6 | **steps [1]** 27/10 **sticking [4]** 7/2 11/12 46/18 46/19 | 8/9 **sure [7]** 21/8 28/23 33/22 38/2 42/22 43/2 | 44/15 47/20 47/24 48/5 48/21 49/1 50/1 50/1 50/16 50/21 |
| 47/9 **scheme [1]** 21/10 **scratching [1]** 8/21 | 17/4 32/1 **Six [1]** 31/11 **Sixth [1]** 45/14 | **still [7]** 20/16 39/8 39/9 41/24 43/22 47/17 48/25 | 50/13 **surprising [1]** 13/14 **swallow [1]** 34/16 | 51/24 52/7 **their [4]** 17/16 40/17 45/12 46/9 |
| **scrivener's [1]** 6/19 **seat [1]** 3/9 **second [3]** 5/4 40/7 | **slow [2]** 25/6 32/20 **slowly [1]** 43/3 **so [95]** | **stop [1]** 49/24 **strange [1]** 21/6 **streamlines [1]** 27/5 | **T** | **them [4]** 35/13 35/16 35/17 38/25 **then [56]** |
| 41/25 **secondary [2]** 39/11 39/13 | **solid [2]** 41/13 46/7 **some [8]** 7/10 10/9 12/20 19/8 25/20 | **Street [1]** 1/16 **strict [1]** 34/21 **strike [1]** 38/7 | **tack [1]** 14/25 **take [18]** 8/17 10/18 19/12 19/21 24/16 | **theory [1]** 10/2 **there [53]** 5/14 6/20 6/20 8/5 10/10 11/9 |
| **SECRETARY [3]** 1/6 3/13 31/16 **Section [1]** 21/13 | 27/19 34/15 49/11 **somebody [2]** 33/11 33/17 | **striking [1]** 37/12 **structure [1]** 34/8 **subject [4]** 23/18 | 25/12 28/7 31/16 34/24 37/15 41/16 42/21 45/11 46/14 | 12/12 13/11 13/12 13/15 13/18 14/5 14/7 |
| **sections [1]** 23/9 **Security [2]** 31/16 32/25 **see [12]** 3/9 7/23 12/2 | | | | |

# T

**there...** [40] 14/3 14/18 16/15 18/2 18/15 18/15 19/5 20/13 20/25 21/5 21/10 24/14 24/18 25/1 25/18 26/22 28/24 29/19 30/10 30/14 30/17 32/22 34/9 35/22 36/21 37/18 37/21 39/23 40/5 42/1 42/2 42/4 43/9 44/2 47/13 47/20 47/21 47/25 49/22 49/24
**there's** [30] 10/4 10/9 13/7 16/17 17/15 22/2 22/17 22/18 23/8 24/19 28/15 31/23 32/4 36/16 39/11 39/18 39/21 40/10 40/19 42/7 42/9 45/5 45/6 47/15 47/17 48/1 48/24 50/19 50/19 51/5
**thereafter** [1] 34/5
**therefore** [5] 10/19 32/2 36/24 41/13 51/21
**thereto** [1] 11/2
**these** [5] 13/2 14/8 29/3 37/13 41/21
**they** [23] 11/17 11/18 19/19 20/4 29/20 29/21 30/19 31/16 31/20 35/13 35/17 36/13 40/1 41/11 41/21 41/22 43/16 46/3 46/10 46/12 46/13 46/14 48/25
**they're** [9] 11/15 12/1 31/20 35/3 40/24 42/20 43/16 44/16 45/21
**thing** [8] 9/20 15/5 16/17 21/15 22/2 25/19 34/23 43/19
**things** [7] 17/3 17/22 26/6 41/17 44/22 46/1 50/7
**think** [32] 9/15 12/8 13/18 14/1 15/22 16/6 16/20 16/25 17/22 33/16 35/19 38/9 41/6 41/7 42/3 45/22 45/24 45/25 46/2 46/11 47/10 47/23 48/5 48/16 48/21 49/1 49/12 49/24 50/1 50/2 52/12 52/22
**thinking** [3] 35/25 36/2 51/18
**third** [6] 10/9 24/24 28/8 42/4 44/6 44/6
**this** [103]
**those** [13] 7/12 8/25 12/13 12/21 12/21

