UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, | Case No. 8:25-CV-02780-PX |
| Petitioner, | RESPONDENTS' REPLY TO PETITIONER'S JANUARY 5, 2026 RESPONSE (ECF 130) |
| v. | |
| KRISTI NOEM, ET AL., | |
| Respondents. | |

## INTRODUCTION

All agree that Petitioner is subject to a valid final order of removal. The government is prepared to effectuate his removal to a third country designated to be in the best interests of the United States. Detention under 8 U.S.C. § 1231 to effectuate his removal is thus both lawful and warranted. Petitioner's arguments to the contrary are meritless. The order of removal entered by the immigration judge on December 11, 2025, became administratively final on January 13, 2026. Pursuant to statute, post-order detention pursuant to the removal period began on the date of that administratively final order of removal. The post-order detention does not require that the country of removal be certain in order for detention to be lawful. Finally, the Court's injunction against Petitioner's re-detention and removal operates to extend the removal period.

## FACTUAL BACKGROUND[1]

Following this Court's December 11, 2025, order granting Petitioner's Petition for Writ of Habeas Corpus, ECF No. 110, 111, Respondents promptly released the Petitioner under an "ICE Order of Supervision," *see id*. 112-1, 112-2. On December 11, 2025, Immigration Judge Phillip Taylor issued an order of removal *nunc pro tunc* and designated El Salvador as the country of

---

[1] In light of the extensive litigation on Petitioner's habeas petition and the Court's familiarity with that litigation, Respondents limit the scope of this section to new developments.

removal on December 11, 2025, making the order effective as of October 10, 2019. *Id*. 112-2. Following a hearing and requests for clarification, Respondents submitted a corrected ICE Order of Supervision with accurate authority to detain Petitioner pending removal on December 26, 2025. ECF No. 126-1 at 2. On January 5, 2026, Petitioner purported to waive his right to appeal the order. ECF No. 130 at 2. Petitioner did not file an appeal to the Board of Immigration Appeals within the 30-day deadline. *See* 8 C.F.R. § 1003.38(b).

While there has been substantial factual and legal development before the Court, the foregoing events provide occasion for the further discussion of five questions. (1) What is the effect of the order of removal entered *nunc pro tunc*? (2) When did the order of removal become administratively final? (3) When does the removal period begin to run? (4) Does the country of removal play any role in the government's authority to detain Petitioner under Section 1231; (5) Does the Court's stay of removal extend the removal period?

## ARGUMENT

**PETITIONER IS SUBJECT TO A FINAL ORDER OF REMOVAL AND CAN BE DETAINED UNDER 8 U.S.C. § 1231 BECAUSE REMOVAL IS IMMINENT**

### I. The IJ's entry of an Order of Removal *Nunc Pro Tunc* Confirms the Issuance of an Order of Removal on October 19, 2019

"'*Nunc pro tunc*' is a fancy phrase for backdating. Translated as 'now for then,' it is an ancient tool of equity designed to give retroactive effect to the order of a court." *Sierra Club v. Whitman*, 285 F.3d 63, 67 (D.C. Cir. 2002) (citation omitted). Immigration courts can use *nunc pro tunc* orders to retroactively correct errors in orders and documents. *See, e.g., Fernandes Pereira v. Gonzales*, 417 F.3d 38, 47 (1st Cir. 2005) (holding *nunc pro tunc* relief "may only be used to correct inadvertent or clerical errors."); *Gutierrez-Castillo v. Holder*, 568 F.3d 256, 262 (1st Cir. 2009) (if a court has "fail[ed] to sign an order on an intended date," the court can "label[]

the order 'nunc pro tunc' and make it effective as of the earlier date."); *Romero-Rodriguez v. Gonzales*, 488 F.3d 672, 677 (5th Cir. 2007) (*nunc pro tunc* relief exists "to correct[] limited types of errors, namely clerical or other record keeping errors.").

Here, the Court found that the original immigration judge's decision, dated October 10, 2019, did not enter a removal order or designate a country of removal. ECF 111 at 18, 21. The immigration judge then issued a *nunc pro tunc* order correcting what the Court identified as defects, entering what undisputedly constitutes an order of removal and designation of a country of removal (El Salvador). ECF 112-2. The result of the *nunc pro tunc* order is that the October 10, 2019, decision by the immigration judge now includes the requisite order of removal and designation of a country of removal.

Even if the immigration judge for some reason could not enter a removal order or designate a country of removal *nunc pro tunc*, the upshot would simply be that the removal order was entered "now"—that is, on December 11, 2025—instead of "now for then." Either way, Petitioner presently has a final order of removal. And, as the next section explains, the order became administratively final on the same date whether it was entered *nunc pro tunc* or not.

