UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| Kilmar Armando Abrego Garcia,<br><br>                Petitioner,<br><br>v.<br><br>Kristi Noem, *et al.*,<br><br>                Respondents. | Case No. 8:25-cv-02780 (PX) |

**Petitioner's Reply to the Government's January 22 Submission**

**Table of Contents**

                                                                                  **Page**

Introduction ............................................................................................................................. 1

Argument ................................................................................................................................ 2

    I.    The removal order was administratively final in November 2019, so detention remains impermissible under 8 U.S.C. § 1231(a) and *Zadvydas*. ............................................................ 2

    II.    The Court's injunction does not extend the removal period. .............................................. 5

    III.    The Government cannot disregard Abrego Garcia's designation of Costa Rica. ........... 8

    IV.    Removal is still not reasonably foreseeable, and re-detention is impermissible. ......... 10

Conclusion ............................................................................................................................ 12

# **TABLE OF AUTHORITIES**

Page

## **Cases**

*Matter of A-*,
  3 I. & N. Dec. 168 (BIA 1948) ...............................................................................................4

*Abimbola v. Ridge*,
  181 F. App'x 97 (2d Cir. 2006) ..............................................................................................8

*Bufkin v. Collins*,
  604 U.S. 369 (2025)................................................................................................................8

*Callender v. Shanahan*,
  281 F. Supp. 3d 428 (S.D.N.Y. 2017).....................................................................................8

*Castaneda v. Perry*,
  95 F.4th 750 (4th Cir. 2024) .................................................................................................10

*Edwards v. INS*,
  393 F.3d 299 (2d Cir. 2004)....................................................................................................4

*Glynne v. Wilmed Healthcare*,
  699 F.3d 380 (4th Cir. 2012) ..................................................................................................4

*Jama v. ICE*,
  543 U.S. 335 (2005)........................................................................................................10, 11

*Johnson v. Guzman Chavez*,
  594 U.S. 523 (2021)................................................................................................................3

*Juarez Villatro v. Noem*,
  No. 1:25-cv-2359 (E.D. Va. Jan. 6, 2026), ECF No. 18.........................................................7

*Muayila Muayila v. Lynch*,
  2016 WL 704307 (D. Md. Feb. 23, 2016) ............................................................................10

*Portela-Hernandez v. Trump*,
  2026 WL 74042 (D. Md. Jan. 9, 2026)........................................................................6, 7, 12

*Prieto-Romero v. Clark*,
  534 F.3d 1053 (9th Cir. 2008) ................................................................................................8

*Riley v. Bondi*,
  606 U.S. 259 (2025)................................................................................................................3

*Sierra Club v. Whitman*,
    285 F.3d 63 (D.C. Cir. 2002) ................................................................................................4

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ..........................................................................................1, 3, 11, 12

## **Statutes and Regulations**

8 U.S.C. § 1101(a)(47)(B) ............................................................................................................3

8 U.S.C. § 1231 ..........................................................................................................3, 9, 11, 12

8 U.S.C. § 1231(a) ....................................................................................................................1, 2

8 U.S.C. § 1231(a)(1)(A) ..............................................................................................................3

8 U.S.C. § 1231(a)(1)(C) ..............................................................................................................5

8 U.S.C. § 1231(b)(2)(A)(i) ......................................................................................................8, 9

8 U.S.C. § 1231(b)(2)(C) ..............................................................................................................9

8 C.F.R. § 1241.1(c) ......................................................................................................................3

In accordance with the Court's January 14 order (ECF No. 136), Petitioner Kilmar Armando Abrego Garcia respectfully replies to the Government's January 22 submission (ECF No. 137).

**Introduction**

The Court should deny the Government's request to dissolve the injunction prohibiting Abrego Garcia's re-detention and removal. The Government insists that the immigration judge's order of December 11, 2025, restarted the clock for detention and removal under 8 U.S.C. § 1231(a) and *Zadvydas v. Davis*, 533 U.S. 678 (2001). It did not.

The December 2025 order expressly states that it corrected a *separate* order dated October 10, 2019, to add an order of removal "nunc pro tunc." ECF No. 112-2 at 5. By its terms, then, the operative removal order dates to October 2019—not December 2025. That removal order became administratively final 30 days later, in November 2019—not January 2026. The Government's effort to treat the removal order as six years old for removal purposes but brand new for detention purposes is irreconcilable with the order's *nunc pro tunc* character.

