## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

Kilmar Armando Abrego Garcia,

*Petitioner*,

v.

Kristi Noem, *et al.*,

*Respondents.*

Civ. No. 8:25-02780-PX

### MEMORANDUM ORDER

On December 11, 2025, this Court granted Kilmar Armando Abrego Garcia's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 and ordered his immediate release from the custody of the Department of Homeland Security Immigration and Customs Enforcement ("ICE"), on the conditions imposed in the *United States v. Abrego Garcia,* 3:25-cr-00115-1 (M.D. Tenn.) ("*Tennessee Criminal Matter*"). ECF Nos. 110 & 111. The Court principally concluded that because Respondents had never issued Abrego Garcia a final order of removal, they could not lawfully detain him to effectuate removal at all. ECF No. 110 at 19–25. Alternatively, the Court concluded that if Abrego Garcia had been held pursuant to 8 U.S.C. § 1231 to effectuate third-country removal, his continued detention was constitutionally infirm under *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF No. 110 at 25–31. Thus, the Court ordered his immediate release. ECF No. 111.

Although Respondents released Abrego Garcia pursuant to this Court's Order, they also appeared to make speedy plans to re-detain him, in violation of certainly the spirit, if not the letter, of that decision. *E.g.*, ECF Nos. 112 & 112-1. Consequently, on December 12, 2025, Abrego

1

Garcia filed an emergency motion for a Temporary Restraining Order ("TRO") to prevent Respondents from immediately re-detaining him. ECF No. 112. The Court granted that motion pending supplemental briefing and further consideration. ECF No. 114.

The matter at ECF No. 112 is now ripe for resolution. For the reasons stated below, the Court grants Abrego Garcia's request to convert the TRO to one for injunctive relief and clarifies that the Court's habeas relief includes enjoining his re-detention under *Zadvydas* and its progeny, as previously articulated. *See* ECF Nos. 110 & 111.

The Court fully incorporates its decision granting habeas relief at ECF Nos. 110 & 111 and will summarize only relevant developments since that time. Within hours after the Court granted Abrego Garcia's habeas petition, Immigration Judge Phillip Taylor issued an order nunc pro tunc to correct a "scrivener's error;" namely, the omission of an order of removal to El Salvador within the October 10, 2019, order granting Abrego Garcia's withholding of removal ("withholding order"). ECF No. 112-2 at 5 (the "nunc pro tunc order"). The nunc pro tunc order specifically,

> Amend[ed] the [October 10, 2019] written decision in this case by *adding the following language*: The Respondent is ordered removed to El Salvador based on the charge contained in the Notice to Appear, but the Respondent's application for withholding of removal to El Salvador pursuant to INA § 241(b)(3) is granted.

ECF No. 112-2 at 5 (emphasis added).

Neither party appealed the issuance of the nunc pro tunc order, and it became final on January 12, 2026. The parties now agree that as of October 10, 2019, Abrego Garcia has been subject to an order of removal to El Salvador for which he received withholding protection. ECF No. 137 at 3; ECF No. 139 at 8. Similarly, the parties agree that Respondents' power to detain Abrego Garcia can only be to effectuate lawful removal to a third country pursuant to 8 U.S.C. § 1231. ECF Nos. 137 & 139.[1]

---

[1] Respondents had previously argued that until the nunc pro tunc order was final, Abrego Garcia was subject to

Section 1231(a)(1)(A) provides that "when a [noncitizen]² is ordered removed, the Attorney General *shall remove* the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')."  *Id.* (emphasis added).  Section 1231(a)(1)(B)(i), in turn, defines the "removal period" as beginning on, among others not relevant here, "the date the order of removal becomes administratively final."  During that 90-day removal period, the non-citizen "shall be detained."  8 U.S.C. § 1231(a)(2)(A).  And as previously articulated in this Court's December 11, 2025, decision, if the noncitizen is not removed during the removal period or the three months thereafter (collectively the six-month presumptive period articulated in *Zadvydas*), his continued detention may violate due process, and his release may be constitutionally compelled.  ECF No. 110 at 25–28.

Now, however, Respondents argue that because the nunc pro tunc order did not become final until January of this year, neither did the *underlying* 2019 order of removal.  ECF No. 137 at 1, 6.  Thus, say Respondents, because the order of removal did not become "administratively final" until last month, Abrego Garcia is still within the statutory "removal period," and his immediate re-detention and the resetting of the *Zadvydas* period are required.  ECF No. 137 at 5–6.

Abrego Garcia responds that the nunc pro tunc order merely corrected that which should have been recorded in 2019, and that the correction of the self-styled "scrivener error" did not render the order of removal nonfinal.  ECF No. 139 at 6.  Rather, the order of removal, like the withholding order, became final in November 2019, when the time to appeal that order had passed.  ECF No. 139 at 6–7 (citing 8 U.S.C. § 1101(a)(47)(B) and 8 C.F.R. § 1241.1(c)).

