**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, | Case No. 8:25-CV-02780-PX |
| Petitioner, | |
| v. | **MOTION TO DISSOLVE INJUNCTION AGAINST PETITIONER'S DETENTION (ECF 141) AND INJUNCTION AGAINST PETITIONER'S REMOVAL (ECF 13)** |
| KRISTI NOEM, ET AL., | |
| Respondents. | |

## INTRODUCTION

This Court should dissolve the active injunctions at ECF 141 and ECF 13, as both rest on clear legal errors and neither is equitable when applied prospectively. Dissolution is warranted as a factual matter based on the declaration submitted as Exhibit A to this motion, which establishes that the United States government presently stands ready, willing, and able to remove Petitioner to Liberia, and the only impediment to Petitioner's removal is the Court's injunction barring Petitioner's removal. *See* ECF 13. Dissolution is also warranted because the Court's Memorandum Order failed to acknowledge that the Court's own prior injunction against removal is the sole impediment to Petitioner's prompt removal. The Court cannot both impose the impediment that delays removal and consequently prolongs detention and, at the same time, hold that the resulting detention is impermissibly prolonged.

That is particularly so when the Court invited the government to move to dissolve the injunction barring Petitioner's removal when it was ready to effectuate the removal. ECF 52, at 37. The government filed that motion less than a month later on November 7, 2025. ECF 72. But the Court has left that motion pending for months. The government accordingly requests that the Court dissolve its injunctions barring Petitioner's detention pending removal (ECF 141) and reiterates its request for the Court to dissolve the injunction barring Petitioner's removal (ECF 13)

to permit the government to effectuate Petitioner's lawful removal to Liberia. The government also requests a ruling on this Motion to Dissolve the injunctions by Friday, April 17, 2026. After that date, the government will consider the Court to have denied dissolution of both injunctions.

## BACKGROUND

On June 6, 2025, Petitioner was paroled into the United States. ECF 1 at 10; *see also* ECF 6 (submitted under seal). On that date, he was taken into criminal custody to face criminal charges in the Middle District of Tennessee. *See U.S. v. Abrego Garcia,* No. 3:25-cr-115, ECF 9 & 10. On August 22, 2025, the Petitioner was released on bond relating to his criminal proceedings. *See U.S. v. Abrego Garcia*, No. 3:25-cr-115, ECF 112. On August 25, 2025, Petitioner was taken into custody by Immigration and Customs Enforcement ("ICE") in Baltimore, Maryland, pending removal. *See* ECF 1 at ¶ 43. That same day, the Petitioner filed a Motion to Reopen before the immigration judge, pursuing an opportunity to apply for asylum and withholding of removal based on his fear of removal to Uganda, as well as requesting other relief. ECF 28-1 at 2, 12.

Also on August 25, 2025, Petitioner filed a habeas petition challenging his detention based on *Zadvydas v. Davis*, as well as a number of other claims. *See generally* ECF 1. In a conference with the district court that day, the Government agreed that it would not remove Petitioner while his Motion to Reopen was pending before the immigration judge. ECF 24 at 21. This Court entered a letter order on August 27, 2025, enjoining ICE, or members of the United States government, "from removing the Petitioner from the continental United States." ECF No. 20. That order contained no analysis regarding whether Petitioner had satisfied the requirements for an injunction, such as whether there was a likelihood of success and whether the equities favored issuing the injunction. *Id.*

On October 10, 2025, this Court held an evidentiary hearing. *See generally* ECF 52. During the hearing, this Court agreed that if the Government were in a position to effectuate removal, it could move the Court to dissolve the previous order enjoining removal. *See* ECF 52, at 37 ("[A]t any point you can ask me to modify, dissolve, end . . . the injunction."); *see also id.* at 2-52.

