**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, | Case No. 8:25-CV-02780-PX |
| Petitioner, | |
| v. | **RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY** |
| MARKWAYNE MULLIN, Secretary of Homeland Security; TODD BLANCHE, Acting Attorney General; TODD M. LYONS, and NIKITA BAKER, | |
| Respondents.[1] | |

## INTRODUCTION

Habeas petitioners are not ordinarily entitled to discovery; they can seek it only if they demonstrate good cause and even then, only if the Court exercises its discretion to allow it. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Petitioner Abrego Garcia cannot demonstrate good cause for discovery here.

As a general matter, Petitioner's claims fail as a matter of law and on jurisdictional grounds in light of his undisputedly final order of removal, such that the discovery he seeks would be legally irrelevant. These threshold legal issues have yet to be resolved by this Court, and the Court should rule on them before requiring the government to produce any of the sensitive discovery materials he seeks.

Petitioner's discovery requests would be impermissible in any event. Some of the requests seek information he already has. Others seek documents and correspondence concerning matters that neither he nor the Court is permitted to probe. And others seek documents and information

---

[1] Secretary Markwayne Mullin, and Acting Attorney General Todd Blanche are automatically substituted for their predecessors under Federal Rule of Civil Procedure 25(d).

from non-parties that are not implicated or named in this Petition, and without proper procedure. The Court should deny the motion.

## PROCEDURAL BACKGROUND

On December 11, 2025, the Court issued its Memorandum Opinion and Order. ECF 110 & 111. The Court rejected the government's jurisdictional arguments under 8 U.S.C. § 1252(a)(5), (b)(9), and (g) based on its determination that Petitioner was not challenging the execution of a final order of removal; rather, the Court concluded that Petitioner's detention was unlawful "because he is held in the absence of such a removal order." ECF 110 at 16; *see id*. at 19-24. The Court then ruled that, in the absence of an order, Petitioner's further detention violated the Immigration and Nationality Act and due process. *Id.* at 24-29. The Court did not rule on the government's motion to dissolve at ECF 72. *See generally* ECF 111.

Following this Court's December 11, 2025, order granting Petitioner's Petition for Writ of Habeas Corpus, ECF No. 110, 111, Respondents promptly released the Petitioner under an "ICE Order of Supervision." *See* ECF 112-1, 112-2. On December 11, 2025, Immigration Judge Phillip Taylor issued an order of removal nunc pro tunc and designated El Salvador as the country of removal, making the order effective as of October 10, 2019. *Id*. 112-2. Following a hearing and requests for clarification, Respondents submitted a corrected Notice of Conditions of Release, cancelling the ICE Order of Supervision issued on December 11, 2025. ECF No. 126-1 at 2. On January 5, 2026, Petitioner purported to waive his right to appeal the order. ECF No. 130 at 2. Petitioner did not file an appeal to the Board of Immigration Appeals within the 30-day deadline. *See* 8 C.F.R. § 1003.38(b). Shortly after Petitioner's release on December 11, 2025, Petitioner filed an emergency motion for a temporary restraining order. ECF 112. In it, he urged that he had a likelihood of success because (1) the immigration judge lacked jurisdiction; (2) the purported order

2

was not a final order of removal; (3) the purported order of removal violated due process; and (4) the government could not detain him under *Zadvydas*. ECF 112 at 3-4.

On December 12, 2025, the Court granted an emergency temporary restraining order. ECF 114. The Court indicated that under *Zadvydas*, the newly issued order of removal was effective as if issued in 2019, then the removal period had long passed. ECF 114 at 2-3. Further, the Court indicated that the equities for a temporary restraining favored the Petitioner. ECF 114 at 3-4. On February 17, 2026, the Court granted Petitioner's request to convert the "TRO" into injunctive relief. ECF 141 at 2. In granting injunctive relief, the Court fully incorporated its decision at ECF 110. ECF 141 at 2. The Court discussed the import of the nunc pro tunc order of removal to its prior decision finding that detention was inappropriate under *Zadvydas*. Id. at 3-7. But it neither discussed the import of a now existing final order on its jurisdiction, the import of the August injunction on the *Zadvydas* calculus, nor the equities requisite for an injunction. *See* generally ECF 141.

