## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, | Case No. 8:25-CV-02780-PX |
| Petitioner, | **RESPONDENTS' REPLY IN SUPPORT OF MOTION TO DISSOLVE INJUNCTION AGAINST PETITIONER'S DETENTION (ECF 141) AND INJUNCTION AGAINST PETITIONER'S REMOVAL (ECF 13)** |
| v. | |
| MARKWAYNE MULLIN, Secretary of Homeland Security; TODD BLANCHE, Acting Attorney General; TODD M. LYONS, and NIKITA BAKER, | |
| Respondents.[1] | |

---

[1] Secretary Markwayne Mullin and Acting Attorney General Todd Blanche are automatically substituted for their predecessors under Federal Rule of Civil Procedure 25(d).

**INTRODUCTION**

This Court should dissolve the active injunctions at ECF 141 and ECF 13. Petitioner argues the injunctions should remain as there has been no change in circumstances, and that any removal or detention remains unlawful. Since the injunctions have gone into effect, Respondents have settled on a final country of removal, and have analyzed and eliminated all other options. The Lyons Memorandum summarizes the discretionary decision of the Department of Homeland Security ("DHS") and gives reasoning as to why Liberia is the country of removal. *See* ECF 143-1. Neither Petitioner nor this court can substitute their judgment in such a decision. Moreover, the Schultz Declaration provides new and updated information for this court on the high probability of a quick and efficient removal of Petitioner as soon as the injunctions are lifted. *See* ECF No. 142-1. Such information, along with the Lyons Memorandum formally disregarding Petitioner's country designation, constitutes new information not previously available to this court.

Moreover, Petitioner's remaining arguments based on 8 U.S.C. § 1231(b)(2)(A), the government's reasonable fear screening, and due process concerns related to removal operations are jurisdictionally barred before this court. As previously argued throughout this litigation, Petitioner is a member of a mandatory, no-opt-out class in *D.V.D.*, and as such his claims in relation to his removal cannot be brought in parallel here. Thus, this Court should dissolve the injunctions and allow the government to fulfill its duties in deporting individuals with final orders of removal.

**ARGUMENT**

I.      **This Court has Jurisdiction to Dissolve the Injunctions, but this Court Lacks Jurisdiction to Hear Claims Regarding Third-Country Removal**

Petitioner has continued with his allegations that "ignoring [his] designation of Costa Rica" as his country of removal violates 8 U.S.C. § 1231(b)(2) and that the government's third-country-removal procedures "violate his rights under 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 1208.16, and due

1

process" in part because of the "risk of refoulement to El Salvador." *See generally* ECF No. 1 ¶¶ 48–50, 60–67. But Plaintiff remains a member of the non-opt-out class certified in *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025), and his claims raise the same arguments the class made in *D.V.D.*, where the district court has ruled in favor of the class on summary judgment. *See D.V.D. v. DHS,* ___ F. Supp. 4th ___, 2026 WL 521557 (D. Mass. Feb. 25, 2026). The First Circuit has stayed that judgment pending appeal. *See D.V.D. v. DHS,* No. 26-1212 (1st Cir. March 16, 2026).

Rule 23(b)(2) provides for class actions where Rule 23(a)'s requirements are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) neither requires that absent class members be given notice of class certification nor allows class members the opportunity to opt-out of the class action." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 330 n.25 (4th Cir. 2006). And "[i]ndividual class members may not bring separate lawsuits seeking injunctions similar to the relief sought by the class." *Spencer v. Gasper*, 2021 WL 5346665, at \*2 (6th Cir. June 16, 2021). That is because a Rule 23(b)(2) class "benefits class representatives and class members alike," *CASA, Inc. v. Trump*, 2025 WL 2263001, at \*12 (D. Md. Aug. 7, 2025), and allowing individual class members to bring separate lawsuits seeking similar relief would risk "prejudic[ing] other class members or caus[ing] inconsistencies and compromises in future litigation," *Borcherding-Dittloff v. Transworld Sys., Inc.*, 185 F.R.D. 558, 562 (W.D. Wis. 1999).

