**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Greenbelt Division**

Kilmar Armando Abrego Garcia,

                     Petitioner,

v.                                        Case No. 8:25-cv-02780 (PX)

Kristi Noem, *et al.*,

                     Respondents.

**Petitioner's Reply In Support Of**
**Motion For Limited Discovery**

**Table of Contents**

**Page**

Introduction...........................................................................................................................1

Argument ..............................................................................................................................2

I.     The Court Has Already Rejected The Government's Threshold Arguments. ...................2

II.    The Government Fails To Rebut Abrego Garcia's Showing Of Good Cause Warranting
       Limited Discovery. ...........................................................................................................4

       A.     The Government Lacks Discretion To Violate Section 1231..................................4

       B.     The Government Lacks Discretion To Violate *Zadvydas* And The Constitution... 6

       C.     The Government's Own Conduct In These Proceedings Warrants Discovery
              Under *Mandel*. ....................................................................................................9

III.   The Government Cannot Rely On Uncorroborated Privilege Claims To Avoid Limited
       Discovery. .....................................................................................................................10

IV.    The Government's Appeal To *Touhy* Procedures Is Inapposite And The Scope Of
       Discovery Can Be Addressed Through Normal Procedures..............................................11

V.     The Government's Notice of Appeal Does Not Divest This Court Of Jurisdiction. ........13

Conclusion ...........................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*A.A.R.P. v. Trump*,
  605 U.S. 91 (2025)................................................................................................15

*Abrego Garcia v. Noem*,
  2025 WL 1021113 (4th Cir. Apr. 7, 2025) ...........................................................3, 6

*Abrego Garcia v. Noem*,
  2025 WL 1135112 (4th Cir. Apr. 17, 2025) ...............................................................9

*Al-Anazi v. Bush*,
  370 F. Supp. 2d 188 (D.D.C. 2005)............................................................................7

*Alexander v. FBI*,
  186 F.R.D. 66 (D.D.C. 1998)...................................................................................13

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009)..................................................................................................14

*Bluefeld v. Cohen*,
  2017 WL 1546406 (D. Md. Apr. 27, 2017)..............................................................14

*Bouarfa v. Mayorkas*,
  604 U.S. 6 (2024)........................................................................................................5

*Bracy v. Gramley*,
  520 U.S. 899 (1997)....................................................................................................6

*CASA, Inc. v. Trump*,
  791 F. Supp. 3d 606 (D. Md. 2025).........................................................................15

*Castaneda v. Perry*,
  95 F.4th 750 (4th Cir. 2024) ......................................................................................4

*Cherrix v. Braxton*,
  131 F. Supp. 2d 756 (E.D. Va. 2001) ......................................................................12

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971)....................................................................................................9

*City of Martinsville v. Express Scripts, Inc.*,
  128 F.4th 265 (4th Cir. 2025) ..................................................................................13

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023)............................................................................................2, 13

*Comm. for Nuclear Responsibility, Inc. v. Seaborg*,
  463 F.2d 788 (D.C. Cir. 1971) ..............................................................................11

*COMSAT Corp. v. Nat'l Sci. Found.*,
  190 F.3d 269 (4th Cir. 1999) ................................................................................11

*Cruz Medina v. Noem*,
  806 F. Supp. 3d 536 (D. Md. 2025) ........................................................................7

*D.A. v. Noem*,
  800 F. Supp. 3d 43 (D.D.C. 2025) ..........................................................................7

*D.V.D. v. DHS*,
  ---F. Supp. 3d---, 2026 WL 521557 (D. Mass. Feb. 25, 2026)................................7

*Davis Enters. v. EPA*,
  877 F.2d 1181 (3d Cir. 1989)................................................................................11

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019)................................................................................................9

*Escobedo v. United States*,
  623 F.2d 1098 (5th Cir. 1980) ................................................................................7

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982)..............................................................................................2, 13

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ..................................................................................3

*In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct*
  *Discovery for Use in a Foreign Proc.*,
  286 F. Supp. 3d 1 (D.D.C. 2017) ..........................................................................11

*Jama v. ICE*,
  543 U.S. 335 (2005)................................................................................................5

*Jama v. INS*,
  329 F.3d 630 (8th Cir. 2003) ..................................................................................5

*Kerry v. Din*,
  576 U.S. 86 (2015).................................................................................................9

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972)...............................................................................................1, 9

*Levin v. Alms & Assocs.*,
  634 F.3d 260 (4th Cir. 2011) ................................................................................14

*Murphy v. Smith*,
  583 U.S. 220 (2018).................................................................................................5

*Nguyen v. Scott*,
  796 F. Supp. 3d 703 (W.D. Wash. 2025).................................................................7

