# EXHIBIT A

FILED UNDER SEAL



## Planet Depos®
### We Make It *Happen*™

## CONFIDENTIAL

# Transcript of Joseph N. Mazzara

**Date:** April 22, 2025
**Case:** Abrego Garcia -v- Noem, Secretary, U.S. Department of Homeland Security

**Planet Depos**
**Phone:** 888.433.3767 | **Email:** transcripts@planetdepos.com
**www.planetdepos.com**
Michigan #8598 | Nevada #089F | New Mexico #566

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

---------------------------x

KILMAR ARMANDO ABREGO        :

GARCIA, et al.,              :

          Plaintiffs        : Case No.

     vs                     : 8:25-cv-00951

KRISTI NOEM et al.,          :

          Defendants    :

---------------------------x

CONFIDENTIAL


Videotaped deposition of

JOSEPH N. MAZZARA


WASHINGTON, DC

TUESDAY, APRIL 22, 2025

8:34 a.m. EASTERN TIME


Job No.: 581522

Pages: 1 - 242

Reported by: Lisa V. Feissner, RDR, CRR, CLR

Videotaped deposition of JOSEPH N. MAZZARA,

held at the offices of:


        KAISER LLP

        1099 FOURTEENTH STREET, NW

        8TH FLOOR - WEST

        WASHINGTON, DC 20005

        202.640.2850


    Pursuant to Notice, before Lisa V. Feissner,

RDR, CRR, CLR, Notary Public.

A P P E A R A N C E S :

ON BEHALF OF PLAINTIFFS:

        ADDY SCHMITT, ESQUIRE

        ANDREA L. MOSELEY, ESQUIRE

        KROPF MOSELEY SCHMITT

        1100 H Street NW

        Suite 1220

        Washington, DC 20005

        202-627-6900

        addy@kmlawfirm.com

        andrea@kmlawfirm.com

              and

        WILLIAM PITTARD, ESQUIRE

        KAISER PLLC

        1099 Fourteenth Street, NW

        8th Floor - West

        Washington, DC 20005

        wpittard@kaiserlaw.com

        202.683.6150

              --- continued on next page ---

A P P E A R A N C E S (cont'd):

ON BEHALF OF PLAINTIFFS (cont'd):

        SIMON SANDOVAL-MOSHENBERG, ESQUIRE

        MURRAY OSORIO PLLC

        4103 Chain Bridge Road, Suite 300

        Fairfax, VA 22030

        ssandoval@murrayosorio.com

        703.352.2399


ON BEHALF OF DEFENDANTS:

        JONATHAN GUYNN, ESQUIRE

        U.S. DEPARTMENT OF JUSTICE

        OFFICE OF IMMIGRATION LITIGATION

        950 Pennsylvania Avenue, NW

        Washington, DC 20530

        202.514.2000

        jonathan.guynn@usdoj.gov


A L S O   P R E S E N T:

        SOCRATES MATTHEWS, Videographer

        RENE E. BROWNE, ESQ., DHS

        JAMES PERCIVAL, ESQ., DHS

C O N T E N T S

EXAMINATION OF JOSEPH N. MAZZARA                    PAGE

    By Ms. Schmitt                                    8


E X H I B I T S

        (Attached to transcript)

MAZZARA DEPOSITION EXHIBIT                          PAGE

1    Notice of Deposition                             9

2    Order Granting Expedited Discovery             10

3    AG vs Noem et al. Timeline,                     28

     with attachments

4    03/31/25 Declaration of                         33

     Robert L. Cerna

5    Order dated April 11, 2025                      62

6    04/12/25 Declaration of                         67

     Michael G. Kozak

7    04/14/25 Declaration of                         82

     Joseph N. Mazzara

8    Order Granting Expedited Discovery            197

     (duplicate of Exh. 2)

```
                    E X H I B I T S (cont'd)

                    (Attached to transcript)

MAZZARA DEPOSITION EXHIBIT                        PAGE

9      04/15/25 Declaration of              203

       Joseph N. Mazzara

10     04/16/25 Declaration of              203

       Joseph N. Mazzara

11     04/17/25 Declaration of              203

       Joseph N. Mazzara

12     04/18/25 Declaration of              203

       Joseph N. Mazzara

13     04/19/25 Declaration of              204

       Joseph N. Mazzara

14     [withdrawn]                          ---
```

P R O C E E D I N G S

VIDEOGRAPHER:  Here begins media number 1 in the videotaped deposition of Joseph Mazzara in the matter of Abrego Garcia v. Noem, et al., in the United States District Court, District of Maryland, Greenbelt Division, Case Number 8:25-CV-00951-PX.

Today's date is April 22nd, 2025.  And the time on the video monitor is 8:35 a.m.

The videographer today is Socrates Matthews representing Planet Depos.

This video deposition is taking place at Kaiser PLLC, 1099 14th Street Northwest, 8th Floor West, Washington, D.C., 20005.

Would counsel please voice identify themselves and state whom they represent.

MS. SCHMITT:  Good morning.  My name is Addy Schmitt.  I'm with Kropf Moseley Schmitt PLLC. With me here today is my partner Andrea Moseley.

Simon, I'll let you introduce yourself.

MR. SANDOVAL-MOSHENBERG:  And I'm Simon Sandoval-Moshenberg from the law firm Murray Osorio PLLC.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                8

MR. PITTARD:  Bill Pittard from Kaiser for the plaintiffs.

MR. GUYNN:  Jonathan Guynn with the U.S. Department of Justice on behalf of the defendants.

MS. BROWNE:  Rene Browne with the Department of Homeland Security.

MR. PERCIVAL:  And James Percival from the Department of Homeland Security.

VIDEOGRAPHER:  The court reporter today is Lisa Feissner representing Planet Depos.

The witness will now be sworn.

JOSEPH N. MAZZARA, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MS. SCHMITT:

Q    Good morning, Mr. Mazzara.

A    Good morning.

Q    I think I remembered to pronounce it correctly.

A    Yeah.

Q    All right, great.

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    9

You've been sworn in.  I just have a couple of preliminary questions for you.

MS. SCHMITT:  Actually, let me start by marking what we'll call Mazzara Exhibit 1.

(Exhibit Mazzara-1 marked for identification and attached to the transcript.)

BY MS. SCHMITT:

Q    I'll ask you to take a look at that and tell me if you recognize that document.

And Exhibit 1, I've attached two documents together.  One is the original Notice of Deposition, and the second one is the Amended Notice of Deposition that we served on counsel.

MR. GUYNN:  Addy, we just have the Notice of Deposition.

MS. SCHMITT:  You just have the first one?

MR. GUYNN:  Yeah.

MS. SCHMITT:  Okay.

Q    So I will restate what Exhibit 1 was.  It should be your Notice of Deposition.

Do you see that?

A    Yes.

Q    Great.  So you're here pursuant to Notice of Deposition in this case.

You agree?

A    Yes.

Q    Okay.  And you're also here because Judge Xinis ordered expedited discovery in the case, including your deposition.

Is that right?

A    Yes.

MS. SCHMITT:  Okay.  I'm going to go ahead and mark this as Mazzara-2.

(Exhibit Mazzara-2 marked for identification and attached to the transcript.)

BY MS. SCHMITT:

Q    And I'll hand you a copy of that.  I'll hand your counsel a copy.

Do you recognize Exhibit 2?

And just to orient you, the date at the top of the document gives the date that it was docketed in the case.  This is April 15th order granting expedited discovery.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                          11

Have you reviewed this document prior to today?

A    One second.

So I'm sorry, what was your question?

Q    No problem.  Thanks for reviewing that carefully.

My question was, you are here because Judge Xinis ordered expedited discovery in the case, including your deposition?

A    Yes.  Yes, she did.

Q    Okay, great.

Had you reviewed that order before today?

A    I did.  I don't think I read all of the citations, but -- yeah, because I remember skimming over those.  But I read all the content.

Q    Okay, great.

So you're the agency representative for the Department of Homeland Security in this case.

Is that right?

MR. GUYNN:  Objection.  Mr. Mazzara is here in his individual capacity as the general counsel of DHS.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    12

MS. SCHMITT:  He's here as a fact witness as the General Counsel for DHS, Acting General Counsel.

MR. GUYNN:  Yeah, I agree with that.

MS. SCHMITT:  Okay.

Q    Mr. Mazzara, obviously, as the Acting General Counsel, can I assume that you're an attorney?

A    Yes.

Q    And have you been deposed before?

A    Yes.

Q    How many times?

A    At least once.

Q    At least once.

Can you tell me what kind of case?

A    Yeah.  It was an insurance case.

Q    Okay.  And do you remember roughly how long ago?

A    No.  No.

Q    Were you --

A    Maybe a year or two.  Maybe a year or two.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    13

Q    Okay.  And were you a party in the case or a witness?                                                08:47:25  08:47:27

A    Party.                                                08:47:28

Q    Party.  Had you brought the suit?                   08:47:29

A    Mm-hmm.                                               08:47:31

(Reporter interruption.)                                   08:47:33

A    Sorry.  Yes.                                          08:47:33

Q    You had brought the suit?                            08:47:34

A    Yes.                                                  08:47:35

Q    Can you tell me what kind of lawsuit it was?        08:47:36  08:47:39

A    Well, what do you mean?  It was a lawsuit on a contract, an insurance contract.                        08:47:39  08:47:42

Q    So you sued for a breach of contract?               08:47:44

A    I don't remember all the causes of action that we put into the lawsuit.                                08:47:47  08:47:49

Q    Okay.  Did you say you don't remember all the causes --                                                08:47:51  08:47:54

A    I do not.                                             08:47:55

Q    I'm having trouble hearing you, and I'm sitting right here.                                            08:47:55  08:47:58

A    I do not remember all the causes of                  08:47:59

action in the lawsuit.

Q    Okay.  And were you represented by counsel in that lawsuit?

A    I was.

Q    And can you tell me who the other party was?

A    USAA, the United States [sic] Automobile Association, I believe.  It's like a bank, an insurance company.

Q    And did the case go to trial, or did it settle?

A    It settled.

Q    It settled, okay.

What was -- is it a confidential settlement?

A    I have no recollection.

Q    You don't remember the settlement?

A    I do not.

Q    Okay.  And can you tell me generally -- I understand you don't remember all the causes of action.  Can you tell me generally what the nature of the breach of contract was?

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

15

A     Sure.  They signed a contract with me to indemnify me if something happened to my house, and then they didn't indemnify me.  Eventually they did when they settled, but...

Q     Okay.  And you don't -- I think you said you don't remember how long ago that was.

A     No.

Q     Okay.  And to the best of your recollection, have you been deposed any other times?

A     No.

Q     Okay.  As an attorney, have you taken depositions?

A     Yes.

Q     Roughly how many?

A     That, I don't know.  I did things that were similar to depositions in Texas.  So they're like oral statements.  But all the rules of depositions apply.

Q     Okay.  So you understand that this morning we started out by you taking an oath.  You understand the oath?

A     Mm-hmm.

08:48:39
08:48:44
08:48:47
08:48:51
08:48:52
08:48:53
08:48:56
08:48:56
08:48:58
08:49:01
08:49:02
08:49:04
08:49:05
08:49:07
08:49:09
08:49:13
08:49:17
08:49:21
08:49:22
08:49:27
08:49:29
08:49:30

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                16

Q    Sorry.  One of the rules is that we just need verbal answers.  Hard to get into the habit, but important for the record.

Okay.  I saw the thumbs up, but not verbal.

A    Well, it wasn't a question, so...

Q    Okay.  So you understand that you're under oath to tell the truth?

A    Yes.

Q    Okay.  And you understand that even though there's no judge here in the room with us, the obligation to tell the truth is the same as if you were in court with a judge?

A    Yes.

Q    Okay.  Are you on any medication or other substances that would impact your ability to understand my questions here today?

A    No.  I take Zyrtec.  It's an allergy medicine.  That's it.

Q    It's not impacting your ability to understand my questions and answer them?

A    No.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    17

Q    Okay.  This morning, obviously, I'm going to be asking you a series of questions.  You're familiar with the deposition process.  If you don't understand one of my questions, please just let me know that you don't understand so that I can rephrase it to make sure that we're -- that you're understanding the question that you're answering.

Does that make sense?

A    Yes.

Q    And you understand that from time to time your counsel might make objections, and that unless you're instructed by your counsel not to answer, you need to still answer the question after the objection?

A    Yes.

Q    If you need a break at any time, please just let me know.  I'm happy to take a break if you need one.  The only rule on that is that I'll ask you -- if there's a question pending, I'll ask you to finish your answer before we take the break.

Understand that?

A    Yes.

08:50:20
08:50:24
08:50:26
08:50:29
08:50:34
08:50:36
08:50:39
08:50:41
08:50:42
08:50:43
08:50:47
08:50:51
08:50:54
08:50:56
08:50:57
08:50:57
08:51:02
08:51:04
08:51:08
08:51:11
08:51:14
08:51:16

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    18

Q    Mr. Mazzara, what did you do to prepare for today's deposition?    08:51:21 08:51:23

A    Let's see.  I -- what do you mean by "prepare"?  To answer questions or --    08:51:26 08:51:32

Q    Anything that you did since the judge ordered the discovery last week, anything that you did to prepare to answer questions here today.    08:51:35 08:51:37 08:51:40

A    Re-read declarations, talked with my counsel.    08:51:44 08:51:47

Q    How many times did you meet with counsel?  And I'm not asking you what you said to counsel or what counsel said to you.  Just asking how many times you met with them.    08:51:50 08:51:51 08:51:54 08:51:56

A    How many times did I meet with him? Once.    08:51:57 08:51:59

Q    Once?  And about how long?    08:51:59

A    Not quite two hours.    08:52:03

Q    Okay.  Did you talk to anybody else, aside from counsel, about your deposition today?    08:52:05 08:52:09

A    What do you mean by that question?  What do you mean by "talk with him"?  Like my spouse?    08:52:14 08:52:16

Q    Anyone that you talked to about the    08:52:20

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025                    19

deposition today.  And I'm not asking if you just

mentioned, "I'll be at a deposition."  I'm asking if

you discussed the fact that you would be deposed

here today with anyone besides your counsel.

A    Well, yeah.  Counsel at DHS.

Q    Internal counsel at DHS?

A    Internal counsel, yes.

Q    In the General Counsel's office?

A    In the General Counsel's office.

Q    Okay.  Anybody else?

A    No.  Just lawyers, lawyers at DHS and him
(indicating), and I just -- I mean, just some casual
conversation with my wife.

Q    Okay.

A    That I can think of.

Q    The nature of the casual conversations,
can you tell me about that?

A    I'm getting deposed, it's going to be
fun.  That's about it.

Q    That's about it?  Okay.

A    Don't worry about it.

Q    Okay.  Can you tell me generally your --

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    20

just walk me through your -- prior to your position as the Acting General Counsel at DHS, just walk me through your education and your career history.

A    How far back with education do you want me to go?

Q    Let's start with any post-high school education.

A    Okay.  Yeah, because precollege -- my dad was a Marine, so I traveled around a lot and then eventually we started home-schooling, but even then kind of going back and forth, so it would be long.

Let's see.  I went to college in Front Royal, Virginia at a small Catholic college called Christendom College.  I was there, I believe, it was about 400 -- just shy of 400 students.  So that was a four-year degree.  I got -- majored in philosophy where I read a lot about Socrates and the -- you know, that's -- and other philosophers.  Anyway...

See, so I did that.  While I was there, I applied to join the -- to go to Marine Corps, OCS. I got accepted.  And I attended Officer Candidate School over the summer on what's called the platoon

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025    21

leader's class or course program, which you do two six-week summers.  And when you go back that second summer, you're like, what the hell was I thinking.

But anyway, so I did that.  So that's part of my education.

Then when I graduated, the same day I graduated, I believe it was May 10th, 2008, the same day, I became a Marine.  And let's see.

Then after that, I was worked at training education command for a few months before the school called -- the basic school started.  And the basic school is just six months of basic infantry officer training where you basically are treated like an enlisted Marine in a lot of respects, not every respect, and you just learn how to be a Marine officer, you learn how to use, you know, machine guns and mortars kind of, and just kind of learn about the greater Marine Corps and just how to lead Marines.

And I did that for six months.  I think that was from, like -- it was three days -- three days after I got married.  So when we started.  So

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    22

June through, whatever, of 2009.

After that, went to the fleet, went to --
I can't remember what the battery was, maybe Bravo
Battery 110, 1st Battalion, 10th Marines, Camp
Lejeune, North Carolina, where I was there for about
two or three months before artillery school started,
which was in Lawton, Oklahoma, which is a very
interesting place.

Anyway, so Fort Sill, Oklahoma.  It's
also a six-monthlong school because it's a very, you
know, technical specialty, artillery.  Artillery or
cannons, you know, pull string, go boom.  So you
send hundred-pound rounds down range.

Well, anyway, so I was there.  I was an
honor graduate, one of, you know, the top 20
percent, whatever.

And did that, that's -- you learn gunnery
there, you learn -- which is how to do all the nerd
work to get the hundred-pound round from point A to
point B accurately.  And then you also do the, like,
fire support stuff, which is like forward observer
stuff.  You know, you're going out there and you're

08:56:03
08:56:07
08:56:12
08:56:15
08:56:20
08:56:21
08:56:24
08:56:27
08:56:28
08:56:31
08:56:35
08:56:38
08:56:42
08:56:45
08:56:47
08:56:48
08:56:49
08:56:53
08:56:56
08:57:00
08:57:04
08:57:07

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                23

calling on the radio and you're saying, hey, let's bring that artillery around this way.

So then after Fort Sill, let's see, I went back to the fleet, Marine Force, which was in, you know, Camp Lejeune --

Q    So I don't want to interrupt you.

A    Okay.

Q    But I did ask for high level.  I'm just trying to get --

A    Oh, okay.

Q    -- a sense of your overall background before you took the position here.

So I understand you got a lot of training in the Marine Corps.  I would have expected that. What did you do after the Marine Corps?  Did you go to law school concurrently or after?

A    Yeah, so I deployed and then I came back and worked for a general in Quantico.  And while I was there I applied for this legal program.  Okay. So the Marine Corps has two legal programs.  They have the Funded Law Education Program and then the Excess Leave Program law where they give you time

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    24

off to go to law school, okay?  And they were only

accepting one person every year.

          So I applied to Scalia Law for their

night program.  I did 1L year at Scalia Law.  So it

was -- I mean, it was miserable, miserable.  I had

to work all day.  I had to be in early and, you

know, leave at 5, make it to class.  And then they

were extending the HOV lane during that time.  It

just sucked.

          (Reporter interruption.)

     Q    Before you resume your answer, I

understand we were told by your counsel that you,

you know, your time may be limited today.  We didn't

make any guarantees about how long we'll go.  We'll

go as long as we need to.  But I would ask you, if

I'm asking for a brief overview, all I -- really all

I need is the brief description.

          So you went to law school.

     A    Mm-hmm.

     Q    From there.

     A    Yeah, yeah.  So I did -- so I did a year

part-time while I was working for the Commanding

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                25

General of Training and Education Command at Quantico. Then I took -- then I took a gap year, and during that time I went to expeditionary warfare school, okay, where you learn how to do amphibious landings and things like that.

And after I did that -- and how to also kind of be a better staff officer.

Okay. After I did that, I then got -- during that year, I got selected for the program where they would send me to law school. And then I finished out full-time my last two years of law school.

And then I got out and I was a judge advocate down in Quantico, defense -- criminal defense counsel.

Q    And then you -- I understand you worked in Texas for some time?

A    Right. So I did the those two years -- I did my payback tour as a criminal defense counsel in the Marine Corps, judge advocate, where I won three of the four trials and the fourth one on appeal. Three full acquittals.

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    26

Anyway, so then after that -- let's see, I got out. And then I went to go clerk for Judge Brantley Starr on the Northern District of Texas. Yeah, I was his first clerk hire. His first day as a judge and my first day as a clerk. That was fun.

Q    All right. And so let's get to your current position. What day did you -- were you appointed as Acting General Counsel?

A    I believe that was January 20th. I also clerked for Judge Vaden and Judge Jones, just to be clear, in case you guys need that information as well.

Q    Okay.

A    Anyway, but let's see. I think it was -- I think it was January 20th, 2025, this year. So President Trump's second first day as president. It was my first day as the Acting General Counsel.

Q    Okay. And as the General Counsel, can you -- and I really am briefly -- obviously, you have lots of responsibilities. It's a large agency. Can you just briefly describe how you see your duties as the General Counsel.

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    27

A    Yeah, there are lots of components.  And so all of the counsel in DHS, they all fall under the Office of the General Counsel but really fall under me as the Acting General Counsel.

So you have division chiefs like Ms. Browne, and you have then, like, component chief counsels, and they have their attorneys.  And so my -- I supervise all of that and their activities.

Also, as a political appointee, right, so I also help implement the people's policies.  The people have elected Donald Trump, and so he has certain policies.  So we make sure that when we're implementing legal policies, right, that we keep in mind what the President's policies are, which kind of shapes what we do.  Doesn't shape the legal advice.  The law obviously shapes the legal advice.  But, you know...

Q    And do you report directly to the Secretary?

A    Yes.

Q    And ICE is a division within the Department of Homeland Security?

A    It's a component.

Q    It's a component?

A    Yeah.

Q    Okay.

A    We're not as crazy as DOJ with all their bureaus and offices and divisions and components and agencies and things like that.  We have, like, components and offices.

MS. SCHMITT:  Okay.  Great.

I'm going to mark Mazzara-3.

(Exhibit Mazzara-3 marked for identification and attached to the transcript.)

BY MS. SCHMITT:

Q    I'll hand that to you.  Let me just orient you to Exhibit 3.

A    Mazzara Exhibit 3?

Q    Mazzara Exhibit 3.  All right.

So this is a timeline that I created just for reference for us today.  Behind the document -- behind the timeline document are the underlying documents, including the docket in the case.

I'm not going to ask you to read all of

these documents or anything.  I just thought it

might be helpful, as I ask the questions today, if

you have a timeline in front of you to refer to.

        If you have a different -- if you

disagree with the timeline or the date or anything

like that, totally fine.  Just let me know.

        And if you don't find it helpful as a

reference, that's fine, too.  I just made the

timeline to help keep us on track in terms of when

things happened that may be relevant in the case.

    A    Okay.  So I have a question.  So is this

kind of like testimony?  Do you swear that this is

the truth, nothing but the truth, so help you?

        MR. GUYNN:  So Counsel, I was just going

to ask, if you would just briefly explain how this

was compiled.

        MS. SCHMITT:  Sure.  I compiled the

document just as a reference.  I'm not asking the

witness the adopt its accuracy or anything else.  If

the witness doesn't find it helpful, that's totally

fine, too.

        It just sets out dates different events

happened.  Many of them are events in the case, like the date of orders and declarations.  And I thought it might be helpful if the witness and I had the timeline in front of us.

        Again, if the witness doesn't agree with any dates or anything in the timeline, obviously, his recollection controls.  And, again, if he doesn't want to use it, that's fine, too.

    Q    Mr. Mazzara, my understanding from declarations in this case -- and I think you said earlier you reviewed declarations in this case -- is that ICE transported Mr. Abrego Garcia to El Salvador on March 15th due to an administrative error.

        MR. GUYNN:  Objection.  I'm just going to objection on the basis of attorney-client privilege and state secrets.

        And just instruct the client, you can answer the question to the extent you don't disclose attorney-client privileges or state secret privileges.

    A    So can you restart the question?

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    31

Q    Absolutely.  My understanding from declarations in this case is that ICE transported Mr. Abrego Garcia to El Salvador on March 15th due to administrative error.

Is that your understanding?

A    I'm sorry.  Is it my understanding that you reviewed the declarations and that's what you read, or is it my understanding that he was transferred and that was an administrative error?

Q    Is it your understanding that ICE transported Mr. Abrego Garcia to El Salvador on March 15th due to administrative error?

MR. GUYNN:  Same objection.

A    What do you mean by "error"?

Q    You reviewed the declarations in this case, right?

A    Mm-hmm.

(Reporter interruption.)

A    Yes.

Q    All right.  Look, let me just say that I'm just trying -- the judge ordered expedited discovery.  I put in a lot of work to get ready for

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                              32

today to try to ask you the questions.  I'm not

trying to ask you any questions that are

legitimately protected by privilege.

          If we need to look at every single

declaration and parse every word, we can do that.

We will be here longer.

          And the judge -- I feel pretty confident

you took plenty of time to read the order where she

ordered the expedited discovery, right?

          So you -- your agency, the Department of

Homeland Security, has produced declarations in this

case that refer to an administrative error.

          Do you need me to show you that?

     A     Well, I would like to see --

          MR. GUYNN:  Objection to form.

     Q     Now you can answer.

     A     Sorry.  I would like to see the

declaration, one, that you're referring to --

     Q     Sure.

     A     -- and then -- yeah.

          MS. SCHMITT:  I'm going to mark

Mazzara-4.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    33

(Exhibit Mazzara-4 marked for                    09:07:27

identification and attached to the transcript.)  09:07:39

          THE WITNESS:  Thank you.                09:07:39

BY MS. SCHMITT:                                   09:07:42

     Q     Sure.  Can I direct your attention in  09:07:42

Exhibit 4 to paragraph 6.                         09:07:53

     A     Yes.                                    09:07:55

     Q     Okay.  Do you see the word "error"?    09:07:56

     A     Hold on one second.  Paragraph 6 on    09:08:02

page 2?                                            09:08:04

     Q     Yes.                                    09:08:05

     A     "This removal was an error."  Yes, I see  09:08:17

that.                                             09:08:19

     Q     Okay.  So is it your understanding that  09:08:20

ICE transported Mr. Abrego Garcia to El Salvador on  09:08:25

March 15th in error?                              09:08:30

          MR. GUYNN:  Objection, just on the basis  09:08:31

of attorney-client, deliberative process, and state  09:08:33

secrets privilege.                                09:08:38

          But I'll instruct the witness, you can  09:08:39

answer the question to the extent you don't disclose  09:08:41

any privileged information.                       09:08:43

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025                    34

A    So, again, this is why I'm asking, what do you mean by -- like, what are you actually referring to as "error"?  Was it an error to remove him from the United States?  No, he had a final order of removal.  But removing him to El Salvador, he did have withholding of removal with respect to El Salvador.

Q    So if I understand your answer, it was an error to remove him to El Salvador because there was a withholding of removal?

A    There was a withholding of removal. Though, I mean, he is a member of a foreign terrorist organization.  So that withholding would probably have to be reopened.

But yeah, he did at this time have a withholding of removal order with respect to El Salvador.

Q    When did it come to your attention that Mr. Abrego Garcia had been transported to El Salvador notwithstanding an order of removal?

MR. GUYNN:  Objection on attorney-client privilege grounds.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                35

If you can answer the question without disclosing attorney-client privileged communications, you can answer the question.

A    Sorry.  Can you -- you asked when I became aware that he was removed to El Salvador?

Q    Yes.

A    Would have been March 15th or thereafter. I don't know when, exactly when.

Q    Do you remember how you first learned that information?

A    No.

MR. GUYNN:  Same --

MS. SCHMITT:  Counsel, I will stipulate that you have a standing objection on the basis of attorney-client privilege, state secrets, and deliberative process.  I'm not acknowledging that any of my questions call for any of that information, but I understand, and I think we'll move much quicker.

I'm not asking you -- unless I say otherwise, I'm not asking you to tell me information that is legitimately privileged.

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    36

Counsel was -- if every time I ask a question you're going to put that on the record, we'll be here a long time.

MR. GUYNN:  In fairness, I have not lodged that objection in response to all of your questions.

But look, respectfully, when there is a question that I think may call for that information, it's just -- it's our prerogative, I have to instruct the witness to answer appropriately consistent with those privileges.

A    In answer to your question -- sorry, what was your question again?

Q    When you -- I asked you when this came to your attention that he had been transported to El Salvador notwithstanding a withholding of removal.

A    Yeah.  In regard to that question, yeah, I don't remember exactly when I came to know about him specifically.

Q    Okay.  Do you remember how you learned of that information?

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                           37

MR. GUYNN:  Same objection.                          09:11:43

A    Okay.  Yeah.  So I do not remember how.      09:11:45

Q    Okay.  I'm just going to probe that a        09:11:47
little bit in trying to jog your memory.             09:11:49

Do you remember if you had learned the               09:11:53
information before the plaintiffs filed their        09:11:56
lawsuit?                                             09:12:00

A    What day did you file your lawsuit?          09:12:04

Q    Okay.  The lawsuit was filed on March --     09:12:05
sorry, March 24th.                                   09:12:12

A    March 24th.  Yeah, I do not remember if      09:12:14
it was before or after the filing of the lawsuit.    09:12:18

Q    Okay.  Can we look back at the exhibit       09:12:19
that you have in front of you, which I believe is    09:12:24
Mazzara-4?                                           09:12:29

A    And are you referring to the declaration     09:12:31
of Robert L. Cerna?                                  09:12:33

Q    I sure am.  So with respect to that, if      09:12:34
you look at the last page -- actually the second to  09:12:38
last page, you'll see that that was executed on      09:12:41
March 31st.                                          09:12:45

A    So that's page 3 of 4?                        09:12:46

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025                38

Q    Yes.

A    Okay, yes.  Executed 31st day of March, 2025.  Yep.

Q    Okay.  And Mr. Cerna is the Acting Field Office Director for the Enforcement and Removal Operations at ICE.

Is that right?

A    Mm-hmm.

Q    Okay.

(Reporter interruption.)

A    Sorry.  Sorry, Lisa.  Yes.

Q    Did you review Mr. Cerna's declaration before it was filed?

MR. GUYNN:  Objection.  You can answer to the -- on attorney-client and deliberative process grounds.

To the extent you can answer the question without disclosing privileged information, you may do so.

A    I reviewed it, absolutely, after it was filed.

Q    I asked you if you reviewed it before it

was filed.

MR. GUYNN:  Same objection.

Q     You can answer.

A     Mind if I talk to my attorney?

Q     I do mind.

A     Ask about the scope of the privilege here.  I mean, because that sounds -- I mean -- I mean, that's part of the deliberative process, whether or not I reviewed it, to what extent I reviewed it.

Q     Your counsel is here to lodge objections when he feels that that's appropriate.  I've asked you a simple question that isn't a privileged -- doesn't call for privilege.  I'm asking you if you reviewed the declaration before it was filed.

MR. GUYNN:  Under the District of Maryland rules, if the witness has a concern about a pending question, if it implicates a privilege, we can speak with -- we can go off the record and he can ask his questions if he has concerns.

Q     Do you need to speak with your counsel about the answer to this question?

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    40

A      Yeah.  So it will probably take like five
seconds.

MS. SCHMITT:  That's fine.  We can go off
the record.

VIDEOGRAPHER:  The time is 9:14, and we
are going off the video record.

(Recess from 9:14 a.m. until 9:21 p.m.)

VIDEOGRAPHER:  The time is 9:21, and we
are back on the record.

BY MS. SCHMITT:

Q      You asked for a moment to confer with
your counsel.  Have you now conferred?

A      About the privilege question, yes.

Q      Okay.  And what I had asked you was, did
you review the declaration of Mr. Cerna before it
was filed?

A      Yes.

Q      Okay.  So this would establish that at
least as of -- well, plaintiffs filed their lawsuit
on March 24th.  Did you -- do you recall if you
learned of the lawsuit on that date?

A      I very likely did.

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025          41

Q    Okay.  And when you learned of the lawsuit, what did you do?

MR. GUYNN:  Objection, attorney-client privilege.

You can answer to the extent you don't disclose any attorney-client communications.

A    I mean, I typically review filings in cases.

Q    So you -- did you review the Complaint?

A    I believe I did.  I think I did.

Q    And did you review the motion for a temporary restraining order?

A    I think I did.  There are a lot of cases with a lot of Complaints and a lot of TRO motions, and I look at pretty much all of them.  How closely on a particular day when they first come in I look at them or not...

Q    At the time when you reviewed the plaintiffs' Complaint in this case, had you already taken any action to return Mr. Abrego Garcia to the United States?

MR. GUYNN:  Objection to the extent it

09:22:27
09:22:31
09:22:35
09:22:38
09:22:38
09:22:40
09:22:43
09:22:48
09:22:50
09:22:54
09:22:57
09:22:59
09:23:01
09:23:04
09:23:08
09:23:12
09:23:14
09:23:17
09:23:19
09:23:23
09:23:30
09:23:31

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    42

calls for attorney-client communications,    09:23:32

deliberative process privilege material, or state    09:23:35

secrets.    09:23:38

        To the extent you can answer without    09:23:40

disclosing any of that information, you can answer    09:23:42

the question.    09:23:44

    A    So going back to an earlier question    09:23:44

about my role and what I do, so I supervise    09:23:47

attorneys, I provide legal advice to the Secretary    09:23:50

and other individual decisionmakers in the agency.    09:23:53

I'm not typically a decisionmaker.    09:23:57

    Q    Okay.    09:24:00

    A    So that's my answer to the most recent    09:24:01

question.    09:24:03

    Q    Okay.  To your knowledge, had anyone at    09:24:04

the Department of Homeland Security taken any action    09:24:12

to have Mr. Abrego Garcia returned to the United    09:24:16

States at the time of plaintiffs' lawsuit?    09:24:21

        MR. GUYNN:  Objection to the extent it    09:24:24

calls for attorney-client communications.    09:24:25

        You can answer the question if you don't    09:24:27

disclose that information.    09:24:29

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                              43

A    We're lawyers.  I'm just not sure I understand what you mean by "action."  And I mean, when I say we're lawyers, because, like, words are important.  So...

Q    To your knowledge, had anyone at the Department of Homeland Security done anything to return Mr. Abrego Garcia to the United States at the time that plaintiffs filed their lawsuit?

MR. GUYNN:  Objection to form and also objection on the attorney-client privilege.

You can answer to the extent you don't disclose attorney-client information.

A    To be honest, that's really a Department of State question.  I don't know.

Q    So we'll get to what you know about the Department of State in a minute.

Did you -- am I correct that ICE has people on the ground in El Salvador?

A    I don't know that.  I'm just -- I am just the attorney.

Q    You don't know whether ICE has people stationed in El Salvador?

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    44

A     I don't know for sure that, no.                    09:25:51

Q     Do you know if anyone at -- within the            09:25:53
Department of Homeland Security had called anyone at     09:25:57
the Embassy in El Salvador regarding Mr. Abrego          09:26:04
Garcia's custody in that country?                        09:26:09

MR. GUYNN:  Objection to the extent it                   09:26:14
calls for attorney-client or state secrets               09:26:16
information.                                             09:26:19

You can answer the question to the extent                09:26:19
you don't disclose privileged communications.            09:26:21

A     So in regard to your second to last               09:26:23
question, I am aware that there is an attaché or          09:26:26
there was an attaché in El Salvador from DHS, but I       09:26:30
don't know who pays for his bill.  I don't know if       09:26:33
it's ICE, I don't know if it's CBP, I don't know if      09:26:36
it's the front office, I don't even know if it's me.     09:26:39
Definitely not OGC, but...                               09:26:42

So I do know that there -- at least                      09:26:44
was -- I don't know if there still is -- an attaché.     09:26:46
I think it's El Salvador.                                09:26:49

Q     Okay.  And my question was anyone at              09:26:52
Department of Homeland Security, which would             09:26:55

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                      45

encompass the different components that you just identified.

    A     That was the second to last where you asked about ICE, if ICE had anybody stationed there.

            So I don't know if that's an ICE employee or not.  But if El Salvador does have an attaché, which I have some vague memory that I think we do, I don't know if it's with ICE or not.  But just want to do full disclosure.  Like you made the point at the very beginning, I've got to tell the truth here.

            So -- so then the follow-up question was, did somebody --

            MR. GUYNN:  Why don't you let Addy ask you the follow-up question.

    A     Yeah.  Can you ask the follow-up question again?

    Q     Sure.

    A     Somebody about a phone call.

    Q     At the time of plaintiffs' Complaint, March 24th, so nine days after Mr. Abrego Garcia had been transported to El Salvador, at that time, do you know whether anyone at the Department of

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

46

Homeland Security had called anyone in El Salvador

to seek his release from custody?

    A    I have no --

    MR. GUYNN:  And I'm just going to object

on the basis of attorney-client, state secrets

privileges.

    You can answer to the extent you don't

disclose such information.

    A    I have no personal knowledge of whether

any such call was made, one way or the other.

    Q    Okay.  Do you know whether anyone from

the Department of Homeland Security had talked to

anyone at the Department of State regarding

Mr. Abrego Garcia's custody in El Salvador?

    MR. GUYNN:  Same objection.

    A    Do I know whether anybody talked with

anybody at the Department of State?

    Q    Yes.

    A    Sorry, from Homeland Security?

    Q    Yes.

    MR. GUYNN:  I'm also going to object on

the basis of deliberative process privilege.

        But you can answer to the extent you
don't reveal attorney-client, deliberative process,
or state secret privileged information.

    A    I mean, can I literally take just
30 seconds -- can we take 30 seconds so I can talk
to my attorney?

    Q    Yes.

    A    And we'll be very brief.

        VIDEOGRAPHER:  The time is 9:29.  We're
going off the video record.

        (Recess from 9:29 a.m. until 9:31 a.m.)

        VIDEOGRAPHER:  The time is 9:31, and we
are back on the record.

        MR. GUYNN:  So would you just repeat the
pending question, please?

    Q    Do you know whether anybody talked to
anybody -- anyone at DHS talked to anybody at the
Department of State about Mr. Abrego Garcia's
custody in El Salvador?

        MR. GUYNN:  And so I'll lodge the same
previous objections.

    A    Yes.

Q    Okay.  Who at Department of Homeland Security spoke with someone at State?                    09:31:35 09:31:40

A    Well, I spoke with somebody at State.                    09:31:42

Q    Okay.  Who did you speak with?                    09:31:44

A    I don't remember his first name.  Some guy named something Bizchoff.                    09:31:46 09:31:50

Q    And did you -- was it a man?                    09:31:55

A    Do you want me to spell it?                    09:31:58

Q    Sure.                    09:31:58

A    B-I-Z-C-H-O-F-F.                    09:31:59

Q    And did you call Mr. Bizchoff?                    09:32:06

A    Not that I recall, no.  I don't think so.                    09:32:09

Q    Do you think Mr. Bizchoff called you?                    09:32:12

A    No.  I don't think I spoke on the phone with him.                    09:32:15 09:32:18

Q    Oh, you spoke in person?                    09:32:19

A    No, I don't think -- well, might have been, like, a Teams meeting.                    09:32:20 09:32:22

Q    Okay.  And do you -- how did the meeting come about?                    09:32:23 09:32:29

A    Through communications, electronic -- emails.                    09:32:33 09:32:37

Q    And who was on those emails besides you and Mr. Bizchoff?

MR. GUYNN:  So I'll object only on -- to the extent this may call for presidential communications.

Otherwise, you can answer the question without disclosing that information.

A    So people that would -- I don't remember exactly who was on the email.  I think Brendan McCommas from State was on the email.  I can't remember -- I don't know how to spell his last name.  I think it's, like, two Cs, M-C-C-O-M-M-A-S or something.  There were probably a handful of people from DOJ and DHS on there as well.

Q    DOJ and DHS?

A    Yes.

Q    Any other agencies -- any other personnel that you can remember with other agencies?

A    You mean --

MR. GUYNN:  Just same objection as before.

A    Other persons, you mean -- sorry.  Other

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                         50

personnel in other agencies who were on that email

chain?

    Q    Yes.

    A    Maybe Erez Reuveni, Reuveni.  He's a

curly-headed guy who's at DOJ.  Those are the three

main people.  And I'm pretty sure Brendan was on

that.

    Q    Okay.

    A    Brendan McCommas.

    Q    Anyone else that you can remember from

DHS that was on this email chain?

    A    Yeah.  I think probably would have

been -- actually, you know, I'm not -- let me think

for a second.

    I don't know for sure who was on that.  I

mean, almost certainly, my lead litigator, lead

litigation counsel was on that email.  I can't

imagine why she would not have been on that email

chain.

    Q    And who is that person?

    A    Laura Smith.

    Q    Okay.

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                           51

A        Spelled like Laura and Smith.                    09:35:02

Q        And do you recall when this email chain          09:35:05
that preceded a meeting, it sounds like, a Teams          09:35:11
meeting --                                                09:35:15

A        I think there was a Teams meeting, yeah.         09:35:15

Q        Do you recall when the email chain --            09:35:17

A        I do a lot of Teams meetings every day.          09:35:19
It's like the bane of my existence.                       09:35:21

Q        Do you recall when this email chain was          09:35:23
started?                                                  09:35:27

A        No.                                              09:35:28

Q        Okay.  In relation to plaintiffs'                09:35:29
lawsuit, do you recall if it was after the lawsuit        09:35:33
was filed?                                                09:35:35

A        Oh, in relation to -- I'm sorry.  So in          09:35:39
relation to this lawsuit --                               09:35:42

Q        Yes.                                             09:35:43

A        -- Abrego Garcia's?  Okay.                       09:35:44

         I mean, almost certainly.  I mean, we            09:35:48
were talking with DOJ.                                    09:35:52

Q        Okay.  So you think that -- and do you           09:35:54
think it was close in time, like maybe the same day       09:35:57

or the day after plaintiffs' lawsuit was filed?

    A    I honestly have no idea.  I get -- I probably have hundreds of -- probably close to 500 or so emails right now just sitting in this room.  So...

    Q    Did this -- Mr. Mazzara, did this email or circumstance stand out to you because an individual had been transported to El Salvador notwithstanding a withholding of removal?

    A    Not -- sorry, go ahead.

        MR. GUYNN:  No, you can answer the question.

    A    Not particularly.  I mean, he's a member of MS-13, which a foreign terrorist organization.  So if anything, it's harmless error.

    Q    So your attitude was, it didn't matter -- the error didn't matter?

    A    I wouldn't say that that's my -- that was my attitude.  But we had -- as you know in the news, we have a lot of other cases, and there's a lot going on in other cases at the moment.  And I figured this will percolate.  I'm sure when I needed

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    53

to pay attention to it...

Q    So I think you just said that you figured initially this will percolate and when you need to pay attention to it, you'll pay attention?

A    Mm-hmm.

Q    When did that time come?

A    Honestly, again, I don't know.  I don't know what day.

Q    I'm just asking you generally.  I don't need a date.  But when did it come to pass that you did start paying attention?

A    It would have been sometime after the filing of it and between -- and between now, obviously.  I honestly -- I don't know.  It would have been, you know -- yeah.  I mean, there are -- again, there's so many cases, and so it's just got to be put on the list of priorities.  And so...

Q    Did at some point this become a priority for you?

A    Yes.

Q    At what point?

A    Let's see.  What's today?  So when was

this filed again?  March 31st, you said?

Q    March 24th.

A    March 24th.  And it's April -- what's today?

Q    22nd.

A    22nd.

Probably within a few days after the case was filed, and then periodically between then and now.

Q    And once it became a priority, what did you do?

MR. GUYNN:  Objection to the extent this calls for attorney-client communications, deliberative process materials.

To the extent you can answer it without providing that information, you may do so.

A    I'm sorry.  Can you please re-ask the question?

Q    Once it became a priority, what did you do?

A    I mean, read everything much more closely.

Q    You read everything much more closely.
And what did you read?

A    Well, filings.

Q    Getting back to the email chain, I
recognize that you're not sure when this happened,
but it sounds like there was an email chain that had
people from DOJ, DHS --

A    Yeah.

Q    -- and was anybody from -- to the best of
my recollection, anyone from the State Department on
that chain?

A    Right, that would have been Bizchoff.

Q    Bizchoff was the State?

A    And I believe Brendan McCommas.

Q    Okay.  And do you recall who instigated
that email chain?

A    No.

Q    Did you?

A    I very rarely instigate email chains.

Q    Okay.  So you don't think it was you, but
you don't recall who it was?

A    No.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    56

Q    Okay.                                                    09:39:42

A    I'm not saying it wasn't me.  I'm just                  09:39:43
saying I don't think -- it probably was not me.              09:39:46
Yeah.                                                        09:39:48

Q    Okay.  And you think that following that               09:39:48
email chain, there was a Teams meeting?                      09:39:55

A    Or amidst it.                                           09:39:59

Q    Or amidst the email chain, there was a                 09:40:04
Teams meeting.                                               09:40:07

And what was the purpose of the Teams                        09:40:07
meeting?                                                     09:40:09

MR. GUYNN:  Objection to the extent it                       09:40:10
calls for deliberative process, attorney-client, or          09:40:11
state secret information.                                     09:40:14

To the extent you can answer without                         09:40:16
revealing that information, you may answer the                09:40:17
question.                                                    09:40:18

A    So I'm sorry, what was your question?                   09:40:19

Q    What was the purpose of the Teams                       09:40:21
meeting?                                                     09:40:22

A    Oh, what was the purpose.                               09:40:22

I mean, to discuss the case.                                 09:40:25

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    57

Q    To discuss Mr. Abrego Garcia's case?

A    The legal case, yeah.

Q    The legal case.

A    Because he has many cases.  He's done a lot of bad things.  But this case (indicating).

Q    The case that we're here that the judge has ordered discovery in?

A    Yes.

Q    Is there information -- you just told me it was to discuss the case.  Is there anything else that you can tell me about the meeting, the Teams meeting, that you recall?

MR. GUYNN:  Objection to the extent it calls for attorney-client communications, deliberative process privileged materials, or state secrets.

To the extent you can answer without revealing that information, you may do so.

A    Yeah, I don't think I can tell you anything else.  I think I had my camera off, but...

Q    Is there information that you're withholding -- is there information that you know in

your mind about the meeting that you're withholding

because of the objection from counsel?

A     No.  I do so many meetings on so many

very important high-priority things, I cannot

remember any particular detail from any particular

meeting.  I mean, what happens is, a meeting

happens, and then the way I work is the do-outs

happens, happens, happens, and then boof.  It's

like -- I don't know if you've done appellate law

before, you learn all you can about a case, you do

the argument.  This is like a data dump.

Q     What were the do-outs --

A     You gotta keep moving.

Q     What were the do-outs after the Teams

meeting?

MR. GUYNN:  Objection to the extent it

calls for attorney-client or deliberative process

materials.

You can answer the question to the extent

you don't reveal that information.

A     So this, again, kind of goes back to my

previous answer.  Again, just -- like it's like a

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                        59

data dump.

Now, I don't know if -- not every meeting has particular do-outs, other than, let's talk more.

Q    So am I understanding your answer correctly that you're not withholding information you have in your mind because of any privilege objections; you just don't recall anything else about the meeting except that maybe you had your camera off?

A    Yeah, that is correct.  I know I -- if it's the Teams meeting I'm thinking of, I think Erez Reuveni was in the meeting.  I don't remember if Brendan McCommas at Department of State was in the meeting.  But I think the State Department was.

Again, that's about the extent of my memory.  I'm honestly not withholding anything else. It's just -- I'm just swimming in an ocean of, like, information and data, and it's just very --

Q    So it sounds like it wasn't you.

(Cross-talk.)

A    (Inaudible) from day to day.

Q    It sounds like it wasn't you.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                              60

At the time of the Teams meeting, was there anyone at DHS who had been tasked with addressing the circumstances of Mr. Abrego Garcia's status?

A    I mean, I'm not sure -- well, first, a couple of questions.  One, what do you mean by "status"?  Two, what do you mean by "addressing his circumstances"?

Q    At the time of the Teams meeting, was there anyone at the Department of Homeland Security who either took or was assigned responsibility for deciding or recommending what the agency should do with respect to Mr. Abrego Garcia?

MR. GUYNN:  Objection to form.

A    You know, I have no idea whether anybody was assigned or directed to provide anything that you just asked about.

Q    Did you assign anyone to do anything with respect to Mr. Abrego Garcia's case?

MR. GUYNN:  Objection on attorney-client privilege grounds.

You can answer to the extent you don't

reveal the content of any attorney-client
communications.

A    I am confident I have told my attorneys
to do attorney things.  And I am confident I also
did attorney things.  Whether it's provide legal
advice, read law, read filings and allegations, you
know, think about things, typical deliberative
process attorney work product stuff.

Q    Okay.  I'm not talking about doing
attorney work product tasks with respect to this
lawsuit or any other lawsuit.  I am asking if any --
if you or, to your knowledge, anyone else at the
Department of Homeland Security assigned anyone to
take responsibility for Abrego Garcia's status in
El Salvador?

MR. GUYNN:  Objection to form.

A    Okay.  Not to be pedantic, what do you
mean by "status"?  Do you mean just his presence in
El Salvador?

Q    Yes.  Let's go with that.

A    Okay.  I have no idea.  I mean, here's
the thing.  Things are -- it's not like somebody

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    62

wrote an order and said, hey, Joseph Mazzara, figure    09:46:10

out Abrego Garcia's status in El Salvador or    09:46:15

whatever version of that.  Not that I can remember.    09:46:18

So...    09:46:23

          (Exhibit Mazzara-5 marked for    09:46:23

identification and attached to the transcript.)    09:46:35

BY MS. SCHMITT:    09:46:35

     Q    I'm marking Mazzara-5.  I'm handing it to    09:46:36

the witness.    09:46:41

     A    Quick question.  What was Mazzara-3?    09:46:43

Because I have -- oh, you know what, I see what I    09:46:46

did wrong here.  Okay.  Thank you.  I just want to    09:46:52

make sure I have everything.    09:46:56

     Q    Mr. Mazzara, can you turn to page 2 of    09:47:05

Exhibit 5.  Exhibit 5 is an order issued by    09:47:10

Judge Xinis on April 11th.    09:47:17

          Do you see that?    09:47:19

     A    I do.  Attached to this order is a    09:47:22

timeline.  Can I give that back to you?    09:47:26

     Q    Sure.    09:47:28

     A    Okay.  And that's not part of the    09:47:29

exhibit.    09:47:32

Is that correct?                                            09:47:32

Q    No.                                                    09:47:32

A    Okay.                                                  09:47:33

Q    Should be a two-page exhibit.                          09:47:33

Do you see that?                                            09:47:37

A    I do.                                                  09:47:38

Q    Okay.  And I'm calling your attention to  09:47:38
page 2, the paragraph that starts with, Accordingly.        09:47:40

A    Okay.  The first full paragraph on page   09:47:48
2?                                                           09:47:50

Q    Yeah.  And I'm just going to go ahead and  09:47:50
read it into the record so we can read it together.         09:47:53

A    Mm-hmm.                                                09:47:55

Q    Accordingly, it is hereby ordered that    09:47:56
beginning April 12th, 2025, and continuing each day         09:47:59
thereafter until further order of the Court,                09:48:03
Defendants shall file daily on or before 5:00 p.m.          09:48:08
ET, a declaration made by an individual with                09:48:13
personal knowledge as to any information regarding:         09:48:16
(1) the current physical location and custodial             09:48:20
status of Abrego Garcia; (2) what steps, if any,            09:48:24
Defendants have taken to facilitate his immediate           09:48:28

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025    64

return to the United States; (3) what additional

steps Defendants will take, and when, to facilitate

his return.

    Did I read that accurately?

  A  I believe so.

  Q  Did you read this order when it was

issued?

  A  Shortly thereafter, yes.

  Q  What did you do when you read the order?

    MR. GUYNN:  Objection to the extent this

calls for attorney-client communications.

    To the extent you can answer without

revealing that information, you can do so.

  A  Thought about it.

  Q  Did you say you thought about it?

  A  Mm-hmm.

  Q  And what did you think about it?

  A  I mean, that's my -- that's work product.

  Q  You're taking the position that your

thoughts are work product, what you thought about

the order?

  A  Insofar as they form the basis for legal

advice, yes.  But I mean, I thought it was a short, well written order.  So...

MS. SCHMITT:  I'm marking Mazzara-6.

Q    Let me ask you a question before I mark Exhibit 6.  When you read the order, do you think you read the order the day it was issued on April 11th?

A    I think I did, yes.

Q    Okay.

A    Yeah, I'm pretty sure I did.

Q    By this time, was Mr. Abrego Garcia's status in El Salvador a priority for you?

A    This was not one of the late-night orders, was it?  I just want to make sure -- I'm being honest here.  Because if this came out, like, at 11:30, I might not have read it until, like, 12 the next day.

Q    You think you read it shortly in time, in a reasonable period of time?

A    Oh, yeah.

Q    Probably hours within it being issued?

A    Mm-hmm.  Yes.

Q     Okay.  And by this time when it was --
when that was issued and you read it, did you -- was
Mr. Abrego Garcia's status in El Salvador a
priority?

MR. GUYNN:  Objection to form.

A     Priority for whom?

Q     For you?

A     For me?  Again, it might have been at
that point --

Q     Was it a --

A     -- a priority.

Q     -- priority for the Secretary?

MR. GUYNN:  Objection to form.

Q     -- of the Department of Homeland
Security?

MR. GUYNN:  Objection to form and
objection to the extent it calls for attorney-client
communications.

To the extent you can answer without
revealing attorney-client communications, you may.

A     I am confident that this was a priority
for the Secretary, just like all things that involve

09:50:48
09:50:49
09:50:51
09:50:54
09:50:55
09:50:59
09:51:01
09:51:02
09:51:07
09:51:07
09:51:08
09:51:09
09:51:11
09:51:12
09:51:14
09:51:14
09:51:15
09:51:17
09:51:18
09:51:19
09:51:22
09:51:26

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    67

major litigation.

(Exhibit Mazzara-6 marked for identification and attached to the transcript.)

BY MS. SCHMITT:

Q    I'm marking Mazzara Exhibit 6.

A    Thank you.  Can I put this away?

Q    We're going to refer back to Exhibit 5, but you can put it to the side if you want to.

A    Okay.

Q    Can you take a look at Exhibit 6.  This is the declaration of Michael Kozak dated April 12th.

Who is Mr. Kozak; do you know?

A    He is the senior bureau official in the Bureau of Western Hemisphere Affairs, United States Department of State.

Q    Okay.  And did you -- did you know that independently, or were you just looking at the exhibit?

A    I know he's some State Department guy.

Q    Okay.  And did you read Mr. Kozak's declaration before it was filed on April 12th?

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    68

         MR. GUYNN:  Objection to the extent it        09:52:35

calls for attorney-client communications.             09:52:36

         To the extent you can answer without          09:52:39

revealing them, you may do so.                         09:52:40

    A    I believe I did, yeah.                        09:52:58

    Q    And I did say that I was going to refer       09:52:59

you back.  If you look back at Exhibit 5,              09:53:01

Judge Xinis's order, ordering a declaration be filed   09:53:06

each day by 5:00, is Mr. Kozak's declaration in        09:53:10

Exhibit 6 the defendants' response to the order in     09:53:16

Exhibit 5?                                             09:53:25

    A    The first full paragraph on page 2 of         09:53:27

this order where -- the one that you read?             09:53:29

    Q    Yes.                                          09:53:32

    A    Yes.                                           09:53:32

    Q    Okay.  And you said you read it before it      09:53:33

was filed?                                             09:53:38

         MR. GUYNN:  Same objection as before on        09:53:41

attorney-client privileged grounds.                    09:53:44

         You can answer to the extent you don't         09:53:47

reveal attorney-client communications.                 09:53:48

    A    Yeah.                                          09:53:50

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025                              69

Q     And in paragraph 3, it says -- Mr. Kozak says, It is my understanding based on official reporting from our Embassy in San Salvador that Mr. Abrego Garcia is currently being held in the Terrorism Confinement Center in El Salvador.  He is alive and secure in that facility.  He is detained pursuant to the sovereign, domestic authority of El Salvador.

Do you see that?

A     Yep.

Q     Did you believe that to be true when you read it from Mr. Kozak?

A     Yes.

Q     Did you take any action to verify whether it was correct?

MR. GUYNN:  Objection to the extent it calls for attorney-client communications.

To the extent you can answer without revealing privileged material, you can do so.

A     This goes to kind of the structure of the executive branch.  The people who take action on things like this is the State Department.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    70

Q      I'm asking you, when you read it, if you
took any action to verify whether it was accurate.

        MR. GUYNN:  Same objection.

A      Mr. Kovak [sic] signed the declaration.

Q      Mr. Kozak signed the declaration?

A      Sorry, Kozak.

Q      You're the Acting General Counsel for the
Department of Homeland Security.

        Is that correct?

A      Yes, ma'am.

Q      And the Secretary, in her capacity as
Secretary, is a defendant in this same lawsuit.

        Is that right?

A      Yes.

Q      Okay.  And so you read the declaration
before it was submitted?

A      Mm-hmm.

Q      But I'm just asking you if you took any
action, called anyone, emailed anyone, did anything
to confirm whether the information in the
declaration was accurate?

        MR. GUYNN:  So just objecting on the

basis of attorney-client privilege.

If you can answer without revealing the information, you may do so.

A    It's possible.  But the thing here, though, is that, I mean, he signed this under penalty of perjury.  He's an officer of the United States.  So there would be no reason for me to doubt or question what was in this.

Q    That was submitted -- signed and submitted on April 12th.  Do you know, sitting here today, whether Mr. Abrego Garcia was, in fact, at CECOT on April 12th?

A    Other than through this and public reporting, I have no -- I mean, that was my understanding was that he was there at CECOT.

Q    Okay.  Did you have any understanding that he was at CECOT other than in this declaration?

MR. GUYNN:  Objection to the extent it calls for state secret information or attorney-client communications.

You can answer to the extent you don't reveal such information.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                          72

A    I mean, public reporting.                               09:56:33

Q    Okay.  And you've seen the public                       09:56:36
reporting since then that at some time, in fact,             09:56:38
Mr. Abrego Garcia was moved out of CECOT?                    09:56:43

A    Yes.                                                    09:56:47

Q    Do you know when he was moved?                          09:56:50

A    Do I know when he was moved?  No.  I                     09:56:52
believe there's public reporting on that, though.            09:56:56

Q    Did you know before you saw the public                  09:56:58
reporting that he had been moved?                            09:57:01

MR. GUYNN:  Same objection.                                  09:57:03

A    Again, I don't know that he has been                    09:57:05
moved, but I know what has been reported and what's          09:57:08
been in declarations from State.                             09:57:11

Q    So even as you sit here today, you                      09:57:13
haven't done anything to confirm the public                  09:57:16
reporting that he was moved out of CECOT?                     09:57:21

A    Haven't done anything to confirm the                    09:57:25
public reporting that he was moved out of CECOT?             09:57:27
Can I talk to my attorney real quick?                        09:57:43

MR. GUYNN:  I'm going to object on the                       09:57:46
basis of deliberative process and attorney-client           09:57:47

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                              73

communications.

You can answer the question, if you're able to, without revealing that information.  If you need to speak about one of those privileges briefly, we can do that.

THE WITNESS:  Yeah, just a very brief, very brief conversation.

MS. SCHMITT:  The witness is asking to consult with counsel before answering the question.

MR. GUYNN:  On the basis of whether a privilege applies.

COURT REPORTER:  Would you like to go off the record?

MS. SCHMITT:  We'll go off the record.

VIDEOGRAPHER:  The time is 9:58.  We are going off the video record.

(Recess from 9:58 a.m. until 10:00 a.m.)

VIDEOGRAPHER:  The time is 10:00, and we are back on the video record.

MR. GUYNN:  So would you mind rereading the pending question?  And then I'll assert the same objections.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                74

MS. SCHMITT:  It's okay, I can do it.

BY MS. SCHMITT:

Q    What I asked Mr. Mazzara -- I asked you whether you -- whether you talked with anyone -- whether you know if anybody else talked to anybody at the Department of State -- I'm sorry.  Scratch that.  I should have let the court reporter read it back.

Do you know whether anyone from the Department of Homeland Security talked to anyone at the Department of State regarding Mr. Abrego Garcia's custody in El Salvador?

MR. GUYNN:  Same objections as before.

You can answer to the extent you don't reveal deliberative process or attorney-client communications.

A    Talked to the Department of State, yes.  Yeah.

Q    Who spoke to the Department of State?

A    Again, I was on email chains with State Department.  I think Brendan McCommas, B-R-E-N-D-A-N, McCommas, and I think he was on those

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                           75

emails.  Maybe the Bizchoff guy.

Q     At the time --

A     And then DOJ, I think.  I think.

Q     By April 12th, had you directly or through tasking anyone had anyone reach out to anybody on the ground in El Salvador to check on Mr. Garcia?

A     To check on him?

Q     Yes.

A     Do you mean doing a site visit at CECOT?

Q     Sure.  We'll start with that.

A     No.  I did not ask -- I did not task one of my attorneys to go out there or -- and do a site visit at CECOT.

Q     That wasn't my question.  But I'll ask again.

A     Okay.

Q     Do you know whether anyone at the Department of Homeland Security had --

A     Oh, yes, it was televised.  Secretary Noem went down there.

Q     She went down there.  Was she down there

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                          76

to check on Mr. Abrego Garcia?

    A    She was just down there to look at the conditions at the jail.  Whatever was said in the public reporting on that.

    Q    Okay.  That wasn't my question.

         I'm asking if anybody -- by the time of April 12th when you're filing declarations in court in response to Judge Xinis's order, do you know whether anyone at DHS had reached out to anyone in El Salvador to check on Mr. Abrego Garcia?

    A    Anybody at DHS?  Again, I'm going to refer you back to, like, McCommas and all those people at State.  That's a State function.  That's how the executive branch kind of works and the different agencies.

    Q    So your position is that nobody at the Department of State -- nobody at DHS needed or had any responsibility to check on Mr. Abrego Garcia; it was just a State Department issue?

    A    Foreign affairs is generally conducted by the President and then the Department of State, with his authority.

Q    Okay.  Who at the Department of Homeland
Security, your agency, has responsibility for
complying with the court orders in this case?
        10:03:38  10:03:42  10:03:45

A    Wait, what do you mean by that question?
It's kind of a confusing question.
        10:03:50  10:03:53

Q    Who at the Department of Homeland
Security has responsibility for ensuring that DHS is
complying with the court orders in this case?
        10:03:55  10:03:59  10:04:05

A    Oh, well, as the Acting General Counsel,
I give legal advice and I -- you know, my office
ensures legal compliance with all laws, regulations,
Court opinions, settlement agreements, et cetera.
        10:04:07  10:04:10  10:04:12  10:04:15

Q    So in -- can I take --
        10:04:15

A    When I say "ensure," I mean, we advise
and then, of course, the decisionmakers do what they
do.
        10:04:18  10:04:21  10:04:23

Q    I'm asking about this lawsuit, which I
think earlier today you said was a priority for the
Secretary because it was a lawsuit.
        10:04:23  10:04:28  10:04:30

A    Absolutely.
        10:04:32

Q    Okay.  And so I'm asking who at the
Department of Homeland Security has responsibility
        10:04:33  10:04:36

for complying with Judge Xinis's orders in this case?

A    Again, I'm not sure I understand the question correctly because the entire -- everybody has responsibility insofar as it might come across their desk.

Q    Okay.  Who has ultimate authority for making sure that what Judge Xinis orders in this case or the Fourth Circuit or the Supreme Court, whether that -- those court orders are complied with?

A    Well, the President of the United States. I mean, as the head of the executive branch, that's the ultimate authority.  I'm not trying to be pedantic here.  But do you mean who is the ultimate decisionmaker?

Obviously, you have, you know, the Secretary and the Deputy Secretary, and then you have me, who I advise them, but I also advise all the different components.  You have ICE, you know, and the head of ICE and, you know, all the people at ICE who have some play in that.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                          79

Q     So --                                              10:05:28

A     Like --                                            10:05:28

Q     -- I'm asking --                                   10:05:29

A     Yeah.                                              10:05:29

Q     -- who is -- who is checking to make sure          10:05:31
that court orders in this case, Mr. Abrego Garcia's      10:05:37
case, who at the Department of Homeland Security is      10:05:41
ensuring that the court orders are followed and          10:05:44
complied with?                                           10:05:49

A     So I provide advice and I, you know,               10:05:50
supervise that -- how that advice is taken or not        10:05:54
taken.                                                   10:05:59

Q     Is it your testimony that, while you're            10:05:59
providing advice, you do not have ultimate               10:06:00
responsibility for ensuring that the court orders        10:06:03
are complied with?                                       10:06:05

A     The ultimate authority always rests at             10:06:07
the top in any organization.  The buck stops here,       10:06:09
right?                                                   10:06:13

Q     Okay.  So the buck stops with the                  10:06:13
Secretary?                                               10:06:15

A     And the President.                                 10:06:15

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    80

Q    At DHS, the buck stops with the Secretary?

A    Sure.

Q    Mr. Mazzara, where are you -- I know you're an attorney.  Can you tell me where you're licensed?

A    Virginia, Old Dominion, Virginia, and then Texas.

Q    And are you active members in both of those bars?  Active status is what I mean.

A    I believe so, yeah.

Q    Have you ever --

A    I think so.

Q    Have you ever had any findings of discipline or any --

A    No.

MR. GUYNN:  Objection on relevancy grounds.

Q    Your answer was "no" to the question?

A    Yeah, from the bars.  I mean, I've gotten speeding tickets, which is a fine.

Q    Only fines?

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                81

A    From speeding tickets?    10:07:07

Q    Yeah.    10:07:08

A    As far as I'm aware.  You mean, like    10:07:10
what's the alternative to a fine?    10:07:13

Q    Being charged?    10:07:15

A    Being charged?    10:07:16

Q    Yeah.    10:07:17

A    Oh, I have no idea.  For speeding    10:07:18
tickets?    10:07:20

Q    Yeah.    10:07:20

A    I have no -- if I have, I don't remember.    10:07:21
I mean, I don't know -- I don't know the process for    10:07:23
speeding tickets.  So...    10:07:24

Q    Are you aware that if you speed above a    10:07:25
certain amount, you can be charged with a    10:07:28
misdemeanor or even a felony?    10:07:29

A    Not really.    10:07:33

Q    You didn't know that?    10:07:35

A    No.    10:07:36

Q    To your knowledge, have you ever been    10:07:36
charged?    10:07:38

A    No.    10:07:39

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                     82

MS. SCHMITT:  Let me mark -- I'm marking
Mazzara-7.                                                    10:08:16

(Exhibit Mazzara-7 marked for
identification and attached to the transcript.)

BY MS. SCHMITT:

Q     Mr. Mazzara, before we get to 7, if you
can set that aside for one moment.  I'm going to
refer you back, and I will need to check myself on
the number.  Can you take a look -- I know you have
the pile right there.

Can you take a look back to Mazzara
Exhibit 4.

A     Yes.  That's the declaration of Robert L.
Cerna.

Q     Right.  And we established earlier that
Mr. Cerna is an ICE Acting Field Office Director.

You agree with that?

A     Mm-hmm.

Q     Okay.  I'm going to direct --

(Reporter interruption.)

A     Yes.  Sorry, yes.

Q     Okay.  Can you turn to paragraph 4.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                              83

A    Yes.

Q    Mr. Cerna declares under penalty of perjury that to provide the -- he provided this declaration based on his personal knowledge, reasonable inquiry, and information obtained from various records, systems, databases, other DHS employees, and information portals maintained and relied on by DHS in the regular course of business.

Do you see that?

A    Yes.  By the way, I do want to adjust one answer to one question you asked earlier about who has responsibility.  Just to be very clear, her name is up there at the top of the defendant list.

So -- that's assuming -- and I don't want -- I want to make sure -- that's assuming you actually sued the right person.  But there's a reason why you all sued her.  So...

Q    So your point is that you aren't responsible; she is responsible?

A    I mean, I'm a responsible person, but nah, yeah, in this particular situation, with regard to your question, she is the person that you sued

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                              84

for a reason.  So...

Q    Okay.  And so I just want to -- you made a point to make that point, I guess.  And so am I correct that your point is you don't particularly feel like you have responsibility for this because her name is on the caption?

MR. GUYNN:  Objection to form.

A    I can't give you legal advice, but I'll tell you what, if you only sued me, you'd probably get kicked for having sued the wrong person on a motion to dismiss.  That's all I'm saying.

So, okay, paragraph 4 here.

Q    Mm-hmm.

A    "I provide this declaration based on my personal knowledge, reasonable inquiry," that one?

Q    Yeah.  Do you know what reasonable inquiry Mr. Cerna made to provide that evidence to the Court?

MR. GUYNN:  Objection to the extent this calls for attorney-client communications.

You may answer to the extent you don't disclose that information.

A    No.

Q    Okay.  Do you know what records would be available for Mr. Cerna to review in this matter?

A    I'm just refreshing my recollection here with the facts that Cerna alleged in this declaration.

Okay.  So do you mind just re-asking your question one more time?  I'm sorry.

Q    Yeah.  I was just wondering if you're familiar with what records exist in this matter that are relevant to this case that Mr. Cerna would have reviewed -- or could have reviewed?

A    Okay.  So that was a yes-or-no question. So the answer is yes.  But I think you're also asking me what those records might be.

Q    Mm-hmm.

A    Okay.  Well, he refers to some of them. He refers to, for instance, some of the documents involved with the proceeding before the immigration judge, from EIOR -- sorry, the Executive Office For Immigration Review.  That's E-O-I-R, EIOR.

And it looks like he reviewed the Board

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                86

of Immigration Appeals bond decision and the

withholding of removal decision.  He -- I am not

sure -- well, it says he reviewed a manifest.

Q    Okay.

A    Or at least he reviewed -- he reviewed an

initial manifest.

Q    Okay.  Can I direct your attention to

paragraph 13?

A    Yeah.

Q    "ICE was aware of this grant of

withholding of removal at the time Abrego Garcia's

removal from the United States."

A    Mm-hmm.

Q    Do you see that?

A    Yes.

Q    Okay.  And you reviewed this before -- I

believe your testimony was you reviewed it before it

was filed.

A    Mm-hmm.

Q    What did you understand that to mean?

A    That somebody at ICE knew that he had

withholding of removal with respect to El Salvador.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    87

Q    Even as he was removed, ICE knew that there was a withholding -- a notice of withholding?

MR. GUYNN:  Objection to the extent it calls for attorney-client communications.

You can answer the question to the extent you don't reveal such communications.

A    So your first question was, what does that mean.  And so what it means is that somebody at ICE was aware of this grant of withholding of removal.

Who at ICE was aware, I don't know.

Q    You don't know?

A    Huh-uh.

Q    The next sentence says, Reference was made to the status on internal forms.

Do you know what forms exist with respect to Mr. Abrego Garcia's status?

A    So, again, like, this is -- reference is made to the internal forms.  I don't unless it's referring to, like, the actual decision where, you know, there was a grant of withholding of removal, which it might -- that's the problem.  It's not

10:14:34
10:14:37
10:14:40
10:14:41
10:14:44
10:14:45
10:14:46
10:14:49
10:14:53
10:14:55
10:14:56
10:14:58
10:14:59
10:15:01
10:15:04
10:15:06
10:15:13
10:15:17
10:15:20
10:15:24
10:15:27
10:15:30

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    88

really a problem, but that's the problem with your

question.  Yeah.  I mean, but I'm not sure what

internal forms this is referencing.

    Q    Okay.

    A    We can presume it was a withholding of

removal and somebody had -- was the custodian of

that order.

    Q    Okay.  Let's look at Exhibit 7, which was

already marked and handed to you.

    A    Do you want me to put Exhibit 4 here?

    Q    You can put that back aside.

    A    All right.

    Q    Okay.  Exhibit 7, this is your

declaration.

    Do you see that?

    A    Yes.

    Q    And you submitted this declaration under

penalty of perjury on April 14th?

    A    Yeah, I provided this to DOJ.  They filed

it.  But yes.

    Q    Okay.

    A    So I submitted it to the Court, but

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    89

through DOJ.

Q    Okay.  And so you reviewed this before you provided it to DOJ to be submitted, right?

A    Yeah.  These are my words.

Q    These are your words, great.

And am I correct that this is your declaration -- on April 14th, you were the declarant providing the declaration that's called for in Exhibit 5, the one that Judge Xinis ordered had to be submitted each day?

A    Okay, I'm sorry.  So this in reference to -- was it Exhibit 2?

Q    No.  Exhibit 4 was Judge Xinis's order --

A    Oh, Exhibit 4.

Q    -- where she ordered that the defendants had to file --

A    Exhibit 4 is Cerna, and then Exhibit 2 is the order, I think.

Q    Exhibit 5.

A    Oh, Exhibit 5 -- Notice of Deposition -- oh, okay, Exhibit 5.  Sorry.

So this is in response to, yeah, the

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    90

first full paragraph on page 2 of Exhibit 5.                    10:17:40

     Q     Okay.                                                10:17:42

     A     Correct.                                             10:17:43

     Q     So you're the one making the declaration            10:17:43

pursuant to Judge Xinis's order --                             10:17:47

     A     Mm-hmm.                                             10:17:49

     Q     -- that somebody with personal knowledge            10:17:49

file a declaration each day?                                   10:17:53

     A     Yes.                                                10:17:54

     Q     Okay.  And what did you do to be prepared           10:17:54

to file this declaration responsive to Judge Xinis's           10:18:01

order?                                                         10:18:07

          MR. GUYNN:  Objection to the extent it               10:18:07

calls for attorney-client communications.                      10:18:09

          To the extent you can answer without                 10:18:11

revealing the content of such communications, you              10:18:13

may answer.                                                    10:18:16

     A     What did I do to prepare?  It's kind of             10:18:16

contained in there.  Let's see.  I read the                    10:18:19

declaration of Evan C. Katz, which is at ECF                   10:18:21

number 64.  I read the declaration -- okay.  Yeah.             10:18:25

So that's referenced three times.                              10:18:33

I watched that video of the meeting between the President of the United States, the President of El Salvador, the Attorney General, Stephen Miller.  I think Vice President Vance might have been in that, too.  I can't recall, though.

And I also looked at the immigration judge opinion, like the -- some of the filings in the immigration proceedings, the BIA opinion, some of the filings in the BIA proceedings, the filings in this case, the news, read some news articles.

Q    So the best of your recollection, is that everything that you did to be prepared to file this declaration?

A    I'm sure I also communicated with people at the Department of Justice and maybe the Department of State.  I don't remember if they were on -- I think they might have been -- I think Brendan McCommas might have been on those emails. But I can't remember for sure.

Q    Okay.  I want you to look at this declaration, Exhibit 7, alongside of Exhibit 5, page 2, Judge Xinis's order.

A    All right.  Got it.

Q    You got it?

A    They are side by side.

Q    Okay.  And so what she has ordered and what you are providing in Exhibit 7 -- she's -- she's ordering someone with personal knowledge to file a declaration specific to those three topics.

Do you see that?

A    Mm-hmm.  I'm sorry, yes.

Q    His current physical -- Mr. Abrego Garcia's current physical location and custodial status, what steps defendants have taken to facilitate his immediate return, and what steps defendants will take and when to facilitate his return.

You see that, right?

A    Mm-hmm.

Q    Okay.  And you knew at the time you were making this declaration that that is what the judge had ordered you to provide?

A    Yes, ma'am.

Q    Okay.  And so specifically, what did you

do with respect to this declaration to confirm that

you could provide current information to Judge Xinis

about his physical location and his custody status?

MR. GUYNN:  Objection to the extent it

calls for attorney-client communications and state

secret information.

To the extent you can answer without

revealing that information, you may do so.

A    Well, I probably had conversations, as

discussed before, via email.  There may have been a

Teams meeting.  That, I'm less sure of here.

I -- let's see.  That might have been an

internal meeting, though.  I don't think people from

State like Brendan were there or any of the DOJ

guys.

And read the declarations.  I -- yeah.  I

probably had some sort of internal conversation that

discussed his whereabouts.

Q    You probably did?

A    Yeah.

Q    And what do you recall about -- you

learned about his whereabouts?

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025                    94

MR. GUYNN:  Same objections as before.                    10:22:17

A    Everything that I learned about his                    10:22:19

whereabouts is in the declaration.                    10:22:21

Q    Okay.  So you didn't learn anything new                    10:22:24

about his whereabouts?                    10:22:29

A    No.                    10:22:31

Q    And do you specifically recall that you                    10:22:34

checked on his whereabouts, or you're speculating                    10:22:36

that you probably did?                    10:22:38

A    I mean, I signed this declaration.  Of                    10:22:40

course, I checked in on it.  And I looked at the                    10:22:45

declaration from the day prior.  And there was --                    10:22:47

nobody gave me any indication that he had been                    10:22:49

moved.                    10:22:51

Q    Did you take any --                    10:22:52

A    If he had been moved.                    10:22:54

Q    -- affirmative steps to learn whether he                    10:22:55

had been moved?                    10:22:58

MR. GUYNN:  Objection to the extent it                    10:22:59

calls for attorney-client communications or state                    10:23:00

secret information.                    10:23:02

You may answer to the extent you don't                    10:23:04

reveal that information.

A    There was nothing at all that was communicated to anybody that I'm aware of that would have indicated that he had been moved out of CECOT.

Q    I'm asking whether -- as I take it from your answer, tell me if I've got it right, no one came to you that you were aware of to say that there had been any change in his status and the location of his custody?

MR. GUYNN:  Same objections.

A    No.

Q    Okay.  I'm asking a different question now.

Did you affirmatively do anything to find out what his current physical location and status was?

A    Well, yeah, for the purposes of this declaration.

Q    Okay.  What?

MR. GUYNN:  Objection to the extent it calls for the content of attorney-client communications or state secret information.

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                96

To the extent you can answer without

revealing that information, you may do so.

A    Again, there might have been emails.  I

honestly can't remember exactly.  Might have been

conversations, either over Teams or the phone, and

reading the declaration from State who -- I mean,

these sorts of things -- like, these sorts of

things -- I mean, this is the kind of thing that

would be -- everybody would be notified of if it was

communicated to us from El Salvador, for instance.

Q    Oh, everyone --

A    Or the news or something else like that.

Q    Everyone would have been notified if he

had been moved -- by El Salvador if he had been

moved?

A    You know, here's the thing.  Like, you

know, we're talking about government employees.

They don't always do their job the way that --

particularly career government employees, the way

that -- no offense Rene -- the way that they're

typically required to do so.

But presumably, we would have been

notified, or by the news even, so -- which eventually, we were notified by the news.

Q    So I understand that maybe you learned some things from the news.  Were you taking any steps to obtain information from anyone outside of the news?

MR. GUYNN:  Same objections as before.

To the extent you can answer without revealing attorney-client communications or state secret information, you may do so.

A    I mean, I already provided an answer to that question insofar as I read the filings, the declaration, I reviewed -- I read the news. Everybody reads the news.  I mean, just conversations via email, probably phone calls, Teams meetings, things like that.

I mean, was I supposed to fly -- I'm trying to understand what more than that -- I mean, you've asked the question, I don't know, three or for times.  I've given the same answer.  What additional steps might I so taken?  Flown down to El Salvador myself?

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    98

Q    Who was on -- I think you said that you
believe there would have been emails.  Can you
tell -- can you recall anyone -- is it the same
people or is there anyone else that you can recall,
any other names that you would have been on emails
with?

        MR. GUYNN:  Objection, just on
presidential communications grounds.

        To the extent you can answer the question
without revealing that information, you may do so.

A    I don't think -- I don't know if Erez
Reuveni was still at the Department of Justice at
this time.  He might have been on those emails from
DOJ.

        Yeah, I don't remember.  If it was State,
it might have been Brendan McCommas or that Bizchoff
guy.  I don't remember the Bizchoff guy, though.
And yeah.  And then just -- again, just random
attorneys at DHS.

Q    Okay.  I think you testified that you
read the declaration from the day before --

A    Mm-hmm.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    99

Q       -- in preparation.                                    10:26:48

A       Yeah.  I believe that was the Katz             10:26:50
declaration, April 13th.                                      10:26:52

Q       Do you understand that Judge Xinis had         10:26:54
ordered every 24 hours to get a declaration?  So              10:26:57
reading the declaration from 24 hours prior isn't             10:27:01
going to give her updated information.  Judge Xinis           10:27:07
wanted information in real time every 24 hours.               10:27:09

        Do you understand that?                        10:27:14

        MR. GUYNN:  Objection to form.                 10:27:14

A       Do I understand that?  Yeah.  Of course.       10:27:18

Q       Okay.  So did you take any steps --            10:27:21
beyond reading the 24-hour-old declaration from               10:27:24
somebody else, did you take any steps before filing           10:27:27
your declaration to determine Mr. Abrego Garcia's             10:27:31
current physical location?                                    10:27:36

        MR. GUYNN:  Same objections as before, on      10:27:40
attorney-client and state secrets ground.                     10:27:44

        To the extent you can answer, you may do       10:27:47
so.                                                           10:27:50

A       I can tell you that, again, there were         10:27:50
conversations, but I can't tell you about the                 10:27:51

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

100

content of any of those conversations.

Q    You can't tell me because you don't remember or you can't tell me because of a privilege objection?

A    A little bit of both.

Q    Okay.  What information in your mind -- do you have any information in your mind that you are holding back because of the privilege objection?

MR. GUYNN:  To be clear, you're asking if he's withholding information in response to your question on the basis of attorney-client or state secrets privileges?

MS. SCHMITT:  Correct.

THE WITNESS:  Or deliberative process --

MR. GUYNN:  Or deliberative process privileges?

THE WITNESS:  Work product, foreign affairs.

Q    Your attorney didn't raise any of those latter objections.

MR. GUYNN:  I'll object on the basis of attorney work product and foreign affairs privileges

FILED UNDER SEAL

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025

as well.

A    Is there information -- in response to your question, about what steps I took?

Q    Yes.

A    You asked about what steps I took.  I had conversations with people at DHS, I believe at Department of State, and DOJ.  I do not remember the people at DOJ, but they're definitely DOJ attorneys. But we had conversations about the case and, you know, the details.

Q    Okay.  And was the purpose of those conversations for you to obtain information to tell the judge about Mr. Abrego Garcia's location and status?

A    Oh, the purpose?  Yeah, the purpose of the conversation was absolutely, you know, about information that would be distilled into the declaration.

Q    Okay.  And besides the names that you've already listed, do you remember any other names that you -- of people you would have talked to?

A    About this declaration?

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

102

Q    Yes.

MR. GUYNN:  And objection to the extent it calls for presidential communications information.

You can answer to the extent you don't reveal that information.

A    I don't -- did I talk to?  I don't remember that I talked to, no.

Q    You were also ordered to address what steps, if any, defendants had taken to facilitate Mr. Abrego Garcia's immediate return to the United States.

A    Maybe Drew Ensign who I think is the attorney of record in the case.  Yeah.  And one of his, like, subordinates.  But I don't know their names, I think.

Q    Do you remember any non-attorneys who were on those emails?

MR. GUYNN:  Same objection as before.

A    It's a shit life, but I primarily just talk to attorneys.  I can't remember any attorney -- anybody that wasn't an attorney.  I talk to so many

attorneys, like literally.  It's like, you know --

Q     Okay.  So --

A     Too many attorneys.

Q     Okay.  Did you talk to anyone about what steps, if any, defendants had taken in the last 24 hours, prior to your declaration on April 14th, what the judge has ordered you to tell her, is what steps, if any, the defendants have taken to facilitate Mr. Abrego Garcia's immediate return to the United States?

What did you learn in preparation for filing this declaration that -- about the steps, if any, the defendants had taken to do so that?

MR. GUYNN:  Objection to form.  Also objection to the extent it calls for attorney-client or state secrets information.

You can answer the question, to the extent you can do so, without revealing that privileged information.

A     Technically, compound question is an objection, but that was -- there were like a lot of moving parts to that.  Do you mind breaking that

10:30:21
10:30:21
10:30:26
10:30:27
10:30:32
10:30:36
10:30:43
10:30:46
10:30:48
10:30:51
10:30:52
10:30:54
10:31:00
10:31:02
10:31:06
10:31:08
10:31:11
10:31:12
10:31:14
10:31:14
10:31:17
10:31:20

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

104

down for me?

Q    I don't mind.

A    Okay.

Q    What did you learn --

A    Yeah.  Because I don't know what I'm --
yeah.

Q    What did you learn about what steps, if
any, the defendants had taken to facilitate
Mr. Abrego Garcia's immediate return to the United
States?

MR. GUYNN:  Same objection as before.

A    Okay.  And by defendants, do you mean the
Secretary of -- do you mean the Secretary of
Homeland Security and the Department of Homeland
Security?

Q    Yes.

A    So that's number 2, right?

Q    I'm not asking about what your
declaration says.  I'm asking about what steps you
were the declarant to inform the judge, per her
order, what had happened with respect to Mr. Abrego
Garcia in the last 24 hours, specifically what the

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    105

defendants had done.

I'm asking you, in preparation for filing that Court-ordered declaration, what you did to find out what the defendants had done, if anything.

A    Oh, I mean obviously conversations and emails and things like that.

Q    Okay.  Had the defendants taken any steps in the 24 hours preceding your declaration to facilitate Mr. Abrego Garcia's immediate return to the United States?

MR. GUYNN:  Objection to the extent it calls for state secret information.

You can answer the question to the extent you don't reveal that information.

A    So we have established processes, meaning like long-standing processes for taking -- like it says, taking steps to remove domestic obstacles that would otherwise --

(Reporter interruption.)

A    For taking steps to remove domestic obstacles that would otherwise prevent an alien from lawfully entering the United States.

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

So we have these long-standing processes. And insofar as facilitation is concerned, I mean, we just -- we're going to follow our processes.

Q    You followed the process in this case?

A    With respect to what?

Q    With respect -- you just told me that you have long-standing processes with respect to facilitation. Did you follow your long-standing process in this case with respect to facilitation?

A    He'll have to present himself at a port of entry.

Q    That's your long-standing process?

A    Him presenting himself at a port of entry? No. He would just do that. Our long-standing process would be what we do after that.

Q    Well, you're long -- you told me you have a long-standing process with respect to facilitation. What is the long-standing process?

A    Exactly what I've described, with regard to taking steps to remove foreign domestic obstacles. We would allow him to be present, in

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

detention, in the United States, which is a big deal, because we could have just turned him around at the border.

Q    Is it your testimony that your long-standing process with respect to facilitating the return of people who were wrongfully -- let me rephrase that question.

Is it your testimony -- is it your testimony that your long-standing process with respect to facilitating someone in Mr. Abrego Garcia's situation is just to wait to see if they present themselves at the border?

A    You mean somebody who's not an American citizen and if they enter would be an illegal alien and also a member of a foreign terrorist organization?  Yes.

Q    No, that's not what I mean.

I mean someone who had a stay of removal and was nevertheless removed.

MR. GUYNN:  Objection to form.

A    Withholding of removal and only to El Salvador.  I mean, yeah, if somebody has been --

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

108

has a final order of removal, and they present themselves at a port of entry, trying to re-enter the United States, we would very likely -- I'm not the decisionmaker, but we would very likely detain them and then remove them to --

(Cross-talk.)

Q    Mr. Mazzara --

A    -- the country.

Q    -- I'm not asking you to speculate.  I'm asking you a really clear question based on your testimony.

Is it your testimony that the Department of Homeland Security's long-standing process with respect to facilitation for someone who was removed from the United States notwithstanding a stay of removal is simply to wait to see if they present themselves at the border?

A    Withholding of removal.  He was not wrongly removed from the United States.  So I think that was an earlier question.

Q    I'm not asking the earlier question.  I'm asking you to answer the question I just asked.

10:35:21
10:35:24
10:35:28
10:35:31
10:35:34
10:35:35
10:35:35
10:35:35
10:35:36
10:35:38
10:35:40
10:35:42
10:35:47
10:35:50
10:35:54
10:35:58
10:36:02
10:36:04
10:36:05
10:36:08
10:36:09
10:36:11

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                            109

A      I've already answered that question.          10:36:13

Q      How did you answer it?                         10:36:15

A      Well, by clarifying some facts.  It's not     10:36:17
just a matter of some random illegal alien who's        10:36:20
been wrongly removed to, you know, El Salvador or       10:36:23
Nicaragua or Honduras.                                  10:36:29

       This is a member of a foreign terrorist        10:36:32
organization, a wife beater, and somebody who has       10:36:35
allegedly trafficked in humans on American soil.        10:36:38
It's very different than somebody who has just          10:36:41
illegally entered and committed that crime and then     10:36:43
was removed perhaps to someplace where we ought not     10:36:47
have removed them.                                      10:36:50

Q      Mr. Mazzara, have you ever been falsely        10:36:51
accused of something serious?                           10:36:53

A      Yeah, of course.                               10:36:54

Q      In that situation, did you expect to be        10:36:55
able to seek legal recourse for the wrongful            10:36:58
accusation?                                             10:37:02

A      I actually sought legal recourse, and I        10:37:03
have a judgment in my favor.                            10:37:07

Q      Did you expect the other party in that         10:37:09

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

matter to abide by any court orders?

A     The other party -- what do you mean by that?

Q     You said that you have a judgment, and you sought legal recourse.

Is that correct?

A     Yep.

Q     And through that process, did you expect that the other party would follow court orders?

A     In that particular case, probably not.

Q     So you sought legal recourse notwithstanding -- you didn't think that the process -- that the court orders would be obeyed?

A     Well, the Court judgment is what's important in proving --

(Cross-talk.)

Q     Are you expecting the other party to follow the judgment?

A     Eventually.  The government has ways of forcing the payment of judgment, money judgments.

Q     So you anticipate and you did take advantage of the due process offered by the judicial

system?

A    Well, of course.  If somebody is innocent, somebody should not rest on their rights, if they're innocent.  That's why we have the court system.

Q    Have you -- as you sit here today, Mr. Mazzara, has the Department of Homeland Security taken any steps to facilitate Mr. Abrego Garcia's release from custody?

A    We continue to pay -- for his release from custody?  That's a Department of State thing again.  That is not a Department of Homeland Security, like, remit.

Q    Did you say you continue to pay -- you continue to pay for his custody?

A    No, no.  I was going to say, we continue to pay our employees on the border.  When he comes into the port of entry, we will facilitate his presence by detaining him and either reopening his case to eliminate his withholding of removal so we can remove him back to El Salvador or to a third country.

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

112

Q    Have you taken any steps -- has the Department of Homeland Security taken any steps to facilitate his return?

MR. GUYNN:  Objection to the extent it calls for attorney-client or state secret information.

You may answer the question to the extent you don't reveal such information.

A    Yes, I've taken steps, the steps I've described in my declarations.

Q    And what is that?  What are those steps?

A    That we have established steps for taking -- we have established processes for taking steps to remove domestic obstacles that would otherwise prevent an alien from lawfully entering the United States.  Those steps are continuing to pay and train our employees to do what we do every day to defend this country.

Q    Any other steps?

A    Well, those are pretty significant steps. That's not a small thing.

Q    Who is the ultimate decisionmaker at the

10:39:08
10:39:12
10:39:14
10:39:15
10:39:17
10:39:20
10:39:21
10:39:23
10:39:25
10:39:27
10:39:28
10:39:32
10:39:37
10:39:39
10:39:42
10:39:45
10:39:47
10:39:49
10:39:53
10:39:56
10:40:02
10:40:06

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

113

Department of Homeland Security regarding the court orders in this case?

A    Presumably the people you sued and that are on the bottom side of the V.

Q    Presumably.  You don't have personal knowledge as to who has ultimate decisionmaking over complying with the court orders in the case?

A    Oh, complying with court orders?  Yes, the President of the United States and Secretary Noem.

Q    And that's just because their name is in the caption or because they have independent responsibility?

A    Everybody's authority is -- if you read Article II of the Constitution, the first sentence of the constitution is that -- of Article II is that it vests the executive power in the President of the United States.  All authority that anybody has to do anything flows from that.

And so -- and some of that's been delegated by statute to Secretary Noem.  So any authority that anybody has within Department of

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

114

Homeland Security to do anything comes from her statutory and constitutional authority as a superior officer, and then the President of the United States as having been vested with the executive power of the United States.

Q    Are you familiar with an immigration process called parole?

A    I think it's -- what was it? -- 215, 215(f) or something.

Q    You are familiar with it?

A    Yeah.  Somewhat familiar with it, yeah.

Q    Can you describe it?

A    I'm not that familiar that I can describe the exact details of the process.  But sufficiently familiar.  You present yourself, you have some basis to be paroled into the United States, you get a Notice to Appear, and then you've got to appear before an immigration judge and plead your case.

Q    And does this process relate to people who are in another country?

A    You mean can we parole people from another country?

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

115

Q    Yes.

A    I don't think we're doing that.

Q    That wasn't my question.

Is there a process -- does the Department of Homeland Security have a process for paroling someone from another country?

A    Yeah, that's possible.

Q    It is possible?

A    Mm-hmm.

Q    Okay.  And were any steps taken in this case to parole Mr. Abrego Garcia?

A    In the United States?  We're not going to parole somebody who is a member of a foreign terrorist organization of the United States.  Biden did that to the tune of, I think, over 200 terrorists.  That's crazy.

Q    Mr. Mazzara, I'm just asking you to answer my questions.

Am I to take it from your question that no one --

A    That is the answer.

Q    -- that you have not followed any of the

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

116

steps -- no one at the Department of Homeland Security has taken any steps to parole Mr. Abrego Garcia?

A    That would be insane.  That would be a dereliction of duty.  That would be a violation -- if I took those steps, my wife would see that as a violation of my oath to this country and the Constitution to let a terrorist into the United States on any basis other than how we describe it in our declarations.

MS. SCHMITT:  Let's take a ten-minute break.

VIDEOGRAPHER:  The time is 10:43, and we are going off the video record.

(Recess from 10:43 a.m. until 11:06 a.m.)

VIDEOGRAPHER:  The time is 11:06, and we are back on the record.

BY MS. SCHMITT:

Q    Mr. Mazzara, I take it from your last answer that you personally have not done anything to facilitate Mr. Abrego Garcia's release from custody in El Salvador?

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                117

A       I mean, I'm not sure -- if I said that, then I'll correct myself.  I'm not sure that's entirely true.

Q       Have you personally done anything to facilitate his release from custody?

MR. GUYNN:  Objection to the extent it calls for attorney-client communications.

To the extent you can answer without providing that information, you can answer.

A       Yeah.  We've had conversations about, you know, with the subject matter being, you know, what does one do, okay, to -- what can DHS do, right, to make him present in the United States.  And all of those conversations were distilled into these declarations, right, in the sense of, like, we have laws, and we follow those laws.

Q       Okay.  So tell me more about the conversations about what you determined you could -- you could do to facilitate his release?

MR. GUYNN:  Objection to the extent it calls for attorney-client communications.

You can answer without revealing that

11:06:26
11:06:29
11:06:31
11:06:32
11:06:34
11:06:36
11:06:38
11:06:40
11:06:42
11:06:43
11:06:49
11:06:51
11:06:56
11:07:01
11:07:03
11:07:04
11:07:07
11:07:10
11:07:14
11:07:17
11:07:19
11:07:22

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

118

information.

A   Yeah.  Again, I had conversations on that subject matter, and then I wrote a declaration with what the Court asked us to provide a declaration on, the steps we were taking.

Q   Right.  So I'm asking you to expand on that.  If the judge thought that you had put everything in the declaration, she wouldn't have ordered the discovery, presumably.  So I'm asking you to expand on that and tell me what steps you determined you could take to facilitate Mr. Abrego Garcia's release.

MR. GUYNN:  So objection to form.  Objection to the extent it calls for attorney-client communications.  And objection on attorney work product.

A   So I'm not going to give you the content of any conversation that I had with anybody at DHS.  I will tell you the subject matter which, again, the subject matter was what steps, how do we facilitate, what can DHS do to facilitate.  Those are all subject matter, right, headings that you find on a

privilege log. And I've already just kind of talked about the people I've had conversations with about all that sort of stuff in prior answers.

And so with regard to what DHS can do, I describe that in my declarations.

Q    Okay.

A    With regard to facilitating the release of Abrego Garcia from El Salvadorian custody, that is a conversation for the State Department. Because, again, I mean, I can -- I'm not trying to be obnoxious or anything. But the executive branch is structured in a certain way where duties and responsibilities are divided up among various agencies and departments.

Like the Department of Labor deals with labor law. We -- actually, everybody deals a little bit with labor law. But, you know, their focus is, you know, they're got OSHA, they've got MSHA, which is the Mine Safety Health, something, Administration, I think. And then, you know, you've got Department of Defense, you've got Department of State, foreign affairs, which is who typically

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                120

communicates with foreign governments.

Q    You just mentioned -- I want to ask you a question.  It sounds -- I want to make sure I understand.  It sounds like there are communications that you're not revealing in response to my answers on the basis of attorney-client privilege with respect to the question I just asked you.

Is that correct?

A    Are there communications that involve discussions about the -- like, how does DHS even, like, do what it does?

Q    No.  You just told me you weren't going to tell -- when I asked you about --

A    Oh, yeah.  I mean, I -- sure.  Like, I can -- now I understand what your question is.

I'm the Acting General Counsel for the Department of Homeland Security --

(Reporter interruption.)

A    I am the Acting General Counsel for the Department of Homeland Security, okay, and the conversations that I have are typically privileged.

Q    Okay.  So I'm asking you specifically

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                     121

about the conversations that you had about                11:10:20

Mr. Abrego Garcia's status and any efforts to             11:10:23

release him.                                              11:10:27

    A    So just --                         11:10:29

        MR. GUYNN:  Just let her ask the             11:10:31

question.                                                 11:10:33

        THE WITNESS:  Oh, sorry, sorry.              11:10:33

    Q    And I'm asking you if you're withholding    11:10:35

information on the -- with respect to those               11:10:37

questions on the basis of attorney-client privilege.      11:10:41

    A    Okay.  I apologize about the back and        11:10:44

forth.  Do you mind re-asking the question?               11:10:48

    Q    I don't mind.                               11:10:50

    A    Thank you.                                  11:10:51

    Q    I'm asking you -- I've asked you about       11:10:51

conversations that you had with respect to what you       11:11:05

could do, the Department of Homeland Security could       11:11:08

do, with respect to returning --                          11:11:11

        (Cross-talk.)                               11:11:19

    A    Yeah, that's a --                           11:11:19

    Q    -- facilitating -- I'm sorry,               11:11:19

facilitating the return of Mr. Abrego Garcia.  Let's      11:11:20

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025

122

start there.  And I'm asking if you're withholding

information, from conversations that you had, on the

basis of attorney-client privilege.

A    Okay.  So first of all, like, what you

described was, like, a subject area, okay?  And in

regard to the content of any of those conversations,

to the extent I might remember or not remember any

of that content, yeah, I believe he asserted

attorney-client privilege over that.

Q    Okay.  And what I'm asking you is, with

respect to the -- what you're withholding on the

basis of attorney-client privilege, is that -- are

you withholding conversations that you had with the

DOJ lawyers representing you in this capacity at the

deposition, or in the case, or are you withholding

information because you were the attorney providing

the counsel or being consulted?

        MR. GUYNN:  Objection to form.

A    So from what I recall, there were a bunch

of email chains with DOJ and with Department of

State, people like Drew Ensign, Brendan McCommas --

Q    Right.  And so your --

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    123

A      -- John --                                    11:12:50

Q      Please correct me if I'm wrong --             11:12:50

A      -- my attorneys.                              11:12:52

Q      -- but your -- my understanding of your       11:12:52
objection or -- my understanding of the reason that  11:12:57
you believe it's appropriate to withhold information 11:13:01
in response to my question is because as the Acting  11:13:03
General Counsel, you're an attorney, and you were    11:13:05
either giving advice or advice was being sought of   11:13:12
you.                                                 11:13:15

A      Okay.  So that is -- yeah, that's             11:13:16
definitely a part of it, yeah.  Absolutely.          11:13:18

Q      Okay.  Well, what's any other part?           11:13:20

A      Well, what I'm saying is that, you know,       11:13:22
you've got, like, two workstreams, right?  You've    11:13:24
got my workstream as the Acting General Counsel and  11:13:26
then you have DOJ's workstream as the --             11:13:28
representing all the different parties.              11:13:30

Q      Right.  But I'm asking you about              11:13:31
conversations that you were a part of, remember,     11:13:33
about this subject --                                11:13:38

A      Are you asking if I advised people?  Is       11:13:40

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    124

that what you're asking?

Q    I'm asking you what basis you're not

answering my questions or you're withholding

information that you have.  Is it because you

believe that the attorney-client privilege applies

because you were acting as the lawyer or because --

go ahead.

MR. GUYNN:  So I just want to make clear

that we've objected to this -- I've objected to this

line on attorney-client, deliberative process, and

state secrets privileges.

And are you asking him -- I -- are you

asking him is he relying on any of those privileges

to withhold any information in response to this

question?

MS. SCHMITT:  I'm not.  Your last few --

the last couple of questions that I asked and your

last objection was only to attorney-client

privilege.  And I'm asking if he is asserting that

as the client or as the attorney.

MR. GUYNN:  Okay.  So then I'll -- I

understood to have also objected on deliberative

process and state secrets grounds, and I will now

lodge that objection.

And you can answer the question now, to

the extent you don't reveal that information.

A    Good thing we have a -- you gave us a

standing objection.

So -- okay.  Can you just ask the end of

that question one more time.

Q    I've been asking you about conversations

you had about whether or not you know if anyone took

any steps to facilitate Mr. Abrego Garcia's release

from custody in El Salvador.

MR. GUYNN:  Same objections.

A    Well, yeah.  I mean, it could be

depending on -- here's the thing.  I'm not, like,

some, like, mensa-level genius here.  Like, I don't

have a photographic memory of every single --

videographic memory of every single conversation or

email chain that I've ever had.

So I can't tell you that, oh, I had this

conversation at this time, on this date, with

exactly these people, okay, and oh, by the way,

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    126

during that conversation, that was me solely within

the capacity as the Acting General Counsel and

deliberating and creating work product and giving

legal advice, preparing legal advice in my role,

vice another conversation where it might be with

DOJ.  And sometimes those things kind of cross-wise

because --

I mean, look at the Office of Legal

Counsel.

Q    Mr. Mazzara --

A    Who is not involved in this case, as far

as I'm aware of, but we oftentimes, as an agency,

will send something to the Office of Legal Counsel

at DOJ, and that will be privileged --

(Cross-talk.)

Q    Mr Mazzara, I'm asking you --

A    -- but it will also be with respect to

the advice --

(Reporter interruption.)

Q    I'm asking you --

A    -- which will also be with respect to the

advice we give.  So there's, like, this overlap.

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                            127

So that's all I'm saying.  This is not -- I'm not trying to be difficult.  It's a very, you know, kind of complicated thing that's hard to understand.  I get that.  But, like, this is -- that's just like the way it works.

Q    I'm not having trouble understanding. But I do have a right to figure out which privilege you're asserting and on what basis and whether you have the legal foundation to sustain withholding information on any of those independent privilege assertions.  That's what I'm getting at.

MR. GUYNN:  So I don't think that -- we can do this on or off the record.  But I don't think that the witness needs to provide you with the legal analysis that would suffice to sustain one of those objections.

MS. SCHMITT:  I'm not asking him to provide the substantive legal analysis.  I'm just asking him -- what I asked specific to the attorney-client privilege was, in what capacity -- if he's withholding information based on attorney-client privilege, is that on the basis that

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    128

he's the Acting General Counsel and he was either

providing legal advice or it was being sought from

him, or because he was receiving legal advice or

seeking legal advice.

A    I think -- I would like to talk to my

attorney for 30 seconds.  I think I understand your

question now.  I just need to ask him a clarifying

question about privilege.

MS. SCHMITT:  Sure, go ahead.

VIDEOGRAPHER:  The time is 11:18, and we

are going off the video record.

(Recess from 11:18 a.m. until 11:20 a.m.)

VIDEOGRAPHER:  The time is 11:20, and we

are back on the record.

THE WITNESS:  Who's going first?

BY MS. SCHMITT:

Q    You had an opportunity to consult with

your counsel as you requested --

A    Yes.

Q    -- about the privilege.

Do you need me to repeat the question?

A    Yes, please.

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                              129

Q    I was asking you about conversations that you've had with anyone about what steps you could or have or would take with respect to facilitating Mr. Abrego Garcia's release from custody.

Did you withhold any information in response to that question on the basis of attorney-client privilege?

A    Insofar as the actual content of those conversations, well, yes.  Yeah, the attorney-client privilege that we have between the DOJ as our attorneys representing us.

Q    Okay.  So I just want to understand that. So you're asserting attorney-client privilege --

A    My attorney is asserting that, but yeah.

Q    -- on the basis that as the client, DOJ was providing you with legal advice during those conversations?

A    During this -- since the -- certainly since the filing of the case, everything has been done in coordination with our attorneys at DOJ. Everything -- everything, just all coordinated with our attorneys who are representing us in this case.

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

130

Q    And does that include the preparation and submission of your -- I believe there are six declarations in this case that you have made?

A    Wait, wait. I'm sorry. So when you say "you," do you mean the defendants --

Q    No.

A    -- or do you mean me?

Q    I mean you, Mr. Mazzara.

A    Have there been six declarations? The last two days were somebody else. So it was four, maybe five.

Q    Whatever the number is, are you including your preparation and submission of the declarations in what you're withholding on the basis of attorney-client privilege?

A    Well, I mean, I believe there are other privileges that have been asserted, like deliberative process, work product, state secrets, et cetera.

Q    I'm not asking about those yet. I'm asking about the attorney-client privilege.

Are you including conversations and other

fact-gathering that you did in the preparation of          11:23:13

your multiple declarations in this case in what            11:23:17

you're asserting is attorney-client privilege?             11:23:22

     A    You mean the fact-gathering that the             11:23:24

litigation team did between the clients and the            11:23:26

attorneys.  Sure.                                          11:23:29

     Q    I mean for you.  You submitted personally        11:23:29

multiple declarations.                                     11:23:33

          Isn't that right?                                11:23:34

     A    Yeah.                                            11:23:35

     Q    Okay.  And I'm -- and you told the judge         11:23:35

in each of those declarations that you were making         11:23:39

those declarations based on your personal knowledge        11:23:42

and information that you gathered in preparation of         11:23:45

submitting the declarations.                               11:23:50

          Is that right?                                   11:23:51

     A    Yes.                                             11:23:51

     Q    Okay.  And I'm asking you, are you               11:23:51

including those discussions and those preparations         11:23:54

and that fact-gathering in what you're asserting as        11:24:01

attorney-client privilege?                                 11:24:05

     A    So, like, the facts that I have are all          11:24:07

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    132

in the declarations.  So I'm not sure -- I'm not                    11:24:12

sure that I understand the question that you're                    11:24:16

asking.  That's the problem.                    11:24:17

    Q    Okay.  I'm asking --                    11:24:18

        Are you saying that if it's not in the --                    11:24:26

if it's not contained in the couple of pages in your                    11:24:33

declaration, you didn't do anything else and you                    11:24:35

don't know anything else with respect to this                    11:24:38

subject?                    11:24:42

        MR. GUYNN:  Objection to the extent it                    11:24:43

calls for the attorney-client communications, state                    11:24:45

secret information, or deliberative process                    11:24:50

information.                    11:24:52

        You can answer.                    11:24:53

    A    I obviously didn't put in my                    11:24:53

declaration -- hold on, let me see.                    11:24:56

        Yeah, okay.  Paragraph 2 of my                    11:25:06

declaration on Exhibit Mazzara-7.                    11:25:09

    Q    What about paragraph 2?                    11:25:12

    A    Describes what I did.                    11:25:14

    Q    Right.  So presumably, you -- I think                    11:25:17

you've told me, but let me make sure I understand.                    11:25:21

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025                                    133

You had conversations --

A     Email chains, conversations, yeah, yeah, yeah.

Q     -- prior to each declaration?

A     Yeah.  Or -- yeah, emails, conversations, things like that.

Q     Specific to Mr. Abrego Garcia?

A     Sorry, yeah, specific to Mr. Abrego Garcia, yeah.

Q     And you learned things in preparation -- as a part of those conversations?

A     Yeah, or in materials that I read, like the declarations that I cite, and I distilled and I put all that in there.

Q     Okay.  And you didn't put every single -- you didn't recite the conversations or the emails in your declaration, right?

A     I don't think so.  I don't remember doing that.  I mean, I recited the conversation between -- I quoted the conversation between Bukele and the President of the United States.

Q     I'm not asking what you did put in here.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                              134

I can read it.

What I'm asking you is, presumably, in the emails and any conversations that you had --

A    Okay.

Q    -- whatever activity you undertook to prepare for your declaration, to make sure that you were putting in accurate information and responding to the judge's order --

Right?

A    Right.

Q    -- are you asserting the attorney-client privilege over any of that information that you learned?

MR. GUYNN:  So just to clarify, DOJ is asserting attorney-client privilege, deliberative process privilege, and state secret privilege over information to the extent you're calling for it in your question.

And I'm instructing the witness to answer your question but to do so without revealing any of that privileged material.

Q    And what I am asking you, Mr. Mazzara, as

the Acting General Counsel who submitted the
declaration --

A    Emphasis on "acting."

Q    -- is whether you -- putting the other
privileges aside for a moment, whether you are
asserting that there's information you learned in
preparation for submitting each of your declarations
that you are not telling me because it is protected
by the attorney-client privilege?

A    Oh, I see what you're saying.  Okay.
Yeah, that's why he asserted it.  There's
also other information that's irrelevant.  I could
go through his wife's credible accusation of beating
her and then her not showing up for her hearing to
put the temporary restraining order and make it
permanent.  I could go into details about how I
learned that.  I could talk about all that stuff in
Tennessee when he was caught with a fellow human
trafficker.  You haven't really asked about that,
but --

Q    So all of that you learned --

A    -- they're public records.

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    136

Q     All of that you're saying that you learned in either conversations or emails with some or all of the people that you've mentioned?

A     I mean, those are -- those are public records, from public records that we obtained, yeah.

Q     You only learned it from the public records, or you also learned it or discussed it in those communications that you've been talking about?

A     Learned about it -- so, like, the Tennessee stuff, I saw on the news.  And, I mean, I'm sure I tasked somebody out to go -- like, just go get the record, you know, and acquired the record.

Q     And then you talked to them about it or read emails about it?

A     Well, I read the record.  We don't write long -- it's a standing policy, you don't write long emails.  There's just too much to do.  So it's not like there's, like, this -- like, novels of -- novels of emails, if that's what you're asking.

Q     We were talking before the break about the parole process.  You said you are familiar with

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                              137

the parole process, at least at some level.                    11:29:18

A    Sure.  Let's go ahead, let's circle back   11:29:22
to the parole process.                                         11:29:26

Q    Okay.  What do you understand the parole   11:29:27
process is?                                                    11:29:29

A    What I described, that there's some        11:29:29
reason that immigration officials decided to grant             11:29:34
parole to somebody and they give them a Notice to              11:29:38
Appear, and then they can go -- they're paroled in             11:29:40
the United States, and then they have to appear at             11:29:43
the immigration hearing and make their case --                 11:29:44

Q    Okay.                                      11:29:44

A    -- to avoid removal.                       11:29:47

Q    And are you aware that that's an           11:29:48
authority that rests with the Secretary of DHS --              11:29:50
yeah, DHS, but has been delegated to the various               11:29:53
components such as ICE --                                      11:29:57

A    Yeah, I think the --                        11:29:59

(Cross-talk.)                                   11:29:59

Q    -- Customs and Border --                   11:29:59

A    -- Attorney General also has some          11:29:59
authority there, but yeah.                                     11:30:04

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    138

(Reporter interruption.)                            11:30:04

A    Yes.  The Attorney General also has some        11:30:05
authority here, but yeah.                            11:30:11

Q    My questions for this purpose are only          11:30:12
related to DHS's authority.                          11:30:14

Is it your understanding that the                    11:30:16
Secretary of DHS has the authority to parole         11:30:18
individuals and that that authority has been         11:30:22
delegated to various components, including ICE,      11:30:24
Customs and Border Patrol, and USCIS?                11:30:29

A    You know, I have not read every single          11:30:33
delegation, so I don't know the full extent or the   11:30:35
limited extent of any particular delegation.  And    11:30:38
sometimes delegations are to individual people or to 11:30:41
individual positions.  Yeah.  I mean --              11:30:43

Q    Okay.  Do you know that --                      11:30:46

A    But based on your -- if that's -- if            11:30:49
that's your knowledge, then I'll just -- I mean, I    11:30:50
can't imagine you would lie to me.  So...            11:30:52

Q    What is the ICE Office of International          11:30:54
Affairs do?                                          11:30:57

A    The ICE Office of International Affairs?         11:30:58

Well, it sounds like they do international affairs.

Q    Beyond that, is there any description, or are you just not familiar with what they do?

A    I'm just not familiar.  I do know that ICE has officers in other countries that help facilitate the apprehension of criminals and also facilitate the prevention of people coming -- and becoming present in the United States.

Q    Okay.

A    So basically, it's like, if I understand it correctly, okay, let's say Liechtenstein -- I don't think we have an attaché in Liechtenstein. But say Liechtenstein is, like, oh, this guy is about to illegally travel to the United States.  And then they coordinate with the ICE attaché to Liechtenstein to prevent his physical presence --

Q    Okay.  And --

A    -- in the United States.

Q    Okay.  And do they also work to parole people who might be -- might be in another country so that they can come back to the United States?

A    Do they have that delegated authority?

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    140

That I'm not -- I don't -- I'm not sure of.  I don't know.  I don't know if they have the delegated authority to do that.  My guess, that would probably -- I don't know who would actually be the one that pulls the trigger on that.

Q    I just want to make sure I understand your answer.  You aren't sure if the parole process relates to people who are located in another country?

A    No, no.  You asked me about who has the authority to grant parole to somebody who's residing -- not in prison -- but residing in another -- first of all, when would we ever parole somebody who is a prisoner?  Like, could you imagine, like, some --

Q    Mr. Mazzara, can you just answer my questions?

A    I am answering your -- I am answering your question.

Q    Please.  I'm trying to understand --

A    You're asking about the officer.  And you don't need to get angry or frustrated here.  You're

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    141

asking about this officer and whether he has the

authority to parole.  I'm just, you know -- there's

so many regulations and delegations and laws.  I

mean, they fill books the length of this table.

Okay?

         And so insofar as whether a particular

officer has that authority or not or that's been

removed from that particular officer [sic] or that

particular office, no I'm not familiar with that.

     Q     Okay.

     A     And you're asking about the -- some

officer in ICE -- IA who might be -- international

affairs -- who might be deployed to a foreign -- or

deployed, TUI, assigned, you know, to a foreign

country.

     Q     Okay.  Is parole the process to admit

someone who would otherwise -- to admit someone into

the United States who would otherwise not be

admissible?

     A     To admit some -- I mean, we have a lot of

processes that involve admitting people into the

United States.

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

142

Q    I'm just asking about this parole process.  If you know.  Is that the process to admit someone who is otherwise not admissible into the U.S.?

A    It is a -- it is one of the processes by which somebody could be admitted into the United States, could enter the United States.

Q    And is it your testimony that DHS is not taking any steps to parole Mr. Abrego Garcia into the United States?

A    Well, yeah, of course -- of course not.  I mean, we said that in the -- I believe we said that in the declarations.  So...

Q    And has anyone at DHS requested Mr. Abrego Garcia's release from El Salvador?

MR. GUYNN:  Objection to the extent it calls for state secret information.

You can answer the question otherwise.

A    I have no idea.  And besides, that's not a remit.  That's State Department.

Q    Has anyone -- has any -- okay.  So my understanding -- tell me if I'm wrong -- is that ICE

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025

143

officers can issue parole letters, CBP officers can issue parole letters, and USCIS officers can issue parole letters.

Do you know if that's correct?

A    Yeah, I believe that's correct. Immigration officers, yeah.

Q    Okay.  And do you know in this matter if any of those officers have issued a parole letter for Mr. Abrego Garcia?

A    By the way, I just say I believe that's correct because I know that at the components, the component heads, they make their own decisions, right, about who actually has the authority to do something or not.  And they might reserve things, you know, to specific individuals.

So you said, like, basically all officers, and I don't want to make any sort of commitment.

But insofar as have any of them done anything to parole a terrorist of the United States, specifically the terrorist that is Kilmar Abrego Garcia?  No.  As far as I'm aware, no.  I mean, they

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    144

might have, but I mean, I don't read all their

emails.

Q    You keep referring to Mr. Abrego Garcia

as a terrorist.  Do you have any new information

from 2025, any information from 2025, that supports

his designation as a terrorist?

MR. GUYNN:  Objection to the extent it

calls for attorney-client communications.

You can answer to the extent you don't

reveal those privileged materials.

A    Two courts have found, two courts have

found that he's a terrorist.  So do -- I mean, the

question is, do you believe in the court systems or

not?

Q    Mr. Mazzara, I do believe -- and I know

you're a lawyer, you had training.  I do believe,

respectfully, that you're being argumentative.  And

answering my questions with questions and in not

being responsive, I do believe that that's

argumentative.

I'm trying to -- just like you, I'm

trying to get through today.  You're doing your job,

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    145

I'm doing my job.  I'm trying to ask you questions.    11:36:37
I'm asking you to answer my questions.    11:36:40

My question didn't have anything to do    11:36:42
with a bunch of orders from 2019.  My question was    11:36:44
very specific.    11:36:47

Do you have any information from 2025,    11:36:48
from 2025, that supports Mr. Abrego Garcia's    11:36:55
designation as a terrorist?    11:36:59

MR. GUYNN:  And just same objection on    11:37:01
the basis of attorney-client privilege.    11:37:02

You may answer to the extent you don't    11:37:04
reveal privileged communications.    11:37:08

A    Okay.  Yeah.  So if we're not including    11:37:10
the two findings by the judges, okay, and the Prince    11:37:12
Georges County's police report, let's see,    11:37:18
absolutely.  Yeah.  I think the President put out a    11:37:21
picture the other day with his tattoos on his    11:37:23
knuckles.  It had MS-13 tattoos.  So that's new    11:37:26
information that's on top of everything else.    11:37:31

But all this information, though, that I    11:37:32
have about Abrego Garcia, I received in 2025.    11:37:34

Q    Right.  So then --    11:37:35

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                          146

A      I just want to make sure I'm answering the question completely.  I'm not being argumentative.  This is a -- this is a hard case. And I mean, when we're talking about serious things and a very bad person.

So I apologize if you thought that I was argumentative, but...

Q      Okay.  So prior to April 14th, do you know if anybody at any point prior to April 14th took any action to parole Mr. Abrego Garcia from custody -- to issue any parole letters to Mr. Abrego Garcia?

A      Okay.  Pre- --

Q      April 14th.

A      -- April 14th, but post-removal.

Q      Yes.

A      Okay.  Yeah, my understanding, and, you know, I could be corrected if I'm wrong, but is that the policy of this administration changed from the last one, which paroled something like I think over 200 terrorists into the United States, is to not parole terrorists into the United States of America.

11:37:37
11:37:39
11:37:41
11:37:43
11:37:47
11:37:50
11:37:52
11:37:54
11:37:58
11:38:02
11:38:09
11:38:16
11:38:16
11:38:16
11:38:22
11:38:26
11:38:26
11:38:33
11:38:36
11:38:39
11:38:42
11:38:45

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025                                  147

And if I were asked to do that, I'd probably --  if somebody was like, hey, parole this person, I'd quit.  I've been fighting against terrorists since 2008.  So I'm like, these guys are bad people.

Q     So is the answer to your question that -- to your knowledge, prior to April 14th, no one has taken any steps to parole Mr. Abrego Garcia?

A     Has taken no steps -- oh, to parole him? Not that I'm aware of.  I mean, there might be a -- I mean, I don't know because he already has a final order of removal.  So if he showed up, again, like I said in my declaration, we'd probably just reopen his withholding, try to get that cancelled, or just process him for removal.

So I don't know if there's any sort of revisiting of parole.  But, again, he doesn't really have a right to parole.  He's a member of a foreign terrorist organization.  Again, can you --

Q     What domestic obstacles have you removed with respect to Mr. Abrego Garcia?

A     What domestic obstacles?  Hold on.  Are

11:38:47
11:38:49
11:38:51
11:38:55
11:38:59
11:38:59
11:39:03
11:39:05
11:39:10
11:39:16
11:39:19
11:39:21
11:39:23
11:39:26
11:39:29
11:39:31
11:39:32
11:39:35
11:39:37
11:39:40
11:39:45
11:39:47

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                      148

you referring to my declaration of --                          11:39:50

Q    I'm not referring you to an exhibit.  I'm     11:39:53

just asking you, as you sit here, what domestic                11:39:55

obstacles has DHS removed with respect to Mr. Abrego           11:39:57

Garcia?                                                        11:40:03

A    So in my declaration, I say we have                      11:40:03

established processes.  So we have these                       11:40:06

long-standing processes in the law, okay, and                 11:40:08

statute and regulation, okay, that allows us to take          11:40:10

an individual that comes in at a port of entry and            11:40:15

then detain him in the United States.  We could --            11:40:18

okay, because we could -- because the law allows us           11:40:20

to do that, okay.  And we're committing that if he            11:40:23

comes here, we'll detain him.                                 11:40:25

So we could just turn him back, turn him           11:40:27

away, immediately just send him back to El Salvador           11:40:31

and prevent his entry.  Prevent not only his entry,           11:40:34

because we're going to prevent his entry, but we'll           11:40:37

also prevent his presence in the United States.               11:40:40

Q    Okay.  So --                                            11:40:40

A    We could do that.  But we're going to --       11:40:42

we're going to make him -- we'll happily have him            11:40:46

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

149

present while we figure out whether to send him to a
third country or, you know, back to El Salvador,
like I described in -- I don't think it's Exhibit 7,
but I think -- yeah, one of my declarations.

Q    I just want to understand your testimony.

Is your testimony that DHS has removed
any domestic barriers to his reentry?

A    We have established processes for taking
steps.  What's in my declaration is what we've done.

Q    So what processes have you established to
take the steps?

A    The processes are established processes.
They've been around.  Congress put them in.  And DHS
has their regulations.

Q    So when you say DHS has established
processes, you mean those are well-established
processes --

A    Yeah.

Q    Okay.

-- to take steps -- your declaration
says, to take steps to remove the domestic
obstacles.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

150

So I'm asking you, what steps -- it sounds like you're saying pursuant to the established processes.  What steps have you taken to remove any domestic obstacles with respect to Mr. Abrego Garcia?

A     That I've taken?

Q     That Department of Homeland Security has taken.

A     Okay.  I see what you're saying.

We continue to pay our employees.  If he appears at a port of entry, okay, what we'll do is we'll exercise our discretion at that port of entry to potentially remove -- to remove domestic obstacles that would otherwise prevent him from becoming lawfully -- not lawfully present, but from entering the United States and being present in the United States.

We would detain him, but we would remove any sort of, like, discretionary obstacles, we have processes for this, that would prevent us from -- that we'd just say, send him back to El Salvador.

Q     Okay.  So are you saying you have removed

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025                          151

those obstacles or you would remove those obstacles?                 11:42:50

          A     Well, we take these steps every day by          11:42:54

just maintaining the system.  I'm not sure -- like,                  11:42:58

I'm trying to work with you here.  I'm trying to                     11:43:01

understand the question.                                             11:43:03

          Q     So if Mr. Abrego Garcia was presented at        11:43:04

the border, are you saying there are -- you have                     11:43:10

removed -- DHS has removed any domestic barriers for                 11:43:12

his reentry into the United States?                                  11:43:16

          A     Yeah, because we have these laws and we         11:43:20

have these regulations that allow us to bring him                    11:43:22

in.                                                                  11:43:25

          Q     I understand that there's laws and             11:43:25

regulations that would allow.  But are they                          11:43:26

currently -- have you, DHS -- has DHS taken any and                  11:43:29

all steps to remove the domestic barriers to him                     11:43:35

coming back to the country?                                          11:43:40

          A     We do it every day by maintaining the          11:43:41

system that we have.                                                 11:43:43

          Q     Okay.  Anything else that you've done --       11:43:44

that DHS has done?                                                   11:43:46

          A     That I or DHS has done?  Let me think.         11:43:47

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025                                    152

            Not that I can think of off the top of my

head.

      Q    Okay.  Are you aware of -- or do you have

any information about what other agencies have done

to --

            MR. GUYNN:  Finish your question.

      Q    -- to remove any barriers to Mr. Abrego

Garcia's return?

            MR. GUYNN:  Just -- I would just caution

the witness -- I object on the basis of

attorney-client and state secret information.

            But you may answer to the extent you do

not reveal that information.

      A    Okay.  Can you ask the question one more

time real quickly?  Conversations with whom?  Or

what was -- or was it a question about processes or

something?

            MR. GUYNN:  Would you re-read the

question for him?

      Q    Yeah, I asked if you're aware or have any

other information about what other agencies have

done.

Case 8:25-cv-00980-PX    Document 129-9    Filed 05/27/25    Page 155 of 292
FILED UNDER SEAL
CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

153

A    Okay, got it.  Yeah, yeah.  So other agencies like the Department of State?

I know from, like, their declarations from the last two days that they -- I guess they -- maybe it was yesterday's declaration, where they said that they asked El Salvador or they asked their ambassador -- I can't remember the exact detail what's in the declaration without it being in front of me.  But they took some sort of step to ascertain the location of Mr. Abrego Garcia.

And if I have come across any other information about any steps taken by any of the other departments, I -- honestly, I don't remember.

This is, like -- this is an important case.  It's definitely a priority now.  But I've got, like, a half of dozen, dozen important cases and then a bunch of other things that I've got to work on.  So it's very hard.  Again, I'm not a Mensa-level genius over here, just a dumb Marine. It's very hard to remember particular conversations.

But I do know it was in the public declaration from the State, or I have some vague

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                            154

recollection from reading it a couple times

yesterday.

        Q    So to your knowledge, the full extent of

what the State Department has done is in the

declarations from the last couple of days?

            MR. GUYNN:  Objection, foundation.  And

previous objections on attorney-client and state

secret information.

            You can answer the question without

disclosing that information.

        A    I'm assuming -- I know how the government

works, so I know the government does things.  So I

can't say that, to my knowledge, that's the only

thing they've done.  To my knowledge, they've done

other -- probably other government things.  What

those government things are, I have no idea if they

have done anything.

        Q    So you haven't taken steps to obtain

specific knowledge with respect to Abrego Garcia and

what other agencies have done with respect to him?

        A    I haven't taken specific steps.  You

know, I mean, again, I'm going to -- we had this

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                   155

kind of go-around about conversations earlier.  We

have had conversations about Abrego Garcia, okay,

the subject in this case, and the other things that

are involved in this case with DOJ and Department of

State.  So...

         But no, I don't -- I mean, outside -- I

didn't call Brendan McCommas up and say, hey, buddy,

like, what are you doing, what's going on with

Abrego Garcia, what have you guys done.

     Q     Has anyone at the Department of Homeland

Security coordinated with anyone else at an

international level with respect to Mr. Abrego

Garcia?

         MR. GUYNN:  Objection to the extent it

calls for state secret information.

         Otherwise, you can answer the question.

     A     Okay.  So has anybody coordinated with

anybody at the international level with respect to

the what of Abrego Garcia?  Did you say return,

or just anything to do with him?

     Q     Just with respect to him.

     A     Oh, with respect to him.

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                        156

I don't know.  I mean, the Secretary made that very public trip.  I don't know what her conversations, if any, she had with anybody there with Mr. Abrego Garcia, no knowledge of that.  But you can watch the news, watch the videos from the trip, I guess.

No.  I mean, I don't have any knowledge. I mean, if I was on an email or something was discussed, I don't have any recollection of that. So honestly.

Q    Okay.

A    I've been honest this entire time, but...

Q    I'm going to ask the question a couple more times just to be specific.

To your knowledge, has the Department of Homeland Security coordinated with anyone at the international level with respect to Mr. Abrego Garcia's release from custody in El Salvador?

MR. GUYNN:  Same objections.

A    Okay.  So you added that new caveat. That's a new little addition.

Q    I'm being specific.  I'm trying to ask

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

you specific questions.

A    Oh, okay.

Not that I'm aware of other than, you know, I can't remember who all was in the room for this conversation with the President of the United States.  But -- so --

Q    Okay.  I'm not talking about being in the room.  My question is whether you have information about anyone at DHS coordinating at the international level with respect to Mr. Abrego Garcia's release from custody in El Salvador.

A    So my personal knowledge goes to what the judge asked for, which was how do we -- how will we facilitate his presence here in the United States.  So...

Q    Okay.  So is your answer -- and I just want to make sure because your attorney raised a couple of privileges.

Do you have information in your head responsive to my question that you're not revealing on the basis of a privilege assertion?

A    No.  No.

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

158

Q    Okay.  And --

A    And, again, I get cc'd on a lot of emails, though, so I'll caveat that by simply saying, if it's in an email, I probably don't remember it.

Q    Okay.

A    But I -- yeah, I don't have it --  I can't -- yeah, don't have any...

Q    Okay.  Maybe the same answer, but for the purpose of completeness, has anyone at the Department of Homeland Security coordinated with anyone at the international level with respect to Mr. Abrego Garcia's return to the United States?

        MR. GUYNN:  And just object on the basis of state secret information.

        Otherwise, you can answer the question.

A    Okay.  So the first one was in general, then it was release, now it's return.  Do I have that correct?

Q    You do.

A    Okay.  What do [you mean -- so by international level, you mean with, like, foreign

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    159

entities?  Is what you meant in each question,                    11:51:05

right?  Is that right?                                            11:51:09

    Q     International meaning outside of the          11:51:09

United States, anyone who is not within the United               11:51:11

States.                                                          11:51:16

    A     Got it.  No.  Again, not that I'm aware       11:51:17

of.  But if there's some email that I'm just -- I                11:51:38

don't remember it, or -- yeah, I didn't read it                  11:51:42

because of all the other things I've got going on.               11:51:44

    Q     And to make sure that I understand your       11:51:47

answer, are you -- is there information that you                  11:51:49

believe to be responsive to my last question that                11:51:53

you're withholding on the basis of an assertion of               11:51:55

privilege?                                                       11:52:00

    A     Not that I remember.                          11:52:01

    Q     Okay.                                         11:52:01

    A     Not that I can remember, no.                  11:52:03

    Q     If Mr. Abrego Garcia walked up to a port      11:52:04

of entry in ten minutes --                                       11:52:08

    A     Sure.                                         11:52:12

    Q     -- what would happen?                         11:52:13

    A     So I can't speak for what ICE would do.       11:52:16

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

I mean, first of all, well, he would be inspected, like, his papers and things like that, and his health.

And presumably, if they're able to identify him as, you know, the foreign terrorist that he is, right, and who he is, it is likely that he would be taken -- he would be detained, okay, by ICE -- or by CBP, sorry, by CBP, maybe -- yeah, CBP, and then he would be processed for removal to another third country, that's not El Salvador; or, alternatively, he might be -- we might reopen his withholding of removal decision and seek to basically vacate that on the basis he's a member of a foreign terrorist organization.

That's probably -- that's what is likely to happen.  So...

Q     And are you going to detain him and give him due process once you've detained him?

A     Yeah, of course.  I mean, that's all due process.  Everything I just described is a process.  And due process.  It's been upheld repeatedly by courts.

Q    So you would go through the process that exists to make a determination about what can or cannot be done with him?

A    Well, I mean, he's a foreign -- he's a member of a foreign terrorist organization.  We have established processes.  And he already has a final order of removal.  So it's basically just detaining him until we figure out where we're going to send him.

You know, what forms are you --

MR. GUYNN:  You just answer her questions.

Q    To your knowledge, has anybody taken steps to ask the El Salvadorian government to release Mr. Abrego Garcia?

MR. GUYNN:  Object just on the basis of the state secret privilege and also attorney-client privilege.

But you can answer to the extent that you don't -- you can answer that without disclosing those privileges -- privileged materials.

A    Okay.  I'm sorry to do this, but can you

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                162

can ask it one more time.

Q    To your knowledge, has any person taken any steps to ask the El Salvadorian government to release Mr. Abrego Garcia from custody?

A    Anybody from the U.S. government?

Q    Yes.

A    Okay.  No, not that I'm aware of.  That, I have no personal knowledge of.

Now, like I said, we already -- I already talked about facilitation in my declarations and steps that have been taken, but...

Q    And do I -- and hopefully this can be short and sweet.

Do I understand your answer correctly, that you fully answered the question; you didn't withhold information on the basis of any privilege?

A    Right.  And with the same caveat that I get a ton of emails, and I forget a lot of things.

Q    To the best of your knowledge and recollection?

A    To the best of my knowledge and recollection.

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                             163

Q     To the best of your knowledge and recollection, has anybody with the United States government taken any steps to ask for the -- taken any steps to facilitate Mr. Abrego Garcia's return to the U.S.?

          MR. GUYNN:  Same objection on the basis of attorney-client privilege and state secrets privilege.

          To the extent you can answer without revealing that, you may answer the question.

     A     Yeah, I'm just going to, again, direct you to paragraph 7 of exhibit Mazzara ---Mazzara Exhibit 7.

     Q     Okay.  And is that -- in Mazzara Exhibit 7, is that the full extent of your knowledge or recollection as to anybody in the United States government taking any steps to facilitate Mr. Abrego Garcia's return?

     A     Those are some pretty significant steps. Yeah.

     Q     But that's the full extent?

     A     Yeah.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                          164

Q    Okay.                                              11:56:41

A    And they are steps.                                11:56:42

Q    And, again, and at this point, my                 11:56:43
understanding is that you comprehensively answered      11:56:46
that question.  You didn't withhold information on      11:56:48
the basis of a privilege?                               11:56:51

A    Yeah.  And that's assuming I haven't               11:56:52
forgotten something or received something but then      11:56:54
not reviewed it.                                        11:56:57

Q    Okay.                                              11:56:58

A    Which is always possible, given, you              11:57:00
know --                                                 11:57:03

Q    Different --                                       11:57:03

     (Cross-talk.)                                      11:57:05

A    -- email --                                        11:57:06

Q    -- but similar questions, to the best of          11:57:06
your knowledge and recollection, are you aware of       11:57:10
any person with the United States government            11:57:13
planning to take any steps to ask the El Salvadorian    11:57:16
authorities to release Mr. Abrego Garcia from           11:57:22
custody?                                                11:57:25

          MR. GUYNN:  Objection to the extent it        11:57:25

Case 8:25-cv-00980-PX    Document 129-9    Filed 05/27/25    Page 167 of 292

FILED UNDER SEAL

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

165

calls for state secret, attorney-client, and deliberative process privileged material.

You can answer to the extent you don't provide privileged material.

A    Okay.  Real quick.  When we say the United States government, we're talking about the executive branch, right?

Q    I'm asking, are you aware --

A    Not like a senator or something?

Q    Correct.

A    Oh, okay, yeah.  Yeah, that's why I'm asking.

Q    Fair.

A    Do I know of anybody that's planning on doing that?  Nope.

Q    And it doesn't sound like to me that you're withholding anything on the basis of privilege; that's just the answer?

A    Yeah, with the same caveat from before. Yeah.

Q    Yeah.  And finally, any -- with respect to this series of questions finally, to the best of

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

your knowledge and recollection, has anyone with the -- is anyone with the United States government planning to take any steps to facilitate Mr. Abrego Garcia's return to the United States?

        MR. GUYNN:  Objection on the same bases, state secrets privilege, attorney-client privilege, deliberative process privilege.

        You may answer to the extent you don't reveal any privileged information.

    A    Yeah.  So, again, if you look at paragraph 7 of Mazzara Exhibit 7, okay, those are some pretty significant steps.  And that would 100 percent facilitate his immediate return, okay, were he to appear at a port of entry ten minutes from now, one minute from now, five hours from now, 50 years from now, those are steps to facilitate his immediate return to the United States.

    Q    And just so I understand your answer, those steps that you're pointing to in Exhibit 7 --

    A    Mazzara Exhibit 7, yeah.

    Q    -- Mazzara Exhibit 7, are the full extent of your knowledge or recollection of anyone with the

United States government planning to take steps?

A    I mean, those are pretty significant steps.  And yeah.  I mean, as soon as he comes to the port of entry, they'll grab him, and then they'll pull him along over the line, or whatever, and then he's in immediately.  And then we detain him until we send him out.

Q    And my question was, regardless of the characterization of whether they're significant or not, is that the extent?

MR. GUYNN:  And same objections as before.

You may answer to the extent you don't reveal attorney-client, deliberative process, or state secret information.

A    Yeah.  That's the extent, yeah.

Q    And finally --

A    And that also involves, by the way, future steps, because --

MR. GUYNN:  Mr. Mazzara, just answer her questions.

A    Sorry, maintaining the system, then

executing.  Sorry.

Q    My question was to future steps.  You understood that, right?

A    Mm-hmm.

Q    Okay.  And it sounded to me from your answer that you were not withholding any information on the basis of any assertion of privilege.

A    That's correct, with again the caveat that I made before, because just copious amounts of information come across my eyes every day.

MS. SCHMITT:  This is what happens when you get down to a number of questions.

How would you feel about a ten-minute break?  Does that work for you?

THE WITNESS:  I was going to ask, if you were going to take a minute, if I can use the bathroom.

MS. SCHMITT:  Of course.

VIDEOGRAPHER:  The time is 12:01.  We are going off the video record.

(Recess from 12:01 p.m. until 12:18 p.m.)

VIDEOGRAPHER:  The time is 12:18, and we

are back on the record.

BY MS. SCHMITT:

Q    All right, Mr. Mazzara.  We're back from our break.

The next topic that I want to ask you about is, am I correct that, to your knowledge, there was no warrant for Mr. Abrego Garcia in El Salvador on March 15th when he was transferred there?

A    Okay.  Again, I'm not trying to be argumentative.  What do you mean by "warrant"?

Q    So to your knowledge, the El Salvadorian government didn't have a parent for his arrest or their equivalent when he was transported there.

Is that right?

A    I don't know enough about Salvadoran law to know one way or another or the facts on that at all.

Q    So to your knowledge, there was not one. No one has told you that there was one?

A    Well, to my knowledge -- yeah, I don't know whether there was or was not one.

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

170

Q    Okay.  Are you aware of any charge

pending in El Salvador with respect to Mr. Abrego

Garcia?

MR. GUYNN:  Objection, foundation.

Q    Are you aware of any -- of whether

there's any charge pending in El Salvador with

respect to Mr. Abrego Garcia?

A    Of any charge?  Do you mean -- you mean

like a prosecution?

Q    Correct.  Any criminal charge.

A    Not -- not that I'm aware of personally,

no.

Q    Okay.  And are you aware --

A    But, again, I don't know their processes.

I don't know, -- I mean, Bukele cleaned up his

country.  How he did that --

Q    I'm only asking about what you're aware.

A    -- I'm not entirely clear of that.

Q    And are you aware of any pending charge,

criminal charge, against Mr. Abrego Garcia in the

United States?

A    Oh, in the United States?  No, I'm not

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

171

aware of any.  But...

Q    Mr. Abrego Garcia was transferred to El Salvador on a plane with other individuals, right?

MR. GUYNN:  Objection just to the extent this calls for state secret information.

Otherwise, you may answer the question.

A    Give me one second.  Here we go.

MR. GUYNN:  Can you say what you're looking at for the record, please.

A    So I, Mazzara, the Acting General Counsel -- I was looking at Exhibit Mazzara-4, paragraph 6.  So this is the Cerna -- I hope we're pronouncing his name correctly -- declaration. Yeah, page 2, paragraph 6.

And it says, On March 15th, 2025, two planes carrying aliens being removed under the Alien Enemies Act ("AEA") and one carrying aliens with Title 8 removal orders departed the United States for El Salvador.  Abrego Garcia, a native and citizen of El Salvador, was on the third flight and thus had his removal order to El Salvador executed.

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

172

Okay.  So he was there with other aliens.

Q    Okay.  And is Mr. Cerna's declaration where you first obtained that information, or did you learn that information independent of the declaration?

MR. GUYNN:  Just I would -- I object on the basis of attorney-client privilege.

You can answer that question to the extent you don't reveal attorney-client privileged communications.

A    It is likely that I received that information, you know, prior to the filing of his declaration.

Q    And public statements have said that that was pursuant to an agreement between the United States and El Salvador.

Are you aware of the public statements?

A    Public statements by whom?

Q    So are you aware of any public statements that have been made that say that the -- that the transport of Mr. Abrego Garcia and other individuals from the United States to El Salvador was pursuant

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                          173

to an agreement between the two countries?          12:23:25

A    Yes, I'm aware there has been reporting         12:23:27

on this, yeah.                                       12:23:29

Q    Okay.  And what do you know about that          12:23:30

agreement?                                           12:23:32

MR. GUYNN:  Objection to the extent it               12:23:32

calls for state secret information.                  12:23:34

If you can answer the question without               12:23:36

revealing that, you may do so.                       12:23:38

A    Yeah, I can't answer that question.             12:23:51

Q    Because of the state secret privilege?          12:23:53

A    Mm-hmm.                                          12:23:55

Q    Is there any other reason that you can't        12:23:56

answer the question other than the state secret      12:23:58

privilege?                                           12:24:00

A    I'm sure there are other privileges.            12:24:00

MR. GUYNN:  I also object on the basis of            12:24:04

attorney-client privilege and deliberative process   12:24:07

privilege.                                           12:24:09

Q    Okay.  So let's see if -- I'm going to          12:24:10

ask you some specifics about the agreement.  If it's 12:24:14

the same, we'll get into the privilege.  But let's   12:24:17

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                          174

see if we can --

A    Sounds good.

Q    Okay.  Do you know anything about an agreement between the United States and El Salvador with respect to El Salvador receiving individuals deported from the United States to El Salvador?

MR. GUYNN:  Objection on the same basis, state secret, attorney-client, and deliberative process privileges.

You can answer to the extent you don't disclose privileged information.

A    Are we specifically talking about the aliens we discussed from this declaration?

Q    Yes.

A    Okay.  Do I have some knowledge?  Yes.

Q    Okay.  And what knowledge -- what do you know about the agreement between the two countries with respect to those individuals?  And you referenced Mazzara -- you --

A    I'm sorry, I'm sorry.  I was referencing -- in my answer to your prior question, I was referencing Mazzara Exhibit 4.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    175

Q    Okay.  And so you qualified your

answer -- or you specified your answer was with

respect to the individuals transported on the third

plane that are discussed in Exhibit Mazzara-4.

A    Everything that's referenced here in

paragraph 6, yeah.

Q    Of Exhibit 4?

A    Of Mazzara -- yeah, Mazzara Exhibit 4,

yep.

Q    Okay.  And so you said that you do -- you

do have information about that agreement?

A    Yes.

Q    Okay.  And what can you tell me about

that agreement?  What can you tell me about that

agreement?

MR. GUYNN:  Objection to the extent it

calls for state secret, attorney-client,

deliberative process, and presidential communication

privileges.

To the extent you can answer the question

without disclosing those privileges, you can answer.

A    Nothing.

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025

176

Q    Okay.  And is that because of -- your counsel made three objections.  To your understanding, is that pursuant to the state secrets privilege or a different privilege?

A    All of them.

Q    All of them?

A    There's probably some overlap from all of them.

Q    So as you sit here, you believe all of the privileges blanket cover what you know about the agreement between El Salvador and the United States?

A    Mm-hmm.

(Reporter interruption.)

THE WITNESS:  Sorry, Lisa.

A    Yes.

Q    So you know there's an agreement, but you cannot tell me anything about it?

MR. GUYNN:  Object on the same bases.

A    Yes.

Q    I just want to make sure I understand your question [sic].  You answered that yes, there is an agreement that you know about, and you can't

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

177

answer questions about it because of one or more
privileges?

A    My understanding from public records is
that there is an agreement and any conversations
about what I learned through that route or any
other -- any discussions about that, yes, are
covered by the three -- all the privileges that were
referenced by my attorney.

Q    Okay.  There have been public reportings
of a memorandum by the government of El Salvador --
sorry, I'll --

A    Sorry about that.

Q    I'll rephrase that.

A    Do you mind starting over?

Q    There have been public records that
reference a memorandum that was written by someone
in the El Salvadorian government about the agreement
between the United States and El Salvador with
respect to detainees from the United States.

Have you seen those reports?

A    No, I've not seen those reports, no.

Q    Have you seen a memo about the agreement

12:27:30
12:27:33
12:27:33
12:27:37
12:27:39
12:27:43
12:27:46
12:27:50
12:27:51
12:27:55
12:28:03
12:28:04
12:28:05
12:28:09
12:28:10
12:28:18
12:28:25
12:28:28
12:28:33
12:28:37
12:28:39
12:28:41

Case 8:25-cv-00951-PX   Document 129-9   Filed 05/27/25   Page 180 of 292

FILED UNDER SEAL

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

178

that the El Salvadorian government has written?          12:28:45

A     No, not that I'm aware of.                         12:28:48

Q     Is the agreement that you are aware of,            12:29:00
is Mr. Abrego Garcia being detained in El Salvador       12:29:02
pursuant to that agreement?                              12:29:04

MR. GUYNN:  Objection on the basis of                    12:29:06
state secret, attorney-client, deliberative process,     12:29:08
and presidential communications privileges.              12:29:11

To the extent you can answer without                     12:29:13
disclosing any privileged material, you may do so.       12:29:15

A     I actually -- I have no idea actually.             12:29:18

Q     You don't know?                                    12:29:22

A     I don't know whether that agreement is --          12:29:22
specifically covers Abrego Garcia, Mr. Kilmar            12:29:24
Armando Abrego Garcia.                                    12:29:31

Q     Are you aware of more than one agreement           12:29:33
between the El Salvador and the United States with       12:29:38
respect to U.S. -- with respect to El Salvador           12:29:45
detaining individuals from the United States?            12:29:49

MR. GUYNN:  Same objections, to the                      12:29:51
extent the question calls for the content of state       12:29:54
secrets communications, attorney-client                  12:29:57

communications, deliberative process communications or presidential communications.

To the extent it does not or your answer wouldn't reveal the content of those communications, you may answer the question.

A    Not to my recollection, no.

Q    You don't recall any other agreement other than the one that you've testified about?

A    Right, that I've read about in the news.

Q    Okay.  My understanding, from your answers, is that you read about an agreement in the news but you also have knowledge that that agreement -- knowledge from another source that that agreement exists.

A    Knowledge -- so there were -- obviously when I see something in the news, okay, right -- it's just like reading a court filing, inquiring into that, and trying to figure out, like, what's going on.  Right?  And so there are oftentimes conversations about court cases or oftentimes conversations about the news.

And so -- but anything -- any -- all

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

those -- any conversations dealing with any of this stuff that deals with anything that regard these flights on March 15th are all covered by the state secrets and the deliberative process and attorney-client privilege and every other privilege you can think of.

Q   I just want to make sure that I understand your answer.

I'm not asking you to reveal anything that may be privileged.  We'll duke out the privilege later.

I'm just asking you, my understanding -- I believe my understanding was correct.  My understanding of your testimony was that while you saw a report about an agreement in the news --

A   Okay.

Q   -- you know there actually is an agreement with respect to -- an agreement between El Salvador and the United States with respect to the individuals referenced in Mazzara-4.

A   Oh, I see what you're asking.  I have not seen an agreement.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

181

Q    That's not my question.  I understand that you haven't -- I think you already had said you hadn't seen one.

But you have -- you do know, as you sit here, from a source other than the news that there is an agreement?

A    I think so.  I think so.

Q    I'm going to ask you some questions --

A    Yeah.

Q    -- about the agreement, and if you can answer any of my questions without revealing --

A    State secrets --

Q    -- information protected by the privileges identified by your counsel, I'd like you to do that.

I understand -- so I'm going to just tick through a series of questions.  I believe that there are some that you can answer, but you will only answer if, pursuant to your counsel's instruction, you can do so without revealing substance covered by the privileges he identified.

MS. SCHMITT:  Is that -- Counsel, are you

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

182

comfortable with that?

            MR. GUYNN:  Possibly.  I do appreciate
this effort to make this more efficient, and I would
love to cooperate as much as I can.  And so I'll try
to avoid lodging objections if they're not needed.

            But if -- so we'll see how it goes.  I'll
try not to assert the privilege if we don't need to.

            MS. SCHMITT:  Okay.  Perfect.  Let's give
it a whirl.

     A     Oorah.  I spell it O-O-R-A-H.

     Q     Who in the government has seen the
agreement, to your knowledge?

     A     I have no idea.  Maybe Brendan McCommas.
I have no idea.

     Q     Okay.  Who in the government made the
agreement?

     A     No idea.  Some -- I have no idea.
Somebody -- yeah, I don't know.

     Q     Who -- if you wanted to know more about
the agreement, who would you ask?  Who do you
believe has information about the agreement?

     A     I'd probably ask Brendan, yeah.

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

183

Q    Remind me, who is Brendan?

A    He's -- he's in, like, the legal office at State, but he was in the prior Trump admin.  I know him through his brother who I worked with in the Trump campaign in 2020, Stuart.

But yeah, he's a political appointee over there, and a lawyer.

Q    Anyone -- is there anyone at the Department of Homeland Security you believe you could ask about for information about the agreement?

A    No.  I don't think there's -- yeah.  This is -- yeah.  This is -- again, diplomacy is -- I mean, other people I think in the executive branch do go out on diplomatic missions that aren't part of State.  But like this is, like, State's remit.  This is what they do.  So...

Q    Is your testimony that this is what the State Department does, is negotiate agreements with other countries for the detention of --

A    Terrorists, yes.

Q    -- people detained in the United States for immigration reasons?

Case 8:25-cv-00980-PX    Document 129-9    Filed 05/27/25    Page 186 of 292

FILED UNDER SEAL

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

184

A    Yeah, the State Department does that. The President does it, I'm sure.  I mean...

Q    Doesn't the Department of Homeland Security also do it?

A    We definitely have some play, and we sometimes help out, I think, with these sorts of negotiations to finalize details and stuff like that.

Q    But not this one?  Not this --

A    I don't know about this one.  I certainly -- I have no knowledge of anybody participating in this agreement from Homeland Security.  I have no knowledge of that.

Q    Do you know what El Salvador agreed --

A    I'm confident that we do participate sometimes with State, yeah.

Q    Do you know what El Salvador agreed to do under the terms of the agreement?

MR. GUYNN:  Object on the basis of state secret, attorney-client privilege, deliberative process privilege, and presidential communications.

To the extent you can answer the

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025

185

question -- the question doesn't call for that

information or you can answer it without revealing

it, you may answer the question.

A    I don't know anything more than what's

been publicly reported on.  So as to what

El Salvador agreed to or --

MR. GUYNN:  Just answer her questions.

THE WITNESS:  Oh, sorry.

Q    Do you have any information about what

the United States -- what rights the United States

has under the agreement?

MR. GUYNN:  Same objections as before.

A    Yeah, no idea.

Q    My understanding from reports is that the

agreement is for one year subject to the U.S.'s

determination about what should ultimately happen

with those people detained.

A    Yeah.

Is that your understanding?

MR. GUYNN:  Objection on the basis of the

same privileges that I've asserted; deliberative

process, attorney-client, state secret, and

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                              186

presidential communications.                              12:37:15

          To the extent you can answer without           12:37:17

revealing that information, you can do so.                12:37:18

     A    I'm not sure I would agree with the            12:37:20

characterization, absent like looking at some public     12:37:21

report or something about that particular detail.        12:37:24

     Q    Okay.  So --                                   12:37:28

     A    I have some vague recollection that            12:37:32

something like that was reported on, but I don't         12:37:33

know exactly what was reported.                          12:37:35

     Q    Okay.  And you don't have knowledge --         12:37:37

outside of the vague recollection over the reports,      12:37:39

you don't have knowledge from internal                   12:37:42

communications or anything else that it's a one-year     12:37:45

term?                                                    12:37:49

     A    With regard to the one-year term thing,        12:37:49

no, I don't think so, with the caveats that I had        12:37:52

made earlier about, like, I get a lot of emails and      12:37:54

I have, like --                                          12:37:56

     Q    Understood?                                    12:37:56

     A    -- I have, like, multiple cases, I have,       12:37:57

yeah, regulations I'm worried about --                   12:38:00

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                187

Q    Yep.

A    -- legal counsel stuff I'm worried

about --

Q    Okay.

A    -- general law stuff I'm worried about.

Q    So --

A    -- cyber law, human resources --

Q    Do you have any --

A    -- employment law.

Q    Do you have any information -- do you

have any information about what happens to the

individuals who are detained pursuant to the

agreement at the expiration of the term of the

agreement?

A    No.  Honestly, I don't.  I do know that,

if you read the Wikipedia article about CECOT, that

El Salvador has it own process for releasing people

who they determine are not members of one of these

gangs that they house there.

But beyond that, I have no knowledge of

what, like, El Salvador does, and I certainly --

yeah, I don't have any knowledge about what the --

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    188

what happens at the expiration of this -- assuming    12:38:46

it is one year, this one-year thing.                  12:38:49

        Q       And what is your understanding of what    12:38:51

the United States is paying to El Salvador in         12:38:53

exchange for El Salvador receiving these individuals  12:38:57

from the U.S.?                                        12:39:01

        MR. GUYNN:  Objection to the extent this      12:39:02

calls for state secrets, attorney-client,            12:39:03

deliberative process, and presidential               12:39:07

communications.                                       12:39:08

        You can answer the question.                  12:39:09

        A       Yeah, I have no idea what we're giving     12:39:11

them in return, other than I saw, I think, reported   12:39:17

that we gave them 6 million, but I have no, like,     12:39:20

knowledge that we actually gave them 6 million or if  12:39:22

it was only 6 million or if it was $5,999,999.  I     12:39:25

have no idea, other than what's reported.            12:39:29

        Q       Okay.  And so I'm trying to understand --  12:39:29

I know that there's news reports about this           12:39:32

agreement.  I know that you've seen them.  It sounds  12:39:36

like you've seen at least some of them.               12:39:39

        A       Yeah.                                     12:39:41

FILED UNDER SEAL

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                189

Q    I'm trying to understand what you know outside of the news reports, like, independently. It might be the same information.  Presumably it is the same information that's reported.  But I'm trying to understand if you independently know it.

A    It is possible that somebody mentioned this alleged money payment.  I have no idea.  But all -- my only memory of seeing anything like that -- I don't even know if we even gave them money -- is the news reporting.

Q    Okay.

MR. GUYNN:  Let her ask questions.

Q    To your knowledge, with respect to the agreement -- actually, just to your knowledge, could El Salvador just decide to release these individuals tomorrow for any reason?

A    Do you mean sua sponte?

Q    Yeah.

A    Well, I am confident that they have laws -- I have no idea if there's something in the agreement that prevents them from doing that.

Q    Let me -- can I correct my question?

We're trying to move this through.                    12:40:57

A     Okay.                    12:40:58

Q     Let me clarify my question.                    12:40:58

Vis-à-vis any obligations to the United                    12:41:04
States, could El Salvador just release these                    12:41:07
individuals tomorrow?                    12:41:09

MR. GUYNN:  Objection to the extent it                    12:41:12
calls for state secret, attorney-client,                    12:41:13
deliberative process, or presidential                    12:41:17
communications.                    12:41:19

To the extent it does not call for that                    12:41:19
information or you can answer without revealing it,                    12:41:21
you may answer the question.                    12:41:23

A     I don't think there's anything we can do                    12:41:24
to stop, I mean, Bukele from running his country and                    12:41:29
his government facilities.                    12:41:35

Q     Give me one second.                    12:41:57

I think -- do you know if there was a                    12:41:59
lump sum paid to El Salvador or if there are payment                    12:42:06
terms on some other basis?                    12:42:11

MR. GUYNN:  Same objections.                    12:42:13

A     All I know is the stuff from the public                    12:42:15

Case 8:25-cv-00980-PX    Document 129-9    Filed 05/27/25    Page 193 of 292
FILED UNDER SEAL
CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

191

reporting. It is possible that some mention of that was in an email, okay, or one of the Teams meetings or something.

And -- but I don't remember any of that. So all I know is from the public reporting, and all that I can remember, to the best of my recollection, is stuff from the public reporting.

And, like, this payment, I have no idea if it's a lump sum, if it's in, like -- you know, like the gold that Obama gave -- President Obama, sorry -- President Obama gave to, I think it was Iran. I have no idea if it was like that or what form this took. No idea. Or whether it's on a payment plan with interest. I don't know.

Q   Okay. And I think I understood in that answer that you believe that the agreement's terms, specifically the payment terms, may have been discussed in emails or Teams meeting, but you don't remember specifically?

A   Well, it's possible that any of these things could have been discussed in emails. But if they were, I just don't remember is what I'm saying.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    192

Q    Do you know who in the United States

government is monitoring compliance with the

agreement?

A    Judge Xinis.

Q    Judge Xinis is monitoring compliance with

the agreement between --

A    Oh, the agreement.  I thought you

meant the -- sorry, the order.  I thought you meant

the order.  Sorry.

Q    Sticking with the agreement that we've

been talking about, do you know who in the United

States government is monitoring compliance with the

terms of that agreement?

A    You know, as you can imagine from some

news reporting, they probably would never put me at

Department of State to conduct diplomacy, so that's

not really something I actually have any idea about

with regard to how they monitor compliance with

diplomatic agreements.  So I have literally no

knowledge of that.

Q    Okay.  Do you know if any money -- if

there was money paid to El Salvador, do you know if

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                     193

any of that came from the Department of Homeland

Security's budget?

        A       Oh, yeah, I have no idea.

        Q       You have no idea?

        A       Yeah.

        Q       Would you expect to know that?

        A       No.

        Q       Who at Department of Homeland Security

would know?

        A       At Department of Homeland Security would

know where that money came from?

        Q       Would know if it came from DHS, any of it

came from DHS.

        A       Well, I mean, people at Department of

State would know because they're the ones that

negotiated the agreement, and they are probably the

ones that, like, figure out, like, hey, we're going

to pay 6 million, then they've got to go figure out

where that 6 million is coming from.

                So I don't know if anybody at Department

of Homeland Security would know.  So...

                Right, because I could say -- what's the

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025

194

name -- the chief financial officer might know, but then that money might not have dome from DHS. Department of State would be able to answer that question, though.

Q    Okay.  Is the agreement specific to CECOT, or is it any detention facility in El Salvador?

A    Oh, I have no idea.

Q    And do you know if the agreement sets any sort of minimum standards or any -- has any safety requirements that go with it?

MR. GUYNN:  Sorry, did I interrupt your question?

MS. SCHMITT:  That's okay.

MR. GUYNN:  Objection to the extent this calls for state secret, deliberative process, attorney-client, or presidential communications.

You can answer.

A    I don't know if the agreement has anything in it.  That's a very normal thing, I would imagine, that we -- that -- I mean, that would be, like, a standard term.

And if there was any discussion of that, again, it's the same caveats.  If there's any discussion of that, I just don't remember.

Yeah, we don't enter -- there's no way we enter into agreements without some sort of assurances of, like, common decency.  I just can't imagine.  That would be crazy to me.

Q    And --

A    And if I saw anything about that, I just don't remember it.

Q    And my understanding is, El Salvador doesn't have to take any specific individuals who are deported from the U.S. under the agreement; in other words, they can say no.

A    Oh, you mean -- yeah, that's what's been reported on, I think.  But I have no -- I've not, like, read the agreement, so I don't actually know if there are names -- like, a list of names or anything in that agreement.

Q    I guess I'm asking a slightly different question.

To your knowledge, is El Salvador

Case 8:25-cv-00980-PX    Document 129-9    Filed 05/27/25    Page 198 of 292

FILED UNDER SEAL

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

196

obligated to take anyone that the U.S. sends, or can they say, no, we're not taking this person for whatever reason?

MR. GUYNN:  Same objections.

A     Okay, all right, I understand.

They're a sovereign state.  They can do whatever they want.

Q     I'm talking about specific to the terms of the agreement.

A     Yeah, I don't know about the terms of the agreement.

Q     Okay.  The reports indicate -- the public reports that I've seen indicate that the money was paid for El Salvador to hold the individuals for a year subject to the United States determining what should happen with them.

A     Okay.

Q     Is that your understanding of the agreement?

MR. GUYNN:  Same objections on the basis of state secret, attorney-client, presidential communications, and deliberative process

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

communications.

You can answer to the extent your answer does not implicate those privileged communications.

A    This is all kind of -- this is also kind of asked and answered.  I mean, again, I'm not confident if I read the report that I would agree with your characterization of whatever they say.  But that's approximately what I recall from public reporting.

Q    Okay.

A    Does that make sense?

Q    Yeah, it makes sense, but you don't -- again, I'm trying to figure out not whether -- it's not a test about whether you read the news.  I'm trying to figure out --

A    Oh, whether I have other sources?

Q    Yeah.

A    Not that I remember.

Q    I'm going to show you --

MS. SCHMITT:  I'm going to mark Mazzara Exhibit 8.

(Exhibit Mazzara-8 marked for

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    198

identification and attached to the transcript.)                    12:48:44

BY MS. SCHMITT:                    12:48:44

Q    Mr. Mazzara, I've handed you what's                    12:48:51
marked as Exhibit 8.  And this is -- this is the                    12:48:54
judge's order of April 15th, which I'm now recalling                    12:49:11
I think we may have marked earlier.  But let's stick                    12:49:15
with Exhibit 8 since it's in front of us.                    12:49:17

        If you could take a look at page 6 at                    12:49:21
footnote 3.                    12:49:25

A    Page 6, footnote 3.                    12:49:26

Q    Yep.                    12:49:27

A    Yes.                    12:49:29

Q    Okay.  You see at the bottom of that, the                    12:49:29
last sentence of that footnote says, Plaintiffs are                    12:49:32
entitled to explore the lawful basis, if any, for                    12:49:36
Abrego Garcia's continued detention in CECOT,                    12:49:42
including who authorized his initial placement there                    12:49:46
and who presently authorizes his continued                    12:49:48
confinement.                    12:49:51

A    Mm-hmm.                    12:49:51

Q    Do you see that?                    12:49:53

A    Mm-hmm.                    12:49:53

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                      199

Q    Okay.  Can you just tell me who authorized Mr. Abrego Garcia's initial placement in CECOT?

MR. GUYNN:  Objection to the extent this calls for attorney-client, presidential communications, state secret information, or deliberative process information.

Otherwise, you can answer the question.

A    Who authorized his initial placement there?  You're asking about that first part, right?

Q    Yes.

A    Oh, okay.  I am not sure I can answer that question.

Q    Because of a privilege or because of -- because you don't know?

A    Well, definitely because of the privilege, but also I don't know who actually, like, signed off on whatever piece of paper needed to be signed off on --

Q    Okay.

A    -- to put him aboard that airplane.

Q    Okay.  And so which privilege do you

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

200

believe is precluding you from answering the question?

A    All of them.

Q    All of those privileges?

A    Mm-hmm.

Q    Okay.  I'm just going to ask a series of questions about the privileges in a few minutes.

A    Yeah, yeah.

Q    Okay.  And how about let me finish asking about the judge's -- what she's authorized specifically, in part, us to explore.

Who authorized -- who is presently authorizing Mr. Abrego Garcia's continued confinement in El Salvador?

MR. GUYNN:  Same objections.

A    Yeah, I don't know, but presumably President Bukele.  I mean, it's one of his citizens.  It's one of his jails.  I mean...

Q    So is it your testimony that the -- no one within the United States government is authorizing his continued confinement in El Salvador?

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                          201

A        It depends on what you mean by
"authorize."  There's a lot of, like, legal content
that comes with, like, the term "authority" and
"authorization" and things like that.

Q        Does the -- to your knowledge, does the
United States have any rights or authorities --

A        Oh, I see what you're saying, okay.

Q        -- with respect to Mr. Abrego Garcia's
continued --

MR. GUYNN:  Same objections.

Q        -- confinement?

A        I have no idea.

Q        You don't know?

A        Okay, I don't know the agreement.  You
said if we have any rights.

Q        I'm not being specific to any agreement.
My question is -- hold on.

To your knowledge, does the United
States -- not specific to any specific agreement or
anything, just as we're sitting here, whether it's
under the agreement between the two countries or
otherwise, does the United States have any rights or

12:52:05
12:52:08
12:52:10
12:52:12
12:52:13
12:52:15
12:52:20
12:52:22
12:52:24
12:52:26
12:52:27
12:52:28
12:52:28
12:52:30
12:52:33
12:52:34
12:52:36
12:52:42
12:52:54
12:52:57
12:53:02
12:53:05

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    202

authorities with respect to Mr. Abrego Garcia's

continued confinement in El Salvador?

          MR. GUYNN:  Same objections.

     A    I have no idea.

     Q    And I am taking it from your response

that you don't -- you don't know, you're not saying

that you have information but you're not telling me

because of a privilege?

     A    That is -- yeah, that's correct.  I mean,

again, we're talking about a foreign -- a citizen of

a foreign country.

          MR. GUYNN:  You answered her question.

          THE WITNESS:  Yeah.

     Q    Okay.

     A    And we're keeping this as Exhibit 8 --

     Q    Yeah.

     A    -- as well?  Okay.

          MS. SCHMITT:  And Counsel, just I would

ask you to just let him continue answering if his

answer continues.

     Q    Okay, I'm going to mark -- I only have, I

think, one or two questions about the collection of

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                  203

these declarations.  I'm going to mark the rest of

your declarations in sort of as a group.

     A     Okay.

     Q     And hand them, in the effort to move this

along, and I will --

     A     By collection, do you mean how we

collected them or the collection like a collection

of works?

     Q     Like, what I'm going to do is mark the

series of declarations that you gave in the case --

     A     Understood.

     Q     -- as a collection so that I can ask you

rather than give them to you each one at a time.

     A     Yeah.  So "collection" as noun rather

than a verb, got it.  Okay.

          MS. SCHMITT:  I'm going to mark this set

as Mazzara-9, 10, 11, and 12.

          (Exhibits Mazzara-9, Mazzara-10,

Mazzara-11, and Mazzara-12 marked for identification

and attached to the transcript.)

BY MS. SCHMITT:

     Q     And I'm handing them to you in a group.

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    204

A     Thank you.                                              12:56:14

Q     Sure.  If you want to -- and there's a                 12:56:14
13.                                                          12:56:24

A     Do you want me to pass them back?                      12:56:24

Q     Nope.                                                  12:56:27

(Exhibit Mazzara-13 marked for                               12:56:27
identification and attached to the transcript.)              12:56:27

BY MS. SCHMITT:                                              12:56:31

Q     Let's put that with the collection so we               12:56:31
have them.  There you go, there's 13.  I just have a         12:56:33
couple questions about these declarations.                   12:56:39

A     Okay.                                                  12:56:43

Q     I hope the last one -- did I just give                 12:56:45
you the 19th as the last one?                                12:56:48

MR. GUYNN:  This is the 18th.                                12:56:49

MS. SCHMITT:  All right.  Let's do one                       12:56:50
more, Mazzara-14.                                            12:56:54

(Exhibit Mazzara-14 marked for                               12:56:54
identification [withdrawn].)                                 12:56:58

BY MS. SCHMITT:                                              12:56:58

Q     I'll hand you that.  There we go.                      12:56:59

A     Thank you.  I think it's the same as 13.               12:57:00

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

205

Q    Had I already given -- sorry, I think your counsel --

MR. GUYNN:  12 and 13 are the same.

MS. SCHMITT:  Okay.  Give me back 13 and let's not have a 13.

THE WITNESS:  12 and 13 are the -- no, you mean 13 and 14 are the same.

MR. GUYNN:  Are you sure?

THE WITNESS:  Yeah.  Because I have them marked.  Let me give you back these.

MS. SCHMITT:  All right.  Let's do it this way.

Counsel, do you have a copy of Mazzara-9, which should be Mr. Mazzara's April 15th declaration?

MR. GUYNN:  Yes.

MS. SCHMITT:  10 should be his 16th.

MR. GUYNN:  Yes.

MS. SCHMITT:  11 should be his 17th.  12 should be the 18th.

MR. GUYNN:  Mm-hmm.

MS. SCHMITT:  13 should be the 19th.

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025

MR. GUYNN:  Now I do.

MS. SCHMITT:  Okay.  13th is April 19.
And 14 is -- that was where we went awry.  Okay.  So
there's no 14.

THE WITNESS:  Correct.

MS. SCHMITT:  Okay, there we go.  There's
your collection, what I hope is the entire
collection of your declarations in this case.  And I
just have a couple of what I think are quick
questions.

BY MS. SCHMITT:

Q    On the dates on these declarations, you
were the declarant that was responsible for
responding to the judge's order that we looked at
earlier --

A    Yes, ma'am.

Q    -- where she ordered every 24 hours a
declaration, right?

A    Mm-hmm.

Q    Okay.  Other than what we've already
talked about, did you take any other investigation
with respect to updating the Court regarding the

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                     207

subjects identified in her order requiring the

declarations?

          MR. GUYNN:  Objection to the extent it

calls for attorney-client or presidential

communications.

     A     Did I take any other steps?  I mean, I

talked with people every day at DOJ.  Maybe the

State Department.  I don't know what emails they

were on -- well, they were on some emails, yeah.

But -- yeah.

     Q     Did you -- I know that you talked to --

you said you talked to folks every day.  Did you

talk to folks specifically each day to make sure

that you were gathering the current and correct

information before submitting the declaration?

     A     Yeah, this is -- yeah, the subject matter

of the conversations were either this order or

basically, you know, implications of, you know what

I mean, of the order at Mazzara Exhibit 5.  Yeah,

Mazzara Exhibit 5.

     Q     Right.  So what I'm just asking is -- you

told me earlier this morning with respect to your

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

208

first declaration that you read the other
declarations that had been submitted earlier --

A    Mm-hmm.

Q    -- and that you maybe had conversations
with people --

A    Mm-hmm.

Q    -- prior to preparing the declaration.

A    Yeah.  Definitely had conversations with
people before every single declaration about the
content of the declaration and all of that.  So,
like, the stuff that's in the declaration in and of
itself, each of these lines is not privileged.
That's why it's in the declaration.

Q    And prior to submitting the
declaration -- each of those declarations, did you
take any steps or are you aware of DHS taking any
other steps to facilitate Mr. Abrego Garcia's
release from custody?

A    I have described all the steps that we
have taken and then what additional steps we will
take.

Q    Okay.

A    And when.

Q    Okay.  And so no other investigation --
like, I guess what I'm getting at is, did you --
let's just run through some things.

A    Sure.

Q    Just say yes or no if you did them.

Did you call any DHS employees who may be
in El Salvador?

A    Oh, yeah, no.

Q    Did you or anyone at DHS ask anyone in
country to, for example, visit Mr. Abrego Garcia or
confirm where he is or how he's doing?

A    Not that I'm aware of.

Q    Okay.  Did you -- did you -- at any
point, did you or anyone, to your knowledge, in the
United States government, for example, try to enlist
the assistance of, for example, anyone at the
Embassy to speak with the El Salvadorian government
about Mr. Abrego Garcia?

MR. GUYNN:  Objection to the extent it
calls for attorney-client, state secret,
deliberative process, or presidential

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                210

communications.

A     That, again, primarily sounds like a State Department thing.

Q     Okay.  Did you or anyone else at the Department of Homeland Security, for example, consider or actually reach out to the U.S. Marshals with respect to facilitating Mr. Abrego Garcia's release or return to the United States?

A     I mean, this was in my declaration from -- was it Exhibit 7?  If you look at paragraph -- sorry, Mazzara Exhibit 7, paragraph 7 again, we do not have the authority to forcibly extract an alien from the domestic custody of a foreign sovereign nation.

Q     I want to ask you about that, actually. Thank you.

Why did you think it was responsive to the judge's order to discuss forcible extraction and the United States' authority to forcibly extract Mr. Abrego Garcia?

A     Why did I think it was responsive?  Well, Judge Xinis is a good judge, and her order is fairly

13:02:19
13:02:19
13:02:22
13:02:22
13:02:27
13:02:29
13:02:37
13:02:39
13:02:43
13:02:49
13:02:53
13:02:59
13:03:01
13:03:05
13:03:06
13:03:08
13:03:08
13:03:14
13:03:21
13:03:27
13:03:29
13:03:34

clear.  Out of an abundance of caution, we just wanted to make very clear that that's not something we had the authority to do.

Q    I understand that.  But why would you need to forcibly extract Mr. Abrego Garcia rather than just ask the El Salvadorian government to give him back?

A    We're not the State Department.

Q    I see.  So while the State Department could have asked, the Department of Homeland Security would have to go in and forcibly extract him?

A    I'm not sure that we would -- what do you mean, we would have to?

Q    Well, your declaration says -- in response to the judge's question about what, if any, steps the United States government, the defendants, have taken to facilitate his release and removal, you, in response, as the person on those dates giving her a response, said, we don't have the authority to forcibly extract him.

So were you telling Judge Xinis that,

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    212

Judge, you've asked us what steps we have taken or are considering taking to facilitate his release and return, and we're telling you, Judge, we don't have authority to forcibly extract him; that's the only way we could get him back?

A     So the DHS, again, absent some sort of, like, delegation from the President to the Secretary asking her to do State's job for him.

Q     That's it?

A     Given the context of and the circumstances that are currently the case, which is him in El Salvadoran custody, yeah.  We wanted to make sure out of an abundance of caution that, like, hey, if that's what she's asking us to do, we can't do that.

I mean, this is not a movie, right.  We just want to make sure that -- you know, people have crazy ideas about what the American government does or can do, and this is not a movie.

Q     So I've got a couple questions, then I'm going to take a quick break and see if I've missed anything.  Let me ask you, and we'll go back to

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    213

something we discussed a few minutes ago.

Who would know if the United States is authorizing Mr. Abrego Garcia's continued confinement in El Salvador?

A    I mean, it would have to be somebody at the State Department.  Whoever -- yeah, somebody at the State Department.

Q    Okay.  And the same question, who would know if the -- who would know more details about the agreement that you testified about in part, but you had limited -- obviously limited ability, you -- well, I won't say you had limited ability.  You had limited testimony subject to your counsel's objections.  But who would know more about that agreement, as far as you know?

A    People at the State Department, the ones I've already mentioned.

Q    Do you think the Secretary of the Department of Homeland Security has more information?

A    I can't -- I have no personal knowledge of whether she's seen the agreement or not.

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    214

MS. SCHMITT:  Okay.  Counsel, we're going to need to have a series of on-the-record -- a sort of discussion about the privileges to get additional information.

Q    But Mr. Mazzara, did you review the defendants' responses to plaintiffs' interrogatories that were submitted last night?

A    No.

Q    You didn't review them at all?

A    I did not review them.

Q    Okay.  All right.  Mr. Mazzara, are you an immediate advisor to the President of the United States?

A    Advisor to the -- oh, sorry, sorry. Immediate advisor to the President of the United States.  No.  I'm immediate advisor to the Secretary of Homeland Security.

Q    Do you work in the White House?

A    Do I -- sometimes.

Q    Are you --

A    You mean the White House campus?

Q    No.  I mean, do you work in any capacity

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

215

under the auspices of the White House?

A    Well, yeah.  Yeah, we all do.

Q    I mean the -- so I'm not trying to be --
it's not a trick question.

A    I'm not trying to be tricky either.  I'm
just saying --

Q    I don't mean physically do you take your
laptop and sometimes, like, work in the mess.  And I
don't mean -- yes, I understand that you are an
appointee in the executive branch.

You do understand that some people are
employed by the White House, by the President's
office, or the White House?  You understand that?

A    Well, I mean, technically, we're all --
we all go through the presidential personnel office.
So we're all employed by the President.  But insofar
as having a White House email address, I do not have
one of those.

Q    Besides having a White House email
address, would you say that you are a White House
employee versus a DHS employee?

A    I mean, I'm a DHS -- okay, I think I

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

216

understand what you're saying.  Insofar as my -- 13:09:17

well, I'm an inferior officer of the United States. 13:09:19

I'm not merely an employee.  But yeah, I work for 13:09:22

the White House via satisfying my duties as an 13:09:24

officer in the Department of Homeland Security. 13:09:29

Q    Okay.  So if I'm understanding your 13:09:33

question, you would say that everyone employed, all 13:09:35

the millions of federal employees, anyone employed 13:09:40

in the executive branch works for the White House? 13:09:43

A    Yeah, but it's also a little different 13:09:46

because I am an inferior officer.  I'm a 13:09:49

constitutional officer under the Constitution. 13:09:51

Q    Right.  So are you saying that regardless 13:09:53

of the agency, anyone who is an officer of an 13:09:55

executive branch agency works for the White House? 13:10:01

A    Yeah. 13:10:05

Q    But not working -- all right. 13:10:08

And is that your -- that's how you would 13:10:12

say -- have you gotten a legal opinion, or are you 13:10:21

aware of a legal opinion that says that you are a 13:10:24

White House employee? 13:10:26

A    Well, I'm not a White House employee. 13:10:28

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    217

I'm an officer of the United States of America.

Q    Okay.  So you're not a White House employee?

A    I've already said I'm not an employee in the same sense as what you might think of an employee.

Q    Okay.

A    But it's -- I'm an officer of the United States, which is very different than an employee, and it's something -- this is something unique.

I mean, is there some sort of memo or something?  Sure, going all the way back to when I got commissioned.  The first -- the first time I was commissioned as an officer of the United States as a second lieutenant in the Marines.

I mean, this is --  you are given -- you have the ability to make decisions that employees cannot make, because you are speaking with the President's authority in a way that they cannot speak or act.

Q    Is there -- to the extent -- your counsel -- limited, but your counsel, for a few

Case 8:25-cv-00980-PX    Document 129-9    Filed 05/27/25    Page 220 of 292

FILED UNDER SEAL

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

218

questions that I asked you, invoked the presidential
privilege.

A    Mm-hmm.

Q    Is there another source for -- for those
questions, is there another source for the
information, outside of a communication with the
President?

A    I would have to see the whole transcript
and then look at each of those questions in turn in
order to be able to answer that question.

MS. SCHMITT:  Okay.  Are you able to
search for "president" --

COURT REPORTER:  Yes.

THE WITNESS:  Or PCP, I think.

MS. SCHMITT:  -- within -- can you search
for "president" within two of privilege?

(A discussion was held off the record.)

MS. SCHMITT:  I'm going to put a pin in
this and see -- I'm probably going to go back to
those, but we can do that search again, I assume.

COURT REPORTER:  Yes.

BY MS. SCHMITT:

Case 8:25-cv-00980-PX    Document 129-9    Filed 05/27/25    Page 221 of 292

FILED UNDER SEAL

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

219

Q    Okay.  So let me ask you a couple of other questions.

With respect to any assertions of the state secret privilege in this case, Mr. Mazzara, who has -- do you know who has invoked that privilege?

A    Yeah, there were -- I believe there were three declarations in the Boasberg case, what was that, JGG, where you had the Attorney General of the United States, you had the Secretary of Homeland Security, the Secretary of State.  They all submitted these declarations to the Court.

Q    Okay.

A    Which by the way, that whole thing, I mean, if submitting a declaration waived privilege, that would defeat the whole purpose of the requirement to submit a declaration asserting the state secrets privilege.

Q    Okay.  So are you relying on those declarations in that case for the assertion of state secrets privilege in this case?

A    Their assertions of a state secret

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

220

privilege was over information, not --

Q    I'm not asking you about that case.  What I'm getting at is, to your knowledge, has any head of an agency invoked the state secret privilege in this case?

A    I am not familiar with the declaration saying anything about limiting the assertion of state secrets to the -- to that information with respect to only that case.  Just like if something is privileged in one case, it's privileged in another.

Q    Okay.  So I'm -- this will go quicker if --

A    Yeah.

Q    -- we do the question and answer thing.

I'm asking if you're aware of any head of an agency invoking the state secrets privilege in this case.

A    To me, that's a -- to me, that's a -- that's like saying, is the sky the number nine?  Like, they've asserted a state secret privilege over information, and that privilege is basically

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    221

asserted in every future case that has anything to

do with that information.

          So your question is confusing to me

because, again -- I'm not trying to be offensive,

but it doesn't make sense to my brain.

     Q    Is there anything in the declarations of

state secret privilege, in that matter that you're

referring to, that mentions Mr. Abrego Garcia?

     A    Oh, I mean, does it mention it?  Well, I

mean, they wouldn't mention anything that would be a

state secret.  However, we do know that, from those

declarations -- I can answer your question.  This is

an easy one.

          We can know from those publication

declarations that it covers -- let's see, where is

that, guys?  Here we go.  It was Cerna.

          Yeah, just because of the content of the

declaration and what was going on in that case, we

know that the information at the very least covers

everything that's not said in these declarations,

and certainly everything that is outside the --

within the context of but outside of paragraph 6 of

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    222

the Cerna declaration.                                          13:16:34

Q    You mentioned -- I'm really trying to                      13:16:35

just move through this.                                         13:16:38

A    Yeah, that's fair.                                         13:16:39

Q    We need to lay a foundation and the                        13:16:40

judge's --                                                      13:16:43

A    Oh, okay.                                                  13:16:43

Q    -- judge or judges are going to either                    13:16:43

decide that the privilege exists or not.                        13:16:45

You mentioned declarations filed by                             13:16:49

agency heads in another court case.                             13:16:52

A    Filed by DOJ, but yeah, yeah, signed by                    13:16:55

agency heads, yeah.                                             13:16:57

Q    Okay.  In that case.  And I'm asking you                   13:16:58

if -- I asked you if you're aware of any agency head            13:17:02

filing such a declaration asserting state secrets              13:17:08

privilege in this case.                                         13:17:11

A    That I think applies -- those                              13:17:13

declarations apply to all cases.                                13:17:17

Q    Okay.  That's your position, okay.                        13:17:18

And to those declarations --                                    13:17:20

(Cross-talk.)                                                   13:17:22

A    Because if it really applies to the information.

Q    So to those -- to your point, to those -- to your -- in your view, those declarations apply in this case even if they aren't filed in this case, and even if they don't mention Mr. Abrego Garcia?

A    I'm not going to agree that they don't mention Abrego Garcia.  They probably don't mention him by name.  But we know that from this declaration that Cerna has issued, that was filed by DOJ in this case, that he was on one of the planes that are the subject -- allegedly the subject of those declarations.

Q    Okay.  Do you know if the head of DHS, the Secretary of DHS, actually personally considered whether the information being sought pursuant to Judge Xinis's order, in this case, regarding Mr. Abrego Garcia is privileged under the state secrets privilege?

A    Which information in particular?  Any information?

Q    Any information with respect to

Mr. Abrego Garcia and Judge Xinis's orders.

A    Hmm.  No, I don't have any personal knowledge of what's going on in Secretary Noem's head, no.

Q    So you don't know if it was considered, okay.

A    Wait, if the state secrets were considered in this case -- yeah, I don't -- well, you asked what was going on in her head.  I don't know what's going on in her head.  And anything outside the scope of that would probably be subject to a privilege.

Q    How, in regard to Mr. Abrego Garcia specifically, do the questions I asked you today about the government's efforts to facilitate his release and/or return, how do those create a reasonable danger that disclosure would expose military, diplomatic, or intelligence matters warranting state secret privilege?

        MR. GUYNN:  Objection, calls for a legal conclusion.

A    So one thing I do want to say about the

FILED UNDER SEAL

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    225

last answer, because I want to make sure I'm correct
about -- very correct about this, are there -- have
there been conversations with people that touched on
state secrets and this case with people in DHS or
otherwise?  I believe that's what you were asking.
Yes.

         Number two, regarding your question you
just asked, which has to do with, like, how does --
how does any of this touch on --

    Q    I'm happy to ask it again.  Judge Xinis
has authorized and ordered discovery into specific
areas that I asked you about today, primarily what
steps the United States government has taken to
facilitate Mr. Abrego Garcia's release from custody
and/or return to the United States, and what steps,
if any, the United States government is planning to
take with respect to those things.

    A    Okay.

    Q    My question -- so I asked you a lot of
questions today --

    A    Yeah.

    Q    -- trying to get at that information.

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

My question is, how does any of that information that I'm seeking to elicit pose a reasonable danger that disclosure would expose military, diplomatic, or intelligence matters warranting protection by the state secrets privilege?

A    Okay.  So -- okay, now I understand your question.  We have literally put into my declarations all of the relevant information on that question, like, the steps we're going to -- we've taken, the steps we're taking, the steps we're going to take.

Q    Okay.  So I want to understand -- and I think I do -- your response to the question I just asked you is that you haven't withheld any information with respect to those things on the basis of state secrets?

A    Oh, with respect to the steps that we're taking?  Like, what are you asking?

Q    I'm asking --

A    Because you're asking a lot of information that's not just about the steps we're

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025

227

taking or have taken, which, again, is in the declarations.

Q    I'm asking how any of the information responsive to my questions about the areas ordered by Judge Xinis --

A    Okay.

Q    -- pose a reasonable danger that disclosure would expose military, diplomatic, or intelligence matters warranting protection by the state secrets privileges.

MR. GUYNN:  Just to clarify, about any single question you've asked today, he needs to answer that with respect to does it implicate state secret information?

Q    So let's narrow it down, as I did in my questions.  I've asked you a series of questions about the steps the United States government has taken and a series of questions about any steps they plan to take with respect to facilitating Mr. Abrego Garcia's release from custody in El Salvador and return to the United States.  And I asked them in -- I didn't ask them as compound questions.  I asked

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                     228

them specifically in a series of questions specific    13:23:10
to the steps.                                          13:23:13

I'm asking you how that information poses              13:23:16
any reasonable danger that disclosure would expose     13:23:21
military, diplomatic, or intelligence matters          13:23:25
necessary to be -- to the state secrets privilege.     13:23:28

A     Anything that does not, okay, create that        13:23:32
risk has been provided in the declarations.            13:23:35
Anything else that's been withheld, to the extent      13:23:38
it's been withheld, because I don't remember --        13:23:41
we've been here five hours almost.  You know,          13:23:42
anything that's been withheld under the state          13:23:46
secrets privilege obviously implicates all those       13:23:49
things.                                                13:23:52

Q     Okay.  Is there any information that I           13:23:52
asked you about with respect to those topics that is   13:23:58
available from another agency or that I can get        13:24:04
somewhere else, to your knowledge?                     13:24:08

A     I don't know.  I don't know what people          13:24:11
know.  I don't know how they retain their records.     13:24:17
I don't know.                                          13:24:20

Q     I'm not aware -- it was hard because             13:24:44

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    229

there were a lot of cautions to you from your

counsel with respect to the deliberative process

privilege.

          As you sit here now -- and I know I asked

in real time for some of them.  But as you sit here

now, are you aware of information that you withheld

specifically because of the deliberative process

privilege?

     A     I think I answered those questions.  I'm

sure there was.  I'm sure there was.  I can't give

you the chapter and verse.  First of all, then I

would be revealing privileged information.  But, I

mean, yeah -- because with DOJ and the State, we're

all part of the decisionmaking process by more

superior officers of the United States.

          MS. SCHMITT:  Okay.  Let me take a quick

break and huddle with the group, and I will come

back in in the hopes of being done or asking any

final questions that I have so that you can be done.

          VIDEOGRAPHER:  The time is 13:25, and

we're going off the video record.

          (Recess from 1:25 p.m. until 1:35 p.m.)

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

230

VIDEOGRAPHER:  The time is 13:35, and we are back on the record.

BY MS. SCHMITT:

Q    Mr. Mazzara, I have a last few questions, very few.

We were talking right before the break about the deliberative process privilege.  I just have two questions with respect to that.

A    Okay.

Q    I asked you -- I'm sure you'll recall them, maybe not each and every one of them, but I asked you a series of questions that called for facts --

A    Yes.

Q    -- about what the United States government has done or plans to do with respect to facilitating Mr. Abrego Garcia's release and agreement.

A    All right, yeah, yeah.

Q    Not asking you to recite the facts now. I'm just saying that I asked you for facts about those things.

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    231

A    Yes.    13:36:14

Q    Okay, great.  To the best of your    13:36:15
knowledge and recollection, do any of those facts    13:36:22
relate to a final decision that was made in this    13:36:26
matter?    13:36:32

A    You mean did somebody say, hey, we're    13:36:35
deciding this is exactly what we're going to do?    13:36:40

Q    So let me tighten up the question even    13:36:43
further.    13:36:47

I asked you -- we're in agreement that I    13:36:48
asked you questions that called for facts about the    13:36:50
steps that the government has taken or will take.    13:36:54

A    Yes.    13:36:56

Q    Okay.  About facilitating release and    13:36:57
return.  Okay.    13:37:00

I'm asking you if any of those facts that    13:37:02
I called for related to a final decision that the    13:37:05
government made with respect to facilitating    13:37:12
Mr. Abrego Garcia's release or return.    13:37:17

A    Well, a final action --    13:37:19

MR. GUYNN:  Objection, calls for a legal    13:37:21
conclusion.    13:37:22

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    232

A    Yeah.  A final action is, like, a legal term of art.  So I'm not even sure how to answer that question.

Q    Fair.  Let me try again.  I'm not trying to hide the ball.

A    I understand.  I understand.

Q    This relates to the deliberative process privilege.

A    Okay.

Q    For a deliberative process privilege -- and I'm not -- this is subject to whether your counsel would agree or not.  I'm not trying to have a legal debate.  I'm just --

An element of the deliberative process privilege is that it has to relate to a final decision that was ultimately reached.  In other words, we can't get at the deliberation part -- if the privilege is withheld, we can't get to the deliberation part, but there has to be a final decision that you can point to that says, this is the decision we reached after our deliberations.

A    Oh, yeah.  What I put in my declarations.

13:37:22
13:37:24
13:37:29
13:37:30
13:37:32
13:37:34
13:37:35
13:37:38
13:37:39
13:37:39
13:37:42
13:37:44
13:37:46
13:37:50
13:37:51
13:37:56
13:37:59
13:38:03
13:38:06
13:38:08
13:38:11
13:38:13

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    233

Q    Okay.  Outside of the declarations, any final decisions that you can point us to that the facts withheld or the discussions withheld relate to deliberations?

A    I mean, there -- okay.  So there are -- it depends on what you're talking about.  Like, for example, what we put in the declaration, there's a final decision there, and that's obviously final because we file it on the court docket.  So yes, right there.

And then you have other sorts of intermediary final decisions about the information gathering, okay.

Then you have -- and you can see some of the results of that final decision, for example, from our public affairs officer -- sorry -- our Assistant Secretary For Public Affairs, you know, put out, you know, court documents about him having beaten his wife, about him being a human trafficker, things like that.  So that's a result, you know, of the deliberative process with, you know, everything we're doing inside.

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

234

Then you have, of course, again, the declarations and what we said in the declarations. Like the fact of the declaration is one thing, and each individual thing that's in the declaration is each its own kind of little decision.

Q     Let me ask one --

A     And it points to other decisions that have been made.

Q     Has the United States government reached any final determinations -- any final decisions about steps to facilitate Mr. Abrego Garcia's release from custody?

MR. GUYNN:  Objection to the extent it calls for state secret, attorney-client, deliberative process communications.

A     Well, what's in the -- you can read what's in my declaration.

Q     I'm not asking about the declaration. I'm asking, like -- I'm asking if the United States government, to your knowledge, has reached any final determination, final decision about what it's going to do with respect to facilitating Mr. Abrego

FILED UNDER SEAL

CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    235

Garcia's release from custody.                                    13:40:20

A    So, I mean, the answer is, yes, insofar    13:40:22
as what's described or even referenced or cited to,    13:40:26
like you saw what the Attorney General said and what    13:40:29
the President said in their video in the White    13:40:31
House.                                                            13:40:35

Q    Okay.                                                13:40:35

A    And -- yeah.                                        13:40:35

Q    And same question.  To your knowledge,    13:40:35
has the United States reached any final decision    13:40:39
about what steps it will take in the future to    13:40:42
facilitate Mr. Abrego Garcia's return to the United    13:40:46
States?                                                          13:40:50

MR. GUYNN:  Same objections.                      13:40:50

A    Yeah, I mean, and the same answer.  But,    13:40:51
again, like, here's the thing.  Like, even the    13:40:54
Supreme Court overrules itself.  But from my    13:40:58
understanding, my knowledge, final decisions have    13:41:01
been made, and they've been distilled in these    13:41:04
declarations.                                                    13:41:06

Q    Okay.  Quick question about your -- we    13:41:07
talked -- we looked at your declaration that    13:41:10

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                    236

mentioned forcible extraction, and I asked you a couple questions about that.

And you were telling the judge that the DHS doesn't have the authority to forcibly extract Mr. Abrego Garcia.

A    Yep.

Q    And what I want to know is, how do you know that it would have to be a forcible extraction if you aren't aware of the terms of the agreement between the United States and El Salvador with respect to his confinement?

A    I didn't say it would have to be -- this is like giving advice to my client, right, in any context as a lawyer.  It's, like, okay, you can do anything from A to F, and, you know, A has the greatest litigation risk, F has the least litigation risk.  Now, everything from G to Z, you can't do.

So it's just, like, hey, let's be very clear about what the bookend is here.  We don't have the authority to forcibly extract him.

Q    But there could have been other things that you could do?

A     I mean, that is a very sensitive question that involves foreign affairs.  I mean, the whole realm of what's possible, what's not, again, is a complicated question.

Q     I know that you didn't -- I know that you testified earlier that you didn't read the defendants' responses to our interrogatories.

A     Yeah, correct, yeah.

Q     Those were submitted last night.

A     Yeah.

Q     So --

A     But yeah, the defendants.  Like, the collective responses, yeah --

Q     Correct.

A     -- I did not, yeah.

Q     Correct.

       And so I would like to -- I would like to read you two sentences from --

A     Sound good.

Q     -- from someone of the interrogatory responses.  Your counsel has those in front of them.  And unfortunately, I have --

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                               238

MS. SCHMITT:  Counsel, I have a pullout
of the page that does not have the page number, but
I'm going -- there's a -- it's number 1.  It starts
with, Before the Fourth Circuit's decision.

MR. GUYNN:  Okay, I have that.

MS. SCHMITT:  You have that, great.
Okay.  And I'm --

MR. GUYNN:  So this is in the response,
defendants' response to Interrogatory Number 1?

MS. SCHMITT:  Yes.

MR. GUYNN:  Okay.

BY MS. SCHMITT:

    Q    Okay.  And so Mr. Mazzara, I'm just going
to read this to you.  After the Fourth Circuit --
and this is the response.  I'll read you the whole
response.  It's only three sentences.

    A    All right.

    Q    Before the Fourth Circuit's decision of
April 17th clarifying its understanding of
"facilitate," in quotes, the United States took the
position that the only steps needed to facilitate
the return of Mr. Abrego Garcia involved removing

FILED UNDER SEAL
CONFIDENTIAL

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                          239

domestic barriers.  After the Fourth Circuit's

clarification, the State Department has engaged in

appropriate diplomatic discussions with El Salvador

regarding Abrego Garcia.  However, disclosing the

details of any diplomatic discussions regarding

Mr. Abrego Garcia at this time could negatively

impact any outcome.

     My questions are very straightforward, I

think, about that.

     Are you aware of -- I'm not asking you to

tell me what the discussions are.  I'm just asking

you if you're aware of the discussions.

    A   Only from what you just read to me.

    Q   Okay.  So before I just read that to you,

as the defendants' interrogatory responses, you were

not aware?

    A   Of any discussions about facilitating his

return in any way other than what we described in my

declarations?  No.

    Q   Okay.  And --

    A   Yeah, with the caveat -- I mean, again,

with the caveat -- almost like a -- almost a hundred

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                240

percent, I believe, nothing like this that has come across any of my emails.  But if it did, and I've either forgotten it or I just didn't read it.

Q    Okay.  And do you know if those diplomatic discussions are intended to facilitate Mr. Abrego Garcia's release and return?

A    I have no idea.

Q    You don't know, okay.

A    I'm not the diplomacy guy.

MS. SCHMITT:  All right.  We will reserve the right to recall Mr. Mazzara, keep the deposition open on -- because of any privilege -- you know, subject to any privilege rulings by the Court or rulings related to the state of the discovery responses and document productions.

But I have at this time no further questions.

MR. GUYNN:  Okay.  And our position is, you know, it's expedited discovery.  He's answered questions for over five hours.  The deposition is finished.  But we can take this up with the judge as needed.

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                241

MS. SCHMITT:  Absolutely.

COURT REPORTER:  Anything else for the record?

THE WITNESS:  Oh.  I just want to correct one thing.  I said that I won three full acquittals and I have another one on appeal.  The one on appeal was a mistrial, so technically, it wasn't a reversal.  I just want to clear -- correct that for the record.

MS. SCHMITT:  And you got -- I just want to make sure, we're keeping the deposition open subject to objection from the defense.

MR. GUYNN:  Understood.

MS. SCHMITT:  Yeah.  Okay.

VIDEOGRAPHER:  This marks the end of the videotaped deposition of Joseph Mazzara.  We are going off the record at 13:47.

(Transcript orders discussed.)

COURT REPORTER:  Thank you.  That's all I need.

(Off the record at 1:48 p.m.)

C E R T I F I C A T E

I, Lisa V. Feissner, RDR, CRR, CLR, do

hereby certify that the witness was first duly sworn

by me and that I was authorized to and did report

said proceedings.

I further certify that the foregoing

transcript is a true and correct record of the

proceedings; that said proceedings were taken by me

stenographically and thereafter reduced to

typewriting under my supervision; that reading and

signing was not requested; that I am neither

attorney nor counsel for, nor related to or employed

by, any of the parties to the action in which this

deposition was taken; and that I have no interest,

financial or otherwise, in this case.

IN WITNESS WHEREOF, I have hereunto set

my hand this 22nd day of APRIL, 2025.

_____

Lisa V. Feissner, RDR, CRR, CLR

(The foregoing certification of this
transcript does not apply to any reproduction of the
same by any means, unless under the direct control
and/or supervision of the certifying reporter.)

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

243

| **A** |
| --- |

**abide**
110:1
**ability**
16:16, 16:20,
213:11, 213:12,
217:17
**able**
73:3, 109:18,
160:4, 194:3,
218:10, 218:11
**aboard**
199:21
**above**
81:14
**absent**
186:5, 212:6
**absolutely**
31:1, 38:20,
77:20, 101:16,
123:12, 145:16,
241:1
**abundance**
211:1, 212:13
**accepted**
20:21
**accepting**
24:2
**accordingly**
63:8, 63:14
**accuracy**
29:19
**accurate**
70:2, 70:21,
134:7
**accurately**
22:20, 64:4
**accusation**
109:19, 135:13
**accused**
109:15
**acknowledging**
35:16
**acquired**
136:12
**acquittals**
25:22, 241:5

**across**
78:5, 153:11,
168:10, 240:2
**act**
171:18, 217:20
**acting**
12:2, 12:6,
20:2, 26:8,
26:17, 27:4,
38:4, 70:7,
77:9, 82:16,
120:16, 120:19,
123:7, 123:16,
124:6, 126:2,
128:1, 135:1,
135:3, 171:11
**action**
13:15, 14:1,
14:21, 41:20,
42:16, 43:2,
69:14, 69:21,
70:2, 70:19,
146:10, 231:20,
232:1, 242:13
**active**
80:9, 80:10
**activities**
27:8
**activity**
134:5
**actual**
87:20, 129:8
**actually**
9:3, 34:2,
37:19, 50:13,
83:16, 109:20,
119:16, 140:4,
143:13, 178:11,
180:17, 188:15,
189:14, 192:17,
195:17, 199:17,
210:6, 210:15,
223:15
**added**
156:20
**addition**
156:21
**additional**
64:1, 97:21,

208:20, 214:3
**address**
102:9, 215:17,
215:20
**addressing**
60:3, 60:7
**addy**
3:3, 7:17,
9:14, 45:13
**addy@kmlawfirm**
3:10
**adjust**
83:10
**admin**
183:3
**administration**
119:20, 146:19
**administrative**
30:13, 31:4,
31:9, 31:12,
32:12
**admissible**
141:19, 142:3
**admit**
141:16, 141:17,
141:20, 142:2
**admitted**
142:6
**admitting**
141:21
**adopt**
29:19
**advantage**
110:22
**advice**
27:16, 42:9,
61:6, 65:1,
77:10, 79:10,
79:11, 79:14,
84:8, 123:9,
126:4, 126:18,
126:22, 128:2,
128:3, 128:4,
129:16, 236:13
**advise**
77:14, 78:19
**advised**
123:22

**advisor**
214:12, 214:14,
214:15, 214:16
**advocate**
25:14, 25:20
**affairs**
67:15, 76:20,
100:18, 100:22,
119:22, 138:21,
138:22, 139:1,
141:13, 233:16,
233:17, 237:2
**affirmative**
94:17
**affirmatively**
95:14
**after**
17:13, 21:9,
21:22, 22:2,
23:3, 23:15,
23:16, 25:6,
25:8, 26:1,
37:12, 38:20,
45:20, 51:13,
52:1, 53:12,
54:7, 58:14,
106:15, 232:21,
238:14, 239:1
**ag**
5:11
**again**
30:5, 30:7,
34:1, 36:13,
45:16, 53:7,
53:16, 54:1,
58:21, 58:22,
59:15, 66:8,
72:12, 74:20,
75:16, 76:11,
78:3, 87:18,
96:3, 98:18,
99:21, 111:12,
118:2, 118:19,
119:10, 147:12,
147:17, 147:19,
153:18, 154:22,
158:2, 159:6,
163:11, 164:3,

166:10, 168:8,
169:10, 170:14,
183:12, 195:2,
197:5, 197:13,
202:10, 210:2,
210:12, 212:6,
218:20, 221:4,
225:10, 227:1,
232:4, 234:1,
235:16, 237:3,
239:21

**against**
147:3, 170:20

**agencies**
28:7, 49:17,
49:18, 50:1,
76:15, 119:14,
152:4, 152:21,
153:2, 154:20

**agency**
11:17, 26:20,
32:10, 42:10,
60:12, 77:2,
126:12, 216:14,
216:15, 220:4,
220:17, 222:11,
222:13, 222:15,
228:17

**ago**
12:18, 15:6,
213:1

**agree**
10:4, 12:4,
30:5, 82:17,
186:4, 197:6,
223:7, 232:12

**agreed**
184:14, 184:17,
185:6

**agreement**
172:15, 173:1,
173:5, 173:21,
174:4, 174:17,
175:11, 175:14,
175:15, 176:11,
176:16, 176:22,
177:4, 177:17,
177:22, 178:3,

178:5, 178:13,
178:16, 179:7,
179:11, 179:13,
179:14, 180:15,
180:18, 180:22,
181:6, 181:10,
182:12, 182:16,
182:20, 182:21,
183:10, 184:12,
184:18, 185:11,
185:15, 187:13,
187:14, 188:20,
189:14, 189:21,
192:3, 192:6,
192:7, 192:10,
192:13, 193:16,
194:5, 194:9,
194:19, 195:13,
195:17, 195:19,
196:9, 196:11,
196:19, 201:14,
201:16, 201:19,
201:21, 213:10,
213:15, 213:22,
230:18, 231:10,
236:9

**agreement's**
191:16

**agreements**
77:12, 183:18,
192:19, 195:5

**ahead**
10:12, 52:10,
63:11, 124:7,
128:9, 137:2

**airplane**
199:21

**al**
1:5, 1:8, 5:11,
7:4

**alien**
105:21, 107:14,
109:4, 112:15,
171:17, 210:13

**aliens**
171:17, 171:18,
172:1, 174:13

**alive**
69:6

**all**
8:22, 11:13,
11:15, 13:15,
13:17, 13:22,
14:20, 15:17,
22:18, 24:6,
24:16, 26:6,
27:2, 27:8,
28:5, 28:17,
28:22, 31:20,
36:5, 41:15,
58:10, 66:22,
76:12, 77:11,
78:19, 78:21,
83:17, 84:11,
88:12, 92:1,
95:2, 113:18,
117:13, 118:21,
119:3, 122:4,
123:18, 127:1,
129:21, 131:22,
133:14, 135:17,
135:21, 136:1,
136:3, 140:13,
143:16, 144:1,
145:20, 151:16,
157:4, 159:9,
160:1, 160:19,
169:3, 169:18,
176:5, 176:6,
176:7, 176:9,
177:7, 179:22,
180:3, 189:8,
190:22, 191:5,
196:5, 197:4,
200:3, 200:4,
204:16, 205:11,
208:10, 208:19,
214:9, 214:11,
215:2, 215:14,
215:15, 215:16,
216:7, 216:17,
217:12, 219:11,
222:19, 226:9,
228:13, 229:11,
229:14, 230:19,
238:17, 240:10,
241:19

**allegations**
61:6

**alleged**
85:5, 189:7

**allegedly**
109:9, 223:12

**allergy**
16:18

**allow**
106:22, 151:11,
151:14

**allows**
148:9, 148:12

**almost**
50:16, 51:19,
228:11, 239:22

**along**
167:5, 203:5

**alongside**
91:21

**already**
41:19, 88:9,
97:11, 101:20,
109:1, 119:1,
147:11, 161:6,
162:9, 181:2,
205:1, 206:20,
213:17, 217:4

**also**
10:6, 22:10,
22:20, 25:6,
26:9, 27:9,
27:10, 43:9,
46:21, 61:4,
78:19, 85:14,
91:6, 91:14,
102:9, 103:14,
107:15, 124:22,
126:17, 126:21,
135:12, 136:7,
137:21, 138:2,
139:6, 139:19,
148:19, 161:17,
167:18, 173:17,
179:12, 184:4,
197:4, 199:17,
216:10

**alternative**
81:4

**alternatively**
160:11
**always**
79:17, 96:18,
164:11
**ambassador**
153:7
**amended**
9:12
**america**
146:22, 217:1
**american**
107:13, 109:9,
212:18
**amidst**
56:7, 56:8
**among**
119:13
**amount**
81:15
**amounts**
168:9
**amphibious**
25:4
**analysis**
127:15, 127:18
**andrea**
3:4, 7:18
**andrea@kmlawfirm**
3:11
**angry**
140:22
**another**
114:20, 114:22,
115:6, 126:5,
139:20, 140:8,
140:13, 160:10,
169:17, 179:13,
218:4, 218:5,
220:11, 222:11,
228:17, 241:6
**answered**
109:1, 162:15,
164:4, 176:21,
197:5, 202:12,
229:9, 240:19
**answering**
17:7, 73:9,

124:3, 140:18,
144:18, 146:1,
200:1, 202:19
**answers**
16:2, 119:3,
120:5, 179:11
**anticipate**
110:21
**anybody**
18:18, 19:10,
45:4, 46:16,
46:17, 47:16,
47:17, 55:9,
60:15, 74:5,
75:6, 76:6,
76:11, 95:3,
102:22, 113:18,
113:22, 118:18,
146:9, 155:17,
155:18, 156:3,
161:13, 162:5,
163:2, 163:16,
165:14, 184:11,
193:20
**anyone**
18:22, 19:4,
42:15, 43:5,
44:2, 44:3,
44:21, 45:22,
46:1, 46:11,
46:13, 47:17,
50:10, 55:10,
60:2, 60:10,
60:18, 61:12,
61:13, 70:19,
74:4, 74:9,
74:10, 75:5,
75:18, 76:9,
97:5, 98:3,
98:4, 103:4,
125:10, 129:2,
142:14, 142:21,
155:10, 155:11,
156:16, 157:9,
158:10, 158:12,
159:4, 166:1,
166:2, 166:22,
183:8, 196:1,

209:10, 209:15,
209:17, 210:4,
216:8, 216:14
**anything**
18:5, 18:6,
29:1, 29:5,
29:19, 30:6,
43:6, 52:15,
57:10, 57:20,
59:7, 59:16,
60:16, 60:18,
70:19, 72:16,
72:18, 94:4,
95:14, 105:4,
113:19, 114:1,
116:20, 117:4,
119:11, 132:7,
132:8, 143:20,
145:3, 151:20,
154:17, 155:20,
165:17, 174:3,
176:17, 179:22,
180:2, 180:9,
185:4, 186:14,
189:8, 190:14,
194:20, 195:9,
195:19, 201:20,
212:22, 220:7,
221:1, 221:6,
221:10, 224:10,
228:7, 228:9,
228:12, 236:15,
241:2
**anyway**
20:18, 21:4,
22:9, 22:14,
26:1, 26:14
**apologize**
121:11, 146:6
**appeal**
25:21, 241:6
**appeals**
86:1
**appear**
114:17, 137:9,
137:10, 166:14
**appears**
150:11

**appellate**
58:9
**applied**
20:20, 23:19,
24:3
**applies**
73:11, 124:5,
222:18, 223:1
**apply**
15:18, 222:19,
223:4, 242:22
**appointed**
26:8
**appointee**
27:9, 183:6,
215:10
**appreciate**
182:2
**apprehension**
139:6
**appropriate**
39:12, 123:6,
239:3
**appropriately**
36:10
**approximately**
197:8
**april**
1:17, 5:15,
7:7, 10:21,
54:3, 62:16,
63:15, 65:6,
67:12, 67:22,
71:10, 71:12,
75:4, 76:7,
88:18, 89:7,
99:3, 103:6,
146:8, 146:9,
146:14, 146:15,
147:7, 198:5,
205:14, 206:2,
238:19, 242:17
**area**
122:5
**areas**
225:12, 227:4
**aren't**
83:18, 140:7,

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

246

183:14, 223:5,
236:9
**argument**
58:11
**argumentative**
144:17, 144:20,
146:3, 146:7,
169:11
**armando**
1:4, 178:15
**around**
20:9, 23:2,
107:2, 149:13
**arrest**
169:13
**art**
232:2
**article**
113:15, 113:16,
187:16
**articles**
91:10
**artillery**
22:6, 22:11,
23:2
**ascertain**
153:9
**aside**
18:19, 82:7,
88:11, 135:5
**asked**
35:4, 36:14,
38:22, 39:12,
40:11, 40:14,
45:4, 60:17,
74:3, 83:11,
97:19, 101:5,
108:22, 118:4,
120:7, 120:13,
121:15, 124:17,
127:19, 135:19,
140:10, 147:1,
152:20, 153:6,
157:13, 197:5,
211:10, 212:1,
218:1, 222:15,
224:9, 224:14,
225:8, 225:12,

225:19, 226:15,
227:12, 227:16,
227:21, 227:22,
228:16, 229:4,
230:10, 230:12,
230:21, 231:10,
231:11, 236:1
**asking**
17:2, 18:11,
18:12, 19:1,
19:2, 24:16,
29:18, 34:1,
35:20, 35:21,
39:14, 53:9,
61:11, 70:1,
70:18, 73:8,
76:6, 77:17,
77:21, 79:3,
85:15, 95:5,
95:12, 100:9,
104:18, 104:19,
105:2, 108:9,
108:10, 108:21,
108:22, 115:17,
118:6, 118:9,
120:22, 121:8,
121:15, 122:1,
122:10, 123:19,
123:22, 124:1,
124:2, 124:12,
124:13, 124:19,
125:9, 126:16,
126:20, 127:17,
127:19, 129:1,
130:20, 130:21,
131:18, 132:3,
132:4, 133:22,
134:2, 134:22,
136:20, 140:21,
141:1, 141:11,
142:1, 145:2,
148:3, 150:1,
165:8, 165:12,
170:17, 180:9,
180:12, 180:21,
195:20, 199:10,
200:9, 207:21,
212:8, 212:14,

220:2, 220:16,
222:14, 225:5,
226:19, 226:20,
226:21, 227:3,
228:3, 229:18,
230:20, 231:16,
234:18, 234:19,
239:10, 239:11
**assert**
73:21, 182:7
**asserted**
122:8, 130:17,
135:11, 185:21,
220:21, 221:1
**asserting**
124:19, 127:8,
129:13, 129:14,
131:3, 131:20,
134:11, 134:15,
135:6, 219:17,
222:16
**assertion**
157:21, 159:13,
168:7, 219:20,
220:7
**assertions**
127:11, 219:3,
219:22
**assign**
60:18
**assigned**
60:11, 60:16,
61:13, 141:14
**assistance**
209:17
**assistant**
233:17
**association**
14:8
**assume**
12:7, 218:20
**assuming**
83:14, 83:15,
154:11, 164:7,
188:1
**assurances**
195:6
**attached**
5:7, 6:2, 9:6,

9:10, 10:14,
28:12, 33:2,
62:6, 62:18,
67:3, 82:4,
198:1, 203:20,
204:7
**attachments**
5:12
**attaché**
44:12, 44:13,
44:19, 45:6,
139:12, 139:15
**attended**
20:21
**attention**
33:5, 34:18,
36:15, 53:1,
53:4, 53:11,
63:7, 86:7
**attitude**
52:16, 52:19
**attorney**
12:8, 15:11,
39:4, 43:20,
47:6, 61:4,
61:5, 61:8,
61:10, 72:20,
80:5, 91:3,
100:19, 100:22,
102:14, 102:21,
102:22, 118:15,
122:16, 123:8,
124:20, 128:6,
129:14, 137:21,
138:2, 157:17,
177:8, 219:9,
235:4, 242:12
**attorney-client**
30:16, 30:20,
33:18, 34:21,
35:2, 35:15,
38:15, 41:3,
41:6, 42:1,
42:20, 43:10,
43:12, 44:7,
46:5, 47:2,
54:13, 56:13,
57:14, 58:17,

60:20, 61:1,
64:11, 66:17,
66:20, 68:2,
68:19, 68:21,
69:17, 71:1,
71:20, 72:22,
74:15, 84:20,
87:4, 90:14,
93:5, 94:20,
95:21, 97:9,
99:18, 100:11,
103:15, 112:5,
117:7, 117:21,
118:14, 120:6,
121:10, 122:3,
122:9, 122:12,
124:5, 124:10,
124:18, 127:20,
127:22, 129:7,
129:9, 129:13,
130:15, 130:21,
131:3, 131:21,
132:11, 134:11,
134:15, 135:9,
144:8, 145:10,
152:11, 154:7,
161:17, 163:7,
165:1, 166:6,
167:14, 172:7,
172:9, 173:18,
174:8, 175:17,
178:7, 178:22,
180:5, 184:20,
185:22, 188:8,
190:8, 194:17,
196:21, 199:5,
207:4, 209:21,
234:14

**attorneys**
27:7, 42:9,
61:3, 75:13,
98:19, 101:8,
102:21, 103:1,
103:3, 123:3,
129:11, 129:20,
129:22, 131:6

**auspices**
215:1

**authorities**
164:20, 201:6,
202:1

**authority**
69:7, 76:22,
78:7, 78:14,
79:17, 113:14,
113:18, 113:22,
114:2, 137:15,
137:22, 138:3,
138:5, 138:7,
138:8, 139:22,
140:3, 140:11,
141:2, 141:7,
143:13, 201:3,
210:12, 210:19,
211:3, 211:21,
212:4, 217:19,
236:4, 236:20

**authorization**
201:4

**authorize**
201:2

**authorized**
198:17, 199:2,
199:9, 200:10,
200:12, 225:11,
242:4

**authorizes**
198:18

**authorizing**
200:13, 200:21,
213:3

**automobile**
14:7

**available**
85:3, 228:17

**avenue**
4:14

**avoid**
137:13, 182:5

**aware**
35:5, 44:12,
81:3, 81:14,
86:10, 87:9,
87:11, 95:3,
95:7, 126:12,
137:14, 143:22,

147:10, 152:3,
152:20, 157:3,
159:6, 162:7,
164:17, 165:8,
170:1, 170:5,
170:11, 170:13,
170:17, 170:19,
171:1, 172:17,
172:19, 173:2,
178:2, 178:3,
178:16, 208:16,
209:13, 216:20,
220:16, 222:15,
228:22, 229:6,
236:9, 239:10,
239:12, 239:16

**away**
67:6, 148:16

**awry**
206:3

---

**B**

**b-i-z-c-h-o-f-f**
48:10

**b-r-e-n-d-a-n**
74:22

**back**
20:4, 20:11,
21:2, 23:4,
23:17, 37:13,
40:9, 42:7,
47:13, 55:4,
58:21, 62:19,
67:7, 68:7,
73:19, 74:8,
76:12, 82:8,
82:11, 88:11,
100:8, 111:21,
116:17, 121:11,
128:14, 137:2,
139:21, 148:15,
148:16, 149:2,
150:21, 151:17,
169:1, 169:3,
204:4, 205:4,
205:10, 211:7,
212:5, 212:22,
217:12, 218:19,

229:18, 230:2

**background**
23:11

**bad**
57:5, 146:5,
147:5

**ball**
232:5

**bane**
51:8

**bank**
14:8

**barriers**
149:7, 151:8,
151:16, 152:7,
239:1

**bars**
80:10, 80:20

**based**
69:2, 83:4,
84:14, 108:10,
127:21, 131:13,
138:17

**bases**
166:5, 176:18

**basic**
21:11, 21:12

**basically**
21:13, 139:10,
143:16, 160:13,
161:7, 207:18,
220:22

**basis**
30:16, 33:17,
35:14, 46:5,
46:22, 64:22,
71:1, 72:22,
73:10, 100:11,
100:21, 114:15,
116:9, 120:6,
121:10, 122:3,
122:12, 124:2,
127:8, 127:22,
129:6, 129:15,
130:14, 145:10,
152:10, 157:21,
158:14, 159:13,
160:13, 161:16,

Case 8:25-cv-00980-PX    Document 129-2    Filed 05/27/25    Page 250 of 292

FILED UNDER SEAL

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

248

162:16, 163:6,
164:6, 165:17,
168:7, 172:7,
173:17, 174:7,
178:6, 184:19,
185:20, 190:20,
196:20, 198:15,
226:17

**bathroom**
168:17

**battalion**
22:4

**battery**
22:3, 22:4

**beaten**
233:19

**beater**
109:8

**beating**
135:13

**became**
21:8, 35:5,
54:10, 54:19

**because**
10:6, 11:7,
11:14, 20:8,
22:10, 34:9,
39:7, 43:3,
52:7, 57:4,
58:2, 59:6,
62:11, 65:15,
77:19, 78:4,
84:5, 100:2,
100:3, 100:8,
104:5, 107:2,
113:11, 113:12,
119:10, 122:16,
123:7, 124:4,
124:6, 126:7,
128:3, 135:8,
143:11, 147:11,
148:12, 148:18,
151:10, 157:17,
159:9, 167:19,
168:9, 173:11,
176:1, 177:1,
193:15, 193:22,
199:14, 199:15,

199:16, 202:8,
205:9, 216:11,
217:18, 221:4,
221:17, 223:1,
225:1, 226:21,
228:10, 228:22,
229:7, 229:13,
233:9, 240:12

**become**
53:18

**becoming**
139:8, 150:15

**been**
8:13, 9:1,
12:10, 15:9,
34:19, 35:7,
36:15, 45:21,
48:18, 50:13,
50:18, 52:8,
53:12, 53:15,
55:12, 60:2,
66:8, 72:10,
72:12, 72:13,
72:14, 81:20,
91:5, 91:17,
91:18, 93:10,
93:12, 94:13,
94:16, 94:18,
95:4, 95:8,
96:3, 96:4,
96:13, 96:14,
96:22, 98:2,
98:5, 98:13,
98:16, 107:22,
109:5, 109:14,
113:20, 114:4,
125:9, 129:19,
130:9, 130:17,
136:8, 137:16,
138:8, 141:7,
147:3, 149:13,
156:12, 160:21,
162:11, 172:20,
173:2, 177:9,
177:15, 185:5,
191:17, 191:21,
192:11, 195:15,
208:2, 225:3,

228:8, 228:9,
228:10, 228:11,
228:12, 234:8,
235:19, 236:21

**before**
2:12, 11:12,
12:10, 17:20,
21:10, 22:6,
23:12, 24:11,
37:6, 37:12,
38:13, 38:22,
39:15, 40:15,
49:21, 58:10,
63:17, 65:4,
67:22, 68:16,
68:18, 70:16,
72:9, 73:9,
74:13, 82:6,
85:19, 86:16,
86:17, 89:2,
93:10, 94:1,
97:7, 98:21,
99:14, 99:17,
102:19, 104:11,
114:18, 136:21,
165:19, 167:12,
168:9, 185:12,
207:15, 208:9,
230:6, 238:4,
238:18, 239:14

**beginning**
45:10, 63:15

**begins**
7:2

**behalf**
3:2, 4:2, 4:10,
8:4

**behind**
28:19, 28:20

**being**
65:15, 65:21,
69:4, 81:5,
81:6, 117:11,
122:17, 123:9,
128:2, 144:17,
144:19, 146:2,
150:16, 153:8,
156:22, 157:7,

171:17, 178:4,
201:16, 223:16,
229:18, 233:19

**believe**
14:8, 20:14,
21:7, 26:9,
37:14, 41:10,
55:14, 64:5,
68:5, 69:11,
72:8, 80:11,
86:17, 98:2,
99:2, 101:6,
122:8, 123:6,
124:5, 130:2,
130:16, 142:12,
143:5, 143:10,
144:13, 144:15,
144:16, 144:19,
159:12, 176:9,
180:13, 181:17,
182:21, 183:9,
191:16, 200:1,
219:7, 225:5,
240:1

**besides**
19:4, 49:1,
101:19, 142:19,
215:19

**best**
15:8, 55:9,
91:11, 162:19,
162:21, 163:1,
164:16, 165:22,
191:6, 231:2

**better**
25:7

**between**
53:13, 54:8,
91:2, 129:10,
131:5, 133:19,
133:20, 172:15,
173:1, 174:4,
174:17, 176:11,
177:18, 178:17,
180:18, 192:6,
201:21, 236:10

**beyond**
99:13, 139:2,

187:20
**bia**
91:8, 91:9
**biden**
115:14
**big**
107:1
**bill**
8:1, 44:14
**bit**
37:4, 100:5,
119:17
**bizchoff**
48:6, 48:11,
48:13, 49:2,
55:12, 55:13,
75:1, 98:16,
98:17
**blanket**
176:10
**board**
85:22
**boasberg**
219:8
**bond**
86:1
**boof**
58:8
**bookend**
236:19
**books**
141:4
**boom**
22:12
**border**
107:3, 107:12,
108:17, 111:17,
137:20, 138:10,
151:7
**both**
80:9, 100:5
**bottom**
113:4, 198:13
**brain**
221:5
**branch**
69:21, 76:14,
78:13, 119:11,

165:7, 183:13,
215:10, 216:9,
216:15
**brantley**
26:3
**bravo**
22:3
**breach**
13:14, 14:22
**break**
17:16, 17:17,
17:20, 116:12,
136:21, 168:14,
169:4, 212:21,
229:17, 230:6
**breaking**
103:22
**brendan**
49:9, 50:6,
50:9, 55:14,
59:13, 74:21,
91:18, 93:14,
98:16, 122:21,
155:7, 182:13,
182:22, 183:1
**bridge**
4:5
**brief**
24:16, 24:17,
47:8, 73:6, 73:7
**briefly**
26:19, 26:21,
29:15, 73:4
**bring**
23:2, 151:11
**brother**
183:4
**brought**
13:4, 13:8
**browne**
4:21, 8:5, 27:6
**buck**
79:18, 79:20,
80:1
**buddy**
155:7
**budget**
193:2

**bukele**
133:20, 170:15,
190:15, 200:17
**bunch**
122:19, 145:4,
153:17
**bureau**
67:14, 67:15
**bureaus**
28:6
**business**
83:8

---
**C**
---

**call**
9:4, 35:17,
36:8, 39:14,
45:18, 46:10,
48:11, 49:4,
155:7, 185:1,
190:11, 209:7
**called**
20:13, 20:22,
21:11, 44:3,
46:1, 48:13,
70:19, 89:8,
114:7, 230:12,
231:11, 231:17
**calling**
23:1, 63:7,
134:17
**calls**
42:1, 42:20,
44:7, 54:13,
56:13, 57:14,
58:17, 64:11,
66:17, 68:2,
69:17, 71:19,
84:20, 87:4,
90:14, 93:5,
94:20, 95:21,
97:15, 102:3,
103:15, 105:12,
112:5, 117:7,
117:21, 118:14,
132:11, 142:17,
144:8, 155:15,
165:1, 171:6,

173:7, 175:17,
178:21, 188:8,
190:8, 194:16,
199:5, 207:4,
209:21, 224:20,
231:21, 234:14
**came**
23:17, 36:14,
36:19, 65:15,
95:7, 193:1,
193:11, 193:12,
193:13
**camera**
57:20, 59:9
**camp**
22:4, 23:5
**campaign**
183:5
**campus**
214:21
**can't**
22:3, 49:10,
50:17, 84:8,
91:5, 91:19,
96:4, 99:22,
100:2, 100:3,
102:21, 125:20,
138:19, 153:7,
154:13, 157:4,
158:8, 159:22,
173:10, 173:13,
176:22, 195:6,
212:14, 213:21,
229:10, 232:17,
232:18, 236:17
**cancelled**
147:14
**candidate**
20:21
**cannons**
22:12
**cannot**
58:4, 161:3,
176:17, 217:18,
217:19
**capacity**
11:21, 70:11,
122:14, 126:2,

Case 8:25-cv-00980-PX   Document 129-2   Filed 05/27/25   Page 252 of 292   FILED UNDER SEAL
CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

250

127:20, 214:22
**caption**
84:6, 113:12
**career**
20:3, 96:19
**carefully**
11:6
**carolina**
22:5
**carrying**
171:17, 171:18
**case**
1:6, 7:6, 10:3,
10:7, 10:21,
11:8, 11:18,
12:15, 12:16,
13:1, 14:10,
26:11, 28:21,
29:10, 30:1,
30:10, 30:11,
31:2, 31:16,
32:12, 41:19,
54:7, 56:22,
57:1, 57:2,
57:3, 57:5,
57:6, 57:10,
58:10, 60:19,
77:3, 77:8,
78:2, 78:9,
79:6, 79:7,
85:11, 91:10,
101:9, 102:14,
106:4, 106:9,
110:10, 111:20,
113:2, 113:7,
114:18, 115:11,
122:15, 126:11,
129:19, 129:22,
130:3, 131:2,
137:11, 146:3,
153:15, 155:3,
155:4, 203:10,
206:8, 212:11,
219:4, 219:8,
219:20, 219:21,
220:2, 220:5,
220:9, 220:10,
220:18, 221:1,

221:18, 222:11,
222:14, 222:17,
223:5, 223:11,
223:17, 224:8,
225:4, 242:15
**cases**
41:8, 41:13,
52:20, 52:21,
53:16, 57:4,
153:16, 179:20,
186:21, 222:19
**casual**
19:12, 19:16
**catholic**
20:13
**caught**
135:18
**causes**
13:15, 13:18,
13:22, 14:20
**caution**
152:9, 211:1,
212:13
**cautions**
229:1
**caveat**
156:20, 158:3,
162:17, 165:19,
168:8, 239:21,
239:22
**caveats**
186:17, 195:2
**cbp**
44:15, 143:1,
160:8
**cc'd**
158:2
**cecot**
71:12, 71:15,
71:17, 72:4,
72:17, 72:19,
75:10, 75:14,
95:4, 187:16,
194:6, 198:16,
199:3
**center**
69:5
**cerna**
5:14, 37:17,

38:4, 40:15,
82:14, 82:16,
83:2, 84:17,
85:3, 85:5,
85:11, 89:17,
171:13, 221:16,
222:1, 223:10
**cerna's**
38:12, 172:2
**certain**
27:12, 81:15,
119:12
**certainly**
50:16, 51:19,
129:18, 184:11,
187:21, 221:21
**certification**
242:21
**certify**
242:3, 242:6
**certifying**
242:24
**cetera**
77:12, 130:19
**chain**
4:5, 50:2,
50:11, 50:19,
51:2, 51:6,
51:9, 55:4,
55:6, 55:11,
55:16, 56:6,
56:8, 125:19
**chains**
55:19, 74:20,
122:20, 133:2
**change**
95:8
**changed**
146:19
**chapter**
229:11
**characterization**
167:9, 186:5,
197:7
**charge**
170:1, 170:6,
170:8, 170:10,
170:19, 170:20

**charged**
81:5, 81:6,
81:15, 81:21
**check**
75:6, 75:8,
76:1, 76:10,
76:18, 82:8
**checked**
94:8, 94:11
**checking**
79:5
**chief**
27:6, 194:1
**chiefs**
27:5
**christendom**
20:14
**circle**
137:2
**circuit**
78:9, 238:14
**circuit's**
238:4, 238:18,
239:1
**circumstance**
52:7
**circumstances**
60:3, 60:8,
212:11
**citations**
11:14
**cite**
133:13
**cited**
235:3
**citizen**
107:14, 171:21,
202:10
**citizens**
200:17
**clarification**
239:2
**clarify**
134:14, 190:3,
227:11
**clarifying**
109:3, 128:7,
238:19

**class**
21:1, 24:7
**cleaned**
170:15
**clear**
26:11, 83:12,
100:9, 108:10,
124:8, 170:18,
211:1, 211:2,
236:19, 241:8
**clerk**
26:2, 26:4,
26:5
**clerked**
26:10
**client**
30:18, 124:20,
129:15, 236:13
**clients**
131:5
**close**
51:22, 52:3
**closely**
41:15, 54:22,
55:1
**clr**
1:22, 2:13,
242:2, 242:20
**collected**
203:7
**collection**
202:22, 203:6,
203:7, 203:12,
203:14, 204:9,
206:7, 206:8
**collective**
237:13
**college**
20:12, 20:13,
20:14
**com**
3:10, 3:11,
3:18, 4:7
**come**
34:18, 41:16,
48:20, 53:6,
53:10, 78:5,
139:21, 153:11,

168:10, 229:17,
240:1
**comes**
111:17, 114:1,
148:10, 148:14,
167:3, 201:3
**comfortable**
182:1
**coming**
139:7, 151:17,
193:19
**command**
21:10, 25:1
**commanding**
24:22
**commissioned**
217:13, 217:14
**commitment**
143:18
**committed**
109:11
**committing**
148:13
**common**
195:6
**communicated**
91:14, 95:3,
96:10
**communicates**
120:1
**communication**
175:18, 218:6
**communications**
35:3, 41:6,
42:1, 42:20,
44:10, 48:21,
49:5, 54:13,
57:14, 61:2,
64:11, 66:18,
66:20, 68:2,
68:21, 69:17,
71:20, 73:1,
74:16, 84:20,
87:4, 87:6,
90:14, 90:16,
93:5, 94:20,
95:22, 97:9,
98:8, 102:3,

117:7, 117:21,
118:15, 120:4,
120:9, 132:11,
136:8, 144:8,
145:12, 172:10,
178:8, 178:22,
179:1, 179:2,
179:4, 184:21,
186:1, 186:14,
188:10, 190:10,
194:17, 196:22,
197:1, 197:3,
199:6, 207:5,
210:1, 234:15
**company**
14:9
**compiled**
29:16, 29:17
**complaint**
41:9, 41:19,
45:19
**complaints**
41:14
**completely**
146:2
**completeness**
158:10
**compliance**
77:11, 192:2,
192:5, 192:12,
192:18
**complicated**
127:3, 237:4
**complied**
78:10, 79:9,
79:16
**complying**
77:3, 77:8,
78:1, 113:7,
113:8
**component**
27:6, 28:1,
28:2, 143:12
**components**
27:1, 28:6,
28:8, 45:1,
78:20, 137:17,
138:9, 143:11

**compound**
103:20, 227:22
**comprehensively**
164:4
**concern**
39:17
**concerned**
106:2
**concerns**
39:20
**conclusion**
224:21, 231:22
**concurrently**
23:16
**conditions**
76:3
**conduct**
192:16
**conducted**
76:20
**confer**
40:11
**conferred**
40:12
**confident**
32:7, 61:3,
61:4, 66:21,
184:15, 189:19,
197:6
**confidential**
1:11, 14:14
**confinement**
69:5, 198:19,
200:14, 200:21,
201:11, 202:2,
213:4, 236:11
**confirm**
70:20, 72:16,
72:18, 93:1,
209:12
**confusing**
77:5, 221:3
**congress**
149:13
**consider**
210:6
**considered**
223:15, 224:5,

224:8
**considering**
212:2
**consistent**
36:11
**constitution**
113:15, 113:16,
116:8, 216:12
**constitutional**
114:2, 216:12
**consult**
73:9, 128:17
**consulted**
122:17
**cont'd**
4:1, 4:2, 6:1
**contained**
90:19, 132:6
**content**
11:15, 61:1,
90:16, 95:21,
100:1, 118:17,
122:6, 122:8,
129:8, 178:21,
179:4, 201:2,
208:10, 221:17
**context**
212:10, 221:22,
236:14
**continue**
111:10, 111:14,
111:15, 111:16,
150:10, 202:19
**continued**
3:20, 198:16,
198:18, 200:13,
200:21, 201:9,
202:2, 213:3
**continues**
202:20
**continuing**
63:15, 112:16
**contract**
13:13, 13:14,
14:22, 15:1
**control**
242:23
**controls**
30:7

**conversation**
19:13, 73:7,
93:17, 101:16,
118:18, 119:9,
125:18, 125:21,
126:1, 126:5,
133:19, 133:20,
157:5
**conversations**
19:16, 93:9,
96:5, 97:15,
99:22, 100:1,
101:6, 101:9,
101:12, 105:5,
117:10, 117:14,
117:18, 118:2,
119:2, 120:21,
121:1, 121:16,
122:2, 122:6,
122:13, 123:20,
125:9, 129:1,
129:9, 129:17,
130:22, 133:1,
133:2, 133:5,
133:11, 133:16,
134:3, 136:2,
152:15, 153:20,
155:1, 155:2,
156:3, 177:4,
179:20, 179:21,
180:1, 207:17,
208:4, 208:8,
225:3
**cooperate**
182:4
**coordinate**
139:15
**coordinated**
129:21, 155:11,
155:17, 156:16,
158:11
**coordinating**
157:9
**coordination**
129:20
**copious**
168:9
**copy**
10:16, 10:17,

205:13
**corps**
20:20, 21:18,
23:14, 23:15,
23:20, 25:20
**correct**
43:17, 59:10,
63:1, 69:15,
70:9, 84:4,
89:6, 90:3,
100:13, 110:6,
117:2, 120:8,
123:2, 143:4,
143:5, 143:11,
158:19, 165:10,
168:8, 169:6,
170:10, 180:13,
189:22, 202:9,
206:5, 207:14,
225:1, 225:2,
237:8, 237:14,
237:16, 241:4,
241:8, 242:7
**corrected**
146:18
**correctly**
8:20, 59:5,
78:4, 139:11,
162:14, 171:14
**could**
85:12, 93:2,
107:2, 117:18,
117:19, 118:11,
121:17, 125:14,
129:2, 135:12,
135:16, 135:17,
140:14, 142:6,
142:7, 146:18,
148:11, 148:12,
148:15, 148:21,
183:10, 189:14,
190:5, 191:21,
193:22, 198:8,
211:10, 212:5,
236:21, 236:22,
239:6
**counsel**
7:14, 9:13,

10:17, 11:22,
12:2, 12:3,
12:7, 14:3,
17:11, 17:12,
18:9, 18:10,
18:11, 18:12,
18:19, 19:4,
19:5, 19:6,
19:7, 20:2,
24:12, 25:15,
25:19, 26:8,
26:17, 26:18,
26:22, 27:2,
27:3, 27:4,
29:14, 35:13,
36:1, 39:11,
39:21, 40:12,
50:17, 58:2,
70:7, 73:9,
77:9, 120:16,
120:19, 122:17,
123:8, 123:16,
126:2, 126:9,
126:13, 128:1,
128:18, 135:1,
171:12, 176:2,
181:14, 181:22,
187:2, 202:18,
205:2, 205:13,
214:1, 217:22,
229:2, 232:12,
237:21, 238:1,
242:12
**counsel's**
19:8, 19:9,
181:19, 213:13
**counsels**
27:7
**countries**
139:5, 173:1,
174:17, 183:19,
201:21
**country**
44:5, 108:8,
111:22, 112:18,
114:20, 114:22,
115:6, 116:7,
139:20, 140:9,

Case 8:25-cv-00980-PX    Document 129-2    Filed 05/27/25   Page 255 of 292
FILED UNDER SEAL
CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

253

141:15, 149:2, 151:17, 160:10, 170:16, 190:15, 202:11, 209:11

**county's**
145:15

**couple**
9:2, 60:6, 124:17, 132:6, 154:1, 154:5, 156:13, 157:18, 204:11, 206:9, 212:20, 219:1, 236:2

**course**
21:1, 77:15, 83:8, 94:11, 99:11, 109:16, 111:2, 142:11, 160:19, 168:18, 234:1

**court**
1:1, 7:5, 8:9, 16:13, 63:16, 73:12, 74:7, 76:7, 77:3, 77:8, 77:12, 78:9, 78:10, 79:6, 79:8, 79:15, 84:18, 88:22, 110:1, 110:9, 110:13, 110:14, 111:4, 113:1, 113:7, 113:8, 118:4, 144:13, 179:17, 179:20, 206:22, 218:13, 218:21, 219:12, 222:11, 233:9, 233:18, 235:17, 240:13, 241:2, 241:19

**court-ordered**
105:3

**courts**
144:11, 160:22

**cover**
176:10

**covered**
177:7, 180:3, 181:20

**covers**
178:14, 221:15, 221:19

**crazy**
28:5, 115:16, 195:7, 212:18

**create**
224:16, 228:7

**created**
28:18

**creating**
126:3

**credible**
135:13

**crime**
109:11

**criminal**
25:14, 25:19, 170:10, 170:20

**criminals**
139:6

**cross-talk**
59:20, 108:6, 110:16, 121:19, 126:15, 137:19, 164:14, 222:22

**cross-wise**
126:6

**crr**
1:22, 2:13, 242:2, 242:20

**cs**
49:12

**curly-headed**
50:5

**current**
26:7, 63:20, 92:10, 92:11, 93:2, 95:15, 99:16, 207:14

**currently**
69:4, 151:15, 212:11

**custodial**
63:20, 92:11

**custodian**
88:6

**custody**
44:5, 46:2, 46:14, 47:19, 74:12, 93:3, 95:9, 111:9, 111:11, 111:15, 116:21, 117:5, 119:8, 125:12, 129:4, 146:11, 156:18, 157:11, 162:4, 164:21, 208:18, 210:13, 212:12, 225:14, 227:20, 234:12, 235:1

**customs**
137:20, 138:10

**cyber**
187:7

**D**

**dad**
20:8

**daily**
63:17

**danger**
224:17, 226:3, 227:7, 228:4

**data**
58:11, 59:1, 59:18

**databases**
83:6

**date**
7:7, 10:19, 10:20, 29:5, 30:2, 40:21, 53:10, 125:21

**dated**
5:15, 67:11

**dates**
29:22, 30:6, 206:12, 211:19

**day**
21:6, 21:8, 24:6, 26:4,

26:5, 26:7, 26:16, 26:17, 37:8, 38:2, 41:16, 51:7, 51:22, 52:1, 53:8, 59:21, 63:15, 65:6, 65:17, 68:9, 89:10, 90:8, 94:12, 98:21, 112:18, 145:17, 151:2, 151:18, 168:10, 207:7, 207:12, 207:13, 242:17

**days**
21:21, 21:22, 45:20, 54:7, 130:10, 153:4, 154:5

**dc**
1:16, 2:9, 3:8, 3:17, 4:15

**deal**
107:2

**dealing**
180:1

**deals**
119:15, 119:16, 180:2

**debate**
232:13

**decency**
195:6

**decide**
189:15, 222:9

**decided**
137:7

**deciding**
60:12, 231:7

**decision**
86:1, 86:2, 87:20, 160:12, 231:4, 231:17, 232:16, 232:20, 232:21, 233:8, 233:15, 234:5, 234:21, 235:10,

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025

254

238:4, 238:18
**decisionmaker**
42:11, 78:16,
108:4, 112:22
**decisionmakers**
42:10, 77:15
**decisionmaking**
113:6, 229:14
**decisions**
143:12, 217:17,
233:2, 233:12,
234:7, 234:10,
235:18
**declarant**
89:7, 104:20,
206:13
**declarations**
18:8, 30:2,
30:10, 30:11,
31:2, 31:7,
31:15, 32:11,
72:14, 76:7,
93:16, 112:10,
116:10, 117:15,
119:5, 130:3,
130:9, 130:13,
131:2, 131:8,
131:12, 131:13,
131:15, 132:1,
133:13, 135:7,
142:13, 149:4,
153:3, 154:5,
162:10, 203:1,
203:2, 203:10,
204:11, 206:8,
206:12, 207:2,
208:2, 208:15,
219:8, 219:12,
219:20, 221:6,
221:12, 221:15,
221:20, 222:10,
222:19, 222:21,
223:4, 223:13,
226:9, 227:2,
228:8, 232:22,
233:1, 234:2,
235:20, 239:19
**declares**
83:2

**defeat**
219:16
**defend**
112:18
**defendant**
70:12, 83:13
**defendants**
1:9, 4:10, 8:4,
63:17, 63:22,
64:2, 68:10,
89:15, 92:12,
92:14, 102:10,
103:5, 103:8,
103:13, 104:8,
104:12, 105:1,
105:4, 105:7,
130:5, 211:17,
214:6, 237:7,
237:12, 238:9,
239:15
**defense**
25:14, 25:15,
25:19, 119:21,
241:12
**definitely**
44:17, 101:8,
123:12, 153:15,
184:5, 199:16,
208:8
**degree**
20:16
**delegated**
113:21, 137:16,
138:9, 139:22,
140:2
**delegation**
138:12, 138:13,
212:7
**delegations**
138:14, 141:3
**deliberating**
126:3
**deliberation**
232:17, 232:19
**deliberations**
232:21, 233:4
**deliberative**
33:18, 35:16,

38:15, 39:8,
42:2, 46:22,
47:2, 54:14,
56:13, 57:15,
58:17, 61:7,
72:22, 74:15,
100:14, 100:15,
124:10, 124:22,
130:18, 132:12,
134:15, 165:2,
166:7, 167:14,
173:18, 174:8,
175:18, 178:7,
179:1, 180:4,
184:20, 185:21,
188:9, 190:9,
194:16, 196:22,
199:7, 209:22,
229:2, 229:7,
230:7, 232:7,
232:10, 232:14,
233:21, 234:15
**departed**
171:19
**department**
4:12, 8:4, 8:6,
8:8, 11:18,
27:22, 32:10,
42:16, 43:6,
43:13, 43:16,
44:3, 44:22,
45:22, 46:12,
46:13, 46:17,
47:18, 48:1,
55:10, 59:13,
59:14, 60:10,
61:13, 66:14,
67:16, 67:20,
69:22, 70:8,
74:6, 74:10,
74:11, 74:17,
74:19, 74:21,
75:19, 76:17,
76:19, 76:21,
77:1, 77:6,
77:22, 79:7,
91:15, 91:16,
98:12, 101:7,

104:14, 108:12,
111:7, 111:11,
111:12, 112:2,
113:1, 113:22,
115:4, 116:1,
119:9, 119:15,
119:21, 120:17,
120:20, 121:17,
122:20, 142:20,
150:7, 153:2,
154:4, 155:4,
155:10, 156:15,
158:11, 183:9,
183:18, 184:1,
184:3, 192:16,
193:1, 193:8,
193:10, 193:14,
193:20, 194:3,
207:8, 210:3,
210:5, 211:8,
211:9, 211:10,
213:6, 213:7,
213:16, 213:19,
216:5, 239:2
**departments**
119:14, 153:13
**depending**
125:15
**depends**
201:1, 233:6
**deployed**
23:17, 141:13,
141:14
**deported**
174:6, 195:13
**depos**
7:10, 8:10
**deposed**
12:10, 15:9,
19:3, 19:18
**deposition**
1:13, 2:3, 5:8,
5:9, 6:3, 7:3,
7:11, 9:12,
9:13, 9:15,
9:21, 10:3,
10:8, 11:9,
17:3, 18:2,

18:19, 19:1,
19:2, 89:20,
122:15, 240:11,
240:20, 241:11,
241:16, 242:14
**depositions**
15:12, 15:16,
15:18
**deputy**
78:18
**dereliction**
116:5
**describe**
26:21, 114:12,
114:13, 116:9,
119:5
**described**
106:20, 112:10,
122:5, 137:6,
149:3, 160:20,
208:19, 235:3,
239:18
**describes**
132:20
**description**
24:17, 139:2
**designation**
144:6, 145:8
**desk**
78:6
**detail**
58:5, 153:7,
186:6
**details**
101:10, 114:14,
135:16, 184:7,
213:9, 239:5
**detain**
108:4, 148:11,
148:14, 150:18,
160:17, 167:6
**detained**
69:6, 160:7,
160:18, 178:4,
183:21, 185:17,
187:12
**detainees**
177:19

**detaining**
111:19, 161:7,
178:19
**detention**
107:1, 183:19,
194:6, 198:16
**determination**
161:2, 185:16,
234:21
**determinations**
234:10
**determine**
99:15, 187:18
**determined**
117:18, 118:11
**determining**
196:15
**dhs**
4:21, 4:22,
11:22, 12:2,
19:5, 19:6,
19:11, 20:2,
27:2, 44:13,
47:17, 49:14,
49:15, 50:11,
55:7, 60:2,
76:9, 76:11,
76:17, 77:7,
80:1, 83:6,
83:8, 98:19,
101:6, 117:12,
118:18, 118:21,
119:4, 120:10,
137:15, 137:16,
138:7, 142:8,
142:14, 148:4,
149:6, 149:13,
149:15, 151:8,
151:15, 151:21,
151:22, 157:9,
193:12, 193:13,
194:2, 208:16,
209:7, 209:10,
212:6, 215:21,
215:22, 223:14,
223:15, 225:4,
236:4
**dhs's**
138:5

**different**
29:4, 29:22,
45:1, 76:15,
78:20, 95:12,
109:10, 123:18,
164:13, 176:4,
195:20, 216:10,
217:9
**difficult**
127:2
**diplomacy**
183:12, 192:16,
240:9
**diplomatic**
183:14, 192:19,
224:18, 226:4,
227:8, 228:5,
239:3, 239:5,
240:5
**direct**
33:5, 82:19,
86:7, 163:11,
242:23
**directed**
60:16
**directly**
27:18, 75:4
**director**
38:5, 82:16
**disagree**
29:5
**discipline**
80:15
**disclose**
30:19, 33:21,
41:6, 42:22,
43:12, 44:10,
46:8, 84:22,
174:11
**disclosing**
35:2, 38:18,
42:5, 49:7,
154:10, 161:20,
175:21, 178:10,
239:4
**disclosure**
45:9, 224:17,
226:3, 227:8,

228:4
**discovery**
5:10, 5:20,
10:7, 10:22,
11:8, 18:6,
31:22, 32:9,
57:7, 118:9,
225:11, 240:14,
240:19
**discretion**
150:12
**discretionary**
150:19
**discuss**
56:22, 57:1,
57:10, 210:18
**discussed**
19:3, 93:10,
93:18, 136:7,
156:9, 174:13,
175:4, 191:18,
191:21, 213:1,
241:18
**discussion**
195:1, 195:3,
214:3, 218:17
**discussions**
120:10, 131:19,
177:6, 233:3,
239:3, 239:5,
239:11, 239:12,
239:17, 240:5
**dismiss**
84:11
**distilled**
101:17, 117:14,
133:13, 235:19
**district**
1:1, 1:2, 7:5,
26:3, 39:16
**divided**
119:13
**division**
7:6, 27:5,
27:21
**divisions**
28:6
**do-outs**
58:7, 58:12,

58:14, 59:3
**docket**
28:21, 233:9
**docketed**
10:21
**document**
9:9, 10:20,
11:1, 28:19,
28:20, 29:18,
240:15
**documents**
9:11, 28:21,
29:1, 85:18,
233:18
**doing**
61:9, 75:10,
115:2, 133:18,
144:22, 145:1,
155:8, 165:15,
189:21, 209:12,
233:22
**doj**
28:5, 49:14,
49:15, 50:5,
51:20, 55:7,
75:3, 88:19,
89:1, 89:3,
93:14, 98:14,
101:7, 101:8,
122:14, 122:20,
126:6, 126:14,
129:10, 129:15,
129:20, 134:14,
155:4, 207:7,
222:12, 223:10,
229:13
**doj's**
123:17
**dome**
194:2
**domestic**
69:7, 105:17,
105:20, 106:21,
112:14, 147:20,
147:22, 148:3,
149:7, 149:21,
150:4, 150:13,
151:8, 151:16,

210:13, 239:1
**dominion**
80:7
**donald**
27:11
**done**
43:6, 57:4,
58:9, 72:16,
72:18, 105:1,
105:4, 116:20,
117:4, 129:20,
143:19, 149:9,
151:20, 151:21,
151:22, 152:4,
152:22, 154:4,
154:14, 154:17,
154:20, 155:9,
161:3, 229:18,
229:19, 230:16
**doubt**
71:7
**down**
22:13, 25:14,
75:21, 75:22,
76:2, 97:21,
104:1, 168:12,
227:15
**dozen**
153:16
**drew**
102:13, 122:21
**due**
30:13, 31:3,
31:12, 110:22,
160:18, 160:19,
160:21
**duke**
180:10
**duly**
8:13, 242:3
**dumb**
153:19
**dump**
58:11, 59:1
**duplicate**
5:21
**during**
24:8, 25:3,

25:9, 126:1,
129:16, 129:18
**duties**
26:22, 119:12,
216:4
**duty**
116:5

**E**

**e-o-i-r**
85:21
**each**
63:15, 68:9,
89:10, 90:8,
131:12, 133:4,
135:7, 159:1,
203:13, 207:13,
208:12, 208:15,
218:9, 230:11,
234:4, 234:5
**earlier**
30:11, 42:7,
77:18, 82:15,
83:11, 108:20,
108:21, 155:1,
186:18, 198:6,
206:15, 207:22,
208:2, 237:6
**early**
24:6
**eastern**
1:18
**easy**
221:13
**ecf**
90:20
**education**
20:3, 20:4,
20:7, 21:5,
21:10, 23:21,
25:1
**efficient**
182:3
**effort**
182:3, 203:4
**efforts**
121:2, 224:15
**eior**
85:20, 85:21

**either**
60:11, 96:5,
111:19, 123:9,
128:1, 136:2,
207:17, 215:5,
222:8, 240:3
**elected**
27:11
**electronic**
48:21
**element**
232:14
**elicit**
226:2
**eliminate**
111:20
**else**
18:18, 19:10,
29:19, 50:10,
57:10, 57:20,
59:7, 59:16,
61:12, 74:5,
96:12, 98:4,
99:14, 130:10,
132:7, 132:8,
145:19, 151:20,
155:11, 186:14,
210:4, 228:9,
228:18, 241:2
**email**
49:9, 49:10,
50:1, 50:11,
50:17, 50:18,
51:2, 51:6,
51:9, 52:6,
55:4, 55:6,
55:16, 55:19,
56:6, 56:8,
74:20, 93:10,
97:15, 122:20,
125:19, 133:2,
156:8, 158:4,
159:7, 164:15,
191:2, 215:17,
215:19
**emailed**
70:19
**emails**
48:22, 49:1,

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

257

52:4, 75:1,
91:18, 96:3,
98:2, 98:5,
98:13, 102:18,
105:6, 133:5,
133:16, 134:3,
136:2, 136:15,
136:18, 136:20,
144:2, 158:3,
162:18, 186:18,
191:18, 191:21,
207:8, 207:9,
240:2
**embassy**
44:4, 69:3,
209:18
**emphasis**
135:3
**employed**
215:12, 215:16,
216:7, 216:8,
242:12
**employee**
45:5, 215:21,
216:3, 216:21,
216:22, 217:3,
217:4, 217:6,
217:9
**employees**
83:7, 96:17,
96:19, 111:17,
112:17, 150:10,
209:7, 216:8,
217:17
**employment**
187:9
**encompass**
45:1
**end**
125:7, 241:15
**enemies**
171:18
**enforcement**
38:5
**engaged**
239:2
**enlist**
209:16

**enlisted**
21:14
**enough**
169:16
**ensign**
102:13, 122:21
**ensure**
77:14
**ensures**
77:11
**ensuring**
77:7, 79:8,
79:15
**enter**
107:14, 142:7,
195:4, 195:5
**entered**
109:11
**entering**
105:22, 112:15,
150:16
**entire**
78:4, 156:12,
206:7
**entirely**
117:3, 170:18
**entities**
159:1
**entitled**
198:15
**entry**
106:11, 106:14,
108:2, 111:18,
148:10, 148:17,
148:18, 150:11,
150:12, 159:19,
166:14, 167:4
**equivalent**
169:14
**erez**
50:4, 59:11,
98:11
**error**
30:14, 31:4,
31:9, 31:12,
31:14, 32:12,
33:8, 33:12,
33:16, 34:3,

34:9, 52:15,
52:17
**esq**
4:21, 4:22
**esquire**
3:3, 3:4, 3:13,
4:3, 4:11
**establish**
40:18
**established**
82:15, 105:15,
112:12, 112:13,
148:7, 149:8,
149:10, 149:12,
149:15, 150:3,
161:6
**et**
1:5, 1:8, 5:11,
7:4, 63:18,
77:12, 130:19
**evan**
90:20
**even**
16:10, 20:10,
44:16, 72:15,
81:16, 87:1,
97:1, 120:10,
189:9, 223:5,
223:6, 231:8,
232:2, 235:3,
235:16
**events**
29:22, 30:1
**eventually**
15:3, 20:10,
97:2, 110:19
**ever**
80:12, 80:14,
81:20, 109:14,
125:19, 140:13
**every**
21:14, 24:2,
32:4, 32:5,
36:1, 51:7,
59:2, 99:5,
99:8, 112:17,
125:17, 125:18,
133:15, 138:11,

151:2, 151:18,
168:10, 180:5,
206:17, 207:7,
207:12, 208:9,
221:1, 230:11
**everybody**
78:4, 96:9,
97:14, 119:16
**everybody's**
113:14
**everyone**
96:11, 96:13,
216:7
**everything**
54:21, 55:1,
62:13, 91:12,
94:2, 118:8,
129:19, 129:21,
145:19, 160:20,
175:5, 221:20,
221:21, 233:21,
236:17
**evidence**
84:17
**exact**
114:14, 153:7
**exactly**
35:8, 36:19,
49:9, 96:4,
106:20, 125:22,
186:10, 231:7
**examination**
5:2, 8:15
**examined**
8:13
**example**
209:11, 209:16,
209:17, 210:5,
233:7, 233:15
**except**
59:8
**excess**
23:22
**exchange**
188:5
**executed**
37:20, 38:2,
171:22

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

258

| | | | |
|---|---|---|---|
| **executing** 168:1 | **exhibits** 203:18 | **facilitate** 63:22, 64:2, | 233:3 **fair** 165:13, 222:4, |
| **executive** 69:21, 76:14, 78:13, 85:20, 113:17, 114:4, 119:11, 165:7, 183:13, 215:10, 216:9, 216:15 | **exist** 85:10, 87:16 **existence** 51:8 **exists** 161:2, 179:14, 222:9 | 92:13, 92:14, 102:10, 103:9, 104:8, 105:9, 111:8, 111:18, 112:3, 116:21, 117:5, 117:19, 118:11, 118:20, | 232:4 **fairfax** 4:6 **fairly** 210:22 **fairness** 36:4 |
| **exercise** 150:12 **exh** 5:21 | **expand** 118:6, 118:10 **expect** 109:17, 109:22, 110:8, 193:6 | 118:21, 125:11, 139:6, 139:7, 157:14, 163:4, 163:17, 166:3, 166:13, 166:16, | **fall** 27:2, 27:3 **falsely** 109:14 **familiar** 17:3, 85:10, |
| **exhibit** 5:8, 6:3, 9:4, 9:5, 9:10, 9:20, 10:13, 10:18, 28:11, 28:15, 28:16, 28:17, | **expected** 23:14 **expecting** 110:17 **expedited** 5:10, 5:20, | 208:17, 211:18, 212:2, 224:15, 225:14, 234:11, 235:12, 238:20, 238:21, 240:5 **facilitating** | 114:6, 114:10, 114:11, 114:13, 114:15, 136:22, 139:3, 139:4, 141:9, 220:6 **far** |
| 33:1, 33:6, 37:13, 62:5, 62:15, 62:22, 63:4, 65:5, 67:2, 67:5, 67:7, 67:10, | 10:7, 10:22, 11:8, 31:21, 32:9, 240:19 **expeditionary** 25:3 | 107:5, 107:10, 119:7, 121:21, 121:22, 129:3, 210:7, 227:19, 230:17, 231:14, | 20:4, 81:3, 126:11, 143:22, 213:15 **favor** 109:21 **federal** |
| 67:19, 68:7, 68:10, 68:11, 82:3, 82:12, 88:8, 88:10, 88:13, 89:9, | **expiration** 187:13, 188:1 **explain** 29:15 **explore** | 231:18, 234:22, 239:17 **facilitation** 106:2, 106:8, 106:9, 106:19, | 216:8 **feel** 32:7, 84:5, 168:13 **feels** |
| 89:12, 89:13, 89:14, 89:17, 89:19, 89:20, 89:21, 90:1, 91:21, 92:5, | 198:15, 200:11 **expose** 224:17, 226:3, 227:8, 228:4 **extending** | 108:14, 162:10 **facilities** 190:16 **facility** 69:6, 194:6 | 39:12 **feissner** 1:22, 2:12, 8:10, 242:2, 242:20 |
| 132:18, 148:2, 149:3, 163:12, 163:13, 163:15, 166:11, 166:19, 166:20, 166:21, | 24:8 **extract** 210:13, 210:19, 211:5, 211:11, 211:21, 212:4, | **fact** 12:1, 19:3, 71:11, 72:3, 234:3 **fact-gathering** | **fellow** 135:18 **felony** 81:16 **few** |
| 171:12, 174:22, 175:4, 175:7, 175:8, 197:21, 197:22, 198:4, 198:7, 202:15, | 236:4, 236:20 **extraction** 210:18, 236:1, 236:8 **eyes** 168:10 | 131:1, 131:4, 131:20 **facts** 85:5, 109:3, 131:22, 169:17, | 21:10, 54:7, 124:16, 200:7, 213:1, 217:22, 230:4, 230:5 **field** |
| 204:6, 204:18, 207:19, 207:20, 210:10, 210:11 | **F** **f** 114:9 | 230:13, 230:20, 230:21, 231:3, 231:11, 231:16, | 38:4, 82:16 |

**fighting**
147:3
**figure**
62:1, 127:7,
149:1, 161:8,
179:18, 193:17,
193:18, 197:13,
197:15
**figured**
52:22, 53:2
**file**
37:8, 63:17,
89:16, 90:8,
90:11, 91:12,
92:7, 233:9
**filed**
37:6, 37:9,
38:13, 38:21,
39:1, 39:15,
40:16, 40:19,
43:8, 51:14,
52:1, 54:1,
54:8, 67:22,
68:8, 68:17,
86:18, 88:19,
222:10, 222:12,
223:5, 223:10
**filing**
37:12, 53:13,
76:7, 99:14,
103:12, 105:2,
129:19, 172:12,
179:17, 222:16
**filings**
41:7, 55:3,
61:6, 91:7,
91:9, 97:12
**fill**
141:4
**final**
34:4, 108:1,
147:11, 161:6,
229:19, 231:4,
231:17, 231:20,
232:1, 232:15,
232:19, 233:2,
233:8, 233:12,
233:15, 234:10,

234:20, 234:21,
235:10, 235:18
**finalize**
184:7
**finally**
165:21, 165:22,
167:17
**financial**
194:1, 242:15
**find**
29:7, 29:20,
95:14, 105:3,
118:22
**findings**
80:14, 145:14
**fine**
29:6, 29:8,
29:21, 30:8,
40:3, 80:21,
81:4
**fines**
80:22
**finish**
17:20, 152:6,
200:9
**finished**
25:11, 240:21
**fire**
22:21
**firm**
7:21
**first**
8:13, 9:16,
26:4, 26:5,
26:16, 26:17,
35:9, 41:16,
48:5, 60:5,
63:9, 68:12,
87:7, 90:1,
113:15, 122:4,
128:15, 140:13,
158:17, 160:1,
172:3, 199:10,
208:1, 217:13,
229:11, 242:3
**five**
40:1, 130:11,
166:15, 228:11,

240:20
**fleet**
22:2, 23:4
**flight**
171:21
**flights**
180:3
**floor**
2:8, 3:16, 7:12
**flown**
97:21
**flows**
113:19
**fly**
97:17
**focus**
119:17
**folks**
207:12, 207:13
**follow**
106:3, 106:8,
110:9, 110:18,
117:16
**follow-up**
45:11, 45:14,
45:15
**followed**
79:8, 106:4,
115:22
**following**
56:5
**follows**
8:14
**footnote**
198:9, 198:10,
198:14
**force**
23:4
**forcible**
210:18, 236:1,
236:8
**forcibly**
210:12, 210:19,
211:5, 211:11,
211:21, 212:4,
236:4, 236:20
**forcing**
110:20

**foregoing**
242:6, 242:21
**foreign**
34:12, 52:14,
76:20, 100:17,
100:22, 106:21,
107:15, 109:7,
115:13, 119:22,
120:1, 141:13,
141:14, 147:18,
158:22, 160:5,
160:14, 161:4,
161:5, 202:10,
202:11, 210:14,
237:2
**forget**
162:18
**forgotten**
164:8, 240:3
**form**
32:15, 43:9,
60:14, 61:16,
64:22, 66:5,
66:13, 66:16,
84:7, 99:10,
103:14, 107:20,
118:13, 122:18,
191:13
**forms**
87:15, 87:16,
87:19, 88:3,
161:10
**fort**
22:9, 23:3
**forth**
20:11, 121:12
**forward**
22:21
**found**
144:11, 144:12
**foundation**
127:9, 154:6,
170:4, 222:5
**four**
25:21, 130:10
**four-year**
20:16
**fourteenth**
2:7, 3:15

**fourth**
25:21, 78:9,
238:4, 238:14,
238:18, 239:1
**front**
20:12, 29:3,
30:4, 37:14,
44:16, 153:8,
198:7, 237:21
**frustrated**
140:22
**full**
25:22, 45:9,
63:9, 68:12,
90:1, 138:12,
154:3, 163:15,
163:21, 166:21,
241:5
**full-time**
25:11
**fully**
162:15
**fun**
19:19, 26:5
**function**
76:13
**funded**
23:21
**further**
63:16, 231:9,
240:16, 242:6
**future**
167:19, 168:2,
221:1, 235:11

G

**gangs**
187:19
**gap**
25:2
**garcia**
1:5, 7:4,
30:12, 31:3,
31:11, 33:15,
34:19, 41:20,
42:17, 43:7,
45:20, 60:13,
63:21, 69:4,

71:11, 72:4,
75:7, 76:1,
76:10, 76:18,
104:22, 115:11,
116:3, 119:8,
121:22, 133:7,
133:9, 142:9,
143:9, 143:22,
144:3, 145:21,
146:10, 146:12,
147:8, 147:21,
148:5, 150:5,
151:6, 153:10,
154:19, 155:2,
155:9, 155:13,
155:19, 156:4,
159:18, 161:15,
162:4, 164:20,
169:7, 170:3,
170:7, 170:20,
171:2, 171:20,
172:21, 178:4,
178:14, 178:15,
209:11, 209:19,
210:20, 211:5,
221:8, 223:6,
223:8, 223:18,
224:1, 224:13,
236:5, 238:22,
239:4, 239:6
**garcia's**
44:5, 46:14,
47:18, 51:18,
57:1, 60:3,
60:19, 61:14,
62:2, 65:11,
66:3, 74:12,
79:6, 86:11,
87:17, 92:11,
99:15, 101:13,
102:11, 103:9,
104:9, 105:9,
107:11, 111:8,
116:21, 118:12,
121:2, 125:11,
129:4, 142:15,
145:7, 152:8,
156:18, 157:11,

158:13, 163:4,
163:18, 166:4,
198:16, 199:2,
200:13, 201:8,
202:1, 208:17,
210:7, 213:3,
225:14, 227:20,
230:17, 231:19,
234:11, 235:1,
235:12, 240:6
**gathered**
131:14
**gathering**
207:14, 233:13
**gave**
94:13, 125:5,
188:14, 188:15,
189:9, 191:10,
191:11, 203:10
**general**
11:21, 12:2,
12:7, 19:8,
19:9, 20:2,
23:18, 25:1,
26:8, 26:17,
26:18, 26:22,
27:3, 27:4,
70:7, 77:9,
91:3, 120:16,
120:19, 123:8,
123:16, 126:2,
128:1, 135:1,
137:21, 138:2,
158:17, 171:11,
187:5, 219:9,
235:4
**generally**
14:19, 14:21,
19:22, 53:9,
76:20
**genius**
125:16, 153:19
**georges**
145:15
**getting**
19:18, 55:4,
127:11, 209:3,
220:3

**give**
23:22, 62:19,
77:10, 84:8,
99:7, 118:17,
126:22, 137:8,
160:17, 171:8,
182:8, 190:17,
203:13, 204:13,
205:4, 205:10,
211:6, 229:10
**given**
97:20, 164:11,
205:1, 212:10,
217:16
**gives**
10:20
**giving**
123:9, 126:3,
188:12, 211:20,
236:13
**go**
10:11, 14:10,
20:5, 20:20,
21:2, 22:12,
23:15, 24:1,
24:14, 24:15,
26:2, 39:19,
40:3, 52:10,
61:20, 63:11,
73:12, 73:14,
75:13, 124:7,
128:9, 135:13,
135:16, 136:11,
136:12, 137:2,
137:9, 161:1,
171:8, 183:14,
193:18, 194:11,
204:10, 204:21,
206:6, 211:11,
212:22, 215:15,
218:19, 220:12,
221:16
**go-around**
155:1
**goes**
58:21, 69:20,
157:12, 182:6
**going**
10:11, 17:1,

19:18, 20:11,
22:22, 28:10,
28:22, 29:14,
30:15, 32:21,
36:2, 37:3,
40:6, 42:7,
46:4, 46:21,
47:10, 52:21,
63:11, 67:7,
68:6, 72:21,
73:16, 76:11,
82:7, 82:19,
99:7, 106:3,
111:16, 115:12,
116:14, 118:17,
120:12, 128:11,
128:15, 148:18,
148:21, 148:22,
154:22, 155:8,
156:13, 159:9,
160:17, 161:8,
163:11, 168:15,
168:16, 168:20,
173:20, 179:19,
181:8, 181:16,
193:17, 197:19,
197:20, 200:6,
202:21, 203:1,
203:9, 203:16,
212:21, 214:1,
217:12, 218:18,
218:19, 221:18,
222:8, 223:7,
224:3, 224:9,
224:10, 226:10,
226:11, 229:21,
231:7, 234:21,
238:3, 238:13,
241:17
**gold**
191:10
**good**
7:16, 8:17,
8:18, 125:5,
174:2, 210:22,
237:19
**gotta**
58:13

**gotten**
80:20, 216:19
**gov**
4:17
**government**
96:17, 96:19,
110:19, 154:11,
154:12, 154:15,
154:16, 161:14,
162:3, 162:5,
163:3, 163:17,
164:18, 165:6,
166:2, 167:1,
169:13, 177:10,
177:17, 178:1,
182:11, 182:15,
190:16, 192:2,
192:12, 200:20,
209:16, 209:18,
211:6, 211:17,
212:18, 225:13,
225:16, 227:17,
230:16, 231:12,
231:18, 234:9,
234:20
**government's**
224:15
**governments**
120:1
**grab**
167:4
**graduate**
22:15
**graduated**
21:6, 21:7
**grant**
86:10, 87:9,
87:21, 137:7,
140:11
**granting**
5:10, 5:20,
10:22
**great**
8:22, 10:2,
11:11, 11:16,
28:9, 89:5,
231:2, 238:6
**greater**
21:18

**greatest**
236:16
**greenbelt**
7:6
**ground**
43:18, 75:6,
99:18
**grounds**
34:22, 38:16,
60:21, 68:19,
80:18, 98:8,
125:1
**group**
203:2, 203:22,
229:17
**guarantees**
24:14
**guess**
84:3, 140:3,
153:4, 156:6,
195:20, 209:3
**gunnery**
22:17
**guns**
21:17
**guy**
48:6, 50:5,
67:20, 75:1,
98:17, 139:13,
240:9
**guynn@usdoj**
4:17
**guys**
26:11, 93:15,
147:4, 155:9,
221:16

**H**

**habit**
16:2
**half**
153:16
**hand**
10:16, 10:17,
28:14, 203:4,
204:21, 242:17
**handed**
88:9, 198:3

**handful**
49:13
**handing**
62:8, 203:22
**happen**
159:21, 160:16,
185:16, 196:16
**happened**
15:2, 29:10,
30:1, 55:5,
104:21
**happens**
58:6, 58:7,
58:8, 168:11,
187:11, 188:1
**happily**
148:22
**happy**
17:17, 225:10
**hard**
16:2, 127:3,
146:3, 153:18,
153:20, 228:22
**harmless**
52:15
**he'll**
106:10
**head**
78:13, 78:21,
152:2, 157:19,
220:3, 220:16,
222:15, 223:14,
224:4, 224:9,
224:10
**headings**
118:22
**heads**
143:12, 222:11,
222:13
**health**
119:19, 160:3
**hearing**
13:20, 135:14,
137:11
**held**
2:4, 69:4,
218:17
**hell**
21:3

**help**
27:10, 29:9,
29:13, 139:5,
184:6
**helpful**
29:2, 29:7,
29:20, 30:3
**hemisphere**
67:15
**here**
7:2, 7:18,
10:2, 10:6,
11:7, 11:21,
12:1, 13:21,
16:11, 16:17,
18:7, 19:4,
23:12, 32:6,
36:3, 39:7,
39:11, 45:10,
57:6, 62:12,
65:15, 71:4,
71:10, 72:15,
78:15, 79:18,
84:12, 85:4,
88:10, 93:11,
111:6, 125:16,
133:22, 138:3,
140:22, 148:3,
148:14, 151:4,
153:19, 157:14,
171:8, 175:5,
176:9, 181:5,
201:20, 221:16,
228:11, 229:4,
229:5, 236:19
**here's**
61:21, 96:16,
125:15, 235:16
**hereby**
63:14, 242:3
**hereunto**
242:16
**hey**
23:1, 62:1,
147:2, 155:7,
193:17, 212:14,
231:6, 236:18
**hide**
232:5

**high**
23:8
**high-priority**
58:4
**himself**
106:10, 106:13
**hire**
26:4
**history**
20:3
**hmm**
224:2
**hold**
33:9, 132:16,
147:22, 196:14,
201:17
**holding**
100:8
**home-schooling**
20:10
**homeland**
8:6, 8:8,
11:18, 27:22,
32:11, 42:16,
43:6, 44:3,
44:22, 46:1,
46:12, 46:19,
48:1, 60:10,
61:13, 66:14,
70:8, 74:10,
75:19, 77:1,
77:6, 77:22,
79:7, 104:14,
108:13, 111:7,
111:12, 112:2,
113:1, 114:1,
115:5, 116:1,
120:17, 120:20,
121:17, 150:7,
155:10, 156:16,
158:11, 183:9,
184:3, 184:12,
193:1, 193:8,
193:10, 193:21,
210:5, 211:10,
213:19, 214:17,
216:5, 219:10
**honduras**
109:6

**honest**
43:13, 65:15,
156:12
**honestly**
52:2, 53:7,
53:14, 59:16,
96:4, 153:13,
156:10, 187:15
**honor**
22:15
**hope**
171:13, 204:13,
206:7
**hopefully**
162:12
**hopes**
229:18
**hour-old**
99:13
**hours**
18:17, 65:21,
99:5, 99:6,
99:8, 103:6,
104:22, 105:8,
166:15, 206:17,
228:11, 240:20
**house**
15:2, 187:19,
214:18, 214:21,
215:1, 215:12,
215:13, 215:17,
215:19, 215:20,
216:4, 216:9,
216:15, 216:21,
216:22, 217:2,
235:6
**hov**
24:8
**however**
221:11, 239:4
**huddle**
229:17
**huh-uh**
87:13
**human**
135:18, 187:7,
233:19
**humans**
109:9

**hundred**
239:22
**hundred-pound**
22:13, 22:19
**hundreds**
52:3

—————— I ——————
**ia**
141:12
**ice**
27:21, 30:12,
31:2, 31:10,
33:15, 38:6,
43:17, 43:21,
44:15, 45:4,
45:5, 45:8,
78:20, 78:21,
78:22, 82:16,
86:10, 86:21,
87:1, 87:9,
87:11, 137:17,
138:9, 138:20,
138:22, 139:5,
139:15, 141:12,
142:22, 159:22,
160:8
**idea**
52:2, 60:15,
61:21, 81:8,
142:19, 154:16,
178:11, 182:13,
182:14, 182:17,
185:13, 188:12,
188:17, 189:7,
189:20, 191:8,
191:12, 191:13,
192:17, 193:3,
193:4, 194:8,
201:12, 202:4,
240:7
**ideas**
212:18
**identification**
9:6, 10:14,
28:12, 33:2,
62:6, 67:3,
82:4, 198:1,

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025    263

203:19, 204:7,
204:19
**identified**
45:2, 181:14,
181:21, 207:1
**identify**
7:14, 160:5
**ii**
113:15, 113:16
**illegal**
107:14, 109:4
**illegally**
109:11, 139:14
**imagine**
50:18, 138:19,
140:15, 192:14,
194:21, 195:7
**immediate**
63:22, 92:13,
102:11, 103:9,
104:9, 105:9,
166:13, 166:17,
214:12, 214:15,
214:16
**immediately**
148:16, 167:6
**immigration**
4:13, 85:19,
85:21, 86:1,
91:6, 91:8,
114:6, 114:18,
137:7, 137:11,
143:6, 183:22
**impact**
16:16, 239:7
**impacting**
16:20
**implement**
27:10
**implementing**
27:13
**implicate**
197:3, 227:13
**implicates**
39:18, 228:13
**implications**
207:18
**important**
16:3, 43:4,

58:4, 110:15,
153:14, 153:16
**include**
130:1
**including**
10:8, 11:9,
28:21, 130:12,
130:22, 131:19,
138:9, 145:13,
198:17
**indemnify**
15:2, 15:3
**independent**
113:12, 127:10,
172:4
**independently**
67:18, 189:2,
189:5
**indicate**
196:12, 196:13
**indicated**
95:4
**indicating**
19:12, 57:5
**indication**
94:13
**individual**
11:21, 42:10,
52:8, 63:18,
138:14, 138:15,
148:10, 234:4
**individuals**
138:8, 143:15,
171:3, 172:21,
174:5, 174:18,
175:3, 178:19,
180:20, 187:12,
188:5, 189:15,
190:6, 195:12,
196:14
**infantry**
21:12
**inferior**
216:2, 216:11
**inform**
104:20
**initial**
86:6, 198:17,

199:2, 199:9
**initially**
53:3
**innocent**
111:3, 111:4
**inquiring**
179:17
**inquiry**
83:5, 84:15,
84:17
**insane**
116:4
**inside**
233:22
**insofar**
64:22, 78:5,
97:12, 106:2,
129:8, 141:6,
143:19, 215:16,
216:1, 235:2
**inspected**
160:1
**instance**
85:18, 96:10
**instigate**
55:19
**instigated**
55:15
**instruct**
30:18, 33:20,
36:10
**instructed**
17:12
**instructing**
134:19
**instruction**
181:19
**insurance**
12:16, 13:13,
14:9
**intelligence**
224:18, 226:4,
227:9, 228:5
**intended**
240:5
**interest**
191:14, 242:14
**interesting**
22:8

**intermediary**
233:12
**internal**
19:6, 19:7,
87:15, 87:19,
88:3, 93:13,
93:17, 186:13
**international**
138:20, 138:22,
139:1, 141:12,
155:12, 155:18,
156:17, 157:10,
158:12, 158:22,
159:3
**interrogatories**
214:6, 237:7
**interrogatory**
237:20, 238:9,
239:15
**interrupt**
23:6, 194:12
**interruption**
13:6, 24:10,
31:18, 38:10,
82:20, 105:19,
120:18, 126:19,
138:1, 176:13
**introduce**
7:19
**investigation**
206:21, 209:2
**invoked**
218:1, 219:5,
220:4
**invoking**
220:17
**involve**
66:22, 120:9,
141:21
**involved**
85:19, 126:11,
155:4, 238:22
**involves**
167:18, 237:2
**iran**
191:12
**irrelevant**
135:12

Case 8:25-cv-00980-PX     Document 129-2     Filed 05/27/25     Page 266 of 292
FILED UNDER SEAL
CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

264

**issue**
76:19, 143:1,
143:2, 146:11
**issued**
62:15, 64:7,
65:6, 65:21,
66:2, 143:8,
223:10
**itself**
208:12, 235:17

**J**

**jail**
76:3
**jails**
200:18
**james**
4:22, 8:7
**january**
26:9, 26:15
**jgg**
219:9
**job**
1:20, 96:18,
144:22, 145:1,
212:8
**jog**
37:4
**john**
123:1
**join**
20:20
**jonathan**
4:11, 4:17, 8:3
**jones**
26:10
**joseph**
1:14, 2:3, 5:2,
5:19, 6:5, 6:7,
6:9, 6:11, 6:13,
7:3, 8:12, 62:1,
241:16
**judge**
10:7, 11:8,
16:11, 16:13,
18:5, 25:13,
25:20, 26:2,
26:5, 26:10,

31:21, 32:7,
57:6, 62:16,
68:8, 76:8,
78:1, 78:8,
85:20, 89:9,
89:13, 90:5,
90:11, 91:7,
91:22, 92:19,
93:2, 99:4,
99:7, 101:13,
103:7, 104:20,
114:18, 118:7,
131:11, 157:13,
192:4, 192:5,
210:22, 211:22,
212:1, 212:3,
222:8, 223:17,
224:1, 225:10,
227:5, 236:3,
240:21
**judge's**
134:8, 198:5,
200:10, 206:14,
210:18, 211:16,
222:6
**judges**
145:14, 222:8
**judgment**
109:21, 110:4,
110:14, 110:18,
110:20
**judgments**
110:20
**judicial**
110:22
**june**
22:1
**justice**
4:12, 8:4,
91:15, 98:12

**K**

**kaiser**
2:6, 3:14,
7:12, 8:1
**katz**
90:20, 99:2
**keep**
27:13, 29:9,

58:13, 144:3,
240:11
**keeping**
202:15, 241:11
**kicked**
84:10
**kilmar**
1:4, 143:21,
178:14
**kind**
12:15, 13:10,
20:11, 21:17,
25:7, 27:14,
29:12, 58:21,
69:20, 76:14,
77:5, 90:18,
96:8, 119:1,
126:6, 127:3,
155:1, 197:4,
234:5
**knew**
86:21, 87:1,
92:18
**knowledge**
42:15, 43:5,
46:9, 61:12,
63:19, 81:20,
83:4, 84:15,
90:7, 92:6,
113:6, 131:13,
138:18, 147:7,
154:3, 154:13,
154:14, 154:19,
156:4, 156:7,
156:15, 157:12,
161:13, 162:2,
162:8, 162:19,
162:21, 163:1,
163:15, 164:17,
166:1, 166:22,
169:6, 169:12,
169:19, 169:21,
174:15, 174:16,
179:12, 179:13,
179:15, 182:12,
184:11, 184:13,
186:11, 186:13,
187:20, 187:22,

188:15, 189:13,
189:14, 192:20,
195:22, 201:5,
201:18, 209:15,
213:21, 220:3,
224:3, 228:18,
231:3, 234:20,
235:9, 235:18
**knuckles**
145:18
**kovak**
70:4
**kozak**
5:17, 67:11,
67:13, 69:1,
69:12, 70:5,
70:6
**kozak's**
67:21, 68:9
**kristi**
1:8
**kropf**
3:5, 7:17

**L**

**labor**
119:15, 119:16,
119:17
**landings**
25:5
**lane**
24:8
**laptop**
215:8
**large**
26:20
**last**
18:6, 25:11,
37:19, 37:20,
44:11, 45:3,
49:11, 103:5,
104:22, 116:19,
124:16, 124:17,
124:18, 130:10,
146:20, 153:4,
154:5, 159:12,
198:14, 204:13,
204:14, 214:7,

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    265

| | | | |
|---|---|---|---|
| 225:1, 230:4, 237:9 | **lawyers** 19:11, 43:1, 43:3, 122:14 | 128:3, 128:4, 129:16, 183:2, 187:2, 201:2, 216:19, 216:20, 224:20, 231:21, 232:1, 232:13 | **lieutenant** 217:15 |
| **late-night** 65:13 | **lay** 222:5 | | **life** 102:20 |
| **later** 180:11 | **lead** 21:18, 50:16 | **legitimately** 32:3, 35:22 | **likely** 40:22, 108:3, 108:4, 160:6, 160:15, 172:11 |
| **latter** 100:20 | **leader's** 21:1 | **lejeune** 22:5, 23:5 | **limited** 24:13, 138:13, 213:11, 213:12, 213:13, 217:22 |
| **laura** 50:21, 51:1 | **learn** 21:15, 21:16, 21:17, 22:17, 22:18, 25:4, 58:10, 94:4, 94:17, 103:11, 104:4, 104:7, 172:4 | **length** 141:4 | **limiting** 220:7 |
| **law** 7:21, 23:16, 23:21, 23:22, 24:1, 24:3, 24:4, 24:18, 25:10, 25:11, 27:16, 58:9, 61:6, 119:16, 119:17, 148:8, 148:12, 169:16, 187:5, 187:7, 187:9 | | **less** 93:11 | **line** 124:10, 167:5 |
| | | **let's** 18:3, 20:6, 20:12, 21:8, 23:1, 23:3, 26:1, 26:6, 26:14, 53:22, 59:3, 61:20, 88:8, 90:19, 93:12, 116:11, 121:22, 137:2, 139:11, 145:15, 173:20, 173:22, 182:8, 198:6, 204:9, 204:16, 205:5, 205:11, 209:4, 221:15, 227:15, 236:18 | **lines** 208:12 |
| | **learned** 35:9, 36:21, 37:5, 40:21, 41:1, 93:22, 94:2, 97:3, 133:10, 134:13, 135:6, 135:17, 135:21, 136:2, 136:6, 136:7, 136:9, 177:5 | | **lisa** 1:22, 2:12, 8:10, 38:11, 176:14, 242:2, 242:20 |
| **lawful** 198:15 | | | **list** 53:17, 83:13, 195:18 |
| **lawfully** 105:22, 112:15, 150:15 | **least** 12:13, 12:14, 40:19, 44:18, 86:5, 137:1, 188:21, 221:19, 236:16 | | **listed** 101:20 |
| **laws** 77:11, 117:16, 141:3, 151:10, 151:13, 189:20 | | **letter** 143:8 | **literally** 47:4, 103:1, 192:19, 226:8 |
| **lawsuit** 13:10, 13:12, 13:16, 14:1, 14:3, 37:7, 37:8, 37:9, 37:12, 40:19, 40:21, 41:2, 42:18, 43:8, 51:13, 51:16, 52:1, 61:11, 70:12, 77:17, 77:19 | **leave** 23:22, 24:7 | **letters** 143:1, 143:2, 143:3, 146:11 | **litigation** 4:13, 50:17, 67:1, 131:5, 236:16 |
| | **legal** 23:19, 23:20, 27:13, 27:15, 27:16, 42:9, 57:2, 57:3, 61:5, 64:22, 77:10, 77:11, 84:8, 109:18, 109:20, 110:5, 110:11, 126:4, 126:8, 126:13, 127:9, 127:14, 127:18, 128:2, | **level** 23:8, 137:1, 155:12, 155:18, 156:17, 157:10, 158:12, 158:22 | **litigator** 50:16 |
| | | **licensed** 80:6 | **little** 37:4, 100:5, 119:16, 156:21, 216:10, 234:5 |
| **lawton** 22:7 | | **lie** 138:19 | **llp** 2:6 |
| **lawyer** 124:6, 144:16, 183:7, 236:14 | | **liechtenstein** 139:11, 139:12, 139:13, 139:16 | **located** 140:8 |
| | | | **location** 63:20, 92:11, 93:3, 95:8, |

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

95:15, 99:16, 101:13, 153:10

**lodge**
39:11, 47:20, 125:2

**lodged**
36:5

**lodging**
182:5

**log**
119:1

**long**
12:18, 15:6, 18:16, 20:11, 24:14, 24:15, 36:3, 106:17, 136:17

**long-standing**
105:16, 106:1, 106:7, 106:8, 106:12, 106:15, 106:18, 106:19, 107:5, 107:9, 108:13, 148:8

**longer**
32:6

**look**
9:8, 31:20, 32:4, 36:7, 37:13, 37:19, 41:15, 41:16, 67:10, 68:7, 76:2, 82:9, 82:11, 88:8, 91:20, 126:8, 166:10, 198:8, 210:10, 218:9

**looked**
91:6, 94:11, 206:14, 235:22

**looking**
67:18, 171:10, 171:12, 186:5

**looks**
85:22

**lot**
20:9, 20:17, 21:14, 23:13,

31:22, 41:13, 41:14, 51:7, 52:20, 57:5, 103:21, 141:20, 158:2, 162:18, 186:18, 201:2, 225:19, 226:21, 229:1

**lots**
26:20, 27:1

**love**
182:4

**lump**
190:19, 191:9

---

**M**

**m-c-c-o-m-m-a-s**
49:12

**ma'am**
70:10, 92:21, 206:16

**machine**
21:16

**made**
29:8, 45:9, 46:10, 63:18, 84:2, 84:17, 87:15, 87:19, 130:3, 156:1, 168:9, 172:20, 176:2, 182:15, 186:18, 231:4, 231:18, 234:8, 235:19

**main**
50:6

**maintained**
83:7

**maintaining**
151:3, 151:18, 167:22

**major**
67:1

**majored**
20:16

**make**
17:6, 17:8, 17:11, 24:7,

24:14, 27:12, 62:13, 65:14, 79:5, 83:15, 84:3, 117:13, 120:3, 124:8, 132:22, 134:6, 135:15, 137:11, 140:6, 143:12, 143:17, 146:1, 148:22, 157:17, 159:10, 161:2, 176:20, 180:7, 182:3, 197:11, 207:13, 211:2, 212:13, 212:17, 217:17, 217:18, 221:5, 225:1, 241:11

**makes**
197:12

**making**
78:8, 90:4, 92:19, 131:12

**man**
48:7

**manifest**
86:3, 86:6

**many**
12:12, 15:14, 18:10, 18:12, 18:14, 30:1, 53:16, 57:4, 58:3, 102:22, 103:3, 141:3

**march**
30:13, 31:3, 31:12, 33:16, 35:7, 37:9, 37:10, 37:11, 37:21, 38:2, 40:20, 45:20, 54:1, 54:2, 54:3, 169:8, 171:16, 180:3

**marine**
20:9, 20:20, 21:8, 21:14, 21:15, 21:18,

23:4, 23:14, 23:15, 23:20, 25:20, 153:19

**marines**
21:19, 22:4, 217:15

**mark**
10:12, 28:10, 32:21, 65:4, 82:1, 197:20, 202:21, 203:1, 203:9, 203:16

**marked**
9:5, 10:13, 28:11, 33:1, 62:5, 67:2, 82:3, 88:9, 197:22, 198:4, 198:6, 203:19, 204:6, 204:18, 205:10

**marking**
9:4, 62:8, 65:3, 67:5, 82:1

**marks**
241:15

**married**
21:22

**marshals**
210:6

**maryland**
1:2, 7:5, 39:17

**material**
42:2, 69:19, 134:21, 165:2, 165:4, 178:10

**materials**
54:14, 57:15, 58:18, 133:12, 144:10, 161:21

**matter**
7:4, 52:16, 52:17, 85:3, 85:10, 109:4, 110:1, 117:11, 118:3, 118:19, 118:20, 118:22, 143:7, 207:16,

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025

267

221:7, 231:5
**matters**
224:18, 226:4,
227:9, 228:5
**matthews**
4:20, 7:10
**maybe**
12:21, 22:3,
50:4, 51:22,
59:8, 75:1,
91:15, 97:3,
102:13, 130:11,
153:5, 158:9,
160:8, 182:13,
207:7, 208:4,
230:11
**mazzara**
1:14, 2:3, 5:2,
5:8, 5:19, 6:3,
6:5, 6:7, 6:9,
6:11, 6:13, 7:3,
8:12, 8:17, 9:4,
11:20, 12:6,
18:1, 28:16,
28:17, 30:9,
52:6, 62:1,
62:14, 67:5,
74:3, 80:4,
82:6, 82:11,
108:7, 109:14,
111:7, 115:17,
116:19, 126:10,
126:16, 130:8,
134:22, 140:16,
144:15, 163:12,
163:14, 166:11,
166:20, 166:21,
167:20, 169:3,
171:11, 174:19,
174:22, 175:8,
197:20, 198:3,
203:18, 203:19,
204:6, 204:17,
204:18, 207:19,
207:20, 210:11,
214:5, 214:11,
219:4, 230:4,
238:13, 240:11,

241:16
**mazzara's**
205:14
**mazzara-1**
9:5
**mazzara-2**
10:12, 10:13
**mazzara-3**
28:10, 28:11,
62:10
**mazzara-4**
32:22, 33:1,
37:15, 171:12,
175:4, 180:20
**mazzara-5**
62:5, 62:8
**mazzara-6**
65:3, 67:2
**mazzara-7**
82:2, 82:3,
132:18
**mazzara-8**
197:22
**mazzara-9**
203:17, 203:18,
205:13
**mccommas**
49:10, 50:9,
55:14, 59:13,
74:21, 74:22,
76:12, 91:18,
98:16, 122:21,
155:7, 182:13
**meaning**
105:15, 159:3
**means**
87:8, 242:23
**meant**
159:1, 192:8
**media**
7:2
**medication**
16:15
**medicine**
16:19
**meet**
18:10, 18:14
**meeting**
48:18, 48:19,

51:3, 51:4,
51:5, 56:6,
56:9, 56:11,
56:20, 57:11,
57:12, 58:1,
58:6, 58:15,
59:2, 59:8,
59:11, 59:12,
59:14, 60:1,
60:9, 91:1,
93:11, 93:13,
191:18
**meetings**
51:7, 58:3,
97:16, 191:2
**member**
34:12, 52:13,
107:15, 109:7,
115:13, 147:18,
160:13, 161:5
**members**
80:9, 187:18
**memo**
177:22, 217:11
**memorandum**
177:10, 177:16
**memory**
37:4, 45:7,
59:16, 125:17,
125:18, 189:8
**mensa-level**
125:16, 153:19
**mention**
191:1, 221:9,
221:10, 223:6,
223:8
**mentioned**
19:2, 120:2,
136:3, 189:6,
213:17, 222:2,
222:10, 236:1
**mentions**
221:8
**merely**
216:3
**mess**
215:8
**met**
18:13

**michael**
5:17, 67:11
**might**
17:11, 29:2,
30:3, 48:17,
65:16, 66:8,
78:5, 85:15,
87:22, 91:4,
91:17, 91:18,
93:12, 96:3,
96:4, 97:21,
98:13, 98:16,
122:7, 126:5,
139:20, 141:12,
141:13, 143:14,
144:1, 147:10,
160:11, 189:3,
194:1, 194:2,
217:5
**military**
224:18, 226:4,
227:8, 228:5
**miller**
91:4
**million**
188:14, 188:15,
188:16, 193:18,
193:19
**millions**
216:8
**mind**
27:14, 39:4,
39:5, 58:1,
59:6, 73:20,
85:7, 100:6,
100:7, 103:22,
104:2, 121:12,
121:13, 177:14
**mine**
119:19
**minimum**
194:10
**minute**
43:16, 166:15,
168:16
**minutes**
159:19, 166:14,
200:7, 213:1

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

268

| | | | |
|---|---|---|---|
| **misdemeanor** 81:16 | 156:14, 162:1, 177:1, 178:16, 182:3, 182:19, 185:4, 204:17, 213:9, 213:14, 213:19, 229:14 | 117:2 | **negatively** 239:6 |
| **miserable** 24:5 | | **N** | **negotiate** 183:18 |
| **missed** 212:21 | | **nah** 83:21 | **negotiated** 193:16 |
| **missions** 183:14 | **morning** 7:16, 8:17, 8:18, 15:20, 17:1, 207:22 | **name** 7:16, 48:5, 49:11, 83:12, 84:6, 113:11, 171:14, 194:1, 223:9 | **negotiations** 184:7 |
| **mistrial** 241:7 | | | **neither** 242:11 |
| **mm-hmm** 13:5, 15:22, 24:19, 31:17, 38:8, 53:5, 63:13, 64:16, 65:22, 70:17, 82:18, 84:13, 85:16, 86:13, 86:19, 90:6, 92:9, 92:17, 98:22, 115:9, 168:4, 173:12, 176:12, 198:20, 198:22, 200:5, 205:21, 206:19, 208:3, 208:6, 218:3 | **mortars** 21:17 | **named** 48:6 | **nerd** 22:18 |
| | **moseley** 3:4, 3:5, 7:17, 7:18 | **names** 98:5, 101:19, 101:20, 102:16, 195:18 | **never** 192:15 |
| | **most** 42:13 | **narrow** 227:15 | **nevertheless** 107:19 |
| | **motion** 41:11, 84:11 | **nation** 210:14 | **new** 94:4, 144:4, 145:18, 156:20, 156:21 |
| | **motions** 41:14 | **native** 171:20 | |
| | **move** 35:19, 190:1, 203:4, 222:3 | **nature** 14:21, 19:16 | **news** 52:19, 91:10, 96:12, 97:1, 97:2, 97:4, 97:6, 97:13, 97:14, 136:10, 156:5, 179:9, 179:12, 179:16, 179:21, 180:15, 181:5, 188:19, 189:2, 189:10, 192:15, 197:14 |
| | | **nd** 7:7, 54:5, 54:6, 242:17 | |
| **moment** 40:11, 52:21, 82:7, 135:5 | **moved** 72:4, 72:6, 72:7, 72:10, 72:13, 72:17, 72:19, 94:14, 94:16, 94:18, 95:4, 96:14, 96:15 | **necessary** 228:6 | |
| | | **need** 16:2, 17:13, 17:16, 17:18, 24:15, 24:17, 26:11, 32:4, 32:13, 39:21, 53:3, 53:10, 73:4, 82:8, 128:7, 128:21, 140:22, 182:7, 211:5, 214:2, 222:5, 241:20 | |
| **money** 110:20, 189:7, 189:10, 192:21, 192:22, 193:11, 194:2, 196:13 | | | **next** 3:20, 65:17, 87:14, 169:5 |
| | **movie** 212:16, 212:19 | | **nicaragua** 109:6 |
| **monitor** 7:8, 192:18 | **moving** 58:13, 103:22 | | **night** 24:4, 214:7, 237:9 |
| **monitoring** 192:2, 192:5, 192:12 | **msha** 119:18 | | |
| | **much** 35:19, 41:15, 54:21, 55:1, 136:18, 182:4 | **needed** 52:22, 76:17, 182:5, 199:18, 238:21, 240:22 | **nine** 45:20, 220:20 |
| **months** 21:10, 21:12, 21:20, 22:6 | | | **nobody** 76:16, 76:17, 94:13 |
| | **multiple** 131:2, 131:8, 186:21 | **needs** 127:14, 227:12 | |
| **more** 54:21, 55:1, 59:3, 85:8, 97:18, 117:17, 125:8, 152:14, | **murray** 4:4, 7:21 | | **noem** 1:8, 5:11, 7:4, 75:21, 113:10, |
| | **myself** 82:8, 97:22, | | |

113:21
**noem's**
224:3
**non-attorneys**
102:17
**nope**
165:15, 204:5
**normal**
194:20
**north**
22:5
**northern**
26:3
**northwest**
7:12
**notary**
2:13
**nothing**
29:13, 95:2,
175:22, 240:1
**notice**
2:12, 5:9,
9:11, 9:12,
9:14, 9:21,
10:2, 87:2,
89:20, 114:17,
137:8
**notified**
96:9, 96:13,
97:1, 97:2
**notwithstanding**
34:20, 36:16,
52:9, 108:15,
110:12
**noun**
203:14
**novels**
136:19, 136:20
**number**
7:2, 7:6, 82:9,
90:21, 104:17,
130:12, 168:12,
220:20, 225:7,
238:2, 238:3,
238:9
**nw**
2:7, 3:6, 3:15,
4:14

**O**

**o-o-r-a-h**
182:10
**oath**
15:20, 15:21,
16:8, 116:7
**obama**
191:10, 191:11
**obeyed**
110:13
**object**
46:4, 46:21,
49:3, 72:21,
100:21, 152:10,
158:14, 161:16,
172:6, 173:17,
176:18, 184:19
**objected**
124:9, 124:22
**objecting**
70:22
**objection**
11:20, 17:14,
30:15, 30:16,
31:13, 32:15,
33:17, 34:21,
35:14, 36:5,
37:1, 38:14,
39:2, 41:3,
41:22, 42:19,
43:9, 43:10,
44:6, 46:15,
49:20, 54:12,
56:12, 57:13,
58:2, 58:16,
60:14, 60:20,
61:16, 64:10,
66:5, 66:13,
66:16, 66:17,
68:1, 68:18,
69:16, 70:3,
71:18, 72:11,
80:17, 84:7,
84:19, 87:3,
90:13, 93:4,
94:19, 95:20,
98:7, 99:10,

100:4, 100:8,
102:2, 102:19,
103:14, 103:15,
103:21, 104:11,
105:11, 107:20,
112:4, 117:6,
117:20, 118:13,
118:14, 118:15,
122:18, 123:5,
124:18, 125:2,
125:6, 132:10,
142:16, 144:7,
145:9, 154:6,
155:14, 163:6,
164:22, 166:5,
170:4, 171:5,
173:6, 174:7,
175:16, 178:6,
185:20, 188:7,
190:7, 194:15,
199:4, 207:3,
209:20, 224:20,
231:21, 234:13,
241:12
**objections**
17:11, 39:11,
47:21, 59:7,
73:22, 74:13,
94:1, 95:10,
97:7, 99:17,
100:20, 125:13,
127:16, 154:7,
156:19, 167:11,
176:2, 178:20,
182:5, 185:12,
190:21, 196:4,
196:20, 200:15,
201:10, 202:3,
213:14, 235:14
**obligated**
196:1
**obligation**
16:12
**obligations**
190:4
**obnoxious**
119:11
**observer**
22:21

**obstacles**
105:17, 105:21,
106:22, 112:14,
147:20, 147:22,
148:4, 149:22,
150:4, 150:14,
150:19, 151:1
**obtain**
97:5, 101:12,
154:18
**obtained**
83:5, 136:5,
172:3
**obviously**
12:6, 17:1,
26:19, 27:16,
30:6, 53:14,
78:17, 105:5,
132:15, 179:15,
213:11, 228:13,
233:8
**ocean**
59:17
**ocs**
20:20
**offense**
96:20
**offensive**
221:4
**offered**
110:22
**office**
4:13, 19:8,
19:9, 27:3,
38:5, 44:16,
77:10, 82:16,
85:20, 126:8,
126:13, 138:20,
138:22, 141:9,
183:2, 215:13,
215:15
**officer**
20:21, 21:12,
21:16, 25:7,
71:6, 114:3,
140:21, 141:1,
141:7, 141:8,
141:12, 194:1,

216:2, 216:5,
216:11, 216:12,
216:14, 217:1,
217:8, 217:14,
233:16
**officers**
139:5, 143:1,
143:2, 143:6,
143:8, 143:17,
229:15
**offices**
2:4, 28:6, 28:8
**official**
67:14, 69:2
**officials**
137:7
**oftentimes**
126:12, 179:19,
179:20
**ogc**
44:17
**oh**
23:10, 48:16,
51:15, 56:21,
62:11, 65:20,
75:20, 77:9,
81:8, 89:14,
89:20, 89:21,
96:11, 101:15,
105:5, 113:8,
120:14, 121:7,
125:20, 125:22,
135:10, 139:13,
147:9, 155:22,
157:2, 165:11,
170:22, 180:21,
185:8, 192:7,
193:3, 194:8,
195:15, 197:16,
199:12, 201:7,
209:9, 214:14,
221:9, 222:7,
226:18, 232:22,
241:4
**oklahoma**
22:7, 22:9
**old**
80:7

**on-the-record**
214:2
**once**
12:13, 12:14,
18:15, 18:16,
54:10, 54:19,
160:18
**one**
9:11, 9:12,
9:17, 11:3,
16:1, 17:4,
17:18, 22:15,
24:2, 25:21,
32:18, 33:9,
46:10, 60:6,
65:13, 68:13,
73:4, 75:12,
82:7, 83:10,
83:11, 84:15,
85:8, 89:9,
90:4, 95:6,
102:14, 115:20,
116:1, 117:12,
125:8, 127:15,
140:5, 142:5,
146:20, 147:7,
149:4, 152:14,
158:17, 162:1,
166:15, 169:17,
169:19, 169:20,
169:22, 171:8,
171:18, 177:1,
178:16, 179:8,
181:3, 184:9,
184:10, 185:15,
187:18, 188:2,
190:17, 191:2,
200:17, 200:18,
200:20, 202:22,
203:13, 204:13,
204:14, 204:16,
215:18, 220:10,
221:13, 223:11,
224:22, 230:11,
234:3, 234:6,
241:5, 241:6
**one-year**
186:14, 186:16,

188:2
**ones**
193:15, 193:17,
213:16
**only**
17:18, 24:1,
49:3, 80:22,
84:9, 107:21,
124:18, 136:6,
138:4, 148:17,
154:13, 170:17,
181:18, 188:16,
189:8, 202:21,
212:4, 220:9,
238:16, 238:21,
239:13
**oorah**
182:10
**open**
240:12, 241:11
**operations**
38:6
**opinion**
91:7, 91:8,
216:19, 216:20
**opinions**
77:12
**opportunity**
128:17
**oral**
15:17
**order**
5:10, 5:15,
5:20, 10:21,
11:12, 32:8,
34:5, 34:16,
34:20, 41:12,
62:1, 62:15,
62:18, 63:16,
64:6, 64:9,
64:21, 65:2,
65:5, 65:6,
68:8, 68:10,
68:13, 76:8,
88:7, 89:13,
89:18, 90:5,
90:12, 91:22,
104:21, 108:1,

134:8, 135:15,
147:12, 161:7,
171:22, 192:8,
192:9, 198:5,
206:14, 207:1,
207:17, 207:19,
210:18, 210:22,
218:10, 223:17
**ordered**
10:7, 11:8,
18:6, 31:21,
32:9, 57:7,
63:14, 89:9,
89:15, 92:4,
92:20, 99:5,
102:9, 103:7,
118:9, 206:17,
225:11, 227:4
**ordering**
68:8, 92:6
**orders**
30:2, 65:14,
77:3, 77:8,
78:1, 78:8,
78:10, 79:6,
79:8, 79:15,
110:1, 110:9,
110:13, 113:2,
113:7, 113:8,
145:4, 171:19,
224:1, 241:18
**organization**
34:13, 52:14,
79:18, 107:16,
109:8, 115:14,
147:19, 160:14,
161:5
**orient**
10:19, 28:15
**original**
9:11
**osha**
119:18
**osorio**
4:4, 7:21
**other**
14:5, 15:9,
16:15, 20:18,

42:10, 46:10,
49:17, 49:18,
49:22, 50:1,
52:20, 52:21,
59:3, 61:11,
71:13, 71:17,
83:6, 98:5,
101:20, 109:22,
110:2, 110:9,
110:17, 112:19,
116:9, 123:13,
130:16, 130:22,
135:4, 135:12,
139:5, 145:17,
152:4, 152:21,
153:1, 153:11,
153:13, 153:17,
154:15, 154:20,
155:3, 157:3,
159:9, 171:3,
172:1, 172:21,
173:13, 173:14,
173:16, 177:6,
179:7, 179:8,
180:5, 181:5,
183:13, 183:19,
188:13, 188:17,
190:20, 195:14,
197:16, 206:20,
206:21, 207:6,
208:1, 208:17,
209:2, 219:2,
232:16, 233:11,
234:7, 236:21,
239:18
**otherwise**
35:21, 49:6,
105:18, 105:21,
112:15, 141:17,
141:18, 142:3,
142:18, 150:14,
155:16, 158:16,
171:7, 199:8,
201:22, 225:5,
242:15
**ought**
109:12
**out**
15:20, 22:22,

25:11, 25:13,
26:2, 29:22,
52:7, 62:2,
65:15, 72:4,
72:17, 72:19,
75:5, 75:13,
76:9, 95:4,
95:15, 105:4,
127:7, 136:11,
145:16, 149:1,
161:8, 167:7,
179:18, 180:10,
183:14, 184:6,
193:17, 193:18,
197:13, 197:15,
210:6, 211:1,
212:13, 233:18
**outcome**
239:7
**outside**
97:5, 155:6,
159:3, 186:12,
189:2, 218:6,
221:21, 221:22,
224:11, 233:1
**over**
11:15, 20:22,
96:5, 113:6,
115:15, 122:9,
134:12, 134:16,
146:20, 153:19,
167:5, 177:14,
183:6, 186:12,
220:1, 220:21,
240:20
**overall**
23:11
**overlap**
126:22, 176:7
**overrules**
235:17
**overview**
24:16
**own**
143:12, 187:17,
234:5

---
**P**
---

**page**
3:20, 5:2, 5:8,

6:3, 33:10,
37:19, 37:20,
37:22, 62:14,
63:8, 63:9,
68:12, 90:1,
91:22, 171:15,
198:8, 198:10,
238:2
**pages**
1:21, 132:6
**paid**
190:19, 192:22,
196:14
**paper**
199:18
**papers**
160:2
**paragraph**
33:6, 33:9,
63:8, 63:9,
68:12, 69:1,
82:22, 84:12,
86:8, 90:1,
132:17, 132:19,
163:12, 166:11,
171:13, 171:15,
175:6, 210:11,
221:22
**parent**
169:13
**parole**
114:7, 114:21,
115:11, 115:13,
116:2, 136:22,
137:1, 137:3,
137:4, 137:8,
138:7, 139:19,
140:7, 140:11,
140:13, 141:2,
141:16, 142:1,
142:9, 143:1,
143:2, 143:3,
143:8, 143:20,
146:10, 146:11,
146:22, 147:2,
147:8, 147:9,
147:17, 147:18
**paroled**
114:16, 137:9,

146:20
**paroling**
115:5
**parse**
32:5
**part**
21:5, 39:8,
62:21, 123:12,
123:13, 123:20,
133:11, 183:14,
199:10, 200:11,
213:10, 229:14,
232:17, 232:19
**part-time**
24:22
**participate**
184:15
**participating**
184:12
**particular**
41:16, 58:5,
59:3, 83:21,
110:10, 138:13,
141:6, 141:8,
141:9, 153:20,
186:6, 223:20
**particularly**
52:13, 84:4,
96:19
**parties**
123:18, 242:13
**partner**
7:18
**parts**
103:22
**party**
13:1, 13:3,
13:4, 14:5,
109:22, 110:2,
110:9, 110:17
**pass**
53:10, 204:4
**patrol**
138:10
**pay**
53:1, 53:4,
111:10, 111:14,
111:15, 111:17,

Case 8:25-cv-00981-PX    Document 129-2    Filed 05/27/25    Page 274 of 292

FILED UNDER SEAL

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

272

112:17, 150:10,
193:18
**payback**
25:19
**paying**
53:11, 188:4
**payment**
110:20, 189:7,
190:19, 191:8,
191:14, 191:17
**pays**
44:14
**pcp**
218:14
**pedantic**
61:17, 78:15
**penalty**
71:6, 83:2,
88:18
**pending**
17:19, 39:18,
47:15, 73:21,
170:2, 170:6,
170:19
**pennsylvania**
4:14
**people**
27:11, 43:18,
43:21, 49:8,
49:13, 50:6,
55:7, 69:21,
76:13, 78:21,
91:14, 93:13,
98:4, 101:6,
101:8, 101:21,
107:6, 113:3,
114:19, 114:21,
119:2, 122:21,
123:22, 125:22,
136:3, 138:14,
139:7, 139:20,
140:8, 141:21,
147:5, 183:13,
183:21, 185:17,
187:17, 193:14,
207:7, 208:5,
208:9, 212:17,
213:16, 215:11,

225:3, 225:4,
228:19
**people's**
27:10
**percent**
22:16, 166:13,
240:1
**percival**
4:22, 8:7
**percolate**
52:22, 53:3
**perfect**
182:8
**perhaps**
109:12
**period**
65:19
**periodically**
54:8
**perjury**
71:6, 83:3,
88:18
**permanent**
135:16
**person**
24:2, 48:16,
50:20, 83:16,
83:20, 83:22,
84:10, 146:5,
147:3, 162:2,
164:18, 196:2,
211:19
**personal**
46:9, 63:19,
83:4, 84:15,
90:7, 92:6,
113:5, 131:13,
157:12, 162:8,
213:21, 224:2
**personally**
116:20, 117:4,
131:7, 170:11,
223:15
**personnel**
49:17, 50:1,
215:15
**persons**
49:22

**philosophers**
20:18
**philosophy**
20:16
**phone**
45:18, 48:14,
96:5, 97:15
**photographic**
125:17
**physical**
63:20, 92:10,
92:11, 93:3,
95:15, 99:16,
139:16
**physically**
215:7
**picture**
145:17
**piece**
199:18
**pile**
82:10
**pin**
218:18
**pittard**
3:13, 8:1
**place**
7:11, 22:8
**placement**
198:17, 199:2,
199:9
**plaintiffs**
1:6, 3:2, 4:2,
8:2, 37:6,
40:19, 41:19,
42:18, 43:8,
45:19, 51:12,
52:1, 198:14,
214:6
**plan**
191:14, 227:19
**plane**
171:3, 175:4
**planes**
171:17, 223:11
**planet**
7:10, 8:10
**planning**
164:19, 165:14,

166:3, 167:1,
225:16
**plans**
230:16
**platoon**
20:22
**play**
78:22, 184:5
**plead**
114:18
**please**
7:14, 17:4,
17:16, 47:15,
54:17, 123:2,
128:22, 140:20,
171:10
**plenty**
32:8
**pllc**
3:14, 4:4,
7:12, 7:17, 7:22
**point**
22:19, 22:20,
45:9, 53:18,
53:21, 66:9,
83:18, 84:3,
84:4, 146:9,
164:3, 209:15,
223:3, 232:20,
233:2
**pointing**
166:19
**points**
234:7
**police**
145:15
**policies**
27:10, 27:12,
27:13, 27:14
**policy**
136:17, 146:19
**political**
27:9, 183:6
**port**
106:10, 106:13,
108:2, 111:18,
148:10, 150:11,
150:12, 159:18,

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025                                    273

166:14, 167:4
**portals**
83:7
**pose**
226:2, 227:7
**poses**
228:3
**position**
20:1, 23:12,
26:7, 64:19,
76:16, 222:20,
238:21, 240:18
**positions**
138:15
**possible**
71:4, 115:7,
115:8, 164:11,
189:6, 191:1,
191:20, 237:3
**possibly**
182:2
**post-high**
20:6
**post-removal**
146:15
**potentially**
150:13
**power**
113:17, 114:4
**pre**
146:13
**preceded**
51:3
**preceding**
105:8
**precluding**
200:1
**precollege**
20:8
**preliminary**
9:2
**preparation**
99:1, 103:11,
105:2, 130:1,
130:13, 131:1,
131:14, 133:10,
135:7
**preparations**
131:19

**prepare**
18:1, 18:4,
18:7, 90:18,
134:6
**prepared**
90:10, 91:12
**preparing**
126:4, 208:7
**prerogative**
36:9
**presence**
61:18, 111:19,
139:16, 148:19,
157:14
**present**
106:10, 106:22,
107:12, 108:1,
108:16, 114:15,
117:13, 139:8,
149:1, 150:15,
150:16
**presented**
151:6
**presenting**
106:13
**presently**
198:18, 200:12
**president**
26:16, 76:21,
78:12, 79:22,
91:2, 91:3,
91:4, 113:9,
113:17, 114:3,
133:21, 145:16,
157:5, 184:2,
191:10, 191:11,
200:17, 212:7,
214:12, 214:15,
215:16, 218:7,
218:12, 218:16,
235:5
**president's**
27:14, 215:12,
217:19
**presidential**
49:4, 98:8,
102:3, 175:18,
178:8, 179:2,

184:21, 186:1,
188:9, 190:9,
194:17, 196:21,
199:5, 207:4,
209:22, 215:15,
218:1
**presumably**
96:22, 113:3,
113:5, 118:9,
132:21, 134:2,
160:4, 189:3,
200:16
**presume**
88:5
**pretty**
32:7, 41:15,
50:6, 65:10,
112:20, 163:19,
166:12, 167:2
**prevent**
105:21, 112:15,
139:16, 148:17,
148:18, 148:19,
150:14, 150:20
**prevention**
139:7
**prevents**
189:21
**previous**
47:21, 58:22,
154:7
**primarily**
102:20, 210:2,
225:12
**prince**
145:14
**prior**
11:1, 20:1,
94:12, 99:6,
103:6, 119:3,
133:4, 146:8,
146:9, 147:7,
172:12, 174:21,
183:3, 208:7,
208:14
**priorities**
53:17
**priority**
53:18, 54:10,

54:19, 65:12,
66:4, 66:6,
66:11, 66:12,
66:21, 77:18,
153:15
**prison**
140:12
**prisoner**
140:14
**privileged**
33:22, 35:2,
35:22, 38:18,
39:13, 44:10,
47:3, 57:15,
68:19, 69:19,
103:19, 120:21,
126:14, 134:21,
144:10, 145:12,
161:21, 165:2,
165:4, 166:9,
172:9, 174:11,
178:10, 180:10,
197:3, 208:12,
220:10, 223:18,
229:12
**privileges**
30:20, 30:21,
36:11, 46:6,
73:4, 100:12,
100:16, 100:22,
124:11, 124:13,
130:17, 135:5,
157:18, 161:21,
173:16, 174:9,
175:19, 175:21,
176:10, 177:2,
177:7, 178:8,
181:14, 181:21,
185:21, 200:4,
200:7, 214:3,
227:10
**probably**
34:14, 40:1,
49:13, 50:12,
52:3, 54:7,
56:3, 65:21,
84:9, 93:9,
93:17, 93:19,

Case 8:25-cv-00980-PX    Document 129-9    Filed 05/27/25    Page 276 of 292    FILED UNDER SEAL
CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

274

94:9, 97:15,
110:10, 140:4,
147:2, 147:13,
154:15, 158:4,
160:15, 176:7,
182:22, 192:15,
193:16, 218:19,
223:8, 224:11
**probe**
37:3
**problem**
11:5, 87:22,
88:1, 132:3
**proceeding**
85:19
**proceedings**
91:8, 91:9,
242:5, 242:8
**process**
17:3, 33:18,
35:16, 38:15,
39:8, 42:2,
46:22, 47:2,
54:14, 56:13,
57:15, 58:17,
61:8, 72:22,
74:15, 81:12,
100:14, 100:15,
106:4, 106:9,
106:12, 106:15,
106:18, 106:19,
107:5, 107:9,
108:13, 110:8,
110:13, 110:22,
114:7, 114:14,
114:19, 115:4,
115:5, 124:10,
125:1, 130:18,
132:12, 134:16,
136:22, 137:1,
137:3, 137:5,
140:7, 141:16,
142:2, 147:15,
160:18, 160:20,
160:21, 161:1,
165:2, 166:7,
167:14, 173:18,
174:9, 175:18,

178:7, 179:1,
180:4, 184:21,
185:22, 187:17,
188:9, 190:9,
194:16, 196:22,
199:7, 209:22,
229:2, 229:7,
229:14, 230:7,
232:7, 232:10,
232:14, 233:21,
234:15
**processed**
160:9
**processes**
105:15, 105:16,
106:1, 106:3,
106:7, 112:13,
141:21, 142:5,
148:7, 148:8,
149:8, 149:10,
149:12, 149:16,
149:17, 150:3,
150:20, 152:16,
161:6, 170:14
**produced**
32:11
**product**
61:8, 61:10,
64:18, 64:20,
100:17, 100:22,
118:16, 126:3,
130:18
**productions**
240:15
**program**
21:1, 23:19,
23:21, 23:22,
24:4, 25:9
**programs**
23:20
**pronounce**
8:19
**pronouncing**
171:14
**prosecution**
170:9
**protected**
32:3, 135:8,

181:13
**protection**
226:5, 227:9
**provide**
42:9, 60:16,
61:5, 79:10,
83:3, 84:14,
84:17, 92:20,
93:2, 118:4,
127:14, 127:18,
165:4
**provided**
83:3, 88:19,
89:3, 97:11,
228:8
**providing**
54:16, 79:14,
89:8, 92:5,
117:9, 122:16,
128:2, 129:16
**proving**
110:15
**public**
2:13, 71:13,
72:1, 72:2,
72:8, 72:9,
72:16, 72:19,
76:4, 135:22,
136:4, 136:5,
136:6, 153:21,
156:2, 172:14,
172:17, 172:18,
172:19, 177:3,
177:9, 177:15,
186:5, 190:22,
191:5, 191:7,
196:12, 197:8,
233:16, 233:17
**publication**
221:14
**publicly**
185:5
**pull**
22:12, 167:5
**pullout**
238:1
**pulls**
140:5

**purpose**
56:10, 56:19,
56:21, 101:11,
101:15, 138:4,
158:10, 219:16
**purposes**
95:17
**pursuant**
2:12, 10:2,
69:7, 90:5,
150:2, 172:15,
172:22, 176:3,
178:5, 181:19,
187:12, 223:16
**put**
13:16, 31:22,
36:2, 53:17,
67:6, 67:8,
88:10, 88:11,
118:7, 132:15,
133:14, 133:15,
133:22, 135:15,
145:16, 149:13,
192:15, 199:21,
204:9, 218:18,
226:8, 232:22,
233:7, 233:18
**putting**
134:7, 135:4

## Q

**qualified**
175:1
**quantico**
23:18, 25:2,
25:14
**questions**
9:2, 16:17,
16:21, 17:2,
17:4, 18:4,
18:7, 29:2,
32:1, 32:2,
35:17, 36:6,
39:20, 60:6,
115:18, 121:10,
124:3, 124:17,
138:4, 140:17,
144:18, 145:1,

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

275

145:2, 157:1,
161:12, 164:16,
165:22, 167:21,
168:12, 177:1,
181:8, 181:11,
181:17, 185:7,
189:12, 200:7,
202:22, 204:11,
206:10, 212:20,
218:1, 218:5,
218:9, 219:2,
224:14, 225:20,
227:4, 227:16,
227:18, 227:22,
228:1, 229:9,
229:19, 230:4,
230:8, 230:12,
231:11, 236:2,
239:8, 240:17,
240:20
**quick**
62:10, 72:20,
165:5, 206:9,
212:21, 229:16,
235:21
**quicker**
35:19, 220:12
**quickly**
152:15
**quit**
147:3
**quite**
18:17
**quoted**
133:20
**quotes**
238:20

**R**

**radio**
23:1
**raise**
100:19
**raised**
157:17
**random**
98:18, 109:4
**range**
22:13

**rarely**
55:19
**rather**
203:13, 203:14,
211:5
**rdr**
1:22, 2:13,
242:2, 242:20
**re-ask**
54:17
**re-asking**
85:7, 121:12
**re-enter**
108:2
**re-read**
18:8, 152:18
**reach**
75:5, 210:6
**reached**
76:9, 232:16,
232:21, 234:9,
234:20, 235:10
**read**
11:13, 11:15,
20:17, 28:22,
31:8, 32:8,
54:21, 55:1,
55:2, 61:6,
63:12, 64:4,
64:6, 64:9,
65:5, 65:6,
65:16, 65:18,
66:2, 67:21,
68:13, 68:16,
69:12, 70:1,
70:15, 74:7,
90:19, 90:21,
91:10, 93:16,
97:12, 97:13,
98:21, 113:14,
133:12, 134:1,
136:15, 136:16,
138:11, 144:1,
159:8, 179:9,
179:11, 187:16,
195:17, 197:6,
197:14, 208:1,
234:16, 237:6,

237:18, 238:14,
238:15, 239:13,
239:14, 240:3
**reading**
96:6, 99:6,
99:13, 154:1,
179:17, 242:10
**reads**
97:14
**ready**
31:22
**real**
72:20, 99:8,
152:15, 165:5,
229:5
**really**
24:16, 26:19,
27:3, 43:13,
81:17, 88:1,
108:10, 135:19,
147:17, 192:17,
222:2, 223:1
**realm**
237:3
**reason**
71:7, 83:17,
84:1, 123:5,
137:7, 173:13,
189:16, 196:3
**reasonable**
65:19, 83:5,
84:15, 84:16,
224:17, 226:3,
227:7, 228:4
**reasons**
183:22
**recall**
40:20, 48:12,
51:2, 51:6,
51:9, 51:13,
55:15, 55:21,
57:12, 59:7,
91:5, 93:21,
94:7, 98:3,
98:4, 122:19,
179:7, 197:8,
230:10, 240:11
**recalling**
198:5

**received**
145:21, 164:8,
172:11
**receiving**
128:3, 174:5,
188:5
**recent**
42:13
**recess**
40:7, 47:11,
73:17, 116:15,
128:12, 168:21,
229:22
**recite**
133:16, 230:20
**recited**
133:19
**recognize**
9:9, 10:18,
55:5
**recollection**
14:16, 15:9,
30:7, 55:10,
85:4, 91:11,
154:1, 156:9,
162:20, 162:22,
163:2, 163:16,
164:17, 166:1,
166:22, 179:6,
186:8, 186:12,
191:6, 231:3
**recommending**
60:12
**record**
16:3, 36:2,
39:19, 40:4,
40:6, 40:9,
47:10, 47:13,
63:12, 73:13,
73:14, 73:16,
73:19, 102:14,
116:14, 116:17,
127:13, 128:11,
128:14, 136:12,
136:13, 136:16,
168:20, 169:1,
171:10, 218:17,
229:21, 230:2,

Case 8:25-cv-00980-PX    Document 129-9    Filed 05/27/25    Page 278 of 292

FILED UNDER SEAL

CONFIDENTIAL

Transcript of Joseph N. Mazzara

Conducted on April 22, 2025

276

241:3, 241:9, 241:17, 241:21, 242:7

**records**
83:6, 85:2, 85:10, 85:15, 135:22, 136:5, 136:7, 177:3, 177:15, 228:20

**recourse**
109:18, 109:20, 110:5, 110:11

**reduced**
242:9

**reentry**
149:7, 151:9

**refer**
29:3, 32:12, 67:7, 68:6, 76:12, 82:8

**reference**
28:19, 29:8, 29:18, 87:14, 87:18, 89:11, 177:16

**referenced**
90:22, 174:19, 175:5, 177:8, 180:20, 235:3

**referencing**
88:3, 174:21, 174:22

**referring**
32:18, 34:3, 37:16, 87:20, 144:3, 148:1, 148:2, 221:8

**refers**
85:17, 85:18

**refreshing**
85:4

**regard**
36:18, 44:11, 83:21, 106:20, 119:4, 119:7, 122:6, 180:2, 186:16, 192:18, 224:13

**regarding**
44:4, 46:13, 63:19, 74:11, 113:1, 206:22, 223:17, 225:7, 239:4, 239:5

**regardless**
167:8, 216:13

**regular**
83:8

**regulation**
148:9

**regulations**
77:11, 141:3, 149:14, 151:11, 151:14, 186:22

**relate**
114:19, 231:4, 232:15, 233:3

**related**
138:5, 231:17, 240:14, 242:12

**relates**
140:8, 232:7

**relation**
51:12, 51:15, 51:16

**release**
46:2, 111:9, 111:10, 116:21, 117:5, 117:19, 118:12, 119:7, 121:3, 125:11, 129:4, 142:15, 156:18, 157:11, 158:18, 161:15, 162:4, 164:20, 189:15, 190:5, 208:18, 210:8, 211:18, 212:2, 224:16, 225:14, 227:20, 230:17, 231:14, 231:19, 234:12, 235:1, 240:6

**releasing**
187:17

**relevancy**
80:17

**relevant**
29:10, 85:11, 226:9

**relied**
83:8

**relying**
124:13, 219:19

**remember**
11:14, 12:17, 13:15, 13:17, 13:22, 14:17, 14:20, 15:6, 22:3, 35:9, 36:19, 36:21, 37:2, 37:5, 37:11, 48:5, 49:8, 49:11, 49:18, 50:10, 58:5, 59:12, 62:3, 81:11, 91:16, 91:19, 96:4, 98:15, 98:17, 100:3, 101:7, 101:20, 102:8, 102:17, 102:21, 122:7, 123:20, 133:18, 153:7, 153:13, 153:20, 157:4, 158:5, 159:8, 159:15, 159:17, 191:4, 191:6, 191:19, 191:22, 195:3, 195:10, 197:18, 228:10

**remembered**
8:19

**remind**
183:1

**remit**
111:13, 142:20, 183:15

**removal**
33:12, 34:5, 34:6, 34:10, 34:11, 34:16, 34:20, 36:17, 38:5, 52:9,

86:2, 86:11, 86:12, 86:22, 87:10, 87:21, 88:6, 107:18, 107:21, 108:1, 108:16, 108:18, 111:20, 137:13, 147:12, 147:15, 160:9, 160:12, 161:7, 171:19, 171:22, 211:18

**remove**
34:3, 34:9, 105:17, 105:20, 106:21, 108:5, 111:21, 112:14, 149:21, 150:4, 150:13, 150:18, 151:1, 151:16, 152:7

**removed**
35:5, 87:1, 107:19, 108:14, 108:19, 109:5, 109:12, 109:13, 141:8, 147:20, 148:4, 149:6, 150:22, 151:8, 171:17

**removing**
34:5, 238:22

**rene**
4:21, 8:5, 96:20

**reopen**
147:13, 160:11

**reopened**
34:14

**reopening**
111:19

**repeat**
47:14, 128:21

**repeatedly**
160:21

**rephrase**
17:6, 107:7, 177:13

**report**
27:18, 145:15,

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

277

180:15, 186:6, 197:6, 242:4
**reported**
1:22, 72:13, 185:5, 186:9, 186:10, 188:13, 188:17, 189:4, 195:16
**reporter**
8:9, 13:6, 24:10, 31:18, 38:10, 73:12, 74:7, 82:20, 105:19, 120:18, 126:19, 138:1, 176:13, 218:13, 218:21, 241:2, 241:19, 242:24
**reporting**
69:3, 71:14, 72:1, 72:3, 72:8, 72:10, 72:17, 72:19, 76:4, 173:2, 189:10, 191:1, 191:5, 191:7, 192:15, 197:9
**reportings**
177:9
**reports**
177:20, 177:21, 185:14, 186:12, 188:19, 189:2, 196:12, 196:13
**represent**
7:15
**representative**
11:17
**represented**
14:2
**representing**
7:10, 8:10, 122:14, 123:18, 129:11, 129:22
**reproduction**
242:22
**requested**
128:18, 142:14,

242:11
**required**
96:21
**requirement**
219:17
**requirements**
194:11
**requiring**
207:1
**rereading**
73:20
**reserve**
143:14, 240:10
**residing**
140:12
**resources**
187:7
**respect**
21:15, 34:6, 34:16, 37:18, 60:13, 60:19, 61:10, 86:22, 87:16, 93:1, 104:21, 106:5, 106:6, 106:7, 106:9, 106:18, 107:5, 107:10, 108:14, 120:7, 121:9, 121:16, 121:18, 122:11, 126:17, 126:21, 129:3, 132:8, 147:21, 148:4, 150:4, 154:19, 154:20, 155:12, 155:18, 155:21, 155:22, 156:17, 157:10, 158:12, 165:21, 170:2, 170:7, 174:5, 174:18, 175:3, 177:19, 178:18, 180:18, 180:19, 189:13, 201:8, 202:1, 206:22, 207:22, 210:7, 219:3, 220:9, 223:22, 225:17,

226:16, 226:18, 227:13, 227:19, 228:16, 229:2, 230:8, 230:16, 231:18, 234:22, 236:11
**respectfully**
36:7, 144:17
**respects**
21:14
**responding**
134:7, 206:14
**response**
36:5, 68:10, 76:8, 89:22, 100:10, 101:2, 120:5, 123:7, 124:14, 129:6, 202:5, 211:16, 211:19, 211:20, 226:14, 238:8, 238:9, 238:15, 238:16
**responses**
214:6, 237:7, 237:13, 237:21, 239:15, 240:15
**responsibilities**
26:20, 119:13
**responsibility**
60:11, 61:14, 76:18, 77:2, 77:7, 77:22, 78:5, 79:15, 83:12, 84:5, 113:13
**responsible**
83:19, 83:20, 206:13
**responsive**
90:11, 144:19, 157:20, 159:12, 210:17, 210:21, 227:4
**rest**
111:3, 203:1
**restart**
30:22

**restate**
9:20
**restraining**
41:12, 135:15
**rests**
79:17, 137:15
**result**
233:20
**results**
233:15
**resume**
24:11
**retain**
228:20
**return**
41:20, 43:7, 64:1, 64:3, 92:13, 92:15, 102:11, 103:9, 104:9, 105:9, 107:6, 112:3, 121:22, 152:8, 155:19, 158:13, 158:18, 163:4, 163:18, 166:4, 166:13, 166:17, 188:13, 210:8, 212:3, 224:16, 225:15, 227:21, 231:15, 231:19, 235:12, 238:22, 239:18, 240:6
**returned**
42:17
**returning**
121:18
**reuveni**
50:4, 59:12, 98:12
**reveal**
47:2, 58:20, 61:1, 68:21, 71:22, 74:15, 87:6, 95:1, 102:6, 105:14, 112:8, 125:4, 144:10, 145:12, 152:13, 166:9,

| | | | |
|---|---|---|---|
| 167:14, 172:9, 179:4, 180:9 | 79:19, 82:10, 82:15, 83:16, 88:12, 89:3, 92:1, 92:16, 95:6, 104:17, 117:12, 117:15, 118:6, 118:22, 122:22, 123:15, 123:19, 127:7, 131:9, 131:16, 132:21, 133:17, 134:9, 134:10, 143:13, 145:22, 147:18, 159:2, 160:6, 162:17, 165:7, 168:3, 169:3, 169:15, 171:4, 179:9, 179:16, 179:19, 193:22, 196:5, 199:10, 204:16, 205:11, 206:18, 207:21, 212:16, 214:11, 216:13, 216:17, 230:6, 230:19, 233:10, 236:13, 238:17, 240:10, 240:11 | **rounds** 22:13 | 43:22, 44:4, 44:13, 44:20, 45:6, 45:21, 46:1, 46:14, 47:19, 52:8, 61:15, 61:19, 62:2, 65:12, 66:3, 69:3, 69:5, 69:8, 74:12, 75:6, 76:10, 86:22, 91:3, 96:10, 96:14, 97:22, 107:22, 109:5, 111:21, 116:22, 125:12, 142:15, 148:16, 149:2, 150:21, 153:6, 156:18, 157:11, 160:10, 169:8, 170:2, 170:6, 171:3, 171:20, 171:21, 171:22, 172:16, 172:22, 174:4, 174:5, 174:6, 176:11, 177:10, 177:18, 178:4, 178:17, 178:18, 180:19, 184:14, 184:17, 185:6, 187:17, 187:21, 188:4, 188:5, 189:15, 190:5, 190:19, 192:22, 194:7, 195:11, 195:22, 196:14, 200:14, 200:22, 202:2, 209:8, 213:4, 227:20, 236:10, 239:3 |
| **revealing** 56:16, 57:18, 64:13, 66:20, 68:4, 69:19, 71:2, 73:3, 90:16, 93:8, 96:2, 97:9, 98:10, 103:18, 117:22, 120:5, 134:20, 157:20, 163:10, 173:9, 181:11, 181:20, 185:2, 186:3, 190:12, 229:12 | | **route** 177:5 | |
| | | **royal** 20:13 | |
| | | **rule** 17:18 | |
| | | **rules** 15:17, 16:1, 39:17 | |
| **reversal** 241:8 | | **rulings** 240:13, 240:14 | |
| **review** 38:12, 40:15, 41:7, 41:9, 41:11, 85:3, 85:21, 214:5, 214:9, 214:10 | | **run** 209:4 | |
| | | **running** 190:15 | |
| | | **S** | |
| | | **s** 3:1, 185:15 | |
| **reviewed** 11:1, 11:12, 30:11, 31:7, 31:15, 38:20, 38:22, 39:9, 39:10, 39:15, 41:18, 85:12, 85:22, 86:3, 86:5, 86:16, 86:17, 89:2, 97:13, 164:9 | | **safety** 119:19, 194:10 | |
| | **rights** 111:3, 185:10, 201:6, 201:15, 201:22 | **said** 15:5, 18:11, 18:12, 30:10, 53:2, 54:1, 62:1, 68:16, 76:3, 77:18, 98:1, 110:4, 117:1, 136:22, 142:12, 143:16, 147:13, 153:6, 162:9, 172:14, 175:10, 181:2, 201:15, 207:12, 211:20, 217:4, 221:20, 234:2, 235:4, 235:5, 241:5, 242:5, 242:8 | |
| | **risk** 228:8, 236:16, 236:17 | | |
| **reviewing** 11:5 | **road** 4:5 | | |
| **revisiting** 147:17 | **robert** 5:14, 37:17, 82:13 | | |
| **right** 8:22, 10:9, 11:19, 13:21, 25:18, 26:6, 27:9, 27:13, 28:17, 31:16, 31:20, 32:9, 38:7, 52:4, 55:12, 70:13, | **role** 42:8, 126:4 | **salvador** 30:13, 31:3, 31:11, 33:15, 34:5, 34:7, 34:9, 34:17, 34:20, 35:5, 36:16, 43:18, | **salvadoran** 169:16, 212:12 |
| | **room** 16:11, 52:4, 157:4, 157:8 | | **salvadorian** 119:8, 161:14, 162:3, 164:19, 169:12, 177:17, 178:1, 209:18, |
| | **roughly** 12:17, 15:14 | | |
| | **round** 22:19 | | |

211:6

**same**
16:12, 21:6,
21:7, 31:13,
35:12, 37:1,
39:2, 46:15,
47:20, 49:20,
51:22, 68:18,
70:3, 70:12,
72:11, 73:21,
74:13, 94:1,
95:10, 97:7,
97:20, 98:3,
99:17, 102:19,
104:11, 125:13,
145:9, 156:19,
158:9, 162:17,
163:6, 165:19,
166:5, 167:11,
173:22, 174:7,
176:18, 178:20,
185:12, 185:21,
189:3, 189:4,
190:21, 195:2,
196:4, 196:20,
200:15, 201:10,
202:3, 204:22,
205:3, 205:7,
213:8, 217:5,
235:9, 235:14,
235:15, 242:23

**san**
69:3

**sandoval-moshenb-
erg**
4:3, 7:20, 7:21

**satisfying**
216:4

**saw**
16:4, 72:9,
136:10, 180:15,
188:13, 195:9,
235:4

**say**
13:17, 31:20,
35:20, 43:3,
52:18, 64:15,
68:6, 77:14,

95:7, 111:14,
111:16, 130:4,
139:11, 139:13,
143:10, 148:6,
149:15, 150:21,
154:13, 155:7,
155:19, 165:5,
171:9, 172:20,
193:22, 195:14,
196:2, 197:7,
209:6, 213:12,
215:20, 216:7,
216:19, 224:22,
231:6, 236:12

**saying**
23:1, 56:2,
56:3, 84:11,
123:14, 127:1,
132:5, 135:10,
136:1, 150:2,
150:9, 150:22,
151:7, 158:4,
191:22, 201:7,
202:6, 215:6,
216:1, 216:13,
220:7, 220:20,
230:21

**says**
69:1, 69:2,
86:3, 87:14,
104:19, 105:17,
149:21, 171:16,
198:14, 211:15,
216:20, 232:20

**scalia**
24:3, 24:4

**schmitt**
3:3, 3:5, 5:3,
7:16, 7:17,
8:16, 9:3, 9:7,
9:16, 9:19,
10:11, 10:15,
12:1, 12:5,
28:9, 28:13,
29:17, 32:21,
33:4, 35:13,
40:3, 40:10,
62:7, 65:3,

67:4, 73:8,
73:14, 74:1,
74:2, 82:1,
82:5, 100:13,
116:11, 116:18,
124:16, 127:17,
128:9, 128:16,
168:11, 168:18,
169:2, 181:22,
182:8, 194:14,
197:20, 198:2,
202:18, 203:16,
203:21, 204:8,
204:16, 204:20,
205:4, 205:11,
205:17, 205:19,
205:22, 206:2,
206:6, 206:11,
214:1, 218:11,
218:15, 218:18,
218:22, 229:16,
230:3, 238:1,
238:6, 238:10,
238:12, 240:10,
241:1, 241:10,
241:14

**school**
20:6, 20:22,
21:10, 21:11,
21:12, 22:6,
22:10, 23:16,
24:1, 24:18,
25:4, 25:10,
25:12

**scope**
39:6, 224:11

**scratch**
74:6

**search**
218:12, 218:15,
218:20

**second**
9:12, 11:3,
21:2, 26:16,
33:9, 37:19,
44:11, 45:3,
50:14, 171:8,
190:17, 217:15

**seconds**
40:2, 47:5,
128:6

**secret**
30:20, 47:3,
56:14, 71:19,
93:6, 94:21,
95:22, 97:10,
105:12, 112:5,
132:12, 134:16,
142:17, 152:11,
154:8, 155:15,
158:15, 161:17,
165:1, 167:15,
171:6, 173:7,
173:11, 173:14,
174:8, 175:17,
178:7, 184:20,
185:22, 190:8,
194:16, 196:21,
199:6, 209:21,
219:4, 219:22,
220:4, 220:21,
221:7, 221:11,
224:19, 227:14,
234:14

**secretary**
27:19, 42:9,
66:12, 66:22,
70:11, 70:12,
75:21, 77:19,
78:18, 79:21,
80:2, 104:13,
113:10, 113:21,
137:15, 138:7,
156:1, 212:7,
213:18, 214:16,
219:10, 219:11,
223:15, 224:3,
233:17

**secrets**
30:17, 33:19,
35:15, 42:3,
44:7, 46:5,
57:16, 99:18,
100:12, 103:16,
124:11, 125:1,
130:18, 163:7,

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

280

166:6, 176:3,
178:22, 180:4,
181:12, 188:8,
219:18, 219:21,
220:8, 220:17,
222:16, 223:19,
224:7, 225:4,
226:5, 226:17,
227:10, 228:6,
228:13
**secure**
69:6
**security**
8:6, 8:8,
11:18, 27:22,
32:11, 42:16,
43:6, 44:3,
44:22, 46:1,
46:12, 46:19,
48:2, 60:10,
61:13, 66:15,
70:8, 74:10,
75:19, 77:2,
77:7, 77:22,
79:7, 104:14,
104:15, 111:7,
111:13, 112:2,
113:1, 114:1,
115:5, 116:2,
120:17, 120:20,
121:17, 150:7,
155:11, 156:16,
158:11, 183:9,
184:4, 184:13,
193:8, 193:10,
193:21, 210:5,
211:11, 213:19,
214:17, 216:5,
219:11
**security's**
108:13, 193:2
**see**
9:22, 18:3,
20:12, 20:19,
21:8, 23:3,
26:1, 26:14,
26:21, 32:14,
32:17, 33:8,

33:12, 37:20,
53:22, 62:11,
62:17, 63:5,
69:9, 83:9,
86:14, 88:15,
90:19, 92:8,
92:16, 93:12,
107:11, 108:16,
116:6, 132:16,
135:10, 145:15,
150:9, 173:20,
174:1, 179:16,
180:21, 182:6,
198:13, 198:21,
201:7, 211:9,
212:21, 218:8,
218:19, 221:15,
233:14
**seeing**
189:8
**seek**
46:2, 109:18,
160:12
**seeking**
128:4, 226:2
**seen**
72:2, 177:20,
177:21, 177:22,
180:22, 181:3,
182:11, 188:20,
188:21, 196:13,
213:22
**selected**
25:9
**senator**
165:9
**send**
22:13, 25:10,
126:13, 148:16,
149:1, 150:21,
161:8, 167:7
**sends**
196:1
**senior**
67:14
**sense**
17:8, 23:11,
117:15, 197:11,

197:12, 217:5,
221:5
**sensitive**
237:1
**sentence**
87:14, 113:15,
198:14
**sentences**
237:18, 238:16
**series**
17:2, 165:22,
181:17, 200:6,
203:10, 214:2,
227:16, 227:18,
228:1, 230:12
**serious**
109:15, 146:4
**served**
9:13
**set**
82:7, 203:16,
242:16
**sets**
29:22, 194:9
**settle**
14:11
**settled**
14:12, 14:13,
15:4
**settlement**
14:15, 14:17,
77:12
**shall**
63:17
**shape**
27:15
**shapes**
27:15, 27:16
**shit**
102:20
**short**
65:1, 162:13
**shortly**
64:8, 65:18
**should**
9:21, 60:12,
63:4, 74:7,
111:3, 185:16,

196:16, 205:14,
205:17, 205:19,
205:20, 205:22
**show**
32:13, 197:19
**showed**
147:12
**showing**
135:14
**shy**
20:15
**sic**
14:7, 70:4,
141:8, 176:21
**side**
67:8, 92:3,
113:4
**signature-p1kal**
242:18
**signed**
15:1, 70:4,
70:5, 71:5,
71:9, 94:10,
199:18, 199:19,
222:12
**significant**
112:20, 163:19,
166:12, 167:2,
167:9
**signing**
242:11
**sill**
22:9, 23:3
**similar**
15:16, 164:16
**simon**
4:3, 7:19, 7:20
**simple**
39:13
**simply**
108:16, 158:3
**since**
18:5, 72:3,
129:18, 129:19,
147:4, 198:7
**single**
32:4, 125:17,
125:18, 133:15,

138:11, 208:9,
227:12
**sit**
72:15, 111:6,
148:3, 176:9,
181:4, 229:4,
229:5
**site**
75:10, 75:13
**sitting**
13:21, 52:4,
71:10, 201:20
**situation**
83:21, 107:11,
109:17
**six**
21:12, 21:20,
130:2, 130:9
**six-monthlong**
22:10
**six-week**
21:2
**skimming**
11:14
**sky**
220:20
**slightly**
195:20
**small**
20:13, 112:21
**smith**
50:21, 51:1
**socrates**
4:20, 7:9,
20:17
**soil**
109:9
**solely**
126:1
**some**
19:12, 25:17,
45:7, 48:5,
53:18, 67:20,
72:3, 78:22,
85:17, 85:18,
91:7, 91:8,
91:10, 93:17,
97:4, 109:3,

109:4, 113:20,
114:15, 125:16,
136:2, 137:1,
137:6, 137:21,
138:2, 140:15,
141:11, 141:20,
153:9, 153:22,
159:7, 163:19,
166:12, 173:21,
174:15, 176:7,
181:8, 181:18,
182:17, 184:5,
186:5, 186:8,
188:21, 190:20,
191:1, 192:14,
195:5, 207:9,
209:4, 212:6,
215:11, 217:11,
229:5, 233:14
**somebody**
45:12, 45:18,
48:3, 61:22,
86:21, 87:8,
88:6, 90:7,
99:14, 107:13,
107:22, 109:8,
109:10, 111:2,
111:3, 115:13,
130:10, 136:11,
137:8, 140:11,
140:14, 142:6,
147:2, 182:18,
189:6, 213:5,
213:6, 231:6
**someone**
48:2, 92:6,
107:10, 107:18,
108:14, 115:6,
141:17, 142:3,
177:16, 237:20
**someplace**
109:12
**something**
15:2, 48:6,
49:13, 96:12,
109:15, 114:9,
119:19, 126:13,
143:14, 146:20,

152:17, 156:8,
164:8, 165:9,
179:16, 186:6,
186:9, 189:20,
191:3, 192:17,
211:2, 213:1,
217:10, 217:12,
220:9
**sometime**
53:12
**sometimes**
126:6, 138:14,
184:6, 184:16,
214:19, 215:8
**somewhat**
114:11
**somewhere**
228:18
**soon**
167:3
**sorry**
11:4, 13:7,
16:1, 31:6,
32:17, 35:4,
36:12, 37:10,
38:11, 46:19,
49:22, 51:15,
52:10, 54:17,
56:18, 70:6,
74:6, 82:21,
85:8, 85:20,
89:11, 89:21,
92:9, 121:7,
121:21, 130:4,
133:8, 160:8,
161:22, 167:22,
168:1, 174:20,
176:14, 177:11,
177:12, 185:8,
191:11, 192:8,
192:9, 194:12,
205:1, 210:11,
214:14, 233:16
**sort**
93:17, 119:3,
143:17, 147:16,
150:19, 153:9,
194:10, 195:5,

203:2, 212:6,
214:2, 217:11
**sorts**
96:7, 184:6,
233:11
**sought**
109:20, 110:5,
110:11, 123:9,
128:2, 223:16
**sound**
165:16, 237:19
**sounded**
168:5
**sounds**
39:7, 51:3,
55:6, 59:19,
59:22, 120:3,
120:4, 139:1,
150:2, 174:2,
188:20, 210:2
**source**
179:13, 181:5,
218:4, 218:5
**sources**
197:16
**sovereign**
69:7, 196:6,
210:14
**speak**
39:19, 39:21,
48:4, 73:4,
159:22, 209:18,
217:20
**speaking**
217:18
**specialty**
22:11
**specific**
92:7, 127:19,
133:7, 133:8,
143:15, 145:5,
154:19, 154:21,
156:14, 156:22,
157:1, 194:5,
195:12, 196:8,
201:16, 201:19,
225:11, 228:1
**specifically**
36:20, 92:22,

Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

94:7, 104:22, 120:22, 143:21, 174:12, 178:14, 191:17, 191:19, 200:11, 207:13, 224:14, 228:1, 229:7

**specifics**
173:21

**specified**
175:2

**speculate**
108:9

**speculating**
94:8

**speed**
81:14

**speeding**
80:21, 81:1, 81:8, 81:13

**spell**
48:8, 49:11, 182:10

**spelled**
51:1

**spoke**
48:2, 48:3, 48:14, 48:16, 74:19

**sponte**
189:17

**spouse**
18:21

**ssandoval@murray-osorio**
4:7

**st**
37:21, 38:2, 54:1

**staff**
25:7

**stand**
52:7

**standard**
194:22

**standards**
194:10

**standing**
35:14, 125:6,

136:17

**starr**
26:3

**start**
9:3, 20:6, 53:11, 75:11, 122:1

**started**
15:20, 20:10, 21:11, 21:22, 22:6, 51:10

**starting**
177:14

**starts**
63:8, 238:3

**state's**
183:15, 212:8

**statements**
15:17, 172:14, 172:17, 172:18, 172:19

**stationed**
43:22, 45:4

**status**
60:4, 60:7, 61:14, 61:18, 62:2, 63:21, 65:12, 66:3, 80:10, 87:15, 87:17, 92:12, 93:3, 95:8, 95:15, 101:14, 121:2

**statute**
113:21, 148:9

**statutory**
114:2

**stay**
107:18, 108:15

**stenographically**
242:9

**step**
153:9

**stephen**
91:4

**steps**
63:21, 64:2, 92:12, 92:13,

94:17, 97:5, 97:21, 99:12, 99:14, 101:3, 101:5, 102:10, 103:5, 103:8, 103:12, 104:7, 104:19, 105:7, 105:17, 105:20, 106:21, 111:8, 112:1, 112:2, 112:9, 112:11, 112:12, 112:14, 112:16, 112:19, 112:20, 115:10, 116:1, 116:2, 116:6, 118:5, 118:10, 118:20, 125:11, 129:2, 142:9, 147:8, 147:9, 149:9, 149:11, 149:20, 149:21, 150:1, 150:3, 151:2, 151:16, 153:12, 154:18, 154:21, 161:14, 162:3, 162:11, 163:3, 163:4, 163:17, 163:19, 164:2, 164:19, 166:3, 166:12, 166:16, 166:19, 167:1, 167:3, 167:19, 168:2, 207:6, 208:16, 208:17, 208:19, 208:20, 211:17, 212:1, 225:13, 225:15, 226:10, 226:11, 226:18, 226:22, 227:17, 227:18, 228:2, 231:12, 234:11, 235:11, 238:21

**stick**
198:6

**sticking**
192:10

**still**
17:13, 44:19, 98:12

**stipulate**
35:13

**stop**
190:15

**stops**
79:18, 79:20, 80:1

**straightforward**
239:8

**street**
2:7, 3:6, 3:15, 7:12

**string**
22:12

**structure**
69:20

**structured**
119:12

**stuart**
183:5

**students**
20:15

**stuff**
22:21, 22:22, 61:8, 119:3, 135:17, 136:10, 180:2, 184:7, 187:2, 187:5, 190:22, 191:7, 208:11

**sua**
189:17

**subject**
117:11, 118:3, 118:19, 118:20, 118:22, 122:5, 123:21, 132:9, 155:3, 185:15, 196:15, 207:16, 213:13, 223:12, 224:11, 232:11, 240:13, 241:12

**subjects**
207:1

**submission**
130:2, 130:13

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

283

| | | | |
|---|---|---|---|
| **submit**<br>219:17<br>**submitted**<br>70:16, 71:9,<br>71:10, 88:17,<br>88:22, 89:3,<br>89:10, 131:7,<br>135:1, 208:2,<br>214:7, 219:12,<br>237:9<br>**submitting**<br>131:15, 135:7,<br>207:15, 208:14,<br>219:15<br>**subordinates**<br>102:15<br>**substance**<br>181:20<br>**substances**<br>16:16<br>**substantive**<br>127:18<br>**sucked**<br>24:9<br>**sued**<br>13:14, 83:16,<br>83:17, 83:22,<br>84:9, 84:10,<br>113:3<br>**suffice**<br>127:15<br>**sufficiently**<br>114:14<br>**suit**<br>13:4, 13:8<br>**suite**<br>3:7, 4:5<br>**sum**<br>190:19, 191:9<br>**summer**<br>20:22, 21:3<br>**summers**<br>21:2<br>**superior**<br>114:2, 229:15<br>**supervise**<br>27:8, 42:8,<br>79:11 | **supervision**<br>242:10, 242:24<br>**support**<br>22:21<br>**supports**<br>144:5, 145:7<br>**supposed**<br>97:17<br>**supreme**<br>78:9, 235:17<br>**sure**<br>15:1, 17:6,<br>27:12, 29:17,<br>32:19, 33:5,<br>37:18, 43:1,<br>44:1, 45:17,<br>48:9, 50:6,<br>50:15, 52:22,<br>55:5, 60:5,<br>62:13, 62:20,<br>65:10, 65:14,<br>75:11, 78:3,<br>78:8, 79:5,<br>80:3, 83:15,<br>86:3, 88:2,<br>91:14, 91:19,<br>93:11, 117:1,<br>117:2, 120:3,<br>120:14, 128:9,<br>131:6, 132:1,<br>132:2, 132:22,<br>134:6, 136:11,<br>137:2, 140:1,<br>140:6, 140:7,<br>146:1, 151:3,<br>157:17, 159:10,<br>159:20, 173:16,<br>176:20, 180:7,<br>184:2, 186:4,<br>199:12, 204:2,<br>205:8, 207:13,<br>209:5, 211:13,<br>212:13, 212:17,<br>217:12, 225:1,<br>229:10, 230:10,<br>232:2, 241:11<br>**sustain**<br>127:9, 127:15 | **swear**<br>29:12<br>**sweet**<br>162:13<br>**swimming**<br>59:17<br>**sworn**<br>8:11, 8:13,<br>9:1, 242:3<br>**system**<br>111:1, 111:5,<br>151:3, 151:19,<br>167:22<br>**systems**<br>83:6, 144:13<br>**T**<br>**t**<br>4:19<br>**table**<br>141:4<br>**take**<br>9:8, 16:18,<br>17:17, 17:20,<br>40:1, 47:4,<br>47:5, 61:14,<br>64:2, 67:10,<br>69:14, 69:21,<br>77:13, 82:9,<br>82:11, 92:14,<br>94:15, 95:5,<br>99:12, 99:14,<br>110:21, 115:19,<br>116:11, 116:19,<br>118:11, 129:3,<br>148:9, 149:11,<br>149:20, 149:21,<br>151:2, 164:19,<br>166:3, 167:1,<br>168:16, 195:12,<br>196:1, 198:8,<br>206:21, 207:6,<br>208:16, 208:21,<br>212:21, 215:7,<br>225:17, 226:12,<br>227:19, 229:16,<br>231:12, 235:11,<br>240:21 | **taken**<br>15:11, 41:20,<br>42:16, 63:22,<br>79:11, 79:12,<br>92:12, 97:21,<br>102:10, 103:5,<br>103:8, 103:13,<br>104:8, 105:7,<br>111:8, 112:1,<br>112:2, 112:9,<br>115:10, 116:2,<br>147:8, 147:9,<br>150:3, 150:6,<br>150:8, 151:15,<br>153:12, 154:18,<br>154:21, 160:7,<br>161:13, 162:2,<br>162:11, 163:3,<br>208:20, 211:18,<br>212:1, 225:13,<br>226:11, 227:1,<br>227:18, 231:12,<br>242:8, 242:14<br>**taking**<br>7:11, 15:20,<br>64:19, 97:4,<br>105:16, 105:17,<br>105:20, 106:21,<br>112:13, 118:5,<br>142:9, 149:8,<br>163:17, 196:2,<br>202:5, 208:16,<br>212:2, 226:11,<br>226:19, 227:1<br>**talk**<br>18:18, 18:21,<br>39:4, 47:5,<br>59:3, 72:20,<br>102:7, 102:21,<br>102:22, 103:4,<br>128:5, 135:17,<br>207:13<br>**talked**<br>18:8, 18:22,<br>46:12, 46:16,<br>47:16, 47:17,<br>74:4, 74:5,<br>74:10, 74:17, |

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

284

101:21, 102:8,
119:1, 136:14,
162:10, 206:21,
207:7, 207:11,
207:12, 235:22
**talking**
51:20, 61:9,
96:17, 136:8,
136:21, 146:4,
157:7, 165:6,
174:12, 192:11,
196:8, 202:10,
230:6, 233:6
**task**
75:12
**tasked**
60:2, 136:11
**tasking**
75:5
**tasks**
61:10
**tattoos**
145:17, 145:18
**team**
131:5
**teams**
48:18, 51:3,
51:5, 51:7,
56:6, 56:9,
56:10, 56:19,
57:11, 58:14,
59:11, 60:1,
60:9, 93:11,
96:5, 97:15,
191:2, 191:18
**technical**
22:11
**technically**
103:20, 215:14,
241:7
**televised**
75:20
**tell**
9:9, 12:15,
13:10, 14:5,
14:19, 14:21,
16:8, 16:12,
19:17, 19:22,

35:21, 45:10,
57:11, 57:19,
80:5, 84:9,
95:6, 98:3,
99:21, 99:22,
100:2, 100:3,
101:12, 103:7,
117:17, 118:10,
118:19, 120:13,
125:20, 142:22,
175:13, 175:14,
176:17, 199:1,
239:11
**telling**
135:8, 202:7,
211:22, 212:3,
236:3
**temporary**
41:12, 135:15
**ten**
159:19, 166:14
**ten-minute**
116:11, 168:13
**tennessee**
135:18, 136:10
**term**
186:15, 186:16,
187:13, 194:22,
201:3, 232:2
**terms**
29:9, 184:18,
190:20, 191:16,
191:17, 192:13,
196:8, 196:10,
236:9
**terrorism**
69:5
**terrorist**
34:13, 52:14,
107:15, 109:7,
115:14, 116:8,
143:20, 143:21,
144:4, 144:6,
144:12, 145:8,
147:19, 160:5,
160:14, 161:5
**terrorists**
115:16, 146:21,

146:22, 147:4,
183:20
**test**
197:14
**testified**
8:14, 98:20,
179:8, 213:10,
237:6
**testimony**
29:12, 79:13,
86:17, 107:4,
107:8, 107:9,
108:11, 108:12,
142:8, 149:5,
149:6, 180:14,
183:17, 200:19,
213:13
**texas**
15:16, 25:17,
26:3, 80:8
**th**
7:12, 10:21,
21:7, 22:4,
26:9, 26:15,
30:13, 31:3,
31:12, 33:16,
35:7, 37:10,
37:11, 40:20,
45:20, 54:2,
54:3, 62:16,
63:15, 65:7,
67:12, 67:22,
71:10, 71:12,
75:4, 76:7,
88:18, 89:7,
99:3, 103:6,
146:8, 146:9,
146:14, 146:15,
147:7, 169:8,
171:16, 180:3,
198:5, 204:14,
204:15, 205:14,
205:17, 205:19,
205:20, 205:22,
206:2, 238:19
**thank**
33:3, 62:12,
67:6, 121:14,

204:1, 204:22,
210:16, 241:19
**thanks**
11:5
**themselves**
7:15, 107:12,
108:2, 108:17
**thereafter**
35:7, 63:16,
64:8, 242:9
**thing**
61:22, 71:4,
96:8, 96:16,
111:11, 112:21,
125:5, 125:15,
127:3, 154:14,
186:16, 188:2,
194:20, 210:3,
219:14, 220:15,
224:22, 234:3,
234:4, 235:16,
241:5
**things**
15:15, 25:5,
28:7, 29:10,
57:5, 58:4,
61:4, 61:5,
61:7, 61:22,
66:22, 69:22,
96:7, 96:8,
97:4, 97:16,
105:6, 126:6,
133:6, 133:10,
143:14, 146:4,
153:17, 154:12,
154:15, 154:16,
155:3, 159:9,
160:2, 162:18,
191:21, 201:4,
209:4, 225:17,
226:16, 228:14,
230:22, 233:20,
236:21
**thinking**
21:3, 59:11
**third**
111:21, 149:2,
160:10, 171:21,

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

285

| | | | |
|---|---|---|---|
| 175:3 | 51:22, 53:6, | **told** | 10:14, 28:12, |
| **thought** | 60:1, 60:9, | 24:12, 57:9, | 33:2, 62:6, |
| 29:1, 30:2, | 65:11, 65:18, | 61:3, 106:6, | 67:3, 82:4, |
| 64:14, 64:15, | 65:19, 66:1, | 106:17, 120:12, | 198:1, 203:20, |
| 64:20, 65:1, | 72:3, 73:15, | 131:11, 132:22, | 204:7, 218:8, |
| 118:7, 146:6, | 73:18, 75:2, | 169:20, 207:22 | 241:18, 242:7, |
| 192:7, 192:8 | 76:6, 85:8, | **tomorrow** | 242:22 |
| **thoughts** | 86:11, 92:18, | 189:16, 190:6 | **transferred** |
| 64:20 | 98:13, 99:8, | **ton** | 31:9, 169:8, |
| **three** | 116:13, 116:16, | 162:18 | 171:2 |
| 21:21, 22:6, | 125:8, 125:21, | **took** | **transport** |
| 25:20, 25:22, | 128:10, 128:13, | 23:12, 25:2, | 172:21 |
| 50:5, 90:22, | 152:15, 156:12, | 32:8, 60:11, | **transported** |
| 92:7, 97:19, | 162:1, 168:19, | 70:2, 70:18, | 30:12, 31:2, |
| 176:2, 177:7, | 168:22, 203:13, | 101:3, 101:5, | 31:11, 33:15, |
| 219:8, 238:16, | 217:13, 229:5, | 116:6, 125:10, | 34:19, 36:15, |
| 241:5 | 229:20, 230:1, | 146:10, 153:9, | 45:21, 52:8, |
| **through** | 239:6, 240:16 | 191:13, 238:20 | 169:14, 175:3 |
| 20:1, 20:3, | **timeline** | **top** | **travel** |
| 22:1, 48:21, | 5:11, 28:18, | 10:20, 22:15, | 139:14 |
| 71:13, 75:5, | 28:20, 29:3, | 79:18, 83:13, | **traveled** |
| 89:1, 110:8, | 29:5, 29:9, | 145:19, 152:1 | 20:9 |
| 135:13, 144:22, | 30:4, 30:6, | **topic** | **treated** |
| 161:1, 177:5, | 62:19 | 169:5 | 21:13 |
| 181:17, 183:4, | **times** | **topics** | **trial** |
| 190:1, 209:4, | 12:12, 15:9, | 92:7, 228:16 | 14:10 |
| 215:15, 222:3 | 18:10, 18:13, | **totally** | **trials** |
| **thumbs** | 18:14, 90:22, | 29:6, 29:20 | 25:21 |
| 16:4 | 97:20, 154:1, | **touch** | **trick** |
| **tick** | 156:14 | 225:9 | 215:4 |
| 181:16 | **title** | **touched** | **tricky** |
| **tickets** | 171:19 | 225:3 | 215:5 |
| 80:21, 81:1, | **today** | **tour** | **trigger** |
| 81:9, 81:13 | 7:9, 7:18, 8:9, | 25:19 | 140:5 |
| **tighten** | 11:2, 11:12, | **track** | **trip** |
| 231:8 | 16:17, 18:7, | 29:9 | 156:2, 156:6 |
| **time** | 18:19, 19:1, | **trafficked** | **tro** |
| 1:18, 7:8, | 19:4, 24:13, | 109:9 | 41:14 |
| 17:10, 17:16, | 28:19, 29:2, | **trafficker** | **trouble** |
| 23:22, 24:8, | 32:1, 53:22, | 135:19, 233:19 | 13:20, 127:6 |
| 24:13, 25:3, | 54:4, 71:11, | **train** | **true** |
| 25:17, 32:8, | 72:15, 77:18, | 112:17 | 69:11, 117:3, |
| 34:15, 36:1, | 111:6, 144:22, | **training** | 242:7 |
| 36:3, 40:5, | 224:14, 225:12, | 21:9, 21:13, | **trump** |
| 40:8, 41:18, | 225:20, 227:12 | 23:13, 25:1, | 27:11, 183:3, |
| 42:18, 43:8, | **today's** | 144:16 | 183:5 |
| 45:19, 45:21, | 7:7, 18:2 | **transcript** | **trump's** |
| 47:9, 47:12, | **together** | 5:7, 6:2, 9:6, | 26:16 |
| | 9:11, 63:12 | | |

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

286

**truth**
16:8, 16:12,
29:13, 45:10
**try**
32:1, 147:14,
182:4, 182:7,
209:16, 232:4
**trying**
23:9, 31:21,
32:2, 37:4,
78:14, 97:18,
108:2, 119:10,
127:2, 140:20,
144:21, 144:22,
145:1, 151:4,
156:22, 169:10,
179:18, 188:18,
189:1, 189:5,
190:1, 197:13,
197:15, 215:3,
215:5, 221:4,
222:2, 225:22,
232:4, 232:12
**tuesday**
1:17
**tui**
141:14
**tune**
115:15
**turn**
62:14, 82:22,
148:15, 218:9
**turned**
107:2
**two**
9:10, 12:21,
12:22, 18:17,
21:1, 22:6,
23:20, 25:11,
25:18, 49:12,
60:7, 123:15,
130:10, 144:11,
145:14, 153:4,
171:16, 173:1,
174:17, 201:21,
202:22, 218:16,
225:7, 230:8,
237:18

**two-page**
63:4
**typewriting**
242:10
**typical**
61:7
**typically**
41:7, 42:11,
96:21, 119:22,
120:21

**U**

**ultimate**
78:7, 78:14,
78:15, 79:14,
79:17, 112:22,
113:6
**ultimately**
185:16, 232:16
**under**
16:8, 27:2,
27:4, 39:16,
71:5, 83:2,
88:17, 171:17,
184:18, 185:11,
195:13, 201:21,
215:1, 216:12,
223:18, 228:12,
242:10, 242:23
**underlying**
28:20
**understand**
14:20, 15:19,
15:21, 16:7,
16:10, 16:17,
16:21, 17:4,
17:5, 17:10,
17:21, 23:13,
24:12, 25:16,
34:8, 35:18,
43:2, 78:3,
86:20, 97:3,
97:18, 99:4,
99:9, 99:11,
120:4, 120:15,
127:4, 128:6,
129:12, 132:2,
132:22, 137:4,

139:10, 140:6,
140:20, 149:5,
151:5, 151:13,
159:10, 162:14,
166:18, 176:20,
180:8, 181:1,
181:16, 188:18,
189:1, 189:5,
196:5, 211:4,
215:9, 215:11,
215:13, 216:1,
226:7, 226:13,
232:6
**understanding**
17:7, 30:9,
31:1, 31:5,
31:6, 31:8,
31:10, 33:14,
59:4, 69:2,
71:15, 71:16,
123:4, 123:5,
127:6, 138:6,
142:22, 146:17,
164:4, 176:3,
177:3, 179:10,
180:12, 180:13,
180:14, 185:14,
185:19, 188:3,
195:11, 196:18,
216:6, 235:18,
238:19
**understood**
124:22, 168:3,
186:20, 191:15,
203:11, 241:13
**undertook**
134:5
**unfortunately**
237:22
**unique**
217:10
**unless**
17:11, 35:20,
87:19, 242:23
**until**
40:7, 47:11,
63:16, 65:16,
73:17, 116:15,

128:12, 161:8,
167:7, 168:21,
229:22
**updated**
99:7
**updating**
206:22
**upheld**
160:21
**usaa**
14:7
**uscis**
138:10, 143:2
**use**
21:16, 30:8,
168:16

**V**

**va**
4:6
**vacate**
160:13
**vaden**
26:10
**vague**
45:7, 153:22,
186:8, 186:12
**vance**
91:4
**various**
83:6, 119:13,
137:16, 138:9
**verb**
203:15
**verbal**
16:2, 16:5
**verify**
69:14, 70:2
**verse**
229:11
**version**
62:3
**versus**
215:21
**vested**
114:4
**vests**
113:17

**via**
93:10, 97:15,
216:4
**vice**
91:4, 126:5
**video**
7:8, 7:11,
40:6, 47:10,
73:16, 73:19,
91:1, 116:14,
128:11, 168:20,
229:21, 235:5
**videographer**
4:20, 7:2, 7:9,
8:9, 40:5, 40:8,
47:9, 47:12,
73:15, 73:18,
116:13, 116:16,
128:10, 128:13,
168:19, 168:22,
229:20, 230:1,
241:15
**videographic**
125:18
**videos**
156:5
**videotaped**
1:13, 2:3, 7:3,
241:16
**view**
223:4
**violation**
116:5, 116:7
**virginia**
20:13, 80:7
**vis-à-vis**
190:4
**visit**
75:10, 75:14,
209:11
**voice**
7:14
**vs**
1:7, 5:11

**W**

**wait**
77:4, 107:11,

108:16, 130:4,
224:7
**waived**
219:15
**walk**
20:1, 20:2
**walked**
159:18
**want**
20:4, 23:6,
30:8, 45:8,
48:8, 62:12,
65:14, 67:8,
83:10, 83:15,
84:2, 88:10,
91:20, 120:2,
120:3, 124:8,
129:12, 140:6,
143:17, 146:1,
149:5, 157:17,
169:5, 176:20,
180:7, 196:7,
204:2, 204:4,
210:15, 212:17,
224:22, 225:1,
226:13, 236:7,
241:4, 241:8,
241:10
**wanted**
99:8, 182:19,
211:2, 212:12
**warfare**
25:3
**warrant**
169:7, 169:11
**warranting**
224:19, 226:5,
227:9
**washington**
1:16, 2:9, 3:8,
3:17, 4:15, 7:13
**watch**
156:5
**watched**
91:1
**way**
23:2, 46:10,
58:7, 83:10,

96:18, 96:19,
96:20, 119:12,
125:22, 127:5,
143:10, 167:18,
169:17, 195:4,
205:12, 212:5,
217:12, 217:19,
219:14, 239:18
**ways**
110:19
**we'll**
9:4, 24:14,
35:18, 36:3,
43:15, 47:8,
73:14, 75:11,
148:14, 148:18,
148:22, 150:11,
150:12, 173:22,
180:10, 182:6,
212:22
**we're**
17:6, 27:12,
28:5, 43:1,
43:3, 47:9,
57:6, 67:7,
96:17, 106:3,
115:2, 115:12,
145:13, 146:4,
148:13, 148:18,
148:21, 148:22,
161:8, 165:6,
169:3, 171:13,
188:12, 190:1,
193:17, 196:2,
201:20, 202:10,
202:15, 211:8,
212:3, 214:1,
215:14, 215:16,
226:10, 226:11,
226:18, 226:22,
229:13, 229:21,
231:6, 231:7,
231:10, 233:22,
241:11
**we've**
117:10, 124:9,
149:9, 192:10,
206:20, 226:10,

228:11
**week**
18:6
**well-established**
149:16
**went**
20:12, 22:2,
23:4, 24:18,
25:3, 26:2,
75:21, 75:22,
206:3
**weren't**
120:12
**west**
2:8, 3:16, 7:13
**western**
67:15
**whatever**
22:1, 22:16,
62:3, 76:3,
130:12, 134:5,
167:5, 196:3,
196:7, 197:7,
199:18
**whereabouts**
93:18, 93:22,
94:3, 94:5, 94:8
**whereof**
242:16
**whether**
39:9, 43:21,
45:22, 46:9,
46:11, 46:16,
47:16, 60:15,
61:5, 69:14,
70:2, 70:20,
71:11, 73:10,
74:4, 74:5,
74:9, 75:18,
76:9, 78:10,
94:17, 95:5,
125:10, 127:8,
135:4, 135:5,
141:1, 141:6,
149:1, 157:8,
167:9, 169:22,
170:5, 178:13,
191:13, 197:13,

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

**whirl**
182:9
**white**
214:18, 214:21,
215:1, 215:12,
215:13, 215:17,
215:19, 215:20,
216:4, 216:9,
216:15, 216:21,
216:22, 217:2,
235:5
**whoever**
213:6
**whole**
218:8, 219:14,
219:16, 237:2,
238:15
**wife**
19:13, 109:8,
116:6, 233:19
**wife's**
135:13
**wikipedia**
187:16
**william**
3:13
**withdrawn**
6:14, 204:19
**withheld**
226:15, 228:9,
228:10, 228:12,
229:6, 232:18,
233:3
**withhold**
123:6, 124:14,
129:5, 162:16,
164:5
**withholding**
34:6, 34:10,
34:11, 34:13,
34:16, 36:16,
52:9, 57:22,
58:1, 59:5,
59:16, 86:2,
86:11, 86:22,

197:14, 197:16,
201:20, 213:22,
223:16, 232:11

87:2, 87:9,
87:21, 88:5,
100:10, 107:21,
108:18, 111:20,
121:8, 122:1,
122:11, 122:13,
122:15, 124:3,
127:9, 127:21,
130:14, 147:14,
159:13, 160:12,
165:17, 168:6
**within**
27:21, 44:2,
54:7, 65:21,
113:22, 126:1,
159:4, 200:20,
218:15, 218:16,
221:22
**without**
35:1, 38:18,
42:4, 49:7,
54:15, 56:15,
57:17, 64:12,
66:19, 68:3,
69:18, 71:2,
73:3, 90:15,
93:7, 96:1,
97:8, 98:10,
103:18, 117:8,
117:22, 134:20,
153:8, 154:9,
161:20, 163:9,
173:8, 175:21,
178:9, 181:11,
181:20, 185:2,
186:2, 190:12,
195:5
**witness**
8:11, 12:1,
13:2, 29:19,
29:20, 30:3,
30:5, 33:3,
33:20, 36:10,
39:17, 62:9,
73:6, 73:8,
100:14, 100:17,
121:7, 127:14,
128:15, 134:19,

152:10, 168:15,
176:14, 185:8,
202:13, 205:6,
205:9, 206:5,
218:14, 241:4,
242:3, 242:16
**won**
25:20, 241:5
**wondering**
85:9
**word**
32:5, 33:8
**words**
43:3, 89:4,
89:5, 195:14,
232:17
**work**
22:19, 24:6,
31:22, 58:7,
61:8, 61:10,
64:18, 64:20,
100:17, 100:22,
118:15, 126:3,
130:18, 139:19,
151:4, 153:18,
168:14, 214:18,
214:22, 215:8,
216:3
**worked**
21:9, 23:18,
25:16, 183:4
**working**
24:22, 216:17
**works**
76:14, 127:5,
154:12, 203:8,
216:9, 216:15
**workstream**
123:16, 123:17
**workstreams**
123:15
**worried**
186:22, 187:2,
187:5
**worry**
19:21
**wouldn't**
52:18, 118:8,

179:4, 221:10
**wpittard@kaiserl-
aw**
3:18
**write**
136:16, 136:17
**written**
65:2, 177:16,
178:1
**wrong**
62:12, 84:10,
123:2, 142:22,
146:18
**wrongful**
109:18
**wrongfully**
107:6
**wrongly**
108:19, 109:5
**wrote**
62:1, 118:3

**X**

**xinis**
10:7, 11:8,
62:16, 78:8,
89:9, 93:2,
99:4, 99:7,
192:4, 192:5,
210:22, 211:22,
225:10, 227:5
**xinis's**
68:8, 76:8,
78:1, 89:13,
90:5, 90:11,
91:22, 223:17,
224:1

**Y**

**year**
12:21, 24:2,
24:4, 24:21,
25:2, 25:9,
26:15, 185:15,
188:2, 196:15
**years**
25:11, 25:18,
166:16

**yep**
38:3, 69:10,
110:7, 175:9,
187:1, 198:11,
236:6
**yes-or-no**
85:13
**yesterday**
154:2
**yesterday's**
153:5
**yourself**
7:19, 114:15

---
### Z

**zyrtec**
16:18

---
### "

**"aea"**
171:18

---
### $

**$5,999,999**
188:16

---
### .

**.2000**
4:16
**.2399**
4:8
**.2850**
2:10
**.6150**
3:19

---
### 0

**00**
63:17, 68:9,
73:17, 73:18
**00951**
1:7, 7:6
**01**
168:19, 168:21
**03**
5:13
**04**
5:16, 5:18,

6:4, 6:6, 6:8,
6:10, 6:12
**06**
116:15, 116:16

---
### 1

**1**
63:20, 229:22,
241:21
**10**
5:10, 6:6,
21:7, 22:4,
73:17, 73:18,
116:13, 116:15,
203:17, 203:18,
205:17
**100**
166:12
**1099**
2:7, 3:15, 7:12
**11**
5:15, 6:8,
62:16, 65:7,
65:16, 116:15,
116:16, 128:10,
128:12, 128:13,
203:17, 203:19,
205:19
**110**
22:4
**1100**
3:6
**12**
5:16, 6:10,
63:15, 65:16,
67:12, 67:22,
71:10, 71:12,
75:4, 76:7,
168:19, 168:21,
168:22, 203:17,
203:19, 205:3,
205:6, 205:19
**1220**
3:7
**13**
6:12, 52:14,
86:8, 99:3,
145:18, 204:3,

204:6, 204:10,
204:22, 205:3,
205:4, 205:5,
205:6, 205:7,
205:22, 206:2,
229:20, 230:1,
241:17
**14**
5:18, 6:14,
7:12, 40:5,
40:7, 88:18,
89:7, 103:6,
146:8, 146:9,
146:14, 146:15,
147:7, 204:17,
204:18, 205:7,
206:3, 206:4
**15**
6:4, 10:21,
30:13, 31:3,
31:12, 33:16,
35:7, 169:8,
171:16, 180:3,
198:5, 205:14
**16**
6:6, 205:17
**17**
6:8, 205:19,
238:19
**18**
6:10, 128:10,
128:12, 168:21,
168:22, 204:15,
205:20
**19**
6:12, 204:14,
205:22, 206:2
**197**
5:20
**11**
24:4
**1st**
22:4

---
### 2

**2**
5:21, 63:21
**20**
22:15, 26:9,

26:15, 128:12,
128:13
**200**
115:15, 146:21
**20005**
2:9, 3:8, 3:17,
7:13
**2008**
21:7, 147:4
**2009**
22:1
**2019**
145:4
**202**
3:9
**202.514**
4:16
**202.640**
2:10
**202.683**
3:19
**2020**
183:5
**2025**
1:17, 5:15,
7:7, 26:15,
38:3, 63:15,
144:5, 145:6,
145:7, 145:21,
171:16, 242:17
**203**
6:4, 6:6, 6:8,
6:10
**204**
6:12
**20530**
4:15
**21**
40:7, 40:8
**215**
114:8, 114:9
**22**
1:17, 7:7,
54:5, 54:6,
242:17
**22030**
4:6
**24**
37:10, 37:11,

CONFIDENTIAL
Transcript of Joseph N. Mazzara
Conducted on April 22, 2025

290

40:20, 45:20,
54:2, 54:3,
99:5, 99:6,
99:8, 99:13,
103:5, 104:22,
105:8, 206:17
**242**
1:21
**25**
1:7, 5:13,
5:16, 5:18, 6:4,
6:6, 6:8, 6:10,
6:12, 7:6,
26:15, 229:20,
229:22
**28**
5:11
**29**
47:9, 47:11

**3**

**3**
64:1
**30**
47:5, 65:16,
128:6
**300**
4:5
**31**
5:13, 37:21,
38:2, 47:11,
47:12, 54:1
**33**
5:13
**34**
1:18
**35**
7:8, 229:22,
230:1

**4**

**400**
20:15
**4103**
4:5
**43**
116:13, 116:15
**47**
241:17

**48**
241:21

**5**

**5**
63:17, 68:9
**50**
166:15
**500**
52:3
**58**
73:15, 73:17
**581522**
1:20

**6**

**62**
5:15
**627**
3:9
**64**
90:21
**67**
5:16
**6900**
3:9

**7**

**703.352**
4:8

**8**

**8**
1:18, 7:8
**82**
5:18
**8:-cv**
1:7
**8:-cv--px**
7:6
**8th**
2:8, 3:16, 7:12

**9**

**9**
40:5, 40:7,
40:8, 47:9,
47:11, 47:12,

73:15, 73:17
**950**
4:14