**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, | Case No. 8:25-CV-02780-PX |
| Petitioner, | |
| v. | |
| MARKWAYNE MULLIN, Secretary of Homeland Security; TODD BLANCHE, Acting Attorney General; TODD M. LYONS, and NIKITA BAKER, | |
| Respondents.[1] | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY (ECF 178)**

BRETT A. SHUMATE
Assistant Attorney General Deputy
U.S. Department of Justice

JONATHAN GUYNN
Assistant Attorney General
U.S. Department of Justice
Civil Division
Torts Branch

DREW C. ENSIGN
Deputy Assistant Attorney General
U.S. Department of Justice
Civil Division
Office of Immigration Litigation

ERNESTO H. MOLINA, JR.
Deputy Director
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-616-93444
ernesto.h.molina@usdoj.gov

SHANE YOUNG
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation

ATTORNEYS FOR RESPONDENTS

---

[1] Secretary Markwayne Mullin, and Acting Attorney General Todd Blanche are automatically substituted for their predecessors under Federal Rule of Civil Procedure 25(d).

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

PROCEDURAL BACKGROUND............................................................................................ 2

      I.      Claims Presented and Adjudicated ................................................ 2

      II.      The Government's Motion to Dissolve the Injunctions against Detention and Removal.................................................................... 4

      III.      Petitioner's Requests for Production ............................................ 6

SCOPE OF DISCOVERY IN HABEAS................................................................................ 7

ARGUMENT ....................................................................................................................... 8

      I.      No Good Cause Supports Permitting Discovery Because All of Petitioner's Claims are Purely Legal Questions or Beyond the Court's Habeas Authority ..................................................................... 9

      II.      No Good Cause Supports Granting Petitioner's Specific Discovery Requests .................................................................................... 12

            A.      There is No Good Cause for Discovery Regarding the Remaining Claims. ................................................................................... 12

            B.      Petitioner Has Not Shown Good Cause for Discovery Relating to the Schultz Declaration Where it Plays No Role in Any of the Remaining Claims and Where He previously Failed to Inquiry into the Matter ................................................................................. 15

      III.      Petitioner Has Not Made An Attempt to Comply With the *Touhy* Process in Requesting Leave to Conduct Discovery............................................. 19

CONCLUSION.................................................................................................................... 21

CERTIFICATE OF SERVICE .............................................................................................. 22

i

**TABLE OF AUTHORITIES**

**Cases**

*Aiken v. Eady*,
  2016 WL 452135 (D.N.J. Feb. 4, 2016) .................................................................... 20

*Al-Anazi v. Bush,*
  370 F.Supp. 2d 188 (D.D.C. 2005) .................................................................... 16, 18

*Baltimore Gas and Electric Company v. Rand Construction Co.,*
  No. 1:24-cv-1467, 2024 WL 4349641 (D. Md. Sept. 30, 2024) .............................. 11

*Bourfa v. Mayorkas*,
  694 U.S. 6 (2024) .................................................................................................... 13

*Bracy v. Gramley*,
  520 U.S. 899 (1997) .......................................................................................... 1, 7, 9

*Brooks v. Bivens*,
  No. 21-221, 2022 WL 4104180 (D. Md. Sept. 8, 2022) ........................................... 7

*Cuccinelli*,
  955 F.3d 377 (4th Cir. 2020) .................................................................................. 13

*D.V.D. v. DHS*,
  778 F. Supp. 3d 355 (D. Mass. 2025) ...................................................................... 9

*D.V.D. v. U.S. Dept. of Homeland Sec.*,
  ___ F.Supp. __, 2026 WL 521557 (D. Mass. Feb. 25, 2026) .................................. 10

*Department of State v. Munoz*,
  602 U.S. 899 (2024) ............................................................................................... 14

*Elgharib v. Napolitano*,
  600 F.3d 597 (6th Cir. 2010) .................................................................................. 16

*Escobedo v. United States,*
  623 F.2d 1098 (5th Cir. 1980) ........................................................................... 16, 18

*Ghamelian v. Baker*,
  2025 WL 2049981 (D. Md. July 22, 2025) ............................................................. 10

*Gillespie v. Crawford*,
  858 F. 2d 1101 (5th Cir. 1988) ................................................................................. 9

*Hachette Distribution, Inc. v. Hudson Cnty. News. Co.,*
  136 F.R.D. 356 (E.D. N.Y. 1993) ........................................................................... 11

*Heikkila v. Barber*,
345 U.S. 229 (1953) ............................................................................... 8, 11, 14, 15

*I.V.I. v. Baker*,
2025 WL 1519449 (D. Md. May 27, 2025) ................................................................ 10

*In re Application for an Order Pursuant to 28 U.S.C. § 1782 To Conduct Discovery for use in a Foreign Proceeding,*
286 F.Supp. 3d 1 (D.D.C. 2017) ............................................................................... 18

*In re Boeh*,
25 F.3d 761 (9th Cir. 1994) ...................................................................................... 19

*Jama v. Immigr. & Customs Enf't*,
543 U.S. 335 (2005) ................................................................................................. 12

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) ................................................................................................. 14

*Peroff v. Hylton*,
542 F.2d 1247 (4th Cir. 1976) ............................................................................ 16, 18

*Potarazu v. Warden*,
No. 22-1334, 2023 WL 6142990 (D. Md. Sept. 20, 2023) .......................................... 7

*Rivarde v. Missouri*,
930 F.2d 641 (8th Cir. 1991) .................................................................................... 10

*Sadhvani v. Chertoff*,
460 F.Supp.2d 114 (D.D.C. 2006) ............................................................................ 16

