**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, | Case No. 8:25-CV-02780-PX |
| Petitioner, | |
| v. | |
| MARKWAYNE MULLIN, Secretary of Homeland Security; TODD BLANCHE, Acting Attorney General; DAVID J. VENTURELLA, and NIKITA BAKER, | |
| Respondents.[1] | |

**RESPONDENTS' RESPONSE TO PETITIONER'S MOTION TO RESOLVE**
**OUTSTANDING HABEAS CLAIMS**

BRETT A. SHUMATE
Assistant Attorney General Deputy
U.S. Department of Justice

DREW C. ENSIGN
Deputy Assistant Attorney General
U.S. Department of Justice
Civil Division
Office of Immigration Litigation

SHANE YOUNG
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation

JONATHAN GUYNN
Assistant Attorney General
U.S. Department of Justice
Civil Division
Torts Branch

ERNESTO H. MOLINA, JR.
Deputy Director
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-616-93444
ernesto.h.molina@usdoj.gov

ATTORNEYS FOR RESPONDENTS

---

[1] Acting Director of U.S. Immigration and Customs Enforcement David J. Venturella is automatically substituted in lieu of Todd Lyons under Federal Rule of Civil Procedure 25(d).

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

ARGUMENT ................................................................................................................. 7

    I.      PETITIONER'S FIRST AND FOURTH CLAIMS CHALLENGING THIS REMOVAL TO A THIRD COUNTRY AND THE AVAILABILITY OF WITHHOLDING OF REMOVAL AND CAT PROTECTION ARE NOT JUSTICIABLE BECAUSE HE IS A MEMBER OF THE NON-OPT-OUT CLASS CERTIFIED IN *D.V.D. v DEP'T OF HOM. SEC* ................................................................................... 7

    II.    ALL OF PETITIONER'S REMAINING CLAIMS ARE JURISDICTIONALLY BARRED FROM HABEAS CORPUS REVIEW ........... 9

        A.    8 U.S.C. § 1252(a)(5) & (b)(9) Expressly Bar Petitioner's Remaining Claims from Habeas Review as Matters Arising from Removal Proceedings to Remove Him from the United States .................. 9

        B.    8 U.S.C. § 1252(g) Bars Petitioner's Remaining Claims as Collateral Efforts to Prevent the Execution of His Removal Order.......... 11

        C.    If Petitioner's Claims One and Four Do Not Relate to His Removal Order, They Fall Outside the Scope of Habeas Corpus as the Basis for His Detention is His Removal Order................................................... 13

    III.    The First Claim Relating to His Effort to Designate Costa Rica Outside of Removal Proceedings and the ICE Designation of Liberia as the Country of Removal Should Be Dismissed for Lack of Jurisdiction or Denied for Lack of Merit ...................................................................................................... 16

        A.    Statutory Background ................................................................................. 16

        B.    Judicial review of the government's discretionary decision to disregard the designated country is barred by 8 U.S.C. § 1252(a)(2)(B)(ii). .................................................................................... 17

        C.    Petitioner fails to show a violation in the third country removal process.......................................................................................................... 19

            1.    Petitioner's challenges to the Lyons Memorandum itself lacks merit.......................................................................................... 19

2.      Petitioner's challenge to his designation of El Salvador as his country of removal and suggestion that he may now change that designation outside of removal proceedings lacks merit.................................................................................. 20

3.      Petitioner's argument that Todd Lyons lacked authority to issue the Lyons Memorandum is without merit.......................... 256

4.      The Lyons Memorandum, even if reviewable, provides a facially legitimate and bona fide reason for Petitioner's removal to Liberia........................................................................ 27

IV.     The Court Should Deny Petitioner's Due Process Challenge (Count III) ............ 30

A.      Petitioner's Claims of Retaliation Are Meritless...................................... 30

B.      Petitioner Has No Substantive Due Process Right to Freedom From Retaliation or to Indefinitely Escape Removal .............................. 34

V.      Petitioner's Fourth Claim (Withholding) Should Be Denied .............................. 41

A.      Statutory Background ................................................................................ 41

B.      Petitioner's Removal is not a Violation of § 1231(b)(3), the Regulations Implementing CAT or Due Process...................................... 42

CONCLUSION.................................................................................................................. 46

# TABLE OF AUTHORITIES

**Cases**

*Abrego Garcia v. Noem*, 8:25-cv-951 (D. Md. July 23, 2025) ........................................... 2, 31, 40

*Accardi v. Shaughnessy,*
    347 U.S. 260 (1954) ........................................................................................... 14

*Aguilar v. U.S. ICE*,
    510 F.3d 1 (1st Cir. 2007) ................................................................................... 10

*Alabama v. Smith*,
    490 U.S. 794 (1989) ........................................................................................... 38

*Alexander-Mendoza v. Attorney General*,
    55 F.4th 197 (3d Cir. 2022) ................................................................................ 44

*Alvarez v. ICE*,
    818 F.3d 1194 (11th Cir. 2016) .......................................................................... 13

*Amanullah v. Nelson*,
    811 F.2d 1 (1st Cir. 1987) ............................................................................ 35, 38

*Arizona v. Smith*,
    490 U.S. 794 (1989) ........................................................................................... 31

*Azzouka v. Sava*,
    777 F.2d 68 (2d Cir. 1985) ................................................................................. 38

*Barrientos v. Lynch*,
    829 F.3d 1064 (9th Cir. 2016) .............................................................................. 9

*Blackledge v. Perry*,
    417 U.S. 21 (1974) ........................................................................................ 38, 39

*Bouarfa v. Mayorkas*,
    604 U.S. 6 (2024) ............................................................................................... 18

*C.G.B. v. Wolf*,
    464 F. Supp. 3d 174 (D.D.C. 2020) ..................................................................... 7

*Casa de Maryland*,
    924 F.3d 684 (4th Cir. 2019) .............................................................................. 10

*Chairez v. Mayorkas*,
    168 F.4th 1227 (9th Cir. 2026) ........................................................................... 18

*D.V.D. v. DHS,*
778 F. Supp. 3d 355 (D. Mass. 2025) ................................................................ 7, 8

*D.V.D. v. U.S. Dep't of Homeland Sec.,*
No. CV 25-10676-BEM, 2026 WL 521557 (D. Mass. Feb. 25, 2026) ................................. 8, 9

*Daniels v. United States,*
532 U.S. 347 (2001) ................................................................ 22, 24, 44

*Department of State v. Munoz,*
602 U.S. 899 (2024) ................................................................ 28, 38

*DHS v. Thuraissigiam,*
591 U.S. 103 (2020) ................................................................ 14, 15, 16

*Duron v. Johnson,*
898 F.3d 644 (5th Cir. 2018) ................................................................ 10

*Elgharib v. Napolitano,*
600 F.3d 597 (6th Cir. 2010) ................................................................ 12

*El-Werfalli v. Smith,*
547 F. Supp. 152 (S.D.N.Y. 1982) ................................................................ 37

*FCC v. Schreiber,*
381 U.S. 279 (1965) ................................................................ 42

*Fiallo v. Bell,*
430 U.S. 787 (1977) ................................................................ 27, 35, 36, 37

*Guentchev v. INS,*
77 F.3d 1036 (7th Cir. 1996) ................................................................ 44

*Hamdi ex rel. Hamdi v. Napolitano,*
520 F.3d 615 (6th Cir. 2010) ................................................................ 10

*Hampton v. Wong,*
426 U.S. 88 (1976) ................................................................ 27, 35

*Harisiades v. Shaughnessy,*
342 U.S. 580 (1952) ................................................................ 35

*Heikkila v. Barber,*
345 U.S. 229 (1953) ................................................................ 14

*I.N.S. v. Cardoza-Fonseca,*
480 U.S. 421 (1987) ................................................................ 15, 41

*INS v. Lopez-Mendoza*,
   68 U.S. 1032 (1984)........................................................................................... 31, 39

*Int'l Refuge Assistance Project v. Trump*,
   962 F.3d  (2020)...................................................................................................... 38

*J.E.F.M. v. Lynch*,
   837 F.3d 1026 (9th Cir. 2016) ............................................................................... 10

*Jama v. ICE*,
   543 U.S. 335. n.1 (2005)........................................................................................ 25

*Jefferson v. Ingersoll Int'l Inc.*,
   195 F.3d 894 (7th Cir. 1999) ................................................................................... 8

*Johnson v. Guzman Chavez*,
   594 U.S. 523 (2021)..................................................................................... 15, 16, 41

*Kerry v. Din*,
   576 U.S. 86 (2015).......................................................................................... 28, 38

*Khalil v. President,*
   164 F.4th 259 (3d Cir. 2026) .................................................................................. 10

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972)....................................................................... 27, 29, 35, 36

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)................................................................................................. 9

*Kuusk v. Holder*,
   732 F.3d 302 (4th Cir. 2013) ............................................................................ 22, 23

*Mapoy v. Carroll*,
   185 F.3d 224 (4th Cir. 1999) .................................................................................. 12

*Mathews v. Diaz*,
   426 U.S. 67 (1976)................................................................................................. 35

*Munaf v. Geren*,
   553 U.S. 674 (2008)..................................................................................... 15, 16, 29

*Nasrallah v. Barr*,
   590 U.S. 573 (2020).......................................................................................... 15, 16

*North Carolina v. Pearce*,
   395 U.S. 711 (1969)............................................................................................... 38

*Oceanic Steam Nav. Co. v. Stranahan*,
    214 U.S. 320 (1909)........................................................................................................... 35

*Padilla-Padilla v. Gonzales*,
    463 F.3d 972 (9th Cir. 2006) ........................................................................................... 38

*Pangea Legal Servs. V. U.S. Dep't of Homeland Sec.*,
    No. 20-9253-JD, 2021 WL 75756 (N.D. Cal. Jan. 8, 2021)....................................... 41

*Parke v. Raley*,
    506 U.S. 20 (1992)............................................................................................................ 44

*Perez-Perez v. Hanberry*,
    781 F.2d 1477 (11th Cir. 1986) ...................................................................................... 38

*Polfliet v. Cuccinelli*,
    955 F.3d 377 (4th Cir. 2020) ..................................................................................... 17, 19

*Reno v. Am.-Arab Anti-Discrim. Comm.*,
    525 U.S. 471 (1999)............................................................. 10, 12, 13, 34, 35, 39

*Riley v. Bondi*,
    145 S.Ct. 2190 (2025)................................................................................................. 10, 15

*Sadhvani v. Chertoff*,
    460 F.Supp.2d 114 (D.D.C. 2006) ................................................................................. 12

*Sesay v. United States*,
    984 F.3d 312 (4th Cir. 2021) ........................................................................................... 38

*Shaiban v. Jaddou*,
    97 F.4th 263 (4th Cir. 2024) ...................................................................................... 18, 19

*Shaughnessy v. United States ex rel. Mezei*,
    345 U.S. 206 (1953)......................................................................................................... 35

*Silva v. United States*,
    866 F.3d 938 (8th Cir. 2017) ........................................................................................... 13

*Skinner v. Switzer*,
    562 U.S. 521 (2011)......................................................................................................... 15

*Steele v. United States*,
    144 F.4th 316 (D.C. Cir., 2025)........................................................................................ 8

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) ......................................................................................... 7, 8

*Trump v. Hawaii,*
   585 U.S. 667 (2018)......................................................................................... 28, 37

*U.S. ex rel. Tisi v. Tod,*
   264 U.S. 131 (1924).............................................................................................. 14

*U.S. ex rel. Vajtauer v. Commissioner of Immigration,*
   273 U.S. 103 (1927).............................................................................................. 14

*United States v. Olano,*
   507 U.S. 725, 113 S. Ct. 1770, 123 L.Ed.2d 508 (1993).................................... 22, 44

*United States v. Sanchez-Gomez,*
   584 U.S. 381 (2018)................................................................................................ 7

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Counsel, Inc.,*
   435 U.S. 519 (1978).............................................................................................. 42

*Washington v. Glucksberg,*
   521 U.S. 702 (1997).............................................................................................. 34

