UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Greenbelt Division

Kilmar Armando Abrego Garcia,

              Petitioner,

v.

Kristi Noem, *et al.*,

              Respondents.

Case No. 8:25-cv-02780 (PX)

**Petitioner's Reply In Support Of Motion For
Leave to Conduct Limited Discovery**

**TABLE OF CONTENTS**

**Page**

Introduction................................................................................................................1

Argument....................................................................................................................2

I.     The Court Has Already Rejected The Government's Threshold Arguments.......................2

II.    The Government Fails To Rebut Abrego Garcia's Showing Of Good Cause Warranting Limited Discovery.................................................................................................4

      A.     The Government Lacks Discretion To Violate Section 1231.................................4

      B.     The Government Lacks Discretion To Violate 8 U.S.C. § 1252.............................6

      C.     The Government's Own Conduct In These Proceedings Warrants Discovery Under *Mandel*.................................................................................................8

III.   The Government Cannot Rely On Uncorroborated Privilege Claims To Avoid Limited Discovery..............................................................................................................10

IV.   The Government's Appeal To *Touhy* Procedures Is Inapposite. .....................................11

Conclusion.................................................................................................................13

i

## TABLE OF AUTHORITIES

**Page**

### Cases

*Abrego Garcia v. Noem*,
2025 WL 1021113 (4th Cir. Apr. 7, 2025) ...........................................................................3, 6, 7

*Abrego Garcia v. Noem*,
2025 WL 1135112 (4th Cir. Apr. 17, 2025) .................................................................................9

*Al-Anazi v. Bush*,
370 F. Supp. 2d 188 (D.D.C. 2005) ............................................................................................7

*Alexander v. FBI*,
186 F.R.D. 66 (D.D.C. 1998) ....................................................................................................12

*Bouarfa v. Mayorkas*,
604 U.S. 6 (2024) ........................................................................................................................5

*Bracy v. Gramley*,
520 U.S. 899 (1997) ................................................................................................................4, 6

*Cherrix v. Braxton*,
131 F. Supp. 2d 756 (E.D. Va. 2001)........................................................................................12

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ....................................................................................................................9

*Comm. for Nuclear Responsibility, Inc. v. Seaborg*,
463 F.2d 788 (D.C. Cir. 1971)...................................................................................................11

*COMSAT Corp. v. Nat'l Sci. Found.*,
190 F.3d 269 (4th Cir. 1999) .....................................................................................................11

*Cruz Medina v. Noem*,
806 F. Supp. 3d 536 (D. Md. 2025) .............................................................................................8

*D.A. v. Noem*,
800 F. Supp. 3d 43 (D.D.C. 2025) ...............................................................................................8

*D.V.D. v. DHS*,
778 F. Supp. 3d 355 (D. Mass. 2025) ..........................................................................................2

*D.V.D. v. DHS*,
821 F. Supp. 3d 102 (D. Mass. Feb. 25, 2026)............................................................................8

*Davis Enters. v. EPA*,
  877 F.2d 1181 (3d Cir. 1989) ...............................................................................11

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) .................................................................................................9

*Escobedo v. United States*,
  623 F.2d 1098 (5th Cir. 1980) .................................................................................7

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ...................................................................................2

*In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct*
  *Discovery for Use in a Foreign Proc.*, 286 F. Supp. 3d 1, 7 (D.D.C. 2017).............10

*Jama v. INS*,
  329 F.3d 630 (8th Cir. 2003) ...................................................................................4

*Juniper v. Zook*,
  876 F.3d 551 (4th Cir. 2017) ...................................................................................4

*Kerry v. Din*,
  576 U.S. 86 (2015) ...................................................................................................9

*Murphy v. Smith*,
  583 U.S. 220 (2018) .................................................................................................4

*Nguyen v. Scott*,
  796 F. Supp. 3d 703 (W.D. Wash. 2025)..................................................................8

*Patel v. Garland*,
  596 U.S. 328 (2022) .................................................................................................5

*Polfiet v. Cuccinelli*,
  955 F.3d 377 (4th Cir. 2020) ...................................................................................5

*Quesinberry v. Taylor*,
  162 F.3d 273 (4th Cir. 1998) ...................................................................................4

*Sesay v. United States*,
  984 F.3d 312 (4th Cir. 2021) ...................................................................................9

*Shaiban v. Jaddou*,
  97 F.4th 263 (4th Cir. 2024) ....................................................................................5

