**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Greenbelt Division**

Kilmar Armando Abrego Garcia,

    Petitioner,

v.

Markwayne Mullin, *et al.*,

    Respondents.

Case No. 8:25-cv-02780 (PX)

**Petitioner's Reply in Support of**
**Motion to Resolve Outstanding Habeas Claims**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

    I.     The Government's threshold defenses do not bar resolution of the
          remaining claims...........................................................................................................2

          A.       The *D.V.D.* class does not bar this Court's review. ....................................2

          B.       The remaining claims sound in habeas.........................................................3

          C.       Judicial review is not barred by 8 U.S.C. 1252(a)(5), (b)(9), or (g). ...........5

    II.    The Government's attempt to disregard Abrego Garcia's designation of
          Costa Rica violates 8 U.S.C. § 1231(b)(2)...................................................................8

          A.       Section 1252(a)(2)(B)(ii) does not bar review. ...........................................8

          B.       Abrego Garcia timely and validly designated Costa Rica........................10

          C.       The Government has no lawful basis to disregard the designation............12

          i.        The Lyons Memorandum is untimely............................................................12

          ii.       The Lyons Memorandum is not authoritative. .............................................13

          iii.      The Lyons Memorandum flunks even deferential review...........................14

    III.   The Government's attempt to remove Abrego Garcia's to Liberia—or any
          nation other than Costa Rica—is punitive and violates the Due Process
          Clause. .........................................................................................................................15

           A.       The record establishes punitive intent beyond any serious dispute. ..........15

          B.       The Fifth Amendment bars punitive removals.............................................19

    IV.   Removal to Liberia would violate 8 U.S.C. § 1231(b)(3), 8 C.F.R.
          § 1208.16, and procedural due process. ....................................................................21

CONCLUSION....................................................................................................................24

**TABLE OF AUTHORITIES**

<u>**Page(s)**</u>

<u>**Cases**</u>

*A.A.R.P. v. Trump*,
605 U.S. 91 (2025) ..................................................................................................... 5

*Abrego Garcia v. Noem*,
2025 WL 2062203 (D. Md. July 23, 2025) .................................................................. 5

*Abrego Garcia v. Noem*,
777 F. Supp. 3d 501 (D. Md. 2025) ............................................................................ 7

*Abrego Garcia v. Noem*,
2025 WL 1135112 (4th Cir. Apr. 17, 2025) ............................................................... 16

*Bouarfa v. Mayorkas*,
604 U.S. 6 (2024) ....................................................................................................9, 10

*Bowrin v. U.S. I.N.S.*,
194 F.3d 483 (4th Cir. 1999) ...................................................................................... 7

*Bridges v. Wixon*,
326 U.S. 135 (1945) .................................................................................................... 20

*Bufkin v. Collins*,
604 U.S. 369 (2025) .................................................................................................... 9

*Chairez v. Mayorkas*,
168 F.4th 1227 (9th Cir. 2026) ................................................................................... 10

*Cruz-Medina v. Noem*,
806 F. Supp. 3d 536 (D. Md. 2025) ....................................................... 8, 24, 25, 26

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) .................................................................................................... 4

*Duarte Escobar v. Perry*,
--- F. Supp. 3d ---, 2025 WL 3006742 (E.D. Va. Oct. 27, 2025) .............................. 24

*Galvan v. Press*,
347 U.S. 522 (1954) .................................................................................................... 21

*Gunnells v. Healthplan Servs., Inc.*,
348 F. 3d 417 (4th Cir. 2003) ..................................................................................... 3

*Ibarra-Perez v. United State*,
    154 F.4th 989 (9th Cir. 2025) .................................................................................... 7

*Jama v. ICE*,
    543 U.S. 335 (2005) ................................................................................................... 9

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) .................................................................................................. 6

*Kerry v. Din*,
    576 U.S. 86 (2015) .................................................................................................. 21

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ................................................................................................ 11

*Mapoy v. Carroll*,
    185 F.3d 224 (4th Cir. 1999) .................................................................................... 8

*Miranda v. Garland*,
    34 F.4th 338 (4th Cir. 2022) .................................................................................. 23

*Munaf v. Geren*,
    553 U.S. 674 (2008) .................................................................................................. 5

*Nguyen v. Scott*,
    2025 WL 2419288 (W.D. Wash. Aug. 21, 2025) ..................................................... 3

*Nguyen v. Scott*,
    796 F. Supp. 3d 703 (W.D. Wash. 2025) ............................................................... 24

*Nixon v. Adm'r of Gen. Servs.*,
    433 U.S. 425 (1977) ................................................................................................ 20

*Noem v. Abrego Garcia*,
    145 S. Ct. 1017 (2025) ............................................................................................ 16

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) .................................................................................................. 3

*Polfliet v. Cuccinelli*,
    955 F.3d 377 (4th Cir. 2020) ............................................................................... 8, 10

*Preiser v. Rodriguez*,
    411 U.S. 475 (1973) .................................................................................................. 4

*Reno v. AADC*,
    525 U.S. 471 (1999) ........................................................................................ 7, 22, 23

*Riley v. Bondi*,
606 U.S. 259 (2025) ................................................................................................... 6

*Sagastizado v. Noem*,
802 F. Supp. 3d 992 (S.D. Tex. 2025) .................................................................... 24

*Sesay v. United States*,
984 F.3d 312 (4th Cir. 2021) .................................................................................. 21

*Shaiban v. Jaddou*,
97 F.4th 263 (4th Cir. 2024) .................................................................................. 10

*Tomas-Ramos v. Garland*,
24 F.4th 973 (4th Cir. 2022) .................................................................................. 26

*Trump v. J.G.G.*,
604 U.S. 670 (2025) ................................................................................. 4, 5, 25, 26

*U.S. v. Abrego*,
792 F. Supp. 3d 869 (M.D. Tenn. 2025) ............................................................... 16

*U.S. v. Abrego Garcia*,
No. 3:25-CR-00115, 2026 WL 1454303 (M.D. Tenn. May 22, 2026) .................... 17

*United States v. Goodwin*,
457 U.S. 368 (1982) ................................................................................................ 20

*United States v. R. Enters., Inc.*,
498 U.S. 292 (1991) ................................................................................................ 20

*Washington v. Glucksberg*,
521 U.S. 702 (1997) ................................................................................................ 19

*Zadvydas v. Davis*,
533 U.S. 678 (2001) .................................................................................................. 8

## **Statutes**

5 U.S.C. § 3347(a) ......................................................................................................... 13