14/6 15/1 20/16 20/22 23/8 44/22 44/24 52/6
**though** [7] 21/16 23/14 30/5 33/21 39/7 42/4 45/13
**thought** [3] 30/6 34/14 37/12
**thread** [1] 43/15
**three** [2] 28/2 28/4
**through** [3] 15/3 47/10 49/14
**time** [18] 5/12 6/14 6/16 7/15 14/10 19/12 20/8 28/8 34/4 36/3 38/15 42/8 42/12 43/6 50/4 50/14 51/23 53/22
**timely** [3] 11/2 11/8 14/1
**times** [1] 14/25
**today** [10] 4/12 4/17 5/24 14/14 23/1 24/4 24/6 31/6 35/19 43/8
**together** [1] 17/2
**told** [4] 21/23 33/10 33/14 33/14
**tomorrow** [2] 14/16 43/7
**too** [1] 46/25
**top** [1] 7/21
**total** [1] 43/12
**transcript** [2] 54/5 54/7
**treat** [1] 10/16
**trial** [2] 16/6 45/6
**tried** [2] 42/8 48/25
**TRO** [22] 5/16 5/22 8/23 8/23 8/24 15/8 16/1 16/5 16/8 16/22 17/10 23/1 26/5 26/13 26/14 28/17 28/24 29/7 31/5 36/3 36/25 38/19
**TRO opinion** [1] 26/5
**true** [6] 19/13 28/3 30/7 40/4 42/9 54/5
**trust** [1] 28/9
**try** [3] 9/7 9/8 17/12
**trying** [5] 11/13 13/24 20/13 24/24 31/13
**tunc** [1] 6/18
**turn** [4] 6/1 38/8 40/7 41/1
**tutorial** [1] 12/24
**two** [7] 16/4 23/8 38/24 41/17 44/19 44/22 44/24

# U

**U.S** [1] 39/22
**U.S.C** [2] 8/2 54/4
**Uh** [2] 32/23 52/25
**Uh-huh** [2] 32/23 52/25
**Ulander** [1] 3/10
**un** [1] 5/20
**un-ring** [1] 5/20

**unclear** [1] 9/9
**under** [36] 8/2 8/6 8/7 8/8 8/16 10/1 10/4 10/22 14/6 14/8 18/1 21/11 23/7 23/12 23/19 25/4 25/9 25/13 26/23 29/17 30/14 30/21 30/25 31/17 34/14 34/20 34/21 39/8 42/23 43/17 43/21 43/22 43/22 46/15 50/11 52/20
**understand** [7] 6/17 6/24 19/24 24/9 36/2 44/3 48/12
**understanding** [3] 7/25 12/17 33/22
**understood** [1] 39/9
**unexecuted** [1] 41/24
**unfortunately** [1] 48/11
**unique** [2] 14/8 14/8
**UNITED** [10] 1/1 1/12 2/15 3/3 16/25 32/2 44/4 51/4 54/3 54/8
**United States** [4] 16/25 32/2 44/4 51/4
**unlawful** [1] 27/18
**unless** [6] 7/6 28/24 29/20 31/6 46/14 48/21
**unnecessary** [2] 9/3 50/14
**until** [13] 15/8 15/8 16/2 16/12 17/15 25/17 34/18 35/23 36/4 51/6 52/8 52/10 53/8
**unwind** [1] 12/8
**up** [16] 5/5 11/20 12/17 15/9 15/16 17/22 27/10 27/23 28/21 31/14 33/19 35/3 45/11 47/8 48/9 49/21
**upholding** [1] 6/12
**upon** [2] 47/8 49/22
**urge** [1] 9/2
**URQUHART** [2] 1/16 2/3
**us** [7] 8/21 9/9 11/22 13/14 24/25 28/9 29/23
**usdoj.gov** [1] 2/19
**used** [1] 33/2
**using** [2] 30/16 33/1