II.   **8 U.S.C. § 1231 Became the Appropriate Statutory Basis for Detention Pending Removal When the Final Order of Removal Became "Administratively Final" and Consequently Began the Removal Period.**

The Immigration and Nationality Act ("INA") clearly provides that an alien may be detained pending removal once the final order of removal becomes "administratively final": "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). The removal period is further defined by statute: "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien

3

from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). When that 90-day period begins to run is also set by statute:

> The removal period begins on the latest of the following:
>
> (i) The date the order becomes administratively final;
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order;
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). Congress also specified when an order becomes "administratively final":

> [A final order of removal] shall become final upon the earlier of—
>
> (i) a determination by the Board of Immigration Appeals affirming such order; or
>
> (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.

Last, Congress provided that the removal period may be tolled:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

*Id.* § 1231(a)(1)(B).

As Petitioner conceded, on December 12, 2025, the immigration judge's order of removal was not yet final. *See* ECF 112 at 3. Petitioner attempted to cast doubt on that notion by pointing out that the order of supervision issued on December 11, 2025, indicated that his release was under "a final order of removal." *See* ECF 118 at 7. However, that order of supervision was subsequently corrected to reflect the order's lack (at the time) of administrative finality. *See* ECF 126-1 at 2. Today, whether because Petitioner represented to this Court that he "has decided not to appeal the immigration judge's order," ECF 130 at 2, or because the time to appeal has expired without the

filing of an appeal, Petitioner's final order of removal became administratively final no later than January 13, 2026. The Court need not decide the precise date because, as discussed *infra* at Section IV, the Court's stay of re-detention and removal functions to extend the removal period.

The administrative finality of the final order of removal has two immediate consequences. First, 8 U.S.C. § 1231(a) authorizes detention of Petitioner. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021). Second, the removal period begins. *See id.* at 534-35.

Petitioner argues that the removal period has already long since expired because the December 11, 2025, *nunc pro tunc* order caused the removal period to begin running no later than October 10, 2019. *See* ECF 130 at 2. Petitioner's argument is without merit.

It is not uncommon—indeed, it is the norm—for the entry of an order and its date of "administrative finality" to be distinct dates. The INA specifically provides that the immigration judge's order of removal is *not* "final" upon issuance; rather, it becomes final only upon either the waiver of appeal or the expiration of the time for appeal. 8 U.S.C. §§ 1003.38(b), 1003.39.

So, when did the time to appeal the immigration judge's December 11 order expire? Regulations give the answer: The time to appeal an immigration judge's order is "30 calendar days after the stating of [the] immigration judge's oral decision or the mailing or electronic notification of [the] immigration judge's written decision." 8 C.F.R. § 1003.38(b). That time has nothing to do with the *nunc pro tunc* component of the order. The appeal deadline does not ask whether the order had retroactive effect; it asks only what day the order was orally announced, mailed, or electronically noticed. *Id.* Any other reading of the regulation would leave the immigration judge able to enter a *nunc pro tunc* order that deprives the opposing party of the ability to appeal it—an unlikely, unfair and novel result. The removal period thus began either (at the

earliest) on the date Petitioner represented to this Court that he would not appeal or (at the latest) 30 days after the immigration judge mailed or electronically noticed the December 11 order.

Here, the Court held that there was no order of removal prior to December 11, 2025. Because—under the Court's holding—the entry of a final order of removal was contingent on the immigration judge's December 11 order, that latter order certainly comprises part of the order of removal. *See Nasrallah v. Barr,* 590 U.S. 573, 482 (2020) ("[F]inal orders of removal encompass only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal"). Insofar as an appeal of that decision remained open, the order of removal was not "final for any purpose." *Kouambo v. Barr*, 943 F.3d 205, 211 (4th Cir. 2019), *quoting Abdisalan v. Holder,* 77 F.3d 517, 523 (9th Cir. 2014) (en banc) (bracket in original, emphasis added). But the order eventually attained finality on the date the time for taking an appeal to the Board – certainly, no later than January 13, 2026.

Now, we arrive at the question of when § 1231(a)(1)(B) specifies the removal period begins. It specifically provides that the removal period begins on "[t]he date the order becomes administratively final. . . ." 8 U.S.C. § 1231(a)(1)(B). The question is not the date of the "order of removal," which in light of the *nunc pro tunc* order could be considered to be October 10, 2019. Rather, the statute specifies that the relevant moment is the date on which the order of removal becomes administrative final. That date is undoubtedly January 13, 2026. Accordingly, that begins the relevant date for purposes of *Zadvydas v. Davis*, 533 U.S. 678 (2001). If taken into detention today for purposes of effectuating his immediate removal, section 1231 provides clear authorization for his detention for a presumptively-reasonable 180 days thereafter.