In any event, no matter when the removal period began, detention under § 1231(a) remains impermissible. The Government may detain Abrego Garcia under § 1231(a) only to timely effectuate lawful removal. But as this Court found in granting habeas relief, the Government's conduct—including serially designating countries it knew "never agreed to take" Abrego Garcia and making "misrepresentation[s]" to the Court that Liberia was the only viable removal country— "reflect[s] that whatever purpose was behind his detention, it was not for the 'basic purpose' of timely third-country removal." ECF No. 110 at 28–29 (citing *Zadvydas*, 533 U.S. at 697).

Nothing has changed on that front. The Government identifies no new evidence that re-detention would now serve any legitimate purpose. To the contrary, its submission confirms that it still refuses to remove Abrego Garcia to Costa Rica, the country he designated and the only one

to which removal would presently comply with the Immigration and Nationality Act (**INA**) and due process. And the Government has neither identified any other viable removal destination, nor taken the steps constitutionally required before removal to any other country could occur. What has prevented Abrego Garcia's removal is not this Court's injunction, but the Government's failure to pursue removal "consistently with the INA and due process." ECF No. 110 at 12 n.10.

The Court should therefore maintain its injunction until the Government demonstrates that re-detention and removal of Abrego Garcia would comply with the INA and due process.

## Argument

**I.    The removal order was administratively final in November 2019, so detention remains impermissible under 8 U.S.C. § 1231(a) and *Zadvydas*.**

The immigration judge's December 2025 order states that the prior decision granting withholding of removal on October 10, 2019, "erroneously omitted" an "order of removal to El Salvador." ECF No. 112-2 at 5. The December 2025 order "corrects that scrivener's error and amends the written decision in this case by adding the following: The Respondent is ordered removed to El Salvador based on the charge contained in the Notice to Appear, but the Respondent's application for withholding of removal to El Salvador pursuant to INA § 241(b)(3) is granted." *Id.* The order further provides that "[t]hese corrections are hereby issued nunc pro tunc to the Immigration Court's written decision and order of October 10, 2019." *Id.*

As is clear from its language, the December 2025 order is not itself an order of removal. Instead, it amends the separate October 2019 withholding order—*nunc pro tunc*—to include an order of removal. Once amended, the operative removal order dates to October 2019, not December 2025. Abrego Garcia had 30 days to appeal the October 2019 decision to the BIA. *See* ECF No. 1-1 at 15. He did not appeal. Under governing law, the removal order became administratively final when the appeal period expired in November 2019. *See* 8 U.S.C.

§ 1101(a)(47)(B); 8 C.F.R. § 1241.1(c); *Riley v. Bondi*, 606 U.S. 259, 260 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by the [BIA] affirming such order,' or (2) 'expiration of the period in which the alien is permitted to' petition the BIA for review of the order.") (quoting § 1101(a)(47)(B)); *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021) (removal order is "administratively final" when "the BIA has reviewed the order (or the time for seeking the BIA's review has expired)").

As this Court has already recognized, for "an order of removal in effect as of October 10, 2019," "not only is *Zadvydas v. Davis*, 533 U.S. 678 (2001) squarely applicable," but also "Abrego Garcia's 90-day 'removal period' under 8 U.S.C. § 1231 expired nearly six years ago." ECF No. 114 at 2–3. Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." That removal period began on "the date the order of removal [became] administratively final." *Id.* § 1231(a)(1)(B)(i). Here, Abrego Garcia's *nunc pro tunc* removal order became administratively final in November 2019, so the 90-day removal period lapsed long ago and *Zadvydas* applies. *See* ECF No. 114 at 2–3; *see also* ECF No. 110 at 25–29 (explaining why "continued detention appears constitutionally infirm under *Zadvydas*").