---

detention under 8 U.S.C. §§ 1225 or 1226.  *See* ECF Nos. 129 & 129-1.  They no longer take this position.  ECF No. 137 at 3–6.

² This opinion uses the term "noncitizen" as equivalent to the statutory term "alien," in keeping with recent preferred nomenclature.  *Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (collecting cases).  *See Barton v. Barr*, 590 U.S. 222, 254 n.2 (2020) (Kavanaugh, J., concurring) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'") (citing 8 U.S.C. § 1101(a)(3).  *See, e.g., United States v. Palomar-Santiago*, 593 U.S. 321 (2021); *Patel v. Garland*, 596 U.S. 328 (2022).

Abrego Garcia has the better argument.  To understand why requires a brief explanation of what is—and is not—a "nunc pro tunc" order.

Nunc pro tunc means "now for then."  *Roman Catholic Archdiocese of San Juan, P.R. v. Feliciano, et al.*, 589 U.S. 57, 65 (2020) (citation omitted).  A nunc pro tunc order, therefore, represents a narrow, equitable remedy, rarely invoked to make historic court records "reflect what the . . . court actually intended to do at an earlier date;" that is, to make "the record[] speak the truth." *Carino v. Garland*, 997 F.3d 1053, 1058 (9th Cir. 2021) (citations omitted).  Accordingly, a legitimate nunc pro tunc order must be given the "same legal force and effect *as if done at [sic] time when it ought to have been done.*"  *Id.* (quoting *United States v. Allen*, 153 F.3d 1037, 1044 (9th Cir. 1998)) (emphasis added).  *See also* Nunc Pro Tunc, Black's Law Dictionary (5th ed. 1979); *In re Patel*, 142 F.4th 1313, 1322 (11th Cir. 2025) (nunc pro tunc order has "retroactive legal effect" with the "same legal force and effect as if made at the time when it should have been made") (citation omitted); *Patterson v. Chrysler Grp. LLC,* 845 F.3d 756, 761 (6th Cir. 2017) (nunc pro tunc orders "merely make the [court's records] speak the truth) (citation omitted); *Matthies v. R.R. Ret. Bd.*, 341 F.2d 243, 247 (8th Cir. 1965) ("But the function of an order nunc pro tunc is not to make an order now for then but to enter now for then an order previously made.") (citation omitted).  Whatever the corrective action is, it must be entered "as of a time when it should or might have been entered up."  *Mitchell v. Overman*, 103 U.S. 62, 64–65 (1880); *see also Gagnon v. United States*, 193 U.S. 451, 456 (1904) ("The power to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or to supply defects or omissions in the record, even after the lapse of the term, is inherent in the courts of justice").[3]

---

[3] The propriety of using the doctrine of nunc pro tunc to insert a substantive order of removal may be up for debate. *See Glynne v. Wilmed Healthcare,* 699 F.3d 380, 384 (4th Cir. 2012) ("but where the court has omitted to make an order which it could have made, and in fact intended to make, it cannot subsequently make the same nunc pro tunc, so as to make it binding upon the parties to the suit from the date when it was so intended to have been entered.")

By contrast, a nunc pro tunc order, is *not* one which "rewrite[s] [the] history" of a case. *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) (citation omitted); *see also Cent. Laborers' Pension, Welfare and Annuity Fund v. Griffee*, 198 F.3d 642, 644 (7th Cir. 1999) (same). Nor is it one that alters the substantive rights of the litigants. *Mitchell,* 103 U.S. at 65 (nunc pro tunc orders are "founded in right and good sense, and to afford a safe and certain guide for the administration of justice,—it is the duty of the court to see that the parties shall not suffer by the delay."). A nunc pro tunc order, for example, cannot effectively reset the statutes of limitations, *see Patterson,* 845 F.3d at 762, or restart the time to bring an appeal. *See Crangle v. Kelly*, 838 F.3d 673, 680 (6th Cir. 2016) (where a putative "nunc pro tunc" order changed the substance of petitioner's sentence, the court construed the order as "a new judgment that reset the one year statute of limitations" to file a habeas corpus petition under 28 U.S.C. § 2244(d)(2)); *see also Herzog Contracting Corp. v. McGowen,* 976 F.2d 1062, 1065 (7th Cir. 1992) ("a party ought not be able to postpone the deadline for taking an appeal by filing a motion that doesn't actually ask for a change in the judgment."). To construe the effect of the nunc pro tunc order otherwise would permit the Court or litigants to create loopholes in the finality of judgments simply by recasting it via a new order issued nunc pro tunc. *Patterson*, 845 F.3d at 761 (rejecting construction of nunc pro tunc order that resets limitations because "in such a world, no claim would ever be truly time barred."); *see also Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 748 (11th Cir. 2014) (rejecting nunc pro tunc order that adds parties to an action as "work[ing] an injustice on the parties" not earlier named).