On October 24, 2025, the government filed notice with this Court that the government of Liberia has agreed to accept the Petitioner and has relayed diplomatic assurances regarding this treatment and status. ECF No. 56.  Likewise, on October 24, 2025, the government notified Petitioner, through counsel, that he would be removed to Liberia if the government were permitted to do so. ECF 57-1 at 3.  On October 24, 2025, Petitioner communicated a fear of removal to Liberia, prompting a screening by the United States Citizenship and Immigration Services ("USCIS"). *Id.* at 2. USCIS performed that screening on October 28, 2025. *See* ECF 72-7 (public) and 75-4 (sealed) (interview record). On October 28, 2025, USCIS concluded that Petitioner did not demonstrate that it was more likely than not that he would be persecuted or tortured in Liberia. *See* 72-8 (public) and 75-5 (sealed) (decision).

On November 7, 2025, the Government moved to dissolve the injunction.  *See* ECF 72. Importantly, the government argued that Liberia was willing to accept Petitioner and that ICE was ready to effectuate his removal immediately upon the dissolution of the injunction.  ECF 72 at 5-7; *see also* ECF 72-3 (public) and ECF 75-2 (sealed) (Determination by Kristi Noem); ECF 72-4 (public) and ECF 75-3 (sealed) (Letter from Secretary of State Marco Rubio to Secretary of Homeland Security Kristi Noem); ECF 72-5 (public) and 75-3 (Diplomatic Assurances received from the Government of Liberia); ECF 72-6 (Announcement by Liberian Ministry of Information). Regarding the likelihood of success, the motion had two major premises.  First, that the Court

lacked jurisdiction or was barred from hearing several of Petitioner's claims.  ECF 72 at 7-22. Further, the Government argued that his several claims lacked merit.  ECF 22-32.

On December 11, 2025, the Court issued its Memorandum Opinion and Order.  ECF 110 & 111.  The Court rejected the government's jurisdictional arguments under 8 U.S.C. 1252(a)(5), (b)(9), and (g) based on its determination that Petitioner was not challenging the execution of a final order of removal; rather, the Court concluded that Petitioner's detention was unlawful "because he is held in the *absence* of such a removal order."  ECF 110 at 16; *see id.* at 19-24.  The Court then ruled that, in the absence of an order, Petitioner's further detention violated the Immigration and Nationality Act and due process.  *Id.* at 24-29.  The Court did not rule on the government's motion to dissolve at ECF 72.  *See generally* ECF 111.

Following this Court's December 11, 2025 order granting Petitioner's Petition for Writ of Habeas Corpus, ECF No. 110, 111, Respondents promptly released the Petitioner under an "ICE Order of Supervision." *See* ECF 112-1, 112-2.  On December 11, 2025, Immigration Judge Phillip Taylor issued an order of removal *nunc pro tunc* and designated El Salvador as the country of removal on December 11, 2025, making the order effective as of October 10, 2019. *Id*. 112-2. Following a hearing and requests for clarification, Respondents submitted a corrected ICE Order of Supervision with accurate authority to detain Petitioner pending removal on December 26, 2025. ECF No. 126-1 at 2.  On January 5, 2026, Petitioner purported to waive his right to appeal the order. ECF No. 130 at 2.  Petitioner did not file an appeal to the Board of Immigration Appeals within the 30-day deadline.  *See* 8 C.F.R. § 1003.38(b).

Shortly after Petitioner's release on December 11, 2025, Petitioner filed an emergency motion for a temporary restraining order.  ECF 112.  In it, he urged that he had a likelihood of success because (1) the immigration judge lacked jurisdiction; (2) the purported order was not a

final order of removal; (3) the purported order of removal violated due process; and (4) the government could not detain him under *Zadvydas*.  ECF 112 at 3-4.

On December 12, 2025, the Court granted an emergency temporary restraining order.  ECF 114.  The Court indicated that under *Zadvydas,* the newly issued order of removal was effective as if issued in 2019, then the removal period had long passed.  ECF 114 at 2-3.  Further, the Court indicated that the equities for a temporary restraining favored the Petitioner.  ECF 114 at 3-4.