**STANDARD OF REVIEW**

As Petitioner concedes, ECF No. 145 at 1, the Supreme Court has made clear that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy*, 520 U.S. at 904; *see also Potarazu v. Warden*, No. 22-1334, 2023 WL 6142990 at *7 (D. Md. Sept. 20, 2023) (denying habeas petitioner's request for discovery because the "vast amount of information [he] requested…amount[ed] to a fishing expedition"); *Brooks v. Bivens*, No. 21-221, 2022 WL 4104180, at *6 (D. Md. Sept. 8, 2022) (denying request for discovery where petitioner "failed to provide any facts in support of his request for discovery" and "the information he [sought] concern[ed] the plea negotiations between his defense attorney and the state").

Rather, pursuant to Rule 6(a) of the Rules Governing § 2254 Cases in the United States District Courts, a party may conduct discovery in a habeas proceeding only if he shows good cause and a judge exercises her discretion to grant the party leave to do so. *Bracy*, 520 U.S. at 904; *Potarazu*, 2023 WL 614290 at \*7. Good cause exists when "specific allegations before the court show reason to believe that the Petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief." *Bracy*, 520 U.S. at 908-09.

## ARGUMENT

Petitioner argues that good cause exists to grant his motion for leave to conduct limited discovery to "assist" the Court "in its consideration of the Government's Motion to Dissolve" because—so Petitioner says—"the Government's Motion raises new factual issues that warrant discovery, including factual assertions that contradict prior testimony and representations by the Government to this Court." ECF No. 145 at 2, 3. Particularly, "Petitioner seeks leave to (i) serve narrowly tailored document requests…; and (ii) take limited testimony from…Todd Lyons, and…John A. Schultz." *Id.* at 1. Petitioner cannot establish good cause to engage in such discovery because the information and testimony he seeks lack a nexus with a cognizable habeas claim. As previously argued throughout this case, the Immigration and Nationality Act ("INA") authorizes the Executive Branch, and its agencies, to take certain actions, and make certain discretionary decisions outside the purview and review of the Court.

Moreover, Petitioner cannot demonstrate good cause because his habeas claims not implicated by the Court's injunction all fail for purely legal reasons and are not affected by any discovery. *See* ECF No. 28 at 6-10. Additionally, Petitioner's repeated requests in his proposed discovery for "all communications with any official or representative of the Government" are vague, overbroad, and designed to evade the requirement to engage in the *Touhy* procedures for

4

State Department officials, who are not implicated within this suit. *See U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). In all events, this Court should exercise its discretion to deny the motion.

### I. No Good Cause Supports Permitting Discovery Because All of Petitioner's Claims Fail as a Matter of Law.

Petitioner cannot demonstrate good cause for discovery because with "the facts [] fully developed" establish that he is not "entitled to relief." *Bracy*, 520 U.S. at 908-09. As previously argued in this litigation, ECF Nos. 72 at 15-21, all of Petitioner's habeas claims fail as a matter of law because he is a member of the non-opt-out class certified in *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025), which precludes him from bringing certain claims separately in this proceeding. *See* ECF No. 28 at 6-9; *see also Spencer v. Gasper*, 2021 WL 5346665, at *2 (6th Cir. 2021) ("Individual class members may not bring separate lawsuits seeking injunctions similar to the relief sought by the class."); *Gillespie v. Crawford*, 858 F. 2d 1101, 1103 (5th Cir. 1988) ("To allow individual suits would interfere with the orderly administration of the class action and risk inconsistent adjudications."); *Rivarde by Rivarde v. Missouri*, 930 F.2d 641, 643 (8th Cir. 1991) ("[A] class member should not be able to prosecute a separate equitable action once his or her class has been certified." ). Multiple courts in this district, and elsewhere, have denied relief on this basis. *See, e.g., Ghamelian v. Baker*, 2025 WL 2049981, at *3 (D. Md. July 22, 2025) (denying relief because of petitioner's status as a D.V.D. class member); *I.V.I. v. Baker*, 2025 WL 1519449, at *2 (D. Md. May 27, 2025) ("Even stripped of any reference to the District of Massachusetts' order, these claims are the same as (or substantially related to) the class claims being litigated in that district." (citation omitted)); *Tanha v. Warden, Baltimore Det. Facility*, 2025 WL 2062181, at *5 (D. Md. July 22, 2025) ("The court finds that Petitioner is a member of the *D.V.D.* Class"); *Sanchez v. Bondi*, 2025 WL 2550646, at *3 (D. Colo. Aug. 20, 2025) ("[B]ecause Mr. Sanchez is a member of D.V.D's Rule 23(b)(2) class, he has failed to show a likelihood of success on the