Here, Petitioner remains part of the Rule 23(b)(2) class certified in *D.V.D.* He was ordered removed under the INA, and the government seeks to remove him to a third country, not previously designated as the country of removal and not identified in the prior proceeding as a country to which he might be removed, after February 18, 2025. ECF No. 1-1; 1-5. Petitioner cannot opt out

2

of the class and may not individually bring claims for injunctive relief brought in *D.V.D.*

His Petition, however, seeks to do just that. He continues to allege that Respondents' third-country-removal policy, as set forth in the March 30, 2025, guidance document, violates the INA and due process and will result in his removal to a country where he is likely to be persecuted, tortured, or refouled. ECF No. 1 ¶¶ 48–50, 60–67. And he requests that this Court continue to enjoin Respondents from removing him to Liberia. ECF No. 144 at 1. This Court should dismiss Petitioner's claims because they are nearly identical to those brought in *D.V.D.* Separately adjudicating them would risk prejudicing other class members and could cause inconsistencies in future litigation. In particular, Petitioner seeks better treatment than other *D.V.D.* class members where the Supreme Court stayed the district court's preliminary injunction, *DHS v. D.V.D.*, 145 S. Ct. 2627 (2025), and the First Circuit stayed the district court's final judgment. *D.V.D.*, No. 26-1212. Petitioner cannot circumvent the class certified by the District of Massachusetts and obtain relief that the First Circuit determined should be unavailable during the pending *D.V.D.* appeal.

Moreover, 8 U.S.C. § 1252(a)(5), (b)(9), and (g) bar district courts from exercising jurisdiction over suits challenging actions taken to execute removal orders. Congress has explicitly and unambiguously stripped district courts of jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action ... to commence proceedings, adjudicate cases, or execute removal orders" "notwithstanding any other provision of law (statutory or nonstatutory), including ... any ... habeas corpus provision," 8 U.S.C § 1252(g), and the All Writs Act, which may authorize a court to employ extraordinary writs "in aid of its existing jurisdiction" but does not "enlarge that jurisdiction," *Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28, 33 (2002) (citation modified). To the extent claims arising from these distinct actions are reviewable at all, they are only reviewable along with any other "questions of law and fact ... arising from any action

3

taken or proceeding brought to remove an alien"—in a petition for review of a "final order" of removal. 8 U.S.C. § 1252(b)(9). And that petition, "filed with an appropriate court of appeals," is the "sole and exclusive means for judicial review" of such claims. 8 U.S.C § 1252(a)(5). Together, these provisions strictly limit judicial review over certain "stages in the deportation process." *AADC*, 525 U.S. at 483–84. It is especially plain that these statutes foreclose this Court's review here, where Petitioner had the opportunity to raise of his final order of removal through the statutorily prescribed process of BIA review followed by judicial review in the court of appeals— just a few months ago, when he was well aware that the government sought to remove him to Liberia—and affirmatively disavowed availing himself of that opportunity.

As Petitioner's remaining claims stem from the manner in which Respondents intend to "execute [Petitioner's] removal order[]," 8 U.S.C. § 1252(g)—by removing him to a third country other than his designated country or a country where he "would face persecution and torture" or refoulement, ECF No. 1 ¶¶ 50, 61–62—those claims "fall[] squarely within" the INA's jurisdictional bar, *AADC*, 525 U.S. at 487, and this Court lacks the authority to adjudicate them. *See Camarena v. ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order."). To raise any claims related to executing his removal order, Petitioner must move to reopen his removal proceedings and seek review before an immigration judge. See 8 U.S.C. § 1229a(c)(7). Petitioner has already attempted that route, and there, the immigration judge did not see fit to entertain Petitioner's claims. ECF 39.

Even if judicial review of Petitioner's remaining claims were justiciable in the circuit courts, district-court jurisdiction is lacking. Section 1252(b)(9)'s "unmistakable 'zipper' clause," "channels judicial review of all [claims arising from removal proceedings]" to a court of appeals

4

in the first instance. *AADC*, 525 U.S. at 483. Thus, dissolution of the injunctions is proper as they have been enforced absent this Court adjudicating Respondents' jurisdictional arguments.