*Polfiet v. Cuccinelli*,
  955 F.3d 377 (4th Cir. 2020) ..................................................................................5

*Sesay v. United States*,
  984 F.3d 312 (4th Cir. 2021) ..................................................................................9

*Sidali v. INS*,
  107 F.3d 191 (3d Cir. 1997).....................................................................................7

*South Carolina v. United States*,
  907 F.3d 742 (4th Cir. 2018) ..................................................................................5

*United States v. Abrego*,
  802 F. Supp. 3d 1055 (M.D. Tenn. 2025).................................................................6

*United States v. Curtiss-Wright Exp. Corp.*,
  299 U.S. 304 (1936).................................................................................................6

*United States v. Jones*,
  367 F. App'x 482 (4th Cir. 2010) ..........................................................................14

*United States v. Kin-Hong*,
  110 F.3d 103 (1st Cir. 1997).....................................................................................7

*Zadvydas v. Davis*,
  533 U.S. 678 (2001).................................................................................................1

## <u>Statutes</u>

8 U.S.C. § 1231(b) ........................................................................................................7

8 U.S.C. § 1231(b)(2)(A)...........................................................................................5, 6

8 U.S.C. § 1231(b)(2)(A)(ii).........................................................................................5

8 U.S.C. § 1231(b)(2)(C) .............................................................................................5

8 U.S.C. § 1231(b)(3)(A)...........................................................................................5, 6

8 U.S.C. § 1252(a)(2)(B)(ii) ..................................................................................................1

8 U.S.C. § 1252(a)(5)...........................................................................................................1

8 U.S.C. § 1252(b)(9) ..........................................................................................................1

8 U.S.C. § 1252(g) ...........................................................................................................1, 6

8 U.S.C. § 1555....................................................................................................................5

## **Rules**

Fed. R. Civ. P. 34(a)(1).......................................................................................................12

Fed. R. Civ. P. 62.1(a)(3).....................................................................................................15

Fed. R. Civ. P. 81(a)(4)........................................................................................................12

Habeas Rule 6(a).................................................................................................................12

U.S. Dist. Ct. Md. Local R., App. D, p.136........................................................................12

## **Other Authorities**

16 Wright & Miller,
    Federal Practice and Procedure § 3924.2 (3d ed.) ....................................................14

**Introduction**

In opposing Petitioner Kilmar Armando Abrego Garcia's request to conduct limited discovery, the Government continues to pursue arguments that this Court has rejected time and again. ECF No. 159 (**Opp.**). Indeed, to accept the Government's arguments, one must disregard nearly all of the Court's prior rulings here and in *Abrego Garcia v. Noem*, No. 25-cv-00951 ("*Abrego Garcia I*"). Although doing so allows the Government to feign ignorance of its prior conduct, it does not rewrite the record and Abrego Garcia's showing of good cause that warrants limited discovery here. The Court should grant Abrego Garcia's motion.

The Government makes four arguments as to why good cause has not been shown, but none is persuasive. *First*, the Government repeats its prior jurisdictional arguments regarding the *D.V.D.* class and the jurisdiction-stripping provisions in 8 U.S.C. § 1252(a)(2)(B)(ii), (a)(5), (b)(9) and (g). The Court has already rejected all of these arguments and it should do so again here.

*Second*, the Government asserts that *all* of the issues before the Court are within the sole and unreviewable discretion of the Executive. That is plainly incorrect. The Government does not have discretion to violate the Immigration and Nationality Act (**INA**) in removing Abrego Garcia. The Government does not have discretion to detain Abrego Garcia in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Constitution. And the persistent bad faith the Government has exhibited throughout the proceedings in this case and in *Abrego Garcia I* is precisely the type of conduct that permits the Court to "look behind" the Government's stated rationale under *Kleindienst v. Mandel*, 408 U.S. 753 (1972). The Government's disregard of the Court's prior rulings and the history of this case do not support its contrary assertions.

*Third*, the Government insists that broad claims of "government privilege" shield it from the limited discovery Abrego Garcia has proposed. But those claims are no more convincing now than they were nearly a year ago when the Court rejected them. *Abrego Garcia I*, ECF No. 100.

1

*Fourth*, the Government suggests that Abrego Garcia must abide by *Touhy* procedures for the discovery he seeks. Not so. His proposed discovery is directed at Respondents, including the Department of Homeland Security, the Department of Justice, and Todd Lyons, all of whom are parties to this case. Abrego Garcia need not resort to *Touhy* regulations to obtain party discovery. And to the extent disputes arise over the scope of discovery, the parties and the Court can address them through normal discovery procedures like in *Abrego Garcia I*.