*Sanchez v. Bondi*,
2025 WL 2550646 (D. Colo. Aug. 20, 2025) ............................................................ 10

*Shaiban v. Jaddou,*
97 F.4th 263 (4th Cir. 2024) ..................................................................................... 13

*Sidali v. INS*,
107 F.3d 191 (3d Cir. 1997) ............................................................................... 16, 18

*Spencer v. Gasper*,
2021 WL 5346665 (6th Cir. 2021) .............................................................................. 9

*Swett v. Schenk*,
792 F.2d 1447 (9th Cir. 1986) .................................................................................. 19

*Tanha v. Warden, Baltimore Det. Facility*,
2025 WL 2062181 (D. Md. July 22, 2025) ............................................................... 10

*Thuraissigiam*,
  591 U.S. 103 (2020) ......................................................................... 8, 12, 14, 15

*U.S. ex rel. Tisi v. Tod*,
  264 U.S. 131 (1924) ........................................................................................ 8

*U.S. ex rel. Touhy v. Ragen*,
  340 U.S. 462 (1951) ................................................................................... 9, 19

*U.S. ex rel. Vajtauer v. Commissioner of Immigration*,
  273 U.S. 103 (1927) ....................................................................... 8, 11, 14, 15

*U.S. v. Kin-Hong,*
  110 F.3d 103 (3d Cir. 1997) ...................................................................... 16, 18

*United States v. Adil*,
  2022 WL 20275084 (E.D. Va. Aug. 3, 2022) ................................................ 19

*United States v. Curtiss-Wright Exp. Corp.*,
  299 U.S. 304 (1936) .................................................................................. 16, 18

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ....................................................................................... 3

**Statutes**

5 U.S.C. § 301 ............................................................................................... 19

8 U.S.C. § 1231(b)(2) ............................................................................... 2, 4, 12

8 U.S.C. § 1231(b)(2)(C) ............................................................................ i, 12

8 U.S.C. § 1231(b)(2)(C)(iv) .......................................................................... 13

8 U.S.C. § 1231(b)(2)(E)(vii) .................................................................... 12, 13

8 U.S.C. § 1231(b)(3) .............................................................................. 2, 4, 15

8 U.S.C. § 1252(a)(5) ....................................................................................... 2

8 U.S.C. § 1252(b)(9) ....................................................................................... 2

8 U.S.C. § 1252(g) ..................................................................................... 2, 16

**Rules**

Federal Rule of Civil Procedure 25(d) ............................................................. 1

**Regulations**

6 C.F.R. § 5.3(b) ................................................................................................................ 20

6 C.F.R. § 5.45 .................................................................................................................. 20

8 C.F.R. § 1003.38(b) .......................................................................................................... 3

8 C.F.R. § 1208.16 .................................................................................................... 2, 4, 15

6 C.F.R. § 5.45(a)............................................................................................................... 20

**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, | Case No. 8:25-CV-02780-PX |
| Petitioner, | **RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY (ECF 178)** |
| v. | |
| MARKWAYNE MULLIN, Secretary of Homeland Security; TODD BLANCHE, Acting Attorney General; TODD M. LYONS, and NIKITA BAKER, | |
| Respondents.[1] | |

## INTRODUCTION

Habeas petitioners are not ordinarily entitled to discovery; they can seek it only if they demonstrate good cause and even then, only if the Court exercises its discretion to allow it. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Petitioner Abrego Garcia cannot demonstrate good cause for discovery here.

As a general matter, Petitioner's claims fail as a matter of law and on jurisdictional grounds in light of his undisputedly final order of removal, such that the discovery he seeks would be legally irrelevant. These threshold legal issues have yet to be resolved by this Court, and the Court should rule on them before requiring the government to produce any of the sensitive discovery materials he seeks.

Petitioner's discovery requests would be impermissible in any event. Some of the requests seek information he already has. Others seek documents and correspondence concerning matters that neither he nor the Court is permitted to probe. And others seek documents and information

---

[1] Secretary Markwayne Mullin, and Acting Attorney General Todd Blanche are automatically substituted for their predecessors under Federal Rule of Civil Procedure 25(d).

from non-parties that are not implicated or named in this Petition, and without proper procedure. The Court should deny the motion.

## PROCEDURAL BACKGROUND

### I. Claims Presented and Adjudicated

On August 25, 2025, Petitioner filed his Petition for Writ of Habeas Corpus ("Habeas Petition"). ECF 1. His Habeas Petition articulates five claims: (1) That the government's effort to remove him violated 8 U.S.C. § 1231(b)(2), ECF 1 ¶ 50 ("First Claim"); (2) That he was detained without a significant likelihood removal in the reasonably foreseeable future, ECF 1 ¶ 52 ("Second Claim"); (3) That removal did not bear any reasonable relationship to a legitimate government purpose in violation of the Due Process Clause, ECF 1 ¶ 59 ("Third Claim"); (4) That his removal to Uganda was a violation of 8 U.S.C. § 1231(b)(3) and 8 C.F.R. § 1208.16 (protection under the Convention Against Torture ("CAT")) without assurances from the country of removal, ECF 1, ¶ 41 ("Fourth Claim"); (5) That he is being removed without a deportation order, ECF ¶ 69 ("Fifth Claim").

On December 11, 2025, the Court issued its Memorandum Opinion and Order. ECF 110 & 111. The Court rejected the government's jurisdictional arguments under 8 U.S.C. § 1252(a)(5), (b)(9), and (g) based on its determination that Petitioner was not challenging the execution of a final order of removal; rather, the Court concluded that Petitioner's detention was unlawful "because he is held in the absence of such a removal order." ECF 110 at 16; *see id*. at 19-24. Accordingly, the Court disposed of the fifth claim.