*Woo v. Spackman,*
   988 F.3d 47 (1st Cir. 2021)..................................................................................... 9

*Yakus v. United States,*
   321 U.S. 414, 64 S. Ct. 660, 8 L.Ed.  (1944)..................................................... 22, 44

*Zadvydas v. Davis,*
   533 U.S. 678 (2001)................................................................................................ 6

**Statutes**

5 U.S.C. § 3348(a)(2)(A) ......................................................................................... 26

6 U.S.C. § 112(b)(1) ................................................................................................ 26

6 U.S.C. § 251(2) ..................................................................................................... 25

8 U.S.C. § 1101(b)(1) & (2) (1976)......................................................................... 36

8 U.S.C. § 1182(a)(27) (1982).................................................................................. 37

8 U.S.C. § 1182(a)(28) (1976).................................................................................. 36

8 U.S.C. § 1229a(c)(7)(ii) ........................................................................................ 23

8 U.S.C. § 1231 ........................................................................................................ 26

8 U.S.C. § 1231(b)(2) ................................................................................................ 6

8 U.S.C. § 1231(b)(2)(A) ................................................................................................ 3

8 U.S.C. § 1231(b)(2)(C) .................................................................................... 16, 18, 22

8 U.S.C. § 1231(b)(2)(D) .............................................................................................. 17

8 U.S.C. § 1231(b)(2)(E) ............................................................................................... 17

8 U.S.C. § 1231(b)(3) ............................................................................................. 1, 3, 7

8 U.S.C. § 1231(b)(3)(A) .............................................................................................. 41

8 U.S.C. § 1252(a)(5) ............................................................................................. passim

8 U.S.C. § 1252(b)(2) ..................................................................................................... 9

8 U.S.C. § 1252(b)(9) ................................................................................... 9, 10, 11, 13

8 U.S.C. § 1252(g) ......................................................................................... i, 11, 12, 13

28 U.S.C. § 2241 ........................................................................................................... 12

## Regulations

8 C.F.R. § 208.1(a)(1) ................................................................................................... 42

8 C.F.R. § 208.16(c) ...................................................................................................... 41

8 C.F.R. § 208.2(a) ........................................................................................................ 42

8 C.F.R. § 208.2(b) ........................................................................................................ 42

8 C.F.R. § 208.2(c) ........................................................................................................ 42

8 C.F.R. § 1003.2(c) ...................................................................................................... 24

8 C.F.R. § 1003.38(b) ..................................................................................................... 6

8 C.F.R. § 1208(a)(1) ..................................................................................................... 43

8 C.F.R. § 1208.1(a)(1) .................................................................................................. 42

8 C.F.R. § 1208.16 ................................................................................................... 1, 3, 7

8 C.F.R. § 1208.16(c) .................................................................................................... 41

8 C.F.R. § 1208.16(c)(2) (2019) ................................................................................... 41

8 C.F.R. § 1208.16(c)(3) ............................................................................................... 41

8 C.F.R. § 1208.2 ........................................................................................................... 42

8 C.F.R. § 1208.2(b) ...................................................................................................... 43

8 C.F.R. § 1240.10(c) ...................................................................................... 11, 17, 20, 21

85 Fed. Reg. 80274 (Dec. 11, 2020) ............................................................................. 41

**Other Authorities**

Delegation 0710.3, *Delegation of Authority to the Commissioner of U.S. Customs and Border Protection*, Section II.B.21 ................................................................................ 26

Delegation 15006, *Delegation to Director, United States Citizenship and Immigration Services to Order Expedited Removal and to Enforce Immigration Laws*, section II.B ......................... 26

*Delegation of Auth. to Approve DEA Undercover Operations*, 9 U.S. Op. Off. Legal Counsel 94 (1985) ................................................................................................................ 26

**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION**

KILMAR ARMANDO ABREGO GARCIA,

Petitioner,

v.

KRISTI NOEM, ET AL.,

Respondents.

Case No. 8:25-CV-02780-PX

**RESPONDENTS' RESPONSE TO PETITIONER'S MOTION TO RESOLVE OUTSTANDING HABEAS CLAIMS**

## INTRODUCTION

This is case involves Petitioner Kilmar Abrego Garcia's Petition for Writ of Habeas Corpus ("Habeas Petition") that has simplified into a petition that seeks only to prevent and enjoin his removal from the United States. The sole remaining claims are whether he may be detained for purposes of executing his final order of removal. More specifically the claims made to the Court are: (1) whether the execution of his final order of removal to Liberia is a violation of 8 U.S.C. § 1231(b)(2) ("First Claim"); (2) whether the effectuation of Petitioner's removal is a violation of Due Process because it bears no reasonable relationship to a legitimate government purpose ("Third Claim"); and (3) whether his removal to Liberia would be a violation of 8 U.S.C. § 1231(b)(3) (withholding of removal) and 8 C.F.R. § 1208.16 (protection under CAT) ("Fourth Claim"). He pursues those claims before this Court despite the fact that every single one of those questions is one that could have been presented to the Fourth Circuit Court of Appeals had they been presented in a petition for review in that court and despite the fact that his effort to present those claims in habeas corpus is contrary to multiple statutory bars against such review. He also presents those questions despite the fact that they relate to issues that are not cognizable in habeas corpus as they do not directly relate to the basis for taking him into detention – *i.e.,* his final order of removal. He pursues the First and Fourth Claims despite the fact that he is a member of a non-

1

opt-out certified class that has a final judgment, barring his effort to split his claims.  More than a century of hornbook immigration law dictates that he cannot raise those claims in habeas and that his claims fail as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

Following the Petitioner's return to the United States on June 6, 2025, the Petitioner was taken into criminal custody in connection with federal alien smuggling offenses in Tennessee. ECF 3, *United States v. Abrego Garcia*, No. 3:25-cr-115 (M.D. Tenn. May 21, 2025); *id*. at ECF 9 (warrant return executed). Following the criminal court order authorizing his release, *id*. at ECF Nos. 95-96, 112, this Court (in his previously filed action) ordered Defendants "to not take Abrego Garcia into ICE custody in Tennessee" and "restore him to his ICE Order of Supervision out of the Baltimore Field Office." ECF 238 at 17, *Abrego Garcia v. Noem*, 8:25-cv-951 (D. Md. July 23, 2025). This Court also ordered that "should Defendants commence third-country removal proceedings against Abrego Garcia, Defendants must transmit immediate written notice to Abrego Garcia and all counsel of record in this case of the intended third country at least seventy-two hours prior to commencing removal."  *Id*.  In conformance with those orders, once Petitioner was released from criminal custody under conditions on August 22, 2025, he returned to Maryland subject to his Order of Supervision from the ICE Baltimore Field Office.  ECF 112, *United States v. Abrego Garcia*, No. 3:25-cr-115 (M.D. Tenn. Aug. 22, 2025).

On August 25, 2025, pursuant to that Order of Supervision, Abrego Garcia reported to the Baltimore Field Office and was taken into custody to effectuate removal pursuant to the 2019 final removal order. *See* ECF 1 ¶ 43. As required by this Court's order, he was notified that Uganda was the intended country of removal. *Id*. ¶ 39; ECF 1-5.

On August 25, 2025, Petitioner filed his Petition for Writ of Habeas Corpus ("Habeas Petition"). ECF 1. His Habeas Petition articulates five claims:   (1) That the government's effort to remove him violated 8 U.S.C. § 1231(b)(2), ECF 1 ¶ 50 ("First Claim"); (2) That he was detained without a significant likelihood removal  in the reasonably foreseeable future, ECF 1 ¶ 52 ("Second Claim"); (3) That removal did not bear any reasonable relationship to a legitimate government purpose in violation of the Due Process Clause, ECF 1 ¶ 59 ("Third Claim"); (4) That his removal to Uganda was a violation of 8 U.S.C. § 1231(b)(3) and 8 C.F.R. § 1208.16 (protection under the Convention Against Torture ("CAT")) without assurances from the country of removal, ECF 1, ¶ 41 ("Fourth Claim"); (5) That he is being removed without a deportation order, ECF ¶ 69 ("Fifth Claim").

On August 25, 2025, Petitioner filed a motion to reopen his immigration proceedings requesting asylum,[1] statutory withholding of removal, and Convention Against Torture ("CAT") protection from El Salvador based on his detention by the El Salvadoran government, as well as protection from removal to Uganda. *Id*. at Ex. A. As part of his motion to reopen, Petitioner sought, for the first time, to have Costa Rica designated as his preferred country of removal. *Id*. at 11 ("Reopening is also warranted so that Respondent may designate Costa Rica as the country of removal pursuant to 8 U.S.C. § 1231(b)(2)(A)[.]"). At the same time, however, Petitioner attached a letter in which he specifically expressed his "fear of persecution and torture" if he were removed to Costa Rica or other listed countries. *Id*. at 61 ("I am articulating a fear of persecution and torture on behalf of Mr. Abrego Garcia to be removed to…Costa Rica…"). Petitioner's counsel further signaled that Petitioner was prepared to articulate a fear of persecution or torture from any country

---

[1] *See* ECF No. 72 at 2 (Factual background section detailing Petitioner's 2019 Immigration Proceedings resulting in a final order of removal issued by an Immigration Judge on October 19, 2019).

the government might designate as a country of removal. *Id.* ("Mr. Abrego Garcia reserves the right to claim fear toward any other country where DHS may attempt to deport him if the Department attempts to remove him elsewhere."). On October 1, 2025, the immigration judge denied Petitioner's Motion to Reopen. ECF 39. On October 27, 2025, Petitioner filed an appeal with the Executive Office for Immigration Review's Board of Immigration Appeals ("BIA"). *Cf.* ECF 119-1.

In a conference with this Court on August 25, 2025, the Government agreed that it would not remove Petitioner while his Motion to Reopen was pending before the immigration judge. ECF 24 at 21. This Court entered a letter order on August 27, 2025, enjoining ICE, or members of the United States government, "from removing the Petitioner from the continental United States." ECF 20. The Petitioner expressed that he feared persecution or torture if removed to Uganda, ECF 1-6, in addition to 22 other countries, including Costa Rica, ECF 27-3. As a result, on September 5, 2025, ICE notified Petitioner that he would be removed to Eswatini, rather than Uganda. *Id.* DHS's third-country-removal procedure, as set forth in its March 30, 2025, guidance document, allows for removal to another country if the alien expresses a threat of fear or persecution. ECF 28-2.

On October 10, 2025, this Court held an evidentiary hearing. ECF 50. At the hearing, the Court examined documentation and witness testimony regarding potential removal of the Petitioner. *See generally* ECF 52. During the hearing, this Court agreed that if the Government were in a position to effectuate removal, it could submit a motion for the court to dissolve the previous order enjoining removal. *See* ECF 52, at 37 ("[A]t any point you can ask me to modify, dissolve, end…the injunction.").

4

On October 24, 2025, the government filed notice with this Court that the government of Liberia has agreed to accept the Petitioner and has relayed diplomatic assurances regarding his treatment and status. *See* ECF 56, 72. Likewise, on October 24, 2025, the government notified Petitioner, through counsel, that he would be removed to Liberia if the government were permitted to do so. ECF 57-1 at 3. On October 24, 2025, Petitioner communicated a fear of removal to Liberia, prompting a screening by the United States Citizenship and Immigration Services ("USCIS"). *Id*. at 2. USCIS performed that screening on October 28, 2025. ECF 72 at 4. On October 28, 2025, USCIS concluded that Petitioner did not demonstrate that it was more likely than not that he would be persecuted or tortured in Liberia.  ECF 75-5.

On December 11, 2025, the Court issued a Memorandum Opinion and Order with respect to two claims.  ECF 110 & 111.  The Court rejected the government's jurisdictional arguments under 8 U.S.C. § 1252(a)(5), (b)(9), and (g) based on its determination that Petitioner was not challenging the execution of a final order of removal; rather, the Court concluded that Petitioner's detention was unlawful "because he is held in the absence of such a removal order."  ECF 110 at 16; *see id*. at 19-24.  Accordingly, the Court disposed of the Fifth Claim.