*Sidali v. INS*,
  107 F.3d 191 (3d Cir. 1997) .....................................................................................7

iii

*South Carolina v. United States*,
907 F.3d 742 (4th Cir. 2018) ...................................................................................4

*Trump v. J.G.G.*,
604 U.S. 670 (2025) ..............................................................................................3, 4

*United States v. Abrego*,
802 F. Supp. 3d 1055 (M.D. Tenn. 2025).................................................................6

*United States v. Curtiss-Wright Exp. Corp.*,
299 U.S. 304 (1936) .................................................................................................7

*United States v. Kin-Hong*,
110 F.3d 103 (1st Cir. 1997)....................................................................................7

## Rules/Statutes

8 U.S.C. § 1159(b)(2) ...............................................................................................5

8 U.S.C. § 1231(b)(2) ............................................................................................1, 5

8 U.S.C. § 1231(b)(3) ...............................................................................................1

8 U.S.C. § 1231(b)(2)(A)(ii) .....................................................................................4

8 U.S.C. § 1252(g)................................................................................................6, 7

## Other Authorities

8 C.F.R. § 1208.16...................................................................................................1

Fed. R. Civ. P. 34..................................................................................................12

Fed. R. Civ. P. 81(a)(4) .........................................................................................12

Habeas Rule 6(a)................................................................................................4, 12

U.S. Dist. Ct. Md. Local R. ....................................................................................12

**Introduction**

In opposing Petitioner Kilmar Armando Abrego Garcia's request to conduct limited discovery, the Government continues to pursue arguments that this Court has rejected time and again. To accept the Government's arguments, one must disregard nearly all of the Court's prior rulings here and in *Abrego Garcia v. Noem*, No. 25-cv-00951 ("*Abrego Garcia I*"). Although doing so allows the Government to feign ignorance of its prior conduct, it does not rewrite the record or Abrego Garcia's showing of good cause that warrants limited discovery here. The Court should grant Abrego Garcia's motion.

As the Court recognized at the May 12 hearing, three claims are ripe for resolution: Count One (that the Government's disregard of Abrego Garcia's designation of Costa Rica violates 8 U.S.C. § 1231(b)(2)), Count Three (that the Government's efforts to remove Abrego Garcia elsewhere violates due process), and Count Four (that the Government's efforts to remove Abrego Garcia elsewhere violates § 1231(b)(3) and 8 C.F.R. § 1208.16). ECF No. 176 at 8:8–9:4.

The Government offers five reasons why good cause for discovery is supposedly lacking. None is persuasive. *First*, it repeats its prior jurisdictional arguments regarding the *D.V.D.* class and the jurisdiction-stripping provisions in 8 U.S.C. § 1252(a)(2)(B)(ii), (a)(5), (b)(9) and (g). *Second*, it asserts that *all* issues before the Court are within the sole and unreviewable discretion of the Executive Branch. The Court has repeatedly rejected both arguments and should do so again.

*Third*, the Government claims that the requested discovery exceeds the scope of permissible discovery in habeas because it seeks to challenge an agency's determination of fact or an exercise of discretion. That argument rests on a false premise. The requested discovery is directed to whether the Government has complied with statutory and constitutional limitations on its authority—not whether the Court should second-guess a lawful exercise of discretion. The

Executive has no discretion to violate § 1231, nor may it retaliate against Abrego Garcia for exercising his constitutional rights.

*Fourth*, the Government insists that broad claims of "government privilege" shield it from the limited discovery Abrego Garcia has proposed. That insistence is no more convincing now than it was nearly a year ago when the Court rejected it. *Abrego Garcia I*, ECF No. 100.

*Fifth*, the Government suggests that Abrego Garcia must abide by *Touhy* procedures for the discovery he seeks. Not so. His proposed discovery is directed at Respondents, all of whom are parties to this case. Abrego Garcia need not resort to *Touhy* regulations to obtain party discovery. And to the extent disputes arise over the scope of discovery, the parties and the Court can address them through normal discovery procedures, just as they did in *Abrego Garcia I*.

The Court should thus grant Abrego Garcia's discovery motion.