5 U.S.C. § 3348(d)(1) ..................................................................................................... 14

6 U.S.C. § 113(a)(1)(G) .................................................................................................. 13

8 U.S.C. § 1155 ............................................................................................................... 10

8 U.S.C. § 1159(b) .......................................................................................................... 10

8 U.S.C. § 1182(d)(14)................................................................................................ 10

8 U.S.C. § 1231(b)(2)................................................................................................ 8, 9

8 U.S.C. § 1231(b)(3)................................................................................ 8, 23, 24, 26

8 U.S.C. § 1252(a)(2)(B)(ii)................................................................................ 8, 9, 10

8 U.S.C. § 1252(a)(5) ........................................................................................ *passim*

8 U.S.C. § 1252(b)(9)........................................................................................ *passim*

## Other Authorities

8 C.F.R. § 1208.16................................................................................ 8, 23, 24, 26

8 C.F.R. § 1240.10(c) ................................................................................................ 11

8 C.F.R. § 1240.10(f)................................................................................................ 11

U.S. Const. art. I, § 9, cl. 3 ...................................................................................... 20

U.S. Const. art. II. § 2, cl.2...................................................................................... 13

U.S. Const. art. II, § 3 .............................................................................................. 16

**INTRODUCTION**

The Government's opposition confirms the central point of Abrego Garcia's motion: the Government has no legitimate, nonpunitive reason to remove Abrego Garcia to Liberia rather than Costa Rica. The Government concedes that Costa Rica remains willing to accept Abrego Garcia and even that, if the Government forcibly removes him to Liberia, he can "make his way to Costa R[i]ca." Opp. 45–46. The Government nevertheless asserts that removing Abrego Garcia directly to Costa Rica would be "prejudicial to the United States" and that the Lyons Memorandum—issued by Todd Lyons, who lacked authority to make that determination—constitutes a "formal, final determination" that ends judicial inquiry. Opp. 28–30. Yet the Government's opposition entirely ignores that its own Secretary of Homeland Security testified before Congress that, if Abrego Garcia is willing to go to Costa Rica, "we'll be happy to send him." ECF No. 180 at 2. The Government filed its opposition three weeks after that testimony, but never even acknowledges it, much less attempts to reconcile it with the Lyons Memorandum. The Government cannot ask this Court to treat the Lyons Memorandum as dispositive while ignoring the contrary public testimony of the official in whom Congress actually vested the relevant statutory authority.

Secretary Mullin's testimony likewise reinforces the conclusion that the Government's continued insistence on Liberia is punitive rather than directed toward the legitimate purpose of effectuating removal. If the Government is "happy" to send Abrego Garcia to Costa Rica, then detaining him and forcing him instead to Liberia is not necessary to remove him from the United States. Considered alongside the Government's prior unlawful removal of Abrego Garcia, its vindictive criminal prosecution, its serial pursuit of implausible African destinations, its misrepresentations concerning Costa Rica, and its shifting explanations for avoiding that lawful option, the unexplained insistence on Liberia permits only one conclusion: the Government seeks not merely to remove Abrego Garcia from the United States, but to punish him.

Unable to prevail on the merits, the Government devotes much of its opposition to arguing that this Court cannot review its conduct. It attempts to recharacterize Abrego Garcia's claims as either challenges to a removal order for which habeas review is barred by 8 U.S.C. §1252(a)(5), (b)(9), and (g), or as claims that fall outside habeas review altogether. Opp. 9–16. Neither is correct. Abrego Garcia seeks to prevent the Government from detaining him to accomplish an unlawful and punitive removal to Liberia (or other country that is not Costa Rica). Because the Government threatens to detain him solely to effectuate that challenged removal, the lawfulness of the proposed removal determines the lawfulness of the threatened detention. Such claims are squarely within habeas' domain. And because those claims concern mandatory statutory and constitutional limits on the destination, purpose, and procedures for removal—not the validity of the removal order itself—the INA's channeling provisions do not place them beyond this Court's review. Nor does the *D.V.D.* class action bar Abrego Garcia's distinct, individualized claims concerning his Costa Rica designation, the Government's punitive purpose, and the unique course of conduct directed against him. The Court should reject the Government's threshold defenses and grant Abrego Garcia's petition on the three remaining claims.

## ARGUMENT

I.    **The Government's threshold defenses do not bar resolution of the remaining claims.**

    A.    **The *D.V.D.* class does not bar this Court's review.**

The Government's lead argument, once again, is that Abrego Garcia is a member of the *D.V.D.* class and is impermissibly splitting his claims between this case and *D.V.D.* Opp. 7–9. As Abrego Garcia has previously explained, that is wrong for at least four reasons. *See* ECF No. 88 at 2–6. ***First***, his claims differ from those in *D.V.D.* and arise from a factual history the class definition does not encompass—as this Court observed at a hearing on May 12, and the Government's counsel conceded. *See* May 12, 2026 Hr'g Tr. 40:14–42:10, 45:6–8. Where a

petitioner's claims, including his independent claims for injunctive relief, are "not at issue in *D.V.D.*," they may be brought independently, and the class certification order is no bar. *Nguyen v. Scott*, 2025 WL 2419288, at *20–21 (W.D. Wash. Aug. 21, 2025).

**Second**, as this Court has already held, "even if Abrego Garcia could be considered part of the class, . . . membership in an opt-out class remains a recognized exception to the claim splitting rule." ECF No. 110 at 24 n.16 (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F. 3d 417, 432 (4th Cir. 2003)); *see also* ECF No. 88 at 2–4. *D.V.D.* thus poses no barrier to adjudicating his claims.

**Third**, the lack of a final judgment in *D.V.D.* is a further reason why there is no formal bar to this Court adjudicating Abrego Garcia's claims, even those that arguably overlap with *D.V.D.* *See* ECF No. 32 at 6–8; ECF No. 88 at 4–5.

**Fourth**, under the Government's theory, the mandatory *D.V.D.* class deprives Abrego Garcia of his individual right to present his individual claims in court—even though his life and liberty are at stake. If that were true, then due process would require allowing him to opt out of the *D.V.D.* class. *See* ECF No. 88 at 5–6; *cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (holding that, in a class action seeking money damages, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class").

### B.    The remaining claims sound in habeas.

The Government attempts to place Abrego Garcia's remaining claims in a jurisdictional "box." Opp. 13. It argues that if his remaining claims relate to his removal order, then 8 U.S.C. § 1252(a)(5), (b)(9), and (g) bar review; if they do not, then they fall outside habeas altogether. Opp. 9–16. That false dichotomy ignores the nature of these claims and the relief requested.