# V

**valid** [1] 48/1
**venues** [1] 12/21
**versus** [2] 23/15 23/15
**very** [13] 5/20 6/16 7/7 21/6 21/24 26/10 28/1 30/16 34/15 37/15 38/4 38/4 38/22
**view** [5] 11/20 12/7 15/7 30/23 51/16

**violates** [3] 31/6 46/14 52/3
**violation** [2] 15/11 16/16
**Virginia** [1] 2/12
**voluntarily** [2] 43/19 44/9
**voluntary** [1] 45/8
**vu** [1] 5/11

# W

**wait** [1] 33/3
**waive** [1] 41/8
**waives** [1] 19/12
**walking** [1] 27/10
**want** [26] 6/24 7/19 15/7 15/10 18/21 24/17 24/25 26/19 28/17 29/11 33/22 35/19 36/1 36/3 36/16 37/10 37/11 39/4 40/7 40/7 46/10 47/10 47/16 49/7 50/13 51/4
**wanted** [1] 38/10
**warnings** [1] 24/18
**warrant** [10] 23/2 26/7 26/20 26/23 26/23 28/11 29/25 31/21 35/1 43/17
**was** [64]
**Washington** [2] 1/17 2/17
**wasn't** [1] 28/1
**way** [3] 30/23 33/19 49/1
**ways** [2] 25/20 25/21
**we** [74]
**we'd** [1] 40/6
**we'll** [13] 18/6 18/13 24/17 25/18 38/13 41/20 41/24 44/7 44/7 44/8 50/4 50/24 53/7
**we're** [15] 5/6 5/24 15/24 21/16 26/5 28/6 38/3 39/12 41/13 46/19 47/4 47/6 47/11 48/18 51/14
**we've** [7] 9/15 14/13 15/2 38/9 46/21 48/13 50/7
**website** [1] 22/16
**wee** [1] 15/6
**week** [2] 5/6 41/23
**well** [32] 6/7 11/20 12/4 12/4 13/13 14/17 15/2 15/21 18/23 19/8 19/14 20/7 20/15 21/8 23/16 25/16 26/17 27/16 27/25 28/23 30/22 31/8 31/12 33/23 35/18 35/25 38/6 43/21 44/1 44/7 46/11 49/18
**went** [2] 30/1 41/11
**were** [17] 10/10 14/7 14/14 16/25 18/9 24/22 25/23 29/7 29/8

29/15 29/25 29/25 34/8 37/11 43/24 44/24 53/25
**weren't** [1] 27/9
**what** [68]
**what's** [7] 28/18 45/5 45/6 45/19 47/18 49/9 51/7
**whatever** [5] 18/16 42/21 42/21 43/16 52/13
**whatsoever** [1] 43/10
**when** [7] 13/16 15/24 19/4 19/9 24/19 46/8 49/15
**where** [14] 6/19 6/25 9/9 13/6 19/20 29/20 32/25 38/3 39/23 45/19 46/18 46/19 47/19 48/11
**whereas** [1] 11/3
**whether** [16] 9/7 9/8 12/25 13/3 15/24 18/6 20/13 26/4 27/24 29/13 38/19 40/23 49/11 49/23 50/19 50/19
**which** [35] 8/16 10/3 10/8 13/19 14/9 16/23 21/10 21/13 21/14 21/15 22/16 23/20 23/23 27/5 27/20 29/3 29/11 29/13 30/7 31/14 33/6 35/20 37/14 39/12 39/14 40/14 41/12 41/19 41/23 42/4 45/20 46/12 47/6 47/7 47/13
**while** [6] 11/20 20/16 21/24 24/14 24/15 43/25
**who** [14] 4/19 8/1 33/14 33/14 36/9 36/9 36/12 36/15 36/15 36/17 37/10 37/20 39/23 44/4
**whole** [1] 43/18
**why** [21] 5/6 5/24 7/2 12/1 12/5 12/23 19/8 20/12 26/12 27/11 27/13 27/14 28/18 28/21 31/12 34/22 37/11 37/17 41/10 43/23 50/13
**will** [40] 12/13 13/7 14/14 21/25 22/25 23/1 23/2 23/2 24/1 26/8 26/10 27/24 28/13 28/13 32/9 32/20 34/25 35/11 35/12 35/12 35/15 35/15 35/16 36/3 38/18 41/17 41/18 41/23 42/1 42/1 42/15 44/12 47/14 49/21 50/8 50/18 50/22 50/24 50/24 53/8