### III. *Zadvydas* and 8 U.S.C. § 1231 Allow for Continued Detention to Effectuate Removal While the Agency Processes the Petitioner for Removal.

Petitioner argues that his removal may not be lawfully effectuated unless he is removed to Costa Rica. Not so. The prospect that removal will occur at all, not the prospect of removal to a specific country, is the relevant benchmark for determining the lawfulness of detention for *Zadvydas* purposes. Nothing in § 1231 or *Zadvydas* requires release of an alien with an administratively final removal order *unless* the government can prove the country to which the alien will imminently be removed. The Fourth Circuit has held as much. In *Castaneda v. Perry*, 95 F.4th 750, 758 (4th Cir. 2024), the Fourth Circuit rejected a *Zadvydas* claim and ruled that uncertainty about the country to which the petitioner would be removed did not invalidate the permissibility of his continued detention under § 1231. It reasoned that "[o]ngoing withholding-only proceedings," in which the petitioner sought to avoid removal to his country of origin, "are insufficient to demonstrate that removal is no longer reasonably foreseeable" because "nothing would prevent ICE from removing him to another country" even if he succeeded in obtaining protection against removal to his country of origin. *Id.*

Importantly, Petitioner's insistence on an opportunity to designate a new country has no basis in law. At most, the statute and the regulations provide an alien in removal proceedings the opportunity to designate a country of removal. *See* 8 C.F.R. § 1240.10(f). Petitioner has already been provided that opportunity, as affirmed in the transcript of his proceedings on May 29, 2019, which contains the following exchange:

> JUDGE TO MR. ABREGO-GARCIA
>
> And based on the pleadings, I do find that you're removable, as charged. I am required to designate a country for your removal, should that become necessary. Would you like me to designate your country of El Salvador?

        MR. ABREGO-GARCIA TO JUDGE

        Yes.

Exhibit X at 6 (attached to this document). Thereafter, Petitioner expressed a fear of returning to El Salvador, and the immigration judge afforded him time to file an asylum application. *Id.* at 6-7. Petitioner did not, at that time (or for many years thereafter), designate Costa Rica. Of course, the immigration judge's December 11, 2025, order also included a designation of El Salvador, consistent with the exchange between the immigration judge and Petitioner. Nothing in the statute or regulations provides for—or requires the government to offer—any additional opportunity to designate a country of removal. In any event, as previously briefed, under 8 U.S.C. § 1231(b)(2)(C), the Secretary of Homeland Security is expressly authorized, in her discretion, to "disregard" that designation and designate another country, and Petitioner has no liberty interest in removal to a particular country. ECF 105 at 23. Also, as previously argued, the Court lacks jurisdiction to review that discretionary determination or any of the legal and factual matters on which it is contingent. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); ECF 72 at 28-30. Accordingly, Petitioner's country of removal is not a pre-requisite to the authority to detain him, and the Executive's decision to disregard Petitioner's preferred country of removal is outside of the Court's jurisdiction.

        Petitioner's insistence that there is just one viable country for removal—Costa Rica—and that Petitioner is willing and able to board the next flight to Costa Rica, works against his argument that there is no imminent prospect of removal. At any point the government can detain Petitioner to effectuate removal to the country it determines is the best fit. Here, Petitioner argues that detention—for any length of time—for removal to any country but Costa Rica is unlawful. Petitioner would have this Court vitiate the government's discretion to determine the country of

removal under section 1231. That violates both jurisdictional bars of the INA and its substantive provisions. *See* ECF 72 at 28-30.

Petitioner suggests that detention for any period would violate *Zadvydas*. That is incorrect for a few reasons. First, *Zadvydas* addressed detention *after* the 90-day removal period. 533 U.S. at 682 ("[W]e must decide whether this post-removal-period statute [§ 1231(a)(6)] authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period."). Petitioner is currently still in his removal period, so detention is proper under § 1231(a)(2)(A), without any need to rely upon § 1231(a)(6). Nothing in *Zadvydas* suggests that the 90-day removal period is indefinite or that it is constitutionally impermissible to comply with Congress's mandate that the alien "*shall*" be detained during that 90-day period. *Id.* § 1231(a)(2). Nor could it: *Zadvydas* hinged on the conclusion that the word "'may'" in § 1231(a)(6) "is ambiguous" and thus subject to a constitutional-avoidance reading. *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (rejecting lower courts' attempt to expand *Zadvydas*'s six-month limit to statutes lacking "the word 'may'" or providing "for detention for a specified period of time").