The Government responds that the removal order did not become final until January 13, 2026. ECF No. 137 ("Gov't Br.") at 5–6. That argument conflates the December 2025 corrective order with the separate October 2019 removal order. It is true that the December 2025 order was appealable until January 2026. But the December 2025 order is not the removal order; instead, it corrects the separate October 2019 decision to make that earlier decision an order of removal "nunc pro tunc." ECF No. 112-2 at 5. Nothing in the December 2025 order purported to reset the long-expired deadline to appeal the October 2019 order. *See id.*

3

The Government rejoins that this approach would "leave the immigration judge able to enter a nunc pro tunc order that deprives the opposing party of the ability to appeal it." Gov't Br. at 5. Not so. Abrego Garcia had 30 days to appeal the December 2025 order. *See* ECF No. 112-2 at 2. Such an appeal could have challenged the immigration judge's authority to issue the *nunc pro tunc* correction. *See* ECF No. 112 at 3–4; ECF No. 118 at 9–10. But Abrego Garcia elected to not appeal the December 2025 order. *See* ECF No. 130 at 2.

The *nunc pro tunc* removal order must therefore be treated as if it has been in effect since October 2019 and administratively final since November 2019. That is the nature of *nunc pro tunc* orders. "'*Nunc pro tunc*' is a fancy phrase for backdating." *Sierra Club v. Whitman*, 285 F.3d 63, 67 (D.C. Cir. 2002) (citations omitted). Specifically, it is "a procedure whereby a determination previously made, but for some reason improperly entered or expressed, may be corrected and entered as of the original time when it should have been . . . ." *Glynne v. Wilmed Healthcare*, 699 F.3d 380, 383 (4th Cir. 2012) (citations omitted). The retroactive nature of the *nunc pro tunc* doctrine is the same in administrative immigration proceedings as in courts: "The equitable remedy of *nunc pro tunc* (literally 'now for then') relief has a long and distinguished history in the field of immigration law. . . . When a matter is adjudicated *nunc pro tunc*, it is as if it were done as of the time that it should have been done." *Edwards v. INS*, 393 F.3d 299, 308 (2d Cir. 2004) (citing *Matter of A-*, 3 I. & N. Dec. 168, 172–73 (BIA 1948)). Here, because the December 2025 order expressly made the removal order "nunc pro tunc to the Immigration Court's written decision and order of October 10, 2019," ECF No. 112-2 at 5, it established by its terms that the removal order be treated as if it were entered on October 10, 2019, and so it became administratively final 30 days later in November 2019 when the appeal period expired.

4

The Government also argues that Abrego Garcia previously "conceded" in his emergency TRO filing that "the immigration judge's order of removal was not yet final." Gov't Br. at 4 (citing ECF 112 at 3). That is not correct. What Abrego Garcia argued is that the immigration judge's *December 2025* order "is not a 'final' order of removal," because it "expressly reserves appeal rights for both parties, with an appeal deadline of January 12, 2026." ECF No. 112 at 3. As explained above, Abrego Garcia could have appealed the question of the immigration judge's authority to enter the December 2025 order—which is not itself a removal order—but he ultimately did not. And even if the removal order were treated as non-final during the period to appeal the December 2025 order, that appeal period has expired, so it is now clear beyond doubt that the *nunc pro tunc* nature of the removal order requires it to be treated as if it has been in effect and administratively final since 2019. Any other approach would nullify the *nunc pro tunc* character of the removal order.

## II.     The Court's injunction does not extend the removal period.

The Government argues that regardless of when the removal period began, it is currently extended because Abrego Garcia has "act[ed] to prevent [his] removal subject to an order of removal." Gov't Br. at 10–11 (citing 8 U.S.C. § 1231(a)(1)(C)) (alternations in original). This Court has already rejected the Government's efforts "to blame the injunction as imposing some chimeric obstacle to [its] removal efforts." ECF No. 110 at 12 n.10. It should do so again, for at least two reasons.

***First***, the record is clear that Abrego Garcia has not acted to prevent his lawful removal pursuant to an order of removal within the meaning of § 1231(a)(1)(C). As Abrego Garcia has repeatedly stated for months, he is ready and willing to be removed to Costa Rica. *See, e.g.*, *id.* at 11 ("Counsel for Abrego Garcia, in turn, emphasized that his client's continued detention must be for purposes other than facilitating removal because if Respondents 'want to remove him to Costa

5

Rica, you will hear no objection from us . . . . They can put him on the next plane to Costa Rica.'") (quoting ECF No. 107 at 78:1–5); ECF No. 32 at 23 ("To be clear: Petitioner agrees the Government could deport him to Costa Rica today."); ECF No. 1-7. Even the Government admits that Abrego Garcia "is willing and able to board the next flight to Costa Rica." Gov't Br. at 8.