---

(quoting *ex parte Buskirk*, 72 F. 14, 20–21 (4th Cir. 1896)); *see also Transamerica Ins. Co. v. South*, 975 F.2d 321, 325 (7th Cir. 1992) (nunc pro tunc power "is no warrant for the entry of an order to record that which was omitted to be done.") (quoting *W.F. Sebel Co. v. Hessee*, 214 F.2d 459, 462 (10th Cir.1954)). The parties did not appeal the nunc pro tunc order. Accordingly, the Court accepts the validity of the nunc pro tunc order as adding an order of removal to the withholding order, effective October 10, 2019. *See* ECF No. 112-1; ECF No. 137 at 2; ECF No. 139 at 8. *See also* 8 U.S.C. § 1252(a)(5) & (b)(9).

Applying these basic principles here, the nunc pro tunc order is one that, by its own terms, "correct[ed] a scrivener's error" of having omitted the preceding order of removal that was necessary for the October 10, 2019, withholding order to be legally effective. ECF No. 112-2 at 5 ("but the order of removal to El Salvador, *which should have preceded the order granting him withholding of removal to El Salvador*, was erroneously admitted.") (emphasis added). Thus, the nunc pro tunc order did no more than add an order of removal effective October 10, 2019, which became administratively final thirty days later. *Cf. Gray v. Brignardello*, 68 U.S. 627, 627 (1863) ("[A] decree which was not actually meant to be made in a final form, cannot be entered in that shape nunc pro tunc in order to give validity to an act done by a judicial officer under a supposition that the decree was final instead of interlocutory.").

This is the only reading consistent with a true nunc pro tunc order. To read the order otherwise, as Respondents suggest, would indeed rewrite the history of this case. It would restart Respondents "removal period" pursuant to § 1231, and by extension, eviscerate the removal period and the six years when Respondents did nothing to effectuate third-country removal. *See* ECF No. 110 at 7–14. Respondents reading would also conveniently erase this last year of Abrego Garcia's detention and count none of it as relevant to the *Zadvydas* analysis. Because a "now for then" order cannot alter substantive rights or rewrite history, the Court must reject Respondents' arguments.

Instead, the nunc pro tunc order simply made the historic record "speak the truth" that the withholding order also included an order of removal to El Salvador but was apparently inadvertently left out from the withholding order. *Crosby v. Mills*, 413 F.2d 1273, 1277 (10th Cir. 1969). *See also Glynne*, 699 F.3d at 384 (collecting cases). Thus, this Court—and Respondents— must accept that truth, and the obvious legal consequences that flow from it. Because the nunc

pro tunc order itself is now final, then the underlying order of removal, effective as of October 10, 2019, became administratively final in November 2019. By extension, the "removal period" for which Abrego Garcia's detention had been compelled, was over long ago.

As to what this means for Abrego Garcia's continued release, it secures rather than undermines it. The Court had previously articulated the many reasons why the teachings of *Zadvydas* demanded release. ECF No. 110 at 25–30. Those reasons, and the factual underpinnings for them, squarely apply now that Abrego Garcia has a final order of removal *and* withholding of removal to El Salvador as of November 2019.

The Court incorporates the reasons articulated at ECF No. 110, and for clarity, summarizes them. <u>First</u>, since late 2019, Respondents made no effort to remove Abrego Garcia to a third country. They have also held him in some form of detention since March 2025 until this Court ordered his release, which even excepting the time spent in federal criminal custody, amounts to the presumptive six months of detention accorded to Respondents under *Zadvydas.* Add to this, the years of Respondents' inaction in effectuating third-country removal cuts decidedly against any requested finding that Abrego Garcia's removal is reasonably foreseeable. *See, e.g.*, *Zavvar v. Scott*, Civ. No. TDC-25-2104, 2025 WL 2592543 (D. Md. Sept. 8, 2025) (17 years of no efforts, or at best, minimal, unsuccessful efforts to effectuate third-country removal combined with no imminent prospect of removal warranted release under *Zadvydas*); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 703 (S.D. Tex. 2025) (granting petition for release under *Zadvydas* where "during the 8-year period since Villanueva was ordered removed," and while petitioner was on release, "the government's efforts to remove him—sparse and sporadic as they may have been—have been unsuccessful.").