On February 17, 2026, the Court granted Petitioner's request to convert the "TRO" into injunctive relief.  ECF 141 at 2.  In granting injunctive relief, the Court fully incorporated its decision at ECF 110.  ECF 141 at 2.  The Court discussed the import of the *nunc pro tunc* order of removal to its prior decision finding that detention was in appropriate under *Zadvydas*.  *Id.* at 3-7.  It did not discuss the import of a now existing final order on its jurisdiction, nor did it discuss the import of the August injunction on the *Zadvydas* calculus, nor did it discuss the equities requisite for an injunction.  *See generally* ECF 141.

On March 2, 2026, Todd Lyons, Senior Official Performing the duties of the Director of ICE, issued a decision disregarding Petitioner's designation of Costa Rica as the country of removal.  *See* Exhibit B.

## STANDARD OF REVIEW

"Because injunctive relief is drafted in light of what the court believes will be the future course of events, a court must never ignore significant changes in the law or circumstances underlying an injunction lest the decree be turned into an instrument of wrong." *Salazar v. Buono*, 559 U.S. 700, 714-15 (2010) (plurality op.) (internal quotation marks, ellipsis, and citation omitted). Courts have sometimes analogized dissolution of a preliminary injunction to the general equitable principles set forth in Rule 60(b)(5), although the rule does not by its terms apply to a

motion to dissolve a preliminary injunction. *See Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 733 (W.D. Va. 2006). Courts regularly dissolve preliminary injunctions when changed circumstances undermine the basis for the interlocutory relief. *See, e.g., Ctr. For Individual Freedom, Inc. v. Tennant*, 706 F. 3d 270, 276-79 (4th Cir. 2013) (discussing dissolution of injunction in response to amendment of challenged law). Ordinarily, "dissolution should depend on the same considerations that guide a judge in deciding whether to grant or deny a preliminary injunction in the first place"—*i.e.*, "[t]he familiar quartet" of "likelihood of success, the threat of irreparable injury to the party seeking interim relief, the equities and the public interest." *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1225 (1st Cir. 1994).

## ARGUMENT

I.     **The Court Should Dissolve Its Order Barring Detention Because The Government Would Promptly Remove Petitioner Absent The Court's Order Barring Plaintiff's Removal, And The Court Failed To Consider The Jurisdictional Consequences Of The Now-Undisputed Existence Of A Final Order Of Removal**

The Court's order barring detention of Petitioner, ECF 141, warrants dissolution for three reasons.

*First*, where, as here, the government could and would remove an alien but for his continued litigation, *Zadvydas* does not render continued detention unlawful. *See Prieto-Romero v. Clark*, 534 F. 3d 1053, 1062 (9th Cir. 2008). Petitioner "foreseeably remains capable of being removed" at present, "and so the government retains an interest in assuring his presence at removal." *See Prieto-Romero*, 534 F.3d at 1065; *Callender*, 281 F. Supp. 3d 428, 436 (S.D.N.Y. 2017) ( "there is substantial evidence that petitioner can and will be removed as soon as his pending immigration proceedings—all of them filed by petitioner himself—are resolved").

As the government has maintained, and as remains true as of the date of this filing, removal to Liberia can be completed in a matter of days as soon as the injunctions currently preventing

6

removal are dissolved. Exh. A, Declaration of John A. Schultz, Jr., ¶ 19. The Department of State has been in communication with Liberia, and Liberia maintains its willingness to accept the Petitioner with necessary human rights protections. *Id*. at ¶ 16. This removal agreement has not changed since October 2025 and remains the path of removal as soon as the injunctions are dissolved. The United States has consistently argued against Petitioner's claims that Costa Rica is the only country to which he can be removed. In fact, the government still maintains that removal to Costa Rica would be prejudicial to the United States. *See* Exh. B, Memorandum Disregarding Designation of Costa Rica. Thus, any attempt by this Court to permanently enjoin the government from exercising its authority to remove the Petitioner from this country is in direct contradiction to established judicial norms, and a clear error of law. The Court's contrary conclusion contradicts the evidentiary record, which amply establishes that the government has, for months and continuing to the present day, been ready, willing, and able to promptly remove Petitioner. This case presents none of the concerns of "potentially permanent" prospective detention present in *Zadvydas v. Davis*, 533 U.S. 678, 691 (2001).