merits of his claim."); *see also Phan v. DHS*, 1:25-cv-2147 (D.D.C. July 4, 2025) (transferring case to the District of Massachusetts as related to D.V.D.). The District of Massachusetts has issued a final judgment in the case. *See D.V.D. v. U.S. Dept. of Homeland Sec.*, ___ F.Supp. __, 2026 WL 521557 (D. Mass. Feb. 25, 2026), *stayed*, *D.V.D. v. U.S. Dep't of Homeland Security*, No. 26-1212 (1st Cir. March 16, 2026).  Because none of the discovery that Petitioner seeks would bear on that mandatory basis for dismissal, no discovery should be allowed.

Further, most of Petitioner's claims are jurisdictionally barred by 8 U.S.C. § 1252(a)(5), (b)(9) and (g), which prohibit district courts from exercising jurisdiction over suits challenging actions taken to execute removal orders, or 8 U.S.C. § 1252 (a)(2)(B)(ii), which bars review of decisions "specified to be in the discretion of the Attorney General or the Secretary of Homeland Security." *See* ECF No. 28 at 10-14, 22-24. These jurisdictional bars do not depend on the facts that Petitioner seeks to develop through discovery, and as such there is no good cause for discovery before the Court rules on those dispositive matters. *See Baltimore Gas and Electric Company v. Rand Construction Co.,* No. 1:24-cv-1467, 2024 WL 4349641 (D. Md. Sept. 30, 2024) ("[W]hile it is true that not every . . . motion warrants a stay [of discovery], . . . a motion that may resolve the entire action, or be fully dispositive as to at least one litigant, favors a stay."); *Hachette Distribution, Inc. v. Hudson Cnty. News. Co.,* 136 F.R.D. 356, 358 (E.D. N.Y. 1993) ("Discovery should be stated [] only when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive [], such as where a challenge is direct to the Court's jurisdiction.").

And Petitioner's remaining claims that are not subject to 8 U.S.C. § 1252's jurisdictional bars fail as a matter of law because Petitioner is subject to a final order of removal, and Respondents may detain him pending his removal for at least the "presumptively reasonable

period" of six months. At the time of this filing, Petitioner has been subject to detention for purpose of removal for less than 10 days. No discovery is necessary to establish that Petitioner is subject to a final order of removal or the length of his detention. Therefore, no good cause supports permitting discovery on those claims.

Because Petitioner's remaining claims must be dismissed on legal grounds, he cannot demonstrate that good cause supports granting his motion for leave to conduct discovery.