Petitioner has virtually nothing to say about these bars. The previous reasoning he cites relies on the Court's previous conclusion that Petitioner lacked a final order of removal—a conclusion that is irrelevant now that Petitioner undisputedly has a final order of removal. ECF 144 at 6-7. Petitioner tacitly acknowledges as much by arguing only that "the existence of a final removal order" does not "change the Court's jurisdiction over Abrego Garcia's *Zadvydas* claim." ECF 144 at 7. The *Zadvydas* claim, of course, cannot serve as a basis for the injunction at ECF 13 forbidding Petitioner's removal. Petitioner utterly fails to defend the Court's jurisdiction to enjoin the government from removing Petitioner.

## II. Petitioner's Imminent Removal to Liberia is Lawful

### a. The Court's Lacks Jurisdiction to Hear Challenges to the Agency's Decision to Disregard Petitioner's Designation in Favor of Selecting Liberia as the Country of Removal

As the government argued in its motion to dissolve the injunction at ECF 72, the agency's decision to disregard Petitioner's preferred country of removal is a matter specified to be under the Secretary of Homeland Security's discretion. ECF 72 at 28. Petitioner now suggests that the Lyons Memorandum—the agency's formal exercise of its statutory authority—is somehow improper. Those arguments are barred by 8 U.S.C. § 1252(a)(2)(B)(ii).

Petitioner has previously argued that Section 1252(a)(2)(B)(ii) does not operate to preclude review of the decision to disregard Petitioner's designation. *See* ECF 88 at 21-34. He argued that the bar only applies to "discretionary decisions made or discretionary actions taken...." ECF 88 at 22. The Fourth Circuit has already rejected that argument in *Polfliet v. Cuccinelli*, 955 F.3d 377, which held that, if a statute specifies that a decision is discretionary, the bar on review extends not

only to the specifically "discretionary" aspect of the determination, but to all aspects of the decision, including statutory and constitutional questions attendant to that authority. 383-84 (4th Cir. 2020). Even the effort to suggest that a "legal issue" is being presented does not remove the issue from the bar in § 1252(a)(2)(B)(ii). *See Roland v. USCIS*, 850 F.3d 625, 629-30 (4th Cir. 2017). That is the only way to avoid rendering § 1252(a)(2)(B)(ii) a dead letter: Discretionary determinations are frequently accompanied by questions of fact or law that form prerequisites to the ultimate discretionary determination. *See, e.g., Wilkinson v. Garland*, 601 U.S. 209, 220-21 (2024) (cancellation of removal); *Roland*, 850 F.3d at 629-630 (discussing adjustment of status).

Here, the statute authorizing a disregard of the alien's preferred country is undoubtedly discretionary. It provides that "The Attorney General may disregard a designation." 8 U.S.C. § 1231(b)(2)(C). As the Supreme Court "has repeatedly observed, the word 'may' clearly connotes discretion.'" *Bouarfa v. Mayorkas*, 604 U.S. 6, 13-14 (2024) (quoting *Biden v. Texas*, 597 U.S. 785, 802 (2022)). Moreover, the relevant ground for disregarding a designation goes out of its way to specify that the decision is discretionary. It reads: "The Attorney General may disregard a designation under subparagraph (A)(i) if … *the Attorney General decides that* removing the alien to the country is prejudicial to the United States." 8 U.S.C. § 1231(b)(2)(C)(iv). Statutes like this one that turn on "an administrator's determination of the existence of [a] condition," as opposed to the objective existence of that condition, "exude deference[]" to that determination. *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1513 (D.C. Cir. 1989). That is why courts have repeatedly concluded that statutes phrased in this way commit the relevant decision to the agency's discretion in a manner that renders the decision unreviewable even without an explicit bar on judicial review. *See, e.g.*, *Webster v. Doe*, 486 U.S. 592, 600 (1988) (CIA director's authority to fire an employee "whenever [he] shall deem such termination necessary or advisable

6

in the interests of the United States" was unreviewable); *Kreis*, 866 F.2d at 1513 (decisionmaker's authority to correct an error "*when he considers it necessary* to correct an error or remove an injustice" was unreviewable); *Bouarfa*, 604 U.S. at 13-14 (statute providing that Secretary may revoke visa petition approval "for what he deems good and sufficient cause.").