Separately, on April 17, the Government noticed an appeal from the supposed "constructive denial" of its motion to dissolve. ECF No. 163 at 1. This discovery motion seeks documents pertinent to the Government's motion to dissolve. The appeal therefore may have divested this Court of jurisdiction to resolve the discovery motion as, ordinarily, an appeal, "including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). When, however, an appeal is frivolous—as the "constructive denial" appeal is here—the automatic divestiture rule does not apply.

The Court should thus grant Abrego Garcia's discovery motion.

## Argument

**I.     The Court Has Already Rejected The Government's Threshold Arguments.**

The Government continues to disregard the history of this case and the Court's prior decisions. *See* Opp. 5–7. Its first argument resuscitates its prior assertion that Abrego Garcia is a member of the class in *D.V.D. v. DHS*. Opp. 5–6. But the Government fails to acknowledge that the Court has already rejected this argument, first by finding that Abrego Garcia is not part of the *D.V.D.* class because he did not have a final order of removal when that class was certified, and second by concluding that, even if he had a final order of removal, the Court does not lack jurisdiction and may proceed on Abrego Garcia's claims because membership in a class action

2

"remains a recognized exception to the claim-splitting rule." ECF No. 110 at 24 n.16 (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003)). Moreover, the Government fails to recognize that, unlike any *D.V.D.* class member, Abrego Garcia "has agreed to deport to a third country willing to take him, yet … [the Government seeks his detention] under the pretense of effectuating prompt third-country removal." ECF No. 141 at 8 n.4. The Government cannot avoid limited discovery by re-raising arguments the Court has already rejected.

The Court has also repeatedly rejected the Government's statutory jurisdictional arguments. *See* Opp. 6–7. As this Court and the Fourth Circuit have previously explained, the Government cannot violate the INA or the Constitution and avoid judicial review under the guise of an exercise of discretion. *See Abrego Garcia I*, ECF No. 31 at 7–16; *Abrego Garcia I*, ECF No. 238 at 12–14; *Abrego Garcia v. Noem*, 2025 WL 1021113, at *2–3 (4th Cir. Apr. 7, 2025) (Thacker, J., concurring). That is what the Government attempts to do here by improperly wielding removal to Liberia as punishment for Abrego Garcia filing *Abrego Garcia I* and refusing to plead guilty in the Tennessee criminal matter. *See* ECF No. 144 at 7–23; *see also* ECF No. 149-1 (brief of *amici*). The Court has recognized this from the outset of these habeas proceedings. *See* ECF No. 14 at 7:3–17 (concluding "it is … plain" that the Government cannot remove Abrego Garcia to Uganda or Liberia to punish Abrego Garcia for exercising his constitutional right to trial). The limited discovery Abrego Garcia seeks goes directly to whether the Government continues to seek removal to Liberia as punishment in violation of the INA and the Constitution. *See* ECF No. 145-1.

The Government's jurisdictional argument against discovery on Abrego Garcia's *Zadvydas* claim is also conclusory and contrary to the Court's prior rulings. Opp. 6–7. The bald assertion that Abrego Garcia has been detained for only 10 days is contrary to the Court's factual finding that the Government unlawfully "held him in some form of detention since March 2025 until this

Court ordered his release [in December 2025]," and that the Government's years of inaction "in effectuating third-country removal cuts decidedly against any requested finding that Abrego Garcia's removal is reasonably foreseeable." ECF No. 141 at 7. It also ignores the Government's repeated reliance on declarations from declarants, including John A. Schultz, who lacked any personal knowledge on the issues relevant to these proceedings. *See* ECF No. 110 at 9–14 & n.12, 28 (discussing deficiencies in the Government's declarants and witnesses in defiance of the Court's orders in these proceedings and *Abrego Garcia I*). And it ignores that the Government's new position that it need not obtain travel documents for Abrego Garcia contradicts its representations to the Court that it was actively seeking those documents. *See* ECF No. 141 at 8–9 (quoting ECF No. 138 at 11:12–16). Abrego Garcia's limited discovery requests pertaining to the Schultz Declaration seek to determine what, if anything, has changed since the Court "easily conclude[d] that there is no 'good reason to believe' removal is likely in the reasonably foreseeable future." *Id.* at 9 (quoting *Castaneda v. Perry*, 95 F.4th 750, 756 (4th Cir. 2024)).

Consistent with its prior decisions that the Government ignores, the Court should reject the Government's jurisdictional arguments.

## II.     The Government Fails To Rebut Abrego Garcia's Showing Of Good Cause Warranting Limited Discovery.

Like its jurisdictional arguments, the Government's attempts to rebut Abrego Garcia's showing of good cause disregard both the law and facts of this case, including the Government's behavior throughout the proceedings in this case and in *Abrego Garcia I*. Opp. 7–11.