The Court then ruled that, in the absence of an order, Petitioner's further detention violated the Immigration and Nationality Act and due process. *Id.* at 24-29. Following this Court's December 11, 2025, order granting Petitioner's Petition for Writ of Habeas Corpus, ECF No. 110,

111, Respondents promptly released the Petitioner under an "ICE Order of Supervision." *See* ECF 112-1, 112-2.

On December 11, 2025, Immigration Judge Phillip Taylor issued an order of removal nunc pro tunc and designated El Salvador as the country of removal on December 11, 2025, making the order effective as of October 10, 2019. *Id*. 112-2. Following a hearing and requests for clarification, Respondents submitted a corrected Notice of Conditions of Release, cancelling the ICE Order of Supervision issued on December 11, 2025, on December 26, 2025. ECF No. 126-1 at 2. On January 5, 2026, Petitioner purported to waive his right to appeal the order. ECF No. 130 at 2. Petitioner did not file an appeal to the Board of Immigration Appeals within the 30-day deadline. *See* 8 C.F.R. § 1003.38(b).

Shortly after Petitioner's release on December 11, 2025, Petitioner filed an emergency motion for a temporary restraining order. ECF 112. In it, he urged that he had a likelihood of success because (1) the immigration judge lacked jurisdiction; (2) the purported order was not a final order of removal; (3) the purported order of removal violated due process; and (4) the government could not detain him under *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF 112 at 3-4.

On December 12, 2025, the Court granted an emergency temporary restraining order. ECF 114. The Court indicated that under *Zadvydas*, the newly issued order of removal was effective as if issued in 2019, then the removal period had long passed. ECF 114 at 2-3. Further, the Court indicated that the equities for a temporary restraining order favored the Petitioner. ECF 114 at 3-4. On February 17, 2026, the Court granted Petitioner's request to convert the "TRO" into injunctive relief. ECF 141 at 2. In granting injunctive relief, the Court fully incorporated its decision at ECF 110. ECF 141 at 2. The Court discussed the import of the nunc pro tunc order of removal to its prior decision finding that detention was inappropriate under *Zadvydas*. *Id*. at 3-7.

3

The Court did not discuss the import of a now existing final order on its jurisdiction, or the import of the August injunction on the *Zadvydas* calculus, or the equities requisite for an injunction. *See* generally ECF 141. However, the Court did dispose of the Second Claim.

Accordingly, remaining before the Court are the First Claim arguing a violation of 8 U.S.C. § 1231(b)(2); the Third Claim arguing that Petitioner's removal is a violation of Due Process because it bears no reasonable relationship to a legitimate government purpose; and the Fourth Claim arguing that that his removal would be a violation of 8 U.S.C. § 1231(b)(3) (withholding of removal) and 8 C.F.R. § 1208.16 (protection under CAT).

II.     **The Government's Motion to Dissolve the Injunctions against Detention and Removal**

On March 20, 2026, the government moved to dissolve the Court's preliminary injunction against the removal of Petitioner at ECF 141 and the injunction against further detention for the purpose of removal at ECF 13. *See* ECF 142. In its motion, the government argued that the Court had never adjudicated the government's motion to dissolve the injunction against removal (ECF 72). *See* ECF 142 at 13. Further, the government argued that the stay of removal is jurisdictionally barred. *Id.* at 9. The government also argued that the injunction against further detention for the purpose of removal was improper and that the government was ready to immediately effectuate Petitioner's removal to Liberia. *Id.* at 1.

In support of its motion, the government submitted a declaration from John A. Schultz, Deputy Assistant Director for the Removal Management Division of the Enforcement and Removal Operations ("ERO") for the U.S. Immigration and Customs Enforcement ("ICE"). *See* ECF 142-1 ("The Schultz Declaration"). In the declaration, Mr. Schultz explained that Petitioner had been informed of his prospective removal to Liberia. *Id.* at ¶ 14. He also related that on October 28, 2025, Petitioner had been interviewed by an asylum officer regarding any prospective

persecution or torture in Liberia. *Id.* at ¶ 15. The asylum officer found that Petitioner failed to demonstrate the requisite likelihood of persecution or torture in Liberia. *Id.* Mr. Schultz also related that in mid-February 2026, the Department of State informed ICE that Liberia remained willing to accept Petitioner upon his removal, subject to the same assurances it had provided in October 2025. *Id.* at ¶ 16. He declared that, in the absence of the injunction issued by the Court, ICE would "expeditiously" remove Petitioner to Liberia. *Id.* In support of the statement that removal could be effectuated, Mr. Schultz expressly indicated removal to a third country is effectuated by placing an alien on a manifest for the third-country government to accept. *Id.* at 17. A similar statement had previously been provided to the Court on October 10, 2025. *See* ECF 52 at 158-59 ("In my (Mr. Schultz's) experience, we don't need a travel document to send somebody back to a third country."). Mr. Shultz declared that, in light of Liberia's previous representations that it would accept Petitioner, Petitioner's removal to Liberia could be effectuated without a "travel document" or completion of any other procedure. *Id.* at ¶ 18.