The Court then ruled that, in the absence of an order, Petitioner's further detention violated the Immigration and Nationality Act and due process.  *Id.* at 24-29.  Following this Court's December 11, 2025, order granting Petitioner's Petition for Writ of Habeas Corpus, ECF No. 110, 111, Respondents promptly released the Petitioner under an "ICE Order of Supervision." *See* ECF 112-1, 112-2.

On December 11, 2025, Immigration Judge Phillip Taylor issued an order of removal *nunc pro tunc* and designated El Salvador as the country of removal on December 11, 2025, making the order effective as of October 10, 2019.  *Id*. at 112-2.  Following a hearing and requests for

clarification, Respondents submitted a corrected Notice of Conditions of Release dated December 24, 2025, cancelling the ICE Order of Supervision issued on December 11, 2025, and correcting the basis for release as pending further removal proceedings. ECF No. 126-1 at 2. On January 5, 2026, Petitioner indicated that he was waiving his right to appeal the order. ECF No. 130 at 2. Petitioner did not file an appeal to the Board of Immigration Appeals within the 30-day deadline. *See* 8 C.F.R. § 1003.38(b).

Shortly after Petitioner's release on December 11, 2025, Petitioner filed an emergency motion for a temporary restraining order. ECF 112. In it, he urged that he had a likelihood of success because (1) the immigration judge lacked jurisdiction; (2) the purported order was not a final order of removal; (3) the purported order of removal violated due process; and (4) the government could not detain him under *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF 112 at 3-4.

On December 12, 2025, the Court granted an emergency temporary restraining order. ECF 114. The Court indicated that under *Zadvydas*, the newly issued order of removal was effective as if issued in 2019, then the removal period had long passed. ECF 114 at 2-3. Further, the Court indicated that the equities for a temporary restraining order favored the Petitioner. ECF 114 at 3-4. On February 17, 2026, the Court granted Petitioner's request to convert the "TRO" into injunctive relief. ECF 141 at 2. In granting injunctive relief, the Court fully incorporated its decision at ECF 110. ECF 141 at 2. The Court discussed the import of the *nunc pro tunc* order of removal to its prior decision finding that detention was inappropriate under *Zadvydas*. *Id*. at 3-7. Thus, the Court disposed of the Second Claim. However, the Court did not discuss the import of a now existing final order on its jurisdiction, the import of the August injunction on the *Zadvydas* calculus, or the equities requisite for an injunction. *See generally* ECF 141.

6

Accordingly, remaining before the Court are the First Claim arguing a violation of 8 U.S.C. § 1231(b)(2); the Third Claim arguing that Petitioner's removal is a violation of Due Process because it bears no reasonable relationship to a legitimate government purpose; and the Fourth Claim arguing that that his removal would be a violation of 8 U.S.C. § 1231(b)(3) (withholding of removal) and 8 C.F.R. § 1208.16 (protection under CAT).

## ARGUMENT

**I.    PETITIONER'S FIRST AND FOURTH CLAIMS CHALLENGING THIS REMOVAL TO A THIRD COUNTRY AND THE AVAILABILITY OF WITHHOLDING OF REMOVAL AND CAT PROTECTION ARE NOT JUSTICIABLE BECAUSE HE IS A MEMBER OF THE NON-OPT-OUT CLASS CERTIFIED IN *D.V.D. v DEP'T OF HOM. SEC.***

Petitioner's claims challenging third country removal are foreclosed by virtue of his membership in the *D.V.D. v. DHS*, 778 F. Supp. 3d 355 (D. Mass. 2025) Rule 23(b)(2) class. Petitioner is unambiguously a member of the *D.V.D.* class, which is defined as:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238 (b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceeding as a country to which the individual would be removed.

*Id.* at 378. Members of certified Rule 23(b)(2) classes may not opt out because of their mandatory nature. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 330 n.25 (4th Cir. 2006); *see also C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 207 (D.D.C. 2020) (holding "certification of a 23(b)(2) class precludes individual suits for the same injunctive or declaratory relief") (citing *United States v. Sanchez-Gomez*, 584 U.S. 381, 387 (2018)). While the Court had initially indicated that, due to the lack of a final order of removal, Petitioner did not fall in the *D.V.D.* class, ECF 110 at 24 n.16, that is no longer the case. *See* ECF 130 at 2. Of course, now, Petitioner (1) has been subject to removal proceedings under INA § 240, 8 U.S.C. § 1229a; (2) DHS seeks to deport him to a country

that was not his designated country (whether El Salvador or Costa Rica), ECF 137-1 at 6, and (3) he was informed in writing about the potential removal to Liberia in his prior removal proceedings, ECF 57-1.  Thus, Petitioner is now squarely in the *D.V.D.* class, and he is therefore already litigating his claims regarding third country removal and the availability of withholding of removal in another court.  Permitting him to continue to do so here would constitute claim-splitting.

Unlawful claim-splitting occurs when a party attempts to maintain two separate actions regarding the same subject matter at the same time.  Just as claim preclusion bars duplicative successive lawsuits, "[c]laim-splitting prohibits duplicative litigation filed before judgment" in either case. *See Steele v. United States*, 144 F.4th 316, 324 (D.C. Cir., 2025).  "[T]he claim-splitting rule provides a valid, independent basis for dismissal," as "[e]very circuit to address claim-splitting" has concluded.  *Id*.  The rule against claim-splitting operates in accordance with the nature of Rule 23(b)(2) classes.  Unlike opt-out classes certified under Federal Rule 23(b)(1), where a class member may follow the process to opt out of the class and pursue his own claims on an individual basis, members of a Rule 23(b)(2) class are bound to the judgment with no opportunity to opt out.  *See Thorn,* 445 F.3d at 330 n.25; *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897-98 (7th Cir. 1999).  To allow a Rule 23(b)(2) class member to litigate his own claims individually both violates the claim-splitting rule and impinges on the authority of the court hearing on the Rule 23(b)(2) class.  Accordingly, Petitioner may only bring his claims before the District of Massachusetts where that class action lawsuit is pending.

Here, Petitioner's claims against third country removal are substantially similar to the claims brought by the class in *D.V.D.*  Plaintiffs in *D.V.D.* have specifically litigated that the government has violated Section 1231(b)(2) & (3).  *See* 778 F.Supp.3d at 367; *see also D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *23 (D. Mass. Feb.

25, 2026).  Petitioner here, like the class in *D.V.D.*, directly challenges both the government purportedly ignoring the "removal commands" set out in Section 1231(b)(2), *see also D.V.D.*, 2026 WL 521557, at *24–26, as well as the government's purported failure to execute removal in accordance with 8 U.S.C. § 1231(b)(3).  *See id.* at *26–28.  Accordingly, his claims may be presented only as a part of the *D.V.D.* litigation, if at all.

## II.    ALL OF PETITIONER'S REMAINING CLAIMS ARE JURISDICTIONALLY BARRED FROM HABEAS CORPUS REVIEW

Federal courts "are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (cleaned up).  "It is to be presumed that a cause lies outside this limited jurisdiction," *Kokkonen*, 511 U.S. at 377, and it is likewise "irrefragable that the burden of establishing jurisdiction must fall to the party who asserts it." *Woo v. Spackman*, 988 F.3d 47, 53 (1st Cir. 2021); *see Barrientos v. Lynch*, 829 F.3d 1064, 1066 (9th Cir. 2016) ("The burden is on Barrientos to establish jurisdiction, as he is the party invoking jurisdiction.") (cleaned up).

### A.    8 U.S.C. § 1252(a)(5) & (b)(9) Expressly Bar Petitioner's Remaining Claims from Habeas Review as Matters Arising from Removal Proceedings to Remove Him from the United States.

Petitioner's remaining claims are barred in district courts by Section 1252(a)(5) and (b)(9). Congress has provided its clear expression that "the sole and exclusive means for judicial review of *an order of removal*" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §§ 1252(a)(5), (b)(2) (emphasis added).  This explicitly excludes "section 2241 of title 28, or any other habeas corpus provision."  8 U.S.C. § 1252(a)(5).  Congress took further steps on circumscribing judicial review by enacting 8 U.S.C. § 1252(b)(9), which provides:

9

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  The Supreme Court has described this as an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from removal proceedings]" to a court of appeals in the first instance.  *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 483 (1999) ("*AADC*").  "Taken together, § 1252(a)(5) and [(b)(9)] mean that *any* issue—whether legal or factual—arising from the order of removal or *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016).  Accordingly, this Court lacks jurisdiction under § 1252(a)(5) and (b)(9) to review Plaintiffs' request to "undo" their removals.  *See J.E.F.M.*, 837 F.3d at 1031; *see also Aguilar v. U.S. ICE*, 510 F.3d 1, 15 (1st Cir. 2007); *Khalil v. President,* 164 F.4th 259, 272-74 (3d Cir. 2026); *Duron v. Johnson*, 898 F.3d 644, 647 (5th Cir. 2018); *Hamdi ex rel. Hamdi v. Napolitano*, 520 F.3d 615, 625-26 (6th Cir. 2010); *cf. Casa de Maryland*, 924 F.3d 684, 697 (4th Cir. 2019) (claims outside of removal proceedings are not covered).

Certainly, Petitioner's effort to present the Third Claim (a due process challenge to his removal) plainly falls within the ambit of 8 U.S.C. § 1252(a)(5) and (b)(9).  There can be no doubt that he is clearly challenging the authority of the government remove him, and he clearly could have brought those challenges as part of his removal order.

Petitioner attempts to evade the plain import of the statutory bars he faces with regard to Claims One and Four (third-country removal and withholding, respectively).  He has previously

10

argued that the government is conflating "challenges to a removal order itself with challenges to the procedures for obtaining withholding of removal to a third country." ECF 32 at 17, citing *Riley v. Bondi*, 145 S.Ct. 2190, 2199 (2025). Not so. The government emphasizes that withholding and third-country removal procedures are not parts of a "final order of removal." *See infra* at 13. Petitioner, to his cost, would stop there, as if Section 1252(a)(5) were the only provision at play. It is not. Section 1252(b)(9) is not limited to challenges to removal orders, but applies to other aspects of removal proceedings, making them reviewable alongside final orders of removal. *See Riley*, 145 S.Ct. at 2198. The text plainly sweeps beyond challenges to a removal order to encompass all "questions of law and fact . . . arising from *any action taken* or *proceedings brought* to remove an alien." 8 U.S.C. 1252(b)(9) (emphasis added). The taking of an alien's designation of a country is a "question[] of law or fact" that "aris[es] from" proceedings brought to remove an alien. *See* 8 C.F.R. § 1240.10(c). Further, designating a third country for removal is a "question[] of law" that again "aris[es] from" the proceedings brought to remove him, so it falls within the bar. Similarly, the adequacy of procedures regarding withholding of removal – especially whether the motion to reopen mechanism is sufficient -- is a "question[] of law or fact" that "aris[es] from" the government's "action taken or proceeding brought" to removal Petitioner, and so falls within Section 1252(b)(9)'s ambit.

> **B.    8 U.S.C. § 1252(g) Bars Petitioner's Remaining Claims as Collateral Efforts to Prevent the Execution of His Removal Order.**

Petitioner's remaining claims are doubly barred by 8 U.S.C. § 1252(g) because the claims arise from the execution of his removal order. Section 1252(g), as amended by the REAL ID Act, provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas

11

corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any aliens arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). In enacting § 1252(g), Congress spoke clearly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. *Id*.; *accord, Elgharib v. Napolitano,* 600 F.3d 597, 605 (6th Cir. 2010) (holding that Section 1252(g) precludes jurisdiction under the All Writs Act); *Sadhvani v. Chertoff,* 460 F.Supp.2d 114, 122 (D.D.C. 2006) (same). Accordingly, by its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241 of claims arising from a decision or action to "execute" a final order of removal. *AADC*, 525 U.S. at 482 (1999). Section 1252(g) was designed to avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *AADC*, 525 U.S. at 487.