## Argument

## I.    The Court Has Already Rejected The Government's Threshold Arguments.

The Government once again recycles threshold arguments this Court has repeatedly rejected. The Government argues, now for at least the seventh time, that Abrego Garcia's claims are barred because he is a member of the non-opt-out class in *D.V.D. v. DHS,* 778 F. Supp. 3d 355, 378 (D. Mass. 2025). The Government first pressed this argument back in September 2025, and the Court has repeatedly rejected it, including because membership in a class action "remains a recognized exception to the claim-splitting rule." ECF No. 110 at 24 n.16 (citing *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 432 (4th Cir. 2003)). Undeterred, the Government has proceeded to press its *D.V.D.* argument in nearly every brief since, including at ECF Nos. 28, 72, 159, 160, 168, 170, 184. The Government's latest briefs were filed after it admitted that at least some of Abrego Garcia's outstanding claims—including claims for which Abrego Garcia seeks limited discovery (Counts One and Three)—are not at issue in *D.V.D.* ECF No. 176 at 43:23–45:8.

2

Abrego Garcia has refuted this argument on the substance, including at ECF Nos. 32, 88, 171. Rather than burden the Court with another iteration of the same briefing, Abrego Garcia respectfully requests that the Court incorporate by reference these prior responses.[1]

So too for the Government's argument that Abrego Garcia's claims are jurisdictionally barred by U.S.C. § 1252(a)(5), (b)(9) and (g). The Government first raised these arguments back in April 2025. This Court, and the Fourth Circuit, have repeatedly rejected them because he is not challenging the Attorney General's exercise of lawful discretion to commence proceedings, adjudicate cases, or execute removal orders. *See* ECF No. 110 at 15–17; *Abrego Garcia I*, ECF No. 31 at 7–16; *Abrego Garcia I*, ECF No. 238 at 12–14; *Abrego Garcia v. Noem*, 2025 WL 1021113, at *2–3 (4th Cir. Apr. 7, 2025) (Thacker, J., concurring). The Government has persisted in advancing this position, including at ECF Nos. 28, 72, 115, 142, 159, 160, 170, 184. Here, again, Abrego Garcia respectfully requests that the Court deem his prior responses, including at ECF Nos. 32, 88, 118, 144, incorporated here by reference.

The Government also argues that habeas corpus is not the proper vehicle for Counts One, Three, and Four. *See* ECF 181 ("Opp.") 7–8, 11–12. That is wrong. These claims challenge unlawful non-discretionary actions by the Government—such as its disregard of § 1231 and due process—in its pursuit of Abrego Garcia's immigration confinement and removal. Such claims sound in habeas because they necessarily imply the invalidity of the Government's efforts to place Abrego Garcia in immigration detention and remove him to Liberia or other third countries. *See Trump v. J.G.G.*, 604 U.S. 670, 671–73 (2025) (holding that challenges to removal under the Alien Enemies Act must be brought in habeas because they necessarily imply the invalidity of

---

[1] Abrego Garcia will also address all of the Government's jurisdictional arguments again in his forthcoming reply brief in support of his Motion to Resolve Outstanding Claims, which is scheduled to be filed by July 22. *See* ECF No. 186.

confinement and removal under that Act); *see also id.* at 674 (Kavanaugh, J., concurring) ("[G]oing back to the English Habeas Corpus Act of 1679, if not earlier, habeas corpus has been the proper vehicle for detainees to bring claims seeking to bar their transfers.").

Abrego Garcia may therefore take discovery on a showing of "good cause"—*i.e.*, "a specific allegation that shows reason to believe that [he] may be able to demonstrate that he is entitled to relief." *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998); *see Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Juniper v. Zook*, 876 F.3d 551, 572 n.9 (4th Cir. 2017); Habeas Rule 6(a).

## II.    The Government Fails To Rebut Abrego Garcia's Showing Of Good Cause Warranting Limited Discovery.

Like its jurisdictional arguments, the Government's attempts to rebut Abrego Garcia's showing of good cause disregard both the law and facts of this case, including the Government's behavior throughout the proceedings in this case and in *Abrego Garcia I*. Opp. 12–18.