Start with the scope of habeas review. Last year, the Supreme Court held in *Trump v. J.G.G.* that claims that "'necessarily imply the invalidity' of confinement and removal . . . fall within the

3

'core' of the writ of habeas corpus." 604 U.S. 670, 672 (2025) (per curiam) (citations omitted). The relief Abrego Garcia seeks for his remaining claims is to prevent the Government from detaining him to effectuate removal to Liberia—or another country that is not Costa Rica—in violation of the INA, its implementing regulations, and due process. *See* ECF No. 179 at 1–2. That requested relief challenges unlawful executive detention and therefore sounds in habeas. *See J.G.G.*, 604 U.S. at 672; *see also Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) ("[H]abeas corpus relief is not limited to immediate release from illegal custody," as "the writ is available as well to attack future confinement and obtain future releases.").

The Government's reliance on *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), is misplaced. The habeas petitioner there "did not ask to be released." *Id.* at 117. "Instead, he sought entirely different relief: vacatur of his removal order and . . . [an] opportunity to apply for asylum and other relief from removal." *Id.* at 117–18 (cleaned up). In other words, the habeas petitioner did "not want 'simple release' but, ultimately, the opportunity to remain lawfully in the United States." *Id* at 119. The Supreme Court concluded that such relief "may not be pursued through habeas." *Id.*

The relief Abrego Garcia seeks, by contrast, is at the core of habeas. He does not ask this Court to invalidate his removal order, admit him to the United States, or order additional proceedings to give him an opportunity to remain here permanently. He agrees that the Government can remove him to Costa Rica—and Secretary Mullin has testified that the Government would be "happy to send him" there. ECF No. 180 at 2. He seeks freedom from detention imposed to force him to Liberia, in contravention of his statutory and constitutional rights. Thus, unlike the habeas petitioner in *Thuraissigiam*, Abrego Garcia challenges unlawful confinement.

4

The Government's assertion that it "intends to release" Abrego Garcia in Liberia does not alter that conclusion. Opp. 15–16. Habeas allows review of whether the Government may lawfully arrest and detain Abrego Garcia to accomplish that objective in the first place. *See J.G.G.*, 604 U.S. at 672. A challenge to unlawful detention and removal does not cease to be cognizable in habeas merely because the Government promises to remove the detainee to a foreign country and release him there. Were it otherwise, then *A.A.R.P. v. Trump*, 605 U.S. 91 (2025), and every other decision allowing habeas relief to detainees about to be removed to and released in a foreign country would be wrongly decided."

*Munaf v. Geren*, 553 U.S. 674 (2008), is similarly inapposite. The habeas petitioners there sought to prevent their transfer to Iraqi authorities and effectively to compel their transportation from Iraq to the United States. *Id.* at 692–97. Abrego Garcia is already in the United States and seeks no judicially compelled admission or transportation here. His claims seek to prevent the Government from holding him in unlawful custody for an unlawful and punitive removal. That is a challenge to "unlawful executive detention," the traditional subject of habeas. *Id.* at 693.

**C.      Judicial review is not barred by 8 U.S.C. 1252(a)(5), (b)(9), or (g).**

The Government argues that 8 U.S.C. § 1252(a)(5) and (b)(9) bar the remaining claims because they "aris[e] from the proceedings brought to remove him." Opp. 11 (cleaned up). That reprises the same overbroad channeling theory this Court has previously rejected. *See* ECF No. 110 at 15–17; *Abrego Garcia v. Noem*, 2025 WL 2062203, at *7 (D. Md. July 23, 2025). Although a *nunc pro tunc* removal order has since issued, the dispositive distinction remains unchanged: the remaining claims do not seek review of that order.

Section 1252(a)(5) makes a petition for review in the court of appeals "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) channels into judicial review of a final order all questions of law and fact "arising from

5

any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). But § 1252(b)(9) does not sweep in every claim bearing some factual or causal relationship to removal. A plurality of the Supreme Court rejected that "expansive interpretation" because it "would lead to staggering results." *Jennings v. Rodriguez*, 583 U.S. 281, 293–95 (2018) (plurality opinion). Instead, as Justice Alito explained, "§ 1252(b)(9) does not present a jurisdictional bar" in a case where non-citizens "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Id.* at 294–95.

The same is true here. Count One does not contest Abrego Garcia's removability or seek to vacate his removal order; it challenges the Government's refusal to honor his designation of Costa Rica. *See* ECF No. 1 ¶¶ 48–50; ECF No. 179-1 at 8–21. Counts Three and Four challenge the Government's threatened detention and insistence on Liberia for being unconstitutionally punitive and retaliatory and for failing to provide the requisite procedures before removal to Liberia, including meaningful review of the risk of persecution, torture, and refoulement. *See* ECF No. 1 ¶¶ 58–67; ECF No. 179-1 at 21–27. None of these claims asks this Court to set aside, modify, or review any factual or legal determination embodied in Abrego Garcia's removal order.

The Government argues that issues about a country designation necessarily arise from removal proceedings. Opp. 10–11. But the particular conduct challenged here was *not* adjudicated in any removal proceedings. Abrego Garcia designated Costa Rica in August 2025 outside of removal proceedings, *see* ECF No. 110 at 7 (citing ECF No. 1-7), and the Government selected Liberia in October 2025 outside of any removal proceedings, *see id.* at 11 (citing ECF No. 56). The selection of Liberia was not part of Abrego Garcia's removal order and therefore could not

have been reviewed through a petition for review of that order. *Cf. Riley v. Bondi*, 606 U.S. 259 (2025) (order denying withholding-only relief is not reviewable as a final order of removal). Habeas review is therefore not barred here by § 1252(a)(5) or § 1252(b)(9).

Section 1252(g) does not alter that result. That provision strips jurisdiction only over challenges "to the Attorney General's exercise of lawful discretion to (1) commence proceedings; (2) adjudicate cases; or (3) execute removal orders." *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 514 (D. Md. 2025) (citing *Reno v. AADC*, 525 U.S. 471, 482 (1999)); *see also Bowrin v. U.S. I.N.S.*, 194 F.3d 483, 488 (4th Cir. 1999). This Court already held that the first two categories are inapplicable here: "Abrego Garcia's Petition does not challenge the commencement of proceedings or adjudication of any case." ECF No. 110 at 15. And Abrego Garcia's remaining claims do not challenge the third category: the Government's *discretionary* decision to execute his removal order.