**W**

**willing [3]** 42/20 48/6 44/14
**wish [5]** 27/1 35/18 46/12 46/14 52/13
**withholding [3]** 6/21 9/25 12/10
**within [1]** 16/18
**without [5]** 28/4 35/4 35/6 35/7 44/5
**word [3]** 10/19 22/19 28/21
**words [2]** 15/12 26/18
**work [8]** 17/2 28/22 38/12 38/13 38/18 50/3 50/3 53/7
**working [1]** 50/24
**works [2]** 44/3 49/7
**worry [1]** 29/6
**worth [1]** 48/15
**would [53]** 7/3 8/10 8/18 9/20 10/16 10/21 10/22 11/6 11/7 12/17 12/21 13/11 13/18 14/4 14/7 16/7 16/15 16/18 16/18 17/8 17/11 17/11 17/14 22/5 23/7 23/12 23/16 25/2 25/12 26/10 26/21 26/22 29/16 29/19 29/19 29/24 30/15 31/11 31/12 32/15 36/13 36/13 38/12 39/18 40/6 40/20 41/11 42/2 42/10 44/24 46/7 50/2 51/20
**wouldn't [2]** 14/5 40/23
**write [2]** 38/2 51/5
**writing [1]** 24/5
**wrong [8]** 31/25 36/14 36/15 36/17 36/24 37/2 37/18 38/7
**wrote [3]** 36/9 37/10 40/1

**X**

**XINIS [2]** 1/12 3/5

**Y**

**y'all [1]** 27/1
**yeah [11]** 20/5 22/7 22/7 22/24 24/9 45/10 45/15 46/24 48/12 48/12 49/20
**year [2]** 11/4 50/24
**years [1]** 31/11
**Yep [2]** 30/12 53/6
**yes [34]** 3/11 7/12 13/18 14/4 15/15 15/18 15/19 16/4 17/7 17/9 24/3 26/22 31/3 33/5 33/5 33/13 35/10 36/7 37/3 37/9 37/24 38/5 38/16 38/21 42/18 44/7 47/3 47/23

48/3 48/17 51/20 51/25 52/12 52/12
**yesterday [1]** 43/24
**yet [7]** 18/17 19/6 21/3 26/12 32/20 33/10 48/25
**York [2]** 2/4 2/4
**you [211]**
**you all [7]** 3/9 7/7 11/15 34/19 34/22 36/17 51/12
**you know [15]** 9/17 12/18 15/7 16/1 18/1 24/15 24/15 29/17 41/19 42/24 43/5 44/17 46/6 46/7 49/21
**you'll [2]** 30/13 42/14
**you're [37]** 12/3 21/23 23/17 24/1 25/11 26/1 26/3 26/4 26/11 26/14 27/1 27/12 27/12 28/3 28/8 28/14 29/2 29/11 29/23 31/5 31/6 31/11 31/19 32/10 34/24 34/24 36/21 40/14 41/15 45/4 45/7 47/7 49/19 50/12 50/15 50/15 50/16
**you've [2]** 22/3 36/23
**Young [1]** 4/24
**your [139]**
**Your Honor [78]**
**Your Honor's [3]** 7/13 7/20 8/23
**yourself [1]** 44/9
**yourselves [1]** 3/16

**Z**

**Zadvydas [9]** 8/9 8/17 10/19 10/24 25/25 26/5 40/15 42/1 47/13