Second, *Zadvydas* affords the government a presumptive period of six months of detention at some point following the expiration of the 90-day removal period. Under *Zadvydas*, even if six months elapse with no removal, the alien has the burden to show "no significant likelihood" that he will be removed "in the reasonably foreseeable future." 533 U.S. at 701. Only after the alien makes that showing must the government provide evidence to the contrary. *Id*.

Under *Zadvydas*, and § 1231(a)(6), detention beyond six months exceeds statutory authority only in "the context of the indefinite and potentially permanent detention involved" in that case. *Castaneda*, 95 F.4th at 757. Here, the government is not "holding" Petitioner "in detention, with no plans to release" him. *See Castaneda*, 95 F.4th at 757. Instead, as Petitioner

acknowledges, "Respondents are seeking to remove him." ECF No. 1 ¶ 45. So although Petitioner may "provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, the record here contains "evidence sufficient to rebut that showing." *Id*. As acknowledged by Petitioner, the government is actively working to remove him to various countries—including Liberia, which as *agreed* to take him. ECF 71 at 6-7. Thus, Petitioner, himself, has identified nothing standing in the way of his removal in the reasonably foreseeable future besides the current litigation.

### IV.   A Stay of Removal Does Not Limit the Government's Authorized Detention Periods Under 8 U.S.C. § 1231 or *Zadvydas*.

Importantly, Petitioner has sought and received an order from the Court enjoining his re-detention and staying his removal. *See* ECF 20; ECF 114 at 4-5. The Government submits that in seeking a stay of his removal, the removal period is automatically extended by operation of 8 U.S.C. § 1231(a)(1)(C), insofar as Petitioner has taken "act[ed] to prevent [his] removal subject to an order of removal."

Here, Petitioner may not rely on anticipated protracted "legal proceedings of his own making." *Callender v. Shanahan*, 281 F. Supp. 3d 428, 435 (S.D.N.Y Dec. 13, 2017) ("[Petitioner] must establish that the bottleneck is not due to his own continuing efforts to litigate."). "It is well settled . . . that an alien cannot, through unilateral action, create the very circumstance that he relies on for relief under *Zadvydas*." *Id. at* 437; *see also, e.g., Castaneda*, 95 F. 4th at 757 (rejecting *Zadvydas* claim where petitioner was "being detained pending the completion of withholding-only proceedings that he voluntarily initiated"); *Ambimola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) (rejecting *Zadvydas* claim in part because "the real reason for [petitioner's] lengthy detention" was his "consistent pattern of seeking and/or receiving numerous judicial stays and filing his numerous petitions for reconsideration and appeals."). Here, Petitioner has a final order of removal, and the

10

government is actively processing his removal from the country. Any delays in his immediate removal are due to Petitioner's efforts to avoid removal, not the government's inability to identify a country that will accept Petitioner.

Where, as here, the government could and would repatriate an alien but for his continued litigation and claims for relief, *Zadvydas* does not render detention unlawful. *See Prieto-Romero v. Clark*, 534 F. 3d 1053, 1062 (9th Cir. 2008). Likewise, here, Petitioner "foreseeably remains capable of being removed" at present, "and so the government retains an interest in assuring his presence at removal." *See Prieto-Romero*, 534 F.3d at 1065; *Callender*, 281 F. Supp. 3d at 436 (holding that "there is substantial evidence that petitioner can and will be removed as soon as his pending immigration proceedings—all of them filed by petitioner himself—are resolved).

## CONCLUSION

For the foregoing reasons, the Court should dissolve the injunction issued at ECF 114.

Dated: January 22, 2026　　　　　　　　Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General
U.S. Department of Justice
Civil Division, Office of Immigration Litigation

JONATHAN GUYNN
Deputy Assistant Attorney General
U.S. Department of Justice
Civil Division, Torts Branch

ERNESTO MOLINA, JR.
Deputy Director
Office of Immigration Litigation

*/s/ Shane A. Young*　　　　.
SHANE A. YOUNG
Trial Attorney

U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-451-7483
Shane.a.young@usdoj.gov

ATTORNEYS FOR RESPONDENTS

## A. CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

                                        */s/ Shane A. Young*
                                        SHANE A. YOUNG
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division
                                        Office of Immigration Litigation