*Second*, the record is also clear that the Government has not meaningfully attempted to lawfully remove Abrego Garcia. *See* ECF No. 110 at 28–29. If the Government "wished to remove him, [it] certainly could have as early as August 21, 2025, to Costa Rica." *Id.* at 28. Instead, the Government "serially 'notified' Abrego Garcia—while he sat in ICE custody—of his expulsion to Uganda, then Eswatini, then Ghana; but *none* of these countries were ever viable options, and at least two had not even been *asked* to take Abrego Garcia before [the Government] claimed supposed removal to each." *Id.* (emphasis in original). "At the same time, [the Government] did not take any steps to remove Abrego Garcia to the country which had offered to take him." *Id.* The Government has offered no evidence that suggests Abrego Garcia's lawful removal is any likelier now than it was when the Court made these findings. The Government is no closer to securing travel documents, *see* Jan. 14, 2026 Hr'g Tr. at 11:12–16 (representing that the Government was "working to get travel documents but does not have those at this moment"), or even identifying the intended third country—now suggesting it may attempt to remove Abrego Garcia to unspecified "various countries" instead of Liberia. Gov't Br. at 10.

Regardless, Abrego Garcia's removal to anywhere but Costa Rica, including to Liberia, could not occur lawfully now. "[T]he Government cannot remove [Abrego Garcia] until all the process the Constitution requires has been provided." *Portela-Hernandez v. Trump*, 2026 WL 74042, at *14 (D. Md. Jan. 9, 2026). As previously briefed, due process requires at least review of the negative fear determination under the "reasonable possibility" standard and in a manner that

6

considers the risk of refoulement. *See* ECF No. 71 at 12–21; ECF No. 88 at 18–25.[1] And as to the unspecified "various" countries the Government now raises (Gov't Br. at 10), the Government must first provide Abrego Garcia notice of the specific removal country at least 72 hours before removal and an opportunity to assert fear of removal, as well as a constitutionally-adequate review of any negative fear determination. The Government has taken none of these steps.

As a court in this District recently found when presented with arguments similar to the Government's here, "immigration judge review is necessary to meet the minimum requirements of constitutional due process before [the noncitizen] can be removed to Mexico (or any other yet-to-be-designated country of removal)," so the Government's failure to "provid[e] review of the asylum officer's decision" means that "removal cannot be reasonably foreseeable . . . because [the noncitizen] will not receive the process he is due." *Portela-Hernandez*, 2026 WL 74042, at *14. The Government "cannot overcome *Zadvydas*'s due process requirements by skipping other procedures that are constitutionally due." *Id.* Moreover, here, as in *Portela-Hernandez*, it is the Government's refusal to provide the constitutionally-required process, not the Court's injunction, that has stalled removal. Indeed, the Government's designating numerous third-countries and offering a USCIS interview for Liberia proves that the Court's injunction "has not affected the Government's ability to take steps toward effectuation of removal (but short of actual removal)." *Id.* at *7 n.9 (documenting that "the Government noted at the last hearing that it had afforded Petitioner a 'third country screening' despite the Court's order, which even the Government concedes is a necessary step in the process of seeking to remove Petitioner").

---

[1] Notably, *no* court within the Fourth Circuit has found that the March 30 Memorandum provides constitutionally sufficient due process. *See, e.g.*, *Juarez Villatro v. Noem*, No. 1:25-cv-2359, (E.D. Va. Jan. 6, 2026), ECF No. 18 (ordering immigration judge review of the agency's negative fear determination); *Rivas Rojas v. Noem*, No. 1:25-cv-1624-PTG-WBP (E.D. Va. Nov. 17, 2025), ECF No. 18 (same).