Second, even if the Court does not count Abrego Garcia's months in which Respondents procured his detention in a Salvadoran prison as time strictly spent in ICE custody, Abrego Garcia has nonetheless demonstrated that "no significant likelihood of removal" exists "in the reasonably foreseeable future," thus compelling release. *Zadvydas*, 533 U.S. at 701. Regardless of the actual jailer, Respondents had purchased Abrego Garcia's detention in El Salvador and disingenuously slow footed his return. *See generally*, *Abrego Garcia v. Noem et al.*, 8:25-cv-00951-PX (D. Md. 2025). *See also* ECF No. 110 at 4–5. And since August 2025, Respondents have refused to procure Abrego Garcia's immediate removal to Costa Rica in favor of phantom removals to three (maybe four) African countries. Indeed, since Abrego Garcia secured his release from criminal custody in August 2025, Respondents have made one empty threat after another to remove him to countries in Africa with no real chance of success. ECF No. 110 at 7–14. At the same time, Respondents purposely—and for no reason—ignored the one country that has consistently offered to accept Abrego Garcia as a refugee, and to which he agrees to go. *Id. See also* ECF No. 52 at 102:8–12, 105:12–15 (Respondents' witness acknowledging the absence of any evidence that "Abrego Garcia going to Costa Rica would be prejudicial to the interests of the United States").[4]

Although Respondents still claim that Liberia would accept Abrego Garcia, more recently they have asserted that they are pursuing removal to "various countries" apart from Liberia, thus undermining the reliability of Liberia itself as a legitimate option. ECF No. 137 at 10. And as of January 14, 2026, Respondents had not yet secured any travel documents necessary to effectuate Abrego Garcia's third-country removal, despite their claims to be "working to get travel

---

[4] In scores of cases that this Court has reviewed involving similar *Zadvydas* challenges, none involve a petitioner who has agreed to deport to a third country willing to take him, yet who remains in Respondents' custody under the pretense of effectuating prompt third-country removal. Continued detention on these extraordinary facts would violate due process in any event. *See Gurung v. Warden, S. Texas Ice Processing Ctr.*, No. SA-25-CA-01614-XR, 2026 WL 93145, at *6 (W.D. Tex. Jan. 6, 2026) ("A detained person who brings a *Zadvydas* claim *before* the presumptively reasonable six-month period must *prove* that 'there is no significant likelihood of removal in the reasonably foreseeable future.'") (quoting *Zadvyda*s, 533 U.S. at 699–700) (emphasis in original).

documents." ECF No. 138 at 11:12–16. *Cf. Chennah v. Baltazar*, Civ. No. 1:26-cv-00112-CNS, 2026 WL 179951, at *3–4 (D. Colo. Jan. 23, 2026) (where no travel documents or any other evidence to suggest that Respondents' removal efforts are other than "haphazard" and no evidence of imminent removal to an identified third country, release under *Zadvydas* is warranted); *Banoub v. Crawford*, No. 3:25CV917, 2025 WL 3723458, at *11–12 (E.D Va. Dec. 23, 2025) (Respondents' requests to third countries without having secured travel documents or set a date of departure does not "remotely demonstrate" removal is likely in foreseeable future); *Gomez-Simeon v. Bondi*, No. SA-25-CV-01460-JKP, 2025 WL 3470872, at *2 (W.D. Tex. Nov. 24, 2025) (mere conclusory statements regarding "efforts to remove the petitioner to a third-party country including Mexico" insufficient to justify continued detention "with no removal plan"); *Douglas v. Baker*, Civ. No. ABA-25-2243, 2025 WL 2997585, at *3 (D. Md. Oct. 24, 2025) (failure to produce evidence of any efforts taken to remove petitioner to intended third country warranted release under *Zadvydas*); *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *9 (S.D. Tex. Oct. 16, 2025) (conclusory statements of intended removal to a third country are insufficient to demonstrate significant likelihood of removal) (collecting cases).

From this, the Court easily concludes that there is no "good reason to believe" removal is likely in the reasonably foreseeable future. *Castaneda v. Perry*, 95 F.4th 750, 756 (4th Cir. 2024) (quoting *Zadvydas*, 533 U.S. at 701). Respondents have done nothing to show that Abrego Garcia's continued detention in ICE custody is consistent with due process. Thus, he must remain on the stringent release conditions already imposed by ICE and in the *Tennessee Criminal Matter*.

Based on the foregoing and related reasons articulated in the decision granting habeas relief at ECF No. 110 at 25–31, it is this 17th day of February, 2026, hereby ORDERED that:

Respondents are ENJOINED from taking Petitioner Kilmar Armando Abrego Garcia into

ICE custody.  This injunction is made part of the Order at ECF No. 111.

Respondents SHALL immediately transmit this Order to all relevant officers, agents, and employees under their control and who are involved in this matter and in the *Tennessee Criminal Matter*.

Date:  <u>February 17, 2026</u>

<u>        /s/        </u>
PAULA XINIS
United States District Judge