*Second*, the Court should dissolve its order barring the government from detaining Petitioner pending his imminent removal because the order failed to recognize that the only barrier to Petitioner's immediate removal is the Court's own preliminary injunction barring his removal. Petitioner has been detained in U.S. Immigration and Customs Enforcement ("ICE") custody for less than a week. On March 12, 2025, ICE arrested and detained Petitioner for removal from the United States. ECF 110 at 4. On March 15, 2025, Petitioner was removed. *Id*. From March 15, 2025, through June 6, 2025, Petitioner was not in ICE custody. On June 6, 2025, Petitioner was paroled into the United States and detained under a criminal indictment in the Middle District of Tennessee. *Id*. at 5. Once again, Petitioner was not detained in ICE custody and was not under ICE

7

control. On August 22, 2025, Petitioner was released from criminal custody. ECF 28 at 4. On August 25, 2025, Petitioner was taken into ICE custody in order "to effectuate removal pursuant to the 2019 final removal order." *Id*. The very same day, on August 25, 2025, this Court entered an order prohibiting the removal of Petitioner, thus pausing the *Zadvydas* clock in calculating the reasonably removal period. *See* ECF 13. Thus, at most, Petitioner's time detained in ICE custody pending removal can be calculated at 6 days.

Petitioner's actions "to prevent [his] removal subject to an order of removal" extend the removal period by operation of 8 U.S.C. § 1231(a)(1)(C).  ECF 137 at 10. "It is well settled ... that an alien cannot, through unilateral action, create the very circumstance that he relies on for relief under *Zadvydas*." *Id. at* 437; *see also, e.g., Ambimola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) (rejecting *Zadvydas* claim in part because "the real reason for [petitioner's] lengthy detention" was his "seeking and/or receiving numerous judicial stays and filing his numerous petitions for reconsideration and appeals."); *Callender v. Shanahan*, 281 F. Supp. 3d at 435 ("[Petitioner] must establish that the bottleneck is not due to his own continuing efforts to litigate."). Instead, "[t]he six-month period is tolled … if the alien acts to prevent his removal." *Guo Xing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013). And the Fourth Circuit has further admonished that "*Zadvydas* should not be expanded beyond the context of the *indefinite and potentially permanent* detention involved there." *Castaneda v. Perry*, 95 F.4th 750, 757 (4th Cir. 2024) (citing *Miranda v. Garland*, 34 F.4th 338, 361 (4th Cir. 2022)) (emphasis added). Extending *Zadvydas* to instances where the alien has himself secured an injunction preventing his removal is just such an expansion that *Castaneda* prohibits.

This Court committed clear legal error by not recognizing the impact of its own preliminary injunction barring Plaintiff's removal, and further, not recognizing that Petitioner's detention has

not reached the 180-day threshold. If Petitioner is taken into detention today for purposes of effectuating his immediate removal, section 1231 provides clear authorization for his detention for a presumptively-reasonable 180 days thereafter. Of course, the government would not take nearly so long to remove Petitioner. As previously acknowledged by Petitioner, and shown in the attached exhibits, the government is prepared to effectuate Petitioner's removal in an extremely expeditious manner upon dissolution of the injunctions impeding removal. ECF 71 at 6-7. The Court's orders barring Petitioner's removal and barring any brief detention incident to removal are the only impediment to Petitioner's immediate removal. It is clearly erroneous, and a manifest injustice, to permit a petitioner to manufacture a legal obstacle to his removal and then hold that that legal obstacle suffices to prevent detention pending removal.