**II.     No Good Cause Supports Granting Petitioner's Specific Discovery Requests.**

Looking past the jurisdictional issues that foreclose his Petition, and taking Petitioner's discovery requests on their own terms, he cannot demonstrate good cause for conducting discovery on discretionary statements issued by members of the United States government.[2]

Regarding Petitioner's first issue, the Lyons Memorandum and the selection and designation of Liberia as Petitioner's country of removal are discretionary decisions that are not subject to judicial review, and thus no discovery could be relevant or appropriate. The INA expressly grants DHS the authority to remove individuals to "another country whose government will accept the alien into the country," under certain circumstances. 8 U.S.C. § 1231(b)(2)(E)(vii); *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005); *see also* 8 U.S.C. 1231(b)(2) (An individual granted withholding of removal may still be removed to a third country). "[S]electing a destination country," pursuant to that statutory authority, is an "exercise of executive judgment," or discretion, which requires the government to "take both practical and geopolitical concerns into account." *Jama*, 543 U.S. at 344.

---

[2] The United States need not address Petitioner's unfounded contention that any of its employees or representatives have made false statements in this litigation.

That exercise of discretion is unreviewable under 8 U.S.C. § 1252(a)(2)(B)(ii), which provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory), including…any…habeas corpus provision…, no court shall have jurisdiction to review…any other decision or action of the Attorney General of the Secretary of Homeland Security the authorization for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" *See also Polfiet v. Cuccinelli*, 955 F.3d 377, 381 (4th Cir. 2020) ("On its face, § 1252(a)(2)(B)(ii) bars judicial review of decision 'specified' to be in the discretion of the Secretary."). That bar extends to discretionary decisions made pursuant to a statute even when that statute does not "literally contain the word 'discretion'" and to constitutional questions arising from that discretionary decision. *Id*. at 381, 383-84. 8 U.S.C. § 1231(b)(2)(E)(vii) grants DHS the authority to remove aliens to third countries. That authority requires DHS to select a third country, the selection of which is discretionary. *See Bourfa v. Mayorkas*, 694 U.S. 6, 14 (2024) (finding that a discretionary decision was subject to [a] bar where "Congress has in no way prescribed how that discretion must be exercised"). Because this Court lacks authority to review those discretionary selection decisions, Petitioner is not entitled to discovery into them—nor would such discovery serve any purpose.

Moreover, discovery as a part of Petitioner's effort to challenge the determination is irrelevant and not permitted. In particular, Petitioner purports to challenge the Lyons Memorandum under the "facially legitimate and bona fide" standard set forth in *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972). Putting aside the question of whether the *Kleindienst* standard has any role where Congress has expressly barred judicial review (it does not), the Supreme Court expressly provided that "when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will *neither look behind the*

*exercise of that discretion, nor test*" it by weighing it against competing legal interests. *Id.* at 770.

Thus, the question is purely legal. While Petitioner may have doubts about the memo and may want to test it, under the plenary authority of the Executive, neither he nor this Court may test the determination, so there is no good cause for this discovery.

Regarding Petitioner's second issue, the Schultz Declaration, enforcement of removal, and the innerworkings of an agency are matters that courts may not second guess. Discovery, such as proposed by the Petitioner, goes above and beyond what is required under the *Zadvydas* argument, and directly implicates a wide array of privileges touching almost all potentially responsive documents and information. Moreover, 8 U.S.C. § 1252(g) deprives the Court of jurisdiction to review Petitioner's claims because the claims arise from the execution of his removal order. Section 1252(g), as amended by the REAL ID Act, bars claims arising from three discrete actions, including, as relevant here, the decision or action to "execute removal orders." *Id*. In enacting § 1252(g), Congress spoke clearly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. *Id*.; *accord, Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010) (holding that Section 1252(g) precludes jurisdiction under the All Writs Act*); Sadhvani v. Chertoff*, 460 F.Supp.2d 114, 122 (D.D.C. 2006) (same).