The Lyons Memorandum makes clear that DHS has weighed the evidence and documentation received relating to Petitioner's removal and decided that it is in the best interest of the United States to proceed with removal to Liberia. ECF 143-1 at 3-5. Accordingly, the Court lacks jurisdiction to adjudicate Petitioner's challenges to the agency's decision to disregard his designated country under Section 1252(a)(2)(B)(ii) and because the statute commits that decision to agency discretion.

Tellingly, not even the *D.V.D.* district court suggests otherwise. That court agreed that DHS has discretion to disregard a petitioner's designated country of removal "if it were to deem such removal 'prejudicial to the United States.'" *D.V.D.*, 2026 WL 521557 at *25–26.

### b. The Lyons Memorandum Is a Valid Authority Under 8 U.S.C. § 1231(b)(2)(C)(iv)

The authority to disregard the designation of a country for removal has been properly delegated to Todd Lyons. Petitioner's challenge centers on the authority to disregard a designation of a country for removal at 8 U.S.C. § 1231(b)(2)(C)(iv), which is an authority originally granted to the Attorney General and transferred to the Secretary of Homeland Security by statute. 6 U.S.C. § 251(2); *Jama v. ICE*, 543 U.S. 335. n.1 (2005). The Secretary delegated this authority to the ICE Director in DHS Delegation 7030.2, *Delegation of Authority to the Assistant Secretary for U.S. Immigration and Customs Enforcement*, Section 2.T, which delegates "[a]uthority under the immigration laws, including but not limited to...[8 U.S.C. § 1231], to issue and execute detainers and warrants of arrest or removal, detain aliens, release aliens on bond and other appropriate

conditions as provided by law, and remove aliens from the United States." Petitioner argues that Section 2.T is not express in delegating the ability to disregard the designated country of removal; however, that is not correct. The delegation specifically provides the Immigration and Customs Enforcement ("ICE") director with authority to exercise § 1231 authorities by referencing the provision itself – it makes no sense that the authorities in § 1231(b) are somehow excluded. Additionally, the delegated power of removal necessarily includes the power to decide when to remove and to where.

Petitioner asserts that the Lyons memo is void under 5 U.S.C. § 3348(d)(1) because it is a function or duty of a vacant office. That assertion fails twice over. First, there is no vacant office. The authority granted by § 1231(b)(2) is a function of the Secretary, not the ICE Director, so it is not a function or duty of a vacant office under § 3348. Second, the authority is delegable. 5 U.S.C. § 3348 defines function or duty as a function or duty that "is established by regulation" and "is required by such regulation to be performed by the applicable officer (and only that officer." 5 U.S.C. § 3348(a)(2)(A). The Secretary has authority to delegate the § 1231(b)(2) authority. Congress has provided that "except as otherwise provided by this chapter, [the Secretary] may delegate any of the Secretary's functions to any officer, employee, or organizational unit of the Department." 6 U.S.C. § 112(b)(1). No authority "otherwise provide[s]" for § 1231(b)(2).

Petitioner next argues that Lyons was not delegated authority under § 1231(b)(2) because he was not serving lawfully under the Federal Vacancies and Reform Act ("FVRA"). However, Lyons was not serving pursuant to the FVRA, but a separate mechanism. Effective November 15, 2025, Mr. Lyons was designated as Senior Officer Performing Duties of Director ("SOPD") ICE Director and delegated the delegable authorities of that office. As just explained, § 1231 is such a delegable authority. It has been appropriately delegated to Lyons in his current role. *See* Delegation