### A.     The Government Lacks Discretion To Violate Section 1231.

The Government asserts that it is entirely within the Government's unreviewable discretion to decide where to remove Abrego Garcia, and thus there is no good cause to support Abrego Garcia's limited discovery regarding the Lyons Memorandum. Opp. 7–8. Not so. The statute

4

commands that the Government "*shall* remove" Abrego Garcia to the country he designates, which is Costa Rica. 8 U.S.C. § 1231(b)(2)(A)(ii) (emphasis added). The use of the word "shall" indicates the Government "has some nondiscretionary duty to perform." *South Carolina v. United States*, 907 F.3d 742, 756 (4th Cir. 2018) (quoting *Murphy v. Smith*, 583 U.S. 220, 223 (2018)). The only way the Government "may" disregard Abrego Garcia's designation of Costa Rica is "if" at least one of the "four specified circumstances" in § 1231(b)(2)(C) applies. *Jama v. INS*, 329 F.3d 630, 633 (8th Cir. 2003), *aff'd sub nom.*, *Jama v. ICE*, 543 U.S. 335 (2005). In other words, Congress bestowed discretion on the Government to disregard Abrego Garcia's designation of Costa Rica only if one of the circumstances in § 1231(b)(2)(C) actually exists. And whether those circumstances actually exist is a question of fact, not discretion. As the Government's cases do not concern statutes with similar constraints, they are inapposite. *See Polfiet v. Cuccinelli*, 955 F.3d 377, 381 (4th Cir. 2020) (reviewing 8 U.S.C. § 1555, which provides that "[t]he Secretary of Homeland Security may, *at any time*, for what *he deems* to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title" (emphasis added)); *Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14 (2024) (reviewing the same).

Here, Abrego Garcia properly designated Costa Rica as his preferred country of removal under § 1231(b)(2)(A) on August 23, 2025, within 48 hours of receiving assurances from Costa Rica that it would grant him legal status and not return him to El Salvador. ECF No. 144 at 8–9 (citing ECF No. 1-7; ECF No. 1-3; ECF No. 1-5). For **209 days**, until the filing of the Lyons Memorandum with the Court, the Government "persistent[ly] refus[ed] to acknowledge Costa Rica as a viable removal option" and "inexplicabl[y]" refused to tell the Court why, despite repeated orders to produce a witness with such knowledge. ECF No. 110 at 9–14 & n.12, 28–29; ECF No. 141 at 8 ("Respondents purposely—and for no reason—ignored the one country that has

consistently offered to accept Abrego Garcia as a refugee, and to which he agrees to go.").

Moreover, the Lyons Memorandum is inconsistent with sworn testimony by the Government's

own witness, Schultz, that he knew of "no impediment to remove Abrego Garcia to Costa Rica,

including no statement from Respondents that effectuating such removal would run contrary to

'U.S. interests'" and that he had "been told nothing about why Respondents had not yet processed

Abrego Garcia's removal to Costa Rica." ECF No. 110 at 10–11 (citing ECF No. 52 at 105–06).

The only plausible explanation for the Government's persistence in threatening removal to Liberia

when he is ready and willing to be removed to Costa Rica is to punish him for exercising his

constitutional rights. *See* ECF No. 1; ECF No. 14 at 7:3–17; *see also United States v. Abrego*, 802

F. Supp. 3d 1055 (M.D. Tenn. 2025). As such, good cause exists to conduct limited discovery. *See*

*Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997).

**B.**     **The Government Lacks Discretion To Violate *Zadvydas* And The Constitution.**

For similar reasons, the Government's arguments against Abrego Garcia's limited

discovery requests regarding the Schultz Declaration are meritless. Opp. 9–11. To start, 8 U.S.C.

§ 1252(g) does nothing to further the Government's argument because the Government is not

"execut[ing]" a removal order under its "lawful" discretion when it violates the INA to do so.

*Abrego Garcia I*, ECF No. 31 at 7–16; *Abrego Garcia*, 2025 WL 1021113, at *2–3 (Thacker, J.,

concurring). Violating § 1231(b)(2)(A) via removal to Liberia is no more lawful than the

Government's violation of § 1231(b)(3)(A) when it removed Abrego Garcia to El Salvador despite

the withholding of removal order. *Id.* As § 1252(g) was no bar to limited discovery there, *Abrego*

*Garcia I*, ECF No. 31 at 7–16; *Abrego Garcia I*, ECF No. 79; *Abrego Garcia I*, ECF No. 100, it is

no bar to limited discovery here.