The government also submitted a written decision by Todd Lyons, then-Senior Official Performing the Duties of the Director of ICE, as Exhibit B in support of its motion. *See* ECF 143-1 ("The Lyons Decision"). In his decision, Mr. Lyons discussed Petitioner's effort to designate Costa Rica as his country of removal. *Id.* at 3-4. Mr. Lyons considered the fact that, in removal proceedings, Petitioner had designated El Salvador as his country of removal. *Id.* at 3. He found that Petitioner had waived his opportunity to designate an additional country of removal. *Id.* Mr. Lyons determined that Petitioner's effort to designate Costa Rica as a country of removal six years after his proceedings were concluded was invalid as he did not make that designation during removal proceedings. *Id.* at 4. In the alternative, Mr. Lyons exercised his discretion to disregard the designation under 8 U.S.C. § 1231(b)(2)(C)(iv), finding that removal to Costa Rica would

prejudice the United States.  *Id.*  Mr. Lyons observed that the negotiations with Liberia required significant U.S. Government resources and political capital.  *Id.*  He noted that those discussions took place at the senior levels of government and had secured assurances from Liberia that Petitioner would not be persecuted or tortured in Liberia and that he would not be returned to El Salvador.  *Id.*  Those assurances were reviewed by both the Secretary of State and the Secretary of Homeland Security.  *Id.*  Mr. Lyons noted that abandoning such negotiations could cast doubt on the diplomatic reliability of the United States in negotiating future agreements with Liberia and other countries.  *Id.*  Accordingly, he concluded, his removal to Costa Rica in lieu of Liberia would be prejudicial to the United States.  *Id.*

When no determination on the government's March 20 motion was received by April 17, 2026, the government filed a notice of appeal from both the Court's February 17, 2026, injunction against detention, and the constructive denial of the government's motion to dissolve the injunction.  ECF 163.

In an order dated May 18, 2026, the Court acknowledged that the filing of the notice of appeal removed the question of the motion to dissolve from the Court's jurisdiction.  ECF 177.

### III.   Petitioner's Requests for Production

Petitioner's motion for discovery lays out four requests for production.  *See* ECF 178-1 at 4.  The requests are for:

1. All Communications with any official or representative of the Government the Republic of Liberia concerning the Petitioner;

2. All Communications with any official or representative of the Government of the Republic of Costa Rica concerning Petitioner;

3. All Documents regarding: (i) the decision to pursue Petitioner's removal to Liberia; (ii) any assessment of the feasibility, readiness, or timing of Petitioner's removal to Liberia; (iii) the decision not to permit removal of Petitioner to Costa Rica; and (iv)

any determination that removal to Costa Rica would be "prejudicial to the United States;

4. To the extent not encompassed by the preceding Requests, any Documents or Communications underlying or related to (i) the Lyons Decision dated March 2, 2026, at ECF 143-1; or (ii) the Schultz Declaration dated March 17, 2026, at ECF 142-1.

*Id.*

## SCOPE OF DISCOVERY IN HABEAS

As Petitioner concedes, ECF 145 at 1 & ECF 178 at 1, the Supreme Court has made clear that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also Potarazu v. Warden*, No. 22-1334, 2023 WL 6142990 at *7 (D. Md. Sept. 20, 2023) (denying habeas petitioner's request for discovery because the "vast amount of information [he] requested…amount[ed] to a fishing expedition"); *Brooks v. Bivens*, No. 21-221, 2022 WL 4104180, at *6 (D. Md. Sept. 8, 2022) (denying request for discovery where petitioner "failed to provide any facts in support of his request for discovery" and "the information he [sought] concern[ed] the plea negotiations between his defense attorney and the state").

Rather, pursuant to Rule 6(a) of the Rules Governing § 2254 Cases in the United States District Courts, a party may conduct discovery in a habeas proceeding only if he shows good cause and a judge exercises her discretion to grant the party leave to do so. *Bracy*, 520 U.S. at 904; *Potarazu*, 2023 WL 614290 at *7. Good cause exists when "specific allegations before the court show reason to believe that the Petitioner may, if the facts are fully developed, be able to demonstrate that he is…entitled to relief." *Bracy*, 520 U.S. at 908-09.

Moreover, the proper scope of inquiry on habeas corpus further informs the question of the propriety of discovery.  As a general matter, habeas corpus is intended to "remov[e] the injury of

7

unjust and illegal confinement." *DHS v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (quoting 3

Blackstone, Commentaries on the Laws of England 137).  This case involves a habeas petition

challenging the authority of the government to detain Petitioner for the purpose of effectuating his

removal.  The scope of inquiry in habeas in this context is extremely limited:

> Regardless of whether or not the scope of inquiry on habeas corpus has been expanded, the function of the courts has always been limited to the enforcement of due process requirements.  To review those requirements under the Constitution, whatever the intermediation formulation of their constituents, is very different from applying a statutory standard of review, *e.g.,* deciding on 'the whole record' whether there is substantial evidence to support administrative findings of fact . . . .  In short, it is the scope of inquiry on habeas corpus that differentiates use of the writ from judicial review as that term is used in the Administrative Procedures Act.  We hold that deportation orders remain immune to direct attack.

*Heikkila v. Barber*, 345 U.S. 229, 235-36 (1953) (citations omitted).  In that context, the

Supreme Court has been pellucid that habeas corpus is not an avenue to consider the

"correctness" of an agency's decision:

> [A] want of due process is not established by showing merely that the decision is erroneous,  . . . or that incompetent evidence was received and considered. . . .  Upon a collateral review in habeas corpus proceedings, it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the trial.

 *U.S. ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927) (citations

omitted); *see also U.S. ex rel. Tisi v. Tod*, 264 U.S. 131, 133 (1924) ("[M]ere error, even if it

consists in a finding an essential fact without adequate supporting evidence, is not a denial of due

process of law.").