Petitioner has previously suggested that Section 1252(g) is limited to "discretionary" decisions. ECF 32 at 16. While it is true that *AADC* specified that 1252(g) applies to "three discrete actions" -- rather than the full scope covered by Section 1252(b)(9) -- when an alien attempts to challenge one of those three discrete actions, Section 1252(g) applies with full force. S*ee* 525 U.S. at 943. Indeed, in the Fourth Circuit, when an alien attempts to impede the "execution" of his removal order, Section 1252(g) expressly applies: "The district court [cannot] assert jurisdiction over [the alien's] challeng[e] to the [INS]'s execution of an order of deportation entered against him. . . ." *Mapoy v. Carroll,* 185 F.3d 224, 230 (4th Cir. 1999) (finding the district court had no habeas jurisdiction to stay removal). Here, Petitioner seeks to prevent ICE from executing his removal order – thus his need for a stay of removal. Of course, *Mapoy* is controlling,

12

and his claim is barred. The fact is that in deciding to execute his removal order, ICE exercises its discretion not to remove Petitioner. Of course, he may argue that its decision to execute the order of removal is improper as a violation of either statute or the Constitution (*e.g.*, that ICE cannot execute because there is an issue regarding third-country removal consideration, that he should not be removed because of alleged vindictiveness, that he should not be removed without another opportunity to seek withholding), but Section 1252(g) anticipates such claims, as it applies to even constitutional or statutory claims arising from the commencement of removal proceedings or the execution of a final order of removal, as the language barring "any cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim[.]" *AADC*, 525 U.S. at 487; *accord Silva v. United States*, 866 F.3d 938, 940-41 (8th Cir. 2017). Further, *AADC* established that § 1252(g) is "designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Alvarez v. ICE*, 818 F.3d 1194, 1205 (11th Cir. 2016) (*quoting, AADC,* 525 U.S. at 485). Section 1252(g) therefore precludes "[e]fforts to challenge the refusal to exercise [favorable] discretion on behalf of specific aliens[.]" *Id.* (quoting *AADC*, 525 at 485).

C.      **If Petitioner's Claims One and Four Do Not Relate to His Removal Order, They Fall Outside the Scope of Habeas Corpus as the Basis for His Detention is His Removal Order.**

At this juncture, Petitioner has litigated himself into a box. His claims that clearly relate to his removal order or removal proceedings are jurisdictionally barred. *See* 8 U.S.C. § 1252(a)(5), (b)(9). His effort to block the execution of the removal order is likewise jurisdictionally barred. *See* 8 U.S.C. § 1252(g). However, if Claims One and Four are not part of his final order of removal,

13

do not arise out of proceedings to remove him, and do not seek to stay the execution of his removal order, then they necessarily fall outside the proper scope of inquiry on habeas corpus.

As a general matter, habeas corpus is intended to "remov[e] the injury of unjust and illegal confinement." *DHS v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (quoting 3 Blackstone, Commentaries on the Laws of England 137). This case involves a habeas petition challenging the authority of the government to detain Petitioner for the purpose of effectuating his removal. The scope of inquiry in habeas in this context is extremely limited:

> Regardless of whether or not the scope of inquiry on habeas corpus has been expanded, the function of the courts has always been limited to the enforcement of due process requirements. To review those requirements under the Constitution, whatever the intermediation formulation of their constituents, is very different from applying a statutory standard of review, *e.g.,* deciding on 'the whole record' whether there is substantial evidence to support administrative findings of fact . . . . In short, it is the scope of inquiry on habeas corpus that differentiates use of the writ from judicial review as that term is used in the Administrative Procedures Act. We hold that deportation orders remain immune to direct attack.

*Heikkila v. Barber*, 345 U.S. 229, 235-36 (1953) (citations omitted). *See also Accardi v. Shaughnessy,* 347 U.S. 260, 268 (1954). In that context, the Supreme Court has been pellucid that habeas corpus is not an avenue to consider the "correctness" of an agency's decision:

> [A] want of due process is not established by showing merely that the decision is erroneous, . . . or that incompetent evidence was received and considered. . . . Upon a collateral review in habeas corpus proceedings, it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the trial.

*U.S. ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927) (citations omitted); *see also U.S. ex rel. Tisi v. Tod*, 264 U.S. 131, 133 (1924) ("[M]ere error, even if it consists in a finding an essential fact without adequate supporting evidence, is not a denial of due process of law.").

14

Importantly, the basis for executive detention in this case is for the sole purpose of effectuating Petitioner's removal.  The Supreme Court has been abundantly clear that withholding and CAT are not final orders of removal and do not affect the validity of an order of removal.  *See Riley v. Bondi,* 606 U.S. 259, 269-70 (2025).  Indeed, it has expressly held that an alien may not bring a habeas challenge regarding the country to which he is being removed.  *See Thuraissigiam*, 591 U.S. at 117.  Importantly, in *Thuraissigiam*, the alien sought to challenge his removal without adequate access to the regulation implementing CAT.  *See id.* at 118.  However, as the Supreme Court explained, the alien was not genuinely seeking "release," but access to additional procedures to avoid removal:  "While respondent does not claim an entitlement to release, the Government is happy to release him—provided the release occurs in the cabin of a plane bound for Sri Lanka." *Id.* at 119.  The Court went further, turning to its decision in *Munaf v. Geren*:  " Rejecting this use of habeas, we noted that '[h]abeas is at its core a remedy for unlawful executive detention' and that what these individuals wanted was not 'simple release' but an order requiring them to be brought to this country."  *Id.* at 119, *quoting Munaf v. Geren*, 553 U.S. 674, 693, 697 (2008).  It continued that "claims so far outside the 'core' of habeas may not be pursued through habeas."  *Id.* (citing *Skinner v. Switzer*, 562 U.S. 521, 535, n.13 (2011)).

Orders on withholding and CAT relief do not affect removability but rather operate to bar removal to a specific country while certain country conditions exist.  *Johnson v. Guzman Chavez*, 594 U.S. 523, 531 (2021) (citing *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.6 (1987)). Neither statutory withholding or CAT "prevents DHS 'from removing [the] alien to a third country other than the country to which removal has been withheld or deferred.'"  *Johnson v. Guzman Chavez*, 594 U.S. 523, 531-32 (2021) (alteration in original) (quoting 8 C.F.R. § 208.16(f)).  *See Nasrallah v. Barr*, 590 U.S. 573, 582 (2020) ("But the noncitizen still 'may be removed at any

time to another country where he or she is not likely to be tortured.'" (quoting 8 C.F.R. §§ 208.17(b)(2), 1208.16(f))). Here, ICE fully intends to release Petitioner to Liberia. Indeed, Petitioner does not dispute that fact. As with *Thuraissigiam* and *Munaf*, what Petitioner wants is not simple release; rather, he would prefer to be released either to the United States or Costa Rica and wants the Court to order as much, despite the facts that he is currently not in detention and that, as his counsel have represented, he is entirely capable, willing, and ready to do so. *See* ECF 125 at 44; ECF 52 at 202. His effort to effectuate that end is not cognizable in habeas.

In the instant case, Petitioner challenges his removal to Liberia, arguing that the decision to disregard his attempt to designate a country of removal long after his removal proceedings were done, and that despite his failure to alter or challenge the country of removal in removal proceedings, somehow violates the statute, making him not removable. However, as the Supreme Court has made amply clear, neither the country of removal nor the availability of withholding or CAT affects the order of removal that is the basis for his detention. *See Guzman Chavez*, 594 U.S. at 531-32; *Thuraissigiam*, 591 U.S. at 118-19; *Nasrallah¸* 590 U.S. at 582; *cf. Munaf*, 553 U.S. at 693, 697.

**III.    The First Claim Relating to His Effort to Designate Costa Rica Outside of Removal Proceedings and the ICE Designation of Liberia as the Country of Removal Should Be Dismissed for Lack of Jurisdiction or Denied for Lack of Merit.**

**A.    Statutory Background**

The INA sets procedures by which an alien's country of removal may be designated. Generally, an alien subject to removal proceedings "may designate *one* country to which the alien wants to be removed." 8 U.S.C. § 1231(b)(2)(A)(i). Once the alien designates that country, the government "shall remove the alien to the country the alien so designates." 8 U.S.C. § 1231(b)(2)(A)(ii).    However, the government "may disregard a designation under [§ 1231(b)(2)(A)(i)] if – (iv) the Attorney General decides that removing the alien to the country

16

is prejudicial to the United States." 8 U.S.C. § 1231(b)(2)(C).  When "an alien is not to be removed to the country designated under [§ 1231(b)(2)(A)(i)]," the government "shall remove the alien to a country of which the alien is a subject, national, or citizen," unless certain conditions not relevant here exist.  8 U.S.C. § 1231(b)(2)(D).   Otherwise, the government "shall remove the alien to . . . (vii) . . . another country whose government will accept the alien into that country."  8 U.S.C. § 1231(b)(2)(E).

The opportunity for an alien to designate a country of removal occurs during removal proceedings.  "[T]he immigration judge shall notify the respondent that if he or she is finally ordered removed, the country of removal will in the first instance be the country designated by the [alien], except as otherwise provided under [§ 1231(b)(2)], and shall afford him or her an opportunity then and there to make such designation." 8 C.F.R. § 1240.10(c).

### B.   Judicial review of the government's discretionary decision to disregard the designated country is barred by 8 U.S.C. § 1252(a)(2)(B)(ii).

Petitioner makes a myriad of arguments about why the Secretary's decision to disregard Costa Rica as a country of removal is improper.  However, review of the decision to disregard is barred from district court review by 8 U.S.C. § 1252(a)(2)(B)(ii). The decision to disregard Petitioner's designated country is discretionary.

The INA provides that:

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including . . . any . . . habeas corpus provision . . . , no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authorization for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B)(ii); *see also Polfliet v. Cuccinelli*, 955 F.3d 377, 381 (4th Cir. 2020). That bar extends to discretionary and factual decisions made pursuant to a statute even when that statute does not "literally contain the word 'discretion' and to constitutional questions arising from that

17

discretionary decision. 955 F.3d at 381, 383-84. Importantly, the Fourth Circuit has observed that in *Patel,* the Supreme Court found that 8 U.S.C. § 1252(a)(2)(B)(i) functioned to bar the judicial review of factual determinations and that 8 U.S.C. § 1252(a)(2)(B)(ii) also applies to bar review judicial review of factual questions. *Shaiban v. Jaddou,* 97 F.4th 263, 267-68 (4th Cir. 2024), *cert. denied,* ___ U.S. ___, 145 S. Ct. 1046 (2025) (expressly finding that the factual finding that alien was a terrorist was beyond judicial review).

Section 1231(b)(2)(C) provides that the "Attorney General *may* disregard" an alien's country designation if "the alien fails to designate a country promptly" *or* if "removing the alien to the country is prejudicial to the United States." 8 U.S.C. § 1231(b)(2)(C)(i), (iv) (emphasis added). That exercise of discretion falls squarely within 8 U.S.C. § 1252(a)(2)(B)(ii). Importantly, the statute need not contain the words "discretion" or "discretionary" to qualify; rather, even the indication that the agency "may" take an action suffices. *Id.* at 381-82; *see also Chairez v. Mayorkas*, 168 F.4th 1227, 1234–35 (9th Cir. 2026) ("if a clause provides only guidance to the agency on its exercise of discretion, then that guidance is part of the exercise of discretion and falls within 8 U.S.C. § 1252(a)(2)(B)(ii)"). "The word 'may' clearly connotes discretion" and therefore subjects decisions made pursuant to such statutory language to § 1252(a)(2)(B)(ii)'s review bar. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 13– 14, 19 (2024). Indeed, "Congress has in no way prescribed how that discretion must be exercised" in Section 1231(b)(2)(C). *See id.* at 14. Specifically, there are no guidelines in the statute or any criteria for how DHS must assess promptness or whether removal to a particular country would be prejudicial to the interests of the United States. *See* 8 U.S.C. § 1231(b)(2)(C).