### A.    The Government Lacks Discretion To Violate Section 1231.

The Government asserts that it is entirely within the Government's unreviewable discretion to decide where to remove Abrego Garcia, and thus there is no good cause to support Abrego Garcia's limited discovery regarding the Lyons Memorandum. Opp. 12–13. Not so. The statute commands that the Attorney General "*shall* remove" Abrego Garcia to the country he designates, which is Costa Rica. 8 U.S.C. § 1231(b)(2)(A)(ii) (emphasis added). The use of the word "shall" indicates the Government "has some nondiscretionary duty to perform." *South Carolina v. United States*, 907 F.3d 742, 756 (4th Cir. 2018) (quoting *Murphy v. Smith*, 583 U.S. 220, 223 (2018)). The only way the Government "may" disregard Abrego Garcia's designation of Costa Rica is "if" one of the "four specified circumstances" in § 1231(b)(2)(C) applies. *Jama v. INS*, 329 F.3d 630, 633 (8th Cir. 2003), *aff'd sub nom.*, *Jama v. ICE*, 543 U.S. 335 (2005). In other words, Congress

4

bestowed discretion on the Government to disregard Abrego Garcia's designation of Costa Rica only if one of the circumstances in § 1231(b)(2)(C) actually exists. And whether those circumstances actually exist is a question of fact, not discretion.

None of the Government's cited cases addressed 8 U.S.C. § 1231(b)(2). Rather, the cases involved statutes with fundamentally different structures that—unlike § 1231(b)(2)—granted unbounded or expressly unreviewable discretion. *See Patel v. Garland*, 596 U.S. 328, 331 (2022) ("With an exception for legal and constitutional questions, Congress has [in § 1252(a)(2)(B)(i)] barred judicial review of the Attorney General's decisions denying discretionary relief from removal"); *Shaiban v. Jaddou*, 97 F.4th 263, 265 (4th Cir. 2024) (§ 1252(a)(2)(B)(ii) barred review of a discretionary decision under 8 U.S.C. § 1159(b)(2), which bestows discretion on the Secretary of Homeland Security and the Attorney General "whether to adjust the status of a noncitizen granted asylum to that of a lawful permanent resident"); *Polfiet v. Cuccinelli*, 955 F.3d 377, 381 (4th Cir. 2020) (reviewing 8 U.S.C. § 1555, which provides that "[t]he Secretary of Homeland Security may, *at any time*, for what *he deems* to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." (emphasis added)); *Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14 (2024) (reviewing the same).

Here, Abrego Garcia properly designated Costa Rica as his preferred country of removal under § 1231(b)(2)(A) on August 23, 2025, within 48 hours of receiving assurances from Costa Rica that it would grant him legal status and not return him to El Salvador. ECF No. 144 at 8–9 (citing ECF No. 1-7; ECF No. 1-3; ECF No. 1-5). For **209 days**, until the filing of the Lyons Memorandum with the Court, (ECF 143-1), the Government "persistent[ly] refus[ed] to acknowledge Costa Rica as a viable removal option" and "inexplicabl[y]" refused to tell the Court why, despite repeated orders to produce a witness with such knowledge. ECF No. 110 at 9–14 &

n.12, 28–29; ECF No. 141 at 8 ("Respondents purposely—and for no reason—ignored the one country that has consistently offered to accept Abrego Garcia as a refugee, and to which he agrees to go."). Moreover, the Lyons Memorandum is inconsistent with sworn testimony by the Government's own witness, John A. Schultz, that he knew of "no impediment to remove Abrego Garcia to Costa Rica, including no statement from Respondents that effectuating such removal would run contrary to 'U.S. interests'" and that he had "been told nothing about why Respondents had not yet processed Abrego Garcia's removal to Costa Rica." ECF No. 110 at 10–11 (citing ECF No. 52 at 105–06).

In light of these inconsistencies, if the Government intends to rely on the Lyons Memorandum to establish that removal to Costa Rica would be prejudicial to the United States, Abrego Garcia is entitled to test whether there is evidence supporting that assertion. And if such evidence does not exist, then Abrego Garcia prevails on Count One, and the only plausible explanation for the Government's persistence in threatening removal to Liberia when he is ready and willing to be removed to Costa Rica is to punish him for exercising his constitutional rights— thereby bolstering Count Three. *See* ECF No. 1; ECF No. 14 at 7:3–17; *see also United States v. Abrego*, 802 F. Supp. 3d 1055 (M.D. Tenn. 2025) (dismissing Government's criminal prosecution of Abrego Garcia for being unconstitutionally vindictive in violation of his due process rights). As such, good cause exists to conduct limited discovery. *See Bracy*, 520 U.S. at 908–09.