Abrego Garcia's removal order nowhere mentions Liberia. *See* ECF No. 112-2 ("The Respondent is ordered removed to El Salvador . . . , but the Respondent's application for withholding of removal to El Salvador pursuant to INA § 241(b)(3) is granted."). The Government did not designate Liberia until years after his removal hearing. *See* ECF No. 56. It follows that in challenging his removal to Liberia, Abrego Garcia does not contest the "execution" of his removal order. *See Ibarra-Perez v. United State*, 154 F.4th 989, 997 (9th Cir. 2025) ("Because Mexico was not mentioned in the order of removal, Ibarra-Perez does not challenge the 'execution' of his removal order."). The Government's contrary reading of § 1252(g) would wrongly "insulate from judicial review any post-hearing decision by ICE to remove noncitizens to third countries where they would be in danger of persecution, torture, and even death." *Id.*

To be clear, Abrego Garcia accepts that the Government may lawfully execute his removal order by removing him to Costa Rica. His claims concern *mandatory* constraints on the Government, including that it "shall" abide by his designation of Costa Rica rather than send him to Liberia, 8 U.S.C. § 1231(b)(2)(A)(ii), that detention for purpose of removal "must be 'nonpunitive in purpose and effect,'" ECF No. 110 at 27 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)), and that the Government must provide the procedures required by 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 1208.16, and due process. Section 1252(g) does not bar such claims. *See Cruz-Medina v. Noem*, 806 F. Supp. 3d 536, 543–44 (D. Md. 2025).

The Government's reliance on *Mapoy v. Carroll*, 185 F.3d 224 (4th Cir. 1999), is therefore inapt. The Fourth Circuit held in *Mapay* that § 1252(g) bars review of a challenge to the Executive's *discretionary* decision to execute a valid removal order, 185 F.3d at 228, not, as here, a challenge to the Executive's compliance with its *mandatory* obligations.

## II. The Government's attempt to disregard Abrego Garcia's designation of Costa Rica violates 8 U.S.C. § 1231(b)(2).

### A. Section 1252(a)(2)(B)(ii) does not bar review.

The Government raises another jurisdictional defense: the Government's disregard of Abrego Garcia's designation of Costa Rica is unreviewable because it was a discretionary decision, review of which is barred under 8 U.S.C. § 1252(a)(2)(B)(ii). Opp. 17–19. That is incorrect.

Section 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authorization for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). By its terms, the scope of this jurisdictional bar is limited to *discretionary* decisions or actions. *See Polfliet v. Cuccinelli*, 955

8

F.3d 377, 381 (4th Cir. 2020) ("On its face, § 1252(a)(2)(B)(ii) bars judicial review of decisions 'specified' to be in the 'discretion' of the Secretary.").

The INA commands that, once a noncitizen designates a country, the Secretary "*shall* remove the alien to the country the [noncitizen] so designates." 8 U.S.C. § 1231(b)(2)(A)(ii) (emphasis added); *see Jama v. ICE*, 543 U.S. 335, 341 (2005). "'Shall' means 'must.'" *Bufkin v. Collins*, 604 U.S. 369, 379 (2025) (citation omitted). That is a mandatory obligation, not a discretionary decision. The Secretary may depart from that mandatory obligation only when one of four statutory prerequisites is met. § 1231(b)(2)(C). Where none are met, the Government must adhere to its duty under § 1231(b)(2)(A)(ii), so § 1252(a)(2)(B)(ii)'s bar on judicial review is inapplicable.

The Government argues that two of the statutory prerequisites are met here: (1) Abrego Garcia "fail[ed] to designate" Costa Rica "promptly" and (2) removing Abrego Garcia to Costa Rica "is prejudicial to the United States." Opp. 18 (citing § 1231(b)(2)(C)(i), (iv)). Only *if* those threshold requirements are satisfied does the statute *then* bestow discretion on the Secretary to choose whether to disregard Abrego Garcia's designation. But whether those prerequisites are satisfied—whether the designation was "prompt" and whether removal would be "prejudicial"— are *antecedent* questions under the statute. They are not themselves specified to be in the discretion of the Secretary and therefore they are reviewable. Indeed, the Supreme Court has expressly left open the question "whether § 1252(a)(2)(B)(ii) strips courts of jurisdiction to review threshold determinations that the agency must make before exercising discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 19 (2024). The Government's contrary argument that even these antecedent questions are discretionary and unreviewable under § 1252(a)(2)(B)(ii) is irreconcilable with the mandatory "shall" language of § 1231(b)(2)(A)(ii). If the Government were correct, then the Secretary would

9

never have a mandatory obligation to honor a noncitizen's designation as the Secretary would always have discretion to disregard the designation.

None of the cases the Government cites holds otherwise or even addresses § 1231(b)(2)(A). Rather, each involved statutes with fundamentally different structures. *See Bouarfa*, 604 U.S. 6 (§ 1252(a)(2)(B)(ii) barred review of decision under 8 U.S.C. § 1155, which grants discretion to the Secretary, who "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any [visa] petition"); *Polfliet*, 955 F.3d at 381 (same); *Shaiban v. Jaddou*, 97 F.4th 263, 265–66 (4th Cir. 2024) (§ 1252(a)(2)(B)(ii) barred review of decision under 8 U.S.C. § 1159(b), which provides that it is "in the Secretary's or the Attorney General's discretion" whether to adjust the status of a noncitizen granted asylum); *Chairez v. Mayorkas*, 168 F.4th 1227, 1234–35 (9th Cir. 2026) (per curiam) (§ 1252(a)(2)(B)(ii) barred review of decision under 8 U.S.C. § 1182(d)(14), which provides that the Secretary, "in [the Secretary's] discretion, may waive" certain conditions if the Secretary "considers it to be in the public or national interest to do so").

## B. Abrego Garcia timely and validly designated Costa Rica.

The Government treats a brief colloquy in May 2019 concerning El Salvador as Abrego Garcia's one irrevocable opportunity to designate a country under § 1231(b)(2)(A). Opp. 20–24. That is irreconcilable with the plain text of the statute, which provides that only a noncitizen "*who has been ordered removed* may designate one country to which the [noncitizen] wants to be removed.*" § 1231(b)(2)(A) (emphasis added). The language "has been ordered removed" is written in the past tense, which shows that Abrego Garcia must have already been ordered removed to make a designation under § 1231(b)(2)(A). Abrego Garcia had not been "ordered removed" as of May 2019, *see* ECF No. 179-1 at 9–10, so any designation of a country during that May 2019 colloquy was not a designation under § 1231(b)(2)(A).