For this reason, the cases upon which the Government relies are inapposite. They concern circumstances where—unlike this case—it was the petitioner's own conduct, rather than the Government's, that extended detention and delayed removal. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (delay attributable to petitioner's "pursuit of judicial review of his administratively final removal order," not "because the destination country will not accept him or his removal is barred by our own laws"); *Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("[T]he real reason for [petitioner's] lengthy detention: [petitioner's] consistent pattern of seeking and/or receiving numerous judicial stays and filing numerous petitions for reconsideration and appeals."); *Callender v. Shanahan*, 281 F. Supp. 3d 428, 436–37 (S.D.N.Y. 2017) ("[I]ssuance of the travel documents required for removal has been delayed only by the pendency of petitioner's many challenges to the order of removal against him.").

At bottom, any delay here is not from the type of "self-inflicted wound" that extends the removal period. *Callender*, 281 F. Supp. 3d at 434–35. To the contrary, we are here because of the Government's repeated unlawful conduct—from illegally removing Abrego Garcia in violation of a withholding of removal order, to prosecuting him vindictively, to unlawfully detaining him after it found his release in the criminal prosecution "intolerable." *See* ECF No. 110 at 5.

### III. The Government cannot disregard Abrego Garcia's designation of Costa Rica.

The Government argues (at 7–8) that it is free to ignore Abrego Garcia's designation of Costa Rica as his one country of removal under § 1231(b)(2)(A). Not so. The statute is categorical: under 8 U.S.C. § 1231(b)(2)(A)(i), a noncitizen granted withholding of removal "may designate one country to which the alien wants to be removed," and under § 1231(b)(2)(A)(ii), "the Attorney General shall remove the alien to the country the alien so designates." The word "shall" shows that the statute is mandatory, not discretionary. *See Bufkin v. Collins,* 604 U.S. 369, 379 (2025). The

8

Government must follow the designation unless one of four narrow statutory exceptions applies. *See* 8 U.S.C. § 1231(b)(2)(C). None do here.

As Abrego Garcia has previously briefed, and as the record renders indisputable, the Government has neither invoked a statutory exception nor demonstrated that one applies. *See* ECF No. 32 at 14–17; ECF No. 88 at 13–16. Instead, the Government simply asserts without legal basis (at 8–9) that it is within "the government's discretion to determine the country of removal under section 1231." That assertion is irreconcilable with the mandatory nature of § 1231(b)(2)(A)(ii).

In yet another Kafkaesque rejoinder, the Government also argues (for the first time) that Abrego Garcia's designation of Costa Rica is ineffective because, purportedly, he previously designated El Salvador as his one country of removal under § 1231(b)(2)(A) during a hearing on May 29, 2019. Gov't Br. at 7–8 (citing ECF No. 137-1 at 6). But by the plain terms of the statute, a noncitizen can designate the "one country to which [he] wants to be removed" only if he "*has been ordered removed*." § 1231(b)(2)(A)(i) (emphasis added). As of May 29, 2019, Abrego Garcia had *not* been ordered removed. *See* ECF No. 110 at 24 ("no order of removal exists"). Even treating the order of removal as dating to October 2019, that postdates by many months the May 2019 hearing. Because Abrego Garcia had not "been ordered removed" as of May 2019, it necessarily follows as a matter of law that any designation he made at the May 2019 hearing was not under § 1231(b)(2)(A).

Were that not enough, the transcript of the May 2019 hearing also shows that, immediately after purporting to designate El Salvador, Abrego Garcia expressed "fear" of being removed to El Salvador. ECF No. 137-1 at 6. It is therefore clear from the transcript that, even if he lawfully could have done so at the time (which he could not), he was not intending to designate El Salvador as the "one country to which [he] *wants to be removed*." § 1231(b)(2)(A)(1) (emphasis added).

9

The only country Abrego Garcia has designated under § 1231(b)(2)(A) is Costa Rica, which he designated on August 23, 2025. *See* ECF No. 1-7. He promptly made that designation within 48 hours of receiving assurances from Costa Rica that it would grant him legal status and not re-deport him to El Salvador, *see* ECF No. 1-3, and within 24 hours of when the Government first notified him that it planned to remove him to a third country (Uganda), *see* ECF No. 1-5. There was no meaningful point in time before August 2025 for Abrego Garcia to exercise his right under § 1231(b)(2)(A) to designate the one country to which he wanted to be removed.[2]

**IV.     Removal is still not reasonably foreseeable, and re-detention is impermissible.**

Removal is no more foreseeable today than it was when the Court granted Abrego Garcia's habeas petition. As long as the Government continues its "inexplicable reluctance" to remove Abrego Garcia to Costa Rica, ECF No. 110 at 28, and fails to provide Abrego Garcia with the process required by the INA and the Constitution to effectuate lawful removal anywhere else, he remains in "removable-but-unremovable limbo," such that detention cannot serve any legitimate purpose. *Jama v. ICE*, 543 U.S. 335, 347 (2005).