*Third*, the Court should dissolve its February 17, 2026 order because it failed to consider the consequences of the undisputed existence of a final order of removal for jurisdiction. In its order on December 11, 2025, the Court concluded that it had jurisdiction despite the limits on district court jurisdiction in 8 U.S.C. § 1252(a)(5), (b)(9), and (g) because it concluded there was no final order of removal. ECF 110 at 14. But when the Court considered the effect of the *nunc pro tunc* correction of the final order of removal, it merely adopted "the foregoing and related reasons articulated in" the December 11, 2025 order, without any re-evaluation of the jurisdictional bars in light of the undisputed existence of a final order of removal which obviated the Court's previous reasoning. ECF 141 at 2.

Prohibiting the government from detaining Petitioner to the minimal extent necessary to remove him also is detrimental to public interest. An immigration judge ("IJ") concluded that "the evidence show[ed] that [Plaintiff] is a verified member of MS-13" and that he "failed to present evidence to rebut that assertion." ECF 115 at 13; *see also* ECF 72-1 at 2-3. The IJ further concluded

that "as a member of a notorious and violent gang, [Petitioner] presented a danger to Americans." *Id*. The IJ's decision and conclusion were affirmed in 2019 by the BIA, and Petitioner has not appealed. *See* ECF 72-2. Similarly, throughout this litigation, Petitioner has continually admitted that he arrived unlawfully and conceded removability. Thus, the public interest favors dissolution of the injunction barring detention of Petitioner pending his removal.

## II. The Court Should Promptly Rule On The Government's Still-Pending Motion To Dissolve The Preliminary Injunction Barring Removal

The Court should also promptly rule on the government's motion to dissolve the preliminary injunction barring Petitioner's removal (ECF 81), which has been pending since November 13, 2025. For all the reasons in that motion, and additionally because the exhibits submitted with this motion establish a clear path to Petitioner's prompt removal and Petitioner now undisputedly has an administratively final order of removal, the Court should dissolve its preliminary injunction barring Petitioner's removal.

Maintaining the preliminary injunction (and for that matter, the Memorandum Order at ECF 141) is particularly improper because the preliminary injunction was not based on any analysis by the Court regarding Petitioner's likelihood of success or the non-merits injunction factors. At a hearing on August 25, 2025, the Government agreed that it would not remove Petitioner while his Motion to Reopen was pending before the immigration judge. ECF 24 at 21. Despite that assurance, the Court nevertheless entered a preliminary injunction by a letter order on August 27, 2025, enjoining the government "from removing the Petitioner from the continental United States." ECF No. 20. In doing so, the Court provided no analysis to justify the injunction, *id.*, even though that analysis is expressly required by binding precedent and governing rules. *See*

*Winter v. NRDC*, 555 U.S. 7 (2008); Fed. R. Civ. P. 65(d)(1) (requiring "[e]very order granting an injunction" to "state the reasons why it issued").

For the reasons previously explained, the injunction against removal plainly violates multiple provisions of the INA, including 8 U.S.C. § 1252(a)(5), (b)(9), and (g), and is not supported by the required analysis.

### CONCLUSION

For the foregoing reasons, the Court should dissolve its injunctions against removal and detention of Petitioner. Respectfully, the government requests the Court enter a ruling on the Motion by Friday, April 17, 2026. After that date, the government will consider the motion to dissolve as having been denied.

Dated: March 20, 2026                     Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General
U.S. Department of Justice
Civil Division, Office of Immigration Litigation

JONATHAN GUYNN
Deputy Assistant Attorney General
U.S. Department of Justice
Civil Division, Torts Branch

/s/ Ernesto H. Molina, Jr
ERNESTO MOLINA, JR.
Deputy Director
Office of Immigration Litigation

SHANE A. YOUNG
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation

11

P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-451-7483
Shane.a.young@usdoj.gov

ATTORNEYS FOR RESPONDENTS

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

 */s/ Ernesto H. Molina, Jr.*
ERNESTO H. MOLINA, JR.
Deputy Director
United States Department of Justice
Civil Division
Office of Immigration Litigation