Of course, there is no doubt that the timing of when an alien should be removed is a matter of discretion. Here, section 1252(g)'s prohibition is particularly pronounced. Petitioner's habeas petition not only plainly arises from the effort to remove him, and the remedy he seeks falls firmly within the Executive's "plenary and exclusive" authority to speak for the country "in the field of international relations." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936). All

three branches of Government have made clear that Petitioner's claim regarding the sufficiency of assurances by a foreign state is outside this Court's power to control or even probe. *Al-Anazi v. Bush,* 370 F.Supp. 2d 188, 194-96 (D.D.C. 2005).; *see also U.S. v. Kin-Hong,* 110 F.3d 103, 110 (3d Cir. 1997); *Sidali v. INS,* 107 F.3d 191, 195 n.7 (3d Cir. 1997). "[T]he degree of risk to [Escobedo's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch." *Escobedo v. United States,* 623 F.2d 1098, 1107 (5th Cir. 1980) (second bracket in original), *citing Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976), cert. den'd, 429 U.S. 1062 (1977). Thus, Petitioner's request for discovery erroneously intrudes on ICE's authority to schedule and effectuate removal at the pace they deem necessary in accordance with the law.

Furthermore, Petitioner already had an opportunity to clarify Schulz's testimony, his desire for a mulligan is not good cause for discovery. The import of the Schultz Declaration is to inform the Court that the government is both ready and able to remove Petitioner to Liberia. While Mr. Schultz had previously informed the Court that that no travel documentation is required to remove an alien to a third country, *see* ECF 52 at 158-50 ("In [Mr. Schultz's] experience, we don't need a travel document to send somebody back to a third country."), Petitioner did not take up that question despite having Mr. Schultz on the stand at the hearing. The fact that he waived that opportunity to take up the question of the required documentation does not permit him to now suggest that the government has not provided "documentation" that travel documents are unnecessary. *See* Motion at 6. There has been testimony and evidence provided. For purposes of the habeas petition, the Court has all the evidence it needs to determine whether Petitioner's removal is reasonably likely in the foreseeable future. As with the ordinary case, it does not require discovery. Moreover, it is entirely disingenuous for Petitioner to suggest that the Government's conduct somehow undermines the likelihood of Petitioner's removal. The fact of the matter is that

the Government has supplied evidence of its communication with Liberia. Importantly, Secretary Marco Rubio expressly wrote to former Secretary Kristi Noem, informing her of assurances related by Liberia for Petitioner's safety and its willingness to receive Petitioner. *See* ECF 73-1 (Exhibit B). The government has provided direct communications from Liberia. *See* ECF 73-2 (Exhibit C). It has even provided evidence that the Government of Liberia has, itself, published its willingness to receive him. *See* 73-3 (Exhibit D). Petitioner does not raise any doubt as to the adequacy of the evidence, and any such suggestion is undone by that public statement by Liberia. Any request for discovery is at best fishing expedition hoping for evidence rather than a genuine inquiry into a question of material fact. Thus, discovery should be denied on this basis.

The Court should also deny Petitioner's motion because his so called "targeted discovery" takes aim at documents and information that may directly implicate a wide array of core government privileges, including the State Secrets and Deliberative Process privileges. Under the Federal Rules, a party is entitled to discovery of non-privileged material that is relevant to a claim or defense and proportional to the needs of the case. Where the vast majority of responsive documents and information are privileged, the requested discovery should be denied. *See, e.g., In re Application for an Order Pursuant to 28 U.S.C. § 1782 To Conduct Discovery for use in a Foreign Proceeding,* 286 F.Supp. 3d 1, 6-8 (D.D.C. 2017). No good cause exists to authorize discovery that the Rules expressly forbid.

### III. Petitioner Has Not Made an Attempt to Comply With the *Touhy* Process in Requesting Leave to Conduct Discovery

Petitioner's Motion for Leave to Conduct Limited Discovery should be denied because Petitioner has made no attempt to comply with the *Touhy* process in attempting to obtain discovery from unnamed officials or representatives of the U.S. Government. The fact of the matter is that officials with the Department of State (and other Departments) are not parties to this case, yet they

are the federal officials who possess or are likely to possess nearly all of the documents or information that Petitioner seeks. That some of the requested materials may be in DHS's possession, makes no difference because *Touhy* regulations apply to all government entities.