7030.2, Section 3 (stating, "[d]elegation of an authority to the [Director] shall not be construed to mean that the authority may be exclusively exercised by the [Director]"); Delegation 15006, *Delegation to Director, United States Citizenship and Immigration Services to Order Expedited Removal and to Enforce Immigration Laws*, section II.B (delegating 8 U.S.C. § 1231 authority to USCIS Director); and Delegation 0710.3, *Delegation of Authority to the Commissioner of U.S. Customs and Border Protection*, Section II.B.21 (delegating 8 U.S.C. § 1231 authority to CBP Commissioner). Additionally, nothing in the language of 8 U.S.C. § 1231 discloses an intent to preclude delegation. *See Delegation of Auth. to Approve DEA Undercover Operations*, 9 U.S. Op. Off. Legal Counsel 94 (1985) (stating "any statutorily conferred authority is delegable, at least in the absence of any indication of congressional intent that the official named must personally exercise the authority conferred upon him"). Because 8 U.S.C. § 1231 is a delegable authority, the November 2025 memorandum empowered Lyons to exercise the authority to disregard a designation of a country for removal.

### c. The Lyons Memorandum, even if reviewable, Provides a Facially Legitimate and Bona Fide Reason for Petitioner's Removal to Liberia

The Supreme Court has repeatedly emphasized that the "power over aliens is of a political character and therefore subject only to narrow judicial review." *Fiallo v. Bell*, 430 U.S. at 792 (citing *Hampton v. Wong*, 426 U.S. 88, 101 n.21 (1976) (additional citations omitted)). Courts therefore conduct an especially limited review of those immigration matters where Congress emphasizes special deference to the Executive Branch.

The Supreme Court announced a landmark deferential review standard for the immigration context in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), where American citizens challenged on First Amendment grounds the Government's exclusion of a Belgian national and advocate of "world communism," then a ground of inadmissibility under INA § 212(a)(28), 8 U.S.C.

§ 1182(a)(28) (1976). *Mandel*, 408 U.S. at 755. The Court noted that the alien had no right of entry, and that the case turned on whether the First Amendment conferred upon American citizens the ability to compel Mandel's admission so that they could interact with him. *Mandel*, 408 U.S. at 762. Although acknowledging that First Amendment rights were implicated, the Court emphasized the longstanding principle that Congress has plenary power to make policies and rules for the exclusion of aliens. *Id*. at 765-66. Noting that Congress had delegated to the Executive Branch conditional exercise of this power regarding certain classes of excludable aliens, the Court held that only the most limited, deferential judicial review was warranted: "[W]hen the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." *Id*. at 770.

Today, *Mandel* retains its vitality. In *Trump v. Hawaii*, the Court reaffirmed the vitality of *Mandel* and its progeny in the context of a broad grant of authority to the President regarding the invocation of 8 U.S.C. § 1182(f). *See* 585 U.S. 667, 702-04 (2018). Similarly, the Court turned again to *Mandel* and its progeny when confronted with a challenge based on the "fundamental right" of marriage, the "right of association," and Due Process's alleged protection "to be free from arbitrary restrictions...." *Kerry v. Din*, 576 U.S. 86, 93 (2015). The Court again relied on *Mandel* to circumscribe a challenge to an asserted liberty interest in a visa. *See Department of State v. Munoz*, 602 U.S. 899, 908 (2024). Emphatically, the Court explained that:

> We have assumed that a narrow exception to th[e] [consular nonreviewability] bar exists "when the denial of a visa allegedly burdens the constitutional rights of U.S. citizens." [] In that event, the Court has considered whether the Executive gave a "facially legitimate and bona fide reason" for denying the visa." If so, the inquiry is at an end – the Court has disclaimed the authority to "look behind the exercise of that

discretion," much less to balance the reason given against the asserted constitutional right.

*Id.* at 908 (citations omitted).

Given the Supreme Court's recent clarity on the vitality of *Mandel*, Petitioner appears content to acknowledge the test as the appropriate one. *See* ECF 144 at 20-22. But he asks the Court to misapply the test. As a part of that test, the Supreme Court expressly provided that "when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against [other interests]." *Id.* at 770. Thus, the question is purely legal. Petitioner may have doubts about the memo and may want to test it, but under binding Supreme Court authority, he may not do so.

The only question before the Court is whether the Lyons Memorandum provides a "facially legitimate and bona fide reason" for disregarding Petitioner's designated country. It does so. The Lyons Memorandum begins by noting that Petitioner's designation took place on May 29, 2019, when he designated El Salvador as the country of removal. ECF 143-1 at 3. Further, when his order of removal was again issued, it designated El Salvador as the country of removal, but Petitioner did not appeal that determination and waived the issue. ECF 143-1 at 3-4.

Moreover, the Lyons Memo continued by considering Petitioner's "attempted" designation of Costa Rica but chose to disregard that determination because

> significant U.S. Government resources and political capital have been expended negotiating with the Republic of Liberia for its acceptance of third country nationals, and specifically for its acceptance of Mr. Abrego Garcia. Those high-stakes political negotiations, at the most senior levels of government, also resulted in reliable assurances that aliens removed to the Republic of Liberia will not be persecuted, tortured, or refouled to a country in which they would be persecuted or tortured. Importantly, these assurances have been reviewed and considered at the highest levels of the United States Government, including the Secretaries of State and Homeland Security. In addition, abandoning agreements negotiated at the highest levels of government could cast doubt on the

diplomatic reliability of the United States in relation not only to the Republic of Liberia but also other nations with whom it negotiates on these and other matters.

ECF 143-1 at 4. Thus, the Lyons Memorandum concludes, "Mr. Abrego Garcia's removal to Costa Rica at this time would be 'prejudicial to the United States." *Id.* In short, it was not in the interests of the United States to remove Petitioner to Costa Rica. *See* 8 U.S.C. 1231(b)(2)(C)(iv) (the Secretary (or his delegate) "decides that removing the alien to the country is prejudicial to the United States).

That, in itself, is a facially legitimate and bona fide reason. *Mandel* explained that the plenary powers of the political branch expressly include that inherent capacity to manage international affairs. *Mandel*, 408 U.S. at 765-66. A formal, final determination by the authorized decisionmaker that abandoning the extensive negotiations involving the removal of Petitioner to Liberia in favor a Petitioner's removal to Costa Rica is exactly the type of facially legitimate and bona fide reason that marks the end of the judicial inquiry into this question. Probing behind that facially complete reasoning is baseless, especially given that "determin[ing] national policy in light of" assessments of "practices in foreign countries," like determining where the interests of the United States lie in matters of foreign policy, is entrusted to "the political branches, not the Judiciary." *Munaf v. Geren*, 553 U.S. 674, 700-01 (2008).

**III.    Petitioner's Removal to Liberia Does Not Violate His Due Process Rights**

Petitioner's arguments that due process supports a preliminary injunction against his detention likewise fail.

First, as a threshold matter and as explained above, Petitioner is a mandatory class member in *D.V.D.* and as such, any parallel argument regarding constitutional sufficiency of the government's procedures for effectuating third-country removals, including Petitioner's claims about the process and standards governing screening for fear claims, must be denied. Petitioner

cannot litigate his due process claims outside that proceeding. The district judge hearing *D.V.D.* chose to certify a nationwide, no-opt-out class. *See* Fed. R. Civ. P. 23(b)(2). A no-opt-out class means that class members cannot litigate their claims on their own, and instead are bound, win or lose, by the resolution of their claims in the class litigation. Petitioner seeks to opt out of this no-opt-out class, but that attempt must fail. Petitioner, like other *D.V.D.* class members, has a final order of removal. Petitioner, like other *D.V.D.* class members, has had an opportunity to raise CAT and withholding claims in prior proceedings, express fears as to any potential countries of removal, and move to reopen past proceedings as new fears have arisen.

Second, Petitioner's claims would fail in any event. They are barred by the review bars discussed above, and they fail on the merits.

At the outset, Petitioner is subject to the "entry fiction": as an alien who never lawfully entered the United States, he is treated by the law as standing at the Nation's threshold and is not entitled to more process than the political branches have provided. Courts have long held that "the due process rights of an alien seeking initial entry" are no greater than "[w]hatever the procedure[s] authorized by congress." *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020). Petitioner has not been admitted to the United States, and as such, the Supreme Court has long held and recently reaffirmed that "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, *are* due process of law." *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892); *accord Thuraissigiam*, 591 U.S. at 138-40.

Even if that somehow did not dispose of Petitioner's claims, the guidance governing third-country removals comports with due process by ensuring that an alien will either be sent to a country where the United States has received credible assurances the alien will not be tortured or persecuted, or that the alien will be given notice and an opportunity to be heard regarding any fear

as to his country of removal. *See generally* ECF 28-2. Here, Petitioner has received both, either of which would be sufficient. ECF No. 72 at 30-33.

*Assurances.* The United States has received credible diplomatic assurances, specific to Petitioner, that Petitioner will not be tortured in Liberia. ECF No. 72-4. That is independently sufficient. When a country provides credible assurances that an individual is not to be subject to torture or persecution, the Constitution requires no further process. When, as is the case here, the Executive determines a country will not torture or persecute a person on his removal, that is conclusive. *Munaf*, 553 U.S. at 702-03; *see Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009) (federal courts "may not question the Government's determination that a potential recipient country is not likely to torture a detainee"), *cert. denied*, 559 U.S. 1005 (2010). Courts may not "second-guess [that] assessment." *Kiyemba*, 561 F.3d at 517; *see Munaf*, 553 U.S. at 703 n.6. Petitioner does not engage with this binding precedent or this independently sufficient basis for rejecting his due process claim. When the government is satisfied based on foreign assurances that no alien will be tortured in the receiving country, a further "individualized determination" serves no rational purpose. *Cf. Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself."). And courts may not "second guess the scope of the Executive's conclusion any more than its substance. *Kiyemba*, 561 F.3d at 517-18 (Kavanaugh, J., concurring). The decision that a foreign government's categorical assurance against torture or persecution is sufficient for all aliens is *itself* a "foreign policy" judgment not susceptible to judicial review. *Munaf*, 553 U.S. at 702.

*Interviews.* Petitioner also argues that a more detailed fear interview is warranted and that an immigration judge review is necessary no matter what assurances the government may have received. ECF 144 at 19, 21. That is incorrect, and Petitioner develops no legal argument supporting his view that the Constitution entitles him to immigration judge review or to a screening

conducted under his preferred legal standard. Nor could he: The standards governing fear screenings closely resemble the standards that govern expedited removal proceedings, which the Supreme Court recently held comport with due process. *Thuraissigiam*, 591 U.S. 103, 112 ("[a]nd '[n]otwithstanding' any other 'habeas corpus provision'—including 28 U.S.C. § 2241—'no court shall have jurisdiction to review' any other 'individual determination' or 'claim arising from or relating to the implementation or operation of an order of [expedited] removal.' § 1252(a)(2)(A)(i). In particular, courts may not review 'the determination' that an alien lacks a credible fear of persecution. § 1252(a)(2)(A)(iii); see also §§ 1252(a)(2)(A)(ii), (iv)"). Petitioner has received *far more* process than aliens subject to expedited removal—indeed, he recently had the opportunity to receive even more process before an immigration judge, the BIA, and a court of appeals by appealing the *nunc pro tunc* entry of a new final order of removal. That Petitioner disavowed the due process offered to him does not violate the Fifth Amendment.

## CONCLUSION

For the foregoing reasons, the Court should dissolve its injunctions against removal and detention of Petitioner.

Dated: April 13, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
JONATHAN GUYNN
Deputy Assistant Attorneys General

ERNESTO MOLINA, JR.
Deputy Director
Office of Immigration Litigation

*/s/ Shane A. Young*            .
SHANE A. YOUNG
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-451-7483
Shane.a.young@usdoj.gov

ATTORNEYS FOR RESPONDENTS

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Shane A. Young*
SHANE A. YOUNG
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