The Government overreaches by insisting that its authority to remove Abrego Garcia is

"plenary and exclusive." Opp. 9–10 (quoting *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S.

6

304, 319 (1936)). The Executive does *not* have plenary authority over Abrego Garcia's removal. Congress has a say too. And in § 1231(b), Congress crafted a detailed statutory regime governing removal destinations that the Executive must follow. The majority of the cases the Government cites involve extradition under multilateral treaties, which is not at issue here. *See United States v. Kin-Hong*, 110 F.3d 103 (1st Cir. 1997); *Sidali v. INS*, 107 F.3d 191 (3d Cir. 1997); *Escobedo v. United States*, 623 F.2d 1098 (5th Cir. 1980). The one non-extradition case it cites is equally inapposite: it concerned detainees at Guantanamo Bay who sought to block a transfer on humanitarian grounds, and, importantly, the detainees there had not presented "any evidence that [the Government was] transferring [them] to foreign countries for an illicit purpose." *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 196 (D.D.C. 2005).[1] Abrego Garcia has presented evidence of such an illicit purpose with respect to Liberia, and the Government has offered no evidence to the contrary. *Supra* pp.3–6; *Infra* pp.9–10; ECF No. 144 at 21–23. And in boldly proclaiming that "[a]ll three branches of Government" are in agreement that third-country assurances are outside the scope of judicial review, Opp. 9–10, the Government refuses to acknowledge the plethora of courts that have explicitly rejected that view and the constitutional and legal sufficiency of the Government's current third-country removal policy. *See D.V.D. v. DHS*, ---F. Supp. 3d---, 2026 WL 521557, at *34–39 (D. Mass. Feb. 25, 2026); *Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 547–52 (D. Md. 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727–29 (W.D. Wash. 2025); *see also D.A. v. Noem*, 800 F. Supp. 3d 43, 46 (D.D.C. 2025) (quoting Government's acknowledgment that Ghana has violated its assurances).

---

[1] Notably, unlike the Government's current policy, at the time of *Al-Anazi*, the Government reviewed foreign government assurances "on a case-by-case basis, considering the particular circumstances of the transfer, country, and individual involved and concerns regarding possible torture and persecution." 370 F. Supp. 2d at 192.

7

The Government also argues that there is no good cause for limited discovery because Schultz previously testified before the Court, and the Court has all the evidence it needs to decide whether Abrego Garcia's removal is likely in the reasonably foreseeable future. Opp. 10–11. Again, the Government ignores the history of this case. After Schultz previously testified that the Government does not "need" travel documents to execute a third-country removal, Schultz further explained that he is not aware of any assurances that the deportee would be permitted to stay in the third country lawfully. ECF No. 52 at 158:24–159:5. But then, at the January 14, 2026, conference, the Government represented that it was "working to get [Abrego Garcia] travel documents." ECF No. 138 at 11:12–16. And now, the Government claims it has all the assurances it needs that Abrego Garcia will not be refouled to El Salvador. Opp. 10–11. Further, as the Court observed, the Government's insistence on an expeditious removal while it is simultaneously prosecuting Abrego Garcia in the Tennessee criminal matter "raises some serious concern about what's happening in the country of choice" (*i.e.*, Liberia). ECF No. 158 at 11:5–9. These contradictions undermine the reliability of the Government's assertions.

Schultz, moreover, can hardly be characterized as a reliable witness. He "was not prepared *at all* to discuss Costa Rica's offer to accept Abrego Garcia as a refugee" despite the Court's order to the Government to produce a witness who could testify on the matter. ECF No. 110 at 9 (emphasis in original). Schultz was the fifth witness the Court directed the Government to prepare for either a deposition or in-court testimony regarding this case, including these proceedings and *Abrego Garcia I. Id.* at 13 n.12. He was the fifth witness who was "either unprepared or defiant in their refusal to answer questions." *Id.* And the Government did not stop there; it produced a sixth witness, Johnathan Cantú, who also filed a declaration but was unprepared to discuss (and hardly even knew) its content. *Id.* at 13–14 (quoting ECF No. 107 at 26:8–27:12).

In *Abrego Garcia I*, the Court found that the Government has "taken the presumption of regularity" and "destroyed it." *Abrego Garcia I*, ECF No. 235 at 11:7–10. Since then, the Government has continued in this case to have officials file declarations without any personal knowledge of their content. And through these declarations, the Government "affirmatively misled the [Court]." ECF No. 110 at 29. There is no reason to suspect the new Schultz Declaration is any different. Good cause therefore supports Abrego Garcia's limited discovery requests.

### C.     The Government's Own Conduct In These Proceedings Warrants Discovery Under *Mandel*.

The Government's failure to acknowledge its own conduct in this case and the history of these proceedings more generally betrays its fundamental misunderstanding of the standard in *Mandel*. Even assuming a more stringent standard of review does not apply—though it does, *see* ECF No. 144 at 13–14—*Mandel* does *not* prohibit courts from "look[ing] behind" the Executive's stated rationale where there has been an "affirmative[] show[ing] [of] bad faith." *Sesay v. United States*, 984 F.3d 312, 315 (4th Cir. 2021) (citing *Kerry v. Din*, 576 U.S. 86, 105 (2015) (Kennedy, J., concurring in the judgment)). As the Fourth Circuit has explained, under *Mandel* and Justice Kennedy's controlling concurrence in *Kerry v. Din*, "an affirmative showing of bad faith … would allow the court to consider the factual details underlying the [Government's] decision." *Id.* at 315; *see also Dep't of Com. v. New York*, 588 U.S. 752, 755 (2019) (permitting further judicial inquiry into "'the mental processes of administrative decisionmakers' upon a 'strong showing of bad faith or improper behavior'" (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971))).

A strong showing of bad faith is precisely what the record here and in *Abrego Garcia I* lays bare. Time and again, the Government has acted in bad faith, *Abrego Garcia I*, ECF No. 100 at 2, refused to comply with the Court's orders, *Abrego Garcia v. Noem*, 2025 WL 1135112 (4th Cir.

9

Apr. 17, 2025); *Abrego Garcia I*, ECF No. 238 at 3; ECF No. 110 at 13 & n.12, 28, and even "affirmatively misled the [Court]," ECF No. 110 at 29. The Government claims that it "need not address" the contention that "any of its employees or representatives have made false statements in this litigation" because such a contention is "unfounded." Opp. 7 n.2. But the Government's making false representations to the Court is not a mere contention—it is an affirmative finding of fact that the Court has already made. ECF No. 110 at 29. The Government represented to the Court that Costa Rica "does not wish to receive" Abrego Garcia, that it "would not simply accept [Abrego Garcia] if asked," and that it "refuses to accept him." ECF No. 105 at 2, 7. The Government pointed to Cantú's sworn declaration in which he stated "Costa Rica would not accept the transfer of Mr. Abrego Garcia … at this time." ECF No. 75-6 ¶ 5. The Government filed these documents under seal to evade public scrutiny, which became evident after the government of Costa Rica publicly repudiated the Government's misrepresentations to the Court almost immediately after they became public. ECF No. 110 at 29; ECF No. 108. In short, there is ample evidence of bad faith sufficient to satisfy *Mandel*'s deferential standard and to establish good cause for limited discovery. ECF No. 145 at 4–5; ECF No. 144 at 17.

### III. The Government Cannot Rely On Uncorroborated Privilege Claims To Avoid Limited Discovery.

The Government also seeks to avoid Abrego Garcia's limited discovery requests on the conclusory assertion that "the vast majority of responsive documents and information are privileged." Opp. 11. This is not the first time the Government has taken this approach. In *Abrego Garcia I*, the Court rejected a similar attempt by the Government to broadly assert various privileges without "demonstrat[ing] the legal and factual bases to invoke the protections that such privilege affords," or even producing a privilege log. *Abrego Garcia I*, ECF No. 100 at 2–3. The lone case the Government cites concerned discovery demands specifically targeted at "an

attorney's records in connection with representation of a client," thereby directly implicating the attorney-client privilege. *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proc.*, 286 F. Supp. 3d 1, 7 (D.D.C. 2017). Yet the Government does not even assert that Abrego Garcia's limited discovery requests would implicate that privilege, instead relying on state secrets, deliberative process, and other unspecified "government privileges." *See Abrego Garcia I*, ECF No. 100 at 2.

To the extent Abrego Garcia's limited discovery requests encompass information that the Government asserts is privileged, the Court may address the Government's privilege claims should it properly invoke such privileges. *See id.* at 2–3; *see also Abrego Garcia I*, ECF No. 115 at 1 (ordering briefing on the Government's privilege claims). Moreover, counsel to Abrego Garcia are willing to meet and confer in good faith with counsel to the Government to address any legitimate privilege concerns. But the Government's conclusory and unsubstantiated claims of privilege do not negate the good cause shown warranting limited discovery.

**IV.    The Government's Appeal To *Touhy* Procedures Is Inapposite And The Scope Of Discovery Can Be Addressed Through Normal Procedures.**

The Government's final argument against limited discovery rests on the odd claim that Abrego Garcia must comply with *Touhy* regulations to obtain discovery. Opp. 11–14. *Touhy* procedures apply when a federal agency receives a third-party subpoena in private civil litigation; they do not apply to litigation where the agency and its officers are parties. *See COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999); *Davis Enters. v. EPA*, 877 F.2d 1181, 1187 (3d Cir. 1989); *see also Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 794 (D.C. Cir. 1971) ("[N]o executive official or agency can be given absolute authority to determine what documents in his possession may be considered by the court in its task."). The Government seems to recognize this as it seems to object only to "information pertaining to an agency outside

11

of DHS," Opp. 12–13, but as the Court recently reminded the Government, the Department of Justice and the Acting Attorney General are also respondents in this case. ECF No. 158 at 9:3–9. The Government provides no reason as to why Abrego Garcia must go through the *Touhy* process as it pertains to the Respondents who are parties to this case.

The Government further argues that it "can only guess as to which federal agencies and personnel" Abrego Garcia's limited discovery requests are directed. Opp. 12. That is disingenuous. Abrego Garcia's proposed requests are titled "Petitioner's Requests for Production *to Respondents*." ECF No. 145-1 at 1 (emphasis added). They define "You" and "Your" as "*the Respondents in this case*, including, as applicable, any of their officials, employees, departments, components, commissions, representatives, agents," etc. *Id.* at 1–2 (emphasis added). They instruct the Government to produce requested documents that are "in *Your* possession, custody, and control." *Id.* at 2 (emphasis added). Abrego Garcia's proposed limited discovery requests are thus clearly directed at the "Respondents" in this case, including their officers, employees, agents, etc., and concern the "Documents" that are in their "possession, custody, and control," as permitted under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 34(a)(1); *see also* U.S. Dist. Ct. Md. Local R., App. D, p.136 (defining "*You/Your*" similarly); Habeas Rule 6(a) (permitting "discovery under the Federal Rules of Civil Procedure"); Fed. R. Civ. P. 81(a)(4) (stating that the Federal Rules of Civil Procedure apply to proceedings for habeas corpus); *Cherrix v. Braxton*, 131 F. Supp. 2d 756, 777–78 (E.D. Va. 2001) (ordering respondents to produce documents under Rule 34 in a habeas proceeding).

The Government also baselessly argues that Abrego Garcia must follow *Touhy* procedures to obtain "documents, information, or correspondence between a party and a non-party." Opp. 12. The Government cites no authority for the proposition that *Touhy* applies to documents under the

12

possession, custody, and control of a federal agency party merely because they are "between" that party and a non-party federal agency. Neither *Touhy* nor Rule 34 impose such a requirement— relevant discoverable information in the possession, custody, or control of Respondents must be produced irrespective of whether other agencies are involved. *See, e.g.*, *Alexander v. FBI*, 186 F.R.D. 66, 70 (D.D.C. 1998).

Finally, to the extent there is any concern regarding the scope of Abrego Garcia's limited discovery requests, the parties and the Court may modify Abrego Garcia's proposed requests through normal discovery procedures and need not resort to *Touhy*. For example, the Government states that in preparing the Lyons Memorandum, Lyons considered "the evidence and documentation received relating to Petitioner's removal." ECF No. 160 at 7. This "evidence and documentation" is clearly responsive to proposed Request No. 3, and there is no indication that any such documentation would be privileged or otherwise not discoverable. ECF No. 145-1 at 3. Thus, the Government has discoverable, responsive information that it can and should produce. To the extent any requests need to be more narrowly tailored, Abrego Garcia stands willing and able to meet and confer with the Government in good faith to resolve any issues of scope.

**V.      The Government's Notice of Appeal Does Not Divest This Court Of Jurisdiction.**

The Government's April 17 notice of appeal purports to appeal from this Court's "constructive denial" of its motion to dissolve. ECF No. 163 at 1. The filing of a notice of appeal, "including an interlocutory appeal," is an act of jurisdictional significance that "'divests the district court of its control over those aspects of the case involved in the appeal.'" *Coinbase*, 599 U.S. at 740 (quoting *Griggs*, 459 U.S. at 58). Under this *Griggs* principle, a district court must "halt all proceedings related to the appeal." *City of Martinsville v. Express Scripts, Inc.*, 128 F.4th 265, 268 (4th Cir. 2025). Abrego Garcia's discovery motion seeks materials relating to the Government's

dissolution motion, so the notice of appeal potentially divests this Court of jurisdiction to resolve the discovery motion.

The divestiture rule is, however, "subject to certain safeguards against frivolous appeals." *Levin v. Alms & Assocs.*, 634 F.3d 260, 265 (4th Cir. 2011). A district court "does not lose jurisdiction when the litigant takes an appeal from an unappealable order." *United States v. Jones*, 367 F. App'x 482, 484 (4th Cir. 2010); *accord Bluefeld v. Cohen*, 2017 WL 1546406, at \*2 (D. Md. Apr. 27, 2017) (Xinis, J.) (collecting authorities). And even if the appeal is of an appealable order, the district court may retain jurisdiction by certifying that the appeal is frivolous. *Levin*, 634 F.3d at 265; *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629 (2009) ("Appellate courts can . . . authorize the district court's retention of jurisdiction when an appeal is certified as frivolous.").

Here, the Government's "constructive denial" appeal is frivolous. The Court has not entered a judicial order resolving the motion to dissolve, so the Government's "constructive denial" appeal is not of an actual appealable order. Nor has the Court constructively denied the motion. When the Government noticed its appeal, the dissolution motion was pending and moving forward through ordinary proceedings. On April 7, the Court scheduled a hearing on the motion for April 28. ECF No. 148 at 6. That the Court had not resolved the motion by April 17 was not because the Court had constructively denied the motion, but rather because the motion was "simply not ripe for resolution" yet. *Id.* "Simply deferring the time to rule" on a motion to dissolve "does not count as an appealable refusal." 16 Wright & Miller, Federal Practice and Procedure § 3924.2 (3d ed.) (collecting authorities).

The Government gave the Court an ultimatum: decide the motion by April 17 or else the Government would deem the motion "denied." ECF No. 142 at 2, 11. No litigant—whether the

14

Government or anyone else—"can dictate the Court's schedule or the outcome of the motion." ECF No. 148 at 1. Nor can a litigant ordinarily "appeal a judicial order that does not exist." *Id.* In extraordinary circumstances, "[a] district court's inaction in the face of extreme urgency and a high risk of 'serious, perhaps irreparable,' consequences may have the effect of refusing an injunction" and thereby give rise to appellate jurisdiction. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (citation omitted). But the Government does not—and cannot—identify any "extreme urgency" or "serious, perhaps irreparable, consequences" that necessitated a ruling by April 17. Simply put, there is no appealable order here, and the Government's contrary assertion is frivolous.

Should the Court nonetheless determine that the notice of appeal divests it of jurisdiction, then Abrego Garcia respectfully requests that the Court issue an indicative ruling under Federal Rule of Civil Procedure 62.1 on his motion for limited discovery. When an appeal divests the district court of jurisdiction to decide a motion, Rule 62.1 permits the court to issue an indicative ruling "that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a)(3); *see CASA, Inc. v. Trump*, 791 F. Supp. 3d 606, 614–15 (D. Md. 2025). An indicative ruling as to what additional discovery, if any, the Court would grant would likely aid the Fourth Circuit in evaluating the propriety of the Government's appeal of the purported "constructive denial" of its dissolution motion. *See also* ECF No. 158 at 11:8 (recognizing there are factual issues that "need[] to get sussed out"). Abrego Garcia is also filing a separate motion seeking an indicative ruling concurrently with this reply.

### Conclusion

The Court should grant Abrego Garcia's motion to conduct limited discovery.

15

Respectfully submitted,

Dated: April 20, 2026

|  |  |
|---|---|
| **MURRAY OSORIO PLLC** | /s/ Jonathan G. Cooper |
| Simon Y. Sandoval-Moshenberg | **QUINN EMANUEL URQUHART &** |
| Rina Gandhi | **SULLIVAN, LLP** |
| 4103 Chain Bridge Road, Suite 300 | Jonathan G. Cooper (D. Md. Bar No. 21345) |
| Fairfax, VA 22030 | Olivia Horton* (*pro hac vice*) |
| (703) 352-2399 | Nithya Pathalam (*pro hac vice*) |
| ssandoval@murrayosorio.com | 555 13th Street NW, Suite 600 |

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
Rina Gandhi
4103 Chain Bridge Road, Suite 300
Fairfax, VA 22030
(703) 352-2399
ssandoval@murrayosorio.com

/s/ Jonathan G. Cooper

**QUINN EMANUEL URQUHART &**
  **SULLIVAN, LLP**
Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton* (*pro hac vice*)
Nithya Pathalam (*pro hac vice*)
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
nithyapathalam@quinnemanuel.com
*\*admitted in Texas; not admitted in D.C. Supervised by attorney admitted in D.C.*

Andrew J. Rossman (*pro hac vice*)
Sascha N. Rand (*pro hac vice*)
Courtney Daukas (*pro hac vice*)
Morgan L. Anastasio (*pro hac vice*)
Roey Goldstein (*pro hac vice*)
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
courtneydaukas@quinnemanuel.com
morgananastasio@quinnemanuel.com
roeygoldstein@quinnemanuel.com

*Counsel for Petitioner*