## ARGUMENT

Petitioner argues that good cause exists to grant his motion for leave to conduct limited

discovery to "assist" the Court "in connection with the merits of the unresolved counts of the

[H]abeas Petition."  ECF 178 at 2.  Petitioner cannot establish good cause to engage in such

discovery because the information and testimony he seeks lack a nexus with a cognizable habeas claim. As previously argued throughout this case, the Immigration and Nationality Act ("INA") authorizes the Executive Branch, and its agencies, to take certain actions, and make certain discretionary decisions outside the purview and review of the Court.  Moreover, Petitioner cannot demonstrate good cause because his remaining habeas claims involve purely legal questions, fail for purely legal reasons, and are not affected by any discovery. *See* ECF No. 28 at 6-10.

Additionally, Petitioner's repeated requests for "all communications with any official or representative of the Government" are vague, overbroad, and are designed to evade the requirement to engage in the *Touhy* procedures for State Department officials, who are not implicated within this suit. *See U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). In all events, this Court should exercise its discretion to deny the motion.

## I. No Good Cause Supports Permitting Discovery Because All of Petitioner's Claims are Purely Legal Questions or Beyond the Court's Habeas Authority.

Petitioner cannot demonstrate good cause for discovery because "the facts [] fully developed" establish that he is not "entitled to relief." *Bracy*, 520 U.S. at 908-09.  That is true for at least three reasons.

First, as previously argued in this litigation, ECF 72 at 15-21, Petitioner's remaining habeas claims – especially the First and Fourth Claims – fail as a matter of law because he is a member of the non-opt-out class certified in *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025), which precludes him from bringing certain claims separately in this proceeding. *See* ECF No. 28 at 6-9; *see also Spencer v. Gasper*, 2021 WL 5346665, at \*2 (6th Cir. 2021) ("Individual class members may not bring separate lawsuits seeking injunctions similar to the relief sought by the class."); *Gillespie v. Crawford*, 858 F. 2d 1101, 1103 (5th Cir. 1988) ("To allow individual suits would interfere with the orderly administration of the class action and risk inconsistent

9

adjudications."); *Rivarde by Rivarde v. Missouri*, 930 F.2d 641, 643 (8th Cir. 1991) ("[A] class member should not be able to prosecute a separate equitable action once his or her class has been certified." ).  Multiple courts in this district, and elsewhere, have denied relief on this basis. *See, e.g., Ghamelian v. Baker*, 2025 WL 2049981, at *3 (D. Md. July 22, 2025) (denying relief because of petitioner's status as a D.V.D. class member); *I.V.I. v. Baker*, 2025 WL 1519449, at *2 (D. Md. May 27, 2025) ("Even stripped of any reference to the District of Massachusetts' order, these claims are the same as (or substantially related to) the class claims being litigated in that district." (citation omitted)); *Tanha v. Warden, Baltimore Det. Facility*, 2025 WL 2062181, at *5 (D. Md. July 22, 2025) ("The court finds that Petitioner is a member of the *D.V.D.* Class"); *Sanchez v. Bondi*, 2025 WL 2550646, at *3 (D. Colo. Aug. 20, 2025) ("[B]ecause Mr. Sanchez is a member of D.V.D's Rule 23(b)(2) class, he has failed to show a likelihood of success on the merits of his claim."); *see also Phan v. DHS*, 1:25-cv-2147 (D.D.C. July 4, 2025) (transferring case to the District of Massachusetts as related to D.V.D.).

The District of Massachusetts has issued a final judgment in the case, which is now on appeal. *See D.V.D. v. U.S. Dept. of Homeland Sec.*, ___ F.Supp. __, 2026 WL 521557 (D. Mass. Feb. 25, 2026), *stayed*, *D.V.D. v. U.S. Dep't of Homeland Security*, No. 26-1212 (1st Cir. March 16, 2026).  Petitioner's relief, if any, lies in that court—not here.  That is especially true of the First Claim (disregarding Petitioner's designated country and selection of a third country) and Fourth Claim (violation of the withholding statute and the CAT regulation), as *D.V.D.* expressly considered and decided those question.  *See, e.g., D.V.D.*, 2026 WL 521557 at *24-26.  Because none of the discovery that Petitioner seeks is relevant to determining whether he is a member of the *D.V.D.* class, no discovery is permissible.

10

Second, most of Petitioner's claims are jurisdictionally barred by 8 U.S.C. § 1252(a)(5), (b)(9) and (g), which prohibit district courts from exercising jurisdiction over suits challenging actions taken to execute removal orders, or 8 U.S.C. § 1252 (a)(2)(B)(ii), which bars review of decisions "specified to be in the discretion of the Attorney General or the Secretary of Homeland Security." *See* ECF No. 28 at 10-14, 22-24. These jurisdictional bars do not depend on the facts that Petitioner seeks to develop through discovery, and as such there is no good cause for discovery before the Court rules on those dispositive matters. *See Baltimore Gas and Electric Company v. Rand Construction Co.,* No. 1:24-cv-1467, 2024 WL 4349641 (D. Md. Sept. 30, 2024) ("[W]hile it is true that not every . . . motion warrants a stay [of discovery], . . . a motion that may resolve the entire action, or be fully dispositive as to at least one litigant, favors a stay."); *Hachette Distribution, Inc. v. Hudson Cnty. News. Co.,* 136 F.R.D. 356, 358 (E.D. N.Y. 1993) ("Discovery should be stated [] only when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive [], such as where a challenge is direct to the Court's jurisdiction.").

Finally, the Court should deny discovery because Petitioner's efforts at challenging the individual determinations are beyond the proper scope of habeas corpus.  Regarding the First Claim (disregarding an alien's designation of a country of removal), Petitioner cannot use habeas corpus to challenge the determination as a question of fact or discretion.  *Heikkila*, 345 U.S. at 235-36 ("We hold that deportation orders remain immune to direct attack.").  Indeed, the only basis for discovery would be to challenge the agency's factual determinations, but the fact of whether an erroneous deprivation based on a question of fact does not sound in Due Process and does not fall within the purview of the writ.  *Vajtauer*, 273 U.S. at 106.  Indeed, the Supreme Court has expressly ruled that issues related to protections from removal, like withholding and CAT

11

protection, are not properly heard in habeas corpus. *See DHS v. Thuraissigiam*, 591 U.S. 103 (2020).

Because Petitioner's remaining claims must be dismissed on legal grounds, he cannot demonstrate that good cause supports granting his motion for leave to conduct discovery.

## II.   No Good Cause Supports Granting Petitioner's Specific Discovery Requests.

Looking past the jurisdictional issues that foreclose his Petition, and taking Petitioner's discovery requests on their own terms, he cannot demonstrate good cause for conducting limited discovery on discretionary statements issued by members of the United States government.[2]

### A.  There is No Good Cause for Discovery Regarding the Remaining Claims.

Regarding Petitioner's First Cause of Action, the Lyons Decision and the selection and designation of Liberia as the country of removal are discretionary decisions that are not subject to habeas review, and thus no discovery could be relevant or appropriate. The INA grants authority to DHS to disregard an alien's designated country of removal, 8 U.S.C. § 1231(b)(2)(C), and expressly confers on DHS the authority to remove individuals to "another country whose government will accept the alien into the country," under certain circumstances. 8 U.S.C. § 1231(b)(2)(E)(vii); *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005); *see also* 8 U.S.C. § 1231(b)(2) (recognizing that an individual granted withholding of removal may still be removed to a third country). "[S]electing a destination country," pursuant to that statutory authority, is an "exercise of executive judgment," or discretion, which requires the government to "take both practical and geopolitical concerns into account." *Jama*, 543 U.S. at 344.

---

[2] The United States need not address Petitioner's unfounded contention that any of its employees or representatives have made false statements in this litigation.

That exercise of discretion is unreviewable under 8 U.S.C. § 1252(a)(2)(B)(ii), which provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory), including…any…habeas corpus provision…, no court shall have jurisdiction to review…any other decision or action of the Attorney General of the Secretary of Homeland Security the authorization for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" *See also Polfiet v. Cuccinelli*, 955 F.3d 377, 381 (4th Cir. 2020) ("On its face, § 1252(a)(2)(B)(ii) bars judicial review of decision 'specified' to be in the discretion of the Secretary."). That bar extends to discretionary and factual decisions made pursuant to a statute even when that statute does not "literally contain the word 'discretion' and to constitutional questions arising from that discretionary decision. *Id*. at 381, 383-84. Importantly, the Fourth Circuit has observed that in *Patel,* the Supreme Court found that 8 U.S.C. § 1252(a)(2)(B)(i) functioned to bar the judicial review of factual determinations and that 8 U.S.C. § 1252(a)(2)(B)(ii) applies to the same extent as 8 U.S.C. § 1252(a)(2)(B)(i). *Shaiban v. Jaddou,* 97 F.4th 263, 267-68 (4th Cir. 2024), *cert. denied,* ___ U.S. ___, 145 S. Ct. 1046 (2025) (expressly finding that the factual finding that alien was a terrorist was beyond judicial review).

Congress has expressly granted the Secretary of Homeland Security the discretion to disregard an alien's designated country of removal if he finds that "removing the alien to the country is prejudicial to the United States." 8 U.S.C. § 1231(b)(2)(C)(iv). 8 U.S.C. § 1231(b)(2)(E)(vii) grants DHS the authority to remove aliens to third countries. That authority requires DHS to select a third country, and the selection of which is discretionary. *See Bourfa v. Mayorkas*, 694 U.S. 6, 14 (2024) (finding that a discretionary decision was subject to a bar where "Congress has in no way prescribed how that discretion must be exercised"). Because this Court lacks authority to review those discretionary selection decisions and the related factual

13

determinations, such discovery would serve no purpose and Petitioner has no good cause to obtain pointless discovery.

Moreover, discovery as a part of Petitioner's effort to challenge the determination is irrelevant and not permitted. In particular, Petitioner purports to challenge the Lyons Decision under the "facially legitimate and bona fide" standard set forth in *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972). Putting aside the question of whether the *Kleindienst* standard has any role where Congress has expressly barred judicial review (it does not), the Supreme Court held in *Kleindienst* that "when the Executive exercises [a discretionary] power negatively on the basis of a facially legitimate and bona fide reason, the courts will *neither look behind the exercise of that discretion, nor test*" it by weighing it against competing legal interests. *Id.* at 770. Thus, the question is purely legal—whether the government's proffered reason is facially legitimate. Petitioner has no right to look beyond that facially legitimate reason, and so there is no good cause to obtain discovery for that purpose. *See Department of State v. Munoz*, 602 U.S. 899, 918 (2024).

That result is underscored by the proper scope of habeas corpus, which does not include review of discretionary or factual determinations. Regarding the First Claim (disregarding an alien's designation of a country of removal), Petitioner cannot use habeas corpus to challenge the determination as a question of fact or discretion. *Heikkila*, 345 U.S. at 235-36 ("We hold that deportation orders remain immune to direct attack."); *see also Thuraissigiam*, 591 U.S. at 117 (CAT issues do not fall within the Writ). Indeed, the only basis for discovery would be to challenge the agency's factual determinations, but a claim of an erroneous deprivation based on a question of fact does not sound in due process and does not fall within the purview of the writ. *Vajtauer*, 273 U.S. at 106.

14

The preceding analysis applies equally to the Third and Fourth Claims. The core of the Third Claim is a substantive due process claim that the government may not remove Petitioner; that claim falls under the facially legitimate and bona fide test. As for the Fourth Claim, questions regarding withholding of removal and CAT protection that fall outside the scope of habeas corpus, the question of whether there has been compliance with 8 U.S.C. § 1231(b)(3) and 8 C.F.R. § 1208.16 is a pure question of law. Even to the extent that the Lyons Decision matters at all, it speaks for itself. Its factual conclusion that Petitioner's removal to Costa Rica is contrary to the interests of the United States, even if incorrect (it is not), does not fall within the proper scope of the Writ. *See Thuraissigiam*, 591 U.S. at 117; *Heikkila*, 345 U.S. at 235-36; *Vajtauer*, 273 U.S. at 106.

**B. Petitioner Has Not Shown Good Cause for Discovery Relating to the Schultz Declaration Where it Plays No Role in Any of the Remaining Claims and Where He previously Failed to Inquiry into the Matter.**

Petitioner's efforts to seek discovery regarding the Schultz Declaration relates to none of the remaining claims. The Schultz Declaration articulates that the government is ready to remove Petitioner to Liberia, which it can achieve immediately and without the need for travel documents. While that issue may play a role regarding detention under *Zadvydas* and the propriety of a stay of removal, those issues and the Schultz Declaration are currently on appeal to the Fourth Circuit and are not properly before the Court. *See* ECF 177.

To the extent Petitioner has a unilateral desire to further investigate the decision to remove him, the Schultz Declaration, enforcement of removal, and the innerworkings of an agency are matters that courts may not second guess. Discovery, such as proposed by the Petitioner, goes above and beyond what is required under the *Zadvydas* argument, and directly implicates a wide array of privileges touching almost every potentially responsive document or information

15

produced. Moreover, 8 U.S.C. § 1252(g) deprives the Court of jurisdiction to review Petitioner's claims because they claims arise from the execution of his removal order. Section 1252(g), as amended by the REAL ID Act, bars claims arising from three discrete actions, including, as relevant here, the decision or action to "execute removal orders." *Id*. In enacting § 1252(g), Congress spoke clearly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. *Id*.; *accord, Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010) (holding that Section 1252(g) precludes jurisdiction under the All Writs Act*); Sadhvani v. Chertoff*, 460 F.Supp.2d 114, 122 (D.D.C. 2006) (same).

There is no doubt that the timing of when an alien should be removed is a matter of discretion. Here, § 1252(g)'s prohibition is particularly pronounced. Petitioner's habeas petition not only plainly arises from the effort to remove him (to "execute [a] removal order"). Moreover, the remedy he seeks falls firmly within the Executive's "plenary and exclusive" authority to speak for the country "in the field of international relations." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936). All three branches of Government have made clear that Petitioner's claim regarding the sufficiency of assurances by a foreign state is outside this Court's power, control, or even probe. *Al-Anazi v. Bush,* 370 F.Supp. 2d 188, 194-96 (D.D.C. 2005).; *see also U.S. v. Kin-Hong,* 110 F.3d 103, 110 (3d Cir. 1997); *Sidali v. INS*, 107 F.3d 191, 195 n.7 (3d Cir. 1997).  "[T]he degree of risk to [Escobedo's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch." *Escobedo v. United States,* 623 F.2d 1098, 1107 (5th Cir. 1980) (second bracket in original), *citing Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th

16

Cir. 1976), *cert. den'd*, 429 U.S. 1062 (1977).  Thus, Petitioner's request for discovery erroneously intrudes on ICE's authority to execute a removal order.

Petitioner still provides no occasion to conduct discovery in this case as to the Schultz Declaration.  The import of the Schultz Declaration is to inform the Court that the government is both ready and able to remove Petitioner to Liberia.  While Mr. Schultz had previously informed the Court that that no travel documentation is required to remove an alien to a third country, *see* ECF 52 at 158-50 ("In [Mr. Schultz's] experience, we don't need a travel document to send somebody back to a third country."), Petitioner did not take up that question despite having Mr. Schultz on the stand at the hearing.  The fact that he waived that opportunity to take up the question of the required documentation does not permit him to now suggest that the government has not provided "documentation" that travel documents are unnecessary.  There has been testimony and evidence provided at a time when any questions relating to the statements were germane to the case; now, the factual questions are no longer germane. For purposes of the habeas petition, the Court has all the evidence it needs to determine whether Petitioner's removal is reasonably likely in the foreseeable future.  As with the ordinary case, it does not require discovery.

Moreover, it is entirely disingenuous for Petitioner to suggest that the Government's conduct somehow undermines the likelihood of Petitioner's removal.  The fact of the matter is that the Government has supplied evidence of its communication with Liberia.  Importantly, Secretary Marco Rubio expressly wrote to former Secretary Kristi Noem, informing her of assurances related by Liberia for Petitioner's safety and its willingness to receive Petitioner.  *See* ECF 73-1 (Exhibit B). The government has provided direct communications from Liberia.  *See* ECF 73-2 (Exhibit C). It has even provided evidence that the Government of Liberia has, itself, published its willingness to receive him.  *See* 73-3 (Exhibit D).  Petitioner does not raise any doubt as to the adequacy of

17

the evidence, and any such suggestion is undone by that public statement by Liberia. Any request for discovery is at best fishing expedition hoping for evidence rather than a genuine inquiry into a question of material fact. Thus, discovery should be denied on this basis.

Petitioner's inquiry into the Lyons Decision is beside the point. The Decision makes two findings of import: (1) that Petitioner's designation of Costa Rica was improper; and (2) that, as a matter of discretion, the agency was disregarding his designation as contrary to the interests of the United States. The first issue is a legal one requiring no discovery. The second issue is far less amenable to discovery, as it was the Secretary of State and his designees that communicated with Liberia, and discovery will not produce the documents important to Petitioner, as the Secretary of State is not a named custodian in this litigation. Of course, it goes without saying that the determination of what is in the best interests of the United States is a political matter not subject to judicial inquiry. *Curtiss-Wright*, 299 U.S. at 319; *Al-Anazi,* 370 F.Supp. 2d at 194-96 ; *Kin-Hong,* 110 F.3d at 110; *Sidali*, 107 F.3d at 195 n.7 (3d Cir. 1997); *Escobedo,* 623 F.2d at 1107); *Peroff*, 542 F.2d at 1249.

The Court should also deny Petitioner's motion because his so called "targeted discovery" takes aim at documents and information that may directly implicate a wide array of core government privileges, including the State Secrets and Deliberative Process privileges. Under the Federal Rules, a party is entitled to discovery of non-privileged material that is relevant to a claim or defense and proportional to the needs of the case. Where the vast majority of responsive documents and information are privileged, the requested discovery should be denied. *See, e.g., In re Application for an Order Pursuant to 28 U.S.C. § 1782 To Conduct Discovery for use in a Foreign Proceeding,* 286 F.Supp. 3d 1, 6-8 (D.D.C. 2017). No good cause exists to authorize discovery that the Rules expressly forbid.

18

### III.    Petitioner Has Not Made An Attempt to Comply With the *Touhy* Process in Requesting Leave to Conduct Discovery

Petitioner's Motion for Leave to Conduct Limited Discovery should be denied because Petitioner has made no attempt to comply with the *Touhy* process in attempting to obtain discovery from unnamed officials or representatives of the U.S. Government. The fact of the matter is that officials with the Department of State (and other Departments) are not parties to this case, yet they are the federal officials who possess or are likely to possess nearly all of the documents or information that Petitioner seeks. That some of the requested materials may be in DHS's possession makes no difference because *Touhy* regulations apply to all government entities.

The head of an executive department may prescribe regulations governing "the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. These regulations are referred to as *Touhy* regulations. *See U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *Touhy* regulations have the force of law. *Swett v. Schenk*, 792 F.2d 1447, 1451 (9th Cir. 1986). Failure to engage in the *Touhy* process renders a discovery request unenforceable. *In re Boeh*, 25 F.3d 761 (9th Cir. 1994); *see also Lerner v. District of Columbia*, WL 2375175, *3 (D.D.C. Jan. 7, 2005) (denying motion to compel because plaintiff did not comply with agency's *Touhy* regulations for requesting documents). Put simply, Petitioner's "failure to comply with the applicable *Touhy* regulations means that [his] motion to compel must be denied." *United States v. Adil*, 2022 WL 20275084, *2 (E.D. Va. Aug. 3, 2022).

Indeed, at this point, Respondents can only guess as to which federal agencies and personnel Petitioner is referring to in his sample Request for Production ("RFP"). *See* ECF No. 145-1 at 3. Petitioner names "all communications" with foreign governments but does not limit the scope of the request to specific agencies. Moreover, Petitioner similarly requests "all documents" pertaining to Petitioner's removal, again without designation of the agency or

19

custodian involved. Moreover, Petitioner cannot request documents, information, or correspondence between a party and a non-party to get around the established procedures under *Touhy*. This is part of the reason agencies' *Touhy* regulations require Petitioners, as a first step, to "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought." 6 C.F.R. § 5.45. That is not to say Petitioner may be without recourse for his desired discovery requests, but any information pertaining to an agency outside of DHS, should be prohibited. *See Aiken v. Eady*, 2016 WL 452135 at *5 (D.N.J. Feb. 4, 2016) (stating that "pursuant to *Touhy*, most courts require a party seeking information from the Government, as a non-party, to make a request to the [agency] pursuant to their administrative regulations.").

To initiate a *Touhy* process, the party seeking information must "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought. Where documents or other materials are sought, the party should provide a description using the types of identifying information suggested in 6 C.F.R. § 5.3(b)." 6 C.F.R. § 5.45(a); *see also* § 5.43 (containing information on how and where to serve this written request for official information to the agency). This will clarify what government documents Petitioner is seeking from each specific agency, which is unclear given the language in the proposed RFPs. ECF No. 145-1 at 3.

As such, this Court should deny Petitioner's request as it implicates documentation and information held by non-party agencies.

**CONCLUSION**

For the foregoing reasons, the Court should deny Petitioner's Motion for Leave to Conduct Limited Discovery.


Dated: June 3, 2026                                Respectfully Submitted,

                                                   BRETT A. SHUMATE
                                                   Assistant Attorney General

                                                   DREW C. ENSIGN
                                                   Deputy Assistant Attorney General
                                                   U.S. Department of Justice
                                                   Civil Division, Office of Immigration Litigation

                                                   JONATHAN GUYNN
                                                   Deputy Assistant Attorney General
                                                   U.S. Department of Justice
                                                   Civil Division, Torts Branch

                                                   */s/ Ernesto H. Molina, Jr.*
                                                   ERNESTO MOLINA, JR.
                                                   Deputy Director
                                                   Office of Immigration Litigation
                                                   U.S. Department of Justice
                                                   Civil Division
                                                   Office of Immigration Litigation
                                                   P.O. Box 878, Ben Franklin Station
                                                   Washington, DC 20044
                                                   202-616-9344
                                                   ernesto.h.molina@usdoj.gov

                                                   SHANE A. YOUNG
                                                   Trial Attorney


                                                   ATTORNEYS FOR RESPONDENTS

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Ernesto H. Molina, Jr.

Ernesto H. Molina, Jr.
Deputy Director