Looking behind the discretionary decision to determine the validity of the Secretary's determination, as Petitioner urges the Court to do, still runs afoul of Section 1252(a)(2)(B)(ii). The

Fourth Circuit has ruled that challenges to such decisions or actions extending from an authority specified as "discretionary" by Congress extends not only to the "discretionary" aspect of the determination, but to all aspects of the decision, including legal, factual, and constitutional questions. *See Shaiban,* 97 F.4th at 267-68; *Polfliet*, 955 F.3d at 383-84. Because the statute instructs that the Attorney General "may" disregard the designation, the decision to do so is discretionary and within § 1252(a)(2)(B)(ii)'s jurisdictional bar, and Petitioner may not challenge that discretionary decision, including its legal underpinning.

### C.    Petitioner fails to show a violation in the third country removal process.

#### 1.    Petitioner's challenges to the Lyons Memorandum itself lacks merit

Petitioner attempts to challenge the Lyons Memo for a variety of reasons. He argues that he has validly designated Costa Rica as his country of removal, ECF 179-1 at 9; that the immigration judge's reliance on Petitioner's express designation of El Salvador in removal proceedings was improper, and consequently ICE's reliance on it is improper, *id.* at 16; that the Lyons Memo was unauthorized, *id.* at 12; and that the Lyons Memo does not survive deferential review, *id.* at 15. However, his efforts fail out of the gate because the Lyons Memorandum is irrelevant to his claims.

The Lyons Memorandum makes two findings: (1) that Petitioner's attempt to designate Costa Rica is ineffective – *i.e.,* that the time for the designation was in removal proceedings and that he did not then make that designation, ECF 143-1at 3-4; and (2) that, assuming that the statute and the regulations made an independent effort to designate a second country of removal outside of removal proceedings, the government was exercising its discretion to disregard it, ECF 143-1 at 4-5. The question of the propriety of Petitioner's effort to designate Costa Rica, including its timeliness and the appropriate forum, is a question of law that exists *independent* of the Lyons

Memo, as it is a matter of statute and regulation. Indeed, the answer to that question, alone, dispenses with the need to even consider the decision to disregard his late effort to designate Costa Rica. Further, as previously argued, the second question – the decision to disregard the designation – is a matter for the agency to exercise which is beyond the Court's jurisdiction.

### 2. Petitioner's challenge to his designation of El Salvador as his country of removal and suggestion that he may now change that designation outside of removal proceedings lacks merit.

Petitioner received all the process he is due under the statute and the regulations regarding the designation of his country of removal. By statute, he is permitted an opportunity to designate "one country." *See* 8 U.S.C. § 1231(b)(2)(A)(i). For an alien in Section 1229a removal proceedings, that opportunity was provided exclusively in his removal proceedings. *See* 8 C.F.R. § 1240.10(c). Indeed, Petitioner availed himself of that opportunity:

> JUDGE TO MR. ABREGO-GARCIA
>
>> And based on the pleadings, I do find that you're removable, as charged. I am required to designate a country for your removal, should that become necessary. Would you like me to designate your country of El Salvador?
>
> MR. ABREGO-GARCIA TO JUDGE
>
>> Yes.

ECF 137-1 at 6. That designation resulted in a final order designating El Salvador as the country of removal. Accordingly, the immigration judge's designation of El Salvador was performed exactly as required by the statute and the regulation.

Petitioner now wants to challenge that designation. ECF 9. He says he could not have designated a country of removal at that point because the ability to do so arises only "if he '*has been ordered removed.*'" ECF 179-1 at 16. His suggestion proceeds upon the mistaken belief

either (1) that he may be asked for his designation only *after* the order of removal is entered; or (2) that until his order of removal is entered, he remains free to designate a different country. *Id.* Nothing in the statute requires that the order of removal be entered first.  Indeed, the regulation requires only that the immigration judge inquire about the country of removal "*if* he or she is finally ordered removed" not "*when or after* he or she is finally ordered removed."  8 C.F.R. § 1240.10(c) (emphasis added).  The fact of the matter is that the immigration judge informed Petitioner that the immigration judge was finding Petitioner removable and that the immigration judge was required "then and there" (8 C.F.R. § 1240.10(c)) to ask and provide Petitioner an opportunity to designate the country, and Petitioner provided that designation.  ECF 137-1 at 6.

Petitioner apparently wishes to go further to really suggest that until his order is entered, he is free to *change* that designation.  However, the place to "change" that designation is in removal proceedings before an immigration judge.  Neither the statute nor the regulation provide him a new opportunity to make the designation before DHS.

Of course, Petitioner appears, at one point, to have understood that his only forum for changing his designation was appropriately before the immigration judge, as his motion to reopen before the immigration judge sought reopening for the purpose of designating Costa Rica.  *See* ECF 28-1 at 13-14.  However, the immigration judge denied that motion to reopen.  ECF 39-1. Thus, he did not successfully change the designation in removal proceedings, as the immigration judge would have had to reopen proceedings for the designation to be entered.  While he did appeal the denial of his motion to reopen, the Board dismissed the appeal as improvident, given that the Court had determined that there was not yet a final order of removal, and proceedings were therefore on-going.  Petitioner had the opportunity to raise the issue again once the order of removal was issued, but he neither filed a motion for reconsideration or reopening before the

immigration judge, nor did he attempt to push the issue on appeal from the order. Instead, he waived that opportunity, and failed to exhaust his administrative remedies.  He cannot raise the claim now.  *Daniels v. United States,* 532 U.S. 347, 381 (2001) ("'No procedural principle is more familiar to this Court than that a constitutional right . . . may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it'") (quoting *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 8 L.Ed. 834 (1944))).

Petitioner urges that the immigration judge should have ignored his designation because he was also seeking withholding of removal to that country (El Salvador).  ECF 179-1 at 16.  Of course, that is a challenge that has not been raised to the Board and therefore has not been exhausted.  Further, nothing in the statute requires the immigration judge to disregard an alien's designation merely because the alien is hoping to receive withholding of removal.  Indeed, many aliens, while hoping to obtain asylum or withholding, may still prefer to return to their home country.  It is not for the immigration court to second-guess that designation.  In any event, the choice to disregard an alien's designation is a discretionary choice which the immigration judge is not required to exercise.  *See* 8 U.S.C. § 1231(b)(2)(C).

Petitioner then digs deep to suggest that "equitable tolling" should apply to his designation of a country of removal.  *See* ECF 179-1 at 17.  That effort misses the mark.  Equitable tolling can function to delay the deadline for an action to be taken.  *See, e.g., Kuusk v. Holder*, 732 F.3d 302, 305 (4th Cir. 2013).  However, this is not a matter of Petitioner meeting a deadline (*e.g.*, to file a motion to reopen within a given number of days).  This is a case where Petitioner's opportunity to designate a country of removal was before an immigration judge and was not made while the record remained open.  This is a case of waiver and failure to exhaust, not the missing of a limited

22

deadline. *Daniels,* 532 U.S. at 381. Of course, if equitable tolling should apply to making the designation before the immigration judge, the appropriate place for that argument is before the Board or the immigration judge, not this Court in the first instance.

Finally, Petitioner attempts to suggest that the motion to reopen process is inadequate. ECF 179-1 at 34. Petitioner's argument is flawed. Petitioner appears to suggest that the motion to reopen is not an adequate device because, as the immigration judge stated, only ICE could file a motion to reopen regarding withholding. ECF 179-1 at 34 (citing ECF 39 at 10). Petitioner's limited quotation of and citation to the immigration judge threaten to mislead. The immigration judge considered Petitioner's motion to reopen to seek asylum based on third countries. ECF 39 at 10. However, the immigration judge determined that "this basis for reopening is time-barred, as [Abrego Garcia] is requesting reopening well over 90 days from the time his removal order was issued in 2019." *Id.* Thus, it was the untimeliness of the motion that was the limitation. *See* 8 U.S.C. § 1229a(c)(7)(c)(i). That does not render the motion to reopen device inadequate, as Petitioner had several options available to him – all of which he has waived.

The time limit on motions to reopen is subject to exceptions. *See* 8 U.S.C. § 1229a(c)(7)(ii) ("There is no time limit on the filing of a motion to reopen if the basis of the motion to is to apply for [withholding] and is based on changed country conditions arising in . . . the country to which removal has been ordered . . . ."). Petitioner attempted to argue that "changed country conditions" existed, but the only country he attempted to raise that was El Salvador. *See* ECF 28-1 at 8. He has made no effort to argue that with respect to Liberia. *See* ECF 28-1 at 8. Moreover, rather than appeal the immigration judge's determination, he has elected to abandon challenging the claim.

23

Petitioner could have sought to excuse his untimely motion to reopen by arguing that the time limit was subject to equitable tolling. *Kuusk v. Holder*, 732 F.3d 302, 5 (4th Cir. 2013). Oddly, rather than argue that the time limit for a motion to reopen should have been equitably tolled before the immigration judge, Petitioner now argues that equitable tolling should apply to make his designation of Costa Rica timely. *See* ECF 179-1 at 8 (arguing only that changed country conditions existed in El Salvador). However, his motion to reopen never raised an equitable tolling argument with respect to his designation of Costa Rica, ECF 28-1 at 8, and thus he waived the issue.

Petitioner also every missed his opportunity to avoid any finding of untimeliness. When the immigration judge entered the final order of removal on December 11, 2025, Petitioner had several options open to him. First, he could have filed an appeal to the Board to argue that his earlier proceedings were unfair or in violation of statutory or regulatory protections – much as he attempts to do before this Court. Alternatively, he could have filed an appeal to the Board and then either file a motion to reopen while the appeal was pending (which is construed as a motion to remand by 8 C.F.R. § 1003.2(c)) or  file  a motion to reopen within 90 days of the Board's decision regarding his appeal – either of which would have avoided the time limitation on motions to reopen. Any one of the foregoing courses of action would have been followed by review in the Court of Appeals. Any one of these steps could have secured the result Petitioner seeks – possible consideration of his new designation or an application for withholding. However, rather than avail himself of lawful processes, he now mistakenly tries to present his claims in habeas. Thus, he has failed to exhaust administrative remedies and habeas is not open to him on the issue. *Daniels,* 532 U.S. at 381. Moreover, the availability of those alternative avenues for having his claim heard suffice to satisfy both the statute and due process.

### 3. Petitioner's argument that Todd Lyons lacked authority to issue the Lyons Memorandum is without merit.

Contrary to Petitioner's suggestion at ECF 179-1 at 12, the authority to disregard the designation of a country for removal has been properly delegated to Todd Lyons. Petitioner's challenge centers on the authority to disregard a designation of a country for removal at 8 U.S.C. § 1231(b)(2)(C)(iv), which is an authority originally granted to the Attorney General and transferred to the Secretary of Homeland Security by statute. 6 U.S.C. § 251(2); *Jama v. ICE*, 543 U.S. 335. n.1 (2005). The Secretary delegated this authority to the ICE Director in DHS Delegation 7030.2, *Delegation of Authority to the Assistant Secretary for U.S. Immigration and Customs Enforcement*, Section 2.T, which delegates "[a]uthority under the immigration laws, including but not limited to...[8 U.S.C. § 1231], to issue and execute detainers and warrants of arrest or removal, detain aliens, release aliens on bond and other appropriate conditions as provided by law, and remove aliens from the United States." Petitioner argues that Section 2.T is not express in delegating the ability to disregard the designated country of removal; however, that is not correct. ECF 179-1 at 20. The delegation specifically provides the Immigration and Customs Enforcement ("ICE") director with authority to exercise § 1231 authorities by referencing the provision itself – an extremely express reference that makes no exception and provides no basis for unilaterally excluding the authorities in § 1231(b). Additionally, the delegated power of removal necessarily includes the power to decide when to remove and to where.

Petitioner asserts that the Lyons Memo is void under 5 U.S.C. § 3348(d)(1) because it is a function or duty of a vacant office. ECF 179-1 at 22. That assertion fails twice over. First, there is no vacant office relating to the statute at issue. The authority granted by § 1231(b)(2) is a function of the Secretary, not the ICE Director, so it is not a function or duty of a vacant office under § 3348. Second, the authority is delegable. Congress has provided that "except as otherwise

provided by this chapter, [the Secretary] may delegate any of the Secretary's functions to any officer, employee, or organizational unit of the Department." 6 U.S.C. § 112(b)(1).  No authority "otherwise provide[s]" for § 1231(b)(2). Section 3348 defines function or duty as a function or duty that "is established by regulation" and "is required by such regulation to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(A).  Therefore, the Secretary has authority to delegate the § 1231(b)(2) authority.

Petitioner argues that the Lyons Memo is improper because Todd Lyons was not delegated authority under § 1231(b)(2) because he was not serving lawfully under the Federal Vacancies and Reform Act ("FVRA"). ECF 179-1 at 21.  However, Lyons was not serving pursuant to the FVRA, but a separate mechanism.  Effective November 15, 2025, Mr. Lyons was designated as Senior Officer Performing Duties of Director ("SOPD") ICE Director and delegated the delegable authorities of that office.  As just explained, § 1231 is such a delegable authority.  It was been appropriately delegated to Lyons in his then-current role.  *See* Delegation 7030.2, Section 3 (stating, "[d]elegation of an authority to the [Director] shall not be construed to mean that the authority may be exclusively exercised by the [Director]"); Delegation 15006, *Delegation to Director, United States Citizenship and Immigration Services to Order Expedited Removal and to Enforce Immigration Laws*, section II.B (delegating 8 U.S.C. § 1231 authority to USCIS Director); and Delegation 0710.3, *Delegation of Authority to the Commissioner of U.S. Customs and Border Protection*, Section II.B.21 (delegating 8 U.S.C. § 1231 authority to CBP Commissioner).  Additionally, nothing in the language of 8 U.S.C. § 1231 discloses an intent to preclude delegation.  *See Delegation of Auth. to Approve DEA Undercover Operations*, 9 U.S. Op. Off. Legal Counsel 94 (1985) (stating "any statutorily conferred authority is delegable, at least in the absence of any indication of congressional intent that the official named must personally exercise the authority

conferred upon him"). Because 8 U.S.C. § 1231 is a delegable authority, the November 2025 memorandum empowered Lyons to exercise the authority to disregard a designation of a country for removal.

### 4. The Lyons Memorandum, even if reviewable, provides a facially legitimate and bona fide reason for Petitioner's removal to Liberia

The Supreme Court has repeatedly emphasized that the "power over aliens is of a political character and therefore subject only to narrow judicial review." *Fiallo v. Bell*, 430 U.S. at 792 (citing *Hampton v. Wong*, 426 U.S. 88, 101 n.21 (1976) (additional citations omitted)). Courts therefore conduct an especially limited review of those immigration matters where Congress emphasizes special deference to the Executive Branch.

The Supreme Court announced a landmark deferential review standard for the immigration context in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), where American citizens challenged on First Amendment grounds the Government's exclusion of a Belgian national and advocate of "world communism." *Mandel*, 408 U.S. at 755. The Court noted that the alien had no right of entry, and that the case turned on whether the First Amendment conferred upon American citizens the ability to compel Mandel's admission so that they could interact with him. *Mandel*, 408 U.S. at 762. Although acknowledging that First Amendment rights were implicated, the Court emphasized the longstanding principle that Congress has plenary power to make policies and rules for the exclusion of aliens. *Id*. at 765-66. Noting that Congress had delegated to the Executive Branch conditional exercise of this power regarding certain classes of excludable aliens, the Court held that only the most limited, deferential judicial review was warranted: "[W]hen the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification

27

against the First Amendment interests of those who seek personal communication with the applicant." *Id*. at 770.

Today, *Mandel* retains its vitality. In *Trump v. Hawaii*, the Court reaffirmed the vitality of *Mandel* and its progeny in the context of a broad grant of authority to the President regarding the invocation of 8 U.S.C. § 1182(f). *See* 585 U.S. 667, 702-04 (2018). Similarly, the Court turned again to *Mandel* and its progeny when confronted with a challenge based on the "fundamental right" of marriage, the "right of association," and Due Process's alleged protection "to be free from arbitrary restrictions...." *Kerry v. Din*, 576 U.S. 86, 93 (2015). The Court again relied on *Mandel* to circumscribe a challenge to an asserted liberty interest in a visa. *See Department of State v. Munoz*, 602 U.S. 899, 908 (2024). Emphatically, the Court explained that:

> We have assumed that a narrow exception to th[e] [consular nonreviewability] bar exists "when the denial of a visa allegedly burdens the constitutional rights of U.S. citizens." [] In that event, the Court has considered whether the Executive gave a "facially legitimate and bona fide reason" for denying the visa." If so, the inquiry is at an end – the Court has disclaimed the authority to "look behind the exercise of that discretion," much less to balance the reason given against the asserted constitutional right.

*Id.* at 908 (citations omitted).

The only question before the Court is whether the government provides a "facially legitimate and bona fide reason" for disregarding Petitioner's designated country. It does so, and the Lyons Memo informs the Court of that reason. The Lyons Memo begins by noting that Petitioner's designation took place on May 29, 2019, when he designated El Salvador as the country of removal. ECF 143-1 at 3. Further, when his order of removal was again issued, it designated El Salvador as the country of removal, but Petitioner did not appeal that determination and waived the issue. ECF 143-1 at 3-4.

Moreover, the Lyons Memo continued by considering Petitioner's "attempted" designation of Costa Rica but chose to disregard that determination because

> significant U.S. Government resources and political capital have been expended negotiating with the Republic of Liberia for its acceptance of third country nationals, and specifically for its acceptance of Mr. Abrego Garcia. Those high-stakes political negotiations, at the most senior levels of government, also resulted in reliable assurances that aliens removed to the Republic of Liberia will not be persecuted, tortured, or refouled to a country in which they would be persecuted or tortured. Importantly, these assurances have been reviewed and considered at the highest levels of the United States Government, including the Secretaries of State and Homeland Security. In addition, abandoning agreements negotiated at the highest levels of government could cast doubt on the diplomatic reliability of the United States in relation not only to the Republic of Liberia but also other nations with whom it negotiates on these and other matters.

ECF 143-1 at 4. Thus, the Lyons Memorandum concludes, "Mr. Abrego Garcia's removal to Costa Rica at this time would be 'prejudicial to the United States." *Id.* In short, it was not in the interests of the United States to remove Petitioner to Costa Rica. *See* 8 U.S.C. 1231(b)(2)(C)(iv) (the Secretary (or his delegate) "decides that removing the alien to the country is prejudicial to the United States).

That is a facially legitimate and bona fide reason. *Mandel* explained that the plenary powers of the political branch expressly include that inherent capacity to manage international affairs. *Mandel*, 408 U.S. at 765-66. A formal, final determination by the authorized decisionmaker that abandoning the extensive negotiations involving the removal of Petitioner to Liberia is exactly the type of facially legitimate and bona fide reason that marks the end of the judicial inquiry into this question. Probing behind that facially complete reasoning is impermissible, especially given that "determin[ing] national policy in light of" assessments of "practices in foreign countries," like determining where the interests of the United States lie in matters of foreign policy, is entrusted to "the political branches, not the Judiciary." *Munaf v. Geren*, 553 U.S. 674, 700-01 (2008).

29

**IV.     The Court Should Deny Petitioner's Due Process Challenge (Count III).**

Petitioner's Third Claim is that the government violated his due process rights by acting with retaliatory intent by seeking to remove him to African nations rather than his preferred Costa Rica. He claims that the government may not remove him to a third country at all, apparently until it purges its retaliatory intent, through some unspecified means, to Petitioner's satisfaction—something that is unlikely to ever occur. That, of course, is precisely his point: Petitioner would enjoy complete immunity from removal to any country not of his choice.

That is not a claim about the process to which Petitioner is entitled. Petitioner's retaliation argument identifies no additional procedures to which Petitioner believes he is entitled. Instead, the argument would yield substantive rights: the right to be free from retaliation and the right to remain in the United States until the government has purged itself of its supposed retaliatory intent.

The Court should reject Petitioner's substantive due process argument for two reasons in addition to the reasons already explained in the government's own supplemental brief. First, Petitioner cannot establish the premise of his argument—that the government is retaliating against him by attempting to remove him to a third country. Second, Petitioner cannot establish that illegal aliens have a substantive due process right to be free from selective enforcement of the immigration laws.

**A.     Petitioner's Claims of Retaliation Are Meritless.**

Petitioner's retaliation claim fails first because even if he were right about the law, the procedural and factual history of the government's attempts to remove him do not support his argument that the government is retaliating against him. Petitioner is concededly an alien with a final order of removal. The government is not retaliating against him by attempting in good faith to remove him—which, ultimately, represents nothing more than the Executive "tak[ing] Care that

the Laws be faithfully executed." U.S. Const. art. II §3. The Executive not only has authority to execute Petitioner's final order of removal, but a *duty* to do so. And Petitioner's jaded description of the procedural history of his case does not change his legal circumstances.

Petitioner urges that the government's continued efforts to remove him suggest retaliatory intent. ECF 71 at 12-17. Not so. The government has been attempting to remove Petitioner since well before he filed this case or any other. Nor can the government possibly be retaliating against Petitioner by complying with the additional procedures the Court has ordered, ECF 72 at 13-15; ECF 52 at 34-35, especially when the Court ordered the government to facilitate Petitioner's return to face precisely those procedures. *See Abrego Garcia v. Noem,* 8:25-cv-951 (D. Md.) , ECF 238 at 5, 14 & ECF 239 at 1.

Petitioner says, at various times, that the government "obstructed" court orders directing the facilitation of his return and that it facilitated his return only after initiating criminal charges. ECF 71 at 13. Of course, the government's lawful exercise of its appeal rights to the court of appeals and the Supreme Court, ECF 71 at 13, are not "obstruction." The government demonstrated that it promptly took action to begin the process to facilitate the return of Petitioner, *see Abrego Garcia v. Noem, 8:25-cv-951*, ECF 101 & 103, and his return was successfully accomplished by June 6. In any event, the government's efforts to remove Petitioner long pre-date any action he has filed in federal court. Continuing to attempt to remove an alien who concededly has no lawful right to remain in the United States (and a final order that he should be removed therefrom) cannot possibly amount to retaliation. *See Arizona v. Smith*, 490 U.S. 794, 799 (1989) (the presumption of vindictiveness does not apply where a sentence is expanded after trial).

Petitioner does no better by arguing that attention to his removal by the Homeland Security Council (HSC) amounts to retaliation. ECF 71 at 14. As a legal matter, it would turn the Executive Branch upside down if due process somehow prevented the President, through his closest advisors, from supervising or playing a role in agency decisionmaking. That is especially the case when it comes to decisions involving foreign policy and diplomatic coordination, such as removal of a national of another country to a third country.

Nor, as a factual matter, has there been any deviation from the expected process that could suggest retaliation. As the government has explained, ICE's Enforcement and Removal Operations ("ERO") usually begins the process by reaching out to the Department of State in an effort to help identify a third country. ECF 52 at 33 ("[W]e ask the State Department for help finding alternative third countries."). ERO does not have insight into how the Department of State arrives at its suggestions. *Id.* ("I don't have visibility on if they [the State Department] ask Country A and Country says no and then they pivot to Country B."). Rather, ERO's expectation is more limited: "The State Department may just come back and say, okay, Country B is willing to accept. . . ." *Id.* at 33-34. ERO then begins its assessment of the third country. *Id.* at 33. Importantly, the Department of State is not a party to this litigation, and its determinations are not subject to habeas review.

On one occasion, HSC responded to ERO, notifying it that the initial country for removal would be Uganda. ECF 52 at 47. From there, the agency followed the remaining processes in the March Guidance, including notifying Petitioner and his counsel. After he expressed fear, the March Guidance was still followed, and another country was named. ERO "asked the . . . Department of State to look into other countries." ECF 52 at 21. The Department of State notified ERO that it was in discussions with Eswatini regarding Petitioner. *Id.* at 22. ERO then provided

32

Petitioner and counsel with notice, and Petitioner expressed fear of removal to Eswatini. *Id.* Further, Eswatini returned assurances that individuals like Petitioner would be safe from torture or refoulement or persecution. *Id.* at 23. The Department of State found those assurances credible and notified ERO. *Id.* at 24. The identical process was applied to designate Liberia and obtain assurances. *See* ECF 72-5 at 2; ECF 72-6 at 3.

There is nothing untoward in that process. Each time, ERO commenced its process, and other Executive Branch decisionmakers better situated to evaluate foreign policy and diplomatic considerations supplied a country to designate for Petitioner's removal.

Petitioner also argues that the government must seek to retaliate against him because it has selected countries to which he has no connection and has not agreed to remove him to Costa Rica, the country he apparently prefers. ECF 71 at 14. But there is no evidence that Petitioner has a connection to any country other than El Salvador, and he has certainly established no connection to Costa Rica. [2]

Last, the government's designation of Liberia and its efforts to lay the groundwork for prompt removal of Petitioner to Liberia likewise do not show retaliation. ECF 71 at 16. The government's actions to arrange Liberia as a viable option for Petitioner's removal promptly

---

[2] In the past, Petitioner claimed, without any evidence, that the government retaliated against him by re-assigning his case from an immigration judge in Baltimore to an immigration judge in Atlanta. ECF 71 at 15. Petitioner omitted that the immigration judge who previously heard his claim in Baltimore no longer hears Baltimore matters. *See* ECF 28-1 at 35; https://www.justice.gov/eoir/find-immigration-court-and-access-internet-based-hearings (last visited November 12, 2025). Redistributing legacy casework to other judges hardly amounts to a nefarious scheme. And it was fully within EOIR's authority to reassign the case to handle the caseload. Moreover, if Petitioner believes that the reassignment of his immigration case amounts to a denial of due process, that would be a matter for appeal in his immigration proceedings. Petitioner cannot collaterally attack his immigration proceedings before this Court. *See* 8 U.S.C. § 1252(a)(5), (b)(9).

followed the Court's indication that the government could proceed with identifying the country of removal and seeking to lift the preliminary injunction preventing Petitioner's removal. That the government did precisely what the Court said it could do shows good faith, not retaliatory motive.

### B.      Petitioner Has No Substantive Due Process Right to Freedom From Retaliation or to Indefinitely Escape Removal.

Even if Petitioner could show that the government sought to retaliate against him by continuing to attempt to remove him, Petitioner's claim would still fail on the law. Petitioner is an alien who is unlawfully present in the United States and is concededly removable, and he does not have a substantive due process right to be free from retaliation or to remain in the United States indefinitely.

Petitioner's asserted rights—apparently, to be free from retaliation and to remain indefinitely in the United States until the government purges itself of any retaliatory intent—are substantive, not procedural, in nature. Petitioner identifies no particular process to which he is supposedly entitled based on this due process argument. He is thus asserting a substantive due process claim, but he cannot meet the strict requirements for such a claim. Substantive due process can protect only "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Binding precedent, history, and tradition establish just the opposite.

The Supreme Court has rejected the argument that targeting an alien for deportation—even based on constitutionally protected activity—raises a barrier to removal. The Court explained that the interest of an alien in "avoiding 'selective' treatment" is weak, and that "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *AADC*, 525 U.S. at 488, 491. "The Executive should not have to disclose its 'real' reasons for deeming" particular aliens to be "a special threat," "and even if it did disclose them a

34

court would be ill-equipped to determine their authenticity and utterly unable to assess their adequacy." *Id.* at 491. Plus, "in all cases, deportation is necessary to bring an end to an ongoing violation of United States law. The contention that a violation must be allowed to continue because it has been improperly selected is not powerfully appealing." *Id.* For all these reasons, retaliation claims here are barred as a matter of law for the same reasons as selective-prosecution claims.

*AADC* accords with and reflects history and longstanding precedent establishing that Congress has plenary power to admit aliens to the United States or, conversely, to bar them or remove them, which results in extraordinarily deferential review of Executive Branch actions to remove aliens (where review is possible at all). *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972); *see also Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952). Courts have "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953). As to the admission (or not) of aliens, the Supreme Court has repeatedly emphasized that "over no conceivable subject is the legislative power of Congress more complete." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (*quoting Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). Congress has delegated much of its "unusually broad dominion" in the field of immigration to the Executive Branch. *See, e.g.*, *Amanullah v. Nelson*, 811 F.2d 1, 4 (1st Cir. 1987).

The Supreme Court has repeatedly emphasized that the "power over aliens is of a political character and therefore subject only to narrow judicial review." *Fiallo*, 430 U.S. at 792 (*citing Hampton v. Wong*, 426 U.S. 88, 101 n.21 (1976) (additional citations omitted)). Courts therefore

35

conduct an especially limited review of those immigration matters where Congress emphasizes special deference to the Executive Branch.

The Supreme Court announced a landmark deferential review standard for the immigration context in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), where American citizens challenged on First Amendment grounds the Government's exclusion of a Belgian national and advocate of "world communism," then a ground of inadmissibility under INA § 212(a)(28), 8 U.S.C. § 1182(a)(28) (1976). *Mandel*, 408 U.S. at 755. The Court noted that the alien had no right of entry, and that the case turned on whether the First Amendment conferred upon American citizens the ability to compel Mandel's admission so that they could interact with him. *Mandel*, 408 U.S. at 762. Although acknowledging that First Amendment rights were implicated, the Court emphasized the longstanding principle that Congress has plenary power to make policies and rules for the exclusion of aliens. *Id.* at 765-66. Noting that Congress had delegated to the Executive Branch conditional exercise of this power regarding certain classes of excludable aliens, the Court held that only the most limited, deferential judicial review was warranted: "[W]hen the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." *Id.* at 770.

*Mandel* continues as the bedrock of immigration law. The Court revisited *Mandel*—and reaffirmed it—five years later in *Fiallo v. Bell*, 430 U.S. 787 (1977). Fiallo involved an equal protection challenge to family preference provisions under INA § 10l(b)(l) & (2), 8 U.S.C. § 1101(b)(1) & (2) (1976), which afforded preferential immigration status to mothers of illegitimate children but not to fathers. *Fiallo*, 430 U.S; at 791. The Court "s[aw] no reason to review th[at]

36

broad congressional policy choice . . . under a more exacting standard than was applied in Kleindienst v. Mandel." *Fiallo*, 430 U.S. at 795. Upholding the constitutionality of INA § 101(b)(l)(D) and (b)(2), the Court explained that its highly deferential standard of review reflected the political branches' primacy in the immigration field: "We find no indication in our prior cases that the scope of judicial review is a function of the nature of the policy choice at issue. . . . '[T]he reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization.'" *Fiallo*, 430 U.S. at 796 (citations omitted).

Following *Mandel* and *Fiallo*, lower federal courts applied the "facially legitimate and bona fide reason" standard to hundreds of immigration cases. In 1982, for instance, INS revoked a Libyan student's visa under INA§ 212(a)(27), 8 U.S.C. § 1182(a)(27) (1982), concluding that he was involved with activities inconsistent with the public interest and contrary to national security. *See El-Werfalli v. Smith*, 547 F. Supp. 152, 153 (S.D.N.Y. 1982). Denying the alien's habeas petition, the district court employed *Mandel*'s deferential review standard:

> This governing standard permits the Court to inquire as to the Government's reasons [for revoking the visa], but proscribes its probing into their wisdom or basis. If the Court finds that the Government acted on a facially legitimate and bona fide reason, its inquiry is complete.

*Id.* at 153.

This understanding of the Government's plenary authority over immigration matters and procedures cannot be breezily discounted as being from "a different era." The Court has continued to apply the standard in the immigration context, regardless of the nature of the right asserted. In *Trump v. Hawaii*, the Court reaffirmed the vitality of *Mandel* and its progeny in the context of a broad grant of authority to the President regarding the invocation of 8 U.S.C. § 1182(f). See 585 U.S. 667, 702-04 (2018). Similarly, the Court turned again to *Mandel* and its progeny when

confronted with a challenge based on the "fundamental right" of marriage, the "right of association," and Due Process's alleged protection "to be free from arbitrary restrictions . . . ." *Kerry v. Din*, 576 U.S. 86, 93 (2015).  The Court again relied on *Mandel* to circumscribe a challenge to an asserted liberty interest in a visa.  *See Department of State v. Munoz*, 602 U.S. 899, 908 (2024).  Emphatically, the Court explained that:

> We have assumed that a narrow exception to th[e] [consular nonreviewability] bar exists "when the denial of a visa allegedly burdens the constitutional rights of U.S. citizens." [] In that event, the Court has considered whether the Executive gave a "facially legitimate and bona fide reason" for denying the visa." If so, the inquiry is at an end – the Court has disclaimed the authority to "look behind the exercise of that discretion," much less to balance the reason given against the asserted constitutional right.

*Id.* at 908 (citations omitted).

The Fourth Circuit has implemented the *Mandel* standard into its case law.  See, e.g., *Sesay v. United States*, 984 F.3d 312 (4th Cir. 2021); *Int'l Refuge Assistance Project v. Trump*, 962 F.3d 635 (2020).  In doing so, it has accepted the instruction from *Mandel* and joined a host of other circuits.  *See, e.g., Amanullah v. Nelson*, 811 F.2d 1, 8 (1st Cir. 1987); *Azzouka v. Sava*, 777 F.2d 68, 72 (2d Cir. 1985); *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 978-79 (9th Cir. 2006); *Perez-Perez v. Hanberry*, 781 F.2d 1477, 1482 (11th Cir. 1986).

Petitioner cannot save his claim by relying on due process protections afforded to prisoners.  ECF 179-1 at 31.  In support of his legal theory, Petitioner cites *North Carolina v. Pearce*, 395 U.S. 711 (1969)*; Blackledge v. Perry*, 417 U.S. 21 (1974).  His legal theory never gets off the ground.  *Pearce* was a case where a convicted person's sentence was enhanced because the original sentence had been set aside.  *Pearce*, 395 U.S. at 723-24.  Of course, Petitioner is not subject to an enhanced sentence.  He is an alien subject to removal who, despite his prior success in effectuating his return, *remains* removable.  There is no enhancement to speak of.  Of course, Petitioners fail

to disclose that *Pearce* has since been overruled. *See Alabama v. Smith*, 490 U.S. 794, 798-99 (1989) (finding vindictiveness cannot be presumed where the earlier sentence was imposed upon a guilty plea but a heavier sentence is imposed after trial). That only underscores the misapplication of *Pearce* here, where Petitioner faces no "enhanced sentence"; rather, he merely remains removable and is being removed. That is not the imposition of an additional penalty: "A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry . . . ." *INS v. Lopez-Mendoza*, 68 U.S. 1032, 1038 (1984). Petitioner was removable before, and his removal in the future is not an additional penalty. It is further misapplied where Petitioner is free to effectuate his own removal to any country that would accept him. *Blackledge* fails for similar reasons. *Blackledge* involved a case where an individual subject to a misdemeanor was then charged with a felony charge upon his assertion of a right to a de novo trial before a judge. 417 U.S. at 28. Here, Petitioner is a removable alien who, after all his legal adventures, merely remains removable. His removal is not the imposition of a penalty. *See Lopez-Mendoza, Lopez-Mendoza*, 68 U.S. 1032, 1038 (1984).

Of course, the Supreme Court has weighed-in on this type of claim before. In *AADC*, the Supreme Court addressed the question of whether a litigant to attempt to impute improper motives to the government in seeking removal: "[A]n alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *AADC*, 525 U.S. at 488, 491. The fact that the government seeks to have Petitioner removed from the United States pursuant to an effort that commenced well before any suggestion of a vindictive motive cannot provide the basis for a challenge to the execution of his removal order.

The import to Petitioner's case is clear. Here, there is no suggestion of arbitrariness or vindictiveness when Petitioner was charged with removability. There is no suggestion of

39

arbitrariness or vindictiveness when the immigration judge found him removable.  There is also no suggestion of arbitrariness or vindictiveness when ICE attempted to execute the removal order in March 2025.  Rather, his whole claim of vindictiveness is that because he preliminarily prevailed in his complaint, resulting in the facilitation of his return to the U.S., the government was now attempting to employ the very procedures the Court ruled it must follow in order to effectuate the perfectly valid order of removal.  *See Abrego Garcia v. Noem*, 8:25-cv-951, ECF 239 at 1.  That is not vindictiveness; rather, that is merely the continuation and consummation of the removal process and the benefit of the bargain that Petitioner has struck.  The fact that additional government officials have taken an interest in his case—well after his right to remain in the United States had been adjudicated—does not equate to vindictiveness and violates no law, much less offend due process.

Petitioner may not suggest any vindictiveness regarding the country of removal.  As an initial matter, the DHS third-country removal policy predates the court's intervention in his case.  The policy memorandum by the Secretary of Homeland Security was issued on March 31, 2025 – well before the Court granted a TRO in 8:25-cv-951.  *See* ECF 21 (April 4, 2025).  The application of a generally applicable policy does not represent any form of vindictiveness.  Rather, it represents the Executive's obligation to enforce the laws.  Indeed, given that Petitioner's removal to El Salvador was proscribed by the grant of withholding, DHS had no choice but to employ its third-country removal process to effectuate his removal.  That he dislikes the country selected for his removal is of no moment.  As previously explained, Petitioner has had additional opportunities to present his claims with regard to his designation of a country of removal and for protection from removal, but has repeatedly waived those opportunities.  The choice of a third country is left to the agency's discretion.  That decision, as previously argued, is a matter for the Executive's plenary

40

authority, involves political choices beyond the purview of the courts, and is beyond the ken of habeas corpus. Again, his suggestion of a genuine due process claim is utterly undermined by the fact that, if he so chooses, he may effectuate his own removal to any country that is willing to accept him. However, if that choice is left to the Executive Branch, the Executive Branch may operate according to its prerogative.

## V. Petitioner's Fourth Claim (Withholding) Should Be Denied

### A. Statutory Background

Withholding is a limited form of protection against removal to certain countries. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 531 (2021) (citing *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.6 (1987)). Under 8 U.S.C. § 1231(b)(3)(A): "Notwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Moreover, FARRA § 2242 expressly delegated discretion to the Department of Justice and DHS to implement CAT to the agencies. The Department of Justice's implementation is found at 8 C.F.R. § 1208.16(c), which provides that an alien must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2) (2019)[3]; *see also* 8 C.F.R. § 208.16(c) (implementing CAT for DHS). The alien must actually demonstrate that he would be "tortured in the proposed country of removal . . . ." 8 C.F.R. § 1208.16(c)(3).

---

[3] In *Pangea Legal Servs. V. U.S. Dep't of Homeland Sec.,* No. 20-9253-JD, 2021 WL 75756 (N.D. Cal. Jan. 8, 2021), the court enjoined the implementation of regulatory amendments enacted under Procedures for Asylum and Withholding of Removal, Credible Fear and Reasonable Fear Review, 85 Fed. Reg. 80274 (Dec. 11, 2020) or related policies. To avoid confusion, citations will be made to the Code of Federal Regulations as in existence before the amendment – particularly, as the regulations were in effect when Petitioner, himself, was granted withholding of removal to El Salvador.

DOJ and DHS have deliberated created separate jurisdiction over such applications, depending on the alien's circumstances.  As both DOJ and DHS generally treat an application for asylum, withholding, or CAT protection under a similar procedures:

> Unless otherwise provided in this chapter V, this subpart A shall apply to all applications for asylum under section 208 of the Act or for withholding of deportation or withholding of removal under 241(b)(3) of the Act, or under the Convention Against Torture, whether before an asylum officer or an Immigration judge, regardless of the date of filing. . . .  Such applications are hereinafter referred to as "*asylum applications*."

8 C.F.R. § 1208.1(a)(1) (emphasis added); *see also* 8 C.F.R. § 208.1(a)(1).  However, as previously mentioned, which agency has jurisdiction over the application depends on the alien's circumstances.  *See* 8 C.F.R. § 1208.2.  In particular, "Immigration judges shall have exclusive jurisdiction over *asylum applications* filed by an alien who has been served a Form I-221 Order to Show Cause . . . ."  8 C.F.R. § 1208.2(b); *see also* 8 C.F.R. § 208.2(b).  For DHS, the Refugee, Asylum, and International Operations ("RAIO") has jurisdiction over such applications, "[e]xcept as provided in [§1208.2(b) & (c), § 208.2(b) & (c)] . . . ."  8 C.F.R. § 208.2(a).  For the sake of completeness, § 208.2(c) applies to aliens who are not entitled to removal proceedings under 8 U.S.C. § 1229a, such as aliens subject to administrative removal under 8 U.S.C. § 1228(b), alien subject to reinstated removal under 8 U.S.C.  § 1231(a)(5), and certain other circumstances not relevant here.  *See* 8 C.F.R. § 208.2(c).

**B.      Petitioner's Removal is not a Violation of § 1231(b)(3), the Regulations Implementing CAT or Due Process**

Petitioner's Count Four is utterly without merit.  As an initial matter, insofar as Petitioner has been the subject of removal proceedings, only an immigration judge has jurisdiction over his application for withholding and CAT.  While FARRA directed agencies to implement CAT, the agencies are free to choose the procedures for implementing that directive.  *See Vermont Yankee*

*Nuclear Power Corp. v. Natural Resources Defense Counsel, Inc.*, 435 U.S. 519, 543 (1978), *quoting FCC v. Schreiber,* 381 U.S. 279, 290 (1965) ("[A]dministrative agencies 'should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.'").  Here, the agencies have established a procedure whereby, once an alien has been served a Notice to Appeal for removal proceedings, the immigration judges (in DOJ's Executive Office for Immigration Review) have exclusive jurisdiction over any asylum application.  8 C.F.R. § 1208.2(b).

As an initial matter, Petitioner has been afforded multiple opportunities to pursue any asylum application (including withholding and CAT protection) that he wished to pursue before an immigration judge.  Indeed, he has been granted withholding of removal to El Salvador, not any other country.  He was allowed to file his "asylum application" – which is also an application for withholding and CAT protection, 8 C.F.R. § 1208(a)(1) – as a part of his removal proceedings.  *See* ECF 137-1 at 6.  That application was ultimately granted.  Petitioner's removal to Liberia is not a violation of that order.

Petitioner has had still more opportunities to pursue his requests for protection, but has explicitly waived those opportunities.  He took at least one such opportunity by filing a motion to reopen with the immigration judge, where he sought reopening to submit an asylum application based on his prospective removal to Uganda.  *See* ECF 28-1 at 3-4.   Ultimately, his motion was denied on October 1, 2025, and he took an appeal to the Board.  However, once the Court ruled that Petitioner was not yet the subject of a final order of removal, the Board dismissed the appeal as moot, noting that Petitioner:  "[T]he Respondent [Abrego Garcia] may appeal to the Board from the Immigration Judge's December 11, 2025, order."  *See* ECF 119-1 at 4-5.  At that juncture, Petitioner had one of two avenues for presenting any claims he wished to raise regarding

withholding and removal.  As the Board indicated, he could have presented his claim to the Board

by raising his arguments on appeal or by requesting a remand based on his desire to present an

asylum application to Liberia.  Indeed, the Court even informed Petitioner of that avenue:  "[I]f

the nonexistence of the order is affirmed, or they [the government] have a choice, which is to issue

a new order of removal.  And that will allow you to timely designate Costa Rica as your third

country."  ECF 107 at 167.  If he did not prevail, he would have had full recourse to the Fourth

Circuit Court of Appeals by petition for review.  Alternatively, even after waiving his appeal, he

could have filed a motion to reopen or reconsider with the immigration judge to present his claims,

with the prospect of administrative review before the Board and a petition to the Circuit Court.

Rather than avail himself of either avenue, he expressly an intentionally waived any opportunity.

*See* ECF 130 at 2 (notifying the Court of his intent to waive an appeal to the Board).

> His waiver of his opportunities has both statutory and constitutional significance:
>
> [Habeas Corpus], however, [is] not available indefinitely and without limitation. Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim. *See, e.g., United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L.Ed.2d 508 (1993) ("'No procedural principle is more familiar to this Court than that a constitutional right . . . may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it'" (quoting *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 8 L.Ed. 834 (1944))).  One of the principles vindicated by these limitations is a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." [*Parke v. Raley*, 506 U.S. 20, 29 (1992)].

*Daniels v. United States*, 532 U.S. 347, 381 (2001).  By failing to present his asylum applications

to the immigration judge or the Board or the Court of Appeals, Petitioner has failed to exhaust his

administrative remedies.  He cannot now complain about a procedure of which he has not availed

himself at the appropriate moment.  What is more, due process does not require multiple

opportunities for administrative or judicial review.  *See Guentchev v. INS*, 77 F.3d 1036, 1037 (7ᵗʰ

44

Cir. 1996) ("The combination of a reasoned decision by an administrative law judge plus review in a United States Court of Appeals satisfies constitutional requirement."); *Alexander-Mendoza v. Attorney General*, 55 F.4th 197, 204 (3d Cir. 2022). Petitioner had an opportunity to raise his claims and even seek recourse to the Fourth Circuit, but he failed to do so. Thus, the Court should deny his claim.

Moreover, Petitioner fails to show prejudice. As an initial matter, the withholding statute is limited in its scope of protection. It affords only protection from removal to a country where the alien's life or liberty is threatened "in that country" and on account of certain protected grounds. However, Petitioner's claim to protection from Liberia is grounded solely on his fear of being removed to El Salvador against his will. *See* ECF 179-1 at 34. However, he does not fear that loss of life or liberty *in Liberia*. Indeed, if that were not enough, Liberia has provided its assurances that Petitioner will not be removed to El Salvador against his will. The Secretary of State has found that assurance reliable and adequate. That decision is not subject to judicial review in habeas corpus.

Importantly, Petitioner fails to show prejudice for a second reason. Petitioner expresses no fear of removal to Costa Rica. Indeed, he propounds, Costa Rica is willing to accept him. *See* ECF 179-1 at 16. Of course, that is the undoing of his claim of prejudice. Petitioner is currently capable of removing himself to Costa Rica. While the Court has previously suggested that he is not free to go, indicating that he was under an order of release from the Middle District of Tennessee, his criminal case has been dismissed, and he was expressly released from his order of release. *See United States v. Abrego Garcia,* No. 3:25-cr-115, ECF 313. Accordingly, there is no known legal impediment to Petitioner's availing himself of Costa Rica's reported hospitality. Indeed, even if he were removed to Liberia, he does not suggest that he could not leave Liberia

and from there make his way to Costa Ruca.  While the government, if required to remove him,

will go to Liberia; but he does not have to wait for the government to forcibly remove him, and he

may depart of his own accord to Costa Rica,

### CONCLUSION

For the foregoing reasons, the district court should resolve the remaining habeas claims in

favor of Respondents.

Dated: June 24, 2026                              Respectfully Submitted,

                                                  BRETT A. SHUMATE
                                                  Assistant Attorney General

                                                  DREW C. ENSIGN
                                                  Deputy Assistant Attorney General
                                                  U.S. Department of Justice
                                                  Civil Division, Office of Immigration Litigation

                                                  JONATHAN GUYNN
                                                  Deputy Assistant Attorney General
                                                  U.S. Department of Justice
                                                  Civil Division, Torts Branch

                                                  */s/ Ernesto H. Molina, Jr.*
                                                  ERNESTO H. MOLINA, JR.
                                                  Deputy Director
                                                  U.S. Department of Justice
                                                  Civil Division
                                                  Office of Immigration Litigation
                                                  P.O. Box 878, Ben Franklin Station
                                                  Washington, DC 20044
                                                  202-616-93444
                                                  ernesto.h.molina@usdoj.gov

                                                  SHANE YOUNG
                                                  Trial Attorney

                                                  ATTORNEYS FOR RESPONDENTS

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2025, I electronically filed the foregoing document by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Ernesto H. Molina, Jr.*
ERENSTO H. MOLINA, JR.
Deputy Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