**B.      The Government Lacks Discretion To Violate 8 U.S.C. § 1252.**

For similar reasons, the Government's arguments against Abrego Garcia's limited discovery requests regarding the Schultz Declaration are meritless. Opp. 15–18. To start, 8 U.S.C. § 1252(g) does nothing to further the Government's argument because the Government is not "execut[ing]" a removal order under its "lawful" discretion when it violates the INA to do so. *Abrego Garcia I*, ECF No. 31 at 7–16; *Abrego Garcia*, 2025 WL 1021113, at *2–3 (Thacker, J.,

6

concurring). Violating § 1231(b)(2)(A) via removal to Liberia is no more lawful than the Government's violation of § 1231(b)(3)(A) when it removed Abrego Garcia to El Salvador despite the withholding of removal order. *Id.* As § 1252(g) was no bar to limited discovery there, *Abrego Garcia I*, ECF No. 31 at 7–16; *Abrego Garcia I*, ECF No. 79; *Abrego Garcia I*, ECF No. 100, it is no bar to limited discovery here.

The Government overreaches by insisting that its authority to remove Abrego Garcia is "plenary and exclusive." Opp. 16 (quoting *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936)). The Executive does *not* have plenary authority over Abrego Garcia's removal. Congress has a say too. And in § 1231(b), Congress crafted a detailed statutory regime governing removal destinations that the Executive must follow. The majority of the cases the Government cites involve extradition under multilateral treaties, which is not at issue here. *See United States v. Kin-Hong*, 110 F.3d 103 (1st Cir. 1997); *Sidali v. INS*, 107 F.3d 191 (3d Cir. 1997); *Escobedo v. United States*, 623 F.2d 1098 (5th Cir. 1980). The one non-extradition case it cites is equally inapposite: it concerned detainees at Guantanamo Bay who sought to block a transfer on humanitarian grounds, and, importantly, the detainees there had not presented "any evidence that [the Government was] transferring [them] to foreign countries for an illicit purpose." *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 196 (D.D.C. 2005).[2] Abrego Garcia has presented evidence of such an illicit purpose with respect to Liberia, and the Government has offered no evidence to the contrary. *See* ECF No. 144 at 21–23. And in boldly proclaiming that "[a]ll three branches of Government" are in agreement that third-country assurances are outside the scope of judicial review, Opp. 16,

---

[2] Notably, unlike the Government's current policy, at the time of *Al-Anazi*, the Government reviewed foreign government assurances "on a case-by-case basis, considering the particular circumstances of the transfer, country, and individual involved and concerns regarding possible torture and persecution." 370 F. Supp. 2d at 192.

the Government refuses to acknowledge the plethora of courts that have explicitly rejected that view and the constitutional and legal sufficiency of the Government's current third-country removal policy. *See D.V.D.*, 821 F. Supp. 3d at 155–62; *Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 547–52 (D. Md. 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727–29 (W.D. Wash. 2025); *see also D.A. v. Noem*, 800 F. Supp. 3d 43, 46 (D.D.C. 2025) (quoting Government's acknowledgment that Ghana violated its assurances).

The Government also argues that there is no good cause for limited discovery because it has secured assurances from Liberia that Abrego Garcia will not be persecuted, tortured, or refouled to El Salvador. But these representations rest on a handful of self-serving submissions, the reliability of which has never been tested. In *Abrego Garcia I*, the Court found that the Government has "taken the presumption of regularity" and "destroyed it." *Abrego Garcia I*, ECF No. 235 at 11:7–10. And throughout these proceedings, the Government has repeatedly submitted sworn statements from Government officials that, when called to testify, either lacked personal knowledge of the content of those submissions or provided testimony that directly contradicted their own sworn statements. *See, e.g.*, ECF No. 110 at 10, 13–14 & n.12. Against that backdrop, the Court should not accept the Government's latest factual representations at face value without permitting the limited discovery necessary to test them. Good cause therefore supports Abrego Garcia's limited discovery requests.

C. **The Government's Own Conduct In These Proceedings Warrants Discovery Under *Mandel*.**

The Government's failure to acknowledge its own conduct in this case and the history of these proceedings more generally betrays its fundamental misunderstanding of the standard in *Mandel*. Even assuming a more stringent standard of review does not apply—though it does, *see* ECF No. 144 at 13–14—*Mandel* does *not* prohibit courts from "look[ing] behind" the Executive's

8

stated rationale where there has been an "affirmative[] show[ing] [of] bad faith." *Sesay v. United States*, 984 F.3d 312, 315 (4th Cir. 2021) (citing *Kerry v. Din*, 576 U.S. 86, 105 (2015) (Kennedy, J., concurring in the judgment)). As the Fourth Circuit has explained, under *Mandel* and Justice Kennedy's controlling concurrence in *Kerry v. Din*, "an affirmative showing of bad faith … would allow the court to consider the factual details underlying the [Government's] decision." *Id.* at 315; *see also Dep't of Com. v. New York*, 588 U.S. 752, 755 (2019) (permitting further judicial inquiry into "'the mental processes of administrative decisionmakers' upon a 'strong showing of bad faith or improper behavior'" (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971))).

A strong showing of bad faith is precisely what the record here and in *Abrego Garcia I* supplies. Time and again, the Government has acted in bad faith, *Abrego Garcia I*, ECF No. 100 at 2, refused to comply with the Court's orders, *Abrego Garcia v. Noem*, 2025 WL 1135112 (4th Cir. Apr. 17, 2025); *Abrego Garcia I*, ECF No. 238 at 3; ECF No. 110 at 13 & n.12, 28, and even "affirmatively misled the [Court]," ECF No. 110 at 29. The Government claims that it "need not address" the contention that "any of its employees or representatives have made false statements in this litigation" because such a contention is "unfounded." Opp. 7 n.2. It is not "unfounded"—it is an affirmative finding of fact that the Court has already made. ECF No. 110 at 29. The Government represented to the Court that Costa Rica "does not wish to receive" Abrego Garcia, that it "would not simply accept [Abrego Garcia] if asked," and that it "refuses to accept him." ECF No. 105 at 2, 7. The Government pointed to Cantú's sworn declaration in which he stated "Costa Rica would not accept the transfer of Mr. Abrego Garcia … at this time." ECF No. 75-6 ¶ 5. The Government filed these documents under seal to evade public scrutiny, which became evident after Costa Rica publicly repudiated the Government's misrepresentations to the Court

9

almost immediately after they became public. ECF No. 110 at 29; ECF No. 108. In short, there is ample evidence of bad faith sufficient to satisfy *Mandel*'s deferential standard and to establish good cause for limited discovery. ECF No. 145 at 4–5; ECF No. 144 at 13–14.

**III.    The Government Cannot Rely On Uncorroborated Privilege Claims To Avoid Limited Discovery.**

The Government also seeks to avoid Abrego Garcia's limited discovery requests on the conclusory assertion that "the vast majority of responsive documents and information are privileged." Opp. 18. This is not the first time the Government has taken this approach. In *Abrego Garcia I*, the Court rejected a similar attempt by the Government to broadly assert various privileges without "demonstrat[ing] the legal and factual bases to invoke the protections that such privilege affords," or even producing a privilege log. *Abrego Garcia I*, ECF No. 100 at 2–3. The lone case the Government cites concerned discovery demands specifically targeted at "an attorney's records in connection with representation of a client," thereby directly implicating the attorney-client privilege. *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proc.*, 286 F. Supp. 3d 1, 7 (D.D.C. 2017). Abrego Garcia's discovery requests, by contrast, are not targeting attorney records that are likely privileged.

To the extent Abrego Garcia's limited discovery requests encompass information that the Government asserts is privileged, that is no reason to deny leave to serve discovery. Instead, the Government can invoke its asserted privilege as appropriate, including through proper privilege logs, and the Court may adjudicate the Government's privilege claims in the ordinary course as needed. *See Abrego Garcia I*, ECF No. 100 at 2–3; *see also Abrego Garcia I*, ECF No. 115 at 1 (ordering briefing on the Government's privilege claims). Moreover, counsel to Abrego Garcia are willing to meet and confer in good faith with counsel to the Government to address any legitimate

10

privilege concerns. But the Government's conclusory and unsubstantiated claims of privilege do not negate the good cause shown warranting leave to serve limited discovery.

## IV.    The Government's Appeal To *Touhy* Procedures Is Inapposite.

The Government's final argument against limited discovery rests on the odd claim that Abrego Garcia must comply with *Touhy* regulations to obtain discovery. Opp. 19–21. *Touhy* procedures apply when a federal agency receives a *third-party subpoena* in private civil litigation; they do not apply to litigation where the agency and its officers are parties. *See COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999); *Davis Enters. v. EPA*, 877 F.2d 1181, 1187 (3d Cir. 1989); *see also Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 794 (D.C. Cir. 1971) ("[N]o executive official or agency can be given absolute authority to determine what documents in his possession may be considered by the court in its task."). The Government seems to recognize this as it appears to object only to "information pertaining to an agency outside of DHS," Opp. 20, but as the Court recently reminded the Government, the Acting Attorney General is also a respondent in this case, ECF No. 158 at 9:3–9; *see* ECF No. 1 (listing parties). The Government provides no reason as to why Abrego Garcia must go through the *Touhy* process as it pertains to the Respondents who are parties to this case.

The Government further argues that it "can only guess as to which federal agencies and personnel" Abrego Garcia's limited discovery requests are directed. Opp. 19. That is disingenuous. Abrego Garcia's proposed requests are titled "Petitioner's Requests for Production *to Respondents*." ECF No. 145-1 at 1 (emphasis added). They define "You" and "Your" as "*the Respondents in this case*, including, as applicable, any of their officials, employees, departments, components, commissions, representatives, agents," etc. *Id.* at 1–2 (emphasis added). They instruct the Government to produce requested documents that are "in *Your* possession, custody, and control." *Id.* at 2 (emphasis added). Abrego Garcia's proposed limited discovery requests are thus

11

clearly directed at the "Respondents" in this case, including their officers, employees, agents, etc., and concern the "Documents" that are in their "possession, custody, and control," as permitted under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 34(a)(1); *see also* U.S. Dist. Ct. Md. Local R., App. D, p.136 (defining "*You/Your*" similarly); Habeas Rule 6(a) (permitting "discovery under the Federal Rules of Civil Procedure"); Fed. R. Civ. P. 81(a)(4) (stating that the Federal Rules of Civil Procedure apply to proceedings for habeas corpus); *Cherrix v. Braxton*, 131 F. Supp. 2d 756, 777–78 (E.D. Va. 2001) (ordering respondents to produce documents under Rule 34 in a habeas proceeding).

The Government also baselessly argues that Abrego Garcia must follow *Touhy* procedures to obtain "documents, information, or correspondence between a party and a non-party." Opp. 20. The Government cites no authority for the proposition that *Touhy* applies to documents under the possession, custody, and control of a federal agency party merely because they are "between" that party and a non-party federal agency. Neither *Touhy* nor Rule 34 impose such a requirement— relevant discoverable information in the possession, custody, or control of Respondents must be produced irrespective of whether other agencies are involved. *See, e.g.*, *Alexander v. FBI*, 186 F.R.D. 66, 70 (D.D.C. 1998).

Finally, to the extent there is any concern regarding the scope of Abrego Garcia's limited discovery requests, the parties and the Court may modify Abrego Garcia's proposed requests through normal discovery procedures and need not resort to *Touhy*. For example, the Government states that in preparing the Lyons Memorandum, Lyons considered "the evidence and documentation received relating to Petitioner's removal." ECF No. 160 at 7. This "evidence and documentation" is clearly responsive to proposed Request No. 3, and there is no indication that any such documentation would be privileged or otherwise not discoverable. ECF No. 145-1 at 3.

12

Thus, the Government has discoverable, responsive information that it can and should produce. To the extent any requests need to be more narrowly tailored, Abrego Garcia stands willing and able to meet and confer with the Government in good faith to resolve any issues of scope.

## Conclusion

The Court should grant Abrego Garcia's motion to conduct limited discovery.

Respectfully submitted,

Dated: July 8, 2026

<table>
<tr><td>

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
Rina Gandhi
4103 Chain Bridge Road, Suite 300
Fairfax, VA 22030
(703) 352-2399
ssandoval@murrayosorio.com

</td><td>

*/s/ Jonathan G. Cooper*

**QUINN EMANUEL URQUHART &
  SULLIVAN, LLP**
Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton (*pro hac vice*)
Nithya Pathalam (*pro hac vice*)
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
nithyapathalam@quinnemanuel.com


Andrew J. Rossman (*pro hac vice*)
Sascha N. Rand (*pro hac vice*)
Courtney Daukas (*pro hac vice*)
Morgan L. Anastasio (*pro hac vice*)
Roey Goldstein (*pro hac vice*)
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
courtneydaukas@quinnemanuel.com
morgananastasio@quinnemanuel.com
roeygoldstein@quinnemanuel.com

</td></tr>
</table>

*Counsel for Petitioner*

14