10

The Government has no answer to this straightforward statutory text. Opp. 20. Rather than engage with the controlling statute, the Government points to a regulation: 8 C.F.R. § 1240.10(f).[1] That regulation does not change the analysis. It provides, in pertinent part, that "the immigration judge shall notify the respondent that if he or she is finally *ordered removed*, the country of removal will in the first instance be the country designated by the respondent." § 1240.10(f) (emphasis added). The regulation thus reiterates the statutory command that there must be a final order of removal before a designation. And even if the Government were correct that the regulation contravenes the statute and allows a designation before the noncitizen is ordered removed (it is not), that would simply mean that the regulation is invalid and the Court's duty would be to apply the clear statutory language rather than the regulation. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). The Government does not even try to argue that its position can be reconciled with the governing statutory language.

The same statutory language defeats the Government's arguments that Abrego Garcia "waived" and "failed to exhaust his administrative remedies" because he did not designate Costa Rica during his removal proceedings in 2019. Opp. 22. Abrego Garcia was never "ordered removed" during his removal proceedings in 2019, so the Government never afforded him an opportunity during those 2019 proceedings to designate a country after he had been "ordered removed," as § 1231(b)(2)(A) requires. The Government did not provide a removal order until December 2025, *see* ECF No. 112-2, and it did so without reopening his removal proceedings, *see* ECF No. 39. Abrego Garcia therefore never "waived" or "failed to exhaust" anything. Instead, Abrego Garcia designated Costa Rica under § 1231(b)(2)(A) as soon as he had a meaningful

---

[1] The Government's brief cites to 8 C.F.R. § 1240.10(c), *see* Opp. 20, but the language it quotes is from 8 C.F.R. § 1240.10(f).

opportunity to do so, and has repeatedly reaffirmed that designation, both before and after the December 2025 removal order issued. *See* ECF No. 179-1 at 9–10.

If there were any doubt, equitable tolling resolves it. *See* ECF No. 179-1 at 10–11. The Government's only response on equitable tolling is to repeat its "waiver and failure to exhaust" assertions, but those are wrong as explained above. The Government does not dispute that it failed to notify Abrego Garcia that it would seek to remove him to a third country until August 2025, that Abrego Garcia immediate designated Costa Rica after that, and that the Government failed to issue a removal order until December 2025. *See* ECF No. 179-1 at 10–11. Those extraordinary circumstances and wrongdoing by the Government beyond Abrego Garcia's control justify equitable tolling here. *See id.*

## C. The Government has no lawful basis to disregard the designation.

The Government disclaims reliance on the Lyons Memorandum, arguing that it is "irrelevant to [Abrego Garcia's] claims," Opp. 19, but then proceeds to defend the Memorandum as an operative and bona fide determination that removal to Costa Rica would prejudice the United States. Any reliance on the Lyons Memorandum is improper for three independent reasons: First, it is not properly in evidence because the Court closed the record months before the Lyons Memorandum was executed on March 2, 2026. Second, the Memorandum is void because Lyons lacked lawful authority to issue it. Third, it does not supply a facially legitimate and bona fide reason for disregarding Abrego Garcia's country designation.

### i. The Lyons Memorandum is untimely.

The Government fails to respond—and has therefore forfeited—any response to Abrego Garcia's argument that the Lyons Memorandum is not properly before this Court because it was submitted months after the evidentiary record closed. *See* ECF No. 179-1 at 12. The Government

12

has no explanation why the Court should consider the Lyons Memorandum notwithstanding the closed record. The Court should disregard the Lyons Memorandum on that basis alone.

### ii. The Lyons Memorandum is not authoritative.

Even if considered, the Memorandum is void because Lyons lacked authority to issue it. *See* ECF No. 179-1 at 12–15. The Government offers two responses, but neither succeeds.

First, the Government argues that Delegation 7030.2 § 2.T delegates the requisite authority to the ICE Director. Opp. 25–26. But by its plain terms, that provision delegates authority under § 1231 only "to issue and execute detainers and warrants of arrest or removal, detain aliens, release aliens on bond and other appropriate conditions as provided by law, and remove aliens from the United States." *See* Delegation Number 7030.2.[2] Nothing in that delegation authorizes the ICE Director to disregard a designation under § 1231(b)(2)(C).

Second, the Government argues the Federal Vacancies Reform Act (**FVRA**) does not apply to Lyons. Opp. 26–27. But the Director of ICE is an officer who must be appointed by the President and confirmed by the Senate, *see* U.S. Const. art. II. § 2, cl.2; 6 U.S.C. § 113(a)(1)(G), and the FVRA applies to any "acting official [who is] to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate," 5 U.S.C. § 3347(a). The Government asserts that Lyons was empowered by some "separate mechanism" to serve "as Senior Officer Performing Duties of Director," but it cites no authority supporting that assertion, identifying that "separate mechanism," or explaining how that "separate mechanism" could lawfully override the FVRA's requirements.

---

[2] Available at
https://www.ice.gov/doclib/foia/policy/7030.2_DelegationAuthority_03.01.2003.pdf.

13

Opp. 26. Because Lyons was not lawfully serving as ICE Director, the Lyons Memorandum has "no force or effect." 5 U.S.C. § 3348(d)(1).

### iii.    The Lyons Memorandum flunks even deferential review.

The Government contends that the Lyons Memorandum supplies a "facially legitimate and bona fide" reason for disregarding Costa Rica because sending Abrego Garcia there rather than Liberia would cast doubt on the diplomatic reliability of the United States after the Government expended resources securing Liberia's acceptance. Opp. 27–29. Even assuming that highly deferential standard applies, the Government does not satisfy it. *See* ECF No. 179-1 at 16–21.

The record contradicts the Memorandum's asserted rationale. The Government's designated witness, Schultz, testified that he knew of no impediment to removing Abrego Garcia to Costa Rica. ECF No. 110 at 10–11. Days after the Memorandum issued, the United States entered into a broader a removal-cooperation agreement with Costa Rica. ECF No. 144-2. And on June 2, 2026, Secretary Mullin—the official statutorily vested with the authority the Memorandum purports to exercise under § 1231(b)(2)(C)—testified that "we'll be happy to send" Abrego Garcia to Costa Rica. ECF No. 180 at 2. The Government filed its opposition brief three weeks later but never even acknowledged that testimony, much less explained how sending Abrego Garcia to Costa Rica could simultaneously make the Secretary "happy" and prejudice the United States.

The Government's own concessions further undermine the asserted rationale. It acknowledges that Costa Rica remains willing to accept Abrego Garcia and even contends that, after forcibly removing him to Liberia, he could lawfully "make his way to Costa R[i]ca." Opp. 45–46. In other words, the Government has no objection—and would suffer no prejudice—from Abrego Garcia ending up in Costa Rica.

The Government also does not meaningfully answer Abrego Garcia's argument that its asserted prejudice was self-created in bad faith. *See* ECF No. 179-1 at 18–19. The Government

14

incurred the costs identified in the Lyons Memorandum only *after* Abrego Garcia had designated Costa Rica and the Government had refused to honor that designation. *See id.* It is bad faith for the Government to evade § 1231(b)(2)(A)'s mandatory command by spending resources disregarding the designated country and then invoke those sunk costs to justify its noncompliance.

Considering all this evidence of bad faith together with the evidence of the Government's campaign of retaliatory conduct against Abrego Garcia, *see* ECF No. 179-1 at 19–21—none of which the Government disputes—shows that the Lyons Memorandum does not provide a "facially legitimate and bona fide reason" for disregarding Abrego Garcia's designation of Costa Rica.

III. **The Government's attempt to remove Abrego Garcia's to Liberia—or any nation other than Costa Rica—is punitive and violates the Due Process Clause.**

The Government's retaliation opposition largely responds to arguments Abrego Garcia has not made. He does not contend that the Government's *initial* decision to remove him was retaliatory, Opp. 30–31; indeed, he has always maintained (and the Government conceded) that his original, unlawful removal was carried out "in error." ECF No. 1 at 2. Nor does Abrego Garcia claim any entitlement "to remain in the United States indefinitely." Opp. 34. He concedes that he is removable and has properly designated Costa Rica, which has agreed to receive him. His claim is instead that the Government may not use the method and destination of removal as an instrument of retaliation for his exercise of constitutional and statutory rights.

A. **The record establishes punitive intent beyond any serious dispute.**

The Government insists that its treatment of Abrego Garcia has involved no "deviation from the expected process that could suggest retaliation." Opp. 32. The record belies the Government's account of business as usual.

After this Court, the Fourth Circuit, and the Supreme Court in a series of rulings directed the Government to facilitate Abrego Garcia's return from El Salvador, the Government disparaged

15

him and obfuscated his return at every opportunity. The Government, "obviously frustrated and displeased with the rulings," *Abrego Garcia v. Noem*, 2025 WL 1135112, at *2 (4th Cir. Apr. 17, 2025), held press conferences, issued press releases, and posted on social media about Abrego Garcia's purported gang ties and other misconduct. *See* ECF No. 110 at 5 & n.5. DHS announced his ICE arrest in a release captioned to brand him an "MS-13 Gang Member, Human Trafficker, Wife Beater, Child Predator and Criminal Illegal Alien." U.S. Dep't of Homeland Sec., *Secretary Noem Announces ICE Arrest of Kilmar Abrego Garcia, an MS-13 Gang Member, Human Trafficker, Wife Beater, Child Predator and Criminal Illegal Alien* (Aug. 25, 2025), https://www.dhs.gov/news/2025/08/25/secretary-noem-announces-ice-arrest-kilmar-abrego-garcia-ms-13-gang-member-human. Multiple courts have since rejected the factual basis for those characterizations, with one court describing the Government's "poor attempts to tie Abrego to MS-13" and concluding that to find such a tie, the court "would have to make so many inferences from the Government's proffered evidence in its favor that such conclusion would border on the fanciful." *United States v. Abrego*, 792 F. Supp. 3d 869, 892 (M.D. Tenn. 2025). Days after the Supreme Court's ruling, the President welcomed President Bukele of El Salvador to the Oval Office where the two discussed, on national television, why Abrego Garcia would not be returned as ordered. *See President Trump Participates in a Bilateral Meeting with the President of El Salvador*, White House (Apr. 14, 2025), https://www.whitehouse.gov/videos/president-trump-participates-in-a-bilateral-meeting-with-the-president-of-el-salvador/. All of this despite the fact that "the government [] conceded that Abrego Garcia was wrongly or 'mistakenly' deported." 2025 WL 1135112, at *2. The Fourth Circuit had to intervene, again, and advise the Government to put "personal opinions" aside and "carry[] out the decisions of the Federal Courts." *Id.* at *3.

16

Not content to simply abide by the Judicial Branch's orders to facilitate Abrego Garcia's return to the United States, the Government reopened a closed investigation into a 2022 traffic stop and secured a human-smuggling indictment. The Middle District of Tennessee later granted Abrego Garcia's motion to dismiss that criminal indictment for being unconstitutionally vindictive in violation of his Fifth Amendment rights under the Due Process Clause. *United States v. Abrego Garcia*, --- F. Supp. ----, 2026 WL 1454303, at *1 (M.D. Tenn. May 22, 2026). The court found telling that the 2022 investigation was reopened on April 17, 2025, just 24 days after Abrego Garcia filed his civil suit, 13 days after he obtained relief in the district court, and 7 days after he prevailed at the Supreme Court. *Id.* at *3. The court found that the Government's criminal charges were motivated by Abrego Garcia's "exercise of his constitutional and statutory rights," and it concluded that "unrebutted public statements tying the reopened investigation to Abrego's successful lawsuit taints the investigation with a vindictive motive." *Id.* at *3–5.

The Government's procedural maneuvering in the immigration proceedings tells the same story. The Government characterizes the reassignment of Abrego Garcia's immigration matter as routine because the immigration judge who oversaw his 2019 proceedings "no longer hears Baltimore matters." Opp. 33 n.2. But Judge Jones was reassigned to the Hyattsville, Maryland Immigration Court after that court opened in 2022 to hear cases transferred from Baltimore.[3] That does not explain why Abrego Garcia's Maryland-based matter was reassigned to an immigration judge in Atlanta, Georgia, rather than remain with Judge Jones or be assigned to another judge within the state. Nor was the timing incidental: after instructing Abrego Garcia that his only recourse was to move to reopen in immigration court, Aug. 25 Tr. at 14:14–22, the Government

---

[3] EOIR to Open Hyattsville and Laredo Immigration Courts (Feb. 25, 2022), https://www.justice.gov/eoir/page/file/1476986/dl?inline

reassigned his immigration case to Judge Taylor, whose asylum-denial rate from fiscal years 2019 through 2024 was 88.9%, compared with 57.7% among immigration judges nationwide.[4]

This case followed the same trajectory. Despite Abrego Garcia having properly designated Costa Rica as his country of removal, the Government serially notified him of his impending expulsion to remote African countries: first Uganda, then Eswatini, then Ghana, and now Liberia. And all despite the fact that "none of these countries were ever viable options, and at least two had not even been asked to take Abrego Garcia before Respondents claimed supposed removal to each." ECF No. 110 at 28–29. When this Court pressed for an explanation of why Costa Rica— the one country that had "never wavered in its commitment to take Abrego Garcia"—was never pursued, the Government "affirmatively misled the tribunal," representing under seal that Costa Rica would no longer accept him. ECF No. 110 at 29.

The Government argues that Abrego Garcia has "established no connection to Costa Rica." Opp. 33. But § 1231(b)(2)(A) does not require such a showing. By its plain terms, the Government "shall remove" a noncitizen "to the country" he "designates, § 1231(b)(2)(A)(ii), unless one of four narrow exceptions applies, § 1231(b)(2)(C). Neither the text of § 1231(b)(2)(A) nor the exceptions in § 1231(b)(2)(C) require any showing of a "connection" to the designation country. In any event, as the Government well knows, Costa Rica is a Spanish-speaking country that is substantially more accessible to his U.S.-citizen wife and children. More to the point, unlike Costa Rica, which has committed in writing not to remove Abrego Garcia to any third country without his consent, ECF No. 110 at 6, Liberia has agreed to accept Abrego Garcia only on a "temporary basis." ECF No. 72-6 at 3. Once that temporary status lapses, he faces the risk of onward

---

[4] *See* Oct. 10 Tr. at 109:10–114:9; ECF No. 39; *Judge Philip P. Taylor FY 2019 - 2024, Atlanta Immigration Court*, TRAC Immigration, https://tracreports.org/immigration/reports/judgereports/00787ATL/index.html.

refoulement to El Salvador. *See* ECF No. 144 at 26. As this Court has recognized: "[G]iven Liberia's nebulous offer of 'temporary' status, and Respondents' history of erroneous removal to El Salvador, this challenge may very well have merit." ECF No. 110 at 30.

### B.    The Fifth Amendment bars punitive removals.

The Government frames Abrego Garcia's due process claim as a demand to "remain in the United States indefinitely" and quotes *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997), to attack this strawman as not "deeply rooted in this Nation's history and tradition." Opp. 34. But Abrego Garcia does not claim a due process right to remain permanently in the United States; he agrees that the Government may remove him to Costa Rica. His claim is that due process forbids the Government from wielding its immigration powers against him in a punitive, vindictive, and retaliatory manner, just as it forbade the Government from exploiting its criminal powers against him in a punitive, vindictive, and retaliatory manner. *See* ECF No. 179-1 at 21–24.; *United States v. Abrego Garcia*, --- F. Supp. ----, 2026 WL 1454303 (M.D. Tenn. May 22, 2026).

Noncitizens like Abrego Garcia who are present in the United State are entitled to due process of law when facing removal. *See A.A.R.P.*, 605 U.S. at 94; *J.G.G.*, 603 U.S. at 673. Due process forbids the Government from using its power to "select targets . . . out of malice or an intent to harass," *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991), or "punish a person because he has done what the law plainly allows him to do," *United States v. Goodwin*, 457 U.S. 368, 372 (1982). These principles are not limited to "due process protections afforded to prisoners," as the Government suggests, Opp. 38, but are fundamental limits to all Government action. *See* ECF No. 179-1 at 21-22. To be clear, Abrego Garcia does not argue that his *removability* is itself an unconstitutional "penalty." Opp. 38–39. What is unconstitutional is the Government's insistence on punitively removing him to an African country—to which he has no connection and has asserted a fear of persecution or torture, including by future refoulement—

19

instead of the country which he validly designated, Costa Rica, in retaliation for exercising his constitutional and statutory rights. *See* ECF No. 179-1 at 21–27.

The Government cites *Kleindienst v. Mandel*, 408 U.S. 753 (1972), and its progeny to argue that this Court is powerless to "look behind the [Government's] exercise of [its] discretion" to remove Abrego Garcia. Opp. 27–28. But those cases do not help the Government here. The *Mandel* standard yields to "*an affirmative showing of bad faith* on the part of the [Government]." *Kerry v. Din*, 576 U.S. 86, 105 (2015) (Kennedy, J., concurring in the judgment) (emphasis added); *Sesay v. United States*, 984 F.3d 312, 314–16 (4th Cir. 2021); *see also id.* at 315 n.2 (recognizing Justice Kennedy's *Kerry* concurrence as controlling). The Government does not address this, however. Nor does it confront the numerous courts that have held retaliation for the exercise of First Amendment rights—exactly what Abrego Garcia alleges the Government to have done here—is not a "facially legitimate and bona fide" reason under *Mandel*. *See* ECF No. 179-1 at 16–17.

The Government next points to *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) (*AADC*), to argue that the Government can remove an alien in retaliation for constitutionally protected activity. That is wrong for at least three reasons. First, *AADC*'s jurisdictional holding is narrow. There, petitioners challenged the Attorney General's decision to "commence proceedings" such that § 1252(g) barred judicial review of the claims at issue. As explained above, § 1252(g) does not apply where, as here, a petitioner is not challenging one of the three actions designated in § 1252(g). Second, this is not the "selective enforcement" claim *AADC* addressed. The *AADC* petitioners claimed the Government singled out a class of aliens for the commencement of deportation based on its belief that they were "member[s] of an organization that supports terrorist activity." *Id.* at 492. Abrego Garcia does not resist his removability at all; he challenges the Government's refusal to execute his own valid, individual designation. Third,

20

*AADC* leaves open the possibility that relief could be afforded in a case such as this one. The Court there declined to "rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome." *Id.* at 491.

Abrego Garcia is one of the "rare" cases where a noncitizen could "introduce 'clear evidence' displacing the presumption that [the Government] has acted lawfully." *See id.* at 489. Indeed, the Government launched pretextual criminal proceedings against him (that have since been dismissed as impermissibly vindictive) for asserting his rights in this Court, notified Abrego Garcia of its intent to remove him to a series of African countries to which he has no connection after he refused to plead guilty to those vindictive charges, and has even affirmatively "misled" this Court in furtherance of its scheme to do so. *See* ECF No. 110 at 29. The President, the respondents, and numerous Executive Branch officials have singled Abrego Garcia out in press releases, public statements, on social media, and in meetings with foreign leaders. *See supra* Section III.A; ECF No. 110 at 5 n.7 (collecting DHS social media statements). In light of this history, the "consequences of deportation" are plainly being "imposed as a punishment," the policy "considerations" invoked in *AADC* have been "overcome." *See* 525 U.S. at 491.

## IV. Removal to Liberia would violate 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 1208.16, and procedural due process.

Abrego Garcia's final remaining claim is that the Government's planned removal to Liberia does not comply with Abrego Garcia's rights under 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 1208.16, and the Due Process Clause. ECF No. 179-1 at 24–27. The Government's opposition is not responsive. It does not address the inadequacy of the March 30 Memorandum, the inadequacy of the October 2025 fear interview, or the *Mathews v. Eldridge* factors. *See* ECF No. 179-1 at 25–27. The Government has therefore forfeited any opposition to these points. Instead, the Government

21

pivots to processes in immigration court and argues that Abrego Garcia "failed to exhaust his administrative remedies." Opp. 44. That argument fails for two reasons.

First, administrative exhaustion is not required here. "Exhaustion is a prudential, not jurisdictional, doctrine, and no statute requires exhaustion of administrative remedies here." ECF No. 118 at 9 (citing *Miranda v. Garland*, 34 F.4th 338, 350–51 (4th Cir. 2022)). The Government identifies no statute imposing an exhaustion requirement on a habeas petitioner challenging the procedures by which the Executive proposes to effectuate a third-country removal. Indeed, none of the cases Abrego Garcia cites that found the process provided by the March 30 Memorandum constitutionally inadequate under *Mathews* recognized an exhaustion requirement. *See* ECF No. 179-1 at 26 (citing *Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 549 (D. Md. 2025); *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1011 (S.D. Tex. 2025)). Because none exists.[5]

Second, even if exhaustion were required, it would be futile. *See* ECF No. 118 at 10 (citing *Duarte Escobar v. Perry*, --- F. Supp. 3d ---, 2025 WL 3006742, at *5 (E.D. Va. Oct. 27, 2025)). The Government insists that Abrego Garcia could have pursued withholding relief through a motion to reopen or reconsider. Opp. 44. He did precisely that, *see* ECF No. 39, and the immigration judge denied the motion for lack of jurisdiction because "only [DHS] has jurisdiction to seek reopening." ECF No. 39 at 10. DHS then refused to seek reopening. *See* ECF No. 71 at 10. Due process is not satisfied "by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025).

---

[5] The Government oddly claims that only an immigration judge has jurisdiction to hear Count IV. Opp. 41. Count IV, however, expressly seeks immigration judge review over the negative fear determination. ECF No. 179-1 at 25–27. Beyond having forfeited any opposition to this argument by not responding to it, Abrego Garcia understands the Government to now agree immigration judge review would be appropriate.

The Government further contends that Abrego Garcia cannot show prejudice because his fear of Liberia is grounded only in the prospect of removal to El Salvador rather than loss of life or liberty in Liberia, and because he expresses no fear of removal to Costa Rica.[6] ECF No. 184 at 45. That argument again is not responsive. Abrego Garcia's claim is that he was not provided with sufficient process to ensure his rights under 8 U.S.C. § 1231(b)(3) and 8 C.F.R. § 1208.16 are met. It is no response to merely assert that the Government believes he will fail on the merits. That is especially so given that a pillar of Abrego Garcia's claim is that the meager process he has received carries a high risk that he would be removed or refouled to a country where he would face persecution or torture. *See* ECF No. 71 at 14-17. Regardless, Abrego Garcia has a well-founded fear of harm in Liberia. Liberia has agreed to accept Abrego Garcia only on a "temporary basis." ECF No. 72-6 at 3. As this Court has already recognized, "[g]iven Liberia's nebulous offer of 'temporary' status, and Respondents' history of erroneous removal to El Salvador, this challenge may very well have merit." ECF No. 110 at 30. Once that temporary status expires, he will face risk of harm in Liberia, a country in which he has no ties, no legal status, and no means of support, as well as a risk of onward refoulement to El Salvador. *See* ECF No. 144 at 26.

In sum, on this record, Abrego Garcia's rights under 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 1208.16, and the Due Process Clause would be violated by removal to Liberia.

---

[6] The undersigned counsel have been in direct contact with the Costa Rican consulate to facilitate updated assurances, asylum status, and lawful transit. But Abrego Garcia remains subject to an ICE-imposed ankle monitor that only the Government can remove. He is also entitled to determine that the Government has and will not interfere with Costa Rica's prior assurances in violation of his due process rights. No unilateral departure to Costa Rica is available to him without Government cooperation.

**CONCLUSION**

For all the above reasons, the Court should enter a final order that grants the first, third, and fourth claims of Abrego Garcia's habeas petition, declares the Government's conduct unlawful, and enjoins the Government from removing Abrego Garcia—and from detaining him for the purpose of removal—to any country other than Costa Rica.

24

Respectfully submitted,


Dated: July 22, 2026

| | |
|---|---|
| | */s/ Jonathan G. Cooper* |
| **MURRAY OSORIO PLLC** | **QUINN EMANUEL URQUHART &** |
| Simon Y. Sandoval-Moshenberg | **  SULLIVAN, LLP** |
| Rina Gandhi | Jonathan G. Cooper (D. Md. Bar No. 21345) |
| 4103 Chain Bridge Road, Suite 300 | Olivia Horton (*pro hac vice*) |
| Fairfax, VA 22030 | Nithya Pathalam (*pro hac vice*) |
| (703) 352-2399 | 555 13th Street NW, Suite 600 |
| ssandoval@murrayosorio.com | Washington, DC 20004 |

Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton (*pro hac vice*)
Nithya Pathalam (*pro hac vice*)
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
nithyapathalam@quinnemanuel.com

Andrew J. Rossman (*pro hac vice*)
Sascha N. Rand (*pro hac vice*)
Courtney Daukas (*pro hac vice*)
Morgan L. Anastasio (*pro hac vice*)
Roey Goldstein (*pro hac vice*)
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
courtneydaukas@quinnemanuel.com
morgananastasio@quinnemanuel.com
roeygoldstein@quinnemanuel.com

25