For this reason, the Government's reliance on *Castaneda v. Perry*, 95 F.4th 750, 758 (4th Cir. 2024), is misplaced. There, the Fourth Circuit held that prolonged detention during withholding-only proceedings did not violate *Zadvydas*, even without an identified removal

---

[2] Even if Abrego Garcia's May 2019 statement could somehow be construed as a designation under § 1231(b)(2)(A)—and it cannot—basic equitable principles would permit him to update that designation given the Government's own serial re-designation of removal countries since August 2025. The statute's use of "promptly" in § 1231(b)(2)(C)(i) connotes a context-specific standard that must account for the particular circumstances of each case. Where, as here, the Government has repeatedly changed its proposed removal country many years after Abrego Garcia's initial immigration proceedings, fairness requires that he retain the ability to similarly update his designation in response to changed circumstances and newly available removal options. The Government cannot have it both ways: claiming the right to designate new countries years after removal proceedings closed while simultaneously insisting that a noncitizen's designation is irrevocably fixed based on a statement made before a removal order even existed.

country, because detention "ha[d] 'a definite termination point': the conclusion of [the withholding-only] proceedings." *Id.* While there may be some circumstances, as in *Castaneda*, where the lack of a specified removal country does not render detention impermissibly indefinite, the Supreme Court and the Fourth Circuit have made clear that the Government's inability to identify a viable removal country can render prolonged detention unlawful and unconstitutional. Indeed, as the Fourth Circuit recognized in *Castaneda*, the Government's inability to "identify any countries willing to accept" the petitioners in *Zadvydas*—"leaving the petitioners in what the Supreme Court later characterized as a 'removable-but-unremovable limbo'"—was the "specific circumstance . . . that led the Court to read an implicit reasonable-time limitation into § 1231." *Castaneda*, 95 F.4th at 756–57 (quoting *Jama*, 543 U.S. at 347 and citing *Zadvydas*, 533 U.S. at 684–86, 696).

So too here, the Government's inability to identify a viable removal country demonstrates that any continued detention would be impermissibly indefinite and punitive, rather than to effect timely lawful removal. *See* ECF No. 110 at 28–29; ECF No. 130 at 2–3, 5–7. The Government has not just failed to identify a viable removal country. It has designated a series of African countries that it knew "never agreed to take" Abrego Garcia, and it has made "misrepresentation[s] to the Court that Liberia is now the only country available to Abrego Garcia," all while it continues to "refus[e] to acknowledge Costa Rica as a viable removal option." ECF No. 110 at 29. Under these circumstances, the Government's failure to articulate a viable removal country, and simultaneous refusal to remove Abrego Garcia to Costa Rica when it could immediately do so if it wished, evidences that any further detention would be punitive and violate § 1231 and due process. *See*

11

ECF No. 110 at 27 ("Nor can detention be used as punishment."); *Zadvydas*, 533 U.S. at 690 (detention must be "nonpunitive in purpose and effect").[3]

Because removal is not likely in the foreseeable future, further detention is impermissible. That is true even if the Court disagrees that the removal period and period of presumptively constitutional detention have long expired. As Judge Hurson concluded only a few weeks ago, "[e]ven within the presumptively constitutional detention period, whether a noncitizen's detention is constitutional hinges on whether his removal from the United States is reasonably likely in the foreseeable future, not on how long the noncitizen has been detained." *Portela-Hernandez*, 2026 WL 74042, at *8 (quoting *Villaneuva v. Tate*, 2025 WL 2774610, at *10 (S.D. Tex. Sept. 26, 2025)). "Were it otherwise, the Government could simply detain noncitizens who had been released on orders of supervision, release them at the five-month-twenty-nine-day mark, and then immediately re-detain them, starting the *Zadvydas* clock anew." *Id.* In short, lawful removal remains unforeseeable, so re-detention remains impermissible.

## Conclusion

Unless and until the Government demonstrates a concrete plan to timely and lawfully remove Abrego Garcia, the Court should maintain its current injunction.

---

[3] Abrego Garcia's position is not, as the Government claims, that he can be removed *only* to Costa Rica. Gov't Br. at 8. Rather, Costa Rica is currently the only country he can be removed to consistent with the INA and due process. That is both because it is the one country of removal he designated under § 1231(b)(2)(A) and because it is the only identified country that has agreed to accept him, to provide him with permanent status, and to not re-deport him to El Salvador.

12

Respectfully submitted,

Dated: February 2, 2026

| | |
|---|---|
| **MURRAY OSORIO PLLC**<br>Simon Y. Sandoval-Moshenberg<br>Rina Gandhi<br>4103 Chain Bridge Road, Suite 300<br>Fairfax, VA 22030<br>(703) 352-2399<br>ssandoval@murrayosorio.com | */s/ Jonathan G. Cooper*<br>**QUINN EMANUEL URQUHART &**<br>  **SULLIVAN, LLP**<br>Jonathan G. Cooper (D. Md. Bar No. 21345)<br>Olivia Horton* (*pro hac vice*)<br>Nithya Pathalam** (*pro hac vice*)<br>1300 I St. NW, Suite 900<br>Washington, DC 20005<br>(202) 538-8000<br>jonathancooper@quinnemanuel.com<br>oliviahorton@quinnemanuel.com<br>nithyapathalam@quinnemanuel.com<br>**admitted in Texas; not admitted in D.C.<br>Supervised by attorney admitted in D.C.*<br>***admitted in New York; not admitted in D.C.<br>Supervised by attorney admitted in D.C.*<br><br>Andrew J. Rossman (*pro hac vice*)<br>Sascha N. Rand (*pro hac vice*)<br>Courtney Daukas (*pro hac vice*)<br>Morgan L. Anastasio (*pro hac vice*)<br>Roey Goldstein (*pro hac vice*)<br>295 Fifth Avenue, 9th Floor<br>New York, NY 10016<br>(212) 849-7000<br>andrewrossman@quinnemanuel.com<br>sascharand@quinnemanuel.com<br>courtneydaukas@quinnemanuel.com<br>morgananastasio@quinnemanuel.com<br>roeygoldstein@quinnemanuel.com<br><br>*Counsel for Petitioner* |

Respectfully submitted,

Dated: February 2, 2026

| | |
|---|---|
| **MURRAY OSORIO PLLC**<br>Simon Y. Sandoval-Moshenberg<br>Rina Gandhi<br>4103 Chain Bridge Road, Suite 300<br>Fairfax, VA 22030<br>(703) 352-2399<br>ssandoval@murrayosorio.com | */s/ Jonathan G. Cooper*<br>**QUINN EMANUEL URQUHART &**<br>  **SULLIVAN, LLP**<br>Jonathan G. Cooper (D. Md. Bar No. 21345)<br>Olivia Horton* (*pro hac vice*)<br>Nithya Pathalam** (*pro hac vice*)<br>1300 I St. NW, Suite 900<br>Washington, DC 20005<br>(202) 538-8000<br>jonathancooper@quinnemanuel.com<br>oliviahorton@quinnemanuel.com<br>nithyapathalam@quinnemanuel.com<br>**admitted in Texas; not admitted in D.C. Supervised by attorney admitted in D.C.*<br>***admitted in New York; not admitted in D.C. Supervised by attorney admitted in D.C.*<br><br>Andrew J. Rossman (*pro hac vice*)<br>Sascha N. Rand (*pro hac vice*)<br>Courtney Daukas (*pro hac vice*)<br>Morgan L. Anastasio (*pro hac vice*)<br>Roey Goldstein (*pro hac vice*)<br>295 Fifth Avenue, 9th Floor<br>New York, NY 10016<br>(212) 849-7000<br>andrewrossman@quinnemanuel.com<br>sascharand@quinnemanuel.com<br>courtneydaukas@quinnemanuel.com<br>morgananastasio@quinnemanuel.com<br>roeygoldstein@quinnemanuel.com<br><br>*Counsel for Petitioner* |