The head of an executive department may prescribe regulations governing "the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. These regulations are referred to as *Touhy* regulations. *See U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *Touhy* regulations have the force of law. *Swett v. Schenk*, 792 F.2d 1447, 1451 (9th Cir. 1986). Failure to engage in the *Touhy* process renders a discovery request unenforceable. *In re Boeh*, 25 F.3d 761 (9th Cir. 1994); *see also Lerner v. District of Columbia*, WL 2375175, *3 (D.D.C. Jan. 7, 2005) (denying motion to compel because plaintiff did not comply with agency's *Touhy* regulations for requesting documents). Put simply, Petitioner's "failure to comply with the applicable *Touhy* regulations means that [his] motion to compel must be denied." *United States v. Adil*, 2022 WL 20275084, *2 (E.D. Va. Aug. 3, 2022).

Indeed, at this point, Respondents can only guess as to which federal agencies and personnel Petitioner is referring to in his sample Request for Production ("RFP"). *See* ECF No. 145-1 at 3. Petitioner names "all communications" with foreign governments but does not limit the scope of the request to specific agencies. Moreover, Petitioner similarly requests "all documents" pertaining to Petitioner's removal, again without designation of the agency or custodian involved. Moreover, Petitioner cannot request documents, information, or correspondence between a party and a non-party to get around the established procedures under *Touhy*. This is part of the reason agencies' *Touhy* regulations require Petitioner, as a first step, to "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought." 6 C.F.R. § 5.45. That is not to say Petitioner may be without recourse

for his desired discovery requests, but any information pertaining to an agency outside of DHS, should be prohibited. *See Aiken v. Eady*, 2016 WL 452135 at \*5 (D.N.J. Feb. 4, 2016) (stating that "pursuant to *Touhy*, most courts require a party seeking information from the Government, as a non-party, to make a request to the [agency] pursuant to their administrative regulations.").

To initiate a *Touhy* process, the party seeking information must "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought. Where documents or other materials are sought, the party should provide a description using the types of identifying information suggested in 6 C.F.R. § 5.3(b)." 6 C.F.R. § 5.45(a); *see also* § 5.43 (containing information on how and where to serve this written request for official information to the agency). This will clarify what government documents Petitioner is seeking from each specific agency, which is unclear given the language in the proposed RFPs. ECF No. 145-1 at 3.

The Court should also promptly rule on the government's motion to dissolve the preliminary injunction barring Petitioner's removal (ECF 81), which has been pending since November 13, 2025. For all the reasons in that motion, and additionally because the exhibits submitted with this motion establish a clear path to Petitioner's prompt removal and because Petitioner now undisputedly has an administratively final order of removal, the Court should dissolve its preliminary injunction barring Petitioner's removal. At the very least, requiring Petitioner to comply with agencies' *Touhy* regulations will likely clarify and narrow the discovery

13

issues in dispute, permit the agency to consider and balance the relevant factors, and may lead to a production that requires no further intervention from the Court.

As such, this Court should deny Petitioner's request as it implicates documentation and information held by non-party agencies.

**CONCLUSION**

For the foregoing reasons, this Court should deny Petitioner's Motion for Leave to Conduct Limited Discovery.

Dated: April 13, 2026      Respectfully Submitted,

           BRETT A. SHUMATE
           Assistant Attorney General

           DREW C. ENSIGN
           Deputy Assistant Attorney General
           U.S. Department of Justice
           Civil Division, Office of Immigration Litigation

           JONATHAN GUYNN
           Deputy Assistant Attorney General
           U.S. Department of Justice
           Civil Division, Torts Branch

           ERNESTO MOLINA, JR.
           Deputy Director
           Office of Immigration Litigation

           */s/ Shane A. Young*
           SHANE A. YOUNG
           Trial Attorney
           U.S. Department of Justice
           Civil Division
           Office of Immigration Litigation
           P.O. Box 878, Ben Franklin Station
           Washington, DC 20044
           202-451-7483
           Shane.a.young@usdoj.gov

           ATTORNEYS FOR RESPONDENTS

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Shane A. Young
SHANE A. YOUNG
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation